```
     J8C7DONC


 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                                19 Cr. 561 (LAP)

 5   STEVEN DONZIGER,

 6                Defendant.

 7   ------------------------------x
                                                New York, N.Y.
 8                                              August 12, 2019
                                                12:00 p.m.
 9

10   Before:

11                      HON. LORETTA A. PRESKA
                                            District Judge
12

13                           APPEARANCES

14   GEOFFREY S. BERMAN
          United States Attorney for the
15        Southern District of New York
     BY:  RITA GLAVIN
16        BRIAN MALONEY
          Assistant United States Attorneys
17
     ANDREW FRISCH
18        Attorney for Defendant

19   ALSO PRESENT:  Lea Harmon, U.S. Pretrial

20

21

22

23

24

25
```

J8C7DONC

1               (In open court)
2               (Case called)
3               THE COURT:  Good morning.  Is the government ready?
4               MS. GLAVIN:  Yes, your Honor.  Rita Glavin, along with
5     my associate Brian Maloney for the government.
6               THE COURT:  Good morning.
7               Is the defense ready?
8               MR. FRISCH:  Yes.  Andrew Frisch for Mr. Donziger.
9     Your Honor, good afternoon.
10              THE COURT:  Yes, sir, good afternoon.
11              Officer, thank you for being here.
12              MS. HARMON:  Yes, your Honor.
13              THE COURT:  Counsel, where do we stand?  I have
14    Ms. Glavin's letter of last week, and I have Mr. Frisch's
15    letter of today.
16              MR. FRISCH:  If I could start, your Honor --
17              THE COURT:  Yes, sir.
18              MR. FRISCH:  -- if it's OK with Ms. Glavin.
19              So, Mr. Donziger is on electronic monitoring, as you
20    know.  He and his wife have executed affidavits of confession
21    of judgment for the property they own together in Manhattan,
22    and I showed them to Ms. Glavin this morning, and she and I are
23    going to go to the clerk after court and make sure that we
24    follow the appropriate protocol so that the property is
25    properly posted.

            One cosigner has signed the bond, that's Mr.
Donziger's wife; and we have had some difficulty with the other
cosigner, as I have advised the Court.

            A cosigner who was approved by the government declined
unexpectedly to sign the bond on Friday, and we found somebody
else, attorney Martin Garbus, who was willing to sign it on
Friday, and is willing to sign it today.  The problem is that
he is enjoying his summer on the Cape, on Cape Cod.

            Now, that presents a couple of options that we propose
to the Court, one of which is that he be permitted to attend
the allocution telephonically, answer the Court's questions,
the clerk's questions, sign the bond via fax or e-mail, and
then come in person when he is back in New York.  We think that
might make sense here because he has been an attorney admitted
to the New York bar for 59 years, and unlike other cosigners of
bonds, he well understands the import of signing a bond.  But
if we do that, he would come to New York, the courthouse, and
sign the bond in person on September 9 when he is back in New
York.

            To the extent that that is not acceptable to the
Court, we would ask that we have until the close of business
tomorrow to secure the signature of a second cosigner.  One of
our options is for Mr. Garbus to take the ferry from
Provincetown to Boston tomorrow, go to the United States
courthouse there and sign the bond.

1    The other thing I want to make reference to is the
2    kerfuffle, if I can use that word, with the passports, because
3    it's my fault and not Mr. Donziger's.  I want to make that
4    clear.  When I was in his apartment last week he actually
5    handed me these passport, these two expired passports, and he
6    sought my advice, and I checked that they were expired, and my
7    bad, it just didn't register to me that they should have been
8    surrendered with the actual passport.  So, it's on me, not Mr.
9    Donziger.
10   There was a history with these passports that I was
11   discussing with Ms. Glavin before court, in that there was a
12   time when Mr. Donziger reported a passport lost because it was
13   lost and thereafter he found it, so there was a time that he
14   had two United States passports that were both extant.  I can't
15   figure out the mischief -- if I'm looking at it cynically, I
16   can't figure out what the mischief in that would be but, in any
17   event, the second extant passport expired, and now all the
18   passports he has, extant and expired, have been surrendered to
19   the court.
20   THE COURT:  Yes, sir.
21   Ms. Glavin.
22   MS. GLAVIN:  Your Honor, with respect to the
23   passports, Mr. Frisch has made a representation to me that all
24   passports and travel documents have now been turned over,
25   whether expired or not.  The reason we did raise inquiry last

