J86sDONa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          19 CR 561 (LAP)
                           11 Civ. 691 (LAP)

STEVEN DONZIGER,

          Defendant.

------------------------------x

                           New York, N.Y.
                           August 6, 2019
                           10:00 a.m.

Before:

                 HON. LORETTA A. PRESKA,

                           District Judge

                  APPEARANCES

FOR THE GOVERNMENT
BY:  RITA M. GLAVIN
     BRIAN P. MALONEY
     SAREEN ARMANI
SEWARD & KISSEL LLP

STEVEN DONZIGER, Pro Se

ALSO PRESENT:
GEORGE GOLTZER, Advisory Counsel
LEAH HARMON, Pretrial Services Officer

J86sDONa

1          (Case called)

2          THE COURT:  United States against Stephen Donziger.

3          Is the United States ready

4          MS. GLAVIN:  Yes, your Honor.  Rita Glavin for the

5     government, along with my colleagues, Brian Maloney and Sareen

6     Armani.

7          THE COURT:  Good morning.

8          Is the defendant ready?

9          MR. DONZIGER:  Yes, your Honor.

10          Good morning.  Steven Donziger on behalf of myself.

11          THE COURT:  Good morning.

12          I note that Pretrial Services Officer Leah Harmon is

13     here.  I do not believe she has interviewed Mr. Donziger yet.

14          Ms. Glavin, how would you like to proceed?

15          MS. GLAVIN:  We would request that this proceed in the

16     ordinary course on initial appearance, which is that there be

17     an interview with pretrial services so we can have better

18     information of conditions of release under 3142.

19          THE COURT:  Any reason not to do that, Mr. Donziger?

20          MR. DONZIGER:  I don't know, respectfully, because I'm

21     not familiar with this procedure.  I'm not familiar with this

22     procedure, and I don't know if your Honor got the letter I sent

23     yesterday.

24          THE COURT:  Yes, sir, I did.

25          MR. DONZIGER:  I'm trying to get counsel.

J86sDONa

1         THE COURT:  I did, but nevertheless, we have to

2    proceed with an arraignment in the ordinary course.

3         In fact, as Ms. Glavin said, the ordinary course would

4    be for the defendant to be interviewed by the pretrial services

5    officer.

6         I'll ask Ms. Harmon to conduct that interview and to

7    conclude as quickly as possible.

8         Ms. Harmon, officer, if you're able to, if you can

9    report orally to help move things along.  If you would just

10   let us know when you're ready to proceed, we'll be ready to

11   proceed.

12        MS. HARMON:  Yes, your Honor.  Thank you.

13        THE COURT:  If you want to go into the jury room with

14   Mr. Donziger for privacy, you're welcome to do that.

15        MS. HARMON:  Yes, your Honor.  That would be helpful.

16        THE COURT:  Let us know when you're ready.

17        Thank you.  You're both excused.  See you in a little

18   while.

19        (Recess)

20        Government ready?

21        MS. GLAVIN:  Yes, your Honor.

22        THE COURT:  Thank you.

23        Mr. Donziger, you ready?

24        MR. DONZIGER:  Yes, your Honor, with the caveat that I

25   feel a little uncomfortable not having counsel here, and I'm

J86sDONa

1   wondering if it would make sense to get a federal defender up

2   here.  I don't know where this is heading.

3           THE COURT:  All right.  Well, we are here.  We are

4   going to hear the recommendation of pretrial, and I note the

5   presence of CJA counsel under tomorrow, because counsel under

6   today had a conflict.

7           Mr. Goltzer, thank you for being present

8           MR. GOLTZER:  Good morning.

9           MR. DONZIGER:  So there is CJA counsel present?

10          THE COURT:  There is.

11          MR. DONZIGER:  Can I consult with counsel?

12          THE COURT:  Well, I'm not holding that you are or are

13  not entitled to CJA counsel, but should you request counsel,

14  you fill out and swear to a financial affidavit.  I would

15  consider that application in the ordinary course and rule on

16  it.

17          Also, I'll remind you that pursuant to 18 U.S.C.

18  Section 3006(A), that should it appear that any time that you

19  are not eligible for CJA counsel, you might be required to pay

20  back the funds that are expended.

21          Do you understand that, sir?

22          MR. DONZIGER:  May I be heard on that point?

23          THE COURT:  What would you like to be heard on, sir?

24          MR. DONZIGER:  Well, I am in a position now where

25  there is conditions for pretrial being discussed.

J86sDONa

1          THE COURT:  Yes, sir.

2          MR. DONZIGER:  I need to be represented.  I am

3     unfamiliar with this process.  I'm not a criminal defense

4     lawyer.  I'm a pro se litigant, and if the gentleman is here,

5     maybe you would allow him to talk to me for the limited purpose

6     today of helping me get me through this process so I'm not

7     unrepresented.

