# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

RITA M. GLAVIN
PARTNER
(212) 574-1309
glavin@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

901 K STREET, NW
WASHINGTON, DC 20001
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

August 21, 2019

**VIA ECF**

Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        Re:     <u>United States v. Steven Donziger</u>, No. 19-cr-561 (LAP) [11-cv-691]

Dear Judge Preska:

        I write as special prosecutor in reply to the August 17, 2019 letter filed by counsel for defendant Steven Donziger. The prosecution disagrees that no further action is necessary to ensure that the security condition on the defendant's personal recognizance bond (the "Bond") has been satisfied. If defendant Donziger seeks to secure the Bond by pledging shares associated with his cooperative apartment,[1] then the applicable CPLR § 5222 restraining notices must be modified by an order of this Court.[2] The prosecution does not object in principle to the defendant seeking modification of the applicable notices to allow the defendant to pledge particular property to secure the Bond during the pendency of this criminal matter.

        CPLR § 5222 states that a judgment debtor "is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except . . . upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated." CPLR § 5222(b). Here, the defendant's pledge of his shares associated with his cooperative apartment as security for the Bond creates an encumbrance on property in which defendant has an interest. See <u>Thompson v. Rampersaud</u>, 47 A.D.3d 920, 921 (2d Dep't 2008) ("the defendant encumbered title when she pledged the property as security for a bail bond for a relative against whom federal charges were pending."). Absent modification, that pledge violates the April 16, 2018 restraining notice personally served on the defendant and attached as Exhibit A to the prosecution's August 16, 2019 letter. See <u>Cordius Tr. v. Kummerfeld</u>,

---

[1] The Defendant may also satisfy the security condition if, for example, one of his sureties posts sufficient security as required by the Bond.

[2] The Second Circuit in <u>CSX Transp., Inc. v. Island Rail Terminal, Inc.</u>, 879 F.3d 462, 471 (2d Cir. 2018) has found that "the phrase 'an order of the court' in CPLR § 5222(b) refers *only* to the court out of which the restraining notice issued." The prosecution does not agree with the defense assertion that the Bond itself is "an order of the Court" sufficient to modify the restraining notices pursuant to CPLR § 5222(b).

No. 99-cv-3200, 2009 U.S. Dist. LEXIS 98889, at *31 (S.D.N.Y. Oct. 23, 2009) (finding defendants in civil contempt where defendants encumbered property by conveying mortgage interests to third parties after receipt of restraining notice).

Because a restraining notice is an injunction prohibiting the transfer of the judgment debtor's property, the defendant "is not free to disregard it and decide for itself the manner in which to proceed" See Matter of Kurland v Agresti, No. 152744/2019, 2019 N.Y. Misc. LEXIS 2294, at *5 (Sup. Ct., N.Y. Cty. May 3, 2019) (citations omitted); see also Cordius Tr., 2009 U.S. Dist. LEXIS 98889, at *38 ("If [the judgment debtors] had wished to challenge the restraining notices, [they] should have moved this Court to vacate or modify the notices."). Indeed, on May 23, 2019, Judge Lewis A. Kaplan found defendant Donziger in civil contempt for violating the April 16, 2018 restraining notice, by making several transfers of money out of personal and law firm business accounts after having been served with that notice. Dkt. #2209 in 11-cv-691 at ECF pp. 61-64. Judge Kaplan cited to six separate transfers of funds made in May and June 2018, including three transfers of "ostensibly client funds" in the amount of "$35,000…to his personal account, $15,000 to his wife, and $3,620.43 from a personal account or accounts to American Express to cover his credit card bill." *Id*. As to each of these transfers, the Court concluded:

> One of two things necessarily is true. . . .The first option is that Donziger exercised his discretion to use his alleged [client]-granted authority to make the payment. The second is that he decided to take those ostensibly client funds for himself or his own benefit. In either case, Donziger had a right to or at least an interest in the funds no later than the moment at which he made the decision to make each of these three transfers. Accordingly, each of those three transfers violated the restraining notice.

*Id.* Judge Kaplan found that Donziger had "not diligently sought to comply with the restraining notice, not least because Donziger commingled client funds with his personal and law firm assets and failed to keep client funds in properly designated accounts." *Id.*

The defense assertions that the defendant can transfer the property in violation of the restraining notices because Chevron Corporation ("Chevron") allegedly "disavowed to Judge Kaplan that it would seek to pursue the apartment," that "the doctrine of laches should bar Chevron" from pursuing its claim, or that Chevron would not have priority over the confessions of judgment signed by the Donzigers, are therefore beside the point.[3] Chevron's intentions with respect to enforcement of its interest do not modify or limit the scope of the restraining notice served on the defendant, which remains in effect and which the defendant has already been found to have violated.

---

[3] Chevron also had stated only that it did not intend to execute its judgment lien against the Donzigers' apartment "at this time," and "reserve[d] the right to do so to the full extent allowed by law at a later date." Dkt. #2240 in 11-cv-691 (June 17, 2019) at ECF p. 11.

      If the prosecution should seek to act upon the pledged security, the restrictions on transfer imposed by the restraining notices served on the 245 West 104th Street Housing Corporation (the "Co-op") and/or Wells Fargo Home Mortgage Inc. ("Wells Fargo") would likewise prevent transfer of possession of the cooperative shares associated with the apartment or of title to the apartment, making the proposed security ineffectual and valueless.[4] Under these circumstances, defendant has not established that he or his sureties have posted cash or property sufficient to satisfy the $800,000 security condition, as required by the Bond. Accordingly, the prosecution respectfully requests that the Bond be secured by unrestrained assets from the defendant or his sureties to satisfy the security condition.

      Respectfully submitted,

      *s/ Rita M. Glavin*
      Rita M. Glavin

---

[4] The prosecution asked the defense whether the Co-op has physical custody of the shares that the defendant owns and seeks to pledge as security. The defense responded on August 21, 2019 that the Co-op has the original share certificate, which confirms that the restraining notice would prohibit transfer because that entity has custody or control over the property. As for Wells Fargo, because Wells Fargo is forbidden to "make *or suffer*" any sale, assignment, transfer or interference with any property in which the judgment debtors have an interest under CPLR § 5222, the prosecution's understanding is that Wells Fargo may also be restrained from taking action, such as consenting to any sale of the Donzigers' apartment.