```
    Jbp1dona

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4          v.                              19 Cr. 561 (LAP)
                                            11 Civ. 691 (LAK)
 5  STEVEN DONZIGER,

 6              Defendant.                  Oral Argument

 7  ------------------------------x

 8                                          New York, N.Y.
                                            November 25, 2019
 9                                          3:22 p.m.

10
    Before:
11
                    HON. LORETTA A. PRESKA,
12
                                            District Judge
13

14                          APPEARANCES

15  RITA M. GLAVIN, Special Prosecutor
    SAREEN K. ARMANI, Special Prosecutor
16
    ANDREW J. FRISCH, ESQ.
17      Attorney for Defendant

18

19  ALSO PRESENT:   LEA HARMON, Pretrial Services Officer

20

21

22

23

24

25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

Jbp1dona

1              (Case called)
2              THE COURT:  Is the government ready?
3              MS. GLAVIN:  Yes, your Honor.  Rita Glavin and Sareen
4    Armani for the government.
5              THE COURT:  Good afternoon.
6              Officer, thank you for being here.
7              MS. HARMON:  Yes, your Honor.
8              THE COURT:  And is the defense ready?
9              MR. FRISCH:  Yes, your Honor.  Good afternoon.  For
10   Mr. Donziger, Andrew Frisch.
11             THE COURT:  Yes, sir.  How would you like to proceed?
12             MR. FRISCH:  Well, your Honor, perhaps I can open by
13   making some remarks in support of the applications that are
14   before the Court.
15             THE COURT:  Yes, sir.
16             MR. FRISCH:  And there are two applications, separate
17   but obviously related.  One is for elimination of monitoring
18   and confinement, and the other is modifications to permit
19   travel for the holiday weekend coming up.
20             There's a narrow issue before the Court today, which
21   is Mr. Donziger's risk of flight, if he poses any risk of
22   flight, and if he does, whether it's amply secured by the
23   $800,000 bond secured, already in place.  Even though this
24   case, in my view, presents a rather rich menu of issues of law,
25   of fact, of policy, of judicial authority, that's a narrow

issue that brings us here this afternoon.  And something dawned on me after I had a chance to review the most recent back-and-forth of letters with Ms. Glavin, which I think is important, and it's this:  If Mr. Donziger flees, he'll be committing a felony, on a charge which the prosecutor has told us she believes is properly dealt with as a misdemeanor.  Even then Mr. Donziger has been completely engaged in this case since he first appeared before your Honor on August 6th, when you'll recall he traveled here from Canada to appear.  He's attended four days of his disciplinary hearing, engaged in issues that are relevant to this criminal case.  He's filed a brief in the Second Circuit since August 6th.  On August 6th, you gave him three weeks to find an attorney, and on August 8th, I found myself sitting at his dining room table meeting him for the first time, reviewing the criminal charges and beginning what has become a lengthy and continuing discussion of a somewhat complex case.

    Let me propose this as a way of looking at the issue that's before the Court today, and hopefully it will be of help to your Honor.  There's a continuum.  On one side of the continuum are the people who support Mr. Donziger, his actual sureties, the people who have already signed, his prospective sureties, the human rights community, environmentalists.  On the other side of the continuum is Chevron, Gibson Dunn.  In the middle is this shaded area.  Like there's two Venn diagrams

and this intersection which is shaded, and that's Mr. Donziger being engaged in this case.  His supporters find that admirable; the other side maybe not.  But he's engaged.  And that's the opposite of risk of flight.

Ms. Glavin says, well, if there are to be more sureties, they need to have skin in the game -- her phrase in one of her letters.  For 25 years Mr. Donziger has had his skin, his heart and his soul, in this cause, which is bigger than him.  So after 25 years he would abandon his family, his friends, his sureties, his supporters, his cause for what the government, what Ms. Glavin tells the Court is properly dealt with as a misdemeanor?  Doesn't make any sense to me.

She says, well, what's the big deal?  He's able to take his kids to school, he gets to go out and get a haircut, he gets to go shopping, he can meet with his lawyer, he has freedom notwithstanding the confinement and the monitoring, so what's the big deal?  The big deal, in my view, is the Bail Reform Act, which requires that the least restrictive conditions be imposed when they're required.  There's no risk of flight here.  None.  And if there is, it's amply secured by the $800,000 bond secured by someone's home.  I'll come back to that in a second.

I have tremendous respect for Officer Harmon, who is here today.  She strikes me as an especially professional pretrial services officer.  I think they're all pretty good, in

1   my experience.  She strikes me as being especially good.  But
2   with all due respect to her, I don't think a monitored curfew
3   is necessary in this case, for all the reasons I've already
4   stated in my letters and today.  It's just not necessary.  He's
5   not going anywhere.  He's engaged in this case and wants to
6   continue to be engaged in this case, however it might end.
