K161donc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        19 Cr. 561 (LAP)
                                         11 Civ. 691 (LAK)
5   STEVEN DONZIGER,

6              Defendant.                Oral Argument

7   ------------------------------x

8                                        New York, N.Y.
                                         January 6, 2020
9                                        10:04 a.m.

10

    Before:
11
                   HON. LORETTA A. PRESKA,
12
                                         District Judge
13

14                     APPEARANCES

15  RITA M. GLAVIN, Special Prosecutor
    BRIAN P. MALONEY, Special Prosecutor
16
    ANDREW J. FRISCH, ESQ.
17       Attorney for Defendant

18

19

20

21

22

23

24

25

K161donc

1           (Case called)

2           THE COURT:  Is the government ready?

3           MS. GLAVIN:  Yes, your Honor.  Rita Glavin and Brian

4    Maloney for the prosecution.

5           THE COURT:  Good morning.

6           And is the defense ready?

7           MR. FRISCH:  Andrew Frisch for Mr. Donziger.  Your

8    Honor, good morning.

9           THE COURT:  Good morning.

10          How would you like to proceed, counsel?

11          MR. FRISCH:  Well, I'll start it off.

12          After I received Ms. Glavin's letter of Friday

13   afternoon, I consulted over the weekend with a well-known, and

14   I believe highly regarded, expert in legal ethics, who's

15   prepared to write an opinion to assist the Court on what I

16   consider to be a very serious issue, and one which I approach

17   with certain sensitivity under the circumstances.  I won't

18   repeat everything that's in my letter; however, it bears saying

19   that there's an issue of disinterestedness here, under the

20   particular circumstances of this case, which cause us concern.

21   I don't think it's the same as a civil litigator taking on a

22   new case and doing a conflict check.  Certainly there are

23   elements of conflicts and loyalty involved in this, but as the

24   article of Professors Green and Roiphe -- I hope I'm

25   pronouncing that correctly -- points out, there's a dimension

K161donc

1   of this bigger than just kind of loyalty that could come up in

2   the context of civil litigation.  In this case, the people

3   seated in front of me are the sovereign.  They are part of a

4   firm that stands in the shoes of the United States Department

5   of Justice in this case and acts as the sovereign.  So I think

6   that's the starting point of my concern.

7          My view is that three things -- some combination or

8   all of three things should happen.  I think there needs to be a

9   judicial inquiry.  I think there needs to be disclosure of what

10  the facts are.  I don't think the prosecutor can make this

11  determination herself and say, don't worry, everything's fine.

12  I think the facts have to be exposed to scrutiny by your Honor,

13  and by an advocate, myself.  I think a hearing might be in

14  order, where the relevant people testify, as I lay out in my

15  letter.  And I think I'd want an opportunity to brief this

16  issue on an expedited basis to be sure, so that once the record

17  on this issue is complete, whatever that means under the

18  circumstances, I have an opportunity to go back, go back to my

19  expert and get an opinion and provide it to the Court with

20  further briefing.

21          I'll leave it at that, except to say this:  I've been

22  very concerned about how to raise this issue and how to

23  proceed.  I raised it in what I thought was a sensitive way

24  with the prosecutors first.  The absence of disclosure upon my

25  doing so causes me concern, but I did attempt to do this in a

K161donc

1    way that I thought was sensitive and appropriate, but I felt

2    that the prosecutors' response left me no choice but to write a

3    letter to the Court and, in light of Ms. Glavin's letter on

4    Friday afternoon, to write the letter that I was able to put

5    together this past weekend.  I think there's an issue here that

6    needs to be addressed.

7              THE COURT:  Ms. Glavin.

8              MS. GLAVIN:  Yes, your Honor.

9              Let me just start first with what this case is about.

10   This case is about a criminal prosecution, United States v.

11   Steven Donziger, who is charged with six separate violations of

12   court orders, criminal contempt.

