K5IKDONC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          19 CR 561 (LAP)
                                           Telephone Conference
5   STEVEN DONZIGER,

6              Defendant.

7   ------------------------------x

8   CHEVRON CORPORATION, et al.

9              Plaintiffs

10

             v.                          11 CV 691 (LAK)
11                                        Telephone Conference
    STEVEN DONZIGER, et al.
12
             Defendants.
13
    ------------------------------x
14
                                          New York, N.Y.
15                                        May 18, 2020
                                          11:30 a.m.
16
    Before:
17
                   HON. LORETTA A. PRESKA,
18
                                          District Judge
19

20                       APPEARANCES

21  SEWARD & KISSEL
    BY:  RITA GLAVIN
22       BRIAN MALONEY
         SAREEN ARMANI
23       Special Assistant United States Attorneys

24  ANDREW J. FRISCH
    RICHARD H. FRIEDMAN
25       Attorneys for Defendant Steven Donziger

K5IKDONC

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good morning.

3          On the record, please, Andrew.

4          We are here to discuss a variety of issues that the

5     parties have written letters about.  Does anybody wish to be

6     heard further on any of the issues on our agenda today?

7          MR. FRISCH:  Your Honor --

8          THE COURT:  Yes, sir, Mr. Frisch.

9          MR. FRISCH:  This is Mr. Frisch.

10         I just wanted to put on the record, your Honor, first

11    of all, to the extent that you need me to, that Mr. Donziger --

12    I discussed with Mr. Donziger whether he wanted to call in for

13    this call, and to the extent necessary, he waives his

14    appearance, I waive his appearance on his behalf.

15         THE COURT:  Yes, sir.  Thank you.

16         Does anyone wish to be heard further on the issues on

17    our agenda?

18         MR. FRISCH:  Your Honor, there's a number of issues.

19    I just want to identify them and maybe speak to one or two of

20    them, if your Honor will permit.

21         One of the issues is the timing of the trial, which I

22    have set forth our position on that in our -- in the letter

23    that I sent to the Court on May 4th.

24         THE COURT:  Yes, sir.

25         MR. FRISCH:  I believe that was the date of the

K5IKDONC

1  letter.

2          I also, during the course of this call, depending on

3  how the scheduling issues are resolved, want to be heard on an

4  application -- a renewed application to eliminate electronic

5  monitoring.

6          The only other thing I want to put on the record is:

7  In your Honor's order of May 7th, your Honor denied

8  Mr. Donziger's motion for a jury trial, but left open the

9  possibility that your Honor, if I'm reading your Honor's

10  decision correctly, left open the possibility that your Honor

11  might conclude that a greater penalty was possible and might,

12  at that point, reconsider the issue of a jury trial and whether

13  this case is properly treated as a misdemeanor or a felony.

14          Ms. Glavin's most recent letter states that she has

15  nothing more to add on that.  I just want to make sure that

16  I've stated our position in light of your Honor's order, which

17  is that while we maintain our position with regard to a jury

18  even if the penalty is up to six months, but even that aside,

19  we believe the defendant has the right to know what he's

20  charged with, to know what the penalties are, and I haven't

21  found any authority for the notion that a judge, upon denying a

22  right to a jury trial, under our circumstances, could then, at

23  some point, change his or her mind with regard to what the

24  penalty is.  I just wanted to make sure that I state that view

25  for the record and leave it at that.

K5IKDONC

1      THE COURT:  Yes, sir.  Thank you.

2      Does the prosecution wish to be heard on that, or

3  anything else that's on our agenda?

4      MS. GLAVIN:  Yes, your Honor, just briefly on that

5  issue.

6      With respect to the Court's May 7th, 2020 decision,

7  the government did not read the Court's decision that way.  The

8  government read that the Court was clearly stating that if the

9  Court were to decide, prior to trial, that the penalty

10  Mr. Donziger would face was no more than six months in prison

11  or a $5,000 fine, that he would not be entitled to a jury

12  trial.  However, the Court did not rule on whether or not there

13  would be -- whether or not Mr. Donziger would be subject to

14  more than six months' imprisonment.  So I did not read the

15  Court's order in the way that Mr. Frisch had just described.

16      THE COURT:  Thank you.

17      Mr. Frisch, anything further?

18      MR. FRISCH:  Yes, your Honor.  I have the order -- the

19  Court's order in front of me.  Your Honor, as I read it, your

20  Honor denied the motion for a jury trial and said that "If the

21  Court concludes" -- and I'm reading from the opinion -- "If the

22  Court concludes before trial that, in the event of a

23  conviction, it would not impose a sentence above the six months

24  or $5,000 threshold, Mr. Donziger will receive a bench trial.

