UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

           v.

STEVEN DONZIGER,

                   Defendant.

19 Cr. 561 (LAP);
[11 Civ. 691 (LAK)]

## **<u>GOVERNMENT'S MOTIONS IN LIMINE</u>**

Rita M. Glavin
Brian P. Maloney
Sareen K. Armani

*Special Prosecutors on behalf of the*
*United States of America*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ....................................................................................................... 2

    A.    Counts Four and Five:  The RICO Judgment and Pertinent Court Orders ........... 3

    B.    Counts One, Two and Three:  Post-Judgment Discovery Proceedings and Pertinent Court Orders ...................................................................... 13

    C.    Count Six: The RICO Judgment and Pertinent Court Order .............................. 21

ARGUMENT ........................................................................................................... 22

I.    THE LAW PRECLUDES DEFENDANT FROM CHALLENGING THE VALIDITY, LAWFULNESS OR CONSTITUTIONALITY OF THE RELEVANT ORDERS......................................................................................... 22

CONCLUSION........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>Bullock v. Kasper</u>,
   265 F.2d 683 (6th Cir. 1959) ................................................................................ 23

<u>Chevron Corp. v. Donziger</u>,
   833 F.3d 74 (2d Cir. 2016)..................................................................................... 5

<u>Donziger v. Chevron Corp.</u>,
   137 S. Ct. 2268 (2017)........................................................................................... 5

<u>Howat v. Kansas</u>,
   258 U.S. 181 (1922).............................................................................................. 23

<u>In re Criminal Contempt Proceedings Against Crawford</u>,
   329 F.3d 131 (2d Cir. 2003).................................................................................. 23

<u>Maness v. Meyers</u>,
   419 U.S. 449 (1975).............................................................................................. 23

<u>United States v. Berardelli</u>,
   565 F.2d 24 (2d Cir. 1977) ................................................................................... 23

<u>United States v. Cutler</u>,
   58 F.3d 825 (2d Cir. 1995).............................................................................. 22, 23

<u>United States v. Hills</u>,
   No. 12 Cr. 12254, 2013 U.S. Dist. LEXIS 128590 (E.D. Mich. Sept. 10, 2013) .................... 24

<u>United States v. Lynch</u>,
   162 F.3d 732 (2d Cir. 1998).................................................................................. 22

<u>United States v. Remini</u>,
   967 F.2d 754 (2d Cir. 1992).................................................................................. 25

<u>United States v. Terry</u>,
   17 F.3d 575 (2d Cir. 1994)........................................................................... 2, 23, 24

<u>United States v. United Mine Workers</u>,
   330 U.S. 258 (1947).............................................................................................. 23

<u>Walker v. City of Birmingham</u>,
   388 U.S. 307 (1967).............................................................................................. 23

**Statutes and Rules**

18 U.S.C. § 401(3) ............................................................................................. *passim*

Fed. R. Civ. P. 26(b)(5)................................................................................. 18

S.D.N.Y. Civ. R. 26.2 .................................................................................. 18

S.D.N.Y. Civ. R. 83.6 .................................................................................. 11

## PRELIMINARY STATEMENT

The Government respectfully submits this motion in limine in advance of the criminal contempt trial of defendant Steven Donziger scheduled to begin on September 9, 2020. As set forth below, the Government seeks a pretrial ruling from the Court to preclude the defendant from disputing the validity, lawfulness and constitutionality of the relevant court orders, or from arguing that his disobedience could not constitute criminal contempt because he believed the orders were unlawful, in error, or would cause him to violate his ethical duties.

The Government seeks this ruling because of various statements made by the defendant challenging the validity of various relevant orders, including:

- ◼ "Judge Kaplan says he will prosecute me for 'criminal contempt' for refusing an unlawful order to turn over my computer, cell and passport to Chevron."  Civ. Dkt. 2290-1 at 1;

- ◼ Declaring that ". . .yet another forced assignment of my contingency interest[] is unwarranted. . ." and ". . .my two prior assignments of my interests…were made under duress and protest related to my persistent challenge to the legitimacy of this proceeding and the Court's conclusions."  Civ. Dkt. 2169 at 1, 3 (emphasis added).

- ◼ Asserting that the post-judgment discovery is "illegitimate" or "works a clear violation of the First Amendment right to association."  Civ. Dkt. 2118 at 3 n.1; and

- ◼ "I clearly have stated that I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review."  Civ. Dkt. 2173-1 at 1.[1]

For purposes of this motion, the "relevant orders" are those that are charged in the July 31, 2019 Order to Show Cause (Civ. Dkts. 1875, 2172, 2232) together with additional orders that provide background to and context concerning the defendant's willful disobedience of the orders charged in the OTSC.  Specifically, the relevant orders are: March 4, 2014 judgment (Civ. Dkt. 1875); April 25, 2014 order (Civ. Dkt. 1901); February 28, 2018 judgment (Civ. Dkt. 1962); May 17,

---

[1] References to "Dkt." are to the docket entries in this criminal case.  References to "Civ. Dkt." are to docket entries in the Civil Case.  References to "2d Cir. Dkt." are to docket entries in the Second Circuit.  References to "PX" are to Plaintiff's trial exhibits in the Civil Case.

2018 order (Dkt. 2009); July 23, 2018 order (Dkt. 2056); August 15, 2018 order (Dkt. 2072);

August 21, 2018 order (Dkt. 2079); October 18, 2018 order (Dkt. 2108); February 21, 2019 order

(Dkt. 2165); March 5, 2019 order (Dkt. 2172); June 11, 2019 order (Dkt. 2232); and July 2, 2019

order (Dkt. 2254). [2]

Because the relevant orders were in full force and effect at all relevant times, the

defendant is collaterally barred from attacking the validity of those orders as a defense to this

criminal contempt prosecution.  See United States v. Terry, 17 F.3d 575, 579 (2d Cir. 1994).

