

**RICHARD H. FRIEDMAN**
*Attorney at Law... Admitted in AK, CA, KY, NV & WA*

1126 HIGHLAND AVENUE   |   BREMERTON, WASHINGTON 98337   |   P: 360.782.4300   |   F: 360.782.4358   |   WWW.FRIEDMANRUBIN.COM

EMAIL: *rfriedman@friedmanrubin.com*

BREMERTON OFFICE

July 22, 2020

**VIA ECF**
Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Steven Donziger*, No. 1:19-cr-00561-LAP

Dear Judge Preska:

On behalf of Steven Donziger, I write in response to Ms. Glavin's letter dated July 21, 2020 on the matter of fee invoices submitted for work performed and expenses incurred in the above-referenced criminal case.

The "barebones data" considered in *United States v. Suarez* included "who was paid, how much **and for what services**, *i.e.*, only the cover-sheets exemplified by Appendices A and B" of the opinion. *See* 880 F.2d 626, 631 (2d Cir. 1989)(emphasis added). Those cover sheets disclose more than just the total amount and the hourly rates paid to the attorneys; they also disclose, among other things, the types of services rendered, the dates those services were rendered, and whether those services were rendered in-court or out-of-court. *See id.* at 634–35.

Here, the prosecution does not dispute that *Suarez* is controlling. Accordingly, there is no basis to limit disclosure to just the total amount and the hourly rates paid as the prosecution requests.

Moreover, the court in *Suarez* considered the argument raised by the prosecution here—that disclosure would reveal ongoing work—and firmly rejected it. *See id.* at 631–32. The court acknowledged that it is "theoretically possible" that disclosure of services rendered or identification of an expert might reveal a strategy or theory to the other side, but it declined to rule against disclosure absent a showing that such a risk actually existed. The court indicated that the proper procedure is for the party seeking protection to specifically identify the items on the form creating the risk and to request redaction of those items. *See id.* at 632 ("[W]e would assume appellants would seek special protection in connection with a particular CJA form and ask for redaction on that ground."). Here, the private prosecutors should make this type of application if they think they can make the



Honorable Loretta A. Preska
July 22, 2020
Page 2

showing that a particular invoice entry might lead to disclosure of case strategy or other potentially prejudicial information.

Finally, the Guide to Judiciary Policy on administering the CJA—which the prosecutors acknowledge is not at issue here—must be considered in context.  The limited disclosure contemplated in Section 520.40(a) is grounded in the interest of protecting the constitutional rights of criminal defendants.  This is made clear by Section 520.50, which sets forth the different interests that justify continued redaction of payment vouchers after a trial has concluded:

> (a) the protection of any person's Fifth Amendment right against self-incrimination;
> (b) the protection of the defendant's Sixth Amendment right to effective assistance of counsel;
> (c) the defendant's attorney-client privilege;
> (d) the work product privilege of the defendant's counsel;
> (e) the safety of any person; or
> (f) any other interest that justice may require.

Guide to Judiciary Policy, Vol. 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 5: Disclosure of Information on CJA-Related Activities § 520.50.  These interests are not at stake when it is the *prosecution's* invoices that are being sought.  So far, the only interests the prosecutors have identified in withholding the invoices is their theoretical concern over revealing ongoing work.  For the reasons given, mere expression of the concern is not enough, and the prosecution should be made to show an actual risk of disclosure.  Absent such a showing, their invoices should be disclosed.

Sincerely,

FRIEDMAN | RUBIN

Richard H. Friedman