## Seward & Kissel llp

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK  10004

TELEPHONE:  (212) 574-1200
FACSIMILE:  (212) 480-8421
WWW.SEWKIS.COM

RITA GLAVIN
PARTNER
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC  20005
TELEPHONE:  (202) 737-8833
FACSIMILE:  (202) 737-5184

August 5, 2020

<u>VIA ECF</u>

Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Donziger*, 19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

Dear Judge Preska:

   I write in response to the Court's July 30, 2020 order (Dkt. 114) directing the Special Prosecutors to inform the Court of its views on the July 29, 2020 defense letter (Dkt. 112) seeking: (1) "any forms generated as part of [invoices submitted by Seward & Kissel LLP ("Seward")], or in response to [Seward's] invoices;" and (2) copies of any documents reflecting an individualized showing by the Special Prosecutors as to why specific invoice entries should not be disclosed or, if none occurred, that the Special Prosecutors make an individualized showing as to why specific invoice entries should not be disclosed.

   With respect to the first request, we object to disclosure of any pertinent judicial forms, if any, insofar as they include information about the Seward invoices that this Court already determined in its July 22, 2020 Order (Dkt. 108) need not be disclosed in this ongoing criminal case.  With respect to the second request, we oppose that request.  This Court has already considered and ruled on the defendant's "individualized showing" request in a separate Order issued on July 22, 2020 (Dkt. 109), and the defense can renew this request in a post-trial context when this case is no longer ongoing.

   A.  "Forms"

   The defense seeks an "order requesting Mr. Friedland, the District Executive, or other appropriate person" to provide additional forms relating to Seward's invoices which "should reveal which judicial officer is approving the relevant expenditures."  Dkt. 112.  The defense cites to *United States v. Suarez*, 880 F.2d 626, 632 (2d Cir. 1989) for the "right of access to

Hon. Loretta A. Preska
August 5, 2020
Page 2

orders of a judicial officer, in connection with a criminal proceeding, that approve payments of public funds to private attorneys or firms. . . ." Because we lack familiarity with what "forms" or "orders" may have been generated as part of invoice payment approval, we defer to the Court on whether such records to the extent they exist are "judicial records" subject to disclosure under the right of access described in *Suarez*. However, to the extent any such "forms" or "orders" approving payment include information about the Seward invoices beyond what this Court already directed be disclosed from those invoices in its July 22, 2020 Order (Dkt. 108), we object to such disclosure given the ongoing criminal proceedings.

**B.      Request for Special Prosecutors to Make an Individualized Showing on Specific Invoice Entries for Redaction**

The defense's July 29 request that the Special Prosecutors make an "individualized showing" justifying redaction of each specific invoice entry is nothing more than reargument of the same request the defense already made on July 22, 2020 and this Court decided in an Order issued on July 22, 2020. Dkt. 109. Specifically, on July 22, 2020, the Court directed disclosure of certain information on the Seward invoices that the Court determined was consistent with the public right of access. Dkt. 108. The Court then received another letter filed by the defense that same day—filed as Dkt. 107—shortly after it had released its order ruling on the invoice issue. That July 22 defense letter (Dkt. 107) made the same request the defense makes again in its July 29 letter (Dkt. 112): seeking to require the prosecutors to make an individualized showing of risk of prejudice (i.e., disclosure of trial strategy or other potentially prejudicial information) for each specific time entry on the invoices. In Dkt. 109, the Court denied that request, stating: "The Court has considered Mr. Donziger's most recent letter and adheres to its prior order regarding the scope of the public right of access as it relates to the special prosecutors' invoices." Dkt. 109. The defense now seeks to reargue a request that this Court already considered and ruled upon, and the request should be denied just as it was on July 22.

In any event, contrary to the defense's assertion, "the letter and spirit of *Suarez*" is *not* "that all information related to public payment of attorneys in a criminal case should be disclosed absent such a particularized showing." Dkt. 112 at 1; *Suarez*, 880 F.2d at 631-32. The Hartford Courant newspaper's request in *Suarez* notably excluded itemized time entries that would have been attached to CJA forms – and which are included on Seward's invoices here – given the risk of disclosure of "details about the preparation of the defense," and instead concerned the disclosure of "barebones" data on CJA cover forms including how much had been charged and for what services. *Id*. at 629-31 (noting that the material to be disclosed after trial included "none of the detail or back-up information, such as attached time-sheets"); *United States v. Gerena*, 703 F. Supp. 211, 214 (D. Conn. 1988) ("the request, as phrased in the Hartford Courant's moving papers, excludes the substantial supporting documentation filed by defendants that specifies what the time and expenses claimed were for and that would, if revealed, provide the Government with details about the preparation of the defense that it otherwise would not have available to it.").

Hon. Loretta A. Preska
August 5, 2020
Page 3


Indeed, in another access case, the Tenth Circuit pointed to *Suarez*, which "specifically note[d] that the press did not seek access to the detailed backup material attached to the vouchers," as an example of the "practice of non-access to CJA backup materials," and ultimately concluded that "no history, experience or tradition of access exists as to the release at any time of backup documentation, motions, orders, and hearing transcripts regarding requests for CJA assistance." *United States v. Gonzales*, 150 F.3d 1246, 1250, 1257-61 (10th Cir. 1998) *cert. denied sub. nom. Albuquerque Journal v. Gonzales*, 525 U.S. 1129 (1999) (finding no First Amendment right of access to backup documents to CJA vouchers or certain related motions, orders, and transcripts).  The defense here is similarly not entitled to invoice details about the day-to-day work of the Special Prosecutors in an ongoing criminal case.  The defense can renew its request upon the conclusion of the case.


Respectfully submitted,


 *s/Rita M. Glavin*
Rita M. Glavin
Special Prosecutor