## SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK  10004

TELEPHONE:  (212) 574-1200
FACSIMILE:  (212) 480-8421
WWW.SEWKIS.COM

RITA M. GLAVIN
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC  20005
TELEPHONE:  (202) 737-8833
FACSIMILE:  (202) 737-5184

August 5, 2020

**VIA ECF**
Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *United States v. Steven Donziger*, No. 19-cr-561 (LAP) [11-cv-691 (LAK)]

Dear Judge Preska:

      I respectfully submit this letter on behalf of the United States in response to: (1) the defendant's July 29, 2020 letter seeking an indefinite continuance of the September 9, 2020 trial date (Dkt. 111); and (2) the Court's July 29, 2020 order seeking the Special Prosecutors' views on the "possibility of conducting the trial remotely through the use of videoconferencing technology" (Dkt. 113).  We oppose a continuance of the trial date and respectfully request that the Court conduct an in-person trial in the usual manner, with the use of two-way live videoconferencing for witness testimony in instances where the Court makes the appropriate findings in connection with a particular witness's testimony such that the videoconferencing is permissible consistent with the Sixth Amendment.

**A.**      **Request for Continuance**

      The defendant seeks a continuance of the September 9, 2020 bench trial "until such time as it may be conducted safely and fairly, and after other highly relevant proceedings have been concluded."  Dkt. 111.  Specifically, the defendant cites to the following: all four of his attorneys of record reside in states other than New York, and all but one of his attorneys must quarantine for 14 days in New York in light of Executive Order #205; the defense intends to call in its case-in-chief several unnamed witnesses outside the country who may have difficulties attending trial in-person because of the pandemic; the defendant's right to a public trial, and the fact that many people may not be able to attend because of issues related to the pandemic; and the defendant's pending Second Circuit mandamus petition and pending civil appeals.  None of these issues warrant the indefinite continuance requested by the defense.[1]

---

[1] While the defendant minimizes this case in calling it a "misdemeanor case, where the 'crime' alleged is violating civil discovery orders" (Dkt. 111 at 3), the fact is that this case has been pending for a year, the conduct involves

Hon. Loretta A. Preska
August 5, 2020
Page 2

 

With respect to Mr. Donziger's attorneys, while the quarantine certainly creates difficulty and we are not unsympathetic to those challenges, the reality is the defense has not set forth specific facts regarding why all four of the defense attorneys of record would be unable to be in New York to start trial on September 9.[2] With respect to Mr. Friedman and Ms. Regan—who both have criminal law experience—the defense indicates that it would pose an inconvenience in terms of time and costs given the quarantine restriction for travelers from certain states set forth in the Governor's Executive Order No. 205 issued on June 24, 2020.[3] That inconvenience does not warrant moving the trial date. All four attorneys of record chose to take on this case with a set trial date in the midst of this pandemic.[4] Unfortunately, the quarantine requirements from Executive Order No. 205 now apply to Washington and Texas, the states in which two of the defense attorneys reside, and the situation will remain fluid for the foreseeable future. But in taking on this case, the possibility of having to quarantine in New York given the fluidity of the pandemic situation was a very real risk as other states had begun imposing 14-day quarantines on out-of-state travelers.[5] Indeed, a 14-day quarantine remains a risk for the foreseeable future for all out-of-state attorneys appearing in New York (and other states as well) and attorneys will

---

serial violations of court orders that include an injunction, and the defendant has publicly asserted his innocence and complains on social media about the fact that he has not had a trial. There is a public interest in seeing this criminal case brought to trial expeditiously.

[2] We understand why Mr. Garbus may not be able to attend in-person on September 9 given his age and health issues, as well as why Ms. Littlepage (a civil lawyer with no criminal law experience) may not be able to attend because she is attending to her ill mother in Barbados, but certainly one of the other two remaining attorneys of record who have criminal experience should be able to attend this trial.

[3] Ms. Regan resides in Oregon and, as of now, the quarantine required by Executive Order No. 205 does not apply to Oregon.

