UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN DONZIGER,

                Defendant.

19 Cr. 561 (LAP);
[11 Civ. 691 (LAK)]

# **GOVERNMENT'S REPLY IN FURTHER SUPPORT OF MOTIONS IN LIMINE**

Rita M. Glavin
Brian P. Maloney
Sareen K. Armani

*Special Prosecutors on behalf of the
United States of America*

# TABLE OF CONTENTS

                                                 **Page**

TABLE OF CONTENTS .................................................................................................... i
TABLE OF AUTHORITIES ............................................................................................. ii
PRELIMINARY STATEMENT ........................................................................................ 1
I.    THE COLLATERAL BAR DOCTRINE AND ITS EXCEPTIONS ................................ 4
      A.    The Doctrine ............................................................................................. 4
      B.    The "Transparently Invalid" Exception ................................................... 5
      C.    "Lack of Adequate and Effective Remedies" .......................................... 7
      D.    "Irretrievable Surrender of Constitutional Guarantees" .......................... 9
II.   THE "DISOBEDIENCE AND CONTEMPT" PATH DOES NOT PRECLUDE
       CRIMINAL CONTEMPT ......................................................................................... 10
CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

## Cases

*Application of Am. Tobacco Co.*,
  866 F.2d 552 (2d Cir. 1989) ................................................................................ 12

*Armstrong v. Guccione*,
  470 F.3d 89 (2d Cir. 2006) .................................................................................. 11

*Chevron Corp. v. Berlinger*,
  629 F.3d 297 (2d Cir. 2011) ................................................................................ 12

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) .................................................................................... 2

*Del Carmen Montan v. Am. Airlines, Inc (In re Aircrash at Belle Harbor)*,
  490 F.3d 99 (2d Cir. 2007) .................................................................................. 10

*Dinler v. City of N.Y. (In re City of N.Y.)*,
  607 F.3d 923 (2d Cir. 2010) ............................................................................ 8, 12

*Donziger v. Chevron Corp.*,
  137 S. Ct. 2268 (2017) .......................................................................................... 2

*In re Grand Jury Subpoena*,
  741 F.3d 339 (2d Cir. 2013) ................................................................................ 11

*In re Grand Jury Subpoena*,
  826 F.2d 1166 (2d Cir. 1987) .............................................................................. 11

*In re Grand Jury Subpoena*s,
  722 F.2d 981 (2d Cir. 1983) ................................................................................ 11

*In re Grand Jury*,
  705 F.3d 133 (3d Cir. 2012) ................................................................................ 12

*In re Novak*,
  932 F.2d 1397 (11th Cir. 1991) .................................................................... 5, 7, 9

*In re Providence Journal Co.*,
  820 F.2d 1342 (1st Cir. 1986) ...................................................................... 4, 5, 6

*In re Providence Journal Co.*,
    820 F.2d 1354 (1st Cir. 1987) ............................................................................. 4, 6

*In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999*,
    191 F.3d 173 (2d Cir. 1999) ................................................................................. 11

*In re Weiss*,
    703 F.2d 653 (2d Cir. 1983) ................................................................................. 11

*Maness v. Meyers*,
    419 U.S. 449 (1975) ............................................................................................... 9

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
    591 F.2d 174 (2d Cir. 1979) ................................................................................. 11

*Pac. Union Conference of Seventh-Day Adventists v. Marshall*,
    434 U.S. 1305 (1977) ............................................................................................. 8

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*,
    745 F.3d 30 (2d Cir. 2014) ..................................................................................... 8

*Stolt-Nielsen Transp. Grp., Inc. v. Celanese AG*,
    430 F.3d 567 (2d Cir. 2005) ............................................................................ 11, 12

*Terry v. United States*,
    513 U.S. 946 (1994) ............................................................................................... 4

*United States v. Beckerman*,
    No. 98-6195, 1999 U.S. App. LEXIS 2781 (2d Cir. Feb. 24, 1999) ..................... 12

