UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│                                      │
│  UNITED STATES OF AMERICA,           │
│                                      │
│         -versus-                     │
│                                      │
│  STEVEN DONZIGER,                    │
│                                      │
│              Defendant.              │
│                                      │
└─────────────────────────────────────┘
```

19-CR-561 (LAP)
11-CV-691 (LAK)

ORDER

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

Before the Court is Mr. Donziger's motion for a trial continuance based on, inter alia, COVID-19, his attorneys' inconvenience, and his pending mandamus petition and civil appeal.  For the reasons set forth below, the motion is denied.

I.   **BACKGROUND**

On July 31, 2019, Judge Lewis A. Kaplan issued an order directing Mr. Donziger to show cause why he should not be held in criminal contempt of court, and on August 6, 2019, Mr. Donziger, then proceeding pro se with advisory counsel, was arraigned.  (Dkt. nos. 1, 18.)  On August 11, 2019, Andrew Frisch entered an appearance as Mr. Donziger's counsel.  (Dkt. no. 11.)  After a number of conferences and motions, on December 4, 2019, trial was set for June 15, 2020.  (Dkt. no. 42.)

In a letter dated May 4, 2020, Mr. Frisch discussed a number of issues, including whether the trial would be bench or jury, estimated that it would take two days to present Mr.

1

Donziger's evidence at a bench trial, and noted that "the ongoing pandemic makes it virtually impossible that any trial, bench or jury, will be conducted in this District as early as mid-June 2020." (Dkt. no. 73.)  The Government, in response, stated that it would be ready for trial on June 15 and estimated that, in a bench trial, its direct case would take three days.  (Dkt. no. 74.)  On May 18, 2020, the Court adjourned trial to September 9.  (Dkt. no. 87.)  The Court also ruled that, because, if Mr. Donziger were convicted, it would not impose a sentence greater than six months or a $5,000 fine, trial will be by the Court.  (Id.)

On May 13, Richard Friedman, a resident of the State of Washington, moved for pro hac vice admission as Mr. Donziger's counsel.  (Dkt. no. 71.)  On May 27 and 29, respectively, Lauren Regan, a resident of Oregon, and Zoe Littlepage, a resident of Texas who is currently staying in Barbados, also sought pro hac vice admission as Mr. Donziger's lawyers.  (Dkt. nos. 80, 84.)  On July 7, Martin Garbus, a resident of Massachusetts, filed a notice of appearance on behalf of Mr. Donziger.  (Dkt. no. 101.)

On July 4, 2020, Mr. Frisch, without explanation, sought to withdraw from his representation of Mr. Donziger, stating only that Mr. Friedman would be lead counsel.  (Dkt. no. 98.)  The Court granted his motion, "provided that [Mr. Frisch's] withdrawal does not affect the trial date."  (Dkt. no. 99.)

Demonstrating yet again that no good deed goes unpunished, on July 29, Mr. Friedman moved for a continuance of the trial "until such time as it [can] be conducted safely and fairly." (Dkt. no. 111.)  As will be detailed below, Mr. Friedman relied on a variety of reasons, including COVID-19, Mr. Donziger's pending mandamus petition and civil appeals, Mr. Freidman's personal situation, including his medical condition, and co-counsel's travel difficulties.  The Court solicited the Government's views, including on the use of videoconferencing at trial (dkt. no. 113), and the parties have made numerous submissions (dkt. nos. 116, 117, 119, 121, 122, 123).

## II.  <u>DISCUSSION</u>

### a.  <u>Continuance Based on the COVID-19 Pandemic</u>

Mr. Donziger's motion highlights multiple challenges that a trial during the pandemic will pose to the lawyers, parties, and witnesses.  Mr. Donziger states, for example, that (i) his current attorneys live outside of New York and will be required to self-quarantine for 14 days before trial pursuant to New York State Executive Order #205;[1] (ii) witnesses live across the world

---

[1]    Although this was true at the time of Mr. Friedman's initial letter requesting a continuance, as pointed out in the special prosecutors' letter of August 14 (dkt. no. 123), the State of Washington was removed from the quarantine list on August 11, so Mr. Friedman, and presumably his trial assistant, would not be required to quarantine.  The quarantine never applied to Ms. Regan.  While Ms. Littlepage's out-of-country travel (dkt. no. 111) might subject her to quarantine,

(Footnote continued on following page.)

