UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                        Plaintiff,

        -against-                                    19-CR-0561 (LAP)
                                                     [11-civ-0691 (LAK)]
STEVEN DONZIGER,

                                        Defendant.

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A JURY TRIAL

# TABLE OF CONTENTS

I.    Introduction .................................................................................................................. 1

II.   Background ................................................................................................................... 2

III.  Mr. Donziger Has a Statutory Right to a Jury Trial ................................................... 6

IV.   Mr. Donziger Is Entitled to A Jury Trial Under the Sixth Amendment Because the
Charges Against Him are "Serious" ................................................................................... 7

   a.  Length of Sentence is Not the Sole Determinant of "Seriousness" in the Criminal
   Contempt Context ............................................................................................................ 8

   b.  The Relevant Indicia Show this Case is Sufficiently Serious to Require a Jury ................. 9

      i.  The Charges Against Mr. Donziger Allege Conduct Constituting Obstruction of Justice
      and Therefore Signify Congress Considers Them Serious .................................................... 9

      ii.  Conviction Could Effectively Foreclose Review of Mr. Donziger's Disbarment,
      Adding to the Seriousness of the Charges .......................................................................... 11

      iii.  The Conditions of Mr. Donziger's Pre-Trial Home Confinement Constitute
      Punishment, Further Indicating the Seriousness of the Charges .......................................... 12

         1.  Mr. Donziger Could Not Have Been Considered a Flight Risk by Any
         Reasonable Assessment ................................................................................................. 13

V.    Conclusion ................................................................................................................ 16

# TABLE OF AUTHORITIES

Cases

Baldwin v. New York,
  399 U.S. 66 (1970) ................................................................................. 8, 10
Bell v. Wolfish,
  441 U.S. 520 (1979) ................................................................................. 12, 13
Blanton v. City of North Las Vegas, Nev.,
  489 U.S. 538 (1989) ................................................................................. 8, 11
Bloom v. State of Ill.,
  391 U.S. 194 (1968) ................................................................................. 1, 3, 10
Chevron Corp. v. Donziger,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014), aff'd 833 F.3d 74 (2d Cir. 2016) ................................. 2
Chevron Corp. v. Donziger,
  384 F. Supp. 3d 465 (2019) ....................................................................... 7
Clark v. Boynton,
  362 F.2d 992 (5th Cir. 1966) ..................................................................... 6
Codispoti v. Pennsylvania,
  418 U.S. 506 (1974) ................................................................................. 1, 3, 8, 10
Ex parte Garland,
  71 U.S. (4 Wall.) 333 (1866) ..................................................................... 11
Frank v. United States,
  395 U.S. 147 (1969) ................................................................................. 1, 7, 8, 10
In re Air Crash at Belle Harbor,
  490 F.3d 99 (2d Cir. 2007) ....................................................................... 2
In re Dorfman,
  917 N.Y.S.2d 126 (2011) .......................................................................... 11
In re Ruffalo,
  390 U.S. 544 (1968) ................................................................................. 11
Kennedy v. Mendoza-Martinez,
  372 U.S. 144 (1963) ................................................................................. 13
Landry v. Hoepfner,
  818 F.2d 1169 (5th Cir. 1987) ................................................................... 8
Matter of Cutler,
  650 N.Y.S.2d 85 (1996) ............................................................................ 11
Matter of Donziger,
  (N.W. App. Div. Aug. 13, 2020) (No. CM-1660), 2020 WL 4679673 .................................. 11
Nat'l Org. For Women, Inc. v. Scheidler,
  267 F.3d 687 (7th Cir. 2001) ..................................................................... 12
Neder v. United States,
  527 U.S. 1 (1999) ................................................................................... 1
People v. Suazo,
  32 N.Y.3d 491 (2018) .............................................................................. 8
Religious Tech. Ctr. v. Wollersheim,
  796 F.2d 1076 (9th Cir. 1986) ................................................................... 12

Schall v. Martin,
   467 U.S. 253 (1984) .................................................................................. 12, 13

Simmons v. Sacramento County Superior Court,
   318 F.3d 1156 (9th Cir. 2003) ......................................................................... 12

Spevack v. Klein,
   385 U.S. 511 (1967) ......................................................................................... 11

U.S. v. Salerno,
   481 U.S 739 (1987). ................................................................................. 12, 13

United States v. Aguilar,
   515 U.S. 593, 115 S.Ct. 2357 (1995) ................................................................. 7

