```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

UNITED STATES OF AMERICA,

    -versus-

STEVEN DONZIGER,

        Defendant.

19-CR-561 (LAP)
11-CV-691 (LAK)

ORDER

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

    Before the Court is the Government's motion to permit live, two-way video testimony of a prosecution witness, David Zelman, at the upcoming trial.  (Dkt. no. 134.)  For the reasons set forth below, the motion is GRANTED.

## I.  Background[1]

    Starting on September 9, Mr. Donziger will be tried on six counts of criminal contempt as charged in the July 30, 2019 Order to Show Cause.  (See Dkt. no. 1.)  Count VI of the Order to Show Cause charges Mr. Donziger with willfully violating paragraph five of the RICO judgment entered in the underlying civil case, Chevron v. Donziger, No. 11-CV-691 (LAK), dkt. no. 1875 (S.D.N.Y.), which prohibits Mr. Donziger from "undertaking any acts to monetize or profit from the [Ecuador] Judgment . . . by selling, assigning, pledging, transferring or encumbering any

---

[1] The Court assumes the parties' familiarity with the facts and only sets forth details necessary to resolve this motion.

interest therein."  (Dkt. no. 1 ¶¶ 19-21.)   Mr. Donziger is alleged to have violated that provision by pledging a portion of his personal interest in the Ecuador Judgment to Mr. Zelman, the witness at issue in this motion, in exchange for Mr. Zelman's executive coaching services.  (See dkt. no. 134 at 2.)

The Government served Mr. Zelman with a trial subpoena on March 26, 2020, when trial was scheduled for June 15, and then again on July 17, after trial was adjourned to September 9.  On July 22, Mr. Zelman's attorney emailed the Government to raise concerns about Mr. Zelman -- who is 72 years old and resides in Dallas, Texas -- traveling to New York given his age and the COVID-19 pandemic.  (Dkt. no. 134, Ex. D.)  Specifically, Mr. Zelman's attorney informed that Mr. Zelman was not "willing to fly commercial for any reason," noted the burden to Mr. Zelman of quarantining in New York before trial,[2] and requested that Mr. Zelman "be allowed to testify via zoom."  (Id.)  In follow-on discussions with the Government, Mr. Zelman's attorney continued to express concerns about his client's ability to travel to New

---

[2]   New York Executive Order #205 requires travelers to New York from any state with a positive COVID-19 test rate higher than 10 per 100,000 residents or higher than a 10% positive rate, over a seven-day rolling average, to quarantine for fourteen days upon arriving in New York.  See Executive Order #205, available at https://www.governor.ny.gov/news/no-205-quarantine-restrictions-travelers-arriving-new-york.  Since Executive Order #205 was issued, Texas, where Mr. Zelman lives, has been on the list of states whose residents must quarantine upon entering New York.

York for trial and also shared that Mr. Zelman has █████. Mr. Zelman's attorney has submitted letters from Mr. Zelman's physician noting that Mr. Zelman's age and ██████ put him at a heightened risk of life-threatening complications if he were to contract COVID-19. (Dkt. no. 134, Exs. E-G.) Specifically, Mr. Zelman's physician has advised Mr. Zelman "not to travel in the US at this time" given Mr. Zelman's age, which puts him at an "increased risk of significant morbidity or even mortality should [he] contract COVID," and his ██████, which places him "at significantly increased risk of being hospitalized or dying if [he] contract[s] COVID." (Dkt. no. 134, Ex. G.)

   Given Mr. Zelman's age and health condition and quarantine obligations under Executive Order #205, the Government proposes that rather than travel to New York City to testify, he testify from the U.S. Courthouse in Dallas, Texas, via live two-way video conferencing. (Dkt. no. 134.) The Government notes that video equipment could be set up so that the Court, counsel, and Mr. Donziger could all see Mr. Zelman, and vice versa, while Mr. Zelman testified. The Government states that before Mr. Zelman testified, it would inform the Court and the defense of the exhibits that would be used during direct examination and that a Court Security Officer could be present with Mr. Zelman in Texas when testimony begins and to administer the oath.

