UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN DONZIGER,

                    Defendant.

19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
<u>OPPOSITION TO THE DEFENDANT'S RENEWED MOTION FOR JURY TRIAL</u>**

Rita M. Glavin
Brian P. Maloney
Sareen K. Armani

*Special Prosecutors on behalf of the
United States of America*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

BACKGROUND ......................................................................................................... 1

    A.   The Prior Defense Motion ......................................................................... 1

    B.   The Court's Prior Rulings Specifying the Maximum Penalty .................... 2

    C.   Subsequent Proceedings............................................................................. 3

ARGUMENT ............................................................................................................... 4

    A.   The Defendant Does Not Have a Statutory Right to a Jury Trial .............. 4

    B.   The Defendant Does Not Have a Constitutional Right to a Jury Trial ....... 8

CONCLUSION........................................................................................................... 12

## TABLE OF AUTHORITIES

### CASES

*Armstrong v. Guccione,*
    470 F.3d 89 (2d Cir. 2006)...................................................................................... 5

*Blanton v. N. Las Vegas,*
    489 U.S. 538 (1989).................................................................................... 11, 12

*Bloom v. Illinois,*
    391 U.S. 194 (1968)...................................................................................... 8, 12

*Cheff v. Schnackenberg,*
    384 U.S. 373 (1966)...................................................................................... 8, 10

*Chevron Corp. v. Donziger,*
    384 F. Supp. 3d 465 (S.D.N.Y. 2019)....................................................................... 7

*Clark v. Boynton,*
    362 F.2d 992 (5th Cir. 1966) ........................................................................ 6, 8

*Frank v. United States,*
    395 U.S. 147 (1969)...................................................................................... 5, 11

*Int'l Union v. Bagwell,*
    512 U.S. 821 (1994).......................................................................................... 8

*Lewis v. United States,*
    518 U.S. 322 (1996)...................................................................................... 9, 12

*Michaelson v. United States,*
    266 U.S. 42 (1924)........................................................................................ 5, 7

*Taylor v. Hayes,*
    418 U.S. 488 (1974).......................................................................................... 8

*United States v. Agajanian,*
    852 F.2d 56 (2d Cir. 1988).......................................................................... 9, 11, 12

*United States v. Aguilar,*
    515 U.S. 593 (1995).......................................................................................... 7

*United States v. Bonanno,*
    177 F. Supp. 106 (S.D.N.Y. 1959) ........................................................................ 7

*United States v. Cohn*,
  452 F.2d 881 (2d Cir. 1971) ................................................................. 7

*United States v. Cutler*,
  58 F.3d 825 (2d Cir. 1995) ................................................................. 12

*United States v. Cutler*,
  796 F. Supp. 710 (E.D.N.Y. 1992) ........................................................ 2

*United States v. Diapulse Corp. of Am.*,
  365 F. Supp. 935 (E.D.N.Y. 1973) ................................................... 5, 7

*United States v. Linney*,
  134 F.3d 274 (4th Cir. 1998) .............................................................. 9

*United States v. Quattrone*,
  441 F.3d 153 (2d Cir. 2006) ........................................................... 6, 7,

*United States v. Rojas*,
  55 F.3d 61 (2d Cir. 1995) ................................................................. 12

*United States v. Rosner*,
  352 F. Supp. 915 (S.D.N.Y. 1972) ...................................................... 7

*United States v. Solow*,
  138 F. Supp. 812 (S.D.N.Y. 1956) ...................................................... 7

*United States v. Twentieth Century Fox Film Corp.*,
  882 F.2d 656 (2d Cir. 1989) ..................................................... *passim*

*United States v. Zuber*,
  118 F.3d 101 (2d Cir. 1997) ............................................................... 2

## STATUTORY AUTHORITIES

18 U.S.C. § 1 ......................................................................................................... 8

