K8RDKDONH

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.
                                    19 CR 561 (LAP)
5   STEVEN DONZIGER,

6                  Defendant.

7   ------------------------------x

8   CHEVRON CORPORATION,

9
               v.                   11 CV 691 (LAK)
10
    STEVEN DONZIGER, et al.
11
                   Defendants.
12
    ------------------------------x
13                                  New York, N.Y.
                                    August 27, 2019
14                                  11:30 a.m.
    Before:
15                    HON. LORETTA A. PRESKA,
                                        District Judge
16                       APPEARANCES

17  SEWARD & KISSEL LLP
         Attorneys for The United States of America
18  BY:  RITA M. GLAVIN
         BRIAN P. MALONEY
19       SAREEN K. ARMANI

20  FRIEDMAN RUBIN
         Attorneys for Defendant
21  BY:  RICHARD H. FRIEDMAN
         MARTIN GARBUS
22       -and-
    LITLEPAGE BOOTH LECKMAN
23  BY:  ZOE LITTLEPAGE
         -and-
24  CIVIL LIBERTIES DEFENSE CENTER
    BY:  LAUREN REGAN
25       -and-
    NATALI J.H. TODD, CJA Counsel

SOUTHERN DISTRICT REPORTERS, P.C.

K8RDKDONH

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE COURT:  United States against Steven Donziger. |
| 3 | Is the government ready? |
| 4 | MS. GLAVIN:  Yes, your Honor.  Rita Glavin, Brian |
| 5 | Maloney, and Sareen Armani. |
| 6 | THE COURT:  Good morning. |
| 7 | And is the defense ready? |
| 8 | MR. FRIEDMAN:  Yes, your Honor.  Rick Friedman, for |
| 9 | Mr. Donziger, along with Ms. Littlepage, and Ms. Regan, and |
| 10 | Marty Garbus is on the telephone. |
| 11 | THE COURT:  Good morning. |
| 12 | THE DEFENDANT:  Good morning, your Honor. |
| 13 | THE COURT:  Good morning, Mr. Donziger. |
| 14 | Picking up where we left off earlier in the week: |
| 15 | Have you had time to consult with a conflict-free lawyer, sir? |
| 16 | THE DEFENDANT:  Yes, I have. |
| 17 | MR. FRIEDMAN:  Your Honor -- |
| 18 | THE DEFENDANT:  I'm sorry. |
| 19 | MR. FRIEDMAN:  Your Honor, I'm sorry to interrupt. |
| 20 | Before we begin, could I make a comment for the record? |
| 21 | THE COURT:  Sure. |
| 22 | MR. FRIEDMAN:  Thank you, your Honor. |
| 23 | As you know from our briefing, we have objections to |
| 24 | the structure of these proceedings.  And I know you disagree, |
| 25 | and I'm not intending to argue with you now about that, but I |

K8RDKDONH

1    do have some things we need to put on the record.

2           THE COURT:  Is there anything you're putting on the

3    record that you haven't put in your papers?

4           MR. FRIEDMAN:  Yes, there is, your Honor.

5           Our concern now is that, as a result of what we

6    consider irregularities in the proceedings, Mr. Donziger has

7    now been put in a position where he's required to choose

8    between a conflicted lawyer -- that would be me and

9    Ms. Littlepage -- or if, as the Court seems to be signaling,

10   the Court is going to appoint another lawyer for him, that

11   lawyer, of necessity, is going to be unprepared.

12          THE COURT:  Well, that's not the only option.  As you

13   well know from the letter of the special prosecutors and the

14   questions that were proffered by the special prosecutors,

15   Mr. Donziger can waive whatever conflict the Court might find

16   to be present.  That's the whole idea of this proceeding.

17          MR. FRIEDMAN:  I understand that, your Honor.  The

18   problem is, he's waiving a conflict, so he's either going to

19   accept a conflicted lawyer or he's going to be stuck with a

20   lawyer who cannot possibly get prepared in time.

