## SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK  10004

TELEPHONE:  (212) 574-1200
FACSIMILE:  (212) 480-8421
WWW.SEWKIS.COM

RITA GLAVIN
PARTNER
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC  20005
TELEPHONE:  (202) 737-8833
FACSIMILE:  (202) 737-5184

October 14, 2020

**VIA ECF**
Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:    *United States v. Steven Donziger*, No. 19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

Dear Judge Preska:

We write on behalf of the United States to set forth the Government's position on the issue of videoconference testimony by defense witnesses.

### A.  Background

In July 29 and August 12, 2020 motion papers seeking an indefinite continuance of the then-scheduled September 9, 2020 trial date, the defense first raised concerns as to its ability to obtain live defense witness testimony.  *See* Dkt. 111, Dkt. 119.  The defense cited to concerns that some of the prospective defense witnesses may have difficulty attending trial given travel limitations and/or health risks occasioned by COVID-19.  *See* Dkt. 111 at 1-3; Dkt. 119.[1]   In opposing the continuance motion, the Government specifically noted the possibility of presenting witness testimony by live videoconference and argued that the Court could address this option on a case-by-case basis applying the applicable legal principles.  Dkt. 116 at 6-7 (citing cases).

On August 17, 2020, in an order denying the defense motion for a continuance of the September 9 trial date, the Court specifically addressed the issue of defense witnesses and the option of remote testimony via live videoconference:

> The risk that some witnesses might be unable to attend trial does
> not require a continuance either.  Mr. Donziger states that he plans

---

[1] The defense represented that, "while not an exhaustive list," they intended to call eight witnesses from outside of New York.  *See* Dkt. 119 ("While not an exhaustive list, I can represent that the defense intends to call as witnesses, two people from Ecuador, one residing in Spain, two from Canada, one from Texas, one from Iowa, and one from California.").

Hon. Loretta A. Preska
October 14, 2020
Page 2

> to call witnesses from across the world and that securing their in-
> person attendance is complicated by health concerns and travel
> limitations. Although it is true that "[t]here is a strong preference
> for live testimony" at trial, *United States v. Int'l Bus. Machines
> Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y.), it is equally true that
> criminal defendants "ha[ve] no constitutional right to present
> evidence through live, in-person testimony only," *United States v.
> Saipov*, 412 F. Supp. 3d 295, 299 (S.D.N.Y. 2019). <u>For any
> defense witness who is unable to attend trial in-person or whose
> attendance would be unduly burdensome for COVID-19 related
> reasons, Mr. Donziger may move to admit his or her testimony via
> live video, and the Court will consider those applications on a
> case-by-case basis</u>.

Dkt. 124 at 5-6 (emphasis added). The Court also directed counsel in its August 17, 2020 order
to confer "regarding any witness whose testimony they propose to introduce via video and
inform the Court by letter no later than August 24 as to how they propose to proceed." Dkt. 124
at 14.[2]

On August 31, 2020, the defense submitted a letter identifying thirty-three witnesses the
defense proposed to testify "via online videoconferencing," but did not make any individualized
showing as to each potential witness beyond stating their names and locations.[3] Dkt. 153. The
Government responded on September 1, 2020 that because "the defense offers no explanation as
to why these witnesses should be allowed to testify remotely, or a proposed procedure for such
testimony to ensure the sanctity of the criminal proceedings, the defense request should be
denied without prejudice to renewal upon providing more information to the Court." Dkt. 156.
The Government's September 1, 2020 letter cited to several cases setting forth the various
criteria courts have considered in determining whether to allow videoconference testimony at

---

[2] The Government moved on August 22, 2020 to permit the testimony, via two-way live video, of David Zelman and
made a specific proposal as to how that would proceed citing caselaw on that issue. Dkt. 134. In support of that
motion, the Government cited to: COVID-19 and its impact on Mr. Zelman, including a letter from Mr. Zelman's
doctor indicating that his age and health condition placed him at heightened risk of complications from COVID-19,
and the fact that he lives in Dallas, Texas—a COVID hotspot subject to New York State's 14-day quarantine
restriction. On August 31, 2020, the Court granted that motion, over the defendant's opposition. Dkt. 152.

[3] On August 24, 2020, Richard Friedman sought an extension of time of the August 24 deadline, stating "we are still
trying to figure out which provider will be employed, and what is feasible in terms of using that provider to connect
with our witnesses" and – despite previously identifying several prospective witnesses located outside of New York
– that the defense also needed the Government's exhibit and witness list before deciding who they might call. Dkt.
136. On August 25, 2020, the Court ordered that "In order to give the special prosecutors time to respond and the
Court time to decide, Mr. Donziger shall identify any witnesses whom he wishes to call by videoconferencing no
later than Friday, August 28 at noon New York Time." Dkt. 139. Following Mr. Friedman and Ms. Littlepage's
August 27, 2020 disqualification from the case—after Donziger declined to waive a potential conflict "at this time"
(*see* Dkt. 149 at 4)—on August 28, 2020 Lauren Regan requested an additional extension of time to identify
witnesses whom the defense proposed to call for remote videoconference testimony, and the Court ordered this list
to be submitted by August 31, 2020. Dkt. 151.

