**Report of monitors:** *United States v. Steven Donziger*, No. 19-CR-561 (LAP); 11-CIV-691 (LAK), United States Federal Court, South New York Trial Division

*Pilot Project to establish*
*International Monitoring Panels to Evaluate Trials in the United States (IMPETUS)*

**Monitors' report of hearing held 5 October 2020 at 11:30 am eastern Southern District of New York, 500 Pearl Street, New York, NY 10007, Courtroom 12A. A pre-trial conference on representation issues and trial witnesses**

**Report released 27 October 2020.**

# Contents

1. **Introduction** ............................................................................................................................ 2
   a. Background and purpose of the IMPETUS monitoring team .......................................... 2
   b. Method ............................................................................................................................ 2
   c. Overview of this report ................................................................................................... 3
2. **Summary of the hearing** ........................................................................................................ 3
   a. Opening statement by Judge Preska ............................................................................... 3
   b. Trial issues and logistics ................................................................................................. 4
   c. Motion to reconsider the trial date of 4 November 2020 ............................................... 5
3. **Concluding observations** ...................................................................................................... 8
   a. The right to liberty .......................................................................................................... 8
   b. The right to a fair trial before a competent, independent and impartial tribunal ........... 9
      i. Impartiality of the judge ............................................................................................. 9
      ii. Fairness of the prosecutor ....................................................................................... 10
   c. The right to defend oneself or through legal counsel of choice ................................... 11
   d. Equality of arms ............................................................................................................ 12
   e. The presumption of innocence ...................................................................................... 12
   f. The right to a public hearing ......................................................................................... 13
   g. The novel situation of the COVID-19 pandemic .......................................................... 14
4. **Biographies of monitoring team members** ........................................................................ 14

# 1. Introduction

### a. Background and purpose of the IMPETUS monitoring team

An international monitoring panel was convened in late August 2020 to monitor the trial of *United States v. Steven Donziger*, No. 19-CR-561 (LAP); 11-CIV-691 (LAK), United States Federal Court, South New York Trial Division (the "Donziger Proceedings"). Members of the monitoring panel (the "Monitoring Team") include:[1]

- Stephen Rapp, United States Ambassador-at-Large (ret.), who headed the Office of Global Criminal Justice in the United States State Department (2009-2015);
- Catherine Morris, Executive Director, Lawyers' Rights Watch Canada (LRWC);
- Nykeeba Brown, J.D, LL.M., New York; and
- Etienne C. Toussaint, Associate Professor of Law, University of the District of Columbia.

The Donziger Proceedings are being monitored as part of a developing initiative by the above-named persons to establish international monitoring panels to evaluate trials in the United States ("IMPETUS"). Each IMPETUS team member is monitoring the proceedings in their personal capacity and has agreed to perform the work in an independent and impartial manner without instructions from any person, group, or organization.

### b. Method

The co-chairs of the Monitoring Team, Mr. Rapp and Ms. Morris, wrote to the presiding judge, the Honorable Loretta A. Preska, on 2 September 2020 to notify her of the Monitoring Team's intention to impartially and independently monitor the Donziger Proceedings in accordance with the OSCE Trial Monitoring manual[2] and using the legal standards set out in international law binding on the United States, including the *International Covenant on Civil and Political Rights* (ICCPR)[3] ratified by the United States in 1992, applicable customary international law, and other relevant international human rights standards. No response to this letter was received.

IMPETUS Monitoring Team members have read summaries or transcripts of several applications and hearings in this case. Members of the Monitoring Team remotely monitored the 5 October 2020 hearing by means of audio telephone conference. The Monitoring Team also reviewed the official transcript of the hearing. This report of the hearing held 5 October 2020 at 11:30 am eastern at the Southern District of New York, 500 Pearl Street, New York, NY 10007, Courtroom 12A (the "Report") has been reviewed by all members of the IMPETUS Monitoring Team.

---

[1] Biographies of team members are set out on page 15 of this report.
[2] Organization for Security and Co-operation in Europe (OSCE), Trial Monitoring: A Reference Manual for Practitioners, Revised edition. OSCE, 2012, available at: https://www.osce.org/odihr/94216.
[3] UN General Assembly, *International Covenant on Civil and Political Rights*, 16 December 1966, United Nations, Treaty Series, vol. 999, p. 171, available at: https://www.ohchr.org/en/professionalinterest/pages/ccpr.aspx.

### c. Overview of this report

This report includes a brief summary of the hearing held 5 October 2020 at 11:30 am eastern at the Southern District of New York (the "Hearing") and provides concluding observations on the following international law topics, primarily ICCPR Articles 9 and 14:

- The right to liberty;
- The right to a fair hearing before a competent, independent, and impartial tribunal;
- The right to defend oneself or through legal counsel of choice;
- Equality of arms;
- The presumption of innocence;
- The right to a public hearing (public attendance); and
- The novel situation of the COVID-19 pandemic.

Please note that underlines in the text below have been added to indicate and emphasize issues discussed in the concluding observations of the Report.

