UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br><br>     v.<br><br>STEVEN DONZIGER,<br><br>                    Defendant. | Case No. 11-CR-0561<br>(LAP) |

## DECLARATION OF COUNSEL LAUREN REGAN

LAUREN REGAN does hereby declare as follows:

1.      I, Lauren C. Regan, am currently Steven Donziger's only criminal defense attorney of record in this matter.  I submit this Declaration in support of my request to withdraw from this case due to the unwillingness of the Court to adjourn the petty offense trial, currently scheduled for November 4, 2020.  For the following reasons, I believe I cannot adequately or ethically represent Mr. Donziger at the currently scheduled trial date, and thus, unless the date is postponed to when a safe, in-person trial could be conducted, I should be permitted to withdraw.

2.      I have over 23 years of expertise practicing criminal law, defending political activists in federal and state courts.  I founded and currently direct the Civil

Liberties Defense Center (CLDC), a nonprofit 501(c)(3) organization based in Eugene, Oregon.  At any given time, I have more than twenty criminal and civil cases, extensive public education teaching events, and supervising three other attorneys with their own extensive litigation dockets, in addition to running a nonprofit organization.  The CLDC does not have paralegals or secretaries.

3. In May 2020, I was retained *pro bono* as a member of Mr. Donziger's trial team. I submitted my Motion to be admitted to the U.S. District Court for the Southern District of New York *Pro Hac Vice* on May 15, 2020.  Dkt 75; 80.  The Court granted that motion on May 28, 2020. Dkt 81.  At that time defendant was also represented in this case by two experienced New York licensed lawyers, Andrew Frisch and Martin Garbus, and two other experienced trial attorneys, Richard Friedman and Zoe Littlepage, both of whom had worked on the underlying civil case.  Mr. Frisch was the lead counsel at that time, and each attorney was responsible for a discrete facet of trial preparation and appellate practice.

4. I agreed to be one of five lawyers on a legal team.  I did not, and do not, have the capacity to take on this case myself given my other cases and responsibilities, nor would I have taken on a New York case given the fact that I live 3500 miles away and the COVID pandemic had already taken hold at the time I agreed to help with the case.  Additionally, as is contemplated and required by the

*pro hac vice* process, I would not practice in an unfamiliar court without active local counsel to confirm that local rules and practices are complied with, to ensure effective assistance of counsel.

5. On July 4, 2020, longtime New York-based criminal defense lawyer Andrew Frisch filed a motion to withdraw from this case. Dkt 98. I was not aware that Mr. Frisch was withdrawing from the case prior to this filing. On July 6, 2020, the Court granted Mr. Frisch's motion to withdraw, on the condition that it did not affect the trial date. Dkt 99. Since none of the other attorneys on Mr. Donziger's team, including myself, were asked whether they were prepared to accept that condition regarding Mr. Frisch's withdrawal, it seemed unusual to condition a withdrawal in that way.

6. On July 8, 2020, New York-based veteran lawyer Martin Garbus joined the defense team to ensure we had a local, experienced lawyer on the team. Mr. Garbus is 87 years old and at high risk for COVID-19, and was therefore ensuring his safety by quarantining. At that time, the anticipation was that a trial would be conducted in a manner that ensured health and safety in light of the global pandemic.

7. On August 11, 2020, Seward & Kissel lawyers filed a *Curcio* motion to disqualify my co-counsel, Richard Friedman and Zoe Littlepage, who had worked

with Mr. Donziger on the underlying civil case and were familiar with the extensive discovery, court filings, and case history. Dkt 118. On August 28, 2020, the Court ordered them disqualified from the case, which was set for trial a week later on September 9. Dkt 149.

8. At this time, lead attorney Andrew Frisch was out of the case; replacement lead attorney Richard Friedman had been disqualified; Zoe Littlepage, who was responsible for certain counts and defenses, had been disqualified; and Mr. Garbus, who had been in the case for a month, and was hindered by the technology required for out-of-court online appearances due to his quarantine location and lack of support staff to assist him with the technology, was unable to contribute to the defense at this time. The Court had also ordered Mr. Frisch back into the case on August 24, six weeks after he had stopped working on the case. Dkt. 138. This caused further litigation between Mr. Frisch and the Court over whether he could be forced back into a case he had withdrawn from two weeks before trial. Mr. Frisch was not responding to emails or calls from me during this time period.

9. As it became clear that the Court was going to continue to try to force the September 9 trial date, Mr. Garbus informed the Court that he was unable to attend a trial during the pandemic for health reasons, and was unable to appear via Jabber due to technology issues. He officially withdrew on September 3, 2020. Dkt 162.

4

As a result, I was left as the sole attorney of record for the defense in this extremely complex case, without my consent or agreement.

10.    The prosecution and court immediately began demanding pretrial documents such as witness names from me — areas of the case about which I had no previous responsibility or direct knowledge. Finally, on September 4, the Court granted Mr. Frisch's motion to vacate the Order requiring him to try the case, and rescheduled the trial date for November 3, with no consultation whatsoever with the attorneys to determine if their schedules and personal lives could accommodate a two-week trial beginning on November 3. Dkt 168. In my 23 years as an attorney, in many state and federal courts, court staff have always conferred with me regarding my availability prior to resetting a trial date. This is a common courtesy for lawyers who often have many other cases ongoing at any given time. Rescheduling a trial for November 3, Election Day, was shocking to me and presented numerous conflicts with my litigation docket, political commitments within my community around election day, and personal/family obligations I had previously committed to.

