

**CLDC**
1430 Willamette St. #359
Eugene, OR 97401
Phone: 541-687-9180  Fax: 541.804.7391
E-Mail: lregan@cldc.org  Web: www.cldc.org

November 2, 2020
**VIA ECF**
Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE:    *United States v. Steven Donziger*, No. 19-CR-561 (LAP); 11-CIV-691 (LAK)

Dear Judge Preska:

On behalf of Mr. Donziger, we continue to object to being forced to choose between an unconstitutional online criminal trial and an unsafe, potentially deadly trial where our witnesses and ourselves would be forced to put their health in danger IF they were even able to fly to New York to testify in person (NY quarantine rules change and become more strict this Wednesday). The COVID-19 global pandemic continues to surge around the world and especially within the United States—with more cases and hospitalizations then ever before.

Both sides have extensively and repeatedly briefed the issue of the extraordinary nature of forcing Mr. Donziger to be relegated to a remote trial with remote, online testimony in a criminal case where the he does not consent and loses the right of actual confrontation and the fact-finder loses the ability to make a full observation of the demeanor of the witness.

While this Court has further revealed its hand prior to hearing evidence by characterizing Mr. Donziger's legitimate efforts to fight for a fair trial as "machinations," the October 28, 2020 ruling appears to recognize one essential fact: Between the legal requirements of remote witnesses, and the restrictions imposed by the pandemic, the Rule 15 requirements for video testimony are impossible to implement given the enforcement of perjury prohibitions in a foreign jurisdiction, combined with the closure of all American Embassies in the countries where Mr. Donziger intends to call witnesses. Dkt 196. The order also recognized that the process presents particular and likely insurmountable challenges given the demand by the private prosecutor that all defense witnesses be pre-cleared so they meet the "materiality" standard.

To get around this, the Court has created a protocol that creates yet another problem that makes it impossible to conduct the trial in the age of COVID in a manner consistent with the Constitution. This Court abandoned the materiality showing, and has ordered counsel to propose procedures for the taking of testimony that supposedly prevent the witnesses from being coached in their answers — a preposterous and even discriminatory presumption, as it appears mostly to apply to the people of Ecuador who won the historic pollution judgment against Chevron that has been upheld by multiple Ecuadorian courts including the Ecuadorian Supreme Court. In so doing, this

Court departs from the long-established legal requirements laid down by the courts in *Banki* and *Bush* but does nothing to address the problem that led to those requirements: unsworn video testimony is simply less reliable as a matter of law, as has been confirmed repeatedly by the Supreme Court, Justice Scalia himself, this Circuit, and common sense. To put it plainly, under the Court's supposed protocol, the defense witnesses are second-class witnesses whose statements, no matter how compelling, begin at a substantial if not legally fatal disadvantage.

In the *Banki* and *Bush* cases, the district courts found that in the absence of some ability to hold witnesses accountable for perjury (which always happen in normal-course trials where witnesses appear), their testimony simply cannot be trusted. That is, they were legally incompetent to testify. Since Mr. Donziger's witnesses cannot get to court because of COVID, they are essentially blocked from testifying and Mr. Donziger is being stripped of his right to mount a defense.

This Court's willingness to overlook this fundamental issue with video testimony is extremely problematic. To rule such unsworn testimony can happen is not a concession to the defense; to the contrary, it is an attack on the defense because the court knows that testimony will never be credited (or perhaps the court should acknowledge it has predetermined the outcome of this "trial" and does not require any evidence or testimony at all).

Again, this ruling strips Mr. Donziger of his right to a fair trial because of the COVID crisis which he had no control over. The Court has not declaimed any reliance on unsworn status in evaluating the credibility of Mr. Donziger's witnesses. To the contrary, this Court's October 22, 2020 decision made it clear that, because this is to be a bench trial, it would allow such "questionable" testimony—but strongly suggested this was a far different issue than crediting it. Creating an "unsworn but admissible" exception for the Donziger case is nothing more than an attempt to provide the appearance of a fair trial, while denying the substance of a fair trial.[1]

Under the formulation of this court and the Seward & Kissel prosecutors, defense witnesses will begin with two strikes against their credibility — the lack of an oath and the lack of in person examination--through no fault of their own or of the defense.

