# LAW OFFICE OF RONALD L. KUBY
ATTORNEYS AT LAW
119 WEST 23RD STREET, SUITE 900
NEW YORK, NEW YORK 10011

TELEPHONE: (212) 529-0223
FAX: (212) 529-0644
WWW.KUBYLAW.COM

RONALD L. KUBY
RHIYA TRIVEDI

OF COUNSEL
GEORGE WACHTEL
LEAH BUSBY

STAFF
SUSAN BAILEY

PROCESS SERVER
LUIS R. AYALA 1952-2012

November 14, 2020

Hon. Lewis A. Kaplan
United States Distrrict Judge
Southern District of New York
500 Pearl Street
New York, NY. 10007

<u>Re:  United States v. Donziger, 19 Cr. 561 (LAP)</u>

Dear Judge Kaplan:

      I write to request that this Court revoke its Order of July 30, 2019, insofar as it transfers this case to the Hon. Loretta A. Preska. I further request that this Court transfer the case for assignment by lot pursuant to SDNY Local Rule 16, and formally recuse itself from further actions in the criminal mater. Given that trial of this matter is scheduled for January 19, 2021, there is ample time to select a district judge at random without delaying the trial.

      At some point prior to July 30, 2019, this Court attempted to convince the United States Attorney for the Southern District of New York to criminally prosecute Steven Donziger for alleged contempt of this Court's orders. The United States attorney declined, asserting "the matter would require resources that we do not have readily available." Dkt. 2277.

      On July 30, 2019, this Court solved the resource problem by appointing three private attorneys,[1] at the for-profit firm of Seward and Kissel, to prosecute Mr. Donziger, providing a bottomless well of tax dollars to fund said endeavor. Thus far, based at least on anecdotal evidence, this is the most expensive misdemeanor prosecution in the history of the SDNY, if not the federal judiciary.[2]

---

[1] The defense does not know the selection criteria used by this Court, nor whether this Court was aware that Chevron Corporation had been a client of the firm.

[2] The defense estimates that private counsel has been paid (or has outstanding invoices that have not been submitted), somewhere between $250,000.00 and $500,000.00, thus far.

1

The same day, this Court issued a show cause order alleging six counts of criminal contempt of court against Steven Donziger in the newly-titled case of United States v. Steven Donziger, bearing the civil case number 11-cv-0691 (LAK). Said Order was expressly made pursuant to Fed. R. Crim. Proc 42 and directed the parties to appear before the Hon. Loretta A. Preska.

Despite this Court's invocation of Rule 42 in appearing to transfer the matter to Judge Preska, this Court subsequently stated that it had not recused itself from the matter.

Legal commentators have stated the obvious: "Vindicating the court's dignity and authority is the fundamental purpose of contempt, and the judge is usually actively involved in initiating contempt proceedings. Thus, the roles of *victim*, prosecutor, and *judge* are dangerously commingled." Getting Beyond the Civil/criminal Distinction: A New Approach to the Regulation of Indirect Contempts, 79 Va. L. Rev. 1025, 1028 (1993) (emphasis added). See, e.g., Green v. United States, 356 U.S. 165, 199 (1958) (Black, J., dissenting) (discussing direct contempts), overruled in part by Bloom v. State of Ill., 391 U.S. 194 (1968) ("When the responsibilities of lawmaker, prosecutor, judge, jury and disciplinarian are thrust upon a judge he is obviously incapable of holding the scales of justice perfectly fair and true and reflecting impartially on the guilt or innocence of the accused. He truly becomes the judge of his own cause.").

