# LAW OFFICE OF RONALD L. KUBY

ATTORNEYS AT LAW
119 WEST 23ᴿᴰ STREET, SUITE 900
NEW YORK, NEW YORK 10011

RONALD L. KUBY
RHIYA TRIVEDI

OF COUNSEL
GEORGE WACHTEL
LEAH BUSBY

TELEPHONE: (212) 529-0223
FAX: (212) 529-0644
WWW.KUBYLAW.COM

STAFF
SUSAN BAILEY

PROCESS SERVER
LUIS R. AYALA 1952-2012

December 17, 2020

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY
Via ECF

Re:  *United States v. Donziger*, 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

Please accept this letter-motion in lieu of a more formal motion to discontinue Mr. Donziger's home confinement and electronic monitoring.

On December 18, 2020, Mr. Donziger will have spent 500 days in pre-trial home confinement, based on this Court's Order of August 6, 2020; an Order that was flawed at the outset, and has only grown more unnecessary and punitive with the passage of time.

On June 20, 2020, in denying Mr. Donziger's motion to modify the conditions of release to permit him "the freedom to roam for several hours a day," this Court declared:

> "There is no reason why Mr. Donziger should be treated differently from any other pretrial defendant."

Dkt. 90, at 2.  It appears that the Court had not been informed that, in the available history of the federal judiciary, no federal misdemeanor defendant without a prior criminal record has ever been held in pre-trial home confinement subject to electronic monitoring.  It is well past time that this Court finally live up to its own incantation, but it is not too late to do so.

The defense, after conducting a good-faith investigation that included interviewing various federal public defenders across the country, has been unable to locate a single verifiable instance of home confinement for a misdemeanor defendant who has no criminal record. Of equal importance, the private, for-profit prosecutor has yet to cite to the Court even a single case to the contrary. This Court has elected to treat the pending criminal charges, for punishment purposes, as a single "petty offense" with a maximum sentence of six months in jail and a $5,000.00 fine; the defense survey covers all misdemeanors, including those that carry up to a year in jail.  While not foreclosing the possibility that some judge, somewhere, may have done what this Court has done, clearly Mr. Donziger is not being treated like "any other pretrial defendant."

Mr. Donziger's status as a respected and successful human rights attorney with decades of good-standing is also relevant to this inquiry.[1]  Federal prosecutions of attorneys in New York are uncommon, but not rare.  In the Southern District of New York, among the better-known cases, Michael Cohen, long-time "fixer" for Donald J. Trump, faced a raft of charges stemming from his criminal actions to subvert American democracy.  As part of a negotiated plea, he plead guilty to various charges on the day of his arrest, and was released on his own recognizance without posting a bond and without being ordered into home confinement.  He was sentenced to three years of incarceration and was allowed to surrender to his designated institution. Michael Avenatti, facing extortion charges, was released subject only to an unmonitored travel restriction to the Southern and Eastern Districts.[2] Lynne Stewart was charged with providing material aid to terrorism in the SDNY and faced a sentence of 30 years. She remained free without home confinement through the conclusion of her appeal, when she surrendered to begin her sentence of fifteen years. Also indicted in the SDNY was Stanley Cohen, who faced wire fraud and failure to file income tax returns and a maximum of twenty-five years in prison.  He was released pre-trial, not subject to home confinement, and was allowed voluntary surrender after his plea to an eighteen-month sentence.

In the Eastern District of New York, Scott Brettschneider was indicted for federal fraud/forgery charges, and faced up to five years in prison. He was not subject to home confinement. He was ultimately convicted and sentenced to three years' probation.  And in the EDNY's most famous contempt case, attorney Bruce Cutler was charged in 1993 with criminal contempt and released without home confinement. After a five-day trial, he was found guilty and sentenced to three years' probation, suspension from the EDNY for 180 days, and ninety days of home confinement.  In other words, Cutler's sentence *after being convicted* was less than one-fifth of the time in home confinement that Donziger has spent, pretrial.  And in the NDNY, Robert "Bugsy" Moran faced a host of assault, weapons and conspiracy charges growing out of a sprawling 10-defendant indictment.  He was released prior to trial without home confinement and ultimately sentenced to eighteen months on a guilty plea.