1   week with Mr. Donziger was because we had received information
2   that there was some period of time in which Mr. Donziger had
3   two valid U.S. passports, which you are not allowed to have.
4   If you lose a passport and then you find it, you are supposed
5   to turn it in.  And that didn't happen.
6            We had some concern about that.  We raised IT with Mr.
7   Donziger.  I then received Mr. Frisch's letter over the
8   weekend, because I wanted to understand also what the dates
9   were of the passports.  SO, I have been assured by Mr. Frisch
10  that we have the outstanding travel documents.
11           With respect to the second issue on the cosigner, I
12  don't have an objection to doing a telephone call
13  telephonically with Mr. Garbus, so long as it's OK with the
14  clerk's office that processes this information on the fifth
15  floor.  And my understanding was that when you have an
16  out-of-town cosigner, the normal procedure is for them to show
17  up at a federal courthouse nearest to where they are to sign
18  the bond.  If the clerk's office and the Court are willing to
19  go along with the procedure -- given that this is an attorney
20  who is willing to sign the bond -- I don't object to it, as
21  long as we have the interview with him today, we get the
22  documents from him, and he could sign the bond remotely today
23  and then within a number of days take a ferry to the courthouse
24  and sign it there.
25           THE COURT:  Officer Harmon, is that OK with you?

1    MS. HARMON:  Yes, your Honor.  Our office doesn't
2  handle anything with the cosigners, so I'm not familiar with
3  the process, but it sounds reasonable.
4    THE COURT:  OK.  And do we know whether this is all
5  right with the clerk's office?
6    MS. GLAVIN:  I don't, your Honor.  Mr. Garbus had
7  reached out to me and asked about this, and I said I can't give
8  him advice; what he would need to do is call.  I gave him the
9  number to call the clerk's office on the fifth floor.  I think
10  they gave him what is the standard procedure, and that
11  subsequently prompted Mr. Frisch's letter over the weekend.
12    I am happy to address it with the clerk's office on
13  five, or if Mr. Frisch wants to.  I just want to make sure that
14  we have a second cosigner on it as soon as possible.
15    THE COURT:  Mr. Frisch, did you have any conversations
16  with the clerk's office?
17    MR. FRISCH:  No, Judge, I have not.
18    THE COURT:  All right.  Could I have the telephone
19  number.  All right.  Off the record for a minute.
20    (Off the record)
21    THE COURT:  On the record.
22    MR. FRISCH:  May I be heard?
23    THE COURT:  Yes.
24    MR. FRISCH:  I want to clarify something.  One of the
25  options is that Mr. Garbus will travel from Provincetown to

1     Boston tomorrow and sign the bond in Boston, and if he is
2     willing to do that, ultimately that's fine with us.  We believe
3     he might be.  But if not, we believe someone will sign the
4     bond.  We understand the importance of it.
5              THE COURT:  What do we mean by someone?
6              MR. FRISCH:  We will find another financially
7     responsible suretor to the satisfaction of the government who
8     will step in.
9              Given Mr. Garbus' age, we're reluctant to have him
10    make that trip in advance of his expected return to New York,
11    so I just want your Honor to know that it may be that he takes
12    the ferry tomorrow, if your Honor so rules, but if not, we will
13    see what we can do to find another suretor that is to the
14    satisfaction of the government.
15             MS. GLAVIN:  May I have a moment with Mr. Frisch?
16             THE COURT:  Yes, ma'am.
17             MS. GLAVIN:  Your Honor, I have had an opportunity to
18    confer with Mr. Frisch, and given the circumstances in that
19    from our initial appearance before your Honor to today Mr.
20    Donziger has obtained counsel who has filed a notice of
21    appearance, and in the discussions I have had with Mr. Frisch,
22    it appears to me that he is very much on top of this and moving
23    on the case, I would not have an objection to give 48 hours for
24    a second cosigner, so long as Mr. Frisch is in regular contact
25    with me regarding getting those people in and getting the