8          THE COURT:  Then I will hand down a CJA financial

9     affidavit.

10          MR. DONZIGER:  I would request, your Honor, that I

11     could talk to the CJA attorney prior to filling out the

12     affidavit.  This also raises issues.  The affidavit -- filling

13     out the affidavit, just like the interview with -- I forget the

14     lady's name --

15          THE COURT:  With the officer.

16          MR. DONZIGER:  -- with the officer also raises issues.

17     I'm not trying to cause any trouble here.

18          THE COURT:  OK.  But we are only proceeding in the way

19     we would proceed in any case.

20          MR. DONZIGER:  Well --

21          THE COURT:  As you know, maybe you don't know, in the

22     criminal law, it is the burden of the individual seeking CJA

23     representation to persuade the court that he or she is entitled

24     to it.  One of the ways we determine that is through the

25     financial affidavit.  Everything is proceeding as it would in

1   any case, sir.

2          MR. DONZIGER:  I understand that, but I think this

3   case is a little bit different for this reason:

4          I have assets that have virtually been frozen for

5   various reasons relating to this case.  As a result, I could

6   not retain counsel to come in here today.  I came in here on

7   good faith.  I have never missed a court appearance in ten

8   years.  You can ask Judge Kaplan.

9          I am feeling extremely uncomfortable right now that

10  I am unrepresented.  I don't understand this process.  I

11  expected to come in here and argue for a slight delay so I

12  could get counsel, because there is counsel interested in

13  representing me pro bono.  He is on vacation in Ireland, and he

14  is my counsel in the RICO case.

15         This isn't a delay tactic.  I have interested counsel

16  who wants to represent me.  This is a serious, serious case.

17  OK.  This is criminal.  I get it.  It is highly serious.  I've

18  been dealing with the civil up to this point.  It is now

19  criminal.

20         My wife is here.  I have a kid at home, 13-year-old

21  kid.  I need -- please, I need counsel.  Can I please consult

22  with the gentleman today, swearing the affidavit, just for

23  purposes of getting through this one proceeding so my rights

24  can be protected, and then hopefully I'll be able to get real

25  counsel to come in here?  That would make my life a lot easier

J86sDONa

1    and I would hope the court's life a lot easier.

2              I feel very vulnerable right now standing here

3    unrepresented, completely unfamiliar with this process.  I

4    wrote your Honor a letter yesterday -- I assume you received

5    it -- where I asked for a two-week postponement so I could

6    arrange for counsel.

7              I get this is the normal course.  This is an

8    arraignment.  I understand that.  But the very process of doing

9    an arraignment is also implicating my liberty interest and my

10   rights and I am unrepresented.

11             So I would really implore you to make an exception and

12   allow me to talk to the CJA attorney just for purposes of

13   getting through this procedure today.

14             THE COURT:  Thank you.

15             Does the government have a position?

16             MS. GLAVIN:  Your Honor, no objection to Mr. Donziger,

17   for the simple purpose of consultation with respect to

18   eligibility for CJA counsel, to consulting with Mr. Goltzer,

19   who I understand is present in the courtroom.

20             THE COURT:  Thank you.

21             Mr. Goltzer, would you attend upon Mr. Donziger,

22   please?

23             MR. GOLTZER:  Yes.

24             May we step out to do that?

25             THE COURT:  Yes, sir.  You're welcome to use the jury

J86sDONa

1    room, if you so desire.

2              MR. GOLTZER:  Thank you so much.

3              MR. DONZIGER:  Thank you, your Honor.

4              THE COURT:  Yes, sir.

5              (Recess)

6              MR. GOLTZER:  Thank you, Judge.

7              THE COURT:  Yes, sir.

8              MR. GOLTZER:  May I be heard briefly, even though I

9    haven't been appointed?

10             THE COURT:  Yes, sir.

11             MR. GOLTZER:  Thank you very much.

12             I've had a chance to confer with Mr. Donziger.  Just

13   to bring the court up to date, Mr. Donziger's advised me that

14   he has an attorney who is going to be coming in in two weeks to

15   represent him pro bono.  He is prepared today to continue

16   pro se, but it would be his request that I be permitted -- I

17   have no objection with the government and the court has no

18   objection -- to sit at his table to be advisory counsel, which

19   I'm prepared to do without being appointed, if it please the

20   court.

21             I advised Mr. Donziger, who is requesting a

22   re-adjournment of these proceedings by way of arraignment and a

23   bail hearing, he's asked for a brief continuance.