7            There's an $800,000 bond, as your Honor knows, secured
8   by the home of a man named Bill Twist, spelled the same as
9   *Twist and Shout*.  The house is in San Francisco.  Mr. Twist is
10  here today.  There are other people here today.  These people
11  know Mr. Donziger.  They stand behind him.  There are three who
12  have already signed his bond.  There are others who would do so
13  if it's necessary.  But frankly, Judge, I just don't see in
14  this case, for all the reasons, for the manner in which he's
15  plainly engaged in a case which Ms. Glavin says is properly
16  dealt with as a misdemeanor, that we need to have more in place
17  than the bond that's already secured by the property.
18           THE COURT:  Thank you.
19           Ms. Glavin.
20           MS. GLAVIN:  Your Honor, what Mr. Frisch is proposing,
21  after we were here three months ago and addressed these issues
22  at a lengthy initial hearing, is that Mr. Donziger's conditions
23  be -- simply get rid of the monitoring, and there shouldn't
24  even be a curfew.  And right now he has home detention, but
25  home detention, as your Honor said on August 6th and as we

1    proposed, home detention, he works with the pretrial services
2    officer such that if he has things he needs to do on a daily
3    basis involving his family, let pretrial know and they can
4    approve it on a case-by-case basis.
5         I want to go back to the risk of flight and where we
6    were on August 6th and now three months later.  The only thing
7    that's changed is, in my view, what was in the letter I
8    submitted to the Court on Thursday night.  When we were first
9    here, the issues your Honor addressed, after hearing from
10   Mr. Donziger, who emphasized that he had always appeared at
11   every conference and hearing -- and I agreed with that, based
12   on my review of the record -- the issue, as your Honor found,
13   was not that he has roots in the community and that he has
14   shown up and has ties here; the issue was strong international
15   ties to Ecuador, including to very high-level government
16   officials that would include the former president of Ecuador
17   Correa.  This is not a few people he's friendly with but some
18   high-level officials there.  Extensive travel to Ecuador.
19        There's also extensive international travel.  At the
20   time we appeared here before your Honor, Mr. Donziger had been
21   directed to surrender his passport to the clerk of this court
22   months earlier.  It was a June 11th order, by Judge Kaplan.  He
23   did not do so.  On August 6th, he surrendered his passport.  We
24   then came to find that Mr. Donziger at one point in time had
25   had two active passports, at the same time, which you're not

1    permitted to do.
2             Mr. Donziger also had a history, as your Honor found,
3    of not complying with court orders.  No one contests that.
4    That's just the case here.
5             He's also facing a whole new world, which is a
6    criminal trial.  How is criminal contempt classified?  It's
7    been referred to as a *sui generis* offense.  It's a crime.
8    There is no maximum penalty.  When I wrote the letter to your
9    Honor on Thursday, I had spent, over the last six weeks, a lot
10   of time reviewing the record in this case, as well as reviewing
11   the case law in this circuit dealing with other criminal
12   contempt cases, and what did become clear to me -- and I
13   thought it was important to inform the Court of this -- is
14   Mr. Frisch -- and he pointed it out, in *United States v.*
15   *Cutler*, about what other attorneys' sentences had been in this
16   type of case, and then I looked more broadly than that.  I
17   thought it was important that your Honor know that we don't
18   plan to seek a sentence of more than six months' imprisonment.
19   But that's ultimately up to your Honor, and your Honor having
20   to review the record and decide that.  That's your Honor's
21   determination.  In my view he still presents a risk of flight,
22   for a couple of reasons, most of which I just stated, but added
23   to this is that Mr. Donziger's world right now is he's facing
24   the loss of his license to practice law.  He has every
25   incentive to show up at a disciplinary proceeding at this point

in time.  He's facing the loss of his license to practice law.
He is still facing a civil lawsuit seeking enforcement of an
$800,000 judgment.  His assets -- and this became clear in the
correspondence as Mr. Donziger was seeking to have the bond
secured, but his assets have been frozen, including his
apartment and his bank account, in an effort to see that
judgment paid out, as the litigant is entitled to, in the
*Chevron* matter.

So he is now faced with his finances being tied up, he
is faced with being disbarred, he is facing criminal jail time,
and his civil case is still going on; and putting that to the
side, he's still not in compliance with a court order in that
case.  But our case isn't about any type of coercive sanction.
This case is about whether or not in the past Mr. Donziger
wilfully violated court orders.  And I think there is no
question that there's an abundance of court orders that have
been violated.

So what is his incentive to stay?  At any time in the
25 years he's been litigating these cases, he's never been at
this particular crossroads, which is that he can't enforce the
judgment that he spent so much of his life on.  He can't afford
that here in the United States.  He's not allowed to profit
from it.  He's now facing a criminal trial with criminal
sanctions.  He's facing the loss of his license.  He has
extensive foreign ties, and particularly to a country that is

1   not, as is recognized, the best with extradition.  So to say

2   that the $800,000 secured bond should be enough, he's still a

3   flight risk, and I don't think much has changed with respect to

4   that.

5           THE COURT:  Thank you.

6           Mr. Frisch.

7           MR. FRISCH:  Judge, I just want to make a couple of

8   quick points.