13             With respect to Mr. Frisch's claim that -- and I want

14   to address this first with respect to Judge Kaplan.  With

15   respect to Mr. Frisch's claim that Judge Kaplan is in any way

16   coordinating with the prosecution team or seeking to influence

17   the prosecution team in its decision making, in its strategy,

18   that is false, and it is irresponsible of Mr. Frisch to be

19   making that claim.  The prosecution team, as we prosecute this

20   case, does not seek Judge Kaplan's input in our decisions and

21   the steps that we take, and Judge Kaplan does not offer it or

22   seek to provide it.  Period, full stop.

23             Mr. Frisch raised this issue in a meeting with me in

24   September of 2019, when we talked about whether this case could

25   have been resolved, and I explained to him that the prosecution

K161donc

1    team will make the decisions.  Just as when I was a federal

2    prosecutor from 1998 until 2010, I applied independent,

3    impartial decision-making principles that were guided by

4    Department of Justice guidance on this.  So that was made very

5    clear to Mr. Frisch in September.

6         Mr. Frisch is not entitled, nor is Mr. Donziger, to

7    know every communication that the prosecution has with anybody

8    in this case.  What he's entitled to is the discovery that he

9    is allowed under the Constitution, under the law, and under the

10   rules.  So let me make that very clear, because I think

11   Mr. Frisch's claim is irresponsible and disturbing.

12        Secondly, with respect to Mr. Donziger's belief that

13   he has the right to examine my own or my law firm's ties with

14   all of their clients and relationships, including business,

15   professional, and personal, that's not what the law requires.

16   He's not entitled to this.  I understand that Mr. Donziger is

17   unhappy that he is being prosecuted criminally in this case.

18   That does not mean that he gets to interview the prosecutor to

19   decide whether the defense believes that the prosecutor has

20   conflicting loyalties, is independent, or impartial.  No

21   criminal defendant is allowed that anywhere in this country,

22   whether it be a Rule 42 proceeding or any place else.

23        What I find interesting about Mr. Donziger raising

24   this is that this is a pattern -- we expected this would happen

25   in this case, but it is a pattern by Mr. Donziger of attacking

K161donc

```
1    judges, attacking lawyers, impugning their reputations, and

2    attacking parties, at every step of this case.

3              Bringing it back to what this case is about is whether

4    or not Mr. Donziger has wilfully violated orders of the court.

5    Neither myself nor Mr. Maloney nor Ms. Armani, who are the

6    three prosecutors appointed to represent this case, nor does my

7    law firm, Seward & Kissel, have existing client relationships

8    that would result in the three appointed prosecutors having

9    conflicting loyalties or having anything that would cause the

10   independence of our decision making on behalf of our client,

11   the United States in this case, to be anything but impartial

12   and objective.

13             With respect to Mr. Frisch's request that there be

14   some advance or expedited motion schedule, we ask that this

15   case proceed in the normal course of any criminal case in this

16   district court, which we are now at the sixth appearance before

17   your Honor.  A trial date of June 15th was penciled in at

18   Mr. Frisch's request.  I understand that May 4th is also a date

19   that's available to your Honor.  We would ask for an

20   accelerated trial date of May 4th of 2020.  Let's get this case

21   going.  No more delay, no more throwing mud, no more making

22   filings that seem to rely on things such as ZoomInfo to allege

23   that one of my law firm partners was on the board of directors

24   of Chevron, which is false.

25             Your Honor, we simply ask that the Court proceed.
```

K161donc

1    We've made our representations to the Court.  We'd like to

2    proceed on a regular motion schedule.

3              THE COURT:  Mr. Frisch.

4              MR. FRISCH:  Your Honor, may I.

5              Mr. Donziger is not raising these issues, I am.  The

6    information that I found online was a result of my Googling and

7    my own research that I've attached to the letter that I sent

8    yesterday.