25  Mr. Donziger's request for a jury trial is, therefore, denied

K5IKDONC

1    subject to renewal pending the Court's determination of the

2    potential sentencing and fine range."

3         I stand by my position, which is that a defendant

4    needs to know what he's charged with, what the penalties are,

5    and, your Honor, having denied his application for a jury

6    trial, as it stands now, the maximum that he faces is six

7    months' imprisonment, and I'm not aware of any authority that

8    would permit your Honor to change that at this late date.

9         THE COURT:  Anything else, counsel?

10        MS. GLAVIN:  Not from the government, your Honor.

11        THE COURT:  Thank you.

12        First, with respect to the trial date:  Although the

13   prosecution has informed us all that it will be ready for trial

14   on June 15, the scheduled trial date, I certainly take

15   Mr. Donziger's point that the current pandemic makes it

16   impossible to hold any trial, jury or bench, in mid-June.

17   Accordingly, the trial date will be adjourned to Wednesday,

18   September 9.

19        With respect to discussion of punishment:  In

20   Mr. Frisch's reading of the order, as he noted, the Court

21   denied the motion for a jury trial, but on the bases argued by

22   the defendant in the motion.  Separately, however, the Court

23   has reviewed the parties' submissions on the topic of possible

24   punishment, and although 18, U.S.C., Section 401 does not

25   prescribe any maximum penalty, a review of the cases,

K5IKDONC

1    particularly United States v. Cutler, 796 F. Supp. 710

2    (E.D.N.Y. 1992), persuades the Court that, if convicted,

3    defendant should be sentenced to no more than six months'

4    imprisonment or a $5,000 fine.  Accordingly, the trial will be

5    by the Court.

6            With respect to the motions in limine, counsel, would

7    you be kind enough to confer and propose a briefing schedule

8    for those motions, ending at least a month before the trial

9    date, so as to allow adequate time for resolution of the

10   motions?  Any reason you people can't do that?

11           MS. GLAVIN:  Not from the government's side, your

12   Honor.

13           MR. FRIEDMAN:  Your Honor, this is Mr. Friedman.  May

14   I ask a quick question?

15           THE COURT:  Yes, sir.

16           MR. FRIEDMAN:  I have not done a whole lot of bench

17   trials over the years, and every judge prefers different things

18   with regard to motions in limine in bench trials.  I am going

19   to assume and ask -- I guess the question is:  Would you prefer

20   just the major issues to be flagged or every issue we could

21   possibly think of be flagged in a motion in limine ahead of

22   time?  I guess that's my question.

23           THE COURT:  I hope we would use some discretion and

24   not call for briefing on every little nit that might arise.  As

25   I note in Mr. Frisch's letter, dated May 4th, at the bottom of

K5IKDONC

page 1, he notes that Mr. Donziger expects to make motions in

limine to preclude reference to any of Judge Kaplan's factual

findings from the RICO trial or otherwise or to any portion of

the opinion of the Court of Appeals affirming the judgment and

then obviously also depending on what other people do.  I

expect those would be the main issues.

          Similarly, the prosecution noted two different motions

in limine that it expected to make, so I would expect you

folks, in keeping with the tenor of those suggested motions, to

use some discretion in doing it, particularly since it will be

a bench trial.

          MR. FRIEDMAN:  Thank you.

          THE COURT:  Is that sufficient?

          MR. FRIEDMAN:  The way I should have asked it, I've

had some judges say we don't need motions in limine since it's

a bench trial, so you've clarified for me.  Thank you.

          THE COURT:  Okay.  But I think we'll all be better off

if these major issues are resolved in a considered manner prior

to trial.

          MR. FRIEDMAN:  Agreed.  Thank you.

          THE COURT:  Yes, sir.

          Now, with respect to its being a bench trial, does

Mr. Donziger request special findings?

          MR. FRISCH:  Your Honor, I have not discussed that

specific issue with him, and I'd want to do so before I take a

K5IKDONC

1    position, so if I could have that opportunity, and we can

2    advise the Court by letter?