## BACKGROUND

Defendant Steven Donziger is charged with six counts of criminal contempt after

repeatedly disobeying court orders during post-judgment proceedings in Chevron v. Donziger,

11 Civ. 691 (LAK) (the "Civil Case"), which were not stayed and were in full force and effect.

Specifically, on July 31, 2019, the Honorable Lewis A. Kaplan issued an "Order to Show Cause

Why Steven Donziger Should Not Be Held in Criminal Contempt" ("OTSC") in violation of 18

U.S.C. § 401(3).  The OTSC cited six separate grounds for the criminal contempt:

1. For the period March 8, 2019 to May 28, 2019, Donziger's willful violation, of a March 5, 2019 order directing him to provide by March 8, 2019 a sworn list of all his electronic devices, communication and messaging accounts, and document management services accounts that he has used since March 4, 2012.

2. For the period March 18, 2019 to at least May 28, 2019, Donziger's willful violation of March 5, 2019 order directing him to surrender on March 18, 2019 to the Neutral Forensic Expert all of his electronic devices for purposes of imaging.

3. For the period June 12, 2019 to at least July 31, 2019, Donziger's willful violation of a June 11, 2019 order directing him to

---

[2] In identifying the "relevant orders" for purposes of this motion, the Government does not intend to exclude all other orders issued in the Civil Case or suggest that Donziger is permitted to challenge the validity or lawfulness of any of those orders.

surrender to the Clerk of Court by June 12, 2019 every passport issued to him.

4.      For the period March 4, 2014 to September 3, 2018, Donziger's willful failure and refusal to assign to Chevron his rights to a contingent fee under a 2011 Retainer Agreement, as required by the March 4, 2014 RICO Judgment.

5.      For the period November 1, 2017 to May 27, 2019, Donziger's willful failure and refusal to assign to Chevron his property right to a November 1, 2017 ADF Contingent Fee Grant, as required by the March 4, 2014 RICO Judgment.

6.      Donziger's December 23, 2016 willful violation of the RICO Judgment by assigning and pledging a portion of his own personal interest in the Ecuadorian judgment in exchange for personal services.

Civ. Dkt. 2276.

Counts Four, Five and Six concern Donziger's willful disobedience of aspects of the March 4, 2014 RICO Judgment.  Counts One, Two and Three relate to Donziger's willful disobedience of orders issued during post-judgment discovery proceedings between March 2018 and July 2019.  Set out below the Government summarizes the background concerning each count and the relevant orders, with respect to: (1) Counts 4 and 5; (2) Counts 1, 2 and 3; and (3) Count 6.

**A.      Counts Four and Five:  The RICO Judgment and Pertinent Court Orders**

*1.      The March 4, 2014 RICO Judgment and the April 25, 2014 Order*

On March 4, 2014, Judge Lewis A. Kaplan entered a judgment against defendant Steven Donziger and others in the underlying civil action <u>Chevron Corporation v. Donziger et al.</u>, 11 Civ. 691.  Civ. Dkt. 1875 (the "RICO Judgment").  Paragraph 1 of the RICO Judgment directed that:

The Court hereby imposes a constructive trust for the benefit of Chevron on all property, whether personal or real, tangible or intangible, vested or contingent, that Donziger has received, or

3

> hereafter may receive, directly or indirectly, or to which Donziger now has, or hereafter obtains, any right, title or interest, directly or indirectly, that is traceable to the Judgment or the enforcement of the Judgment anywhere in the world <u>including, without limitation, all rights to any contingent fee under the Retainer Agreement and all stock in Amazonia</u>.   <u>Donziger shall transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain.</u>

<u>Id.</u> (emphasis added).[3]  In addition, paragraph 3 of the RICO Judgment directed that:

> Donziger shall execute in favor of Chevron a stock power transferring all of his right, title and interest in his shares of Amazonia, and Donziger and the LAP Representatives, and each of them, shall execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment.

<u>Id.</u>

On March 18, 2014, Donziger sought a stay of the RICO Judgment arguing, among other things, that to transfer forthwith and assign all of his property rights and interests traceable to the Ecuadorian Judgment, including his shares of Amazonia, would constitute irreparable harm.  Dkt. 1888 at 15-20.  On April 25, 2014, Judge Kaplan granted in part and denied in part Donziger's motion for a stay pending appeal as follows:

> The motion for a stay pending appeal [DI 1888] is granted to the extent that paragraph 3 of the Judgment, solely pending the determination of the appeal in this case, is modified to read as follows:
>
> > "Donziger shall execute in favor of the Clerk of this Court a stock power transferring to the Clerk all of his right, title and interest in his shares of Amazonia. The Clerk shall hold the Amazonia shares thus transferred, and all proceeds thereof,

---

[3] As defined in the RICO Judgment, "Amazonia" referred to Amazonia Recovery Limited, an entity registered in Gibraltar, together with its successors and assigns. Civ. Dkt. 1875 ¶ 7.2. The "Retainer Agreement" referred to the agreement, dated as of January 5, 2011, between and among (a) each of the individual plaintiffs in the Lago Agrio Case, together with their respective successors and assigns, (b) the ADF, (c) the Assembly, and (d) Donziger & Associates, PLLC, together with its successors and assigns and all successors to and predecessors of the Retainer Agreement (the "2011 Retainer Agreement").  <u>Id.</u> ¶ 7.9.

> pending the determination of the appeal in this case, for the benefit of Donziger and Chevron, as their interests then may appear. Upon request by Donziger, given on notice to Chevron at least ten days in advance of the date for the proposed vote, the Clerk shall vote, or direct the owner of record thereof such to vote, such shares as directed by Donziger unless otherwise ordered by the Court. Donziger and the LAP Representatives, and each of them, shall execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment."

> It is denied in all other respects.

Civ. Dkt. 1901 at 32.  On receipt of this order, Donziger did not subsequently transfer his shares in Amazonia to the Clerk of the Court during the pendency of the appeal, despite Chevron's August 7, 2014 request that he do so.[4]  Dkt. 1986-1.  Donziger also did not transfer to Chevron his rights to a contingent fee under the 2011 Retainer Agreement.

2.      *Donziger Exhausts Appeals*

On August 8, 2016, the Second Circuit affirmed Judge Kaplan's decision, including the RICO Judgment.   Chevron v. Donziger, 833 F.3d 74, 81 (2d Cir. 2016). Donziger's petition for rehearing *en banc* was denied on October 27, 2016, and the judgment mandate affirming the district court's order issued on November 3, 2016.   Chevron Corp. v. Donziger, 2d Cir. Appeal No. 14-826, Dkts. 507-508.   Donziger subsequently petitioned the Supreme Court for a writ of certiorari on March 27, 2017, which was denied on June 19, 2017. 137 S. Ct. 2268 (2017); see also Donziger v. Chevron Corp., Sup. Ct. No. 16-1178.