[4] Richard H. Friedman, Esq. (Washington), who is acting as lead counsel in the criminal trial, moved to appear *pro hac vice* on May 13, 2020, and the Court granted that motion on May 14, 2020. Dkt. 72. At the time he entered the case, the trial date was June 15. He attended the May 18 teleconference at which time the Court moved the trial date to September 9. Lauren Regan (Oregon), Esq. moved to appear *pro hac vice* on May 15, 2020 and the Court granted that motion on May 28, 2020. Dkt. 81. Zoe B. Littlepage, Esq. (Texas) moved to appear *pro hac vice* on May 29, 2020 and the Court granted that motion on June 1, 2020. Dkt. 86. Martin Garbus, Esq. (Massachusetts) entered his notice of appearance on July 8, 2020. Dkt. 101.

[5] For example, in late March 2020, Texas and Florida imposed 14-day restrictions on travelers from certain states, and Maine imposed a similar quarantine in April. *See, e.g.,* State of Florida, Office of the Governor Executive Order 20-82 (Mar. 24, 2020), www.flgov.com/wp-content/uploads/orders/2020/EO_20-82.pdf (imposing 14-day quarantine on travelers from New York, New Jersey and Connecticut); State of Texas, Office of the Governor, Executive Order GA-11 (Mar. 26, 2020),
www.gov.texas.gov/uploads/files/press/disaster_covid19_disaster_air_travel_restric_adds_image_03-29-2020.pdf (imposing 14-day quarantine on air travelers from New York, New Jersey and Connecticut, and extending that order on March 29, 2020 to travelers from California, Washington, Florida, Georgia, Michigan, Illinois, and Louisiana); State of Maine, *Governor Mills Issues Executive Order Mandating Quarantine Restrictions on Travelers Arriving in Maine to Protect Public Health and Safety* (Apr. 3, 2020), www.maine.gov/governor/mills/news/governor-mills-issues-executive-order-mandating-quarantine-restrictions-travelers-arriving.

Hon. Loretta A. Preska
August 5, 2020
Page 3

have to work within the state quarantine rules.  We note that until recently Mr. Donziger had a New York-based attorney, Andrew J. Frisch, who had been on this case since August 2019.  Mr. Frisch sought to withdraw on July 4, 2020 and, in approving his motion to withdraw on July 6, the Court stated the motion "*is granted provided that his withdrawal does not affect the trial date.*"  Dkt. 99 (emphasis added).  The trial date should remain September 9.

      To the extent that the defense attorneys raise the issue of the risk they might contract COVID-19 in traveling to and staying in New York, that was a risk that existed at the time when each of them entered appearances in this case during the pandemic and a trial date was set.  The risk of contracting the virus exists for anyone traveling anywhere for the foreseeable future, whether that travel is intracity, intrastate, or interstate, and individuals must practice social distancing to minimize the risk when they need to travel and work outside their homes.  Health and safety conditions in New York City have dramatically improved to the point where the City is in "Phase Four" of reopening.  *See* Michael Gold & Matt Stevens, *What Are the Phases of New York's Reopening Plan?*, N.Y. Times (July 28, 2020), www.nytimes.com/article/new-york-phase-reopening.html (reporting on opening of retail stores, offices, restaurants, and gatherings of up to 50 people, with individuals required to adhere to social distancing guidelines for all phases of the reopening).  The federal courthouse is open and in-person proceedings are taking place,[6] with health and safety procedures at the courthouse set forth in the District's June 22, 2020 "Phased Re-Entry Plan (COVID-19)" ("Re-Entry Plan")—a copy of which we have provided to the defense.

      With respect to the defendant's assertion that he expects to call witnesses from outside the United States who may not be able attend the trial in-person because of the pandemic, the Court could accommodate that testimony through videoconference depending on the particular facts and circumstances presented.  The defendant "has no constitutional right to present evidence through live, in-person testimony only." *United States v. Saipov*, 412 F. Supp. 3d 295, 299 (S.D.N.Y. 2019); *see United States v. Paracha*, No. 03 Cr. 1197 (SHS), 2006 U.S. Dist. LEXIS 1, 41 (S.D.N.Y. Jan. 3, 2006) (concluding, in terrorism case where government refused to produce two defense witnesses, that "[b]ecause . . . the substance of [the unavailable witnesses'] exculpatory evidence c[ould] be presented through means other than the witnesses' live testimony, [defendant's] Fifth and Sixth Amendment rights [could] be protected" (internal quotation marks omitted)); *cf. Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (explaining that a criminal defendant's Sixth Amendment "right to present relevant testimony is not without limitation" (internal quotation marks omitted)).  Given that the defense has not provided detail about the identity of the defense witnesses outside the United States and the nature of any proposed testimony, we are not in a position to comment on whether and how such testimony should be accommodated for trial.  We simply note that videoconferencing can be an alternative for witnesses presented by the defense.