*United States v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ................................................................................... 12

*United States v. Crawford (In re Criminal Contempt Proceedings Against Crawford)*,
    329 F.3d 131 (2d Cir. 2003) ................................................................................... 5

*United States v. Cutler*,
    58 F.3d 825 (2d Cir. 1995) ..................................................................................... 6

*United States v. Dickinson*,
    465 F.2d 496 (5th Cir. 1972) .............................................................................. 5, 7

*United States v. Hendrickson*,
    822 F.3d 812 (6th Cir. 2016) .................................................................................. 7

*United States v. Providence Journal Co.*,
 485 U.S. 693 (1988) ............................................................................................................ 5

*United States v. Ramos*,
 685 F.3d 120 (2d Cir. 2012) ............................................................................................. 10

*United States v. Terry*,
 802 F. Supp. 1094 (S.D.N.Y. 1992) ................................................................................ 4, 6

*United States v. Terry*,
 17 F.3d 575 (2d Cir. 1994) ............................................................................................ 4, 5, 6

*United States v. United Mine Workers*,
 330 U.S. 258 (1947) ........................................................................................................ 4, 5

*Vera v. Republic of Cuba*,
 802 F.3d 242 (2d Cir. 2015) ............................................................................................... 12

*Walker v. Birmingham*,
 388 U.S. 307 (1967) ........................................................................................................ 4, 7

*Williams v. Dart*,
 No. 19-2108, 2020 U.S. App. LEXIS 23132 (7th Cir. 2020) ............................................... 5

## Statutory Authorities

18 U.S.C. § 401 ........................................................................................................................ 11

28 U.S.C. § 1782 ...................................................................................................................... 12

**PRELIMINARY STATEMENT**

In his opposition to the Government's motion in limine, the defendant argues that the Government's motion should be denied "without prejudice to its ability to raise these arguments at trial." Dkt. 110 at 5. The defendant then cites to some exceptions to the collateral bar doctrine without specifically explaining how each exception applies to either the facts here or to any of the particular orders specified in the Government's moving brief. He promises to "before or during trial . . . present a trial brief outlining his view of the collateral bar doctrine and how it does and does not apply to the facts of his case." *Id.* at 10. The defendant then concludes by arguing he should be permitted to challenge the validity of "those orders" without stating which specific ones and explaining why. *Id.* at 14.

Donziger may certainly present a defense at trial on the factual issues of whether the orders at issue were reasonably specific and whether he acted "willfully." However, the fact remains that for the orders underlying Counts One through Six (Civ. Dkts. 1875, 2172, 2232), the defendant has never challenged their provisions on appeal. This is so despite his claim that the "Second Circuit has specifically endorsed the route Mr. Donziger traveled here," i.e., that a discovery order contemnor "may appeal from an order holding him in contempt for his refusal and may, as part of that appeal, challenge the order requiring production." *Id.* at 13 (internal quotations and citations omitted). The Court should carefully scrutinize this purported defense and the defendants' claims of exceptions to the collateral bar rule.

Counts Four, Five and Six are based on Donziger's violation of certain provisions of the March 4, 2014 RICO Judgment, which the Second Circuit affirmed in 2016. *Chevron Corp. v.*

*Donziger*, 833 F.3d 74, 81 (2d Cir. 2016). [1] Donziger did not challenge on appeal—back then or in his pending civil appeals[2]—the provision of the RICO Judgment (paragraph one) that required Donziger to assign to Chevron his rights to any contingent fee stemming from the Ecuadorian Judgment. That provision of the RICO Judgment is the order that forms the basis for Counts Four and Five. As for Count Six, which charges Donziger with violating paragraph five of the RICO Judgment by pledging a portion of Donziger's *own personal interest* in the Ecuadorian Judgment in exchange for personal services, Donziger himself has acknowledged that he cannot pledge his own personal interest in the Ecuadorian Judgment and has not argued otherwise in his pending appeals. *See* Civ. Dkt. 2010 at 18-19 ("I am not selling my own shares, because that obviously is prohibited by your Honor's RICO judgment."); Civ. Dkt. 2184 at 7-8 ("I was careful to avoid 'monetizing' my own contingency interest in the Ecuador Judgment"); Civ. Dkt. 2234 at 3 n.1 ("…I may have carelessly agreed to a monetization-type arrangement with a life coach..."). Thus, Donziger should be precluded from challenging the validity or constitutionality of the affirmed RICO Judgment provisions as they pertain to Counts Four, Five and Six.