and may have difficulty attending trial given travel
limitations; (iii) members of the public may not be able to
attend trial given travel restrictions and the COVID-19 safety
protocols implemented by the Southern District of New York, and
(iv) conducting a trial during the pandemic risks the health and
safety of everyone involved.  (Dkt. no. 111 at 1-3; see also
dkt. no. 119.)

While the Court agrees that COVID-19 creates obstacles for
conducting trials, delaying Mr. Donziger's trial is neither
necessary nor prudent.  The current health conditions in New
York City create a window of opportunity for holding a public
trial in September, and it is not clear how long those
conditions will maintain.  Because the Government, the Court,
and the public have a strong interest in the prompt resolution
of all cases -- criminal and civil -- adhering to the September
trial date is the best way to ensure that this case, which is
already one year old, does not drag on indefinitely.

As an initial matter, despite Mr. Donziger's arguments to
the contrary, his rights as a criminal defendant will not be
prejudiced if trial is held in September.  While some of Mr.
Donziger's attorneys -- he has four of record -- might not be able
to attend trial in-person for health or other reasons, it is

--------

(Continued from previous page.)
videoconference technology could ensure that Mr. Donziger has
the benefit of her counsel during trial.

clear that highly experienced counsel, including Mr. Donziger's lead attorney and at least one other criminal defense lawyer, are available to try this case.  The Court is sympathetic to the burdens that a September trial date imposes on defense counsel (see dkt. no. 111, 122-1), but, unfortunate as they are, those burdens do not warrant a continuance.  When Mr. Donziger's out-of-state lawyers took this case on, the COVID-19 crisis was in full swing, and travel restrictions had already been announced in parts of the country.  That one of those attorneys must now quarantine before trial is regrettable but should not come as a total surprise and is no reason for postponing the trial date.[2]

The risk that some witnesses might be unable to attend trial does not require a continuance either.  Mr. Donziger states that he plans to call witnesses from across the world and that securing their in-person attendance is complicated by health concerns and travel limitations.  Although it is true that "[t]here is a strong preference for live testimony" at trial, United States v. Int'l Bus. Machines Corp., 90 F.R.D.

---

[2]    As noted above, Mr. Donziger's current lawyers only joined the defense team in the past few months, and when they entered their appearances, Mr. Donziger's former-lead counsel, Andrew Frisch, was doing the heavy lifting for the defense.  (See dkt. nos. 119, 122-1.)  But when Mr. Frisch moved to withdraw from the case, the Court approved his withdrawal on the express condition that it "would not affect the trial date."  (Dkt. no. 99.)  None of Mr. Donziger's current attorneys moved for reconsideration of that order or sought a continuance upon the order's entry.  It ill becomes them now to try to delay the trial because of Mr. Frisch's departure.

377, 381 (S.D.N.Y.), it is equally true that criminal defendants "ha[ve] no constitutional right to present evidence through live, in-person testimony only," United States v. Saipov, 412 F. Supp. 3d 295, 299 (S.D.N.Y. 2019).  For any defense witness who is unable to attend trial in-person or whose attendance would be unduly burdensome for COVID-19 related reasons, Mr. Donziger may move to admit his or her testimony via live video, and the Court will consider those applications on a case-by-case basis.[3]

The Government also notes that it might call a witness from Texas who is in his 70s and reluctant to travel to New York for trial, in which case the Government would move to introduce the witness's testimony by videoconference.  (Dkt. no. 116 at 5; see also dkt. no. 111 at 2.)  Permitting a prosecution witness to testify remotely implicates Mr. Donziger's rights under the Sixth Amendment's Confrontation Clause, which provides that "the accused shall enjoy the right . . . to be confronted with the

---

[3]     Mr. Donziger implies that video will be inadequate "because the case will turn on the credibility of testimony relating to a subjective state of mind -- 'willfulness.'"  (Dkt. no. 119 at 7-10.)  The Court disagrees.  Over the past few months, the Court has held multiple criminal conferences using video platforms, and several bench trials have been held by videoconferencing technology in the Southern District of New York ("SDNY"). While those platforms are not a perfect substitute for in-person appearances, they are highly effective in allowing the Court, lawyers, and parties to observe the speaker in real-time and visually assess his or her demeanor.  Moreover, it would seem that the most important witness as to "willfulness" element in this case is Mr. Donziger himself, and, if he elects to testify, he would do so in-person before the Court.