United States v. Bonanno,
   177 F. Supp. 106 (S.D.N.Y. 1959) .................................................................... 7

United States v. Cohn,
   452 F.2d 881 (2d Cir. 1971) .............................................................................. 7

United States v. Diaz,
   2018 WL 5282882 (S.D.N.Y. Oct. 24, 2018) ................................................. 15

United States v Donziger,
   2020 WL 2216556 (S.D.N.Y. May 7, 2020) ..................................................... 9

United States v. Gumora,
   2020 WL 1862361 (S.D.N.Y. Apr. 14, 2020) ................................................. 14

United States v. Madoff,
   586 F. Supp. 2d 240 (S.D.N.Y. 2009) ............................................................. 14

United States v. Mercedes,
   254 F.3d 433 (2d Cir. 2001) ............................................................................ 14

United States v. Polouizzi,
   697 F. Supp. 2d 381 (E.D.N.Y. 2010) ............................................................. 13

United States v. Quattrone,
   441 F.3d 153 (2d Cir. 2006) .............................................................................. 7

United States v. Rosner,
   352 F. Supp. 915 (S.D.N.Y. 1972) .................................................................... 6

United States v. Sabhnani,
   493 F.3d 63 (2d Cir. 2007) .............................................................................. 14

United States v. Solow,
   138 F. Supp. 812 (S.D.N.Y. 1956) .................................................................... 7

Vera v. Republic of Cuba,
   802 F.3d 242 (2d Cir. 2015) .............................................................................. 2

Statutes

18 U.S.C. § 402 ......................................................................................................... 6, 7
18 U.S.C. § 1305 .......................................................................................................... 9
18 U.S.C. § 1503 .................................................................................................. 6, 7, 10
18 U.S.C. § 3142 ............................................................................................... 13, 14, 16
18 U.S.C. § 3691 ......................................................................................................... 6, 7

Other Authorities

N.Y. Judiciary Law § 90 (McKinney) ........................................................................... 11

## I.     Introduction

Absent voluntary waiver of the jury right, *the Constitution does not trust judges to make determinations of criminal guilt.* Perhaps the Court is so enamored of judges in general, and federal judges in particular, that it forgets that they (we) are officers of the Government, and hence proper objects of that healthy suspicion of the power of government which possessed the Framers and is embodied in the Constitution.

Neder v. United States, 527 U.S. 1, 30 (1999) (Scalia, J., joined by Souter and Ginsburg, JJ., concurring in part) (emphasis in original).

Given that criminal contempt is a crime in every fundamental respect, the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that it is . . . Indeed, in contempt cases an even more compelling argument can be made for providing a right to jury trial as a protection against the arbitrary exercise of official power. Contemptuous conduct, though a public wrong, often strikes at the most vulnerable and human qualities of a judge's temperament. Even when the contempt is not a direct insult to the court or the judge, it frequently represents a rejection of judicial authority, or an interference with the judicial process or with the duties of officers of the court.

Bloom v. State of Ill., 391 U.S. 194, 201-02 (1968); see also Codispoti v. Pennsylvania, 418 U.S. 506, 515 (1974) ("In the context of the post-verdict adjudication of various acts of contempt, it appears to us that there is posed the very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate.").

Mr. Donziger is entitled to a jury in his upcoming criminal contempt trial by statute and under the Sixth Amendment to the United States Constitution. Consideration of all proper "objective standards such as may be observed in the laws and practices of the community"[1] make clear the seriousness of the charges of which he stands accused. Accordingly, the undersigned moves the Court to afford Mr. Donziger a "public trial, by an impartial jury," as a matter of right.

---

[1] Frank v. United States, 395 U.S. 147, 152 (1969).

## II.     Background

The charges against Mr. Donziger stem from a case in which Chevron Corporation used Civil RICO in an attempt to discredit an $8.6 billion Ecuadorian judgement Mr. Donziger helped to win against Chevron for its depredation of the Amazon. See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362 (S.D.N.Y. 2014), aff'd, 833 F.3d 74 (2d Cir. 2016). United States District Judge Lewis A. Kaplan ruled in Chevron's favor, basing his decision to grant Chevron's request for an injunction on his factual findings that Mr. Donziger committed a series of felonies sufficient to serve as RICO predicates. Id. After deciding the case without a jury, Judge Kaplan ordered Mr. Donziger to produce documents and information that amounted to "a private 'blank warrant'" in favor of Chevron, allowing it "to intrude and infiltrate itself into the First Amendment-protected political activities, associations, speech, operational practices, and strategic deliberations of Mr. Donziger and others." Mot. Protective Order to Protect First Amendment Rights at 1, Chevron Corp. v. Donziger, (S.D.N.Y. 2014) (No. 11-cv-691), June 15, 2018.