**II.  Discussion**

While the Sixth Amendment's Confrontation Clause gives defendants the right "to be confronted with the witnesses against [them]," U.S. Const. amend. VI, the Supreme Court made clear in Maryland v. Craig, 497 U.S. 836 (1990), that it does not "guarantee[]" defendants "the absolute right to a face-to-face meeting" with accusatory witnesses.  Id. at 844 (emphasis in original).  Rather, "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case."  Id. at 849 (emphasis in original, citation and internal quotation marks omitted).  Accordingly, Craig held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  Id. at 850.

Notably, Craig involved the use of one-way video testimony.  For two-way video testimony, which is what the Government proposes for Mr. Zelman, the Court of Appeals has not adopted the Craig standard, observing that, unlike one-way video, two-way video "preserve[s] the face-to-face confrontation" required by the Sixth Amendment.  United States v. Gigante, 166 F.3d 75,

4

81 (2d Cir. 1999).  Accordingly, the Court of Appeals has authorized the use of two-way video testimony "[u]pon a finding of exceptional circumstances" and when it "furthers the interests of justice."  Id.  In determining whether to permit testimony by two-way video, courts in this Circuit have applied the rules used in connection with Rule 15 depositions and allowed video testimony "only when (1) the witness's testimony is material; (2) the Government has made good-faith and reasonable efforts to obtain the witness's presence and is unable to do so (that is, the witness is 'unavailable' within the meaning of the case law), and (3) allowing testimony by such means furthers the interests of justice."  United States v. Mostafa, 14 F. Supp. 3d 515, 521 (S.D.N.Y. 2014); accord United States v. Buck, 271 F. Supp. 3d 619, 622-623 (S.D.N.Y. 2017).

    Here, the Court finds that permitting Mr. Zelman to testify using the two-way video procedures proposed by the Government would satisfy the requirements of both Gigante and Craig, to whatever extent the latter applies in the two-way video context.

    With respect to the Craig standard, there is no question that limiting the spread of COVID-19 and protecting at-risk individuals from exposure to the virus are critically important public policies.  See Craig, 497 U.S. at 850 (finding that the policy of "protecting child witnesses from the trauma of testifying in a child abuse case" justified an exception to the

5

ordinary "face-to-face confrontation" requirement"); United States v. McKown, No. 16 Cr. 178, 2020 U.S. Dist. LEXIS 1293, at *5 (N.D. Ind. Jan. 6, 2020) ("[T]here is an important public interest in allowing witnesses to testify who cannot travel because of age or health."). Nor is there any question that allowing Mr. Zelman -- who is in his 70s and suffers from ▮ ▬▬▬▬▬▬▬▬▬▬, which, as the letters from his physician reflect, places him at heightened risk of dangerous complications should he contract COVID-19 -- to testify via live video rather than in person, which would require boarding a plane and spending at least two weeks in New York City, is needed to promote those important public policies.³

The Court is also satisfied that the procedure proposed by the Government -- which would have Mr. Zelman testifying under oath from a federal court in Texas in the presence of court personnel using a two-way video system that lets him view the Court, counsel, and Mr. Donziger, and for them to view him, all in real-time -- will "assure[]" "the reliability" of Mr. Zelman's testimony. Id. at 350; see McKown, 2020 U.S. Dist. LEXIS 1293,

---

³ Mr. Donziger suggests that the Government's motion for video testimony is meant to cater to "Mr. Zelman's convenience" and "reluctance to travel." (See dkt. no. 140 at 1, 8.) That is not what is at issue here. While avoiding unwanted travel does not qualify as an important public interest, protecting at-risk individuals from contracting COVID-19, which is the driving force of the instant motion, does indeed rise to that level.