18 U.S.C. § 401 ............................................................................................... *passim*

18 U.S.C. § 401(3) .......................................................................................... *passim*

18 U.S.C. § 402 ............................................................................................... *passim*

18 U.S.C. § 1503 .................................................................................... 1, 8, 9, 10

18 U.S.C. § 1503(a) ................................................................................... 6, 7,

18 U.S.C. § 3691 ....................................................................................... 1, 5, 7

The prosecution opposes the defense's renewed motion for a jury trial.  The Court already denied a defense pretrial motion for a jury trial without prejudice to renewal pending the Court's determination of the potential sentencing and fine range.  Dkt. 68 at 9-10 (order on pretrial motions).   On May 18, 2020, the Court informed the parties that, should the defendant be convicted, the Court would not impose a sentence greater than six months' imprisonment or a $5,000 fine, and accordingly ruled that "the trial will be by the Court." Dkt. 87 at 5-6.  Now, less than two weeks prior to the long-scheduled September 9 trial, the defense seeks to challenge the Court's decision to hold a bench trial by claiming principally that:  (1) Donziger has a statutory right to a jury trial under 18 U.S.C. §§ 402 and 3691 because the charges contained in Counts I and II of the July 31, 2019 Order to Show Cause ("OTSC"), charged under 18 U.S.C. § 401(3), "arguably" amount to obstruction of justice under 18 U.S.C. § 1503; and (2) the Constitution entitles Donziger to a jury trial because—although the Court has already made findings on the maximum potential sentencing and fine range in this case—a conviction of criminal contempt should nonetheless be classified as "serious" due to the "moral character and social opprobrium" attached to the charges, the collateral consequences of a conviction, and/or the nature of his pre-trial release conditions.

For the reasons set forth below, the motion should be denied.

## BACKGROUND[1]

### A.     The Prior Defense Motion

The defense filed pretrial motions on February 27, 2020, including the motion that "If a Southern District Judge Presides Over Trial of Mr. Donziger's Petty Offense, a Jury Should

---

[1] To the extent this brief does not address characterizations made by the defense in the "II. Background" section of their brief, the prosecution's silence on those characterizations does not indicate agreement or a lack of dispute.  This brief is aimed at addressing the issue of whether the defendant is entitled to a jury trial on the two legal arguments raised in the defense motion.

Be Empaneled." Dkt. 60 at 16-17. The defense argued that the Court should "exercise its discretion" to empanel a jury based on the purportedly "atypical history" of the case or as a protection against "the arbitrary exercise of official power." *Id.* In opposition, the prosecution set forth "the well-established rule that a defendant charged with criminal contempt in violation of 18 U.S.C. § 401 is not entitled to a jury trial if the punishment to be imposed does not exceed six months' imprisonment or a $5,000 fine," *see* Dkt. 62 at 20-21 (citations omitted), and noted the core principle of judging that "all cases are decided based upon an application of the relevant law to the facts and that the identities of the parties must not be taken into consideration." *Id.* at 21 (citing *United States v. Cutler*, 796 F. Supp. 710, 714 (E.D.N.Y. 1992); *see United States v. Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) ("We traditionally assume that judges, unlike juries, are not prejudiced by impermissible factors…"). The defense, in its reply papers, did not dispute the principle that defendants charged with criminal contempt are not entitled to a jury trial if the possible punishment does not exceed six-months incarceration or a $5,000 fine. *See* Dkt. 65.

### B.     The Court's Prior Rulings Specifying the Maximum Penalty

The Court ruled on the pretrial defense motions on May 7, 2020. Dkt. 68. As to Donziger's request for a jury trial if an S.D.N.Y. judge presides over his case, the Court found as follows:

> [Donziger] does not dispute, however, that contempt defendants charged under 18 U.S.C. § 401 are not entitled to a jury trial when the possible punishment does not exceed six-months incarceration or a $5,000 fine. See, e.g., United States v. Twentieth Century Fox Film Corp., 882 F.2d 656 (2d Cir. 1989). There is no reason to depart from that rule here. If the Court concludes before trial that, in the event of a conviction, it would not impose a sentence above the six-month or $5,000 thresholds, Mr. Donziger will receive a bench trial. Mr. Donziger's request for a jury trial is therefore denied subject to renewal pending the Court's determination of the potential sentencing and fine range.

*Id.* at 9-10 (emphasis added).

2

In addition, following a May 4, 2020 request by Donziger's counsel for a conference (Dkt. 67), the Court issued an order on May 7, 2020 inviting the parties to address by letter no later than May 14 how the parties proposed to proceed, "including but not limited to whether they wish to be heard further about the potential sentence and fine if Mr. Donziger is convicted" together with any anticipated motions *in limine* and "the anticipated length of the trial, either bench or jury."  Dkt. 69. On May 14, the defense requested disclosure of the maximum potential sentence and fine range, and reiterated that "[w]e stand by Mr. Donziger's view that he is entitled to a jury. . .even if the maximum possible sentence is six months."  Dkt. 73 at 1.