21          THE COURT:  Well, Mr. Donziger was the protagonist in

22   all of these proceedings.  Mr. Donziger knows what involvement

23   the lawyers had in the relevant conduct, that is, the 2014

24   correspondence and the postjudgment civil proceedings.  As a

25   lawyer, he understands conflicts.  As a lawyer, he understands

K8RDKDONH

1      waiver.

2              So, this is not new to him.  He understands it.  He

3      was present at all of the factual events.  The fact that it has

4      come up now is of no moment.

5              MR. FRIEDMAN:  All I wanted to put on the record at

6      this point, your Honor, was that the government has produced to

7      the defense 7,125 documents, consisting of 124,000 pages of

8      material, and 169 videos.  And my point is simply to get that

9      information to the Court, so that you understand the magnitude

10     of what we're dealing with.  That's all I wanted to say at this

11     point.

12             THE COURT:  Thank you.

13             Yes, ma'am?

14             MS. GLAVIN:  To the extent the Court deems it

15     necessary or helpful, I am willing to talk a little bit about

16     the volume of what's been produced to the defense to make a

17     record.

18             THE COURT:  Yes, ma'am.

19             MS. GLAVIN:  With respect to what has been produced to

20     the defense, almost all of it, Mr. Donziger has.  So the videos

21     that were produced to the defense were videos from depositions

22     in the postjudgment discovery proceeding.  So there's nothing

23     new there.  Mr. Donziger should be intimately familiar with

24     that because he was participating in most of those depositions.

25             The other forms of discovery, the big bulk of it, is

K8RDKDONH

1    going to be documents from the docket in the underlying civil

2    case, as well as correspondence, a lot of which Mr. Donziger

3    was on.

4              So, while the discovery may appear to be voluminous,

5    that is entirely a function of a voluminous court record of

6    which Mr. Donziger was a party and received.

7              THE COURT:  Thank you.

8              MR. FRIEDMAN:  And, your Honor, if I may, we're not

9    criticizing the prosecution for producing that volume of

10   material.  Our point is simply it's not realistic to expect a

11   new lawyer is going to be able to come in and become familiar

12   with that material in time for the September 9th trial.

13             That's my point at this point.

14             MS. GLAVIN:  Just to add one point on that, while that

15   volume has been produced, it is a very small portion of it that

16   we think becomes directly relevant to the six counts of

17   criminal contempt.

18             THE COURT:  Yes, ma'am.

19             Mr. Donziger, I think you just told me that you have

20   had the opportunity to consult with conflict-free counsel; is

21   that right, sir?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  And who was that, please, sir?

24             THE DEFENDANT:  It was Ms. Todd as well as two or

25   three other people.  Do I have to give you their names?

K8RDKDONH

1            THE COURT:  Yes, sir.

2            THE DEFENDANT:  So -- well, this is the thing:  I

3  have, like, a bunch of people, like, some are professors and

4  stuff who advise me, but I don't know if they're going to want

5  to be seen as formally counsel to me on this issue.

6            THE COURT:  I didn't ask you if they were counsel.  I

7  said, did you consult with them about the matter of the

8  conflict?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Okay.

11            Who are they, please, sir?

12            THE DEFENDANT:  One is Professor Charles Nesson from

13  Harvard Law.  I talked to another lawyer named Cascione, which

14  I don't have his first name, but he's a litigator in this area

15  who used to be a district attorney who's dealt with this.  And

16  I talked to Ms. Todd.

17            THE COURT:  Very well.

18            Do you need any more time to talk with these lawyers?

19            THE DEFENDANT:  Well, it depends on how this plays

20  out, but right now, no, I don't.

21            THE COURT:  All right, sir.

22            Is there anything about what the Court said to you on

23  the last occasion that was unclear?

24            THE DEFENDANT:  No.  I think I understand the issue

25  very clearly.