Hon. Loretta A. Preska
October 14, 2020
Page 3

trial by defense witnesses, including: whether the witnesses were unavailable, the materiality of the testimony, availability of extradition, and the procedures for the proposed remote testimony. Dkt. 156 at 1-2.   On September 2, 2020, the Court directed the defense to update their witness list by no later than September 4 at 12:00 p.m. "with a letter explaining "on a 'case-by-case basis' why each witness 'is unable to attend trial in person' or why their 'attendance would be unduly burdensome.'" Dkt. 161.

On September 4, 2020, the defense provided a list of nine witnesses located in and outside of the United States with "reasons for being unable to travel to New York." Dkt. 166.[4] The defense requested that "all witnesses currently outside the U.S. should be allowed to testify remotely" due to the pandemic and risks of travel. *Id.* at 3.

Following the continuance of this trial from September 9 to November 4 (*see* Dkts. 168, 172), the Court on September 16, 2020 ordered in relevant part as follows:

> …Mr. Donziger shall comply with the Court's September 2 order directing him to submit a list of witnesses whose testimony the defense proposes to introduce at trial by video. (See dkt. nos. 124, 161, 166.) <u>For each such witness, Mr. Donziger shall describe the subject matter of the expected testimony and the reason why remote testimony is needed.</u> Finally, the parties are advised that the November 4 trial date in this case is firm and will not be modified.

Dkt. 173 (emphasis added).  The Court then ordered the parties to appear for an October 5, 2020 conference "on representation issues and trial witnesses" in advance of the November 4 trial. Dkt. 174.  Prior to the October 5 conference, the defense did not make any filing as directed by the September 16 Order.

At the October 5 conference, with respect to the issue of remote witness testimony, the Government stated that while it did not, in principle, have an objection to remote testimony by defense witnesses, the Government may have an objection depending on the procedures by which that testimony might occur, particularly for foreign witnesses beyond the jurisdiction of the Court, and that for any proposed witness the defense would need to make some proffer as to the subject matter of the proposed testimony for a materiality assessment.  *See* Dkt. 176 at 3-5, 28-29.

On the issue of disclosing the subject matter of the testimony for witnesses who may testify remotely, the defense took the position that "[w]e do not intend to disclose a proffer of our

---

[4] The witnesses identified in the September 4, 2020 letter are: (1) Simon Taylor (Barcelona, Spain); (2) Aaron Page (Iowa City, Iowa); (3) Paul Paz y Mino (Oakland, California); (4) John Phillips (Toronto, Canada); (5) Emil Chavez (Ecuador); (6) Domingo Peas (Ecuador); (7) Juan Pablo Saenz (Ecuador); (8) Patricio Salazar-Cordova (Ecuador); and (9) Luis Yanza (Ecuador).  With respect to the identified Ecuadorian witnesses defense counsel noted that she had "made initial contact with a representative of the indigenous Ecuadorians."  *See* Dkt. 166 at 3.

Hon. Loretta A. Preska
October 14, 2020
Page 4

witness testimony in advance of this criminal trial." *Id.* at 28.  The defense also indicated that the nine witnesses listed in the defense's September 4 letter may not be the universe of defense witnesses that cannot testify in-person and for whom videoconference testimony may be an option.  *Id.* at 32.  The Court directed the defense to update its September 4 list of the witnesses that the defense may seek to have testify via videoconference.  *Id.* at 32.  The parties agreed to confer on the issue of remote testimony by defense witnesses and report back to the Court.  The parties conferred twice on this issue.  We understand that the defense will be submitting a letter on this issue later this week.

### B.  Discussion

Pursuant to the Government's August 5 and September 1, 2020 letters, Dkts. 116, 156, and as stated at the October 5, 2020 conference, the Government does not object in principle to testimony by defense witnesses via remote videoconference, depending on: (1) the circumstances of each witness, including the materiality of the testimony; and (2) the measures put in place to safeguard the important interests at stake in criminal proceedings.[5]  To the extent that the defense has a legitimate reason for not revealing to the Government, at this stage, the subject matter of a particular witness's proposed testimony and its materiality to this proceeding, the Government proposes that the defense make such a showing *ex parte* to the Court.  *See United States v. Banki*, No. 10 Cr. 08, 2010 U.S. Dist. LEXIS 27116, at *10 n.4 (S.D.N.Y. Mar. 23, 2010) (stating that the Court was willing to hear from the defense *ex parte* on the materiality of a particular witness's testimony "to avoid early disclosure of his defense").  This Court has already directed that the defense needs to make applications for remote testimony on a case-by-case basis, and that has yet to be done, including a demonstration of materiality and safeguards in place to ensure the reliability and integrity of the proceedings.