## 2. Summary of the hearing

The Hearing was before Judge Loretta A. Preska. The defendant, Steven Donziger, was present in the courtroom. Counsel for the defendant, Ms. Lauren Regan, was not present in the courtroom, as she resides in Oregon, and is subject to COVID-19 travel restrictions. Ms. Regan was present via video conference. Counsel for the defendant, Mr. Martin Garbus, was present via telephone. Special Prosecutors Ms. Rita Glavin, Ms. Sareen Armani, and Mr. Brian Maloney were present in the courtroom.

No legal representative for Mr. Donziger was present in the courtroom. It appeared to the Monitoring Team that any necessary or desired private communication during the Hearing between Mr. Donziger and his lawyers was to occur either by telephone or video conference. (See sections on choice of counsel and equality of arms below.)

Three matters were considered during the Hearing:

- Discussion of trial issues and logistics, including the representation and video testimony of witnesses.
- A motion by defense counsel to reconsider the decision to hold the trial starting 4 November 2020. The motion was denied.
- A motion by Mr. Martin Garbus to withdraw as defense co-counsel. The motion was granted.

### a. Opening statement by Judge Preska

Prior to hearing submissions from counsel, Judge Preska made an opening statement clarifying that the purpose of the Hearing was to discuss representation issues for the upcoming trial on 4 November 2020. The original trial date had been set for 9 September 2020. On 4 September

2020, the trial was adjourned until 3 November. On 16 September 2020, the trial was adjourned until 4 November 2020.

Judge Preska declared that the trial would be held on 4 November 2020 and would not be adjourned. Included in Judge Preska's opening statement was the following comment made directly to the defendant:

> "… I'm informing you again, Mr. Donziger, that the trial will not be further adjourned. You will not be permitted to manipulate the proceedings by your choice or nonchoice of counsel. So the November 4 trial date is a firm date."[4] (See concluding observations on judicial impartiality and choice of counsel below.)

At the 5 October 2020 Hearing, Judge Preska reviewed the reasons for her previous decision to set the trial date on 4 November 2020. Mr. Donziger's previous counsel of record, Mr. Richard Friedman and Ms. Zoe Littlepage, had been removed on 28 August 2020 because Mr. Donziger had declined to waive his right to future appeals on the grounds of potential conflicts of interest arising from his previous legal representation by Mr. Friedman and Ms. Littlepage. On 4 September 2020, Mr. Frisch was also allowed to be removed as counsel from the record. The judge set the trial for 70 days later, 3 November 2020, "a presumptively adequate time to prepare for trial, particularly because the order to show cause filed in the civil case was filed on July 31 of 2019, and in the criminal case, was filed on August 5 of 2019."[5] The judge noted that Mr. Donziger was entitled to represent himself. (See concluding observations on choice of counsel and equality of arms below.)

### b. Trial issues and logistics

The special prosecutor and defense counsel made submissions to the court regarding the logistics and procedures to be used for video witness testimony. The judge requested that counsel confer with one another about the logistics and procedures, and provide their recommendations to the judge by Friday, 9 October 2020.

The special prosecutor, Ms. Glavin, raised concern about the integrity of the testimony of witnesses from Ecuador, particularly one witness whom she stated to be,

> "… a defaulted defendant in the civil proceeding. So we would have concerns about the integrity of that testimony, particularly given some of the findings of his involvement in the conduct in the civil case in Ecuador that led to the injunction being issued and affirmed by the Second Circuit..."

Ms. Glavin stated that she wished to know the nature of the witnesses' testimony, asking, "[a]re they fact witnesses or are they character witnesses? If they are fact witnesses, what is the

---

[4] USA v. Donziger {11cv691}, Criminal Court Docket Sheet, Southern District of New York, 1:2019-cr-00561-520591 (nysd), Minute Entry for proceedings held before Judge Loretta A. Preska: Status Conference as to Steven Donziger held on 10/5/2020. Transcript of hearing 5 October 2020, p. 3.
[5] On 16 September 2020, the trial was adjourned to 4 November 2020.

<u>materiality</u> of the testimony?" (See concluding observations on equality of arms and presumption of innocence below.)

Later in the Hearing, defense counsel Ms. Regan (after making arguments in support of a motion to reconsider the trial date), suggested that it "<u>seems, perhaps, slightly racist</u>" for the prosecutor to single out witnesses from Ecuador for concern about the reliability of testimony, as the prosecutor did not raise similar concern about foreign witnesses from Barcelona and other countries. The prosecutor replied that defense counsel had proposed

> "… a witness list of 33 people… to be testifying remotely, nine of whom reside in New York, so I don't understand why they can't show up at the trial. And so I just don't – there's <u>a lot of mischaracterizations, and I think accusations, which are inflammatory</u> <u>that are being tossed out, particularly racism.</u>" (See concluding observations on equality of arms, presumption of innocence, and the novel situation of the COVID-19 pandemic below.)