11.    I was additionally shocked that the Court reset this trial for November 3 (later changed to Nov. 4) because on August 28, New York-based criminal defense attorney Ronald Kuby had filed a declaration indicating that he was willing to

replace Mr. Frisch as local New York-licensed criminal defense counsel, but due to his current litigation docket was unable to do so until December 7.  Dkt 148.  The Court set a trial date without conferring with the attorneys involved regarding their schedules, knowing that the date selected was federal Election Day (then changed to the day after, in a pandemic year when it was likely a winner would not be known on November 4), and knowing that the New York-based defense counsel willing and able to try the case in person was unavailable to try the case on that date.  The imposition of a November 4 trial date eviscerated Mr. Donziger's right to the counsel of his choice.

12.     In the meantime, on September 7 massive catastrophic wildfires swept through the west that not only destroyed my property, but caused over two weeks of extremely hazardous smoke and air quality that resulted in my evacuation, shut my office down, and seriously interfered with my ability to work (on the Donziger case or any other case).

13.     As I have told this Court many times, I am unable to commit the time necessary to prepare this case adequately for a November 4 trial date due to my many other litigation and organizational responsibilities.  I agreed to be part of a five-lawyer team with two New York lawyers, where I was responsible for a particular defense and would not be forced to travel to New York City during a

global deadly pandemic.  I never agreed to, and am ethically uncomfortable with trying a federal case in a District Court without New York local counsel.

14.     My doctor has advised me that for medical reasons I should only fly to New York "if my life depends on it." Dkt 119.  The pandemic has only worsened and COVID cases have increased exponentially since I filed that medical letter.  Thus, I cannot appear in person to defend Mr. Donziger on November 4 as the country reels from the largest surge of COVID cases ever.  In the last seven days, there were 472,338 COVID cases, with a national total of 8,553,827 people infected. https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days.  Oregon cases are surging and are at 6.9 cases per 100,000 people — significantly above the 5.0 threshold.  New York is even higher right now with 8.7 cases per 100,000 people. *Id*.

15.     Even if I were forced to travel to New York from Oregon, I do not believe that I can effectively communicate with Mr. Donziger at trial while CDC guidance requires at least six feet of distance between he and I while we wear masks.  Given Mr. Donziger's past history with pneumonia, and my medical doctor's advice to not travel to New York, we are both at an untenable risk of COVID if forced to be present in a courtroom in close proximity to each other, with many other people with varying COVID exposures, for eight hours a day, five days a week.

16.     I do not believe I can adequately represent Mr. Donziger remotely via Jabber.  I do not believe it is ethical, adequate attorney representation to attempt to represent a criminal defendant threatened with imprisonment via an online platform that was never intended for trials.  I cannot show exhibits on Jabber, nor can I have attorney-client privileged conversations with my client in a way that allows me to adequately defend him.  I do not believe it is ethical attorney representation to force a criminal defendant to stand alone in a courtroom without the assistance of a live, in-person attorney at his side.  Mr. Donziger also does not consent to be represented remotely.

17.     In addition, Mr. Donziger's necessary witnesses also cannot appear in the NY courtroom to testify due to COVID-19 health risks and travel restrictions which also renders his defense ineffective.  Significantly, his material witnesses who reside in Ecuador cannot travel to the U.S. because of COVID travel restrictions, and although Mr. Donziger does not want to be relegated to video appearances at his criminal trial, the Court and private prosecutor have both indicated that they will not permit the Ecuadorian witnesses to testify remotely because there is not an extradition treaty.  The time constraints unreasonably imposed upon me have also restricted my ability to adequately prepare Mr. Donziger's witnesses to testify, and the lack of clarity regarding how a witness will be permitted to testify or not has also added confusion to our trial preparations with

8

our intended witnesses.  And, in preparing witnesses via phone (since I could not travel to see them to prepare them as I would normally) because of COVID made it inordinately difficult if not impossible to prepare them properly, whether the testimony were to be in person or remote -- further underscoring one of the main problems of why the trial cannot be held consistent with the Constitution until it is safe for lawyers and witnesses to travel safely and come to court.

18.    Finally, Ms. Glavin, Brian Maloney, and Sareen Armani, along with their staff and the Gibson Dunn staff, have been working on this case as a top priority since at least August 6, 2019, and presumably are being paid well for every hour of work they put into this case.  I have been working pro bono for the defense for five months while also working on over a dozen other cases.  Three of those months I was one of five attorneys splitting up the work; the month of September was focused on a massive natural disaster and its devastating aftermath; and for the month of October thus far, I have been neglecting many of my other litigation priorities in an attempt to function as Mr. Donziger's only attorney of record in the face of a forced trial date on November 4.

19.    I am not able to adequately try this case in person or remotely via an online platform that Mr. Donziger does not consent to, and that does not allow me to present exhibits or properly confer with my client, without violating my ethical

9

duties.  As a result, I believe I am required to withdraw from this case, or the Court must adjourn the matter until either Mr. Kuby can prepare to try the case in-person, or the pandemic subsides and/or a vaccine is available to protect the health and safety of all involved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 25th day of October, 2020, in Eugene, Oregon.

>*/s/ Lauren C. Regan*
>Lauren C. Regan, *Pro Hac Vice*
>Civil Liberties Defense Center
>1430 Willamette St. #359
>Eugene, Oregon 97401
>541.687.9180 phone
>Email: lregan@cldc.org
>*Counsel for Steven Donziger*