An additional fair-trial problem was noted by Judge Keenan in United States v. Banki, 2010 WL 1063452 (S.D.N.Y. 2010):

> As a secondary concern, since the witnesses are essentially free to say anything without reprisal, the Government's ability to cross-examine them in person and to directly observe the witnesses' demeanor, body language, and interactions in order to gauge the truth of their statements becomes especially important. However, it is widely acknowledged that "[t]he simple truth is that confrontation through a video monitor is not the same as physical face-to face confrontation." *United States v. Yates*, 438 F.3d 1307,

---

[1] Nor has the private prosecutor committed to forswearing such arguments. Rather than try to protect the public interest by working to protect Mr. Donziger's rights, as is her ethical obligation, Ms. Glavin has taken the lead in proposing "solutions" for the defense that are not solutions at all but essentially tilt the playing field in her favor by precluding Mr. Donziger from exercising his right to call his witnesses who live in other countries, all of whom are willing to come to court voluntarily but for the pandemic. Indeed, the private prosecutor repeatedly has argued that these witnesses should not be permitted to testify unless they comply with pre-pandemic requirements that are impossible during the pandemic. This position flouts DOJ guidance and ABA guidance for pandemic-era trials.

>   1315 (11th Cir.2006); *see also Gigante*, 166 F.3d at 81 {"There may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony.")  The ineffective oath, coupled with the lack of opportunity for in-person cross-examination and observation, makes it extremely difficult to assess the reliability of the proposed witnesses' testimony.

Id. at *3.

In its prior opposition papers, the private Chevron-linked prosecutor (who refers to herself as the "United States") cited a tiny mélange of fact-intensive cases, arguing that denial of in-person witnesses would not violate Mr. Donziger's rights.  In fact, all the cases cited by the Seward prosecutor are wildly inapposite or mis-interpreted in ways that distort their meaning to try to help bail her team out of a totally untenable position.  In United States v. Greco, 298 F.2d 247 (2d Cir. 1962), the defendant did not name his witnesses, did not seek to bring them to the United States, nor did he move to take their testimony abroad — conditions absent in the current case where Mr. Donziger has named his witnesses, has sought to bring them here, and has received their assurance they will travel when health conditions due to a global pandemic permit.[2]  We have named our witnesses and we have sought them.  Indeed, we want to bring them into the United States,[3] and would normally facilitate their travel, just not in the midst of a global pandemic.

In United States v. Epskamp, 15-2028-cr, 2016 U.S. App. LEXIS 14472 (2d Cir., Aug. 5, 2016)(Summary Order),[4] the Second Circuit found no violation of the defendant's Fifth and Sixth Amendment rights when the government refused to secure the attendance of a purported defense witness who was incarcerated abroad.  Again, this is inapplicable to the current situation.  The Second Circuit ruled that the defendant had "likely forfeited or waived this issue" by going forward with the trial without any guarantee that he would be able to call his witness.  That, of course, is precisely what the defense is trying to avoid.  Next, the Second Circuit ruled that the government did not have the power to compel the witness to appear, so there was no Compulsory Process Clause violation.  In Mr. Donziger's case, by contrast, the witnesses will appear

---

[2] The defense did not move to take their testimony abroad due to the conditions of the pandemic.  Not even the prosecution has suggested that it would be willing to travel to three continents, in various nations where the deadly infection rate is increasing.

[3] The prosecution's footnote attacks on Luis Yanza are tiresome and they echo Chevron's attempts to demonize the Ecuadorian leaders who have held it accountable for its "Amazon Chernobyl" disaster in Ecuador . Mr. Yanza is a distinguished environmental rights lawyer who has devoted his life to advocating for indigenous people have been victimized by the fossil fuel industry and its legions of lawyers, death squads, and thugs In 2008 he was awarded the prestigious Goldman Prize for that work. See, THE GOLDMAN ENVIRONMENTAL PRIZE, https://www.goldmanprize.org/recipient/pablo-fajardo-mendoza-luis-yanza/ (last accessed Oct. 28, 2020).  The U.S. Courts had no jurisdiction over Mr. Yanza nor over the environmental human rights judgment that was secured by the Ecuadorians on Ecuadorian land, and by the highest courts  in Ecuador with jurisdiction over the harms caused by profiteering oil and gas corporations like Chevron and Texaco.  Mr. Yanza  elected not to appear in what became the decade-long efforts by Chevron to use the American courts (which it previously disdained until it lost) to undo valid Ecuadorian judgements speaks to his prescience.  Mr. Yanza ethically chose to continue to pursue environmental work in his country rather than entangle himself in an endless U.S. legal battle against a multinational corporation claimant, with an endless budget and unlimited legal resources and power  to usurp normal systems of democracy including the judiciary.