It appears, at least to new incoming counsel, that this Court has gone well beyond inevitable commingling and made a series of decisions that fundamentally prejudice Mr. Donziger's right to a fair trial. This Court has a) issued the charges against the defendant, b) selected a private prosecution team that has none of the resource allocation constraints, or independence, of the actual United States of America, and in fact has a perverse incentive to extend the case given its hourly billing to taxpayers rather than resolve it expeditiously; c) transferred this case to a hand-picked colleague, all the while d) simultaneously continuing to retain full jurisdiction over the matter

I submit that this Court is running afoul of Mr. Donziger's fair trial rights by playing too many roles in this criminal prosecution—you are the accuser; the person who selected the private prosecutors after the federal prosecutor refused the case; the person who selected the judge; and also, the judge. This type of arrangement is something I have never encountered in my decades of practice nor heard of from any other counsel practicing in any other jurisdiction. This situation

cannot be reconciled with the Second Circuit's mandate that judges exercise "restraint" in criminal contempt cases. In re Irving, 600 F.2d 1027, 1037 (2d Cir. 1979).

First, with respect to this Court's ongoing participation.

In normal course, Rule 42 dictates when judges must recuse themselves from trying their own contempt charges. Rule 42 does not address the distinction between direct and indirect contempts found in the case law, but instead sets forth a uniform standard for recusal and reassignment. Indeed, when this Court invoked Rule 42 as part of its original order transferring the matter to Judge Preska, prior counsel read that to be a recusal as required by the rule and a reassignment. It was not until March 11, 2020, when this Court, at some length and more than seven months after the charges were filed, first made it clear that it had not recused itself from any part of the litigation, including the criminal case. Case 20-404, Dkt. 55?, at 41-51. It is also worth noting that said brief, at least nominally authored by this Court, contained vigorous and hostile advocacy against the positions taken by Mr. Donziger. Such argumentation is a staple between litigants; it is not a normal or healthy part of the relationship between defendant and judge.

Second, with respect to the selection of Judge Preska.

Notwithstanding this Court's invocation of Rule 42, this Court did not follow the procedures required by SDNY Local Rule 16 for re-assignment when a judge is disqualified. The fact that this Court has the authority to transfer a case to another judge on consent (pursuant to Local Rule 14[3]) should not and cannot be employed to do violence to the general principle of random judicial assignment—*especially when the designated judge will be both the arbiter of law and the finder of fact*. See, Katherine A. Macfarlane, The Danger of Nonrandom Case Assignment: *How the Southern District of New York's "Related Cases" Rule Shaped Stop-And-Frisk Rulings,* 19 Michigan Journal of Race and Law 199 (condemning Rule 14 as allowing "case assignment manipulation" and "judicial case-shopping); J. Robert Brown, Jr. & Allison Herren Lee, *Neutral Assignment of Judges at the Court of Appeals*, 78 Tex. L. Rev. 1037, 1066 ("Judges seeking to participate in a particular case may have a variety of motives. . . . They may seek a position on a panel to promote a judicial philosophy or a set of moral principles…."). Cruz v. Abbate, 812 F.2d 571, 572 (9th Cir. 1987)( Courts "must take great pains to avoid any inference

---

[3] The defense requests a copy of the "written advice" this Court filed with the assignment committee prior to its selection of Judge Preska.

that [case] assignments are being made for an improper purpose," because "[t]he suggestion that the case assignment process is being manipulated for motives other than the efficient administration of justice casts a very long shadow.")

This is not personal. No matter who the judge personally picked by this Court, that judge would receive an unjustified level of scrutiny *simply by virtue of the fact that they were selected by this Court.* Such scrutiny and public commentary, all too common in the current era, has a corrosive effect on the public perception of the independence of the federal judiciary, and at a time when the courts most needs public trust.

But Judge Preska, as the many people now following this case know with great clarity, has extensive ties to the Chevron-funded Federalist Society. Given the Federalist Society's fierce anti-regulatory and pro-corporate stance, your appointment of Judge Preska would be commented upon whether or not she was selected at random. But the appearance is so much worse when the person who selected Judge Preska spent a quarter-century of his pre-judicial years working to defend Phillip Morris and other major tobacco companies.[4] Preserving public faith in the judiciary is not merely the duty of the executive and legislative branches, nor of the commentariat or public intellectuals. The courts themselves also have a responsibility to protect the integrity of the federal judiciary. I call you to that obligation.

Third, with respect to the selection of the private prosecutors.