Undergirding this Court's various orders on this matter is that Mr. Donziger is "facing the real prospects of incarceration," Tr., at 12, Dkt. 44, 12-11-19, and is likely to flee unless constantly monitored ("freedom to roam for several hours a day would create an opportunity to get to an

---

[1] During oral argument in United States v. Mattis, 963 F.3d 285 (2d Cir. 2020), the prosecution argued that the defendants' status as public interest attorneys without criminal records were *aggravating* for release purposes, because these factors existed before the defendants allegedly firebombed police vehicles and as such, they did not deter the conduct. The Second Circuit expressly refused to accept this "heads I win, tails you lose" proposition, noting as a positive the fact that defendants worked in a profession that valued ethics, had devoted their careers to social betterment, and had no prior criminal record.  Id. at 294.  The Second Circuit allowed home confinement for these defendants, who were facing a *mandatory minimum of forty-five years* in prison.

[2] Avenatti was ultimately detained pre-trial after he apparently persisted in committing felonies while on pre-trial release.

airport and depart the country.").[3] Section 3142 (b)(1)(B) of Title 18 requires the "least restrictive" conditions that will "reasonably assure" the appearance of the defendant. It does not authorize the most restrictive condition that absolutely guard against the most absurd hypotheticals.

Addressing the issue of incarceration, this Court surely recognizes that every federal offense, including mere infractions, authorizes a punishment of some incarceration even if only for a few days; Mr. Donziger's offense ranks close to the bottom of authorized punishments. More important, if the very real possibility of incarceration were the actual guiding criterion in making pre-trial confinement decisions, one would expect to see many accused misdemeanants so held—rather than Mr. Donziger, exclusively.

The fact that Mr. Donziger, in the Court's view, supposedly has a place of refuge in Ecuador, is hardly a basis for imposing the most serious restrictions on liberty available, short of actual incarceration.  Many American citizens are also dual nationals, including dual nationals of countries that are "not . . . the best with extradition." Tr., 9, Dkt. 44, 12-11-19.  In the Southern and Eastern Districts, the courts commonly face citizens who are nationals of both the United States and Israel; the latter virtually never extraditing its citizens. Nonetheless, no other accused misdemeanant has been so confined. And Mr. Donziger is not a citizen of Ecuador and Ecuadorian law fully authorizes extradition of non-citizens residing there.  The fact that they are "not . . . the best" when it comes to yielding to the United States of America is not a legitimate basis to impose home confinement.

Fundamentally, to justify this confinement, this Court would have to find that there is a very real possibility that Mr. Donziger, at the age of 59, would abandon a 25-year residence in New York; abandon his wife, 14-year-old son, and extended family; abandon his extensive efforts to overturn his disbarment, which is currently pending in the New York State Court of Appeals; abandon his efforts to overturn civil contempt findings which is *sub judice* in the Second Circuit; commit at least a Class-D federal felony carrying five years imprisonment; and devote himself to life as a fugitive without the ability to travel outside of Ecuador, dependent always on the uneven vagaries of Ecuadorian political asylum—all to avoid what adds up to a maximum sentence of five months and three days in jail.

The actual Government of the United States has never made this contention and has not a comparable contention in any other similar case. Only the private, for-profit prosecutor handpicked by the charging judge has made it. This Court should countenance it no longer. Mr. Donziger should be released to pre-trial supervision, without conditions of home confinement, consistent with the "normal treatment of any pretrial defendant."

Respectfully submitted,

Ronald L. Kuby

---

[3] Of course, without a passport, it is hard to imagine Donziger being allowed to board an international flight, but whatever.