documents signed, given what Mr. Frisch has brought up with respect to Mr. Garbus' age.  But given the appearance of counsel who I think is well versed in the practices of this district, as well as the Eastern, I would not have an objection.

THE COURT:  All right.  Sir, we will extend the time for Mr. Donziger to obtain a second financially responsible person as a cosigner to August 14 close of business.

Is there anything else today, counsel?

MR. FRISCH:  Nothing from Mr. Donziger, Judge, no.  Thank you.

MS. GLAVIN:  Your Honor, if I could just have a moment with Mr. Frisch.

MR. FRISCH:  So, Ms. Glavin and I were talking about when we should schedule our next appearance and when we should propose to your Honor that we do so.

THE COURT:  Yes, sir.

MR. FRISCH:  There currently is a date of August 28, which I understood was for the purpose of Mr. Donziger having a lawyer by his side, and we have accomplished that today.

THE COURT:  Yes, sir.

MR. FRISCH:  Plainly I need -- and maybe Ms. Glavin needs as well -- a certain amount of time to get up to speed and understand the associated civil case and all the circumstances, which will take a certain amount of time.  I

1   also understand that Ms. Glavin has a trial coming up at the
2   end of October.
3              What I think we would propose jointly -- Ms. Glavin
4   will correct me if I'm wrong -- is that we put this down for a
5   date in September, just to give the Court assurance that we're
6   working diligently, so you can check in with us, not that we
7   expect that we'll know exactly where we're going in this case
8   by then, but so that your Honor has an opportunity to see us,
9   and then we may be in a better position to set a schedule going
10  forward.
11             THE COURT:  Yes, sir.  Let me ask you this, counsel.
12  As you know, we had set trial for September 23.  Do you want to
13  come in on that morning for your update?
14             MS. GLAVIN:  Yes, your Honor, that would work.  And
15  just to give a status report, I had informed Mr. Frisch that
16  with respect to Rule 16 discovery, it would be the entire
17  docket, which consists of almost 2300 entries and underlying
18  documents.
19             In addition, there are various depositions that have
20  been taken, including Mr. Donziger's, which are quite
21  voluminous.  I will be providing those to Mr. Frisch to the
22  extent he does not have them already.
23             There is some voluminous discovery.  If there are
24  documents that Mr. Donziger does not currently have in his
25  possession that are on the docket sheet, we will endeavor to

1   get those, but we will be working at least to get him relevant

2   depositions between now and our next conference.

3               MR. FRISCH:  And, your Honor, that date September 23

4   is fine for me and Mr. Donziger.

5               THE COURT:  All right.  So why don't you come in on

6   September 23 at 10 a.m., and we will see where we are at that

7   time, and I will then look to you folks to tell me when you

8   want to put it down for trial or what else you want to do.

9               And again I guess I have not made a ruling that the

10  Speedy Trial Act is applicable, but out of an excess of

11  caution, is there any objection to excluding time between now

12  and September 23 from calculation under the Speedy Trial Act in

13  the interests of justice, assuming the Act is applicable?

14              MR. FRISCH:  Your Honor, no objection from Mr.

15  Donziger.

16              MS. GLAVIN:  None from the government, your Honor.

17              THE COURT:  Time is therefore excluded in the interest

18  of justice.

19              Anything else today, counsel?

20              MS. GLAVIN:  No, your Honor.

21              MR. FRISCH:  No, your Honor.  Thank you.

22              THE COURT:  Thank you.  Good morning, sir.

23              Thank you ladies and gentlemen.

24              Officer Harmon, thank you for being present.

25              (Adjourned)