24             To the extent that the court is not inclined to do

25   that to permit his counsel of choice to come in, I have advised

J86sDONa

1    Mr. Donziger it would be in his best interest to listen to the

2    recommendation of pretrial services and to the government's

3    recommendation with respect to the conditions of release, then

4    he can have an opportunity to discuss it with advisory counsel

5    and formulate a response.

6              That's where we are.

7              THE COURT:  Thank you.

8              Does the government have a position?

9              MS. GLAVIN:  No objection to the proposal by

10   Mr. Goltzer, your Honor.

11             THE COURT:  Very well then.

12             Is there any reason not to proceed with the

13   arraignment and then to hear the recommendation of the pretrial

14   services officer?

15             MS. GLAVIN:  No, your Honor.

16             MR. GOLTZER:  No.

17             THE COURT:  Thank you.

18             Mr. Donziger, would you state your name for the

19   record, please.

20             MR. DONZIGER:  Steven R. Donziger.

21             THE COURT:  How old are you, sir?

22             THE DEFENDANT:  57.

23             THE COURT:  You read, write, speak, and understand

24   English; is that right?

25             THE DEFENDANT:  Yes, ma'am.

J86sDONa

| | |
|---|---|
| 1 | THE COURT:  How far did you go in school, sir? |
| 2 | THE DEFENDANT:  JD. |
| 3 | THE COURT:  Are you currently or have you recently |
| 4 | been under the care of a doctor or a psychiatrist? |
| 5 | THE DEFENDANT:  No. |
| 6 | THE COURT:  Have you been hospitalized or treated |
| 7 | recently for alcohol addiction, narcotics addiction, or any |
| 8 | other type of drug abuse? |
| 9 | THE DEFENDANT:  No. |
| 10 | THE COURT:  Are you currently under the influence of |
| 11 | any substance, such as alcohol, drugs, or any medication that |
| 12 | might affect your ability to understand what you're doing here |
| 13 | in court today? |
| 14 | THE DEFENDANT:  No. |
| 15 | THE COURT:  Thank you. |
| 16 | MR. DONZIGER:  Your Honor, could I just very quickly. |
| 17 | When the officer interviewed me, I was wanted to just |
| 18 | put down the caveat that the information I gave her was to the |
| 19 | best of my recollection, obviously.  She asked me about |
| 20 | liabilities. |
| 21 | THE COURT:  About? |
| 22 | MR. DONZIGER:  My liability, my assets and |
| 23 | liabilities. |
| 24 | THE COURT:  Yes, sir. |
| 25 | MR. DONZIGER:  I neglected to tell her, I forgot that |

J86sDONa

1   I have additional liabilities related to judgments that Chevron

2   has obtained against me post-trial via Judge Kaplan, and they

3   total several million dollars.

4          So I just wanted -- I can't give you the exact number.

5   I've kind of lost track.  I just want to make that clear that I

6   did not give the officer the complete information on that part.

7          THE COURT:  All right.  Officer, before I hear from

8   you, if you want an additional opportunity to confer with

9   Mr. Donziger, you just let me know.

10          MS. HARMON:  Yes, your Honor, but I don't think that

11   will be necessary.

12          THE COURT:  Yes, ma'am.  Thank you.

13          So, Mr. Donziger, do you understand that you have the

14   right to have counsel at all stages of the proceedings,

15   including an appeal?

16          THE DEFENDANT:  I do, yes.

17          THE COURT:  All right.  Again, I'll repeat what I said

18   earlier.  While I am not making a ruling as to whether you are

19   or are not entitled to CJA counsel, should you request such

20   counsel and fill out and swear to a financial affidavit, I'll

21   consider that affidavit in the ordinary course before making a

22   decision.

23          I'll just advise you again that under the statute,

24   18, United States Code, Section 3006(A), that if it appears at

25   any time that you're not entitled to CJA representation, you

J86sDONa

1    might be required to pay back the funds that are expended.

2            Do you understand, sir?

3            THE DEFENDANT:  I do.

4            Just to ask you a question, if I may?

5            The presence of Mr. Goltzer today is not -- he's not

6    here as CJA counsel.

7            THE COURT:  Because of Mr. Goltzer's graciousness in

8    acting as advisory counsel for today.

9            MR. DONZIGER:  I just wanted to be sure, my position

10   is that I expect to get my own counsel of choice and private

11   counsel and soon, and I think the CJA thing will not be

12   necessary.

13           However, it is not 100 percent certain that the

14   private counsel I'm talking to will come in.  There are some

15   issues still to be negotiated.  I expect he will.

16           THE COURT:  Sir, have you received a copy of the order

17   to show cause that was signed by Judge Kaplan on July 30?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Would you like me to read it out loud

20   now in court, or is it sufficient that you have read it and

21   reviewed it?