9           The people who have already signed Mr. Donziger's

10  bond, the 27 or so who are willing to do so if it becomes

11  necessary, most of these people are very sophisticated.

12  They're Harvard law professors; there's a professor from the

13  University of California at Davis; there are other

14  well-respected veteran lawyers.  And they've looked at this

15  case and are willing to tie their reputations to him publicly.

16          Whether or not he has complied with orders or not in

17  the way that is willful is what we're here to determine.  And

18  we will do it with his presence because he is completely

19  engaged in doing so, as he has demonstrated.  The people who

20  are willing to stand behind him know him, and the notion that

21  he would betray their trust and his family, and his friends,

22  and the cause to which he's devoted his life doesn't make any

23  sense, where he faces, according to Ms. Glavin, no more than

24  six months, at least as she sees the case, and she's the person

25  prosecuting it.  We understand your Honor has broad discretion.

1   But that's what she says the case is worth, in her view, at
2   this moment.
3        On the passports, let me say this:  There's a contempt
4   charge that has to do with the passport, and we'll be talking
5   about that as we go forward and what his defense to that may
6   be.  But when he came before this Court, you'll recall that he
7   surrendered his active passport, and Ms. Glavin complained that
8   he had not surrendered two other passports which were inactive,
9   and as I said at the time -- your Honor may recall, I said it
10  in the courtroom -- on one of my first meetings with
11  Mr. Donziger in his apartment -- the first or second, I don't
12  think it was the first, it may have been the second -- he
13  showed me these inactive passports.  He handed them to me and
14  essentially said, What do I do with these?  Am I supposed to
15  turn these over?  I looked at them, confirmed that they were
16  inactive, and essentially said to him, in substance, surrender
17  them next time you see Officer Harmon or -- so he was acting in
18  good faith at that point.  To the extent there was a delay in
19  surrendering them, it's my bad.  I'll know for next time when I
20  have a client with inactive passports to surrender all of them.
21       I cannot say enough, everyone who knows Mr. Donziger,
22  people who are here, other people who are not able to be here
23  today, know how engaged he is in this, however this turns out.
24  He's devoted his life to this.  And the notion that he would
25  just up and head for the hills because he's facing the penalty

Case 1:19-cr-00561-LAP   Document 44   Filed 12/11/19   Page 11 of 13      11
Jbp1dona

which Ms. Glavin believes is a misdemeanor just doesn't make any sense to me. He may ultimately be right or wrong about the charges that are before the Court, but he's here to answer them, just as he's pursuing the appeal and just as he's pursuing his defense before the disciplinary committee.

THE COURT: Thank you.

MS. GLAVIN: Your Honor, I should add one point, that with respect to the request about Mr. Donziger's traveling over Thanksgiving, I have no objection to that. So long, again -- this is a long relationship with pretrial services. As long as pretrial services can sign off on all of the details to that, no objection.

THE COURT: It's my understanding that pretrial services does not consent to travel by folks under electronic monitoring. Is that right, Officer?

MS. HARMON: Yes, your Honor, that's correct.

THE COURT: Yes, ma'am.

Had you finished, Ms. Glavin?

MS. GLAVIN: No.

THE COURT: Thank you.

MS. GLAVIN: I had known that, your Honor, and my understanding is that in that case, a defendant can apply to the Court for relief from that. Mr. Frisch spoke to me about it, and I don't have an objection, as long as the details and exactly where he is and who he's with are clear.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jbp1dona

        THE COURT:  Did you want to add anything, Mr. Frisch?

        MR. FRISCH:  Your Honor, no, thank you.

        THE COURT:  Officer, did you want to add anything?

        MS. HARMON:  No, thank you, not unless the Court has any questions for me.

        THE COURT:  Okay.  Thank you.

        Counsel, I think we are in the same position we were in August when we were together.  We know that Mr. Donziger has ties to Ecuador; we know indeed to high-ranking government officials.  We know he has traveled to Ecuador on numerous, numerous occasions.  We know that he has been found to have failed to comply with numerous court orders in the past.  I think I read in the recent exchange of letters that Officer Harmon did not know that Mr. Donziger has still failed to comply with Judge Kaplan's March 5 order.

        With respect to the people who have offered to be co-signatures and the folks who have already signed the bond, again, as Ms. Glavin points out in her letter, because the bond is fully secured, these folks are really facing no monetary risk.

        With respect to the engagement that counsel talks about, certainly Mr. Donziger has every incentive to fight the efforts to disbar him and to fight the civil suit.  What has changed, however, is that Mr. Donziger is facing a criminal trial and facing the real prospects of incarceration.

Jbp1dona

1        For these reasons, I find that he remains a flight
2    risk, and accordingly, the request to eliminate monitoring and
3    home confinement is denied.
4        For the same reasons, in connection with the pretrial
5    services office's practice, the request for travel is also
6    denied.
7        Is there anything else you want to do today, counsel?
8        MR. FRISCH:  No, your Honor.
9        THE COURT:  All right.  I'll see you next week,
10   friends.  Thank you.
11                              o0o