9              This is not a question about anyone being unhappy.

10   It's a question about constitutional due process and fairness

11   under the peculiar protocols that bring us here; and in a case

12   where, just two weeks ago, Judge Kaplan made rulings, including

13   not staying a collateral civil contempt hearing and making a

14   ruling on a Fifth Amendment issue that bears on this criminal

15   case.

16             It's not enough for Ms. Glavin to say everything's

17   fine and to attack me, or to attack Mr. Donziger.  What is

18   required is a disclosure as to what these interests are.  I

19   understand that the ask of putting people on the stand is a big

20   ask, so to speak, but I do so only because we don't know

21   anything except what Ms. Glavin says is not a big deal and the

22   public record, which shows that Seward is involved in the oil

23   and gas industry, has ties to Oaktree, the vice chairman of

24   which is on the Chevron board.  I understand that the ZoomInfo

25   piece about her partner may be inaccurate, but my concern --

K161donc

1       THE COURT:  Not probably inaccurate.  We have the

2  Chevron disclosures as to who's on its board, right?

3       MR. FRISCH:  Agreed, it is inaccurate, but my concern

4  is that there is a relationship there between Mr. Timpone and

5  Oaktree and Chevron that I know nothing about other than what I

6  can find online, and that's not enough for your Honor to

7  evaluate the disinterestedness of Seward or my own ability to

8  advocate for my client.

9       THE COURT:  Sounds very attenuated, even taking your

10 word, as you have on page 2 of your January 5 letter, even

11 taking the facts as set out in items 1 and 2.

12      MR. FRISCH:  What I can tell the Court is this:  As I

13 said earlier, and as I say in my letter, I've been in contact

14 with an expert in legal ethics.  Upon laying out the facts,

15 even in light of Ms. Glavin's letter, with regard to this

16 partner at Seward & Kissel, the expert is troubled and is

17 prepared, pending completion of this issue, if the record

18 stands as it is -- it will be what it is -- to explain to the

19 Court why the record as it is is a problem, just based on my

20 research of publicly available information and without knowing

21 more about the relationship to which Seward has unique and

22 unlimited access and won't disclose.

23      I raise the issue about Judge Kaplan with special

24 concern.  I have great respect for the bench.  I've been doing

25 this, practicing in New York for 35 years.  I don't make claims

K161donc

```
1    lightly, and I do it with great care.  I hope the Court
2    understands that.  But I'm also concerned about this case.
3    There are things about the history of this case that we have
4    not yet had an opportunity to brief.  It hasn't been
5    appropriate yet to do so.  And I think there's a context of all
6    of this that is troubling.  And that's my concern.  And my
7    concern is elevated, not mitigated, by the absence of
8    disclosures about the Seward relationship with Chevron and
9    Oaktree and so forth and about exactly what Judge Kaplan's role
10   is, and I say that with due respect to the bench generally and
11   to Judge Kaplan specifically.  I'm representing a client.
12       THE COURT:  Okay.  But two things.  Number one, in
13   your letter, you say on page 2, "Ms. Glavin's letter
14   establishes that her contacts with Judge Kaplan are
15   continuing."  Ms. Glavin just stood up and represented that --
16   and I can't quote it exactly, but -- Judge Kaplan does not seek
17   to offer, does not offer his advice with respect to how this
18   case goes.  And I don't know what else there is here.  And I
19   don't see that Ms. Glavin's letter establishes contacts with
20   Judge Kaplan that are continuing.
21       MR. FRISCH:  Well, Ms. Glavin is stating conclusions.
22   We don't know the facts.  What I am expressing in my letter is
23   that the absence of disclosures I believe justifies an
24   inference that perhaps is not justified if we knew the facts
25   other than the prosecutor's conclusions about this.
```

K161donc

1          THE COURT:  Well, but counsel just told us Judge

2    Kaplan does not seek to, hasn't offered, blah, blah, blah.

3          MR. FRISCH:  Those are conclusions.  I don't know the

4    nature, the extent, the frequency of the contacts, why they're

5    in contact at all.  The record of the contempt charges are a

6    matter of extraordinarily voluminous submissions by the parties

7    in the civil case and by Judge Kaplan himself.  I'm not quite

8    sure, in the spirit of Rule 42, and the relevant case law about

9    contempt and recusal and all of that, why there's any contact

10   and why we have to be talking about what Ms. Glavin believes is

11   actually going on.