3            THE COURT:  Yes, sir.  Please do.  If it turns out

4    that that is the request, would you be kind enough to confer

5    with the prosecution and suggest a date in advance of trial for

6    the submission of proposed special findings?

7            MR. FRISCH:  Yes.

8            THE COURT:  Okay.

9            Other than the request regarding electronic

10   monitoring, is there anything else you people want to discuss?

11           MR. FRISCH:  Your Honor, I have one thing to put on

12   your Honor's radar.  I'll tell what you it is --

13           THE COURT:  Yes, sir.

14           MR. FRISCH:  -- and then propose a way to proceed.

15           As it currently stands, I have a jury trial in the

16   Eastern District scheduled for August 15th.  It will definitely

17   be a jury trial.  It's not going -- I have no reason to believe

18   the case will be disposed of without a trial.

19           It seems to me that, despite the optimism that I think

20   we all want to have, it is unlikely we are going to have jury

21   trials in August.  What I would propose to the Court, in light

22   of the date of September 9th, is that I wait a few weeks, see

23   where we are -- it's mid-May -- maybe early June, revisit this

24   issue with the Court, see where things are with the Eastern

25   District, that is, and report back.  As I say, it seems to me

K5IKDONC

1    unlikely that a jury trial is going to happen in either the

2    Southern or Eastern Districts in August, so I don't think it's

3    reason for concern right now, but I certainly wanted your Honor

4    to know about it and put it on your Honor's radar.

5          THE COURT:  Yes, sir.  I expect that the Southern

6    District will be issuing some guidance as we go along, but I

7    share your view that there will be not jury trials in August.

8          Is there anything else, friends?

9          Mr. Frisch, do you want to be heard with respect to

10   electronic monitoring?

11         MR. FRISCH:  Yes, your Honor.  Thank you.

12         There's a variety of reasons why electronic monitoring

13   and home confinement should no longer be required.  As your

14   Honor knows, it has been our position from the beginning of the

15   case that it was unnecessary.  Certainly once I came into the

16   case, it was my position that it's unnecessary for all the

17   reasons I have previously stated, which I incorporate by

18   reference in these remarks.  But I want to highlight a few

19   things, the first of which is your Honor's finding today that

20   the maximum penalty that he faces is six months' imprisonment,

21   and he's been on home confinement now, I believe, about ten

22   months.

23         Since the last time your Honor visited this issue, the

24   referee in the disciplinary matter related to this criminal

25   case found Mr. Donziger's testimony at the hearing to be candid

K5IKDONC

1    and clear, with no sign of evasiveness.  The referee himself, a

2    former Southern District assistant, credited Mr. Donziger's

3    supporters who testified; Mr. Donziger has the support of 29

4    Nobel Laureates and many others, all of which demonstrates his

5    state of mind of engagement on the very issues that are raised

6    by this criminal case.

7            One of the things that we've spoken about in prior

8    discussions on this issue is international travel and Ecuador.

9    Well, international travel is especially difficult right now.

10   In many places, it's impossible.  Since we last spoke about

11   this issue, our lives have changed, the world has changed,

12   because of the pandemic, and especially in Ecuador, which,

13   according to the headlines, is an epicenter of COVID-19, one of

14   the countries worst hit, certainly in South America, if not the

15   world.  It is currently in its second month of lockdown.  There

16   are international news stories about bodies literally littering

17   the streets.  And so I think that the notion -- while I've

18   always believed that the notion of, like anywhere, is

19   far-fetched, certainly to Ecuador, which is the specific

20   country to which the prosecutor has previously referred, is

21   just not possible at this point, let alone that Mr. Donziger

22   would have to cross eight international borders without a

23   passport.

24           Your Honor made reference earlier in this call to the

25   various compassionate release applications that your Honor is

K5IKDONC

1    dealing with.  I have multiple motions for compassionate

2    release in various stages.  I had one granted in the Eastern

3    District.  And so we're all keenly aware that our prisons are

4    in dire conditions and struggling in this crisis, including

5    prisons in our area, Otisville, FCI Danbury, FCI Fort Dix, and

6    I think the resources of pretrial services can be far better

7    devoted than tracking Mr. Donziger's comings and goings from

8    his apartment.  He is not a risk of flight; he's not going

9    anywhere.