---

[4] In an August 21, 2014 response to Chevron's August 7, 2014 request, Donziger stated that "I have not and will not sell or otherwise transfer any of my shares in Amazonia" and "a simple transfer to the clerk's office of my Amazonia shares would in practice mean the complete divestiture—and potentially irretrievable loss—of more than two decades of labor on the part of me and some of my colleagues, before the Second Circuit even has a chance to decide our appeal. . ." Civ. Dkt. 1986-1.

3.      *Chevron's June 19, 2017 Letter and the Money Judgment*

With Donziger's appeals exhausted, in a June 19, 2017 letter Chevron informed the District Court that "Donziger appears never to have complied with the Court's order" requiring Donziger to transfer his Amazonia shares to the Clerk of the Court pending his appeal, requested that the District Court direct Donziger to comply with the RICO Judgment and execute a stock power transferring the shares to Chevron, and moved to reactivate its request for attorneys' fees and taxation of costs.  Civ. Dkt. 1922.   On July 17, 2017, the Court reactivated Chevron's motion for attorneys' fees and directed the Clerk to tax costs, but denied Chevron's request that Donziger comply with the RICO Judgment without prejudice to proceeding by formal motion, finding that aspect of Chevron's application "may not be made by letter motion." Civ. Dkt. 1923 at 2.

Following motion practice with respect to the taxation of costs by the Clerk of Court, on February 28, 2018, Judge Kaplan issued a supplemental judgment of $813,602.71 ("Money Judgment") in Chevron's favor and against Donziger and other defendants in the Civil Case.  Civ. Dkt. 1962.  Donziger filed a notice of appeal of the Money Judgment on March 28, 2018, and that appeal is fully briefed and remains pending.  Civ. Dkt. 1972; see 2d Cir. No. 18-855.

4.      *Transfer of the Amazonia Shares and Rights to Contingent Fee under the 2011 Retainer Agreement*

On March 19, 2018, Chevron moved: (1) to hold Donziger in contempt for failure to transfer his shares in Amazonia as ordered and for actively conspiring to monetize and profit from the RICO Judgment; (2) for leave to conduct post-judgment discovery of Donziger and others, and for a hearing date, on the issue of Donziger's compliance with the RICO Judgment given evidence Chevron obtained that Donziger was selling interests in and undertaking acts to

monetize or profit from the Ecuadorian judgment in violation of the RICO Judgment; and (3) for a document preservation order for Donziger and others concerning the RICO Judgment or compliance therewith.  See Civ. Dkts. 1966, 1967, 1968.  At a May 8, 2018 hearing before Judge Kaplan, Donziger did not deny that he had not transferred his interest in the Amazonia shares to Chevron as directed, but asserted he was "happy" to sign his Amazonia shares over to Chevron (Civ. Dkt. 2003-1) (May 8, 2018 Tr. at 29:15-20).   Following the May 8 hearing, Chevron presented Donziger with a general assignment form to transfer all of his property interests traceable to the Ecuadorian Judgment, as well as a specific form to transfer his interest in the Amazonia shares.  Civ. Dkt. 2003 at 1-2.  Donziger did not execute the general assignment form. Id. at 2. As for the Amazonia shares, Donziger signed the transfer form with his addition of an "addendum of understandings" that sought to negate Donziger's transfer of the shares to Chevron.  Civ. Dkt. 2003-3; see also Civ. Dkt. 2048 ¶ 5.  Donziger's addendum stated that transfer of the Amazonia shares was in violation of Amazonia's Articles of Association, which provide that any transfer "in violation of these Articles shall be null and void." Dkt. 2003-3 (Addendum of Understandings); see also PX 657 (Articles of Association of Amazonia Recovery Limited) at DONZIGER_011154 at ¶ 37.  By letter dated May 11, 2018, Chevron informed the District Court that Donziger had failed to assign his property interests in the RICO Judgment to Chevron and sought contempt sanctions and discovery regarding Donziger's noncompliance. Civ. Dkt. 2003 at 2-3.

On May 16, 2018, Judge Kaplan found that Donziger was previously in civil contempt for failing to execute, as directed by paragraph 3 of the RICO Judgment, a stock power transferring to Chevron his interest in the Amazonia shares from the date that the RICO Judgment was entered March 4, 2014 until May 9, 2018, the date that Donziger signed a stock

power.  See Civ. Dkt. 2006 at 9 (finding "Donziger made no effort to comply" and that "his defiance has been brazen and deliberate"), 13 (noting Donziger's "complete and absolute failure" to comply prior to May 9, 2018).  Noting that the addendum that Donziger appended to the stock power sought to negate the transfer of shares, Judge Kaplan found that while the RICO Judgment required the execution of a stock power agreement, the Judgment did not prescribe a particular form for the stock power.  Id. at 13.  Judge Kaplan therefore found Donziger in civil contempt up to the date he signed the transfer form albeit with addendum.  Id.  Judge Kaplan left open the possibility that Chevron could present an unqualified share transfer form to Donziger and, if he refused to sign, Chevron could seek an order of the court requiring compliance.  Notably, the District Court also put Donziger on notice that it would consider a properly filed contempt motion directed at paragraph 1 of the RICO Judgment if Donziger failed to transfer and assign all right, title, and interest in property traceable to the Ecuadorian Judgment "including, without limitation, all rights to any contingent fee" under the 2011 Retainer Agreement.  Civ. Dkt. 2006 at 14-15 (citation omitted).

On June 25, 2018, at Donziger's deposition, Chevron again presented Donziger with a "Transfer and Assignment of Judgment Interests" to assign any and all of Donziger's interests in the Ecuadorian judgment to Chevron, including any right to a contingent fee under the 2011 Retainer Agreement.  Donziger refused to execute that document at or after his deposition.  Civ. Dkt. 2048 ¶¶ 4-7; see also Civ. Dkt. 2048-3 (form of Assignment); Civ. Dkt. 2048-4 (Donziger Tr. at 231:3-20) (". . .This is a whole other thing I need to look at, consider, and think about, so no, I'm not willing to execute this document today. . .").