---

[6] On July 22, 2020, Judge P. Kevin Castel presided over an in-person suppression hearing in *United States v. Collins et al.,* 19 Cr. 395 (S.D.N.Y.), with the defendants, all witnesses, as well as the prosecutors and defense attorneys appearing in the courtroom at 500 Pearl Street.

Hon. Loretta A. Preska
August 5, 2020
Page 4

      With respect to the defendant's assertion regarding his Sixth Amendment right to a public trial, the courthouse is open to the public to attend in-person proceedings.  The District's Re-Entry Plan makes clear that for in-person judicial proceedings in the current phase—Phase II—courtrooms are open to the public and press with seating conforming to social distancing rules and overflow rooms as needed.  *See* Re-Entry Plan at 12.  The fact that some people who want to attend the trial choose not to or are unable because of risks, inconveniences or travel restrictions created by the pandemic does not mean that this trial is not public for purposes of the Sixth Amendment.  *Cf. Herring v. Meacham*, 11 F.3d 374, 380 (2d Cir. 1993) ("The Sixth Amendment protects the right to a public trial; it does not guarantee that trials will be conducted to fit the schedules of all who wish to attend.").  To the extent the defendant is arguing that the District's new COVID-19 screening procedure for entry into the courthouse as set forth in S.D.N.Y. Standing Order M10-468 amounts to a "closure" of the courtroom for this trial, we request that the Court make appropriate findings to support the purported "closure" as set forth in *Waller v. Georgia*, 467 U.S. 39, 45 (1984).[7]  Given the current health and safety crisis, the courthouse screening measures set forth in Standing Order M10-468 are reasonable and not broader than necessary to protect the health and safety of courthouse personnel and participants in court proceedings, and to prevent spread of the virus.  *Cf. United States v. Smith*, 426 F. 3d 567, 571-74 (2d Cir. 2005) (post 9/11 security screening procedures for access to the courthouse did not deprive a defendant of his right to a public trial because the screening procedures amounted to at most a "partial closure" of the trial, and the *Waller* test was satisfied).

      Finally, the Court should reject the defendant's suggestion that his criminal trial should be adjourned until after his pending mandamus petition and civil appeals are decided by the Second Circuit.  With respect to the mandamus petition, the defendant could move to stay these criminal proceedings until his petition is decided but he has strategically chosen not to.  This Court's denial of the defendant's pretrial motions for disqualification of the Court and the Special Prosecutors, as well as for dismissal of the charges, was correct and based on sound reasoning.  Absent a stay, the trial should proceed.

---

[7] In *Waller*, the Supreme Court established a four-prong test for determining where an abridgement of a defendant's Sixth Amendment public trial right is justified.  *Id.* at 48.  A courtroom closure does not rise to the level of a Sixth Amendment violation if: (1) closing the hearing would advance an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Id.*; *see United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005).  While *Waller* addressed complete closure of a courtroom to the public, the Second Circuit has determined that where a narrow "partial closure" occurs, the first *Waller* factor is less rigorous and requires only a "substantial reason" rather than an "overriding interest" justifying the closure.  *Smith*, 426 F.3d at 571.  In determining where a closure is broad or narrow, a variety of factors are considered, including "its duration, whether the public can learn what transpired while the trial was closed (e.g. through transcripts), whether the evidence was essential, and whether selected members of the public were barred from the courtroom, or whether all spectators were excluded."  *Carson v. Fisher*, 421 F.3d 83, 89-90 (2d Cir. 2005).