With respect to Count One—Donziger's disobedience of paragraph four of the March 5, 2019 Forensic Inspection Protocol Order ("Protocol") requiring Donziger to provide a list to the Neutral and Chevron's Forensic Expert by March 8, 2019 of his electronic devices and accounts used for communication, messaging and document management (Civ. Dkt. 2172 ¶ 4)—Donziger

---

[1] Donziger's appeals from Judge Kaplan March 4, 2014 RICO Judgment were exhausted on June 19, 2017, when the Supreme Court denied his petition for a writ of certiorari. *See Chevron Corp. v Donziger*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017).

[2] Donziger's pending civil appeal from Judge Kaplan's May 23, 2019 civil contempt findings challenges only the civil contempt findings that pertain to Donziger's conduct in pledging *others' non-enjoined interests* in the Ecuadorian Judgment and personally profiting from it. *See* 2d Cir. No. 19-1584, Dkt. 48. Donziger has not challenged the civil contempt findings regarding his failure to transfer his contingent fee interest as directed by the RICO Judgment, or his pledge of a portion of his own interest in the Ecuadorian Judgment in exchange for personal services.

offers no explanation as to how that portion of the Protocol could be invalid or unconstitutional. As for Count Two—Donziger's disobedience of paragraph five of the Protocol, requiring him to surrender his devices for imaging to a neutral expert on March 18, 2019 at 12 p.m. (Civ. Dkt. 2172 ¶ 5)—to the extent Donziger argues that compliance would necessitate an irrevocable surrender of privileged or constitutionally-protected information, Donziger did not seek appellate relief by mandamus or otherwise when it was issued. Nor did he challenge the Protocol when he appealed from *certain* of Judge Kaplan's civil contempt findings, but not the civil contempt findings related to his willful disobedience of paragraphs four and five of the Protocol. *See Chevron v. Donziger*, 2d Cir. No. 19-1584, Dkt. 48 (Donziger appellate brief challenging certain of Judge Kaplan's civil contempt findings, but not the contempt findings against him for disobeying the Protocol order). As for Count Three—Donziger's violation of the June 11, 2019 passport surrender order imposed as a coercive sanction for his contempt of the Protocol—Donziger made no effort to challenge that order on appeal and does not explain how that order was invalid or unconstitutional.

Notably, while defendant's opposition references the fact that Donziger had an interlocutory appeal pending in the Second Circuit from 2018 in which he challenged the underlying post-judgment discovery proceedings, Dkt. 110 at 6, there is no dispute that *Donziger never sought a stay in the Second Circuit of those post-judgment proceedings about which he was complaining. See Chevron Corp. v. Donziger*, 2d Cir. No. 18-855. Judge Kaplan made this specific point to Donziger at a January 8, 2019 hearing in which the parties discussed the Protocol: "They have a right to conduct appropriate discovery as far as I'm concerned. I know you have a brief pending in the Second Circuit. I know their brief is due sometime in March. That's the way it goes. You don't have a stay." Civ. Dkt. 2149 at 13-14.

The Government does not object to the defendant developing an appropriate evidentiary record to the extent he has valid defenses to his disobedience of specific orders. The defendant mentions some purported exceptions to the collateral bar doctrine that may or may not be relevant to the facts of his case. Because this is a bench trial, there is certainly less concern about the dangers of prejudice or confusion of the issues. The Government respectfully requests that the Court remain vigilant to the defendant's assertions of purported exceptions to the collateral bar doctrine and how the defense presents evidence in that regard, such that this trial is conducted in an orderly fashion and legal and factual issues are not confused.