witnesses against him," U.S. Const. amend. VI, and which ordinarily "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988).  This guarantee, however, is not absolute.  The Supreme Court has recognized that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  Maryland v. Craig, 497 U.S. 836, 850 (1990).  Relatedly, the Court of Appeals has held that "[u]pon a finding of exceptional circumstances, . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice."  United States v. Gigante, 166 F.3d 75, 81 (2d Cir. 1999).

While the Court will not rule on the Government's motion for remote testimony before it is made, the Court notes that depending on the circumstances of the Government's witness, remote testimony may comport with the Sixth Amendment principles set forth in Craig and Gigante.  At least in in some instances, allowing remote testimony may be needed to promote the strong public interest in avoiding exposing at-risk individuals to COVID-19 and minimizing further spread of the virus.  See Craig, 497 U.S. at 850 (finding that the public policy of "protecting

child witnesses from the trauma of testifying in a child abuse case" justified an exception to the ordinary "face-to-face confrontation" requirement).  And depending on the witness's situation, the health risks and travel restrictions occasioned by the ongoing pandemic may also constitute "exceptional circumstances" that would permit the use of video testimony. See Gigante, 166 F.3d at 81–82 (2d Cir. 1999) (finding that witness's illness and participation in a witness protection program were "exceptional circumstances" such that the witness could testify by closed-circuit television).  While no motion for video testimony has been made, suffice it to say that such a motion would not be dead on arrival.

Mr. Donziger next argues that a continuance is needed to preserve his Sixth Amendment right to a public trial, as Executive Order #205's quarantine requirements and SDNY's New York's COVID-19 safety protocols might complicate public attendance.  (See dkt. no. 111 at 3.)  The Court disagrees. Since July 6, 2020, SDNY has been in Phase II of its COVID-19 Re-Entry Plan, and its courtrooms are now open to the public and the press.  That some out-of-state visitors must quarantine before they can enter the courthouse does not mean Mr. Donziger's trial is not public.  See Herring v. Meachum, 11 F.3d 374, 380 (2d Cir. 1993) ("[T]he Sixth Amendment protects the

right to a public trial; it does not guarantee that trials will be conducted to fit the schedules of all who wish to attend.").

Nor will SDNY's COVID-19 safety protocols result in a violation of Mr. Donziger's Sixth Amendment rights.  The Court acknowledges that the protocols -- which include, among other things, temperature checks at the courthouse door, completing questionnaires each day before entering, required use of face masks in public areas, and social distancing[4] -- may constitute a "partial closure" of the courthouse under Sixth Amendment jurisprudence.  See, e.g., United States v. Smith, 426 F.3d 567, 571 (2d Cir. 2005) (finding that security measures imposed after the 9/11 terrorist attacks, including ID checks, effected at most a "partial closure" because they "(1) barred only those would-be spectators who opted not to submit [IDs], and (2) presumably may have 'chilled' attendance by some potential spectators who opted not to present themselves at the courthouse" (quoting United States v. DeLuca, 137 F.3d 24, 33-34 (1st Cir. 1998))).  "Partial closures" are constitutionally permissible so long as: (i) there is a "'substantial reason' that is likely to be prejudiced in the absence of [the] closure," (ii) "the closure is no broader than necessary," (iii)

---

[4]    See 2020 Phased Re-Entry Plan, United States District Court for the Southern District of New York (June 22, 2020), available at https://nysd.uscourts.gov/sites/default/files/2020-06/reentry%20public%20%286.22.20%29.pdf.

9

"the trial court considers reasonable alternatives to closing the proceeding," and (iv) "the trial court makes adequate findings to support the closure." Id. at 571, 573 (citing Waller v. Georgia, 467 U.S. 39, 45 (1984); Guzman v. Scully, 80 F.3d 772, 775 (2d Cir. 1996)).

The Court has no trouble in finding the "partial closure" test satisfied here. As to the first two factors, Mr. Donziger neither disputes that ensuring the safety of everyone inside the courthouse is a paramount concern nor contends that SDNY's protocols are ineffective or broader than necessary. As to the third factor, the Court has considered potential alternatives to holding the trial under current conditions, including conducting the trial entirely remotely via videoconferencing (an option both parties oppose) and postponing trial until the pandemic abates, which, for the reasons laid out below, the Court finds ill-advised. Accordingly, any partial closure of the courthouse imposed by SDNY's COVID-19 protocols would not infringe on Mr. Donziger's Sixth Amendment right to a public trial.