Following guidance from the Second Circuit provided in Vera v. Republic of Cuba, 802 F.3d 242, 246 (2d Cir. 2015) and In re Air Crash at Belle Harbor, 490 F.3d 99, 104 (2d Cir. 2007), Mr. Donziger asked Judge Kaplan to hold him in civil contempt so that he could seek appellate review on his claims of Attorney-client and First Amendment privilege before irrevocably exposing sensitive client documents. Def.'s Resp. to Contempt Mots. at 4, Chevron Corp. v. Donziger, (No. 11-cv-691), Apr. 8, 2019. Unwilling to wait until Mr. Donziger had the chance to be heard on appeal, Judge Kaplan charged him with six counts of criminal contempt on July 30, 2019. Order to Show Cause, Dkt. No. 1; Civ. Dkt. No. 2276, July 30, 2019. Mr. Donziger's appeal on his privilege claims is scheduled for oral argument before the Second Circuit on September 15, 2020.

The prosecution must prove beyond a reasonable doubt that Mr. Donziger knowingly, intentionally and willfully violated Judge Kaplan's orders. Mr. Donziger flatly denies that he did.

Mr. Donziger intends to prove at trial that he responded lawfully to each order and that he acted reasonably and in good faith to promote the due administration of justice. In brief, as to Counts IV, V, and VI, Mr. Donziger intends to prove he complied fully with Judge Kaplan's orders as soon as the Court properly notified him of their requirements. Regarding Counts I, II, and III, which allege the most recent and serious acts, Mr. Donziger intends to prove he acted according to the legally prescribed, trial-by-ordeal procedure for challenging their validity as of right on appeal. He repeatedly so informed Judge Kaplan. Judge Kaplan appeared to understand the ritualized nature of defendant's conduct and never expressly advised Mr. Donziger that his conduct would be taken as criminally contemptuous.

The factual dispute over Mr. Donziger's state of mind will be determined almost entirely on the credibility of his testimony as informed by the perceived genuineness of his demeanor during direct and cross examination. Any determination of truthfulness based on a witness's demeanor is fraught with the danger that an individual fact-finder's idiosyncrasies or implicit biases might lead to an erroneous conclusion.[2] The wisdom of the Framers, confirmed by the lessons of history, instructs us to entrust these determinations to a panel of laypeople—a jury of the defendant's peers. As recognized by the Supreme Court, no other criminal prosecution is more vulnerable to the risks associated with a juryless trial than criminal contempt. See Bloom, 391 U.S. at 201-02; Codispoti, 418 U.S. at 515. When a judge holds powers ordinarily afforded to the

---

[2] For example, this Court's long association with Judge Kaplan, the complainant, might well consciously or unconsciously color this evaluation. This problem is compounded by the position taken by Judge Kaplan that he is not recused from this case. In essence, this case has a team of judges, and the fact-finding judge will be asked to determine credibility decisions in favor or against her team member, Judge Kaplan.

legislature and the prosecutor, in addition to their own, that combined power must be checked by a jury in all cases not truly petty.

The context of the criminal contempt charges and the history of the Civil RICO case further magnify the need for a jury here. Defense counsel raised before this Court, and on appeal, colorable claims of actual or apparent prosecutorial conflict of interest and the imposition of unjustifiable and punitive pretrial home confinement. See, e.g., Mot. Dismiss, Dkt. No. 2463, Feb. 27, 2020; Pet. Writ Mandamus, Chevron Corp. v. Donziger, (2d Cir. 2020) (No. 20-1940), Jan. 27, 2020. Further, the Court's recent decision to deny a motion for trial continuance and hold the trial during a national pandemic amounts to a life-threatening rush to try this case with only the semblances of personal confrontation and representation. Order, Dkt. No. 124, Aug. 17, 2020.