at *5 ("As to reliability, live two-way video testimony at a remote courthouse meets the requirements laid out in Craig. The witnesses will be under oath and subject to cross examination, and the jury will be able to observe the witnesses' behavior.").[4] The reliability of Mr. Zelman's trial testimony is further ensured by the fact that it can be measured against the sworn deposition testimony he gave on February 27, 2019, in which Mr. Donziger participated, as well as Mr. Zelman's January 7, 2019 sworn "Response to Requests for Information," both of which addressed the same basic facts at issue here. (See dkt. no. 135, Exs. A & B); see also Mostafa, 14 F. Supp. 3d at 523 (noting that reliability was not in question when, among other things, the Government had produced material "demonstrating that

---

[4] Mr. Donziger claims that video platforms are not precise enough to allow the factfinder to see and judge the nuances of the witness's testimony, which, according to Mr. Donziger, becomes especially troublesome given Mr. Zelman's "psychological sophistication" as a "trained behavioral psychologist." (Dkt. no. 140 at 7.) This is nonsense. As stated in a prior order, the Court has used video technology in several other criminal matters, and it has proven to be "highly-effective" in allowing viewers to "observe the speaker in real-time and visually assess his or her demeanor." (Dkt. no. 124 at 6.) Mr. Donziger cites no authority for the proposition that a witness's profession is a relevant factor when deciding whether to permit him or her to testify by two-way video, and the Court rejects it as meritless.

[the witness's] proffered testimony [was] consistent with statements that he made in interviews over a number of years.").[5]

Mr. Zelman's video testimony will also comport with the principles from Gigante and related cases from this Circuit. First, the defense does not dispute that Mr. Zelman will offer material testimony regarding the allegations that Mr. Donziger pledged or assigned his interest in the Ecuadorian Judgment in exchange for personal services.  Second, Mr. Zelman is "unavailable" to testify in person given the combination of his age, ▮▮▮▮▮▮▮▮, and the concomitant health risk posed by COVID-19 if he were forced to travel and stay in New York for a prolonged period of time.  (See dkt. no. 134, Exs. D-G); see also Gigante, 166 F.3d at 81-82 (finding that the witness's illness and participation in a witness protection program were "exceptional circumstances" justifying his testimony via closed-

---

[5] In his opposition brief, Mr. Donziger cites United States v. Casher, No. 19 Cr. 65 (BLG) (SPW), 2020 WL 3270541, at *2 (D. Mont. June 17, 2020), which denied a motion for prosecution witnesses to testify via videoconference in light of the COVID-19 pandemic.  (Dkt. no. 140 at 7-8.)  But the holding in Casher was compelled by the Ninth Circuit Court of Appeals' ruling in United States v. Carter, 907 F.3d 1199 (9th Cir. 2018), which is not controlling authority for the Court.  See Casher, 2020 WL 3270541, at *2 ("Carter . . . controls the issue.").  As explained below, to whatever extent Ninth Circuit precedent might bar Mr. Zelman from testifying via two-way video, Second Circuit precedent, which is binding on the Court, does not.  In any event, Casher is factually distinct in that the court there opined that the witnesses were within driving distance of the courthouse, which is not the case for Mr. Zelman, who lives 1550 miles from New York City.  See id. at *3.

circuit television). Lastly, allowing Mr. Zelman to testify by video will further the interests of justice because he has first-hand knowledge of Mr. Donziger's conduct with respect to one of the contempt charges. See Mostafa, 14 F. Supp. 3d at 524 (finding that video testimony promoted justice because "[i]t is important that the Government be able to present the material and relevant evidence in its search for truth."). Allowing Mr. Zelman to testify by two-way video conferencing is therefore permissible under Gigante.[6]

### III. Conclusion[7]

For the foregoing reasons, the Government's motion (dkt. no. 134) for Mr. Zelman to testify by video in accordance with the Government's proposed procedures is GRANTED.

**SO ORDERED.**

Dated:   August 31, 2020         _____
         New York, New York       LORETTA A. PRESKA, U.S.D.J.

---

[6] Mr. Donziger argues that instead of allowing video testimony, the Court should continue the trial until after the COVID-19 pandemic abates so that Mr. Zelman can safely testify in person. (Dkt. no. 140 at 7.) The Court already denied Mr. Donziger's motion to delay the trial and then denied his motion for reconsideration. (Dkt. nos. 124, 145.) The Court will not address the argument yet again here.

[7] To the extent they are not addressed above, the Court has considered Mr. Donziger's remaining arguments and finds them unavailing.