The parties subsequently appeared for a May 18, 2020 pretrial conference.  Dkt. 87 (hearing transcript).  At that conference, the Court specified the maximum potential sentence and fine range under the circumstances presented by this case:

> In Mr. Frisch's reading of the order, as he noted, the Court denied the motion for a jury trial, but on the bases argued by the defendant in the motion. Separately, however, the Court has reviewed the parties' submissions on the topic of possible punishment, and although 18, U.S.C., Section 401 does not prescribe any maximum penalty, a review of the cases, particularly <u>United States v. Cutler</u>, 796 F. Supp. 710 (E.D.N.Y. 1992), persuades the Court that, if convicted, defendant should be sentenced to no more than six months' imprisonment or a $5,000 fine. Accordingly, <u>the trial will be by the Court</u>.

*Id.* at 5-6 (emphasis added).

## C.    Subsequent Proceedings

The defendant did not move to reconsider the Court's May 18, 2020 ruling, nor did the defense raise any further issue about proceeding with a bench trial prior to the filing of motions *in limine*—which were fully briefed on August 8, 2020.  *See, e.g.*, Dkt. 110 (July 27, 2020 Defense Opp'n to Gov't Mot. in Limine) at 1 (arguing that "[m]otions *in limine* are primarily designed to prevent the jury from hearing prejudicial evidence or argument. . .<u>This consideration does not exist</u>

here.") (emphasis added).  Nor did the defendant assert that he was entitled to a jury trial as part of any arguments concerning the recent requests for a continuance, or regarding remote video witness testimony of witnesses. Rather, the defense acknowledged this was a bench trial and characterized the charged criminal contempt as a "petty" offense or "misdemeanor." *See* Dkt. 111 at 3 (asserting in July 29, 2020 letter motion for continuance, "this is a misdemeanor case, where the 'crime' alleged is violating civil discovery orders."); Dkt. 130 at 1 (asserting in an August 21, 2020 request for reconsideration that the defense team should not be required to travel to try a "petty" offense); Dkt. 132 at 2 (asserting in an August 21, 2020 request for reconsideration that counsel will be unduly inconvenienced by traveling to try this "misdemeanor bench trial"); Dkt. 140 at 1 (acknowledging in August 25, 2020 defense opposition to motion for live two-way video testimony that this "bench trial for criminal contempt is scheduled for September 9, 2020").

## ARGUMENT

### A.     The Defendant Does Not Have a Statutory Right to a Jury Trial

#### 1.     *The Statutes*

The conduct in this case is charged by OTSC under 18 U.S.C. § 401(3) ("Power of court"). Dkt. 1.  That provision states in pertinent part:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401(3).  A court's statutory power to punish by fine or imprisonment "all contempts of authority" dates back to the Judiciary Act of 1789, and Congress first enacted the statute that codified the particular circumstances under which contempt sanctions could be employed in 1831,

today embodied in 18 U.S.C. § 401.  *See Armstrong v. Guccione*, 470 F.3d 89, 105-06 (2d Cir. 2006).

By contrast, 18 U.S.C. § 402 ("Contempts constituting crimes") provides in pertinent part as follows:

> Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, <u>if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title</u> [18 USCS § 3691] and shall be punished by a fine under this title or imprisonment, or both.[2]

18 U.S.C. § 402 (emphasis added).  In order for the provisions of Section 402 to apply, "[t]he act or thing charged must be of such character as also to constitute a crime."  *Michaelson v. United States*, 266 U.S. 42, 65 (1924).  The Supreme Court found that the statute was "of narrow scope. . .dealing with the single class where the act or thing constituting the contempt is also a crime in the ordinary sense."  *Id.* at 66; *see also United States v. Diapulse Corp. of Am.*, 365 F. Supp. 935, 938 (E.D.N.Y. 1973) ("the sections dealt only with a doubly restricted class selected from the whole field of contempts, that is, contemptuous acts that were, *qua* acts, crimes *in se*, but exclusive of all

---

[2] Section 18 U.S.C. § 3691 in turn provides in pertinent part that where "<u>the act or thing done or omitted</u> also constitutes a criminal offense under any Act of Congress, or under the laws of any state in which it was done or omitted, the accused, upon demand therefor, shall be entitled to trial by a jury," excluding contempts committed in the presence of the court "or so near thereto as to obstruct the administration of justice," nor to contempts "entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States."  18 U.S.C. § 3691 (emphasis added).

such dual aspect contemptuous acts if committed against decrees in cases brought by the United States or if committed in the presence of the court.").