K8RDKDONH

| | |
|---|---|
| 1 | THE COURT:  All right, sir. |
| 2 | So, my question to you is:  Do you still wish to |
| 3 | proceed with Mr. Richard Friedman as your attorney in this |
| 4 | case? |
| 5 | THE DEFENDANT:  So, I would like to answer that by |
| 6 | reading something I've written.  Would the Court allow me to? |
| 7 | I want to say that what I want to read is sort of a desire by |
| 8 | me to lay a record and then ultimately answer your question. |
| 9 | Normally, I would have put this in writing before today, but |
| 10 | this was kind of an agonizing decision for me because of my |
| 11 | history with Mr. Friedman.  So, if you would give me |
| 12 | permission, can I just read my answer? |
| 13 | THE COURT:  Yes, sir. |
| 14 | THE DEFENDANT:  Do you mind if I step over to the |
| 15 | podium? |
| 16 | THE COURT:  Yes, sir, go right ahead. |
| 17 | THE DEFENDANT:  Thank you. |
| 18 | Your Honor, this is my position -- and this might take |
| 19 | five minutes; if you have questions in the middle of it, feel |
| 20 | free to interrupt me. |
| 21 | So, due to the prosecutors raising this conflict issue |
| 22 | last Friday, which is very late in the game in terms of the |
| 23 | trial date, combined with the Court's -- |
| 24 | THE COURT:  I believe the letter was August 11.  Am I |
| 25 | wrong on that? |

K8RDKDONH

1          THE DEFENDANT:  Well, I did not understand the

2    scope -- just to be clear, the scope of what was going on here

3    until the letter of, I think, August 21st.

4          THE COURT:  All right.  But there was an earlier

5    letter.

6          THE DEFENDANT:  There was talk of a Curcio hearing.

7          THE COURT:  There was a letter with respect to a

8    Curcio hearing.  Am I wrong it was August 11th?

9          MS. GLAVIN:  Yes, your Honor.  The first letter was

10   August 11th, but this was raised with Mr. Friedman back in May.

11         THE COURT:  Thank you.

12         THE DEFENDANT:  But, to be clear --

13         MR. FRIEDMAN:  Excuse me, Steven.

14         When this was raised -- just so the record is complete

15   and clear, when this was raised originally by Ms. Glavin --

16   and, actually, she raised it, I think, at least twice -- she

17   said she was thinking that there might be a Curcio problem, but

18   she hadn't decided whether there was or not until shortly

19   before she sent that letter.

20         THE COURT:  Okay.  But the point is, this is not new

21   news.

22         Go ahead, sir.

23         MR. FRIEDMAN:  In roughly August -- I'm sorry.

24         THE DEFENDANT:  In any event, there's a lot going on

25   in this case.  In my life, I've got a lot of litigation around

K8RDKDONH

this case.  When Mr. Friedman mentioned that to me, I had never
heard of what a Curcio hearing was.  I've never done a federal
criminal case.  And he indicated to me -- well, I'm not going
to go there, but until I received the letter last Friday and
sort of reflected on it over last weekend, which is why I came
in Monday and said I needed a couple of days, I didn't
understand the issue in a clear way, and I didn't understand,
really, the scope of the conflict and how it could affect the
trial.  I hadn't thought about it, I hadn't gotten advice about
it.  And even though Ms. Glavin had initially raised the issue,
I think back in May with Mr. Friedman, it wasn't until
August 21st that she submitted a letter with questions that
made it clear that this issue was being brought to the Court.

        So, to me, it felt like -- and I believe it was very
late in the game, given the trial date of September 9th.
That's just my position.

        I have been placed, because of that situation, where I
believe I have to give up one or more core constitutional
rights and really choose between two unattractive options, both
of which will harm my interests and both of which, I believe,
would violate my right to a fair trial.  And I want to explain
that to create the record, if I may.

        As the Court explained to me earlier in the week, I
have the right to a conflict-free lawyer, but all of my lawyers
have a conflict of some sort or another that is serious.