With respect to the appropriate procedure, for defense witnesses who reside in the United States but who would be unable to attend trial in-person in New York or whose attendance would be unduly burdensome for COVID-19 related reasons, we propose that they testify via two-way videoconference at a federal courthouse closest to their residence, with court personnel present to administer the oath.  Our understanding is that this procedure would allow for the District Court's "in-house" videoconferencing technology to be used.  This parallels the procedure that the Court approved for remote testimony from a Government witness.  *See* Dkt. 152 at 3, 6-7.

With respect to witnesses who reside outside the United States, we submit that the defense must propose procedures that will preserve the sanctity of criminal proceedings, such as taking the testimony of witnesses at the nearest United States embassy or consulate in the presence of a consular officer.  In addition, to the extent the defense proposes testimony from a witness that cannot be extradited to the United States, the defense should specifically address procedures to ensure the reliability of that witness's testimony given that there would be no penalty for perjury.  Of particular note, Ecuador has a constitutional prohibition against

---

[5] The Government reserves the right to move to preclude any testimony that does not satisfy the law and the Federal Rules of Evidence.

Hon. Loretta A. Preska
October 14, 2020
Page 5

extradition of its citizens. *See* Report on International Extradition Submitted to Congress, U.S. Dep't of State (*available at* https://2009-2017.state.gov/s/l/16162.htm) ("Ecuador has a constitutional prohibition against the extradition of its citizens."). Thus, absent some showing by the defense otherwise, the Government expects to take the position that without the means to extradite any Ecuadorian citizen from Ecuador, a proposal to take such witnesses' testimony remotely in that country would "essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony." *United States v. Buck*, 271 F. Supp. 3d 619, 623-24 (S.D.N.Y. 2017) (denying defense application to present trial testimony from witnesses in Switzerland via videoconference); *see also United States v. Banki*, No. 10-cr-08, 2010 U.S. Dist. LEXIS 27116, *7-8 (S.D.N.Y. Mar. 23, 2010) (denying defense application to present trial testimony via video from witnesses in Iran because the U.S. has "no diplomatic relations with Iran and no means to extradite even U.S. citizens residing within its borders" meaning the "oath becomes nothing more than an empty recital").

The need for a case-by-case showing is highlighted by the example of Luis Yanza, a proposed defense witness who was mentioned at the October 5 conference. Yanza, an Ecuadorian citizen, is a defaulted defendant in the Civil Case, 11 Civ. 691. *See* Civ. Dkt. 1985. Yanza's role in the corrupt and fraudulent activities that led to the Ecuadorian Judgment and which supported entry of the RICO Judgment against Donziger, were featured prominently in the March 4, 2014 opinion accompanying the RICO Judgment, including: (1) Yanza's role in setting up and using a secret Ecuadorian bank account to make covert payments to a purportedly independent expert appointed by the Ecuador court in order to influence that expert's work; and (2) Yanza's presence at a meeting with Donziger in which a bribe to the presiding Ecuadorian judge was discussed. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 428, 432-33, 514 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017). Yanza's participation in the fraud and corruption is also documented in the decision by the international arbitration panel in The Hague. *See, e.g.*, Civ. Dkt. 2082-1, ¶¶ 4.301-4.303 (payments to court-appointed expert were "made corruptly as bribes" by Plaintiffs' representatives including Donziger and Yanza). Given the prior findings about Yanza, the inability to extradite him, his failure to appear in the United States for the Civil Case and his status as a defaulted defendant in that case, we oppose remote testimony by Yanza at this time. However, the defense nonetheless should have an opportunity to make a particularized showing with respect to Yanza (and each of the other defense witnesses for whom remote testimony is sought), as we already made clear in our August 5 and September 1 letters, and as this Court already directed in orders dated August 17, September 2, and September 16.

Hon. Loretta A. Preska
October 14, 2020
Page 6


Accordingly, for the reasons set forth above, the Government requests that the defense expeditiously make a case-by-case showing of the need for remote testimony and propose procedures for the taking of such remote testimony of each particular witness at issue to ensure the sanctity of criminal proceedings.  The defense has been on notice of the issue of remote testimony since August 2020 and the November 4 trial date is three weeks away.


Respectfully submitted,


_____/s/_____
Rita M. Glavin
Brian Maloney
Sareen K. Armani
*Special Prosecutors on behalf of
the United States*