Ms. Regan replied that when she produced the initial witness list, she was "forced to produce that list under deadline" and "wanted to err on the side of caution, because of the pandemic, to ensure that even the New York individuals had the option if they were a vulnerable status." The prosecutor and the judge urged both the prosecutors and defense counsel to work out matters regarding the conditions of remote testimony like "officers of the court." The judge requested a report from counsel by 9 October 2020.[6]

### c. Motion to reconsider the trial date of 4 November 2020

Defense counsel Ms. Regan made arguments concerning her limited engagement in the matter and lack of time to prepare adequately for a trial on 4 November 2020. Ms Regan then asked for a reconsideration of the ruling of 16 September 2020 in which the trial date was changed from 3 November 2020[7] (the United States national Election Day) to 4 November 2020.[8] At the Hearing, the defense denied using "machinations" in their pre-trial defense strategy. The background concerning the use of this term by the judge is relevant to this Hearing and relates to a 3 September 2020 hearing of an application for recusal of the judge, in which Judge Preska stated:

> "That we find ourselves in this situation [of postponing the trial date] is deeply disturbing, especially given the Court's view that it is largely the result of the

---

[6] Subsequent to the 5 October 2920 hearing, several submissions and orders have been made, available at: https://www.docketbird.com/court-cases/USA-v-Donziger-11cv691/nysd-1:2019-cr-00561-520591.

[7] *USA v. Donziger* {11cv691} Criminal, Southern District of New York, nysd-1:2019-cr-00561-520591; ORDER as to Steven Donziger, 16 September 2020, available at: https://www.docketbird.com/court-documents/USA-v-Donziger-11cv691/ORDER-171-LETTER-MOTION-as-to-Steven-Donziger-Before-the-Court-is-Mr-Donziger-s-letter-dated-September-14-2020-asking-the-Court-to-recuse-itself-For-the-foregoing-reasons-Mr-Donziger-s-motion-to-disqualify-the-Court-dkt-no-171-is-DENIED-and-the-start/nysd-1:2019-cr-00561-520591-00172

[8] Available at: https://www.docketbird.com/court-documents/USA-v-Donziger-11cv691/ORDER-171-LETTER-MOTION-as-to-Steven-Donziger-Before-the-Court-is-Mr-Donziger-s-letter-dated-September-14-2020-asking-the-Court-to-recuse-itself-For-the-foregoing-reasons-Mr-Donziger-s-motion-to-disqualify-the-Court-dkt-no-171-is-DENIED-and-the-start/nysd-1:2019-cr-00561-520592-00172.

<u>machinations of Mr. Donziger and his legal team</u> (not including Mr. Frisch). Regrettable as it is, the Court concludes that it must grant Mr. Frisch's motion and postpone the upcoming trial."[9]

In a 16 September 2020 ruling, Judge Preska adjourned the hearing to 4 November 2020, denying the application to move the date to 7 December to allow the defendant's chosen pro bono criminal defense lawyer, Mr. Ronald Kuby, to be present at trial. At the 16 September 2020 hearing, Judge Preska also ruled against the defense motion that the judge recuse herself on the grounds of bias, stating:

"Mr. Donziger also argues that recusal is required because the Court has "mistreat[ed]" him and showed "[f]avoritism" to the Government, including by using the word <u>"machinations"</u> to describe aspects of Mr. Donziger's litigation strategy, imposing conditions on his pretrial release, and postponing trial to November 3, which is election day <u>and earlier than Ronald Kuby (Mr. Donziger's counsel of choice who, the Court notes, has not yet filed a notice of appearance) would prefer</u>."[10] (See concluding observations on choice of counsel below.)

Ms. Regan argued that she is now the defendant's only lawyer due to the 28 August 2020 Curcio (conflict of interest) ruling removing two other defense lawyers from the record due to the defendant's decision not to waive the lawyers' potential conflicts of interest. Ms. Regan further argued, "<u>Ms. Glavin has three lawyers working on this case for about a year. I am currently the only lawyer of record working on this case.</u>"

Ms. Regan noted that she was originally retained for one specific part of the defence and was one of four attorneys representing Mr. Donziger. She stated that she is "not prepared to move forward with a trial on November 4th, the day after [the United States] Election Day."[11] (See concluding observations on equality of arms and choice of counsel.)

The special prosecutor argued that her delay in bringing the Curcio application until 11 August 2020 (four weeks before the then scheduled trial date) was a result of her having been

"<u>lulled by the defense</u> into believing Mr. Donziger would waive [his rights]. That didn't happen, as is Mr. Donziger's right, but I want to make clear for the record that there was <u>no abuse or intent to hurt Mr. Donziger</u> here." (See concluding observations on presumption of innocence and equality of arms.)

The special prosecutor also denied that the case was complicated, indicating that she planned to call 8 to 10 witnesses, "some of which might be lengthy." The Special Prosecutor also set out the

---

[9] *USA v. Donziger* {11cv691} Criminal, Southern District of New York, nysd-1:2019-cr-00561-520592, ORDER as to Steven Donziger: Mr. Frisch's motion to vacate (dkt. no. 157), 3 September 2020, available at: https://www.docketbird.com/court-documents/USA-v-Donziger-11cv691/ORDER-as-to-Steven-Donziger-Mr-Frisch-s-motion-to-vacate-dkt-no-157-is-GRANTED-and-trial-is-adjourned-to-November-3-2020-at-10-00-a-m-in-Courtroom-12A-or-such-other-courtroom-as-is-designated-Counsel-shall-confer-and-inform-the-Court-whether-they-wis/nysd-1:2019-cr-00561-520592-00168

[10] *USA v. Donziger* 16 September 2020, supra note 8.