[4] The prosecution's citation to Epskamp omitted the notation "summary order" as required by Local Rule 32.1.1.  .

voluntarily and the defendant begs no favors of the prosecution. Lastly, the Second Circuit noted that the district court "expended significant effort attempting to accommodate Epskamp's request that his witness be deposed—a request withdrawn by Epskamp on the eve of the deposition—and allowed to testify remotely." By contrast, all parties appear to recognize that the pandemic conditions make Rule 15 travel abroad impractical if not impossible. And the defense does not ask this Court to expend any effort on its behalf, outside of adjourning this case to a time when a trial can be had safely and fairly.

Finally, this Court quoted language from United States v. Saipov, 412 F. Supp. 3d 295 (S.D.N.Y. 2019) suggesting that video-testimony is a common and non-extraordinary means of taking testimony in federal criminal prosecutions. This is wholly misleading — Saipov was a terrorism case involving the State Department and all sorts of complicated issues related to witness testimony not present in this case. The case at bar is significantly distinct in that all witnesses are available and willing to travel to trial voluntarily just as several of them did for Mr. Donziger's bar hearing in New York in September 2019 prior to the global pandemic.

Nonetheless, the Court has ordered Mr. Donziger to propose online video testimony protocols. Since no criminal defendant has ever been forced to do so, and the American Bar Associations strongly opposes trial testimony via online platforms, there are no standard guidelines in place. Mr. Donziger should not be expected to solve problems created by the court's unreasonable refusal to adjourn the trial until it can be held consistent with the Constitution. Mr. Donziger does not consent to video testimony.

Draft Video Protocols Opposed by Defense:

      A witness who is required to provide trial testimony remotely and online should follow the following guidelines:

      1. To the extent possible, please choose a location that can provide you with the best and most consistent internet access.

      2. To the extent possible, please choose a location that can provide you quiet and solitude so that you will not be interrupted or distracted while testifying.

      3. If possible, choose a location where you can be alone. If you need an interpreter, that person may be present while you testify.

      4. Even though you are not in a courtoom, the Judge is requiring you to testify as if you were in court. You will take an oath to tell the truth, your testimony will be recorded and will become part of the official court record for this case. The private prosecutor may ask you questions, and the defense attorney for Mr. Donziger may ask you questions.

      5. Once you are done testifying, the Judge will thank you and you are free to disconnect and your "court session" will be complete.

Under any traditional balancing test, an adjournment must be granted. Most of the prosecution's witnesses are all highly-compensated members of the Chevron's legal team—presumably they can appear whenever Chevron whistles. The other evidence is documentary. The private prosecution suffers no prejudice from an adjournment. Additionally, the civil contempt order underlying the criminal charges is highly relevant, has had oral argument, and is currently pending a Second Circuit decision.

The only solution consistent with both a safe and fair trial is to adjourn the trial until counsel is available in person, has sufficient time to prepare, and the pandemic subsides to such a degree that most witnesses, all defense lawyers, and Mr. Donziger himself can attend court without risking their lives.  Most courts around the country are addressing the unknown nature of this pandemic by scheduling regular status hearings to address the current COVID circumstances, and if permitting, to work with attorneys to schedule safe trial dates in the subsequent months (in my personal experience, even my in custody federal case in Colorado has been adjourned until a subsequent status hearing at the end of January; out of custody federal cases in Iowa and California have been adjourned to a status hearing in March, 2021).  In the alternative, a new trial date of January 21, 2020, is amenable to defense counsel—although the medical experts concur that the virus will likely continue to surge throughout the winter as people are driven indoors where spread is increased.  This Court has adduced no reason why this trial of *petty offenses* must go forward[5], beyond a generalized concern for moving things along, and its own irritation at Mr. Donziger and his legal team which is entirely inappropriate for a neutral fact finder.

Sincerely,

*/s/ **Lauren C. Regan*** *(electronic signature)*
Lauren C. Regan, OSB#970878
Attorney at Law
Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, OR 97401
lregan@cldc.org

---

[5] This Court's obsession with driving Mr. Donziger to trial without a jury or lawyers becomes even more evident by examining the legal basis it cited when setting the November 3, 2020 trial date—18 U.S.C. Sec. 3161.  Contrary to this Court's statements, the Speedy Trial Act of 1974 creates no requirement that 70 days is a necessary period of time for new counsel to prepare for trial.  Counsel is unaware of any trial in the SDNY or any other district in the United States that actually commenced within 70 days of a defendant's first appearance.  Moreover, given the Court's two *sua sponte* adjournments (one due to "oversight" and the most recent without any stated basis), the trial date is unmoored from even that tenuous tether.