Had this matter been prosecuted in normal course by the United States Attorney for the Southern District of New York, and the matter transferred to another Judge in accordance with random selection principles, this Court's role would be narrow and clear. At most, this Court would be a witness who, like other prosecution

---

[4] Benjamin Hulac, *Tobacco and Oil Industries Used Same Researchers to Sway Public,* Scientific American, (June 20, 2016), https://www.scientificamerican.com/article/tobacco-and-oil-industries-used-same-researchers-to-sway-public1/. In addition, as this Court is well aware, this contempt case grows out of a civil matter Chevron initiated against Mr. Donziger after he successfully secured a pollution judgment against the company that has been validated by four layers of courts in Ecuador. The private prosecutor's main witnesses in the criminal contempt case are from Chevron's Gibson Dunn law firm, another major donor to the Federalist Society, and another reason why the appearance of impropriety exists.

witnesses, would be in a position to explain certain facts of the case to prosecutors. The prosecution would retain its usual and enormous discretion as to how to proceed, on which counts, whether to engaged in plea discussions, and the like. This Court would have no role in these matters. E.g., Inmates of Attica v. Nelson Rockefeller, 477 F.2d 375 (2d Cir. 1975).

Instead, it appears that this Court has engaged in *ex parte* communications with its hand-picked prosecutors that would otherwise be prohibited in a normal-course case and should be prohibited in any case. Mr. Donziger's prior counsel raised these concerns. In response, the prosecutors at Seward & Kissel, calling themselves the "United States of America" stated (and subsequently reiterated) "the prosecution does not seek Judge Kaplan's input with respect to our prosecution decisions or our strategy, and Judge Kaplan does not weigh in on our prosecution decisions or strategy." Dkt. 52, 16-17; 141 at 2.

The problem with this answer in the negative pregnant is it tells us the role the Court is *not* playing in the prosecution; it does not tell is the role that the Court is playing—when the Court should be playing *no role whatsoever*.

I have not located any case where one judge tried the matter and a second judge, of co-ordinate jurisdiction, served as a "shadow judge," with the two organizing matters related to the case between themselves, utterly opaquely. Nor do I assert that is what is happening here. I merely assert that this is what it appears to be.

## Conclusion

At various points in this litigation, this Court has asserted that it has the right to initiate charges by Notice against Mr. Donziger, the right to pick a private prosecution team, the right to preside over the trial, the right to pick the judge who hears the case, and of course, the right to litigate against Mr. Donziger's attempt to obtain mandamus relief from these assertions. There is no authority for this Court doing all of these things at the same time in the same case. To the contrary, there is ample reason to conclude that reasonable observers would, and have,[5] questioned

---

[5] *See Full Statement of 55 Nobel Laureates in Support of U.S. Human Rights Lawyer Steven Donziger,* Frente de Defensa de la Amazonia, (November 5, 2020) https://www.makechevroncleanup.com/press-releases/2020/11/5/full-statement-of-55-nobel-laureates-in-support-of-us-human-rights-lawyer-steven-donziger (in which 55 Nobel Laureates call for an end to the judicial harassment of Steven Donziger); *United States v. Steven Donziger: Report of Monitors of a Hearing in New York, 5 October 2020,* Lawyers' Rights Watch Canada,

the fairness of these actions. They must remedied immediately such that Mr. Donziger can have a fair trial.

Respectfully submitted,

Ronald L. Kuby

---

(October 27, 2020) https://www.lrwc.org/united-states-v-steven-donziger-report-of-monitors-of-a-hearing-in-new-york-5-october-2020/; *A Letter to Federal Judges Concerning Case of Human Rights Lawyer Steven Donziger*, Medium (October, 21, 2020), https://medium.com/donziger-case-monitoring-committee/a-letter-to-federal-judges-concerning-case-of-human-rights-lawyer-steven-donziger-8e716547fbc2 (in which a monitoring committee of seven distinguished lawyers levy concerns about right to counsel, lack of judicial fairness, prosecutorial misuse of procedure, and witness issues)