22           THE DEFENDANT:  It is insufficient, your Honor.

23           THE COURT:  How do you now plead, sir?

24           THE DEFENDANT:  Not guilty.

25           THE COURT:  Thank you.  Won't you be seated.

J86sDONa

1             Counsel, what would you like to do next?

2             Would we like to hear from the pretrial services

3    officer?

4             MS. GLAVIN:  Yes, your Honor.

5             THE COURT:  Officer.

6             MS. HARMON:  Your Honor, would you prefer that I go

7    over all the background information and then provide the

8    recommendation, or just simply the recommendation for bail?

9             THE COURT:  I think it would be most efficient if you

10   would provide the recommendation, and then if anyone has any

11   followup, we'll go from there.

12            MS. HARMON:  Yes, your Honor.

13            It is my recommendation that the defendant be released

14   on a secured bond by cash or property and also to be cosigned

15   by one financially responsible person, and released on pretrial

16   supervision with location monitoring and home detention, a

17   travel restriction to the Southern and Eastern Districts of

18   New York, and for him to surrender his passport within 24 hours

19   and no new application for a passport.

20            THE COURT:  When you say his passport, I take it you

21   mean any passport he has?

22            MS. HARMON:  Yes, your Honor.

23            THE COURT:  All right.  Thank you.

24            What is the government's response, please?

25            MS. GLAVIN:  We would ask for one additional cosigner.

J86sDONa

1      So instead of one cosigner by one financially responsible

2      person, two financially responsible people.

3              THE COURT:  Thank you.

4              Mr. Goltzer, do you want to speak, or does

5      Mr. Donziger wish to speak with respect to the terms of release

6      that are proposed by the officer?

7              MR. DONZIGER:  I would like to speak, but can I

8      consult with Mr. Goltzer first?

9              THE COURT:  Yes, sir.

10             MR. DONZIGER:  Can I go back to the jury room real

11     quick?

12             I'll be just a couple minutes.

13             THE COURT:  Sure.

14             (Recess)

15             Gentlemen, before you begin, I forgot to ask you,

16     Officer, the bond that you're proposing.

17             MS. HARMON:  I would say $800,000, your Honor.

18             THE COURT:  Yes, ma'am.  Thank you.

19             Gentlemen.

20             MR. GOLTZER:  Your Honor, if it is agreeable to the

21     court, I will speak very briefly.

22             THE COURT:  Yes, sir.

23             MR. GOLTZER:  And then, of course, Mr. Donziger may

24     wish to add something with respect to this.

25             We do not believe that a secured bond is necessary.

J86sDONa

1   Mr. Donziger has been coming to this court for a decade.  He

2   has been involved in this particular litigation, which I know

3   the court is familiar with, for 20 or 25 years.  It is still

4   ongoing.

5          There are matters before the Second Circuit by way of

6   interlocutory appeal and direct appeal.  There is a briefing

7   schedule.  He's been representing himself pro se.  If, in fact,

8   he were to abscond, he would be abandoning his wife and child.

9   He is a long-time resident of New York and he would be

10  forfeiting his right, I suspect, to continue with his appellate

11  litigation, and that would destroy everything that he has been

12  working for for over 25 years.

13         I would suggest that a substantial bond is

14  appropriate.  He's prepared to sign it, his wife is financially

15  responsible.  He hasn't had an opportunity to discuss the issue

16  of the bond with her, but based upon the relationship they've

17  had for so many years, I have no doubt that she would be

18  willing to sign the bond.

19         As far as the home detention is concerned, I don't

20  think that is necessary.  I know it is a standard condition for

21  people to be confined to the Southern and Eastern Districts of

22  New York.  I don't expect that is a problem.  If counsel do

23  comes in and wants to have travel authorized, he can certainly,

24  your Honor, and get pretrial's view of that situation.

25         The passport issue is problematic, because even under

J86sDONa

the rulings of the Second Circuit that I've been told about,

Mr. Donziger is permitted to pursue execution of the judgment

in foreign countries.  And he has appointments in Canada, for

example.  So he would need to travel, if he had the court's

permission to do so.

        This is, as Mr. Donziger indicated to you, a rather

unusual situation.  There is nobody who is suggesting that he

be detained.  Certainly there are conditions which are

available to assure that he is going to come back.  No one is

suggesting that he is a danger to the community or a risk of

flight under the circumstances that I have laid out, so I think

that asking him to secure an $800,000 bond, when Exxon has been

engaged -- not Exxon; that's next I guess -- when Chevron has

been engaged in enforcement proceedings over the past 18

months, engaged in extraordinary discovery, and probably knows

more about his assets than he does, it is somewhat unduly

burdensome and unnecessary to ask him to secure it, since most

of his assets by way of bank accounts particularly have been

frozen.  I don't think he could be in a position to do that at

this point.