12         Let me give you one example as to what I think is a

13   way of looking at this issue, if your Honor will permit.

14         Let's say there's one or more of the criminal contempt

15   charges that are legally insufficient.  There's a problem with

16   proceeding to trial on them.  Does Ms. Glavin, Ms. Glavin, have

17   the power to, on her own, dismiss them or not proceed on them?

18   She's told me she doesn't.

19         MS. GLAVIN:  That is not --

20         MR. FRISCH:  Excuse me.

21         MS. GLAVIN:  That is not true.

22         MR. FRISCH:  It is true, but excuse me.  My

23   understanding, so -- but consider it.  If she wants to dismiss

24   it, does she have to get approval from Judge Kaplan?  I don't

25   know.  My concern is colored not just by what's been going on

K161donc

1    here, but by the history of this case, and that's something

2    we'll litigate one way or the other as we go forward, and I

3    understand that.  There may be differing views as to what the

4    background of this case is and what it shows and what it

5    doesn't show.  My concern, given the history, especially what's

6    happened lately, is whether or not Judge Kaplan is speaking to

7    the prosecutors and, if so, what about.  I understand there's

8    only so much I can do to get at that issue.  All I can do as an

9    advocate, Judge Preska, is call it out and see what the

10   response is.  I don't know what more I can do to get at that

11   particular issue.  But it remains very troubling to me.

12           On the issue of disinterestedness, I certainly want an

13   opportunity, in an expedited fashion -- I'm not looking to

14   delay the trial date, and I'll talk more about the trial date

15   in a second -- to report back to my expert, say, this is what

16   happened in court today, can you write an opinion as part of a

17   submission that I'll make to Judge Preska?  I at least want to

18   be able to do that before we take a step further, because I

19   think even on the record that I have, this is very troubling.

20   There's no motivation from this table about delay.  The

21   motivation is getting this right and accommodating,

22   unfortunately, my own schedule, which has me on trial in the

23   Eastern District that I told the Court about at our last

24   appearance.  That prevents me from moving up this trial.  I

25   will tell the Court that that case involves voluminous

K161donc

1    discovery.  There are three assistant US attorneys on that

2    case, there are thousands of chats, and there's a discovery

3    issue that's been teed up that may require that the scheduling

4    of that trial be tweaked somewhat, and so your Honor is also

5    aware that the case before Judge Korman, before whom I've

6    appeared on many, many trials in my life, and is a very

7    methodical and deliberate judge so I want to factor that into

8    my availability.  The June 15th date, whether it was put in

9    with pencil or pen, is the date that we should keep, most

10   respectfully.

11          All I want --

12          THE COURT:  If that case gets adjourned, though,

13   May 4.

14          MR. FRISCH:  If that case gets adjourned.  Fair

15   enough.  I don't think it will, Judge.  Fair enough.  I'll let

16   the Court know if there's any change that would result in that

17   case -- in the scheduling of that case being tweaked more than

18   a week or two.  I don't think it will, but I'll let you know if

19   it does, of course.

20          THE COURT:  Yes, sir.

21          MR. FRISCH:  Look, I understand that these are

22   difficult and sensitive issues.  I've tried to do my best to

23   raise them and discuss them in a professional way with respect

24   to all the parties, including Ms. Glavin, but I did what I

25   could.  I don't know that I could have done more.  And at this

K161donc

1    point, I still think the issue with Judge Kaplan is a problem.