10           And, for these reasons, I would ask the Court to

11   revisit your earlier ruling and remove electronic monitoring

12   and home confinement as conditions of his pretrial release.

13           THE COURT:  Thank you.

14           Does the government wish to be heard?

15           MS. GLAVIN:  Yes, your Honor.

16           With respect to his pretrial release conditions, the

17   Court found, on August 6th, and again on November 25th, and

18   again on December 4th, that Mr. Donziger poses a risk of

19   flight, for the reasons the Court stated on the record on those

20   three different occasions.  And Mr. Donziger's flight risk is

21   also set forth in the government's submissions from

22   November 13th, November 21st, and December 10th, and we believe

23   those reasons still exist with respect to Mr. Donziger.

24           The trial date is September 9th.  Mr. Donziger, as we

25   get closer to trial, I think, flight risk becomes actually more

K5IKDONC

| | |
|---|---|
| 1 | of an issue than less of an issue.  And then with respect to |
| 2 | the disciplinary matter, I would note that the disciplinary |
| 3 | committee has appealed Judge Horan's decision to the First |
| 4 | Department.  So it's the government's position that, for the |
| 5 | reasons the Court stated on the record, as well as in the |
| 6 | government's multiple submissions on this issue, that the |
| 7 | conditions remain in place. |
| 8 | THE COURT:  Thank you. |
| 9 | Mr. Frisch, anything else? |
| 10 | MR. FRISCH:  Yes. |
| 11 | We're less than a month from the scheduled trial date. |
| 12 | I believe today is May 18th.  Trial, as it was scheduled at the |
| 13 | beginning of this call, was less than a month away. |
| 14 | Mr. Donziger is here, as he has been since he first showed up |
| 15 | in court in late July/early August 2019.  He's simply not going |
| 16 | anyplace.  The scheduled trial on September 9th shows that if |
| 17 | the current conditions stay in place, he will be on home |
| 18 | confinement for 13 months, for what the Court has now said |
| 19 | subjects him to punishment of no more than six months. |
| 20 | And there's another issue, which is a difficult one |
| 21 | for the country, but certainly made perhaps a bit easier here, |
| 22 | at least not as difficult, and, that is, the future of prisons, |
| 23 | and how they're going to be used, and to what extent.  There's |
| 24 | an increasing debate in light of the very dire circumstances |
| 25 | that are going on right now, and if some commentators are to be |

K5IKDONC

1    believed, will get worse.  So he simply has no incentive to

2    flee.  And, for those reasons, and those previously stated, I

3    stand by my application.

4                    THE COURT:  Thank you.

5                    Anything else from the government?

6                    MS. GLAVIN:  No, your Honor.

7                    THE COURT:  Thank you.

8                    Counsel, nothing really has changed of significance

9    from the Court's prior findings that the defendant is a risk of

10   flight.  I noted in the past that that was based on the

11   defendant's history of violating court orders, based on his

12   strong ties and extensive travel to Ecuador, and the fact that

13   this is a criminal case where the defendant faces jail time, I

14   take Mr. Frisch's note that today the Court has set six months

15   as the maximum period of imprisonment in the case of a

16   conviction, but prison time is prison time.

17                   The only other changed circumstance is the outbreak of

18   COVID-19.  As we all know, and as counsel has alluded to,

19   residents of New York have strongly been encouraged to stay in

20   their homes.  What Mr. Donziger is requesting is the opposite;

21   that is, to go out into the community where the risk of

22   infection is higher.  If that is the current request, it does

23   cast some doubt on the good-faith in which the request is made,

24   but, in any event, based on my prior findings of his risk of

25   flight, the request to delete electronic monitoring and home

K5IKDONC

1   confinement is denied.

2          Is there anything else you'd like to discuss today,

3   counsel?

4          MR. FRISCH:  Yes, your Honor.

5          THE COURT:  Yes, sir.

6          MR. FRISCH:  Mr. Donziger is in his Upper West Side

7   apartment, which I have visited.  It is not an extravagant

8   apartment; it is a typical one, one-and a half, two-bedroom

9   apartment, at most, it's not a big place.  He's there with his

10  wife and his eighth grade son.  His eighth grade son is home

11  from school.  There's nowhere to go.  He can't hang out with

12  his friends the way he might usually.  Plainly, he's not going

13  to school.  All that he has to do is to go out with

14  Mr. Donziger, walk around the neighborhood on the Upper West

15  Side, get a breath of fresh air now that the weather is a

16  little nicer than it has been, or at least a little warmer,

17  play basketball.  And, needless to say, Mr. Donziger is

18  protective of his wife and son and would prefer that he be the

19  one who goes, meets the delivery person downstairs, if food is

20  delivered, or goes to the supermarket, or the pharmacy, or

21  whatever errands there need to be.