On June 27, 2018, Chevron moved to compel Donziger to execute (1) an unqualified transfer of his Amazonia shares and (2) a transfer and assignment of any and all of

his interests in the Ecuadorian Judgment, including rights to a contingent fee under the 2011 Retainer Agreement.  Civ. Dkts. 2046, 2047, 2048. By Order dated August 15, 2018, Judge Kaplan directed Donziger to execute and acknowledge before a notary public, and deliver to Chevron's counsel by August 21, 2018: (1) a transfer document for the Amazonia shares in the form annexed as an exhibit to a declaration by Chevron's counsel; and (2) a transfer and assignment in a form annexed to the Order as Exhibit 1, which would assign Donziger's right to any contingent fee under the 2011 Retainer Agreement to Chevron.  See Civ. Dkt. 2072 at 9. The District Court specifically noted that it had previously held, in its March 4, 2014 ruling that Donziger did not challenge on appeal, that "the right to a contingent fee and the fee itself are property," which are "subject to execution and attachment," and are "immediately assignable." Id. at 7.

On August 20, 2018, Donziger sought an extension of time through September 7, 2018 to "return from [foreign] travel and properly address the ethical issues raised by the ordered transfer," noting that he was seeking counsel "on the issue of transferring my contingency interest" because his "clients have forbidden me" to make the transfer.  Civ. Dkt. 2075.  By Order dated August 21, 2018, the District Court granted in part and denied in part Donziger's extension motion.  Civ. Dkt. 2079.  The August 21 Order directed:

> Donziger shall execute two sets of originals of the required forms on or before August 22, 2018.  He shall send one set, which need not have notarized acknowledgments, to Chevron's lead counsel no later than August 22, 2018 by overnight courier.  In order to facilitate obtaining notarized acknowledgments at a U.S. Embassy or consulate, the Court will extend his time within which to do that and to deliver fully executed documents to Chevron.  Donziger shall acknowledge his signatures on the two documents constituting the second set of originals before a consular official at a U.S. Embassy or consulate no later than August 28, 2018.  No later than August 29, 2018, he shall place that fully executed, acknowledged, and notarized set of originals in the hands of an

overnight courier for the speediest available delivery to Chevon's lead counsel.

Civ. Dkt. 2079 at 5-6.  Donziger did not comply as directed.

On September 17, 2018, Chevron moved to hold Donziger in contempt and to impose coercive sanctions for his failure to comply with the District Court's August 15 and August 21 orders, focusing on Donziger's failure to transfer his Amazonia shares.  Civ. Dkts. 2083, 2084.  While Donziger belatedly provided to Chevron on September 4, 2018 an executed and notarized transfer and assignment form of his interest in a contingent fee under the 2011 Retainer Agreement (as required by paragraph one of the RICO judgment and again by the August 15, 2018 Order), Donziger did not provide to Chevron an executed and notarized transfer and assignment form of his Amazonia shares as directed by the August 15 and 21 orders— despite inquiries from Chevron's counsel for that document.  See Civ. Dkt. 2085 at ¶ 2-4.  Only after that motion for contempt and coercive sanctions was filed did Donziger, on October 5, 2018, provide to Chevron an executed and notarized transfer and assignment form of his Amazonia shares as directed.  Dkt. 2104, 2105.

5.    *The 2017 ADF Contingent Fee Agreement*

At his June 25, 2018 deposition, Donziger admitted that he had signed a <u>new</u> contingent agreement subsequent to the 2011 Retainer Agreement with the Amazon Defense Front ("ADF"), that superseded the 2011 Retainer Agreement.  <u>See</u> Civ. Dkt. 2050-2 at 29:2-20, 59:12-60:3.  Donziger only produced this new agreement (the "2017 ADF Agreement") after it was revealed at his deposition and following a June 28, 2018 evidentiary hearing, and despite that it had been responsive to a pending document request from Chevron that Judge Kaplan had directed Donziger to comply with by June 15, 2018.  <u>See</u> Civ. Dkt. 2165 at 2 n.3; <u>see also</u> Civ.

Dkts. 1989-1; 2009.  Under the 2017 ADF Agreement, which Donziger personally entered into on or about November 1, 2017, the ADF

> hereby grants Mr. DONZIGER an **INTEREST** in his own right equal to Mr. DONZIGER's existing contractual **INTEREST.** Such INTEREST, in any case, shall be understood to entitle Mr. DONZIGER to 6.3% of any **FUNDS RECOVERED**, which are defined as any funds recovered in connection with the *AGUINDA* [i.e., Ecuadorian] CASE or the *AGUINDA* JUDGMENT, whether by court order or private out-of-court settlement, in Canada or in any other country . . . .

Civ. Dkt. 2091-23 at 3 (emphasis in original).  Following this revelation, and briefing by the parties regarding the new 2017 ADF Retainer Agreement, on August 7, 2018, the District Court informed the parties that Chevron had raised a "new and independent ground for holding Donziger in contempt," i.e., Donziger's execution of and failure to assign to Chevron his interest in the 2017 ADF Retainer agreement, but that it was not properly interposed because it was not charged as part of a notice of motion or order to show cause as per S.D.N.Y. Civ. R. 83.6.  Civ. Dkt. 2064 at 2.  The Court noted that Chevron could file a new motion charging contempt of paragraph 1 of the RICO Judgment.  See id.

On October 1, 2018, Chevron moved to hold Donziger in contempt for, among other things, violating the RICO Judgment by failing to transfer and assign the 6.3% contingency interest granted to him in the 2017 ADF Agreement, which Chevron argued was a property interest—just like the 2011 Retainer Agreement—subject to execution and attachment and immediately assignable. See Civ. Dkt. 2113 at 2.  In an October 31, 2018 declaration in opposition to Chevron's contempt motion, Donziger stated:

> The contingency interest stated in the updated power of attorney signed by [ADF] leadership in November 2017 was not intended to grant a new interest, but to recognize my existing interest in any *Aguinda* recovery. The Court has now coerced me into signing what I understand to be the entirety of my contingency interest over to Chevron. I am not taking the position that the November

11

> 2017 contract is protected or separable form the Court's other
> orders with respect to my contingency interest. If Chevron feels
> like it needs some additional documentation with respect to the
> November 17, power, it should just ask me rather than rush to file
> for contempt.