Hon. Loretta A. Preska
August 5, 2020
Page 5

As for the defendant's pending Second Circuit civil appeals—Nos. 19-1584, 18-2191, and 18-855—the defendant is incorrect in arguing that the "outcome of that appeal may exonerate Mr. Donziger and cause any effort to convict him on these counts [One, Two and Three] to have been wasted." *See* Dkt. 111 at 3. As a preliminary matter, the defendant does not dispute that there is no pending appeal of the orders underlying criminal contempt on Counts Four, Five and Six. Moreover, contrary to the defendant's assertion, he did not challenge on appeal the orders underlying Counts One, Two, and Three. Specifically, in his appellate brief addressing Judge Kaplan's May 23, 2019 civil contempt findings, the defendant challenged neither Judge Kaplan's March 5, 2019 Forensic Protocol Order nor Judge Kaplan's findings of civil contempt for Donziger's disobedience of that March 5, 2019 order. *See* 2d Cir. No. 19-1584, Dkt. 48 (Donziger's opening appellate brief challenging certain of the civil contempt findings, but not the Forensic Protocol Order and related civil contempt findings). Thus, his pending appeal of the civil contempt findings do not impact the criminal contempt charged in Counts One (disobedience of paragraph four of the March 5, 2019 Order) and Two (disobedience of paragraph five of the March 5, 2019 Order).[8] The same is true with respect to Count Three, i.e., the defendant's disobedience of Judge Kaplan's June 11, 2019 order directing him to surrender his passport to the Clerk of Court by June 12 as a sanction to coerce Donziger's compliance with the March 5 Order. The defendant did not challenge that order on appeal, and that order is directly connected to his disobedience of the March 5 Order that he did not challenge on appeal.

**B.     Use of Videoconferencing**

On the issue of whether this bench trial could be conducted "remotely" through the use of live videoconference technology, our view is that this criminal bench trial should occur in-person at the courthouse with attorneys and witnesses attending. At noted *supra* in footnote 6, an in-person suppression hearing took place at the 500 Pearl Street courthouse on July 22, with the defendants, witnesses, prosecutors and defense attorneys present.

To the extent that a witness may not be able to attend in-person for some reason, we respectfully submit that the Court address those issues and possibility of presenting that witness's testimony by live videoconference on a case-by-case basis applying the applicable legal principles. For example, there may be one prosecution witness for which we seek to present his testimony by videoconference,[9] in which case we will make application to the Court pursuant to the legal principles set forth in *Maryland v. Craig*, 497 U.S. 836, 857 (1990) (the Sixth Amendment's Confrontation Clause did not prohibit use of one-way closed-circuit

---

[8] We note that Judge Kaplan's specific civil contempt finding for Donziger's deliberate disobedience of paragraph five of the March 5 Forensic Protocol Order was made separately in a June 4, 2019 order (Civ. Dkt. 2222). Donziger never noticed an appeal of that particular order.

[9] The defense referenced this prosecution witness in its July 29 letter requesting a continuance. Prior to the defense submitting their July 29 letter, we discussed whether the defense might agree to allowing this witness to testify remotely via video, and the defense indicated they would oppose remote testimony by that witness if the trial date remained September 9.

Hon. Loretta A. Preska
August 5, 2020
Page 6

television testimony by child witness in an abuse case where there was a finding of necessity and the testimonial procedure used "ensure[d] reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserve[d] the essence of effective confrontation") and *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) ("Upon a finding of exceptional circumstances, . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice."). In *Gigante*, the Second Circuit affirmed the trial court's determination, following an evidentiary hearing, that a "crucial" prosecution witness could testify remotely via live two-way close-captioned TV where the witness was ill and too sick to travel to New York to testify at trial. *Id.* at 79-81. During his testimony, the witness was visible on video screens in the courtroom to the jury, defense counsel, defendant, and the judge, and the witness could see and hear defense counsel and other courtroom participants on a video screen at his remote location. *Id.* at 80. The Circuit stated: "While the use of remote, closed-circuit television testimony must be carefully circumscribed, Judge Weinstein's order in this case adequately protected Gigante's confrontation rights." *Id.*

As for defense witnesses, given that the defendant "has no constitutional right to present evidence through live, in-person testimony only," *Saipov*, 412 F. Supp. 3d at 299, we respectfully request that the Court address issues regarding defense witness testimony on a case-by-case basis, which would include an assessment of the nature of the proposed testimony.

                                            Respectfully submitted,

                                            _____/s/_____

                                            Rita M. Glavin
                                            Special Prosecutor