## I. THE COLLATERAL BAR DOCTRINE AND ITS EXCEPTIONS

Given the defendant's assertion that he seeks to develop the factual record to demonstrate the applicability of purported exceptions to the collateral bar doctrine with respect to various orders at issue, the Government lays out some relevant caselaw concerning the doctrine and the exceptions referenced by the defense.

### A. The Doctrine

As established in the Government's motion (Dkt. 105 at 22-24), it is well-settled that a defendant generally may not violate a court order and collaterally attack the lawfulness or constitutionality of that order as a defense in the criminal contempt proceeding. Rather, "the appropriate method to challenge a court order is to petition to have the order vacated or amended." *United States v. Terry*, 802 F. Supp. 1094, 1101 (S.D.N.Y. 1992) ("*Terry I*") aff'd 17 F.3d 575, 579 (2d Cir. 1994) ("*Terry II*") *cert. denied* 513 U.S. 946 (1994) (quoting *In re Providence Journal Co.*, 820 F.2d 1342, 1346 (1st Cir. 1986) ("*Providence Journal I*"), *modified on reh'g en banc*, 820 F.2d 1354 (1st Cir. 1987) ("*Providence Journal II*"), *cert. dismissed sub nom. United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (citing *Walker v. Birmingham*, 388 U.S. 307 (1967); *United States v. United Mine Workers*, 330 U.S. 258 (1947));

*see also United States v. United Mine Workers*, 330 U.S. 258, 294 (1947) ("Violations of an order are punishable as criminal contempt even though the order is set aside on appeal. . .or though the basic action has become moot.") (citation omitted); U*nited States v. Crawford (In re Criminal Contempt Proceedings Against Crawford)*, 329 F.3d 131, 138-39 (2d Cir. 2003); *accord Williams v. Dart*, No. 19-2108, 2020 U.S. App. LEXIS 23132, at *26-27 (7th Cir. July 23, 2020) ("courts have little patience with parties who decide to violate court orders they disagree with rather than challenge them through orderly legal channels."); *United States v. Dickinson*, 465 F.2d 496, 509 (5th Cir. 1972) ("Invalidity is no defense to criminal contempt.").

### B. The "Transparently Invalid" Exception

The Second Circuit has recognized an exception to the prohibition against collateral attack for a "transparently invalid" order that is "so far in excess of [the court's] authority that it had no right to expect compliance." *Terry II*, 17 F.3d at 579 (quoting *Providence Journal I*, 820 F.2d at 1347). The "transparently invalid" exception derives from *Providence Journal*, in which the Providence Journal newspaper published an article in violation of a temporary restraining order purporting to bar that conduct. *See Providence Journal I*, 820 F.2d at 1345. To fall within the "transparently invalid" exception, a party must first overcome the heavy presumption of validity generally accorded to court orders. As the First Circuit explained:

> As a general rule, if the court reviewing the order finds the order to have had any pretence to validity at the time it was issued, the reviewing court should enforce the collateral bar rule. Such a heavy presumption in favor of validity is necessary to protect the rightful power of the courts.

*In re Providence Journal Co.*, 820 F.2d 1342, 1347-48 (1st Cir. 1986) (reversing criminal contempt conviction where order had imposed a prior restraint against pure speech); *accord In re Novak*, 932 F.2d 1397, 1403 (11th Cir. 1991) ("Only when there is no colorable, nonfrivolous

argument to support the order being reviewed should a contemnor be excused from his disobedience of the order.").