The foregoing discussion addresses why the Court is not required to postpone the trial. Whether it makes sense to postpone trial is a separate question, and Mr. Donziger's points on that front are all well-taken. A trial in the midst of the COVID-19 crisis is, without question, more costly, inconvenient, and logistically challenging than a trial under normal

conditions.  The problem, however, is that nobody has a crystal
ball, and nobody can predict if/when the so-called "new normal"
of life in the time of COVID-19 will improve to the point that
trials can proceed as they did before the "old normal"
disappeared.  Fortunately, however, New York City -- which was
once the epicenter of the COVID-19 crisis in the United States --
has seen a dramatic improvement in health and safety conditions
over the past few months, and its state and federal courts are
in the process of reopening.  See, e.g., Michael Gold & Matt
Stevens, What Are the Phases of New York's Reopening Plan?, N.Y.
Times (July 28, 2020), https://www.nytimes.com/article/new-york-
phase-reopening.html.  Given those improvements and SDNY's
comprehensive efforts to minimize the risk of COVID-19 exposure
inside its facilities, there is likely no safer place anywhere
in the country for a trial this coming September.

That is the state of play right now.  Unfortunately,
however, just as nobody knows if/when things will improve,
nobody knows if/when they might start to go sideways.  Health
officials have warned about the risk of a "second wave" of
infections in areas where COVID-19 was once under control, and
it appears that in some regions, that risk has already
materialized.  See Damien Cave, What Lockdown 2.0 Looks Like:
Harsher Rules, Deeper Confusion, N.Y. Times (Aug. 4, 2020),
https://www.nytimes.com/2020/08/04/world/australia/coronavirus-

melbourne-lockdown.html.  The upshot is that granting Mr.
Donziger's request for a continuance could mean that two months
or six months or twelve months down the line, New York City is
in a worse position than it is today, and that SDNY, which can
now safely accommodate trials open to the public, is no longer
able to do so.  The Court will not run that risk.  Although a
September trial may pose logistical challenges for all involved,
if current conditions hold for a few weeks, those challenges
will be fully manageable.  Because the Court cannot confidently
make that assurance if trial is delayed, sticking to the
September date is the best option.  Mr. Donziger's request to
continue trial for COVID-19-related reasons is therefore denied.

### b.  Continuance Based on Pending Appellate Matters

Mr. Donziger also seeks a continuance so the Court of
Appeals can resolve his pending mandamus petition challenging
the appointment of the special prosecutors and his appeal of the
civil orders underlying the contempts charged in Counts I, II,
and III.  (Dkt. no. 111 at 3; see also dkt. no. 119 at 10-11.)
He contends that if he prevails in the Court of Appeals on these
applications, it would negate any guilty verdict secured by the
special prosecutors and exonerate him on Counts I, II, and II.

None of Mr. Donziger's appellate matters justifies delaying
the trial date.  As to the mandamus petition, Mr. Donziger has
the option of moving to stay this criminal case pending the

petition's resolution but so far has not elected to do so, and absent a stay, there is no reason to postpone trial.  As to the civil appeal, although Mr. Donziger submits that he has lodged "foundational challenges" to the orders underlying the contempt charges against him (see dkt. no. 119 at 11), it appears that he in fact only appealed a subset of those orders, and that no matter what outcome obtains in the Court of Appeals, trial would still be needed at least on Counts IV, V, and VI.  As the Court already observed, while the current COVID-19 conditions in New York City create an opening for Mr. Donziger to receive a public trial in September, it remains unclear whether a similar opening will be there when the Court of Appeals decides Mr. Donziger's pending applications.  In the Court's judgment, taking a "wait and see" approach on the pending appeals would therefore be imprudent.  Accordingly, Mr. Donziger's request to postpone trial based on the appeals is denied, as well.

To the extent they are not addressed above, the Court has considered Mr. Donziger's remaining arguments and finds them unavailing.

### III.  **<u>CONCLUSION</u>**

For the foregoing reasons, Mr. Donziger's motion for a continuance is <u>DENIED</u>, and trial will proceed on September 9 as scheduled.  Counsel shall confer regarding any witnesses whose testimony they propose to introduce via video and inform the Court by letter no later than August 24 as to how they propose to proceed.

**SO ORDERED.**

Dated:  August 17, 2020
        New York, New York

_____
LORETTA A. PRESKA, U.S.D.J.