The charges against Mr. Donziger stem from a controversial weaponization of Civil RICO by Chevron Corp. The "critical" witness against Mr. Donziger on the central charge of bribery was a former Ecuadorian judge whom Chevron induced recklessly, at the very least, with promises of over a million dollars and assistance in obtaining permanent resident alien status in the US, to commit perjury about Mr. Donziger.[3]

This decade-long legal odyssey has promoted widespread and increasing concern in the United States and abroad over the fairness of our judicial process. See Hons. Nancy Gertner (Ret.) & Mark Bennett (Ret.), Criminal Contempt Charges in Donziger Case Are Excessive, Law 360, law360.com, https://www.law360.com/articles/1290825/criminal-contempt-charges-in-donziger-

---

[3] Subsequent to trial the witness confessed that he had given perjured and deceptive testimony against Mr. Donziger. See Chevron Corp. v. The Republic of Ecuador, World Bank No. 2009-23, at 743–44 (Apr. 21, 2105) (Horacio Naon & Vaughan Lowe, Arbs.) (Alberto Guerra stating "I lied" in reference to his statement to Chevron representatives that Mr. Donziger and others had offered to pay a bribe of $300,000). Subsequently obtained forensic evidence from the Ecuador trial judge's computers flatly disproved the ghostwriting/bribery charge so critical to Judge Kaplan's judgment.

case-are-excessive (July 13, 2020). In particular, public commentators have focused on the questionable grant to Chevron of limitless power to prosecute Mr. Donziger, and the palpable chilling effects felt by human rights lawyers contemplating suits to rectify wrongdoing by large corporations. It would be unfortunate if the Court dismissed, as partisan, this rising tide of public distrust of the judicial process in this case. The appearance of injustice is real in the minds of knowledgeable and conscientious observers, and it is precisely the role of a jury to assure the people that there is a check on the power of government and private parties. This Court should therefore make every reasonable attempt to afford the people that assurance by recognizing Mr. Donziger's right to a jury trial in this case.

That the Court labeled the contempt charges against Mr. Donziger "petty" to avoid a jury trial cannot disguise their seriousness in fact. Mr. Donziger is not being charged with disobedience of orders regarding filing deadlines, court appearances, or other misfeasance. Rather, the heart of the charges levied against Mr. Donziger accuse him of attempting to deliberately obstruct justice. The test of "seriousness" is the social opprobrium with which Society regards the charge.

As discussed below, Congress has declared that the seriousness of such charges mandates a jury trial. Even in the absence of this congressional determination, there is clear compelling evidence of the social regard for the seriousness of the charges against Mr. Donziger. So serious is this charge that conviction automatically places the lawyer's license to practice and livelihood in jeopardy. A lawyer found guilty of concealing evidence may never again find employment requiring trust and loyalty. Judge Kaplan apparently felt these charges were of a magnitude justifying the appointment of three prosecutors and paying them many times the typical CJA rate. The prosecutors in this case have forcefully portrayed the charges in terms of serious social opprobrium, remarking that Mr. Donziger committed "serial violations" of court orders. Pl.'s

Letter, Dkt. No. 116, Aug. 5, 2020. This Court evidently regarded the nature and evidence of defendant's alleged wrongdoing as serious enough to not only consider imprisoning him for much longer than six months, but also to infer that Mr. Donziger might abandon his family and flee the continent to avoid serving the sentence this Court would pronounce. In short, upon consideration of all relevant indicia of seriousness, the charges against Mr. Donziger are inescapably serious. Given the seriousness of the charges against him, the Sixth Amendment entitles Mr. Donziger to a jury trial. He is also entitled to a jury by statute.

### III. Mr. Donziger Has a Statutory Right to a Jury Trial

A jury trial is mandated in this case by 18 U.S.C. §§ 402 and 3691. Under these statutes,

> Whenever a contempt charged . . . consist[s] in a willful disobedience of any lawful writ, process, order, rule, decree, or command of any district court by doing or omitting any act or thing in violation thereof, and the act or thing done or mitted also constitutes a criminal offense under any Act of Congress . . . the accused, upon demand therefor, shall be entitled to trial by a jury, which shall conform as near as may be to the practice in other criminal cases.

18 U.S.C. § 3691. Conduct underlying a contempt charge "constitutes" a separate crime when it "at least arguably" violates any federal criminal statute. See Clark v. Boynton, 362 F.2d 992, 997 (5th Cir. 1966). Here, Mr. Donziger is entitled to a jury trial because, although he denies the factual and legal bases of Judge Kaplan's contempt charges against him, the accusations under Counts I and II "arguably" make out the offense of obstruction of justice under 18 U.S.C. § 1503. Clark, 362 F.2d at 997.