    2.    *Argument*

        The defense misstates *dicta* in the Fifth Circuit case *Clark v. Boynton*, 362 F.2d 992, 997 (5th Cir. 1966) to contend that the statutory right to a jury trial contained in 18 U.S.C. § 402 extends to all cases in which the acts or omissions charged also "arguably" constitute crimes under state or federal law.  In *Clark*, the Fifth Circuit held after trial that an imposed fine of $1,500 "automatically triggered the jury trial provisions of 42 U.S.C. § 1995" and that the lower court had not even considered whether the action was one for criminal contempt.  *See* 362 F.2d at 996 ("there was no plain statement in the order or other papers showing that the proceeding was one in criminal contempt.").  That the government as *amicus* contended that the conduct in the case—the intimidation and harassment of black voters by a local sheriff in Selma, Alabama—was "at least arguably" a violation of certain provisions of federal law, does not change the language of 18 U.S.C. § 402, or the *actual finding* in *Clark*, that the statutory right to a jury trial only reaches cases "where the actions alleged to have transgressed the order constitute a violation of Federal or State law." *Id.* at 997 (emphasis added).  The word "arguably" appears nowhere in the statute, and there is no ambiguity in 18 U.S.C. § 402 suggesting that the statutory right should also be construed to reach conduct that is "arguably" a federal or state crime.

        Donziger's argument (Dkt. 143-1 at 6-7) that he has a statutory right to a jury trial because the acts charged in Counts I and II of the OTSC "arguably" constitute the crime of obstruction of justice under 18 U.S.C. § 1503 is meritless.  Donziger has not been charged with obstruction of justice, nor does the conduct charged in Counts I and II embrace the requirement present in 18 U.S.C. § 1503 of "wrongful intent that will satisfy the *mens rea* requirement of

'corruptly' obstructing or endeavoring to obstruct" justice. *See id.* at 621 (quotation omitted); *United States v. Quattrone*, 441 F. 3d 153, 170 (2d Cir. 2006) ("In order to convict for obstruction of justice under the omnibus clause of section 1503, the government must establish. . . that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so – that is, 'that the defendant corruptly intended to impede the administration of that judicial proceeding.'" (citations omitted)).

As such, the defense citation to cases charged under 18 U.S.C. § 1503 is plainly inapposite. *See* Dkt. 143-1 at 6-7 (citing *United States v. Aguilar*, 515 U.S. 593, 597 (1995) (concerning false statements intended to impede grand jury investigation); *United States v. Quattrone*, 441 F.3d 153, 166-67 (2d Cir. 2006) (concerning acts intended to impede grand jury investigation by suggesting personnel "catch up on file cleanup"); *United States v. Cohn*, 452 F.2d 881, 884 (2d Cir. 1971) (concerning provision of false and evasive testimony before a federal grand jury); *United States v. Rosner*, 352 F. Supp. 915, 917 (S.D.N.Y. 1972) (concerning corrupt activities in connection with pending criminal matters in order to improperly obtain material from the U.S. Attorneys' Office, such as the "draft of a contemplated indictment"); *United States v. Bonanno*, 177 F. Supp. 106, 112 (S.D.N.Y. 1959) (concerning conspiracy to frustrate grand jury investigation); *United States v. Solow*, 138 F. Supp. 812, 814 (S.D.N.Y. 1956) (charging defendants with destruction of documents to prevent their production before a grand jury)).

Finally, the defense cites Judge Kaplan's findings that "Donziger quite intentionally has not complied" with the Protocol and "explicitly has invited a contempt finding" to suggest that Donziger's willful disobedience of the Protocol "directly align[s]" with the obstruction statute. Dkt. 143-1 at 7 (citing *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 488 (S.D.N.Y. 2019)). Even assuming those findings "align" with the obstruction statute, "alignment"

is insufficient to "constitute" obstruction under 18 U.S.C. § 1503 and, thus, the conduct charged here falls outside the statutory right to a jury trial conferred by 18 U.S.C. §§ 402 and 3691.

**B.      The Defendant Does Not Have a Constitutional Right to a Jury Trial**

   *1.      Applicable Law*

      In *Cheff v. Schnackenberg* the Supreme Court held that "sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 384 U.S. 373, 380 (1966).  In so ruling, the Court observed that a jury trial is not required for "petty offenses," and "any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months" is a "petty offense." *Id.* at 379-80 (citing 18 U.S.C. § 1).  Subsequently in *Bloom v. Illinois*, in addressing whether a jury trial was required where a defendant was convicted in state court of criminal contempt and sentenced to twenty-four months' imprisonment, the Court observed that "criminal contempt is a petty offense unless the punishment makes it a serious one. . . ." 391 U.S. 194, 198 (1968).  In determining that the criminal contempt at issue was "serious" and required a jury trial, the Court stated: "when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, *we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense*." *Id.* at 211 (emphasis added).