1          It's not just the issue of the involvement or any

2     potential involvement in advice regarding facts underlying one

3     of the six counts.  All of them, as has been made clear to you,

4     have a conflict in having to travel from far away locales to

5     New York to attend the trial personally when their doctors, or

6     at least some of their doctors, have counseled them not to take

7     risk for themselves or their family members.  It bothers me

8     greatly because these are people -- it would bother me for any

9     lawyer, but these are people who are working pro bono for me,

10    and in the case of Mr. Friedman and Ms. Littlepage, they have

11    been helping me for seven years pro bono.  They did have a fee

12    arrangement, but that's been extinguished, and they continue to

13    help me.

14         Each of my lawyers has a strong and legitimate

15    interest, health interest, in not taking the risk of attending

16    my trial in person.  They have an interest in not interacting

17    with me or my witnesses in person due to the risks of the

18    virus.  They have an interest in keeping the trial short for

19    that reason.  They have an interest in attending through the

20    computer, virtually, or not at all.  And all --

21         THE COURT:  Mr. Donziger, we're here today to talk

22    about conflicts.  We're not here to talk about travel or

23    anything else.

24         THE DEFENDANT:  Well, my only point is, I believe

25    there are two conflicts that I'm having to grapple with, and

K8RDKDONH

1     this is one of them, there's the health issue.  And I will move

2     on now, your Honor, but my point is I want my lawyers focused

3     on defending me, not on worrying about their health.  And, to

4     me, that's a conflict.  I think they believe it's a conflict.

5             Now, when I got the letter last Friday -- I'm moving

6     on to, I think, the more -- the conflict the Court wants to

7     hear about -- as I said, I was unaware of the scope, the

8     meaning of this conflict raised by the prosecution, until

9     reading Ms. Glavin's letter of August 21st.  It puts me in an

10    agonizing position in the sense, while I have a right to a

11    conflict-free lawyer, I also have a right to counsel that is

12    properly prepared for trial.  This isn't just any misdemeanor

13    trial; I think we can probably all agree on that.  It has six

14    counts.  My life, or what's left of it, is at stake.  I've been

15    extremely prejudiced by, as you know, disbarment and

16    reputational harm, financial harm, that all emanates from the

17    RICO judgment.  And what happens before your Honor in this case

18    is extremely important to me and my life, my future, and my

19    family, which includes a wife and a 14-year-old son.

20            I believe that Ms. Glavin is essentially asking for me

21    to choose between these two rights, having an unconflicted --

22    having a conflicted lawyer or having an unprepared lawyer.  If

23    I do waive this conflict, I don't believe -- with regard to

24    Mr. Friedman and Ms. Littlepage, I don't believe the other

25    lawyers on this team, and I think they're all really good

K8RDKDONH

1   lawyers -- obviously Mr. Garbus has been around a long time and

2   Ms. Regan has a lot of experience -- but their role in the

3   four-person team was not to prepare for the main defenses.

4   That was Mr. Friedman's role primarily, assisted by

5   Ms. Littlepage.

6          The work of Ms. Regan and Mr. Garbus addresses

7   important issues, and I have confidence in them.  I just don't

8   think they can get up to speed, when the underlying case has

9   3,000 docket entries, by September 9th if Mr. Friedman and

10  Ms. Littlepage would be removed, and then you ask Ms. Regan

11  and/or Mr. Garbus to step up.

12          Just a little bit more, your Honor.  I'm almost done.

13          I have read your Honor's orders this week, suggesting

14  maybe Mr. Frisch could come back.

15          THE COURT:  It's more than a suggestion, sir.

16          THE DEFENDANT:  Yeah.  I'm sorry?

17          THE COURT:  I said it's more than a suggestion.

18          THE DEFENDANT:  Okay.  I don't want to characterize it

19  inaccurately.  I didn't hear what you said.

20          THE COURT:  Yes, sir.

21          THE DEFENDANT:  I'd like to address that issue.  I

22  don't believe Mr. Frisch could be my lawyer because our

23  relationship has completely broken down.  I want to explain

24  what I mean by that.

25          THE COURT:  Mr. Donziger, we are here to talk about

1   conflicts.  My question to you, sir, is whether you wish to

2   continue with Mr. Friedman as your counsel.