[11] Transcript of hearing 5 October 2020, supra note 5, Page 7.

charges and made <u>arguments as to the relevant issues and the facts to be determined at trial</u>, stating that the matter was "not the complex case that it is being made out to be."[12] (See concluding observations below on choice of counsel.)

Defendant's counsel further argued, "<u>It's not for the prosecutor to determine what the defenses should or could be,</u>" and adding, "<u>I don't think Ms. Glavin's reframing of the criminal defense in this case or the complexity of the issues is fair to the defendant.</u>"[13]

Ms. Regan further argued that "trying to defend Mr. Donziger via Jabber [online conferencing system] from across the country, <u>that just does not seem like effective assistance of counsel</u>…"

Mr. Donziger asked to be heard, and Judge Preska consented. Mr. Donziger stated:

> "[O]n the issue of counsel, since I am the person accused here, and these are my rights, and the Sixth Amendment [of the United States Constitution] is designed to provide fairness for the defendant, I don't understand – and I would really ask for you to explain – what the difference is between November 4th and December 7th, when November 4th is 15 months since I was first in your court, which was August 6th of last year, and December 7th is 16 months. <u>I need counsel that can do this case that can actually be in court. This is not machinations.</u>" (See section below on right to counsel and impartial tribunal.)
>
> "<u>If the Curcio hearing was real, and I chose not to waive my right, that's my right, it has to be respected</u>. I thought we were going to come in on September 17th, when this proceeding was asked for by Ms. Glavin. Your Honor postponed that hearing, and we have spent a lot of time – <u>I thought we were going to come in today and discuss a reasonable way to proceed, so I could be properly represented, but you came in today and made your decision before you heard argument.</u> And I would ask again, please, to reconsider whether this is the prudent way to proceed. It would seem to be in everyone's interests – obviously, mine, but also yours, the Court's – to have a proceeding <u>where I can be properly represented</u>." (See concluding observations on presumption of innocence and impartiality of tribunal.)
>
> "<u>Ms. Regan is unsure if she can get here and, in any event, can't do it alone. Mr. Kuby is a New York lawyer; we don't have the COVID issue with him because he's here. He can definitely do it on December 7th.</u> <u>For him to do it on December 7th, it would be – It's imperative, I think, that the Court make that determination today or this week, so he can start working,</u> because once we get closer to November 4th, and it's going to be – you know, if it becomes obvious I'm not going to be properly represented, then that December 7th date is at risk of being delayed. So I would ask the Court to please do the reasonable thing here and let me have the counsel of my choice." (See concluding observations under choice of counsel and adequate of time to prepare.)

---

| | |
|---|---|
| 12 | Transcript of hearing 5 October 2020, supra note 5, Page 15-16 |
| 13 | Transcript of hearing 5 October 2020, supra note 5, Page 16. |

Page **7** of **15**

> "You know, I came in on August 27th, it was the second day of the Curcio hearing, and in good faith, I had an affidavit from Mr. Kuby. In other words, <u>between the Monday and the Thursday of those two aspects of the hearing, when I got my independent advice – and it's unfair of Ms. Glavin to blame me, I didn't understand what the Curcio, the significance was, until I got independent advice that week</u>. When I came in on the 27th in anticipation of potentially not waiving, I came in with a reasonable alternative to have the trial on December 7th. It really doesn't make a huge difference to the scheduling. I'm still – <u>my conditions of pretrial release, which are quite onerous</u>. I would ask that the Court please put down a trial for December 7th, and Mr. Kuby can enter his notice of appearance immediately or within a couple of days, and Ms. Regan can do the case with him. <u>If she can't get here, he at least can be here by my side, which I believe is essential to protect my Sixth Amendment right to counsel.</u>"[14] (See comments below on presumption of innocence, right to counsel of choice, and right to liberty.)

Judge Preska denied the motion to reconsider the trial date, declaring that the issues related to the potential conflicts of interest of Mr. Friedman and Ms. Littlepage were raised in May 2020, and concluding that <u>there was no indication at the time that Mr. Donziger intended to refuse to waive the conflicts of interest</u>. According to Judge Preska, Mr. Donziger did so only after the Court declined to adjourn the trial. Judge Preska stated as of 4 September, Mr. Donziger still had 70 days to prepare and retain new counsel. According to Judge Preska, Ms. Regan's <u>"volunteer activities, whether relating to animals or elections, do not overcome counsel's duty to represent a client zealously</u>." Judge Preska concluded by stating, "November 4th is a firm date. Make no mistake about it." (See concluding observations under presumption of innocence, equality of arms and impartiality of tribunal.)