        But if he ran, I would suspect that he would lose the

right to continue litigating the freezing of those assets and

the validity of the judgments that were imposed by Judge

Kaplan.

        I appreciate and Mr. Donziger appreciates giving me

J86sDONa

```
 1    the opportunity to speak briefly.  I guess I'm advisory

 2    pro bono counsel for the convenience of the court to expedite

 3    the proceeding.  I'm happy to do it.  Mr. Donziger would like

 4    to be very briefly heard.

 5              Thank you, Judge.

 6              THE COURT:  Thank you.

 7              MR. DONZIGER:  Thank you, your Honor.

 8              Your Honor, a couple points I would like to add.

 9              Number one is I have two appeals pending before the

10    Second Circuit.  I don't know if you're aware of that.  One is

11    interlocutory.

12              THE COURT:  You attached a brief and one of them to

13    your letter.

14              MR. DONZIGER:  Exactly.

15              There is a second one based on Judge Kaplan's May 23

16    contempt order.  Briefing is due on September 9.

17              To be clear, those issues raised in those briefs deal

18    with the whole sweep of Judge Kaplan's entire contempt order

19    was civil and obviously criminal.  I get criminal is different.

20    It would happen anyway, even if I won those appeals and Judge

21    Kaplan's civil contempt orders were reversed.  It is relevant

22    and I'm briefing exactly the same issues now before the Second

23    Circuit that Judge Kaplan has used to file this criminal

24    contempt sanction.

25              The other point I want to make is I don't want you to
```

J86sDONa

```
1     get the impression -- although it might be difficult to reverse

2     any opinion you might have about this -- but I am not mocking

3     the courts here.  I have come here for ten years.  I believe in

4     the court system.  I respect the court system.  I have resisted

5     Chevron's efforts to shut this case down through the court

6     system.  That is why I'm here today, obviously, voluntarily.

7              I say that because the idea that I would be confined

8     by the terms of my travel or confined to my house, I think, is

9     wholly inappropriate.  I intend to contest these charges.  I

10    will show up.  I'm going to come with counsel.  I'm assuming

11    that I will get a jury trial.  If that is not sort of where

12    counsel for the government thinks this is heading, I would like

13    to know that, but I'm assuming I'll get a jury trial.

14             The issue of my passport is directly related to what

15    I've described in this sentence.  When Judge Kaplan ruled that

16    the Ecuadorian judgment was unenforceable in the United States,

17    he specifically ruled that it could be enforced in other

18    jurisdictions.  The Second Circuit affirmed that.  As a matter

19    of fact, I was positive that was one of the key factors in the

20    Second Circuit being comfortable with affirming Judge Kaplan's

21    judgment, which was, facts aside, very unusual to go after

22    adversary counsel during an ongoing civil litigation.

23             Lastly, when Judge Kaplan filed his indictment, I was

24    in Canada.  I was in Toronto, where I was having meetings

25    related to judgment enforcement actions in other jurisdictions.
```

J86sDONa

1    I have regular appointments that require me to travel to carry

2    out this aspect of my work that Judge Kaplan said I could do,

3    the Second Circuit validated, and by the way, the Supreme Court

4    of Canada also issued a ruling the right to the Ecuadorians to

5    try to enforce the judgment in that country.

6          So this is legitimate work, and I would ask the court

7    to at least take that into account when imposing conditions of

8    release.

9          What I would propose, if I may, is you say normal

10   course.  This is unfamiliar to me, except obviously I'm

11   learning about it today being here.  But what I would propose,

12   because I don't think this is a normal kind of case, given the

13   long history of my particular role in this, is to allow me to

14   keep my passport, for me to propose when I want to travel to

15   another international place, that I would inform the court or

16   inform pretrial services or whatever the process is, get

17   permission to go for a certain period of time, and be allowed

18   to return.

19         I've probably left this country 150 times since the

20   RICO judgment was filed.  And I recognize that was civil, this

21   is criminal, but there were criminal allegations in the RICO

22   judgment.  I came every day, several weeks of trial, 19 days of

23   depositions.  So I am a person who shows up.

24         I intend to contest these charges.  I don't think I

25   should be treated like any normal person in the normal course.

J86sDONa

1   I would -- I mean, obviously we can do the bond.

2           Home detention, I would urge you not to impose that.

3           Also, I have a son who is 13 years old who needs his

4   father, and I want to be able to go places with him around the

5   city -- basketball, school, that kind of stuff.