2    I don't know what I can do to get at it.  I don't know that I

3    can call him as a witness to ask him questions.  What I do know

4    is with regard to the other issue, I want an opportunity to go

5    back to my experts and make a more formal submission to your

6    Honor.

7              MS. GLAVIN:  Your Honor, Mr. Frisch's claim that I

8    informed him that I don't have the ability to make prosecution

9    decisions to dismiss the case or counts of the case is false.

10   Mr. Frisch met with me in September of 2019, along with my

11   associate here, Brian Maloney, and along with Sareen Armani.

12   And in that meeting with me he said, Ms. Glavin, suppose you

13   came to the conclusion that you could not meet the evidence

14   required for these counts, that it was insufficient; do you

15   believe you have the power to dismiss them?  And I said I

16   believe I have the power of any prosecutor to go to the Court

17   and move to dismiss.  Of course your Honor would have to grant

18   that motion, but that is what I understand my assignment to be.

19   That is how I am conducting it.  For Mr. Frisch to suggest that

20   I said anything else to him is simply false and irresponsible.

21             With respect to Mr. Frisch's claims about Oaktree,

22   Oaktree has nothing to do with this case.  It is attenuated and

23   farfetched.  The issue is whether or not myself, Mr. Maloney,

24   or Mr. Armani, have conflicting loyalties in this case that

25   could cause our independence and our impartiality to be

K161donc

1   questioned.  The Supreme Court in *Young v. United States ex*

2   *rel. Vuitton* laid out what the standard was.  In a Rule 42

3   proceeding, where a federal judge appoints a private attorney

4   to be a prosecutor, that private attorney cannot be

5   representing a party that has a direct interest in the outcome

6   of that proceeding.  I am very aware of what the ethics rules

7   are about conflicts, about lawyers exercising independent

8   judgment, about lawyers doing the right thing.  I am aware of

9   ethics guidance regarding prosecutors and the need to do the

10  right thing and ensure justice is done.  That is what is being

11  applied here.  Mr. Donziger and Mr. Frisch are not entitled to

12  conduct interviews of me or anybody else who might be appointed

13  in a particular case, full stop.

14          The last point I want to raise is, there is another

15  disturbing allegation that Mr. Frisch made in his letter, which

16  said that he believes that the law firm of Gibson Dunn &

17  Crutcher has provided information to the prosecution team --

18  this is at page 3 on the bottom -- which is false and

19  misleading.  That letter follows on to a letter Mr. Frisch sent

20  me on December 19 of 2019, which said, "I am also concerned

21  about Gibson Dunn.  The firm's conduct over the years, in my

22  view, has crossed the line, advancing positions, perhaps even

23  to you, that are false and misleading."  Mr. Frisch never

24  addressed this allegation with me after he sent this letter.  I

25  would ask Mr. Frisch, if he has information to support what are

K161donc

1    very serious allegations against lawyers and members of the

2    bar, to bring those issues to my attention.  If he believes

3    that someone is providing false information to a prosecutor in

4    a federal prosecution, I'd like to know about it.  Please share

5    that with me.  We are aware of what our prosecution

6    responsibilities are with respect to *Brady* and *Giglio*, and we

7    will do so.

8            And there is one last point I'd like to raise.  With

9    respect to Mr. Frisch's letter on December 19 of 2019, I want

10   to recount for the Court the events that led up to this letter.

11   I contacted Mr. Frisch before the holidays, knowing that we

12   were going to have this conference on January 6th.  And I

13   reached out to him and I said, look, Mr. Frisch, could we have

14   a conversation before the next court conference to talk about

15   if there's a way to resolve this short of a trial.  So we set

16   up a call for December 19th in the afternoon.  And then that

17   morning I received this letter from Mr. Frisch.  Most of that

18   call was devoted to back-and-forths about whether or not we

19   could resolve this case.  And Mr. Maloney was with me during

20   the course of the phone call.  There was no discussion about

21   the third issue with respect to Gibson Dunn.