22          So, I'd ask the Court to consider a curfew rather than

23  home confinement, so that he can leave his apartment with his

24  son, walk around the neighborhood, for the son's benefit at

25  least, if not for Mr. Donziger's, to stay on the West Side, the

K5IKDONC

```
 1  Upper West Side, between 96th Street and 116th Street.  I think
 2  that's where Columbia is.  Mr. Donziger, to refresh the Court's
 3  recollection, is on 104th and Broadway.  I think a curfew
 4  requiring that he be at home by 10:00 o'clock at night until
 5  6:00 a.m. in the morning, with the ankle bracelet remaining on,
 6  would be sufficient to address the Court's concerns, but also
 7  address the reality of somebody in confinement under these
 8  circumstances and the attendant difficulties it places on his
 9  day-to-day life and especially on his family.
10              THE COURT:  Thank you.
11              Ms. Glavin, do you wish to be heard?
12              MS. GLAVIN:  Your Honor, with respect to the curfew,
13  again, Mr. Donziger -- the Court's findings on risk of flight
14  are still there, and the curfew means that Mr. Donziger is out
15  from 6:00 a.m. to 10:00 p.m. at night, which would be 14 hours
16  of him being unaccounted for.  And pretrial services has worked
17  with Mr. Donziger when he gives notice of where he has to go
18  for certain approved activities.  The Court already put in a
19  condition on the home detention with electronic monitoring that
20  he can leave consistent with family obligations, but they have
21  to be preapproved.
22              So, I don't think there needs to be any change at this
23  time.
24              THE COURT:  Mr. Frisch?
25              MR. FRISCH:  He's not unaccounted for.  He has the
```

K5IKDONC

1    bracelet on, which enables pretrial services to track him.  If

2    he were of a mind to leave, this matter, in which he is so

3    invested and has been invested for so long, he would have done

4    it, he would have cut off his bracelet, like that other person

5    who fled to Ecuador that Ms. Glavin raised a number of months

6    ago and just left.  He's not going anywhere.  He's fighting

7    these charges.  He's defending himself.  He has the support of

8    many, many people, who are accomplished, around the world.

9    It's not just that the grievance committee is appealing to the

10   First Department -- that's fine -- but the referee, an

11   experienced guy who's a former Southern District assistant,

12   heard and saw Mr. Donziger testify, saw him in the flesh, heard

13   what he had to say, fully aware of what the grievance

14   committee's allegations are and what the allegations are in

15   this case, and he, nonetheless, credited Mr. Donziger, found

16   him to be candid, and clear, and not evasive, and recommended

17   that his suspension be lifted, the suspension of his bar

18   license, his license to practice law, be lifted.  Maybe that

19   will be overturned, maybe it's not, but the fact is that an

20   independent fact-finder heard and saw him testify and found him

21   to be completely credible.

22          Our current circumstances are very difficult.  I have

23   a client who has at Fort Dix who was released by an Eastern

24   District judge who had a significant medical impairment.  I

25   have other clients for whom I'm in the process of seeking

K5IKDONC

1   compassionate release right now, all of them housed in the

2   New York area, and there's simply no reason why pretrial

3   services has to spend a second of time monitoring this guy as

4   he comes and goes from his Upper West Side apartment.  It's not

5   necessary.

6           There's no bad-faith here from our part.  It's just

7   not necessary to have a lawyer, who faces a misdemeanor charge,

8   who has the support, and I remind your Honor, has proffered

9   multiple other sureties, lawyers, professors, who are standing

10  up for this guy, and you can maintain the $800,000 secured

11  bond, you can maintain the bracelet so he's monitored, and he

12  is accounted for where he comes and goes, but permitting him to

13  have a curfew so he doesn't have to call up and get permission,

14  an advance permission, he's unable to spend time with his son,

15  for his son's mental health, for his son's psychological

16  well-being.  They're cramped in an apartment.