Civ. Dkt. 2122-1 ¶ 21.

On February 21, 2019, the District Court issued an order entitled "ORDER RE

ASSIGNMENT OF CONTINGENT FEE" and directed the parties to file an executed instrument

of assignment of the 2017 ADF Agreement on or before February 28, 2019, "failing which each

party shall file a letter. . .explaining why no such instrument has been filed."  Civ. Dkt. 2165 at 3.

The District Court stated:

> It was and remains Donziger's obligation to comply with
> paragraph 1 of the RICO Judgment, which of course requires him
> to assign to Chevron all of his right, title and interest to any
> contingent fee under the ADF agreement. After all, the [2017 ADF
> Agreement] by its terms granted him an "interest" equal to 6.3
> percent of monies of which, if any are collected, the ADF claims to
> be the exclusive beneficiary.

Id. at 2.  No such executed assignment was filed by February 28.  In a February 28, 2019 filing,

Chevron asserted that Donziger refused to comply with the District Court's directive to execute

an assignment of his contingency interest under the 2017 ADF Retainer Agreement.  Civ. Dkt.

2168.   Chevron requested that the District Court direct Donziger to execute an attached

assignment form.  Id.  On March 1, 2019, Donziger continued to resist and took the position that

"yet another forced assignment of my contingency interest[] is unwarranted and in fact not

possible."  Civ. Dkt. 2169 at 1.  Notwithstanding Judge Kaplan's repeated orders to the contrary,

Donziger asserted that "[t]here is no need for an additional assignment, as I already have

executed two such assignments under protest based on coercive orders of this court."  Id. at 2.

On May 23, 2019, Judge Kaplan found Donziger in willful civil contempt for,

among other things, his "failure to assign and transfer to Chevron all rights to any contingent fee

that he now has or hereafter may obtain including without limitation all such rights under the 2017 Retainer." Civ. Dkt. 2209 at 69. Judge Kaplan imposed coercive sanctions that would begin at $2,000 for May 28, 2019, doubling "for each subsequent day during which Donziger fails fully to purge himself of this contempt." Id. Following the civil contempt finding and imposition of coercive sanctions, Donziger assigned his interest in the 2017 ADF Agreement on May 28, 2019. See Civ. Dkt. 2216 ¶ 4; id. at Ex. 1.

**B.    Counts One, Two and Three:  Post-Judgment Discovery Proceedings and Pertinent Court Orders**

At the same time Chevron was litigating to have Donziger assign his contingent fee interests in the Ecuadorian Judgment and the Amazonia shares as required by the RICO Judgment, Chevron was also engaged in post-judgment discovery of Donziger and various third parties on the issues of: (1) identifying assets to enforce the Money Judgment against Donziger; and (2) Donziger's compliance with the RICO Judgment, after Chevron obtained evidence that Donziger had been seeking to sell interests in the Ecuadorian Judgment in violation of the RICO Judgment's prohibition against him taking any acts to monetize or profit from that judgment. See Civ. Dkt. 1966, 1968, 1987. Chevron had moved on March 19, 2018 to hold Donziger in contempt for, among other things, violating the RICO Judgment's paragraph five prohibition against "undertaking any acts to monetize or profit from the Judgment. . . including without limitation by selling, assigning, pledging, transferring or encumbering any interest therein." Civ. Dkt. 1875 at 3. However, Chevron wanted further discovery on the RICO Judgment compliance issue.

On April 16, 2018, Chevron served Donziger with a restraining notice, information subpoena, requests for production of documents, and a deposition notice for May 7, 2018. See Civ. Dkts. 1989, 1989-1. On April 30, 2018, Donziger served blanket objections and

responses to Chevron's requests.  See Civ. Dkt. 1989-2.  Donziger asserted eight general objections to Chevron's discovery requests, including that discovery was "not appropriate" because the Money Judgment was on appeal and the requests were burdensome, overbroad and irrelevant.  Civ. Dkt. 1989-2 at 1.  Rather than responding to the discovery requests regarding his assets, Donziger represented that "my financial situation is not much more complicated than that of an average household" and proposed that instead of responding to Chevron's discovery requests about his specific assets he would provide a "short summary of my financial condition and assets, backed up by supporting documents."  See Civ. Dkt. 1989-2 at objection G2. Donziger did not object to Chevron's discovery requests on First Amendment grounds.

1.    *The May 17, 2018 Order Directing Compliance with Discovery Requests*

Following meet and confer teleconferences, on May 4, 2018 Chevron moved to compel Donziger to respond to its post-judgment discovery requests.  Civ. Dkt. 1989.  After briefing on the motion to compel, on May 17, 2018, Judge Kaplan divided up Chevron's April 16, 2018 discovery requests into two categories—Money Judgment Discovery and discovery concerning compliance with paragraph 5 of the RICO Judgment ("Paragraph 5 Compliance Discovery").  See Civ. Dkt. 2009 at 1.  Judge Kaplan ordered Donziger to produce to Chevron certain documents and information by June 15, 2018 relating to the Money Judgment Discovery. Civ. Dkt. 2009 and Schedules A, B (ordering Donziger to fully respond to Chevron's April 16, 2018 document requests 1 through 17, 19, 23 through 28 and 30, and information subpoena request paragraphs 1-20 and 26-31, as modified or limited by the court's order).  In ordering Donziger to comply with the Money Judgment Discovery requests, Judge Kaplan ruled on Donziger's discovery objections, concluding they were largely frivolous, unsubstantiated, and/or without merit.  Id.  In that same order, Judge Kaplan found that Chevron was entitled to conduct

appropriate Paragraph 5 Compliance Discovery, but deferred ruling on the specific discovery requests until after a hearing.  Id.

On May 31, 2018, Donziger moved to dismiss Chevron's application (Civ. Dkt. 1966) to hold him in contempt for "profiting" from the Ecuadorian Judgment in violation of paragraph five of the RICO Judgment.  Civ. Dkt. 2018 at 12 (asserting, among other things, the motion "lacks any factual content suggesting the involvement of the specific interests of Mr. Donziger" and others).