While Donziger does not specifically contend in his opposition that any of the relevant orders are "transparently invalid," he does insinuate that some of the orders were invalid. Thus, it is important to note that for a party to avail itself of the "transparently invalid" exception, the Second Circuit has held that a party must make some "good faith effort to seek emergency relief from the appellate court. . . .or show compelling circumstances, such as a need to act immediately, excusing the decision not to seek some kind of emergency relief." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995); *Providence Journal II*, 820 F.2d at 1355.[3] As such, in *Terry*, for example, the defendant was barred from collaterally attacking the preliminary injunction entered in that case because, among other things, he did not appeal the issuance of the preliminary injunction as unconstitutional. *Terry II*, 17 F.3d at 579. The defendant was accordingly precluded from attacking the injunction's constitutionality at the criminal contempt proceeding or on appeal. *See Terry I*, 802 F. Supp. at 1101; *Terry II*, 17 F.3d at 579.

With respect to the specific RICO Judgment provisions at issue in Counts Four, Five and Six, given the Second Circuit's 2016 affirmance of the RICO Judgment, as well as the fact that Donziger has not challenged the validity or constitutionality of those specific provisions as applied to the conduct charged in those Counts, it is difficult to imagine how Donziger could argue an exception to the collateral bar doctrine applies. As for Counts One, Two and Three, the evidence will be that Donziger made no good faith effort to seek emergency relief from the appellate court and, as set forth *infra,* there were options for him to do so.

---

[3] Upon *en banc* review, the First Circuit added the requirement that a party seek emergency relief in the face of a transparently invalid order, in order to resolve the conflict between constitutional principles, and offset the expense and time involved and "by aborting any contempt proceedings." *Id.* (citing *Providence Journal II*, 820 F.2d at 1355).

### C. "Lack of Adequate and Effective Remedies"

The defendant claims he "is effectively being deprived of effective and adequate remedies for appealing Judge Kaplan's orders" relating to post-judgment discovery (Dkt. 110 at 14) and suggests that the collateral bar rule is inapplicable based on the Eleventh Circuit's decision in *In re Novak*, which notes that the collateral bar rule "presupposes that adequate and effective remedies exist for orderly review of the challenged ruling." *In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991) (affirming criminal contempt conviction) (citing *United States v. Dickinson*, 465 F.2d 496, 511 (5th Cir. 1972)).[4] *Novak* relied on the Fifth Circuit's decision in *United States v. Dickinson*, which noted that in *Walker v. Birmingham*, "there was a two-day interim between the issuance of the injunction and the planned Good Friday march, during which time some effort to secure judicial relief could and should have been made," but the contemnors in that case did not do so. *Dickinson*, 465 F.2d at 511 ("If there had been no real opportunity to contest the unconstitutional order, as, for example, if it had been issued at the very moment the march was scheduled to commence, then the premise that effective judicial remedies were available would be undermined and the result would likely have been different.").

Here, the evidence will be that Donziger did not take steps to properly challenge the pertinent post-judgment production orders despite opportunity to do so. For example, while Donziger had an interlocutory appeal to the Second Circuit challenging the underlying post-judgment proceedings, *see Chevron v. Donziger*, 2d Cir. 18-855, Dkt. 79, Donziger never sought a stay of the post-judgment proceedings in the Second Circuit after Judge Kaplan denied his request for a stay pending that appeal. As discussed *supra*, Judge Kaplan made this precise point

---

[4] The Sixth Circuit has not adopted the "adequate and effective remedies" exception to the collateral bar rule. *See United States v. Hendrickson*, 822 F.3d 812, 819 (6th Cir. 2016) (analyzing but declining to accept or reject "adequate and effective remedies" or "irretrievable surrender of constitutional guarantees" exceptions to the collateral bar rule).

to Donziger at a January 8, 2019 conference after Donziger objected to the post-judgment discovery he was ordered to produce: "I know you have an appeal pending in the Second Circuit. . . You don't have a stay." Civ. Dkt. at 2149 at 13-14.