Obstruction of Justice under § 1503 embraces "[w]hoever . . . corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or [so] endeavors . . . the due administration of justice." 18 U.S.C. § 1503. This provision "is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice." United States v. Rosner, 352 F. Supp. 915, 918 (S.D.N.Y. 1972)

(quoting United States v. Solow, 138 F. Supp. 812 (S.D.N.Y. 1956)). See also United States v. Quattrone, 441 F.3d 153, 170 (2d Cir. 2006) (citing United States v. Aguilar, 515 U.S. 593, 599, 115 S.Ct. 2357 (1995)) (explaining that the element embraces conduct undertaken with "an intent to influence judicial or grand jury proceedings").

Obstruction or interference under § 1503 includes charged refusal to disclose information in violation of a court order. See United States v. Bonanno, 177 F. Supp. 106, 112 (S.D.N.Y. 1959) (allowing indictment to stand under 18 U.S.C. § 1503 where defendants had conspired to conceal information concerning communications at a meeting); see also United States v. Cohn, 452 F.2d 881, 884 (2d Cir. 1971). Judge Kaplan's accusations against defendant relating to the Forensic Inspection Protocol directly align with § 1503. See Chevron Corp. v. Donziger, 384 F. Supp. 3d 465, 488 (2019).

Congress has mandated a jury trial in this case. Because the conduct underlying the contempt charges against Mr. Donziger's charges arguably constitutes the crime of Obstruction of Justice under 18 U.S.C. § 1503, he is legally entitled to a jury trial upon request pursuant to 18 U.S.C. §§ 402 and 3691.

## IV. Mr. Donziger Is Entitled to A Jury Trial Under the Sixth Amendment Because the Charges Against Him are "Serious"

Independent of his statutory right to a jury, Mr. Donziger is entitled to a jury under the United States Constitution. "For purposes of the right to trial by jury, criminal contempt is treated just like all other criminal offenses. A defendant is entitled to a jury trial *unless the particular offense can be classified as 'petty.'*" Frank v. United States, 395 U.S. 147, 148 (1969) (emphasis added). "In determining whether a particular offense can be classified as 'petty,' th[e Supreme] Court has sought objective indications of the seriousness with which society regards the offense." Id.

### a. Length of Sentence is Not the Sole Determinant of "Seriousness" in the Criminal Contempt Context

The Supreme Court has never held that an offense carrying a maximum prison term of six months or less automatically qualifies as "petty." See Blanton v. City of North Las Vegas, Nev., 489 U.S. at 543 n.7 (1989) ("We held '*only* that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty.'") (emphasis in original) (quoting Baldwin v. New York, 399 U.S. 66, 69 n.6 (1970) and citing Codispoti, 418 U.S. at 512 n.4). Recognizing the need to look to indicia of seriousness beyond incarceration, appellate courts have found offenses to be serious on bases independent of jail sentence. See Landry v. Hoepfner, 818 F.2d 1169, 1177 (5th Cir. 1987), on reh'g, 840 F.2d 1201 (5th Cir. 1988) (possibility of having driver's license revoked as a result of conviction made the defendant's DWI charge "serious"); People v. Suazo, 32 N.Y.3d 491, 499 (2018) (deportation as a result of conviction is independently sufficient to make an offense "serious" under the Sixth Amendment).

Accordingly, ensuring the accused is not wrongfully deprived of a jury trial requires courts to analyze the totality of all relevant indicia of seriousness before concluding the charges are petty. A maximum sentence set above the six-month mark ends the seriousness inquiry, but one set below six months does not. Given that "[t]he defendant is entitled to a jury trial unless the particular offense can be classified as 'petty,'" Frank, 395 U.S. at 148, and in light of the Constitution's singular solicitude for the jury trial right, courts ought to conduct the serious inquiry with painstaking care.

The moral character and social opprobrium of the accusations levied against Mr. Donziger, the collateral consequences he would suffer upon conviction, and the unconstitutional pretrial detention already imposed upon him—when taken in conjunction with the potential sentence of

six months in jail he faces if convicted—leave no doubt of the seriousness with which society regards the charges. Viewed in this context, Mr. Donziger is constitutionally entitled to a jury trial in this case.