      Since *Bloom* the Supreme Court has looked to the punishment imposed in determining if the offense is "serious," thereby entitling a defendant to a jury trial.  *See Int'l Union v. Bagwell*, 512 U.S. 821, 826-27 (1994) (noting that right to a jury trial extends only to "serious" criminal contempts involving imprisonment of more than six months); *Taylor v. Hayes*, 418 U.S. 488, 495 (1974) ("our cases hold that petty contempt like other petty criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute.").

For criminal contempt charges brought under 18 U.S.C. § 401, a *sui generis* offense for which there is no maximum penalty, the Second Circuit looks to the penalty imposed in determining if the contempt is "serious," entitling the contemnor to a jury trial.  *See United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 662 (2d Cir. 1989) (". . .a criminal contempt with an imposed penalty of more than six months' imprisonment is a 'serious' offense, entitling the individual contemnor to a jury trial."); *United States v. Agajanian*, 852 F. 2d 56 (2d Cir. 1988) (defendant not entitled to jury trial in criminal contempt case where the defendant was notified prior to trial that the government would not seek greater than six months' imprisonment, and penalty imposed was three months' imprisonment upon conviction ); *accord United States v. Linney*, 134 F.3d 274, 281 (4th Cir. 1998) ("The ultimate determination as to whether a defendant charged with criminal contempt is entitled to a jury trial depends on the actual penalty imposed."). The Supreme Court has confirmed that this analysis applies to those statutes—such as 18 U.S.C. § 401—that do not specify a maximum penalty.  *Lewis v. United States*, 518 U.S. 322, 328 (1996) (noting in *dicta* that "where the legislature has not specified a maximum penalty, courts use the severity of the penalty actually imposed as the measure of the character of the particular offense.").

2.    *Argument*

The defense proposes that this Court must "analyze the totality of all relevant indicia of seriousness" before concluding that the charges are petty (Dkt. 143-1 at 8), and identifies a variety of indicia to argue that the charges in this case are sufficiently serious to require a jury trial under the Sixth Amendment including: the "moral character and social opprobrium" of the charges suggest their seriousness; the acts alleged in the OTSC "amount[] to obstruction of justice," or "effectively serve as an obstruction charge in the eyes of the public;" a federal criminal contempt conviction could prejudice Donziger's appeal from the decision of the Appellate

Division, First Department on August 13, 2020 to disbar him from the practice of law in New York State by providing an "independent basis" to disbar him; the history of this case somehow entitles Donziger to a jury at this juncture; and the Court's prior findings as to Donziger's risk of flight and the status of his release conditions constitute "punishment without due process" and should provide indicia that reflect on society's opinion of the charges.[3]   *See* Dkt. 143-1 at 7-16.

As a preliminary matter, the defense ignores well-established precedent that a defendant charged with criminal contempt is not entitled to a jury trial under the Sixth Amendment where the sentence to be imposed does not exceed six months imprisonment.   *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) ("sentences exceeding six months for criminal contempt may not be imposed absent a jury trial"); *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 658, 661, 663, 666 (2d Cir. 1989); *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir. 1988).

---

[3] The defendant also argues that "the conditions of [his] pre-trial home confinement constitute punishment, further indicating the seriousness of the charges." Dkt. 143-1 at 12. In particular, he argues that "24/7 confinement to his home" is "excessive and without rational connection to his low risk of flight" and "cannot reasonably be construed as the 'least restrictive further condition, or combination of conditions' capable of reasonably assuring his appearance in court as required." *Id*. at 13, 16. The defendant – citing to cases concerning "detainees" – ignores that he is not in fact detained, but released on conditions, with the ability to leave his home for family obligations, employment, meetings with his attorneys, religious services, medical appointments, and "other activities approved in advance by the pretrial services office." Dkt. 4 at 4-5. Donziger also ignores that this Court's multiple previous findings that he constitutes a flight risk. *See, e.g.*, Dkt. 18 (Aug. 8, 2019 Tr.) ("I am troubled by the frequent travel to Ecuador"); Dkt. 41 (denying request to modify the conditions of release), affirmed by the Second Circuit in 2d Cir. 19-4155, Dkt. 52 (finding "no clear error in the District Court's decision"); Dkt. 82 (denying Mr. Donziger's request to be released from home confinement); Dkt. 87 at 13 (May 18, 2018 Tr.) ("nothing really has changed of significance from the Court's prior findings that the defendant is a risk of flight"); Dkt. 90 at 3 (reaffirming flight risk finding). The Court has made clear that the defendant's release conditions were imposed based on his risk of flight, which included an assessment of the strength of the evidence, the defendant's strong ties and travel to a country without reliable extradition, the defendant's past refusal to comply with court orders, and the fact that he is facing "the real prospects of incarceration." Aug. 6, 2019 Tr. at 27; Nov. 25, 2019 Tr. at 12.