3          THE DEFENDANT:  Can I just finish my point, and then

4   I'll --

5          THE COURT:  We're talking about conflicts.  I don't

6   want to hear about other stuff.

7          THE DEFENDANT:  But I'm ultimately going to propose a

8   way to deal with this.

9          THE COURT:  Let's hear it.

10          THE DEFENDANT:  Which is this:  I have another counsel

11   from New York City who's willing to represent me pro bono.

12   He's highly qualified.  He won't have the problem of traveling,

13   that is, the risk from the pandemic from having to travel here,

14   and he is willing to do this, but he cannot do it until

15   December 7th.  His name is Ron Kuby.

16          THE COURT:  We're not doing it.  As you understood,

17   and as you've read from the recent orders, when Mr. Frisch

18   asked for leave to withdraw, leave was granted on the condition

19   that it not affect the trial date.  If it turns out that

20   another lawyer is not able to try the case on the trial date,

21   then the condition on which he was allowed to withdraw will

22   have failed, and he will be counsel.

23          So, just keep going.

24          THE DEFENDANT:  What I'm trying to say is I can't have

25   him as my counsel because we have a conflict.  Do you want me

K8RDKDONH

1    to explain that?  Can I lay a record on that?

2            THE COURT:  Are you going to breach the

3    attorney-client privilege?  Are you going to waive the

4    privilege?

5            THE DEFENDANT:  No.  I think I need to consult with my

6    counsel, but I can represent --

7            MR. FRIEDMAN:  Your Honor, I wonder if we could -- the

8    last time we did this, there was a phone in the jury room.  If

9    that's still there, if I could have just a few minutes with

10   Mr. Donziger.  I think that might be wise.

11           THE COURT:  Sir, do you wish to speak with

12   Mr. Friedman?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  All right.  You're excused.  Go to the

15   jury room.

16           THE DEFENDANT:  Thank you.

17           (Recess)

18           MR. FRIEDMAN:  Your Honor, I'm going to step away from

19   this screen and microphone.

20           THE COURT:  Yes, sir.

21           MR. GARBUS:  Excuse me.  Am I hooked into the jury

22   room?

23           THE COURT:  I don't believe so.

24           MS. LITTLEPAGE:  Steven can only call one person.

25           MR. GARBUS:  Pardon me?

K8RDKDONH

| 1 | MS. LITTLEPAGE:  I believe Steven can only call one |

1     MS. LITTLEPAGE:  I believe Steven can only call one

2 person from the jury room.

3     MR. GARBUS:  I see.  Okay.  Thank you.

4     MS. REGAN:  I believe we can hear Mr. Maloney on the

5 phone.

6     THE COURT:  I'm sorry?

7     MS. REGAN:  We can hear Mr. Maloney's phone call over

8 the microphone, I believe.

9     MS. GLAVIN:  Thanks for letting us know.

10    THE COURT:  Thank you.

11    Off the record.

12    (Discussion off the record)

13    THE COURT:  Yes, sir, Mr. Donziger, did you have an

14 opportunity to speak on the phone with Mr. Friedman?

15    THE DEFENDANT:  Yes, I did, your Honor.

16    THE COURT:  All right, sir.

17    MR. FRIEDMAN:  Your Honor, could I ask that we go

18 in camera just to allow Mr. Donziger to finish what he was

19 saying?

20    THE COURT:  Is there any objection?

21    MS. GLAVIN:  No, your Honor.

22    THE COURT:  Thank you.

23    I will excuse everybody else from the courtroom,

24 please, except the A/V people.