## 3. Concluding observations

### a. The right to liberty

ICCPR Article 9.3 states, "… It shall not be the general rule that persons awaiting trial shall be detained in custody, but release may be subject to guarantees to appear for trial." Article 10.1 states, "All persons deprived of their liberty shall be treated with humanity and with respect for the inherent dignity of the human person."

The Hearing on 5 October 2020 did not consider pre-trial release, but during the course of arguing for postponement of the trial date Mr. Donziger noted that his pre-trial conditions have been "quite onerous." Mr. Donziger has been under house arrest since early August 2019. Further, his passport has been seized and his appearance in court has been guaranteed with a bail bond of US$800,000. The maximum jail sentence is 6 months for the misdemeanor offence with which he is charged.

---

[14] Transcript of hearing 5 October 2020, supra note 5, Page 20-21.

### b. The right to a fair trial before a competent, independent and impartial tribunal

The comments in this Report relate only to matters considered or mentioned during the Hearing held on 5 October 2020. Other issues related to judicial independence will be addressed in a subsequent report.

### i. Impartiality of the judge

The ICCPR requires the impartiality of judicial proceedings. The UN *Principles on the Independence of the Judiciary*[15] stipulate,

> "2. The judiciary shall decide matters before them impartially, on the basis of facts and in accordance with the law, without any restrictions, improper influences, inducements, pressures, threats or interferences, direct or indirect, from any quarter or for any reason.
>
> [..]
>
> 6. The principle of the independence of the judiciary entitles and requires the judiciary to ensure that judicial proceedings are conducted fairly and that the rights of the parties are respected."

In this Hearing, the judge provided adequate time to each party to speak and respectfully allowed each party to deliver complete statements without undue interruption. However, some of the judge's comments and responses to the parties' statements raise questions regarding impartiality.

First, the judge appeared to have prejudged issues of effective representation, counsel of choice, adequate opportunity to prepare, and adequate opportunity to confer with counsel during the Hearing which, inter alia, was evidenced in the judge's opening statements in court on 5 October.

Second, in this Hearing, the defendant, due to lack of counsel present in the courtroom, did not have adequate opportunity to confer in private with his counsel except by interrupting the proceedings to use the telephone. Instead, the defendant chose during the Hearing to make several direct submissions to the judge. The defendant expressed concern that he did not have counsel by his side during the trial. The judge did not respond to the defendant's question as to the judge's reasons for not allowing the hearing to be adjourned to 7 December to ensure that the defendant could (1) obtain competent counsel of choice and (2) confer privately with counsel without the necessity of interrupting the proceedings to use the telephone.

Third, the judge's reasoning related to the selected trial date suggested that the judge believed that the defendant Mr. Donziger was to blame for the timing of the prosecutor's Curcio application to remove two of his lawyers. Based upon the Monitoring Team's observation, it appeared that the judge's reasons were based, at least in part, on Mr. Donziger's decision not to

---

[15] UN Commission on Human Rights, *Independence and impartiality of the judiciary, jurors and assessors and the independence of lawyers.*, 19 April 1996, E/CN.4/RES/1996/34, available at: https://www.ohchr.org/EN/ProfessionalInterest/Pages/IndependenceJudiciary.aspx

voluntarily waive his constitutionally protected rights. Judge Preska's use of terms such as "manipulation" give rise to an appearance of judicial bias.

Finally, the judge's lack of intervention during some of the prosecutor's statements give rise to concerns about the independence of the tribunal.[16] (See below under fairness of the prosecutor.)

This Report is limited in scope and does not address elements of judicial impartiality and independence beyond the face of the record of this Hearing. Other elements of impartiality and independence arising in this case may be addressed in a subsequent report.

### ii. Fairness of the prosecutor

According to the UN *Guidelines on the Role of Prosecutors*,[17] the prosecutor plays a crucial role in the administration of justice, including "equality before the law, the presumption of innocence and the right to a fair and public hearing by an independent and impartial tribunal."

The UN Guidelines specifically provide,

> "12. Prosecutors shall, in accordance with the law, <u>perform their duties fairly</u>, consistently and expeditiously, and respect and protect human dignity and <u>uphold human rights</u>, thus contributing to ensuring due process and the smooth functioning of the criminal justice system.
>
> 13. In the performance of their duties, prosecutors shall:
>
> (a) Carry out their functions <u>impartially</u> and avoid all political, social, religious, racial, cultural, sexual or any other kind of <u>discrimination</u>;
>
> (b) Protect the public interest, act with objectivity, take proper account of the position of the suspect and the victim, and pay attention to all relevant circumstances, irrespective of whether they are to the advantage or disadvantage of the suspect;"

It is of concern that the prosecutor took a significant amount of time during this pre-trial Hearing to comment on issues of evidence in a pre-trial hearing about the nature and merits of Mr. Donziger's defenses. The prosecutor's commentary and arguments on the merits were not challenged by the judge. The defense counsel's allegations of prosecutorial discrimination in the characterization of Ecuadorian witnesses were not addressed substantively, except for the prosecutor's raising of concern about Ms. Regan's allegation of "racism" as "mischaracterizations" that were "inflammatory." Ms. Regan's allegation was in response to the prosecutor's singling out the Ecuadorian witnesses, including characterizing one of the Ecuadorian witnesses as a "defaulted defendant," the testimony of whom was of "concern" regarding the possibility of extradition in the event of perjury.