6           So I just don't think that is necessary.  I don't

7   think I need to sit in my house all day.  I want to be able to

8   at least go around this area and also be able to travel, as

9   needed, to other jurisdictions to exercise my right and the

10  rights of my clients to try to see this case to completion.

11          THE COURT:  Thank you.

12          Does the government have a position?

13          MS. GLAVIN:  Your Honor, before stating the

14  government's position, could I have an opportunity to consult

15  with the pretrial services officer?

16          Because in the normal course, there is a report

17  generated, and the government, as well as the defense, has an

18  opportunity to review some of the facts that the defendant

19  provided.  I don't have any of that here, so I would like to

20  understand a little bit about it.

21          THE COURT:  Yes, ma'am.  Go ahead.

22          I would just thank the pretrial services officer for

23  expediting the process this morning.

24          MR. GOLTZER:  May I sit in on this discussion?

25          MS. GLAVIN:  No objection.

J86sDONa

1          MR. GOLTZER:  Thank you.

2          MR. DONZIGER:  Your Honor, is there a bottle of water?

3     I need some.

4          THE COURT:  Sure.  We can get some water over here.

5          (Recess)

6          Ms. Glavin.

7          MS. GLAVIN:  Your Honor, with respect to the three

8     conditions that the defense objects to, which would be security

9     on the bond, surrender of the passport, which is a standard

10    condition in this district, and the standard travel conditions.

11         MR. GOLTZER:  Also home detention.

12         MS. GLAVIN:  Also home detention, correct.  Thank you,

13    Mr. Goltzer.

14         Look, the case involves six counts of criminal

15    contempt.  While Mr. Donziger has showed up and I see a very

16    full docket of him showing up and a lot of activity -- and I

17    think we're now up to 2292 in the entry -- this is now a whole

18    new ball game.  This is not a civil proceeding anymore.

19         We're in a criminal proceeding where Mr. Donziger is

20    facing jail time.  On several of these criminal contempt

21    counts, specifically the surrender of the passport, the refusal

22    to turn over devices to a neutral expert solely for the purpose

23    of imaging, the portion of the order that required turning over

24    images to Chevron has been stayed pending appeal.  It is simply

25    noncompliance by Mr. Donziger.  It is virtually undisputed.

J86sDONa

1          So we're dealing with criminal contempt where I think

2     the cases are pretty clear, and Mr. Donziger chose to go into

3     criminal contempt.  So from the government's perspective, he is

4     facing, very likely, jail time in this case, and it is unlike

5     anything he's gone through before.

6          Then you add to that the fact that he has got

7     judgments against him totaling -- now it's about $4 million,

8     with respect to the attorney fee award, on top of the $800,000

9     RICO judgment, and that is not even getting to the coercive

10    fines that were imposed that Judge Kaplan suspended because

11    they weren't having any impact on Mr. Donziger.  There is money

12    issues that Mr. Donziger is facing, criminal issues, and likely

13    prison.

14          And then added to that, your Honor, what I learned

15    from pretrial services about Mr. Donziger's international

16    travel, which I understand he travels approximately once a

17    month to places, not just Canada, but also Ecuador.  And the

18    reason I raise Ecuador is my understanding from a review of the

19    record is that Mr. Donziger has been to Ecuador at least seven

20    times in the last two years.  Ecuador does not have, I should

21    say, reliable extradition process with the United States.  Even

22    a quick search by the court about issues with Ecuador and

23    asylum, if a defendant casts a case in political terms, there

24    is no assurance that that defendant's coming back.

25          Mr. Donziger has established a lot of ties with

J86sDONa

Ecuador, with people very politically active in Ecuador, and a

read -- I know I will be raising this towards the end of the

proceeding, but a read just of his Twitter account and casting

this matter in political terms when, in fact, really what this

proceeding is, in the criminal case, is simply compliance with

court orders.  Put aside what the substance of the Chevron case

is.  It is just complying and willfully disobeying what the

court has asked Mr. Donziger to do.

         This has taken a severe turn into a direction that

Mr. Donziger is not, as he admits, familiar with, and an

understandably scary direction.  One could argue in many ways

that it is coming to a head here for Mr. Donziger.

         So having a bond that is secured to assure his

appearance, as necessary, particularly given the severity of

the allegations and his foreign ties, I think, is important.

         I do think it is important to have someone in addition

to his wife be a cosigner.  A financially responsible person

would also be important.