22           With respect to the issue on Judge Kaplan, what

23   Mr. Frisch was asking is that he wants to know about any and

24   all contacts that the prosecution had with Judge Kaplan, or

25   with chambers.  I told him he's not entitled to that.  He'll

K161donc

1    get what he's entitled to under the law and under discovery.

2           And then with respect to the issue of ties to Chevron,

3    the question I posed -- because this was the first time

4    Mr. Frisch had raised this with me, the question I posed to

5    Mr. Frisch was:  When you say that one of my law partners has

6    been a member of the board of Chevron, which law partner is

7    that?  And he told me the name of the law partner, Mr. Timpone.

8    Then we ended the call.  I said, Mr. Frisch, you're going to

9    get what you're entitled to under the law from the prosecution.

10   That's it.  We finished the call.

11          I then sent Mr. Frisch an email later that afternoon

12   saying, let's have a call before our next conference on

13   January 6th, to talk about what motions we might be making in

14   this case.  Mr. Frisch didn't get back to me, and then was too

15   busy to have the call.

16          He then dropped, without any notice to me, this letter

17   on December 31st, which seems to be par for the course in this

18   case.  I had sought to engage with Mr. Frisch.  There is no

19   issue that's been off the table for discussion with Mr. Frisch.

20   But to the extent he wants things that he's not entitled to,

21   he's not going to get them.  There is no need, in our view, to

22   go down the road for Mr. Frisch to talk about every

23   conversation that I've ever had with Judge Kaplan that relates

24   to this case.  Suffice it to say, as I made the representation

25   to the Court, the prosecution does not seek Judge Kaplan's

K161donc

1    input with respect to our prosecution decisions or our

2    strategy, and Judge Kaplan does not weigh in on our prosecution

3    decisions or strategy.  We perform independently in what we do.

4    And the same is true with respect to Gibson Dunn, your Honor.

5            THE COURT:  Mr. Frisch.

6            MR. FRISCH:  Thank you, Judge.

7            Very briefly, as your Honor may or may not know,

8    Ms. Glavin and I have known each other a long time.  We were in

9    the trenches together on a significant trial a few years ago.

10   I'm not sure that's a good or bad thing in the current context.

11   But we've managed to work well together in the past.  I imagine

12   we will in the future.  However, I stand by what I said word

13   for word under penalty of perjury as an officer of the court.

14           It was the second conversation I had with Ms. Glavin

15   in which Ms. Glavin said that it was not within her discretion

16   to dismiss the charge, that her mission was to prosecute.  I

17   don't want to bore the Court with "he said, she said."  We'd be

18   here all day.  I just want to protect myself.

19           THE COURT:  But it is correct that to dismiss, you

20   have to bring it before the Court, right?

21           MR. FRISCH:  Yes, your Honor.

22           THE COURT:  All right.

23           MR. FRISCH:  Your Honor, here's the bottom-line issue

24   in what I again repeat are difficult issues to raise, and one

25   of sensitivity, which I appreciate, which is, I don't know the

K161donc

1    facts.  I know what I found publicly available.  I renew my

2    request to the Court to conduct a judicial inquiry to get at

3    the facts.  I understand that could raise various issues.

4    There are ways to do it.  But something needs to be done to

5    establish whether the prosecutors are disinterested, as they

6    must be.  I renew that.  Barring that, I would ask for an

7    opportunity -- and as I say to the Court, I will do it on an

8    expedited basis -- to get with my experts and make a more

9    formal submission so the Court at least has that benefit.

10              THE COURT:  Anything else?

11              MS. GLAVIN:  No, your Honor.  We would just simply ask

12   to just set the motion schedule for the case.

13              THE COURT:  All right.  With respect to Mr. Frisch's

14   request for additional disclosure, in my view the items that he

15   has set out at Nos. 1 and 2 on page 2 of his January 5 letter

16   are way too attenuated to require any additional disclosure.

17   We know that the item 3 about Mr. Timpone is not correct based

18   on the listing of the actual directory of Chevron.