17          We all find time or have the desire to leave our

18  apartments, as I do, even though there's a lockdown.  I leave,

19  I go bike riding, I go out, I walk the dogs -- I won't give you

20  too much details about my life -- but we all need fresh air, we

21  all need to be able to do it, and contrasted and compared that

22  reality and the need to provide for his family, the need to be

23  able to run to the store when required, under these

24  circumstances, to have somebody ultimately in confinement, in

25  home confinement, for 13 months, it's not necessary, Judge

K5IKDONC

1   Preska.  He's not a risk of flight, but if he is, we can deal

2   with it without having him confined to home all the time, for

3   13 months.

4           I renew my application.  I renew my application for a

5   curfew.  We can change the hours.  If 10:00 p.m. to 6:00 a.m.

6   strikes anyone as too permissive a curfew, we can make it

7   8:00 p.m. to 8:00 a.m.  As your Honor remembers, there are

8   sureties that we have proposed.  We can have someone, or some

9   combination of people, come in and sign the bond.  There has to

10  be a better way to resolve this issue.

11          THE COURT:  Thank you.

12          Anything else, Ms. Glavin?

13          MS. GLAVIN:  No, your Honor.

14          THE COURT:  Thank you, counsel.

15          The circumstances that Mr. Frisch relates are really

16  the inconvenience that befalls anyone who's been found to be a

17  risk of flight.  Accordingly, I adhere to my prior findings.

18  The request to lift home confinement and electronic monitoring

19  is denied.

20          Is there anything else, friends?

21          And, to be clear, the curfew request is denied as

22  well.

23          Anything else, friends?

24          Thank you.  I look forward --

25          MR. FRISCH:  Your Honor --

K5IKDONC

1          THE COURT:  Yes, sir.

2          MR. FRISCH:  Your Honor, can I make one other

3   application along those lines?

4          THE COURT:  Yes, sir.  Yes.

5          MR. FRISCH:  To try and find a balance between the

6   concerns that I have expressed, would the Court see clear to

7   recommend to pretrial services, or at least to make an order,

8   to issue an order, that he be permitted every afternoon to

9   leave home, provided he stays on the Upper West Side, for, say,

10  a period of three hours, if there's a three-hour period of each

11  day when he be permitted to leave his apartment for whatever

12  purpose, for shopping, to go to the pharmacy, if necessary, to

13  hang out with his son for some three-hour period each day?

14         THE COURT:  Ms. Glavin?

15         MS. GLAVIN:  Your Honor, I just don't know, in terms

16  of for a defendant on home detention with electronic

17  monitoring, what the usual course is in terms of approvals with

18  pretrial services.  I have spoken with pretrial services about

19  it.  I know he is allowed to do certain things, but they have

20  to be approved in advance, you know, for instance, going to the

21  grocery store, meeting with his attorney, and for family

22  obligations.  And I want to make sure this is done in the usual

23  course, and I know that your Honor allowed for family

24  obligations for him to be out.  How pretrial services has

25  interpreted that here, I don't know every request that's been

K5IKDONC

1    made.

2           So, I just sort of feel as though I'm not in a

3    position to consent to he's out every day for three hours

4    without having a sense from pretrial about how this is handled

5    with defendants similarly situated with these conditions,

6    particularly given that your Honor added the condition that he

7    was allowed to do family obligations.  I know he was walking

8    his son to school each day.  Obviously, he's not in school

9    anymore.  So I don't know the lay of the land on this

10   particular issue, and to the extent your Honor wants me to

11   confer with pretrial, I can do that.

12          THE COURT:  All right.  Why don't you do that.  One

13   concern I guess I have with a blanket three-hour block, I could

14   be to the airport and on an airplane in three hours, so I'm not

15   sure I'm ready for that.  But if you would be kind enough to

16   confer with pretrial, and then with Mr. Frisch, I'll hear

17   anything else you folks want to say about it.  But in the

18   meantime, the current conditions of home confinement will

19   remain.

20          Anything else, counsel?

21          MR. FRISCH:  No.

22          MS. GLAVIN:  No, your Honor, from the government.

23          THE COURT:  Thank you, counsel.  I look forward to

24   your letters as we go forward.

25          Good morning -- or maybe good afternoon.  Good

K5IKDONC

1   afternoon.

2           Thank you, Andrew.

3           MR. FRISCH:  Thank you, your Honor.

4           MS. GLAVIN:  Thank you, your Honor.

5                             *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25