On June 15, 2018, Donziger did not fully comply with the Money Judgment Discovery requests directed by the District Court's May 17 order.  Instead, on June 15 Donziger moved the District Court for a protective order, on First Amendment freedom of association grounds, seeking an order

> precluding any discovery in these post-judgment proceedings (including discovery sought from third-parties) that would tend to reveal the identity of any funder or other material supporter of the Ecuador Litigation and/or the internal operational, organizational, administrative, or financial management practices of the teams of individuals and organizations that directly and indirectly oppose Chevron in the Ecuador Litigation . . . and/or more broadly engage in Ecuador Litigation-related advocacy. . . .

Civ. Dkt. 2026 at 2.  Also on that same day, Donziger served Chevron with supplemental objections and responses to the outstanding April 16, 2018 discovery requests with which he was already directed to comply and added his new First Amendment objection, contending that "the forced production of many of these materials in this context would violate First Amendment associational rights of me and others."  Civ. Dkt. 2138-3 at 3 (Objs. And Resps. at objection G9). Four days later, on June 19, 2018, Donziger moved for an emergency stay of some discovery while his motion for a protective order was pending.  Civ. Dkt. 2028.

On June 25, 2018, Judge Kaplan denied Donziger's motions for dismissal of Chevron's pending contempt motion (Civ. Dkt. 2018), a protective order (Civ. Dkt. 2026), and an emergency stay (Civ. Dkt. 2028).  Civ. Dkt. 2037.  In a June 27, 2018 opinion, Judge Kaplan explained his reasoning for denying Donziger's motions, including the lack of merit to Donziger's First Amendment argument to prevent discovery over large categories of information.  Civ. Dkt. 2045.

    2.    *The July 23, 2018 Order Directing Compliance with Discovery Requests*

On July 23, 2018, Judge Kaplan directed Donziger to comply with the Paragraph 5 Compliance Discovery by August 15, 2018, and to (1) produce to Chevron all documents described in the requests 18, 21, 22 and 29 of Chevron's April 16, 2018 document production request; and (2) serve Chevron with full and complete answers to paragraphs 21 through 25 of Chevron's information subpoena.  See Civ. Dkt. 2056.

On June 28 and July 26, 2018, Donziger noticed an appeal from Judge Kaplan's June 25 (Civ. Dkt. 2037), June 27 (Civ. Dkt. 2045) and July 23 (Civ. Dkt. 2056) orders.  Civ. Dkt. 2049, 2060; see 2d Cir. No. 18-2091 (fully briefed and pending appeal).  On August 13, 2018, Donziger sought a stay of the post-judgment discovery from the District Court pending his appeal to the Circuit, arguing among other things that "the Court's refusal to offer protective and/or injunctive relief necessary to protect the associational rights of myself and others under the First Amendment is unconstitutional."  Civ. Dkt. 2067 at 1.

On August 16, 2018, Chevron moved to compel Donziger to respond to post-judgment discovery requests and cited, among other things: in response to more than 30 requests, Donziger produced "a mere 22 pages worth of documents – relying on previously overruled scope and First Amendment objections, unsubstantiated privilege claims, and a supposed lack of

resources"; Donziger's refusal to "answer dozens of questions at his June 25 deposition"; Donziger's failure to disclose a bank account "from which hundreds of thousands of dollars were paid to him and to his co-conspirators"; Donziger's admission to having withheld "a few hundred pages" of responsive documents on the basis of previously rejected First Amendment objections; and Donziger's failure to conduct even the most basic document searches. Civ. Dkt. 2073 at 1-3. To the extent Donziger was relying on unspecified privilege claims to avoid production, Chevron argued that Donziger's failure to produce a privilege log waived privilege. Id. Finally, Chevron requested that the District Court direct Donziger to present his electronic devices for imaging, with the images to be lodged with the District Court. Id. at 3. Donziger responded with a "reiterated motion to stay" and request that Chevron's motion to compel be denied or held in abeyance pending his appeal. Civ. Dkt. 2077. On the issue of privilege, Donziger stated that "we have not yet reached a stage where specific claims of privilege are necessary" and that he maintained all applicable claims of privilege and protection. Id. at 3.

On September 25, 2018, Judge Kaplan denied Donziger's motion for a stay of discovery pending appeal, and again rejected Donziger's argument that the court-ordered discovery would violate the First Amendment. Civ. Dkt. 2088. Donziger sought no stay in the Second Circuit.

3. *The October 18, 2018 Order*

On October 18, 2018, Judge Kaplan granted Chevron's motion to compel. Civ. Dkt. 2108. Judge Kaplan specifically noted that the July 23, 2018 order directing Donziger to respond to certain discovery requests by August 15, 2018 remains in effect and has not been stayed, and that Donziger must comply with that order "in each and every respect on pain of contempt." Id. Judge Kaplan observed that, given "Donziger's stonewalling of post-judgment

17

discovery and the other circumstances" described in the motion to compel, it was "appropriate that Donziger's electronic devices be imaged and examined for any responsive documents that Donziger has not thus far produced under appropriate safeguards of the interests of all parties." Id. at 2.  Judge Kaplan directed the parties to confer and come up with an agreement by October 26, 2018—if possible—regarding a third party who would take custody of Donziger's devices for imaging.  Id.  Judge Kaplan also ruled that Donziger's failure to comply with Fed. R. Civ. P. 26(b)(5) and S.D.N.Y. Civ. R. 26.2 resulted in a waiver or forfeiture of any privilege claim to responsive documents and information that otherwise might have applied,[5] and further directed Donziger to "comply fully with the outstanding discovery requests forthwith without withholding any responsive documents or information on privilege grounds."  Id. at 2.  Donziger did not seek a stay of this order or any appellate relief.

On October 25, 2018, Donziger informed Judge Kaplan that he would not comply with the October 18 order because it would allow Chevron to gain access to "my confidential, privileged and protected documents, without any legitimate basis," and invited the Court to hold him in contempt.  Civ. Dkt. 2118.  Donziger also raised his First Amendment objection to the post-judgment discovery, which the Court had already rejected in its June 27, 2018 opinion and again in the September 25, 2018 stay denial.  Id. at n.1.