Moreover, Donziger never pursued the option of a mandamus petition. The ability to seek a stay and writ of mandamus was available to challenge orders Donziger believed required surrender of privileged or constitutionally-protected information and would cause irreparable harm. *Pac. Union Conference of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1307, 98 S. Ct. 2, 4 (1977) ("While discovery orders are not themselves appealable, in extraordinary circumstances interlocutory review of them may be had by way of mandamus."); *Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 36 (2d Cir. 2014) (granting writ of mandamus to resolve important questions concerning personal jurisdiction as applied to religious and charitable organizations under circumstances where the district court had issued an expansive discovery order that implicated significant confidentiality interests for those organizations."); *Dinler v. City of N.Y. (In re City of N.Y.)*, 607 F.3d 923, 934 (2d Cir. 2010) (concluding that petition for writ of mandamus was appropriate where party subject to order of disclosure could not defy court order under circumstances where that party "does not know whether the District Court would punish its disobedience with an appealable criminal sanction or an 'onerously coercive civil contempt sanction with no means of review until the perhaps far distant day of final judgment'"); *United States v Victoria-21*, 3 F.3d 571, 575 (2d Cir. 1993) (discovery orders compelling production of privileged documents are appropriate for mandamus review).

Further, after Judge Kaplan found Donziger in civil contempt for his violations of the Protocol—which form the basis of Counts One and Two—*Donziger did not challenge that*

*contempt finding on appeal. See Chevron Corp. v. Donziger*, 2d Cir. No. 19-1584, Dkt. 48. Indeed, Donziger did not even challenge the Protocol.

Thus, assuming *arguendo* that there is a collateral bar exception where there is "a lack of adequate and effective remedies" to obtain review other than by disobedience of the order, the evidence will be that Donziger had the opportunity to avail himself of such remedies and he did not attempt to do so.

D.  **"Irretrievable Surrender of Constitutional Guarantees"**

The Eleventh Circuit has stated that the collateral bar rule is inapplicable to orders that "require an irretrievable surrender of constitutional guarantees." *Novak*, 932 F.2d at 1401. In such a case, "the only way to preserve a challenge to the validity of the order and repair the error is to violate the order and contest its validity of appeal from the district court's judgment of criminal contempt." *Id.* at 1401-1402.

The defendant apparently seeks to avail himself of this purported exception by citing to *Maness v. Meyers*, which dealt with the "narrow issue. . .whether a lawyer may be held in contempt for advising his client, during the trial of a civil case, to refuse to produce material demanded by a *subpoena duces tecum* when the lawyer believes in good faith the material may tend to incriminate his client." 419 U.S. 449, 458 (1975). Donziger suggests that "a different situation" exists when a Court "orders a witness to reveal information," Dkt. 110 at 10-11, and compliance would cause irreparable injury once the information is released. Donziger claims that he objected to producing the information ordered by Judge Kaplan because it required the surrender of privileged information (attorney-client and work product) as well as implicated his Fifth Amendment privilege against self-incrimination. *Id.* at 6, 8, 11.

Contrary to Donziger's claim in his opposition papers, Donziger never objected on Fifth Amendment grounds to the post-judgment production orders at issue. Dkt. 110 at 6 (claiming

9

that Donziger objected to Judge Kaplan's production order, noting "the fact that production pursuant to Chevron's demands would effectively force him to testify against himself as to the existence, possession, and authenticity of countless documents"); *id.* at 8 ("Mr. Donziger reiterated his objections based on . . . self-incrimination…"). A review of the docket entries cited in the defendant's opposition brief in support of this new claim, i.e., that he previously objected to the production orders on Fifth Amendment grounds, reveals no such objection was ever lodged. *See* Civ. Dkts. 2131, 2151, 2184, 2248, 2250. "As a general matter, the Fifth Amendment privilege is not self-executing. Rather, the privilege must be invoked: an individual must claim the privilege to be protected by it." *United States v. Ramos*, 685 F.3d 120, 127 (2d Cir. 2012).