### b. The Relevant Indicia Show this Case is Sufficiently Serious to Require a Jury

The charges against Mr. Donziger cannot be considered "petty" upon consideration of all relevant indicia of seriousness. First, the accusations against him allege that he committed acts amounting to obstruction of justice under 18 U.S.C. § 1305 – a federal felony. This case is therefore not one alleging simple disobedience or disrespect of a judge. Second, with respect to attorney defendants, criminal contempt is considered on par with felonious offenses by the Bar, as a criminal contempt conviction can similarly be a sufficient basis for disbarment. Third, the punishment already imposed upon Mr. Donziger pre-trial— 24/7 home confinement for over a year despite his posing no danger to the public and a very low risk of flight—signifies the seriousness of the charges against him. Taken together, these indicia of seriousness handily show Mr. Donziger is entitled to a jury trial, especially against this Court's repeated statement that a fine of just over $5,000 would trigger the jury trial right. See, e.g., United States v Donziger, 11-cv-691, 2020 WL 2216556, at *4 (S.D.N.Y. May 7, 2020).

### i. The Charges Against Mr. Donziger Allege Conduct Constituting Obstruction of Justice and Therefore Signify Congress Considers Them Serious

The moral opprobrium and collateral consequences Mr. Donziger would face as a result of his contempt charges evince their seriousness. As discussed above, the contempt charges against Mr. Donziger could "arguably" be charged under 18 U.S.C. § 1305 as obstruction of justice, the seriousness of which Congress has left no doubt about in setting a ten-year maximum term of imprisonment.

The "seriousness with which society regards" the conduct underlying a given offense defines the boundary between "serious" and "petty." Baldwin, 399 U.S. at 68. Nowhere should courts inquire more deliberatively and intensively into the "social regard[]" for the seriousness of the crime charged than for criminal contempt. This is in part because criminal contempt necessarily embraces "a great many different types of offenses, ranging from disrespect for the court to acts otherwise criminal." Frank, 395 U.S. at 149. Accordingly, the Supreme Court's classification of contempt charges has closely tracked the conduct giving rise to them. See Codispoti, 418 U.S. at 515-16 (quoting Bloom, 391 U.S., at 201-02) ("[I]n terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes").

The contempt charges levied against Mr. Donziger, particularly the allegation that he withheld information in violation of Judge Kaplan's Forensic Inspection Protocol, seek to brand him as a criminal obstructor of justice. This charge, which carries a ten-year maximum sentence, is an indisputably "serious" charge under the Sixth Amendment. See 18 U.S.C. § 1503(b)(3); Baldwin, 399 U.S. at 69 (explaining that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized").

Because Mr. Donziger's contempt charges mirror and effectively serve as an obstruction charge in the eyes of the public, he is entitled to the basic due process protections afforded to defendants accused of similar conduct. It would invite surreptitious manipulation of process if the jury trial right attaching to a charged criminal offense could be evaded by converting it to a charged criminal contempt. Since this Court seeks to impose the branding and consequences concomitant to those of a serious crime on Mr. Donziger, it must also afford him the bare-minimum due process protections that would come with those penalties in any other case: a jury trial.

### ii. Conviction Could Effectively Foreclose Review of Mr. Donziger's Disbarment, Adding to the Seriousness of the Charges

Courts assessing Sixth Amendment seriousness must take into account the collateral consequences of a conviction. See Blanton, 489 U.S. at 543. "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." In re Ruffalo, 390 U.S. 544, 550 (1968) (citing Ex parte Garland, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866); Spevack v. Klein, 385 U.S. 511, 515 (1967)).

The New York state legislature considers criminal contempt a "serious crime" for purposes of disbarment, triggering consequences on par with felonious offenses. N.Y. Judiciary Law § 90 (McKinney) ("[T]he term serious crime shall mean any criminal offense denominated a felony . . . and any other crime a necessary element of which . . . includes interference with the administration of justice."); see also In re Dorfman, 917 N.Y.S.2d 126, 127-28 (2011) ("There is no question that a conviction of criminal contempt constitutes a serious crime for which a period of suspension may be imposed.") (citing Matter of Cutler, 650 N.Y.S.2d 85 (1996)).

As this Court is no doubt aware, Mr. Donziger was recently disbarred by New York State's Appellate Division, First Department. Matter of Donziger, (N.Y. App. Div. Aug. 13, 2020) (No. CM-1660), 2020 WL 4679673. The evidentiary bases for his disbarment were findings of fact made by Judge Kaplan in Chevron's Civil RICO trial, Id.—the same proceeding which gave rise to the discovery orders with which Mr. Donziger allegedly refused to comply. After holding hearings to determine whether Mr. Donziger should be disbarred, the First Department's referee concluded that he could not "recommend this sanction in view of the totality of the evidence presented at the hearing, and particularly in mitigation; in my view, it would not be just in these circumstances." Report and Recommendation at 36, In re. Steven R. Donziger, (RP No. 2018.7008), Nov. 8, 2018. Mr. Donziger will appeal his disbarment to the New York Court of

Appeals.[4] A conviction for criminal contempt could serve as an independent basis to disbar Mr. Donziger, effectively denying him the opportunity to advance an otherwise strong appeal of his disbarment.