Nonetheless, in determining whether an offense is "serious" for purposes of the Sixth Amendment right to a jury trial, the Supreme Court has sought "objective indications" of the seriousness with which society regards a particular offense. *Frank* v. United States, 395 U.S. 147, 148 (1969); *Blanton v. N. Las Vegas*, 489 U.S. 538, 541-42 (1989) (same) (quoting *Frank*). In *Blanton*, for example, the Supreme Court reviewed whether the statutory penalties imposed by the Nevada Legislature on a DUI offender made such a crime a "petty" or a "serious" offense for purposes of the Sixth Amendment, noting that "[a] legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense." *Blanton* suggested that where statutory offenses carry a maximum prison term of six months or less, courts should presume for purposes of the Sixth Amendment that "society views such an offense as 'petty.' In such a circumstance:

> A defendant is entitled to a jury trial . . . only if he can demonstrate that any <u>additional statutory penalties</u>, viewed in conjunction with the maximum authorized period of incarceration, are <u>so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one.</u> This standard, albeit somewhat imprecise, should ensure the availability of a jury trial in the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line.'

*Blanton*, 489 U.S. at 543 (emphasis added). But unlike in *Blanton*, Donziger has not been charged with a crime that carries "additional statutory penalties. . .[that] are so severe that they clearly reflect a legislative determination" of seriousness. Instead, because federal criminal contempt charges under 18 U.S.C. § 401(3) carry "no statutory limits on the maximum allowable penalties," the law is clear that courts "are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 662 (2d Cir. 1989) (quoting *Bloom*, 391 U.S. at 211). An "objective indication" has already been

11

provided by the Court, which has fixed the maximum potential sentence and fine range.  Dkt. 87 at 5-6; *see also Lewis v. United States*, 518 U.S. 322, 327 (1996) (in determining whether an offense is petty, and therefore the defendant is not entitled to a jury trial, courts should look to the judgment of the legislature as expressed in the maximum authorized term of imprisonment as an objective indication of the seriousness of the offense).

Donziger's contentions that the acts alleged in the OTSC might arguably "serve as an obstruction charge in the eyes of the public" or that the history of the underlying civil litigation in this case should uniquely entitle Donziger to a jury trial, despite the Court's determination of the maximum potential sentence and fine range, are the opposite of "objective" indications of the seriousness with which society regards a particular offense.  Nor do the collateral consequences of a contempt conviction for an attorney's own license to practice law (or in this case, where such consequences might prejudice the ability to overturn a prior decision of disbarment) somehow change the analysis with respect to federal criminal contempt charges, as evidenced by other criminal contempt prosecutions against attorneys under 18 U.S.C. § 401(3) that proceeded by way of a bench trial.  *See, e.g.*, *United States v. Cutler*, 58 F.3d 825 (2d Cir. 1995); *United States v. Rojas,* 55 F.3d 61, 63 (2d Cir. 1995) ("[i]n [criminal contempt] cases where the district court imposes a sanction of imprisonment of less than six months, the district judge may serve as the fact finder"); *Agajanian*, 852 F.2d at 58.

## CONCLUSION

For the foregoing reasons, the Defendant's motion should be denied.

Dated:  August 31, 2020
New York, New York

Respectfully submitted,

s/        Rita M. Glavin
  Rita M. Glavin
  Brian P. Maloney
  Sareen K. Armani
*Special Prosecutors on behalf of the*
*United States*

  Seward & Kissel LLP
  One Battery Park Plaza
  New York, New York 10004
  Tel: (212) 574-1448
  Fax: (212) 480-8421
  glavin@sewkis.com
  maloney@sewkis.com
  armani@sewkis.com