25    (Pages 16-25 SEALED by order of the Court)

K8RKDON1

```
 1              (In open court)

 2              THE COURT:  And we're back on the public record, and

 3    we'll just await the return of the other lawyers.

 4              Thank you, counsel.

 5              Mr. Donziger has authorized me to say that the issues

 6    he raised have to do, first, with his fee dispute with

 7    Mr. Frisch, which has been characterized as having gotten

 8    personal.

 9              Secondly, Mr. Frisch has another case in front of me

10    and has some concern that this case will influence that case.

11    I have assured Mr. Donziger that that is not the case.  In

12    fact, I have a recollection of what the other case is, and it

13    has to do with foreign law issues.  So there's no issue there.

14              The question is:  Does anyone wish to be heard on that

15    before we proceed?

16              THE DEFENDANT:  Can I be heard, your Honor?

17              THE COURT:  Yes, sir.

18              THE DEFENDANT:  Thank you, your Honor.

19              Just on the latter point, the issue is not that your

20    Honor couldn't separate out the two cases; the issue in the

21    conflict is I don't believe Mr. Frisch, in the zealousness of

22    his representation of me, would not be conflicted by the fact

23    that he had this other thing based on the things he was saying.

24    I just want to be clear.

25              THE COURT:  Well, I am simply --
```

K8RKDON1

1    THE DEFENDANT:  It's about his representation.

2    THE COURT:  I am assuring you and him that he has no

3    concern on that point.  His job is to represent all of his

4    clients zealously.

5    THE DEFENDANT:  I don't know -- can I also do

6    something else?  Because I don't know if the government wants

7    to be heard.

8    THE COURT:  Well, let me just say where I was going to

9    go.  I was going to ask you, first of all, if you understand

10   the nature of the conflicts that are potential here, and ask

11   you to explain that to me, and then I'll ask you again if you

12   wish to continue with Mr. Friedman and Ms. Littlepage.

13   Does the government wish to be heard before we

14   proceed?

15   MS. GLAVIN:  No, your Honor.

16   THE COURT:  Thank you.

17   Okay, Mr. Donziger.  Tell me what you perceive as the

18   potential conflicts between you, Mr. Friedman, and

19   Ms. Littlepage arising out of the correspondence and

20   proceedings that the government intends to offer into evidence.

21   THE DEFENDANT:  So, my understanding is that it

22   relates to two of the six counts regarding allegations about an

23   order by Judge Kaplan that they may have been on certain

24   papers, which raises certain issues about a potential conflict.

25   THE COURT:  How do you understand that conflict to

K8RKDON1

operate?

          THE DEFENDANT:  I'm sorry, to what?

          THE COURT:  To operate.

          THE DEFENDANT:  Well, one way that is somewhat

apparent to me is, it's possible that they could -- either or

both of them potentially could be a witness in this case with

regard to facts adduced on those two counts.

          THE COURT:  All right.

          Let me also say that, in the ordinary course, as you

know, I would inquire of Mr. Friedman and Ms. Littlepage about

their involvement in the events at issue, specifically the 2014

correspondence and the postjudgment civil proceedings at issue

in this criminal contempt case.  Because they have not answered

the questions to allow me to understand their role, if any, I

can't make a judgment as to the nature of the conflict.  I will

say this, that, at best, it is a potential conflict and, thus,

is waivable by you.

          I was also asking you just now to explain to me your

understanding of how that conflict could operate.  What else

can you tell me about that, sir?

          THE DEFENDANT:  Well, when a lawyer has a conflict, it

can affect their representation.  In other words, lawyers owe

an undivided loyalty to their client, and if a lawyer is

involved in this way -- and I'm not saying this happened, I

want to be clear about this, this is all still somewhat

K8RKDON1

hypothetical to me, other than the documents I've seen that

Ms. Glavin produced with her letter, the exhibits, but it could

affect the quality of their representation and their loyalty.

        THE COURT:  All right.

        Is there anything further that any lawyer wants me to

ask Mr. Donziger on this point?

        MS. GLAVIN:  No, your Honor.

        MR. FRIEDMAN:  No, your Honor.

        THE COURT:  Thank you.

        All right, sir.  Going back to where we were, do you

understand that if I permit you to proceed with Mr. Friedman

and Ms. Littlepage, that you will not be permitted to make any

argument, on appeal or otherwise, based on the potential

conflicts that we have discussed?