---

[16] See Article 6 of the *Principles on the Independence of the Judiciary*, *supra* note 16.
[17] UN Guidelines on the Role of Prosecutors, Adopted by consensus by the Eighth UN Congress on the Prevention of Crime and Treatment of Offenders on 7 September 1990, available at: https://www.ohchr.org/en/professionalinterest/pages/roleofprosecutors.aspx.

The Monitoring Team observed that the judge did not intervene during this exchange other than to state:

> "Counsel, counsel, counsel, it is traditional – counsel, it's traditional that when testimony is given out of the country, even in a civil deposition, that it be <u>given in the United States embassy, with various other safeguards</u>."

### c. The right to defend oneself or through legal counsel of choice

There are significant concerns regarding whether Mr. Donziger will have adequate opportunity to mount an effective defense through the legal representative of his choice. It is of concern that Mr. Donziger may not be able to have any legal representative present with him in court, which may hamper his ability to confidentially consult with his lawyers. The Monitoring Team did not hear any consideration by the judge of the possibility that the fully remote and virtual participation of the defendant's legal counsel will infringe upon the defendant's ability to defend himself. As a result, the Monitoring Team observes that this arrangement may be highly prejudicial to the defendant and compromise his ability to defend himself.[18]

The Monitoring Team notes that in the absence of defense counsel present in the courtroom during this Hearing, Mr. Donziger felt it necessary to make submissions at various points during the proceedings. The Monitoring Team observes that these submissions occured without the recommendation or benefit of counsel.

Further, the judge addressed the defendant directly in her opening statement, rather than addressing his lawyer. This is not customary practice in such proceedings. Based upon the Monitoring Team's review of the record, Mr. Donziger has repeatedly indicated that he wishes to retain effective counsel of his choice. He has never indicated a desire to represent himself, stating that he is not a criminal lawyer and thereby does not have the professional competence to lead his case. The Monitoring Team did not observe any substantive consideration of these concerns by the judge during this Hearing, which calls into question the integrity of the defendant's internationally protected right to effective counsel of choice, which right is enshrined in the Sixth Amendment of the United States Constitution.[19]

---

[18] Legal scholars have recently begun to discuss the way video and telephonic conferencing may infringe upon the ability of counsel to provide effective legal representation. See, e.g., Jenia Turner, "Remote Criminal Justice," *Tex. Tech. L. Rev.* (forthcoming 2021), in which the author states: "Videoconferencing can also affect the ability of counsel to provide effective representation to the defendant. Effective representation includes the ability to confer with counsel before and during the proceedings. Many video platforms do not permit the defendant and counsel to confer privately during a remote proceeding. For such consultation to occur, proceedings have to be stopped, and the lawyer has to call the client by phone, typically from a separate room."

[19] See, e.g., *Seymour v. State*, 582 So. 2d 127, 128 (Fla. Dist. Ct. App. 1991) ("It is of vital importance that a defendant have the opportunity to engage in personal and private conference with his counsel to resolve the numerous problems and misunderstandings that can develop during the course of pre-trial proceedings.").

### d. Equality of arms

The principle of equality of arms is fundamental to fair trial and guaranteed by the ICCPR Article 14.1, which states, "All persons shall be equal before the courts and tribunals."

In this case, there is significant concern that the defendant may not have effective legal counsel available to represent him during the trial. It is also of concern that Judge Preska appears to attribute blame to Mr. Donziger or his lawyers for this situation, adopting the prosecutor's arguments and characterizations in various statements in open court. For example, the judge stated that:

- Mr. Donziger is entitled to represent himself, in disregard for the lack of any statement the defendant's willingness to do so, and contradicting statements by the defendant indicating his desire to be represented by a lawyer with professional competence in criminal law;
- the unavailability of Mr. Donziger's chosen counsel, Mr. Kuby, until 7 December 2020 is a matter of Mr. Kuby's preference;
- there was no indication that Mr. Donziger would decline to waive the potential conflict until after the Court declined to adjourn the trial date.

Judge Preska also dismissed Ms. Regan's arguments about her inability to prepare for a trial on 4 November. The judge:

- characterized Ms. Regan's role as executive director of a civil liberties organization in Oregon, which professional duties and commitments may preclude her from attending the trial in person in New York, were "volunteer activities whether relating to animals or elections [and] do not overcome counsel's duty to represent a client zealously";
- did not appear to significantly consider Ms. Regan's reasons for necessary trial preparations – "massive wild fires" that are unprecedented in that region of the United States and led to the loss of her home and destruction of surrounding communities – other than to express condolence about the damage to her property;
- stated that it was usual for United States embassies to take on the role of accommodating testimony given outside of the United States.[20]

### e. The presumption of innocence

It is the responsibility of the judge to ensure that the prosecution establishes guilt beyond a reasonable doubt. It is not up to the defense to facilitate the establishment of the prosecutor's case or to voluntarily waive rights to potential defenses that may arise in the future.