         With respect to the surrender of his passport,

Mr. Donziger can do what criminal defendants in this district,

most of them, have to do, which is they surrender their

passport.  And the degree to which they want to do

international travel, they can submit an application to the

court stating the reasons for the travel, what the plan is, get

it approved or not approved by pretrial services, and if the

J86sDONa

1     court approves it, the passport could be returned for the

2     limited purpose and then promptly returned when they come back

3     to the United States.  That is the normal course of events for

4     most, if not all, defendants in this district.  So the

5     passport, at a minimum, should be surrendered as well.

6             With respect to the issue of home detention with

7     electronic monitoring, I certainly think there should be a GPS

8     monitor for Mr. Donziger.  And I think the home detention

9     conditions could be worked out with pretrial services such that

10    to the extent he has some family events that he makes known to

11    the pretrial services officer, but that he is home after those

12    events.  His travel would be restricted to the Southern and

13    Eastern District, absent an application to the court.

14            I think that those conditions are standard, they are

15    not unreasonable, and they are not unduly burdensome.  The

16    purpose of securing the bond is to make sure that he shows up

17    in what is a vastly different, more serious proceeding that

18    involves the loss of his liberty.

19            THE COURT:  Thank you.

20            Gentlemen, any further comment?

21            MR. DONZIGER:  I would like to add a couple comments

22    in response to Ms. Glavin's argument.

23            The six counts in Judge Kaplan's indictment -- I just

24    want to be clear where we stand on every one of them.  I don't

25    think they are strong and I respectfully disagree with

J86sDONa

1     Ms. Glavin on that point.

2              The fourth, fifth, and sixth count, your Honor, relate

3     to transfers of my interest to Chevron.  They have been

4     executed, just so you know.  The fourth, fifth, and sixth

5     counts, I'm in compliance right now.

6              Judge Kaplan is looking back and saying that, for a

7     certain period of time, I wasn't in compliance.  That's the

8     basis for making a criminal contempt allegation against me when

9     I'm already in civil compliance.  I find that to be very

10    unusual.

11             With regard to the first count, which is the paragraph

12    four issue, which is to create a list of devices, he has

13    referred that -- I believe I'm in compliance with that.  He has

14    referred that to Magistrate Judge --

15             THE COURT:  Lehrberger.

16             MR. DONZIGER:  -- Lehrberger for proceedings to

17    determine whether I'm in compliance, yet he files a criminal

18    contempt charge on something that he himself acknowledges is

19    still an open issue.

20             With regard to the paragraph five issue, which is my

21    computer and cell phone, I want to be very clear about

22    something.  OK.  The protocol that Judge Kaplan designed is

23    something that I dispute, because it would essentially allow

24    Chevron to get everything I have related to the Ecuador case

25    without regard to any privileges I have or my clients have or

J86sDONa

```
 1    other lawyers in other jurisdictions.  I told Judge Kaplan last
 2    October that I wanted to have appellate review of that order.
 3    It implicates deep constitutional rights.  I believe it is
 4    unlawful.  I know --
 5              THE COURT:  Mr. Donziger, we are not here today to
 6    discuss whether or not the orders issued by Judge Kaplan --
 7              MR. DONZIGER:  I agree.
 8              THE COURT:  -- are correct or not.
 9              MR. DONZIGER:  I agree.
10              THE COURT:  That is not what we're talking about
11    today.
12              MR. DONZIGER:  I'm only saying that because Ms. Glavin
13    brought that up as something relevant to setting conditions of
14    pretrial release.  All I'm trying to say, obviously this is
15    very serious.  The degree of seriousness to me, I believe --
16    given the compliance of four of the six counts right now, the
17    other two I have principal objections to -- does not make me
18    out to be someone who is just thumbing his nose at courts or
19    Judge Kaplan.  I do not believe that is the case.
20              I did not choose to go into criminal attempt.  I have
21    appeals.  She said I chose --
22              THE COURT:  We're discussing now the terms of release,
23    sir.
24              MR. DONZIGER:  Thank you, your Honor.
25              THE COURT:  Thank you.
```

J86sDONa

1            Ms. Glavin, anything else?

2            MS. GLAVIN:  No, your Honor.

3            THE COURT:  Thank you.

4            Counsel, I do agree that this is a new type of

5    proceeding, and although Mr. Donziger has appeared in the civil

6    case, we are in a brave new world now.  He is facing jail time.

7    The weight of the evidence seems to be very strong.

8            I acknowledge Mr. Donziger's place in the community

9    and his community ties, but I'm also quite troubled by

10   Mr. Donziger's past refusal to comply with orders of the court.

11           I am troubled by the frequent travel to Ecuador which,

12   as counsel has pointed out, has less than a reliable system for

13   extradition.

14           I am also concerned that without any security on the

15   bond, there will be no moral imperative or any financial

16   imperative to show up.