19              With respect to contacts with Judge Kaplan, I am

20   satisfied with the prosecutor's representations with respect to

21   that.

22              Accordingly, in my view, there is nothing else left to

23   be done here.

24              I would like to talk about the motions that we have to

25   make so that we can get things in line for an early trial date

K161donc

1    if in fact we have to go to the May 4 date.  I take it you

2    folks have not discussed what motions you want to make; is that

3    right?

4              MS. GLAVIN:  We have not, your Honor.  What I did

5    raise with Mr. Frisch is, in terms of motions, I was

6    envisioning motions being -- the first round of motions being

7    if there are motions to challenge the charges, hear the order

8    to show cause, and then there would be a separate motion

9    schedule as we came up to trial with respect to trial-related

10   issues such as motions *in limine*.

11             THE COURT:  Do we anticipate motions directed to the

12   sufficiency of the charges, Mr. Frisch?

13             MR. FRISCH:  Yes.

14             THE COURT:  When do you want to do that?

15             MR. FRISCH:  Here's what I would propose.  First of

16   all, in chronological order, what I hope to do and expect to do

17   is to make the submissions to which I made reference earlier,

18   for the Court's benefit.  Perhaps in style that's a motion for

19   reconsideration, but at least it's a matter of record, and I'll

20   do that, as I say, on an expedited basis within the next --

21   outside two weeks.

22             With regard to issues that are more on the macro

23   category as it relates to this case, as opposed to the micro

24   category --

25             THE COURT:  Maybe we could call it the merits

K161donc

1    category.

2            MR. FRISCH:  That's fair.  Merits category, protocol

3    category.  I would propose that I get those in by February 14.

4            THE COURT:  Ms. Glavin, how long do you want to reply

5    to that?

6            MS. GLAVIN:  I'm taking a look at my calendar, your

7    Honor.

8            THE COURT:  You people with those fancy electronic

9    calendars can't see anything.  Much easier to have paper.

10           MS. GLAVIN:  There is something to be said for that.

11           Motions by February 14th.  We'd ask for March 6th,

12   your Honor, for any opposition.

13           THE COURT:  Okay.  Response?

14           MR. FRISCH:  Let me propose a date, with the

15   understanding that if the trial that I'll be involved in or

16   expect to be involved in causes me problems, I'll make an

17   appropriate application to the Court.  But I obviously want to

18   get everything briefed to your Honor because the issues are

19   somewhat unusual.  I would say, whatever the date is, two weeks

20   from March 6th.  I guess that would be about March 20th.

21           THE COURT:  Okay.  That's fine.  But we need to bear

22   in mind that the motions have to be read and decided and then I

23   know you're going to have a whole other round of motions, and

24   if it turns out we're looking at May, it's going to have to be

25   lickety split.  So let's just keep that in mind.

K161donc

1                    Anything else today, friends?

2                    MR. FRISCH:  Not for Mr. Donziger, no, thank you.

3                    MS. GLAVIN:  No, your Honor.

4                    THE COURT:  To the extent anyone argues that the

5     Speedy Trial Act applies, what do you want to do?

6                    MS. GLAVIN:  Your Honor, yes, the prosecution would

7     move to preclude time under the Speedy Trial Act, without

8     conceding that the Speedy Trial Act applies to this matter.

9                    MR. FRISCH:  And I have no objection, Judge.

10                   THE COURT:  All right.  So time is excluded until the

11    beginning of briefing.  Time will then be suspended during the

12    pendency of the briefing.  And let's assume we have a hearing,

13    although I don't make that decision today, two weeks after the

14    reply.  So time will be excluded until two weeks after the

15    reply, which is April 3rd.

16                   Anything else, friends?

17                   MR. FRISCH:  No, Judge.  Thank you.

18                   THE COURT:  Good morning, friends.  Thank you.

19                              o0o

20

21

22

23

24

25