4.    *The March 5, 2019 Forensic Protocol Order*

On March 5, 2019, Judge Kaplan issued a Forensic Inspection Protocol Order ("Protocol") to govern the collection, imaging and examination of Donziger's electronically stored information ("ESI") for information responsive to the outstanding post-judgment

---

[5] In finding the privilege waiver, Judge Kaplan specifically noted: (1) Donziger had previously ignored those rules in the Chevron litigation and it resulted in a privilege waiver; and (2) Donziger still failed to comply with those rules after being on put on notice as of August 16 that Chevron was asserting that his failure to provide a log should result in a waiver.  Id.

discovery requests.   Civ. Dkt. 2172.   The Protocol, at paragraph four, directed Donziger to provide by March 8, 2019 to a court-appointed Neutral Forensic Expert and to Chevron's Forensic Expert a sworn list of all devices Donziger "has used to access or store information or for communication since March 4, 2012," as well as any electronic communication accounts or document management or messaging services he had used since that same date.   Civ. Dkt. 2172 ¶ 4.   The Protocol, at paragraph five, directed Donziger to surrender to the Neutral Forensic Expert on March 18, 2019 at 12:00 p.m. all of his devices so that the Neutral Forensic Expert could image them.   Id. ¶ 5.   Donziger did not seek a stay of this order or any appellate relief.

Donziger did not comply with the directives of paragraphs four and five of the Protocol.   Donziger made clear in a March 11, 2019 email to the Neutral Forensic Expert that he had no intention of complying with the Protocol: "I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review. . . So I hope you have not cleared your schedule to work on this matter, because, as Chevron knows, I will not be producing documents until my due process rights are respected."  Civ. Dkt. 2173-1.

5. *Contempt Findings, Coercive Fines, and June 11, 2019 Passport Order*

Chevron moved to hold Donziger in contempt for, among other things, failing to comply with the Protocol.   See Civ. Dkts. 1968, 2089, 2112, 2175.   On May 23, 2019, Judge Kaplan found Donziger in civil contempt for, among other things: (1) Donziger's failure to comply with paragraph four of the Protocol; (2) Donziger's violation of paragraph five of the RICO Judgment provision prohibiting him from profiting from the Ecuadorian judgment; and (3) Donziger's violation of paragraph one of the RICO Judgment provision requiring him to transfer to Chevron any property traceable to the Ecuador Judgment in which Donziger had an interest. Civ. Dkt. 2209. Donziger filed a notice of appeal of the May 23 decision holding him in

contempt.  Civ. Dkt. 2211.  On June 4, 2019, Judge Kaplan found Donziger in civil contempt for his failure to comply with paragraph five of the Protocol.  Civ. Dkt. 2222.  Donziger did not notice an appeal of the June 4 contempt finding.

With respect to Donziger's failure to comply with the Protocol, Judge Kaplan imposed escalating coercive fines.  See Civ. Dkts. 2209, 2222.  At a June 10, 2019 status conference, Donziger stated that all of his assets were frozen and he lacked the means to pay any of the fines.  See Civ. Dkt. 2232.  While conceding that he had not complied with paragraph five of the Protocol, Donziger indicated he took steps in bring himself into compliance with paragraph four.  However, Donziger declined to take the witness stand to substantiate his claims of compliance.  See Civ. Dkt. 2352.

On June 11, 2019, Judge Kaplan issued an Order directing Donziger to surrender his passport to the Clerk of the Court by June 12, 2019 at 4 p.m., as an additional coercive step to cause Donziger to fully comply with the Protocol.  Civ. Dkt. 2232.  On June 12, 2019, Donziger filed with the District Court an "Emergency Motion to Stay Fines and Sanctions Pending Appeal."  Civ. Dkt. 2234.  In that motion, among other things, Donziger complained that the passport surrender order "is thoroughly unfounded" and complained that the order targeted "a fundamental aspect of personal liberty protected by the Due Process clause of the Constitution."  Civ. Dkt. 2234 at 10-11.

On June 28, 2019, Judge Kaplan suspended further accumulation of the coercive fines for Donziger's failure to comply with the Protocol.  See Civ. Dkt. 2252.  On July 2, 2019, Judge Kaplan granted Donziger's emergency motion for a stay pending appeal of the specific provisions of the Protocol that required or permitted disclosure to Chevron of information obtained from Donziger.  Civ. Dkt. 2254.  However, Judge Kaplan specifically conditioned that

stay on Donziger filing his appellate brief to support his appeal from the May 23 contempt finding no later than July 31, 2019.  Id. at 3.  Judge Kaplan denied the stay with respect to paragraph four and paragraph five of the Protocol, and expressly directed Donziger to comply with those Protocol provisions and to "surrender his passport(s) to the Clerk as previously directed."  Id. at 4.

Donziger did not meet any of the conditions specified by the District Court on July 2, 2019.  Donziger did not file his appellate brief by July 31, did not produce his devices to the Neutral Forensic Expert for imaging, and did not surrender his passport to the Clerk of the Court as directed.  Donziger also did not seek a stay from the Second Circuit at any point during the post-judgment proceedings.

## C.      Count Six: The RICO Judgment and Pertinent Court Order

Paragraph Five of the RICO Judgment enjoined Donziger "from undertaking any acts to monetize or profit from" the Ecuadorian Judgment, "including without limitation by selling assigning, pledging, transferring or encumbering any interest therein."  Civ. Dkt. 1875. In December 2016, Donziger pledged a portion of his personal interest in the Ecuadorian judgment, in exchange for $14,000 worth of consulting services from a performance coach.  Civ. Dkt. 2180-2 Ex. C at 74 (Dec. 23, 2016 agreement).  This agreement was confirmed by Donziger in a December 23, 2016 email to the performance coach, in Donziger wrote in relevant part:

> I write to confirm our agreement regarding consulting services you are providing to me to develop my professional capacities with regard to the Ecuador litigation matter against Chevron, and other endeavors.
>
> In exchange for you providing me with $14,000 worth of such services, I pledge to you an interest in the Ecuador judgment from my fees should they be collected.  The amount pledged is based on a pro rata proportion of the latest investment round in the case, which values a $250,000 investment as one-eighth of a point in the total claim won by villagers against Chevron.  Your interest thus

will be valued equally with this round based on an investment of $14,000. . . .

Note that <u>I am pledging this amount out of my personal fees from this litigation</u>. . . .