As for Donziger's claim that compliance with production orders would have irrevocably surrendered information protected by attorney-client and work-product privilege, this also fails because—as discussed *supra*—he had other adequate remedies he could have pursued for appellate review other than disobedience.

## II. THE "DISOBEDIENCE AND CONTEMPT" PATH DOES NOT PRECLUDE CRIMINAL CONTEMPT

The defendant claims that he sought to travel along a route "specifically endorsed" by the Second Circuit in order to obtain appellate review with respect to orders to turn over information, and that there is "no suggestion in any of these cases that taking this route amounts to criminal contempt." Dkt. 110 at 13-14 (collecting cases). Donziger's contention—that his understanding of appellate caselaw somehow absolves him of the consequences of his actions or that his choices in that regard cannot amount to criminal contempt—is incorrect. *Del Carmen Montan v. Am. Airlines, Inc (In re Aircrash at Belle Harbor)*, 490 F.3d 99, 104 (2d Cir. 2007) ("[t]he remedy of the party witness wishing to appeal is to refuse to answer *and subject himself to*

*criminal contempt*; that of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt.") (emphasis added) (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 177 (2d Cir. 1979)); *Stolt-Nielsen Transp. Grp., Inc. v. Celanese AG*, 430 F.3d 567, 574 (2d Cir. 2005) ("in a criminal or civil proceeding, a witness wishing to contest a subpoena must usually disobey the subpoena, *be held in civil or criminal contempt*, and then appeal the contempt order.") (emphasis added). Courts "may impose criminal contempt sanctions, or civil contempt sanctions, or both" in response to a party's willful refusal to obey a court order, and "the determination of the appropriate response is committed largely to the court's discretion." *In re Weiss*, 703 F.2d 653, 664 (2d Cir. 1983)). The contempt power is statutorily authorized by 18 U.S.C. § 401 and part of the inherent power of the judiciary to impose civil or criminal penalties for disobedience to a court's lawful orders. *See Armstrong v. Guccione*, 470 F.3d 89, 103-108 (2d Cir. 2006) (outlining history of the contempt power).

In any event, a review of the cases cited by Donziger (Dkt. 110 at 13-14) establishes that they have nothing to do with the charged conduct in this case, and do not support Donziger's claim that he is entitled to collaterally attack the validity, lawfulness or constitutionality of the orders underlying Counts One through Six under these circumstances. The cases reflect instances where (i) a party or non-party witness invoked the Fifth Amendment privilege against self-incrimination;[5] (ii) the court dismissed appellate jurisdiction because the respondents had

---

[5] *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 352-53 (2d Cir. 2013) (affirming civil contempt sanctions against subpoena respondent who had invoked the Fifth Amendment where documents in question fell within the "required records" exception outside the purview of the Fifth Amendment privilege); *In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999*, 191 F.3d 173, 183-84 (2d Cir. 1999) (affirming denial of government's motion to compel production of documents from former employees who had invoked Fifth Amendment "act of production" privilege against production of documents of former employer); *In re Grand Jury Subpoena*, 826 F.2d 1166, 1170-71 (2d Cir. 1987) (affirming civil contempt and confinement sanctions against grand jury witnesses who had invoked the Fifth Amendment privilege against signing directives authorizing foreign financial institutions to produce documents, where the compelled execution of such directives was not testimonial in nature); *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 & June 22, 1983*, 722 F.2d 981, 986-87 (2d

11

not yet been adjudicated in civil or criminal contempt;[6] or (iii) the matter involved third-parties, arbitral or administrative agency proceedings, or 28 U.S.C. § 1782 proceedings that are not analogous to the circumstances here.[7]