Additionally, the history of this case increases the importance of giving Mr. Donziger a chance to vindicate himself before a jury. Mr. Donziger was denied a jury trial in his Civil RICO case despite the fact that no Circuit Court to have then ruled on the issue had authorized juryless private party Civil RICO suits for equitable relief. See Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1082 (9th Cir. 1986); Nat'l Org. For Women, Inc. v. Scheidler, 267 F.3d 687, 695 (7th Cir. 2001), rev'd, 537 U.S. 393 (2003) (on appeal after a jury found the defendants to have committed violations amounting to a pattern of racketeering activity).

### iii. The Conditions of Mr. Donziger's Pre-Trial Home Confinement Constitute Punishment, Further Indicating the Seriousness of the Charges

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). "Pretrial detainees have a substantive due process right against restrictions that amount to punishment. This right is violated if restrictions are imposed for the purpose of punishment." Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1160 (9th Cir. 2003) (citing Bell, 441 U.S. at 535 and U.S. v. Salerno, 481 U.S. 739, 747 (1987)). "Absent a showing of an express intent to punish on the part of the State, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Schall v.

---

[4] His disbarment depends on the application of collateral estoppel to Judge Kaplan's findings, in violation of black letter law on collateral estoppel.

<u>Martin</u>, 467 U.S. 253, 269 (1984) (quoting <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144, 168-189 (1963)) (brackets in original).

"Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest—in this case, preventing risk of flight and of danger to society or children." <u>United States v. Polouizzi</u>, 697 F. Supp. 2d 381, 390 (E.D.N.Y. 2010) (citing U.S. v. <u>Salerno</u>, 481 U.S. 739, 754 (1987)) (analyzing excessiveness under the Eighth Amendment) (some internal citations omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal— if it is arbitrary or purposeless— a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." <u>Bell</u>, 441 U.S. at 539 (internal citations omitted); see also <u>Schall v. Martin</u>, 467 U.S. 253, 269 (1984) ("[T]he mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment."). Because the conditions of Mr. Donziger's year-long confinement are excessive and without rational connection to his low risk of flight, they amounted to punishment without due process.

### 1. Mr. Donziger Could Not Have Been Considered A Flight Risk by Any Reasonable Assessment

Mr. Donziger is still under home detention with electronic monitoring and has been so situated for over a year. He has been forbidden from leaving his apartment other than to meet "family obligations" or attend legal meetings. Brief and Appendix for Appellant at AP-024, <u>United States v. Donziger</u>, (2d Cir. 2020) (No. 20-1710). 18 U.S.C. § 3142(b) required this Court to release Mr. Donziger on his own personal recognizance ("ROR") or upon execution of an unsecured appearance bond *unless* it determined that such release would not reasonably assure his appearance as required or would endanger the safety of any other person or the community. The

sole rationale articulated by this Court for the restrictions placed upon Mr. Donziger was his risk of flight. Brief and Appendix for Appellant at 23, <u>Donziger</u>, (No. 20-1710).

The Second Circuit has repeatedly instructed lower courts to look to the factors identified in 18 U.S.C. § 3142(g) in conducting risk of flight analyses. <u>See, e.g.</u>, <u>United States v. Sabhnani</u>, 493 F.3d 63, 76 (2d Cir. 2007). The § 3142(g) factors have been summarized as follows: "(1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, such as his family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual that the Defendant's release would present." <u>United States v. Gumora</u>, No. 20-CR-144 (VSB), 2020 WL 1862361, at *3 (S.D.N.Y. Apr. 14, 2020) (citing <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001)). "Preponderance of the evidence is the standard used in assessing risk of flight. <u>United States v. Madoff</u>, 586 F. Supp. 2d 240, 247-48 (S.D.N.Y. 2009). All four factors weigh in favor of finding by a preponderance that Mr. Donziger is not and has never been a flight risk.