        Do you understand that, sir?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you wish to proceed with Mr. Friedman?

        THE DEFENDANT:  So, at this time, I cannot waive.

        THE COURT:  Okay.  And the basis for that is what,

sir?

        THE DEFENDANT:  Well, it's what I previously -- the

issues that I previously identified in answer, I think, to your

recent question today.

        THE COURT:  Do you wish to proceed with

Ms. Littlepage?

K8RKDON1

1          THE DEFENDANT:  At this time, I cannot waive for

2     Ms. Littlepage either.

3          THE COURT:  Have you received any inducements,

4     promises, or threats with respect to your choice of counsel in

5     this case?

6          THE DEFENDANT:  Well, please don't take this the wrong

7     way, but I feel under enormous amount of stress by the Court,

8     and I question whether I'm in a position to exercise a

9     voluntary waiver, a complete voluntary waiver, or not, given

10    that the trial date is so soon, and Mr. Friedman, in

11    particular, but also Ms. Littlepage, have been spending weeks

12    preparing, and I'm losing them.  So I feel extremely

13    vulnerable, and just so you know, since Monday, or really since

14    Friday, it's been a very difficult choice for me, and it's

15    really been an agonizing choice to make.

16          The reason I say "at this time" is because I just

17    don't know what the future holds, if you're going to appoint

18    Mr. Frisch, what happens.

19          But I cannot waive at this time.

20          THE COURT:  Does the government wish to comment?

21          MS. GLAVIN:  No, your Honor.

22          THE COURT:  Very well, then.

23          All right.  Mr. Donziger, again, you were a

24    protagonist in this matter.  You know all of the facts, you

25    know what, if anything, Mr. Friedman and Ms. Littlepage had to

K8RKDON1

1    do with the 2014 correspondence and the postjudgment civil

2    proceedings at issue.  You're a lawyer, so you certainly

3    understand what a conflict is.  You also certainly understand

4    what a waiver is.

5         Because you have failed to waive, the Court has no

6    choice other than to disqualify counsel, and I will note that,

7    given all of these facts -- your longstanding relations with

8    Mr. Friedman and Ms. Littlepage, your seeming willingness to go

9    forward with them as counsel, your position as an attorney --

10   it appears to the Court that your purported concern about the

11   conflict is yet another attempt at delay.

12        But I still have no alternative other than to

13   disqualify Mr. Friedman and Ms. Littlepage.

14        Counsel, forgive me for messing your names up.

15        MS. LITTLEPAGE:  That's okay.

16        THE COURT:  I apologize.

17        Mr. Frisch will try the case.  If Ms. Regan is able to

18   assist and Mr. Garbus is able to assist, that's wonderful.

19        Is there anything else?

20        MR. FRIEDMAN:  No, your Honor.

21        MR. GARBUS:  Your Honor, I will not be able to assist.

22   I have never met Mr. Frisch.  I have spoken to him once or

23   twice.  If this goes ahead, I have no alternative, I really

24   can't give Mr. Donziger any effective counsel.  So the idea

25   that I, from Massachusetts, on this phone number, can assist

K8RKDON1

1   Mr. Frisch is preposterous.

2                THE COURT:  Thank you, Mr. Garbus.

3                Is there anything else, counsel?

4                MS. GLAVIN:  No, your Honor.

5                THE DEFENDANT:  Your Honor, I have one more thing.

6                I have an affidavit from Mr. Kuby saying he would be

7   able to try the case on December 7th.  Can I put it in the

8   record, please?

9                THE COURT:  Anything you want.

10                Is there anything else, counsel?

11                THE DEFENDANT:  How do you put it in the record?  Do I

12   give it to your deputy clerk?

13                THE COURT:  Your lawyers will file it for you.

14                THE DEFENDANT:  Okay.

15                THE COURT:  Thank you, counsel.  Good morning.

16                MR. FRIEDMAN:  Thank you, your Honor.

17                                    * * *

18

19

20

21

22

23

24

25