---

[20] Subsequent to the hearing, Ms. Regan provided an exhibit to the court indicating that embassies were unable to do so during the time in question. "Letter by Steven Donziger addressed to Judge Loretta A. Preska from Lauren Regan dated 10202020 re: Exhibit A--Ecuadorian Embassy," 20 October 2020, and "Letter by Steven Donziger addressed to Judge Loretta A. Preska from Lauren Regan" dated 20 October 2020, available from: https://www.docketbird.com/court-cases/USA-v-Donziger-11cv691/nysd-1:2019-cr-00561-520591.

It is a violation of the presumption of innocence to cast blame or punish a defendant or defense counsel for failing to waive the defendant's rights or failing to assist the prosecutor to remove the defendant's potential grounds for appeal. Based upon the Monitoring Team's observation, the judge adopted the prosecutor's argument that the defense was at fault for submitting a late Curcio application, which led to the removal of two of the defendant's lawyers from the case.

Further, in the Monitoring Team's observation, the prosecutor's submissions at the Hearing could reasonably be characterized as both evidence and arguments about the nature and merits of Mr. Donziger's defense. It is not customary for the prosecution to provide evidence and argumentation at a pretrial hearing before such evidence has been adduced or cross-examined at trial. The prosecutor's repeated requests in open court that the defendant provide a list of witnesses that he wished to call, and the nature of the evidence that such witnesses, would provide can undermine the right of the defendant to prepare his defense.

### f. The right to a public hearing

At this Hearing, there appeared to have been steps taken by the court to uphold the right to a public hearing, as members of the public were able to join by audio teleconference. At the Hearing, there was no discussion of the issue of the public health of the participants during the 4 November in-person trial in light of the COVID-19 pandemic.[21]

International human rights law provides that the right to a public trial may be subject to certain reasonable limits, when provided by law, for the sake of "public order (ordre public) or national security in a democratic society, or when the interest of the private lives of the parties so require…"[22] United States domestic law provides that the right to a public trial may be limited if necessary to further an overarching State interest, such as protecting public health during a pandemic.[23] However, the Supreme Court of the United States has held that "the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."[24] The Monitoring Team observes that postponement of the date of the trial could be

---

[21] Since the 5 October hearing, the following order was made by Judge Preska: "Notice Regarding Trial Attendance as to Steven Donziger. Mr. Donziger's upcoming trial will be held in Courtroom 12A of the Daniel Patrick Moynihan United States Courthouse. For social distancing purposes, gallery seating will be limited to 1 3 seats in Courtroom 12A, with 13 overflow seats available in Courtroom 15A. All seating will be available on a first-come first-served basis. Interested members of the public may also listen into the trial proceedings telephonically using the dial-in (888) 363-4734, access code 4645450. (Signed by Judge Loretta A. Preska on 10/20/2020) (ap) Modified on 10/21/2020," available at: https://www.docketbird.com/court-cases/USA-v-Donziger-11cv691/nysd-1:2019-cr-00561-520591.

[22] ICCPR, Article 14.1, *supra* note 4, which states,
"The press and the public may be excluded from all or part of a trial for reasons of morals, public order (ordre public) or national security in a democratic society, or when the interest of the private lives of the parties so requires, or to the extent strictly necessary in the opinion of the court in special circumstances where publicity would prejudice the interests of justice…"

[23] Stephen E. Smith, *"The Right to a Public Trial in the Time of COVID-19,"* 77 *Wash. & LeeL. Rev. Online* 1, 6–7 (2020), https://scholarlycommons.law.wlu.edu/wlulr-online/vol77/iss1/1.

[24] *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

considered a reasonable alternative to limiting in-person access to the proceeding during a pandemic, so long as such postponement does not have a detrimental impact.[25]

### g. The novel situation of the COVID-19 pandemic

The ongoing situation of the COVID-19 pandemic, of which New York City at one stage had the largest number of infections and deaths in the United States, was raised by Ms. Regan on several occasions during the 5 October Hearing. The inability of counsel and various witnesses residing outside of New York to travel safely during this period was submitted to the judge. There was no discussion during the Hearing of mandatory or recommended procedures to ensure the general safety of individuals in close proximity to one another speaking openly and at length, possibly over several days, inside of the courtroom.[26]

Fair trial rights in a criminal proceeding, including the ability to have witnesses appear in person to provide testimony and be subject to cross-examination, should be ensured. Receiving testimony remotely and/or virtually, especially in a criminal trial, is undesirable unless fair trial rights can be assured and where postponement will have a detrimental impact.[27] In this context, the Monitoring Team noted that Judge Preska referred to another hearing taking place in the District Court to suggest that Mr. Donziger's trial could proceed without jeopardizing the health of the participants.