17           Accordingly, I will require Mr. Donziger to execute a

18   bond in the amount of $800,000 to be secured by cash or

19   property, for the bond to be cosigned by two financially

20   responsible persons, to impose location monitoring, GPS

21   monitoring, home detention with, as the government has pointed

22   out, conditions sufficient to allow Mr. Donziger to take care

23   of his family relations and family obligations, and to have

24   lawyer-client meetings.

25           Travel will be restricted to the Southern and Eastern

J86sDONa

1     Districts of New York.  In addition, Mr. Donziger shall produce

2     to the pretrial services office all of his passports.  To the

3     extent that he wishes to undertake travel, he will make the

4     application as any other defendant makes for permission to

5     travel internationally or out of the Southern and Eastern

6     Districts of New York.

7              The terms and conditions of release shall be fulfilled

8     not later than this Friday, which is August 9.

9              I think there was one other.

10             Yes, ma'am.

11             MS. HARMON:  Your Honor, we would also request

12    pretrial supervision as well.

13             THE COURT:  And pretrial supervision.

14             MS. HARMON:  Thank you.

15             THE COURT:  Yes, of course.  Thank you.

16             Counsel, I think on the government's letter of

17    yesterday, the government asked the court to remind

18    Mr. Donziger of local criminal rule 2.3.  That rule talks about

19    disclosures with respect to criminal cases.

20             Mr. Donziger, I am going to hand down to you a copy of

21    that rule and remind you that you are required to comply with

22    it in all respects.

23             Is there any other disclosure with respect to the rule

24    that the government is seeking here?

25             MS. GLAVIN:  Your Honor, not at this point.

J86sDONa

1          I would note that with respect to that local rule

2     23.1, it reads with respect to subsections A through E to apply

3     to lawyers in the proceeding.

4          As of now, Mr. Donziger is his own lawyer, and the

5     government would take the position that the public statements

6     that he made last week run afoul of 23.1.  When he gets a new

7     lawyer in the case, we may ask to revisit this, to the extent

8     he is then a party in the case, such that Mr. Donziger, if he

9     wants to make extrajudicial comments that would be disseminated

10    by means of public communication beyond simply a not guilty of

11    the charges, we may be asking for further relief once he

12    becomes a party with a lawyer.

13         THE COURT:  Yes, ma'am.

14         Is there anything to do other than to set a new date?

15         MS. GLAVIN:  Your Honor, in an abundance of caution,

16    we would move to exclude the time under the Speedy Trial Act.

17         THE COURT:  Indeed.

18         Let's find a date first and then we can do that.

19         THE DEPUTY CLERK:  How is August 28 at 11:30?

20         THE COURT:  Any objection to that?

21         MS. GLAVIN:  No, your Honor.

22         THE COURT:  Gentlemen?

23         MR. GOLTZER:  No.

24         MR. DONZIGER:  No.

25         THE COURT:  Thank you.

J86sDONa

1          Ms. Glavin, with respect to the exclusion of time to

2    August 28, is that right?

3          MS. GLAVIN:  To August 28, your Honor, interest of

4    justice.

5          THE COURT:  In order to permit Mr. Donziger to retain

6    counsel, time between today and August 28 is excluded from

7    calculation under the Speedy Trial Act in the interest of

8    justice.  In so doing, I am not ruling with one way or the

9    other as to whether the Speedy Trial Act applies or doesn't

10   apply, but out of an excess of caution, I will exclude the

11   time.

12          Anything else, Mr. Goltzer?

13          MR. GOLTZER:  Thank you, Judge.

14          There is one modification that Mr. Donziger would

15   request.  With respect to securing the bond, he and his wife

16   are the joint owners of the cooperative shares, and he will

17   need to confer with a civil lawyer about how to effectuate

18   using that apartment as security.  I understand the equity is

19   sufficient to do that, but it may not be able to be

20   accomplished by Friday.

21          Would your Honor consider giving him a week?

22          THE COURT:  With respect to?

23          MR. GOLTZER:  Just that condition.

24          THE COURT:  For just that condition, yes.

25          MR. GOLTZER:  Thank you.

J86sDONa

1          So by Friday, he will arrange with the electronic

2     monitoring, turn over the passport, and the remaining

3     conditions.

4          Thank you so much.  Thanks for hearing me, Judge.

5          THE COURT:  Mr. Goltzer, thank you for your

6     graciousness in appearing this morning as an advisory counsel.

7          MR. GOLTZER:  Always a pleasure to see you, Judge.

8          As Stan Laurel said to Oliver Hardy, It's a fine mess

9     you've gotten us into.

10          THE COURT:  Good morning, Mr. Goltzer.  Thank you.

11          Thank you, counsel.  Good morning.

12          (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25