<u>Id.</u> (emphasis added). Donziger obtained these services in exchange for his pledged interest and a check for $2,000, which consisted of four four-hour consulting sessions held in New York. Civ. Dkt. 2180-8. On May 23, 2019, Judge Kaplan found Donziger in willful civil contempt for, among other things, his "selling, assigning, pledging, transferring or encumbering part of his putative contingent fee interest to David Zelman in exchange for approximately $11,000 worth of personal services." Civ. Dkt. 2209 at 70.[6]

## <u>ARGUMENT</u>

### I. THE LAW PRECLUDES DEFENDANT FROM CHALLENGING THE VALIDITY, LAWFULNESS OR CONSTITUTIONALITY OF THE RELEVANT ORDERS

The Government seeks a ruling precluding Donziger from challenging at trial the validity, lawfulness, and constitutionality of the relevant orders because a criminal contempt trial is not the appropriate venue for such challenges.

The criminal contempt statute prohibits, among other things, "[d]isobedience or resistance to [a federal court's] lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "To prove criminal contempt, the government 'must prove beyond a reasonable doubt that: (1) the court entered a reasonably specific order; (2) [the defendant] knew of that order; (3) [the defendant] violated that order; and (4) [the defendant's] violation was willful.'" <u>United States v. Lynch</u>, 162 F.3d 732, 734 n.2 (2d Cir. 1998) (quoting <u>United States v. Cutler</u>, 58 F.3d

---

[6] The district court ruled that Donziger had transferred a portion of his putative contingent fee interest to Zelman for "approximately $11,000" because the Court found that Donziger had paid Zelman "either $2,000 or $3,000 in cash" as part payment for the consulting services Donziger had purchased, which cost $14,000 in total. <u>See</u> Civ. Dkt. 2209 at 18-19.

825, 834 (2d Cir. 1995)).  With respect to the "willfulness" element, criminal contempt generally requires a specific intent to consciously disobey or disregard an order of the court.  United States v. Cutler, 58 F.3d 825, 837 (2d Cir. 1995); United States v. Berardelli, 565 F.2d 24, 30 (2d Cir. 1977).

An order or judgment of a court that is not stayed or modified must be obeyed, even if set aside on appeal.  See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.  Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); United States v. United Mine Workers, 330 U.S. 258, 294 (1947) ("Violations of [a court] order are punishable as criminal contempt even though the order is set aside on appeal."); Howat v. Kansas, 258 U.S. 181, 189-90 (1922).  Moreover, "[i]t is well established that a defendant generally is barred from collaterally attacking the constitutionality of a court order as a defense to his criminal contempt prosecution." United States v. Terry, 17 F.3d 575, 579 (2d Cir. 1994) (citing Walker v. City of Birmingham, 388 U.S. 307, 314-15 (1967)); see also In re Criminal Contempt Proceedings Against Crawford, 329 F.3d 131, 139 (2d Cir. 2003) ("The fact that an order might have been subject to reversal is not a defense to a criminal contempt charge.").  "The appropriate method for challenging the validity of a court order is to petition to have the order vacated or amended." Terry, 17 F.3d at 579; see also Bullock v. Kasper, 265 F.2d 683, 691 (6th Cir. 1959) ("Even if the injunction was

invalid, appellant was chargeable with criminal contempt for violating it, for the order of the District Court was in full force and effect until set aside in an orderly way.").[7]

In <u>Terry</u>, the trial court issued a preliminary injunction that prohibited certain defendants from certain conduct, that is, presenting or confronting two elected officials with fetuses or fetal remains.  Defendant Randall Terry violated the preliminary injunction.  The trial court that issued the injunction later found Terry guilty of criminal contempt.  On appeal, Terry argued, among other things, that his criminal contempt conviction was invalid because the underlying injunction unconstitutionally burdened his First Amendment rights.  The Second Circuit affirmed.  In doing so, it "reject[ed] Terry's contention that the injunction is unconstitutional for the same reason the trial court <u>denied his motion to present constitutional arguments as a defense at his criminal trial</u>."  17 F.3d at 579 (emphasis added).

The same pretrial ruling is warranted here.  <u>See, e.g.</u>, <u>United States v. Hills</u>, No. 12 Cr. 12254 (SFC), 2013 U.S. Dist. LEXIS 128590, at *5 (E.D. Mich. Sept. 10, 2013) (granting Government's motion <u>in</u> <u>limine</u> to preclude defendant from challenging at criminal contempt trial the lawfulness or constitutionality of order at issue).  Specifically, the defendant should be precluded from contending as a defense at trial that he did not comply with the relevant orders because they were invalid, unlawful, or unconstitutional, because he subjectively disagreed with them, or because in his view the District Court misunderstood the facts or the law or acted illegally.

---

[7] <u>See also</u> 1 Modern Federal Jury Instructions-Criminal, Instruction 20-19 ("An order or judgment of a court normally must be complied with promptly. If an order is believed to be incorrect, the remedy generally is to seek a change in the order and, if this is denied, to appeal and promptly comply with the order unless it has been stayed. Even if the order is ultimately ruled to be erroneous or incorrect, if the person to whom the order or judgment is directed refuses to comply with the order, that person may be charged with contempt. In other words, it is not a defense to the offense of contempt that the underlying order is not correct.").

Further, the defendant should be precluded from arguing as a defense that he could not be guilty of criminal contempt because had a good faith basis for believing such orders were unlawful or in error, or the orders would cause him to violate his ethical duties, because "[g]ood faith is only a defense. . . where the defendant has made a reasonable effort to comply with a court order but has failed because of the indefiniteness of the order or some other inability to do so. It is not a defense where the defendant has refused to comply with the order he is charged with violating."  United States v. Remini, 967 F.2d 754, 757 (2d Cir. 1992).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court preclude the defendant from challenging the validity, lawfulness or constitutionality of the relevant orders or from arguing as a defense that his disobedience could not constitute criminal contempt because he had a good faith belief the orders were unlawful, in error, or would cause him to violate his ethical duties.

New York, New York
July 15, 2020

Respectfully submitted,

 s/Rita M. Glavin
   Rita M. Glavin
   Brian P. Maloney
   Sareen K. Armani

 Special Prosecutors

 Seward & Kissel LLP
 One Battery Park Plaza
 New York, New York 10004
 Tel: (212) 574-1448
 Fax: (212) 480-8421
 glavin@sewkis.com
 maloney@sewkis.com
 armani@sewkis.com

25