Accordingly, the defendant's suggestion that "the prosecution will be required to show how traveling the route endorsed by the Second Circuit" amounts to "a specific intent to consciously disregard an order of the court" is curious (Dkt. at 14), because traveling the path of disobedience and contempt necessarily requires willful disobedience that subjects a party to civil or criminal contempt sanctions in the discretion of the court. *See Dinler v. City of N.Y. (In re City of N.Y.)*, 607 F.3d 923, 933-35 (2d Cir. 2010) ("a party to an action may immediately appeal an order of *criminal* contempt, and thus the City could theoretically (a) disobey the District Court's order, (b) be held in criminal contempt, and then (c) bring an immediate appeal.") (emphasis in original); *see also In re Grand Jury*, 705 F.3d 133, 143 (3d Cir. 2012) (requiring

---

Cir. 1983) (reversing civil contempt order where grand jury witness had invoked Fifth Amendment "act of production" privilege against production of corporate records of former employer).

[6] *Vera v. Republic of Cuba*, 802 F.3d 242, 244-247 (2d Cir. 2015) (dismissing appeal for lack of appellate jurisdiction, where third-party foreign bank had moved to quash subpoena for lack of subject matter and personal jurisdiction and had moved to stay enforcement of district court's order); *United States v. Beckerman*, No. 98-6195, 1999 U.S. App. LEXIS 2781, at *3-6 (2d Cir. Feb. 24, 1999) (unpublished) (dismissing appeal for lack of appellate jurisdiction prior to finding of contempt, where taxpayer subject of grand jury investigation had refused to produce certain documents in response to grand jury subpoena on grounds of attorney-client privilege, despite court order finding he had waived privilege following the court's *in camera* review of those documents); *Application of Am. Tobacco Co.*, 866 F.2d 552, 553, 556 (2d Cir. 1989) (dismissing appeal for lack of appellate jurisdiction in the absence of contempt adjudication, where non-party witnesses objected to production of documents on grounds of privilege and preclusion arising from an order quashing similar subpoenas in another case).

[7] *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306, 311 (2d Cir. 2011) (affirming district court's production order in 28 U.S.C. § 1782 proceeding against respondent who had asserted qualified evidentiary privilege for information gathered in a journalistic investigation, and vacating prior stay of production); *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 574-76 (2d Cir. 2005) (affirming district court's order that subpoenas issued in arbitration proceeding were within the scope of Section 7 of the Federal Arbitration Act, and finding appellate jurisdiction where matter concerned subpoena to non-party witness who "cannot be expected to risk a contempt citation rather than comply with the subpoena"); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 469, 473-74 (2d Cir. 1996) (affirming subpoena enforcement order sought by the Nuclear Regulatory Commission requiring production of records and rejecting objections that agency lacked authority to issue the subpoena or that documents were subject to attorney-client or work product privilege, where subpoena issued by government agency may be appealed immediately without resort to contempt sanctions, and where respondent had moved to stay enforcement pending appeal).

prior finding of contempt "forces the objector to weigh carefully the likelihood of success of its challenge to the underlying disclosure order against the seriousness of the sanctions it would face—whether incarceration, a hefty monetary fine, or some other penalty—if it disobeys the order to disclose."). In other words, for Donziger to "travel the route" of disobeying a court order to seek review, Donziger must "consciously disregard an order of the court"—the specific intent required for a criminal contempt.

## **CONCLUSION**

In sum, Donziger can develop the evidentiary record to seek to establish valid exceptions to the collateral bar doctrine, but the Court should scrutinize that evidence and the availability of exceptions to the collateral bar doctrine for the specific orders at issue. Nothing set forth in the defendant's opposition supports his claim that a purported exception to the collateral bar doctrine should apply to the orders underlying Counts One through Six.

New York, New York
August 8, 2020

                                        Respectfully submitted,

                                        *s/Rita M. Glavin*
                                          Rita M. Glavin
                                          Brian P. Maloney
                                          Sareen K. Armani

                                        Special Prosecutors

                                        Seward & Kissel LLP
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Tel: (212) 574-1448
                                        Fax: (212) 480-8421
                                        glavin@sewkis.com
                                        maloney@sewkis.com
                                        armani@sewkis.com