The nature and circumstances of the crime charged do not suggest a risk of flight in the least. As of this Court's recent order, Mr. Donziger has been accused of an offense for which, if convicted, he would serve no more than six months in jail. Hearing Tr., 5-6, May 18, 2020. The crimes alleged arose from Mr. Donziger's attempt to seek appellate review of his Attorney-client and First Amendment privilege arguments against disclosure before complying with Judge Kaplan's discovery orders. Def.'s Resp. to Contempt Mots. at 4, <u>Chevron Corp.</u>, (No. 11-cv-691), Apr. 8, 2019. He was charged with criminal contempt while that appeal was pending. <u>See</u> Order to Show Cause Dkt. No. 1; Civ. Dkt. No. 2276, July 30, 2019. While this Court and its prosecutors have pointed to Mr. Donziger's repeated violations of court orders as cautioning in favor of

confining him, Dkt. No. 79, May 26, 2020, that sounds more like punishment than identifying a risk of flight. Over ten years of RICO litigation, Mr. Donziger has not missed a Court appearance. He was in Canada when these charges were filed and came back to this country voluntarily. That he refused to comply with orders in order to obtain appellate review of them does not suggest a risk of flight, but quite the contrary. See United States v. Diaz, No. 17-CR-227(VEC), 2018 WL 5282882, at *4 (S.D.N.Y. Oct. 24, 2018) (finding the pretrial conditions of a curfew and electronic monitoring "extraordinary" given the defendant's deeply invested interest in vindicating himself via legal recourse).

The weight of the evidence against Mr. Donziger fails to prove he had the requisite *mens rea* for criminal contempt. Mr. Donziger has a compelling argument that he voluntarily entered into civil contempt under the guidance of Second Circuit precedent and would have readily complied with Judge Kaplan's orders had his appeal been unsuccessful. Further, Mr. Donziger has never wavered in his professed interest to prosecute that appeal, which is now set to be heard on September 15, 2020 – days after this trial is scheduled to begin.

Mr. Donziger's family ties, employment, community ties, and past conduct are those of a human rights lawyer who has dedicated his career to seeking justice on behalf of indigenous peoples. Mr. Donziger's wife and teenage son live with him in their Manhattan apartment. He is employed in contesting the various legal proceedings against him currently being adjudicated in this Court, the Second Circuit, and in New York State courts. He has no criminal record. Twenty-Nine Nobel laureates felt compelled to sign a letter asking for his release.[5] He has surrendered his passport, and an $800,000 bond has been posted on his behalf. Appearance at 1, Dkt. No. 4, Aug. 6,

---

[5] Jonathan Watts, Nobel laureates condemn 'judicial harassment' of environmental lawyer, The Guardian, Apr. 18, 2020, https://www.theguardian.com/world/2020/apr/18/nobel-laureates-condemn-judicial-harassment-of-environmental-lawyer

2019. He has attended every court proceeding in this matter and the others he is embroiled in—without fail.

No one has alleged that Mr. Donziger would be a danger to the community or to any individual if released on his own recognizance. In sum, all four factors point to Mr. Donziger never having posed a risk of flight.

Given Mr. Donziger's low risk of flight, 24/7 confinement to his home cannot reasonably be construed as the "least restrictive further condition, or combination of conditions" capable of reasonably assuring his appearance in court as required. See 18 U.S.C. § 3142(c)(1)(B). Indeed, comments by the prosecutor and the Court strongly suggest that these conditions were imposed as punishment for Mr. Donziger's "serial violations of court orders."

As made clear by Pretrial Services in recommending Mr. Donziger be released from confinement a quarter of the way though his home detention, Mot. Appl. for Elimination of Monitored Home Confinement and Expedited Schedule and Hr'g at Ex. C 1, United States v. Donziger, (2d Cir. 2019) (No. 19-4155), Jan. 8, 2020, the true purpose of keeping him locked away was not reasonably related to the facially legitimate governmental goal of preventing flight. This Court's detention orders depriving Mr. Donziger of the right to work outside his home, play basketball with his son, or enjoy any of the other innumerable liberties guaranteed to all persons not serving sentences following a criminal conviction constituted punishment imposed without due process.

## V.    Conclusion

Mr. Donziger has the right to a jury trial in this case by statute and under the Sixth Amendment. The Constitution therefore requires this Court afford Mr. Donziger this fundamental due process protection to which all criminal defendants accused of serious charges are entitled.

Respectfully submitted,

/s/ Richard H. Friedman
Richard H. Friedman, *Pro Hac Vice*

Friedman Rubin PLLP
1126 Highland Ave.
Bremerton, WA 98337
Tel:  360-782-4300
Fax:  360-782-4358
rfriedman@friedmanrubin.com

*Counsel for Steven Donziger*