## 4. Biographies of monitoring team members

Below are biographies of the members of the IMPETUS monitoring team for the Donziger Proceedings.

**Stephen Rapp**, BA (Harvard), JD (Drake), is a Distinguished Fellow at the United States Holocaust Memorial Museum's Center for Prevention of Genocide. He is also a Senior Fellow of Practice at the Center for Law, Ethics and Armed Conflict at Oxford University. He serves as Chair of the Commission for International Justice and Accountability (CIJA) and on the boards of Physicians for Human Rights, the IBA Human Rights Institute, the ABA Rule of Law Initiative, and the Siracusa International Institute for Criminal Justice and Human Rights. From 2009 to 2015, he was Ambassador-at-Large heading the Office of Global Criminal Justice in the US State Department. Rapp was the Prosecutor of the Special Court for Sierra Leone from 2007 to 2009 where he led the prosecution of former Liberian President Charles Taylor. From 2001 to 2007, he served as Senior Trial Attorney and Chief of Prosecutions at the International Criminal

---

[25] Matt Pollard, Mathilde Laronche and Viviana Grande, COVID-19 Symposium: The Courts and Coronavirus (Part I), Opinio Juris, 3 April 2020, available at: opiniojuris.org/2020/04/03/covid-19-symposium-the-courts-and-coronavirus-part-i/, and Part II, available at: http://opiniojuris.org/2020/04/03/covid-19-symposium-the-courts-and-coronavirus-part-ii/.

[26] "Social distancing" was mentioned in a subsequent order, see *supra* note 22.

[27] Pollard et al, *supra* note 26, part II. Also see United Nations Development Programme, *Ensuring Access to Justice in the Context of COVID-19. Guidance Note*, May 2020, available at: https://www.undp.org/content/dam/undp/library/km-qap/undp-bpps-rol-Access_to_Justice_and_COVID19.pdf United Nations Peacekeeping, Justice and Correction Service, OROLSI/DPO, *Remote Court Hearings and Judicial Process in Response to COVID-19 in Mission and other Fragile Settings*. Available at: https://peacekeeping.un.org/sites/default/files/rch_final.pdf.

Tribunal for Rwanda, where he headed the trial team that achieved the first convictions in history of leaders of the mass media for the crime of direct and public incitement to commit genocide. Before his international service, he was the United States Attorney for the N. District of Iowa from 1993 to 2001. Rapp organized processes for monitoring trials for compliance with international human rights law in Rwanda and Bangladesh, and led a team that monitored a 2019 trial in Turkey for Trial Watch (a Clooney Foundation for Justice Initiative).

**Catherine Morris**, BA (Alberta), JD (Alberta), LLM (UBC), is the Executive Director of Lawyers' Rights Watch Canada (LRWC). She is an Adjunct Professor in the Faculty of Law at the University of Victoria (UVic) and an Associate of UVic's Centre for Asia-Pacific Initiatives. She has taught graduate level courses in international human rights, negotiation and conflict studies at universities in Canada, Southeast Asia and Europe. She has more than two decades of experience in the field of international human rights. She is experienced in impartial fact finding and adjudication. She has monitored proceedings in courts in Thailand and Cambodia. Her publications include works on dispute resolution ethics and international human rights. She is LRWC's Main Representative at the UN Human Rights Council. She is a member of the Law Society of British Columbia, Canada, and the Canadian Bar Association.

**Nykeeba Brown**, BSc (Howard), JD (Barry), LLM (Pace), earned her advanced degree in Global Environment Law at Pace University's Haub School of Law. Brown served as a diplomacy extern at the United Nations Headquarters in New York City, where she represented the Government of Sri Lanka at the General Assembly, in the G-77, the Third Committee, Fourth Committee, and Sixth Committee. Prior to her studies for an LLM, Brown served as a summer associate at Akerman LLP in their labor and employment practice.

**Etienne C. Toussaint** is an Associate Professor of Law at the University of the District of Columbia, David A. Clarke School of Law where he teaches business law courses and serves as Co-Director of the Community Development Law Clinic. He is a current Board Member of the Washington Council of Lawyers, the public-interest bar association for the District of Columbia. Professor Toussaint previously served as Visiting Associate Professor of Clinical Law and Friedman Fellow at The George Washington University Law School. Prior to entering legal academia, Toussaint worked as a Project Finance Associate with international law firm Norton Rose Fulbright, and subsequently as a Law & Policy Fellow with the Poverty & Race Research Action Council in Washington, D.C. Toussaint previously worked as a strategy consultant for Booz Allen Hamilton, focusing on global environmental policy and sustainable development projects. At MIT, he was recognized as a Ronald McNair Scholar and received a Distinguished Collegiate Award. At Harvard Law School Toussaint served as a student advocate with the Ghana Human Rights Clinic, editor of the Environmental Law Review, Vice-President of the Board of Student Advisers, and National Executive Board Member of the National Black Law Students Association. Professor Toussaint's most recent legal article, "Of American Fragility: Public Rituals, Human Rights, and the End of Invisible Man," is forthcoming in the *Columbia Human Rights Law Review*.