UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN DONZIGER,

                        Defendant.

19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO THE DEFENDANT'S RENEWED MOTION TO DISMISS**

Rita M. Glavin
Brian P. Maloney
Sareen K. Armani

*Special Prosecutors on behalf of the
United States*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 2

BACKGROUND ................................................................................. 2

    A.    Counts One, Two and Three: Pertinent Orders and Proceedings ......................... 2

        1.    The May 17, 2018 Order Directing Full Compliance with "Money Judgment Discovery" Requests by June 15, 2018 ................................. 4

        2.    The July 23, 2018 Order Directing Full Compliance with the Paragraph 5 Compliance Discovery Requests ......................................... 10

        3.    The October 18, 2018 Order Again Directing Compliance with Discovery, Directing Imaging and Examination of Donziger's Devices, and Finding Privilege Waiver ................................. 12

        4.    The March 5, 2019 Forensic Protocol Order ........................................... 15

        5.    Contempt Findings, Coercive Fines, and June 11, 2019 Passport Order ................................. 16

    B.    The Criminal Contempt Charges and First Pretrial Motion to Dismiss the Charges ................................. 20

    C.    The Instant Defense Motion to Dismiss ................................. 23

ARGUMENT ................................................................................... 24

    I.    DONZIGER'S RENEWED MOTION TO DISMISS SHOULD BE DENIED .. 24

    A.    A Party's Continuing Refusal to Obey a District Court Order That Has Not Been Stayed, Modified or Vacated, Subjects That Party to Criminal Contempt Regardless of Whether Appellate Review of the Order is Pending ................................. 24

        1.    Production Orders Are Not "Unique" Under the Law ........................... 26

    B.    Donziger Did Not "Seek Appeal at Every Opportunity" ..................................... 30

CONCLUSION ................................................................................ 35

i

## TABLE OF AUTHORITIES

### CASES

*Alexander v. United States,*
    201 U.S. 117 (1904)................................................................ 26, 27, 28, 29

*Cobbledick v. United States,*
    309 U.S. 323 (1940)..................................................................... 26, 27, 28

*Dinler v. City of N.Y. (In re City of N.Y.),*
    607 F.3d 923 (2d Cir. 2010).......................................................... 25, 28, 32

*Gompers v. Bucks Stove & Range Co.,*
    221 U.S. 418 (1911)................................................................................. 25

*In re Chevron Corp.,*
    749 F. Supp. 2d 170 (S.D.N.Y. 2010)......................................................... 13

*In re Holloway,*
    995 F.2d 1080 (D.C. Cir. 1993)................................................................. 23

*In re Levine,*
    27 F.3d 594 (D.C. Cir. 1994).................................................................... 23

*In re Weiss,*
    703 F.2d 653 (2d Cir. 1983)............................................................... 1, 25, 28

*In re Williams,*
    509 F.2d 949 (2d Cir. 1975) ..................................................................... 28

*Int'l Union v. Bagwell,*
    512 U.S. 821 (1994)................................................................................. 25

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.,*
    412 F.3d 418 (2d Cir. 2005)...................................................................... 33

*Kaufman v. Edelstein,*
    539 F.2d 811 (2d Cir. 1976)...................................................................... 25

*Lago Agrio Plaintiffs v. Chevron Corp.,*
    409 Fed. App'x 393 (2d Cir. 2010)............................................................. 13

*Maness v. Meyers,*
    419 U.S. 449 (1975)......................................................................... 1, 24, 26, 28

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
    591 F. 2d 174 (2d Cir. 1979).................................................................... 25

*Nilva v. United States*,
    352 U.S. 385 (1957)............................................................................... 27

*Pac. Union Conference of Seventh-Day Adventists v. Marshall*,
    434 U.S. 1305 (1977)............................................................................. 32

*Shillitani v. United States*,
    384 U.S. 364 (1966)............................................................................... 25

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*,
    745 F.3d 30 (2d Cir. 2014)..................................................................... 32

*United States v. Crawford (In re Criminal Contempt Proceedings Against Crawford)*,
    329 F.3d 131, 138-39 (2d Cir. 2003) .................................................... 26

*United States v. Cutler*,
    58 F.3d 825 (2d Cir. 1995).......................................................... 22, 26, 29

*United States v. Cutler*,
    815 F. Supp. 599 (E.D.N.Y. 1993) ....................................................... 22

*United States v. Marshall*,
    371 F.3d 42 (2d Cir. 2004)..................................................................... 28

*United States v. Remini*,
    967 F.2d 754 (2d Cir. 1992)................................................................... 27

*United States v. Ryan*,
    402 U.S. 530 (1971)......................................................................... 26, 28

*United States v. United Mine Workers*,
    330 U.S. 258 (1947)................................................................... 25, 26, 28

*United States v. Victoria-21*,
    3 F.3d 571 (2d Cir. 1993)....................................................................... 32

*Young v. United States ex rel. Vuitton*,
    481 U.S. 787 (1987)............................................................................... 22

## STATUTORY AUTHORITIES

18 U.S.C. § 401(1) ........................................................................................... 28, 29

18 U.S.C. § 401(3) ........................................................................................... 21, 29

## RULES AND REGULATIONS

S.D.N.Y. Civ. R. 26.2 ...................................................................................... 13, 32

Fed. R. Civ. P. 26(b)(5) ................................................................................... 13, 32

Fed. R. Civ. P. 62(c) ............................................................................................. 10

## PRELIMINARY STATEMENT

Defendant Steven Donziger moves to dismiss—for the second time—three counts of the July 31, 2019 Order to Show Cause charging him with criminal contempt based on Donziger's pattern of deliberate and continuing disobedience of court orders that were not stayed and remain in full force and effect to this day.  The motion is meritless and should be denied, just as the Court denied the defendant's first motion for dismissal on May 7, 2020 (Dkt. 68).

In this newest motion to dismiss, Donziger argues a legal theory—i.e., that "those who risk contempt to seek appellate relief risk only civil contempt for purposes of appeal and while the appeal is pending," Dkt. 225-1 at 5—that is directly contradicted by controlling U.S. Supreme Court and Second Circuit caselaw.  *See, e.g.*, *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must promptly comply with the order pending appeal.  Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."); *In re Weiss*, 703 F.2d 653, 664 (2d Cir. 1983) (Courts "may impose criminal contempt sanctions, or civil contempt sanctions, or both" in response to a party's willful refusal to obey a court order, and "the determination of the appropriate response is committed largely to the court's discretion.").  Donziger's contention that he can continue to intentionally disobey court orders that have not been stayed or modified by the District Court or the Circuit without risk of criminal contempt charges is wrong.

In addition to arguing a legal theory that is wrong, Donziger also puts forth factual assertions that are not true in an effort to support his erroneous legal theory.  Specifically, Donziger claims that "at every moment from which appellate relief could theoretically be sought, Mr. Donziger sought it" and that his appeal from the Court's May 23, 2019 contempt findings "challenged the Forensic Protocol, inasmuch as it challenged the entire discovery process –

1

concluding with the Forensic Protocol and Mr. Donziger's refusal to cooperate with it – which was authorized as a result of Chevron's specious contempt allegation." Dkt. 225-1 at 11.  The evidence at trial will be that: (1) Donziger never sought a stay from the Second Circuit of any of the orders at issue, despite being on notice that he must comply absent a stay; (2) Donziger never sought the available appellate option of a writ of mandamus with respect to the discovery production orders and March 5, 2019 Forensic Inspection Protocol for which he complained that compliance would cause disclosure of privileged and constitutionally-protected information; and (3) Donziger did not challenge the March 5, 2019 Forensic Inspection Protocol order on appeal nor did he challenge the June 11, 2019 passport order on appeal.

The defendant's motion to dismiss is wrong on both the law and the facts and should be denied.

## BACKGROUND

The defense's latest motion to dismiss challenges Counts One through Three of the July 31, 2019 Order to Show Cause, which were charged after Donziger's willful disobedience of numerous court orders issued during post-judgment discovery proceedings between March 2018 and July 2019.  The defendant's recitation of the factual background regarding the proceedings relating to Counts One through Three, however, omits material facts and contains inaccuracies.  Accordingly, set forth below is a summary of what the Special Prosecutors expect to prove at trial regarding the facts, proceedings and orders relating to Counts One through Three.

**A      Counts One, Two and Three:  Pertinent Orders and Proceedings**

After Donziger exhausted his appeals from the March 4, 2014 judgment against him and others in the underlying civil action *Chevron Corporation v. Donziger et al.*, 11 Civ. 691.  Civ. Dkt. 1875 (the "RICO Judgment"), the parties engaged in litigation concerning the

amount of costs to be taxed on Donziger as the losing party to the underlying civil case.  On February 28, 2018, the U.S. District Court Judge Lewis A. Kaplan issued a supplemental money judgment in Chevron's favor and against Donziger and other defendants in the Civil Case of $813,602.71 (the "Money Judgment").  Civ. Dkt. 1962.[1]  Donziger noticed an appeal of the Money Judgment, Civ. Dkt. 1972, but never posted a supersedeas bond to stay execution of the Money Judgment.

Following issuance of the Money Judgment, Chevron engaged in post-judgment discovery of Donziger and various third parties on the issues of: (1) identifying assets to enforce the Money Judgment against Donziger; and (2) Donziger's compliance with the RICO Judgment, after Chevron obtained evidence that Donziger had been seeking to sell interests in the Ecuadorian Judgment in violation of the RICO Judgment's prohibition against him taking any acts to monetize or profit from that judgment. *See* Civ. Dkts. 1966, 1968, 1987. Chevron had moved on March 19, 2018 to hold Donziger in contempt for, among other things, violating the RICO Judgment's paragraph five prohibition against "undertaking any acts to monetize or profit from the Judgment. . . including without limitation by selling, assigning, pledging, transferring or encumbering any interest therein" after Chevron obtained evidence that Donziger solicited an

---

[1]     The original level of costs imposed by the Clerk of Court on Donziger was $944,463.85, which included fees and expenses of special masters appointed to monitor discovery in the underlying civil case in the amount of $872,387.63.  Civ. Dkt. 1928. Judge Kaplan reduced this figure by apportioning 85% of those special master costs, or $741,526.49, on Donziger and his co-defendants.  Judge Kaplan adopted this apportionment of the special masters' costs based on the special masters' recommendation owing to "the parties' – most often, defendants' – obstructive behavior in connection with scheduling, frivolous and repetitious assertions of privilege, and unwillingness to accept prior rulings."  Civ. Dkt. 1963 at 42; *see id* at 43-44 (citing Donziger's "stubborn insistence on relitigating prior final rulings" and his "staggeringly uncooperative" behavior during discovery, in concluding that "defendants' behavior was responsible for most, but not all, of the many hours spent [by the special masters] supervising the litigation").

investment from New York City hedge fund Elliott Management in exchange for an interest in proceeds from enforcement from the Ecuadorian judgment.  Civ. Dkt. 1875 at 3.  However, Chevron wanted further discovery on the issue of Donziger's compliance with the RICO Judgment. Civ. Dkt. 1966 at 16 ("In light of the already-established violations of the [RICO] Judgment and indications that other violations likely exist, post-judgment discovery is necessary to uncover the full extent of Donziger and his co-conspirators' ongoing violations of this Court's order.").

On April 16, 2018, Chevron served Donziger with an information subpoena, requests for production of documents, and a deposition notice.  *See* Civ. Dkts. 1989, 1989-1.  On April 30, 2018, Donziger served blanket objections and responses to Chevron's requests.  *See* Civ. Dkt. 1989-2.  Donziger asserted eight general objections to Chevron's discovery requests, including that discovery was "not appropriate" because the Money Judgment was on appeal and the requests were burdensome, overbroad and irrelevant.  Civ. Dkt. 1989-2 at 1.  Rather than responding to the discovery requests regarding his assets, Donziger represented that "my financial situation is not much more complicated than that of an average household" and proposed that instead of responding to Chevron's discovery requests about his specific assets he would provide a "short summary of my financial condition and assets, backed up by supporting documents."  *See* Civ. Dkt. 1989-2 at Obj. G2.  Donziger did not object to Chevron's discovery requests on First Amendment grounds.

1.      *The May 17, 2018 Order Directing Full Compliance with "Money Judgment Discovery" Requests by June 15, 2018*

Following meet and confer teleconferences, on May 4, 2018, Chevron moved to compel Donziger to respond to its post-judgment discovery requests. Civ. Dkt. 1989. After briefing on the motion to compel, which included Donziger's opposition to the requested

discovery, on May 17, 2018, Judge Kaplan divided Chevron's April 16, 2018 discovery requests into two categories: (1) "Money Judgment Discovery" requests directed at "identifying assets with respect to which the [RICO] judgment may be enforced and related matters" as modified by the Court's order, and (2) "Paragraph 5 Compliance Discovery" requests concerning compliance with paragraph 5 of the RICO Judgment. *See* Civ. Dkt. 2009 at 1 n.1-2. Judge Kaplan directed Donziger to "comply fully with all of the Money Judgment Discovery Requests, as modified by this order," by June 15, 2018. *Id*. at 3 (ordering Donziger to fully respond to Chevron's April 16, 2018 document requests 1 through 17, 19, 23 through 28 and 30, and information subpoena request paragraphs 1-20 and 26-31, as modified or limited by the court's order). Judge Kaplan determined that Donziger's discovery objections were largely unsubstantiated and/or without merit. *Id.* at *2*.   Judge Kaplan specifically found Donziger's argument that Chevron should not be permitted to conduct discovery for the purposes of enforcing the Money Judgment to be "frivolous," given that Donziger chose not to post a supersedeas bond nor attempted to demonstrate that a stay of execution on the Money Judgment with a bond should be granted as a matter of discretion.  *Id*. at 2.  Judge Kaplan ruled that discovery for purposes of enforcing the Money Judgment was "entirely appropriate." *Id.*  Judge Kaplan also directed Donziger to appear and testify at a deposition pursuant to Chevron's April 16, 2018 subpoena. *Id.* at 3.

In that same May 17, 2018 order, Judge Kaplan found that Chevron was entitled to conduct appropriate Paragraph 5 Compliance Discovery, but deferred ruling on the specific discovery requests that constituted Paragraph 5 Compliance Discovery until after a hearing on the Elliott Management matter—which was a subject of Chevron's pending March 19, 2018 contempt motion.  *Id.* at 2-3.  ("The Court defers decision with respect to the Paragraph 5 Compliance Discovery.").

On May 25, 2018, Chevron moved among other things for the Court to require Donziger to respond by June 15, 2018 to the Paragraph 5 Compliance Discovery requests in advance of a June 2018 evidentiary hearing on the pending contempt motion regarding Donziger's violation of paragraph five of the RICO Judgment by soliciting an investment from Elliott Management.  Civ. Dkt. 2016 at 1.  By memo-endorsed order dated May 29, 2018, the Court informed the parties it was reserving decision on the Paragraph 5 Compliance Discovery requests and asked for any response from Donziger to Chevron's request by May 30, 2018.  Civ. Dkt. 2017.

Donziger did not submit any response to Chevron's May 25 letter motion on May 30.  Instead, on May 31, 2018, Donziger moved to dismiss Chevron's pending application to hold him in contempt for taking actions to profit from the Ecuadorian Judgment in violation of paragraph five of the RICO Judgment. Civ. Dkt. 2018 at 12 (asserting, among other things, the pending contempt motion "lacks any factual content suggesting the involvement of the specific interests of Mr. Donziger" and others).  Chevron, in its June 1, 2018 response to Donziger's May 31 motion, noted that "Donziger failed to challenge Chevron's entitlement to 'Paragraph 5 Compliance Discovery' by this Court's deadline of May 30 or in his untimely motion."  Civ. Dkt. 2019 at 1.

On June 1, 2018, the Court ruled on Chevron's May 25 letter motion seeking Paragraph 5 Compliance Discovery. Civ. Dkt. 2020. The Court permitted limited Paragraph 5 Compliance Discovery in advance of a June 28, 2018 evidentiary hearing:

> The Donziger Defendants, on or before June 15, 2018, shall produce the documents requested by Request Nos. 21, 22 and 29 of Chevron's First Set of Requests for Production of Documents in Aid of the Supplemental Judgment (the "RFP") and answer fully Items 21, 22, 23 and 25 of Chevron's First Information Subpoena in Aid of the Supplemental Judgment (the "Information Subpoena").  As

this order is intended only to assist in preparation for the hearing now scheduled for June 28, 2018 the Donziger Defendants are required to comply with these requests and items only to the extent of producing documents and providing information bearing on the attempt to obtain funds from Elliott Management Company ("Elliott"), any affiliates of Elliott, and/or any funds managed by Elliott or its affiliates (collectively, the "Elliott Group").

The Court continues to reserve judgment as to whether and when to require compliance with these and other parts of the RFP and the Information Subpoena that were defined in its May 17, 2018 order as Paragraph 5 Compliance Discovery that seek discovery with respect to matters and entities other than the attempt to obtain funding from the Elliott Group.

Civ. Dkt. 2020 at 2.[2]

---

[2]     The defendant's motion to dismiss is factually incorrect in its contention that Judge Kaplan's June 1, 2018 order directing *some* compliance by Donziger with the Paragraph 5 Compliance Discovery requests somehow reversed or modified the May 17, 2018 Order directing full compliance with the Money Judgment Discovery Requests by June 15, 2018. *See* Trivedi Decl. at ¶¶ 23-24.  Specially, the defense declaration in support of the dismissal motion asserts that Judge Kaplan's June 1, 2018 order "thus ordered full compliance with *a very small subset* of Chevron's First Set of Requests for Production and First Information Subpoena (which the Court had ordered full compliance with on May 17, 2018)—demanding compliance with only Requests Nos. 21, 22 and 29, and Items 21, 22, 23 and 25." *Id.* at ¶ 23 (emphasis in original).  Nothing about Judge Kaplan's June 1, 2018 order modified or limited the May 17, 2018 order directing full compliance with the Money Judgment Discovery requests by June 15, 2018.

Indeed, paragraph 24 of the defense declaration curiously omits critical language from Judge Kaplan's June 1, 2018 order that made it very clear that the order applied only to Paragraph 5 Compliance Discovery requests, not the Money Judgment Discovery Requests. The defense declaration at paragraph 24 states that in the June 1, 2018 order:  "The Court reserved judgment as to whether and when to request compliance with 'these and other parts of the [Requests] that were defined in its May 17, 2018 order." Trivedi Decl. ¶ 24 (purportedly quoting from the June 1, 2018 order at Dkt. 2020).  The full sentence of the June 1, 2018 order—the sentence that the defense purportedly quoted from—reads in full as follows:

The Court continues to reserve judgment as to whether and when to require compliance with these and other parts of the RFP and the Information Subpoena that were defined in its May 17, 2018 order as Paragraph 5 Compliance Discovery that seek discovery with respect to matters and entities other than the attempt to obtain funding from the Elliott Group.

On June 15, 2018, Donziger did not fully comply with the Money Judgment Discovery requests directed by the District Court's May 17 order.  Instead, on June 15 Donziger moved the District Court for a protective order, on First Amendment freedom of association grounds, seeking an order

> precluding any discovery in these post-judgment proceedings (including discovery sought from third-parties) that would tend to reveal the identity of any funder or other material supporter of the Ecuador Litigation and/or the internal operational, organizational, administrative, or financial management practices of the teams of individuals and organizations that directly and indirectly oppose Chevron in the Ecuador Litigation . . . and/or more broadly engage in Ecuador Litigation-related advocacy. . . .

Civ. Dkt. 2026 at 2. Also on that same day, Donziger served Chevron with supplemental objections and responses to the outstanding April 16, 2018 discovery requests with which the District Court had already directed to Donziger to comply, and added his new First Amendment objection, contending that "the forced production of many of these materials in this context would violate First Amendment associational rights of me and others." Civ. Dkt. 2138-3 at 3 (Obj. & Resp. at Obj. G9).  Four days later, on June 19, 2018, Donziger moved the District Court for an emergency stay of some discovery while his motion for a protective order was pending. Civ. Dkt. 2028.

On June 25, 2018, Judge Kaplan denied Donziger's motions for dismissal of Chevron's pending contempt motion (Civ. Dkt. 2018), a protective order (Civ. Dkt. 2026), and an emergency stay (Civ. Dkt. 2028). Civ. Dkt. 2037. In a June 27, 2018 opinion, Judge Kaplan

---

Dkt. 2020 at 2 (emphasis added).  The June 1, 2018 order in no way modified Donziger's outstanding obligation to fully comply with the Money Judgment Discovery requests by June 15, 2018.  The June 1, 2018 order addressed only the Paragraph 5 Compliance Discovery, and required production of some of that discovery by June 15—*in addition to the production of the Money Judgment Discovery that the District Court already directed Donziger to produce*.

explained his reasoning for denying Donziger's motions, including the lack of merit of
Donziger's First Amendment argument to prevent discovery over large categories of
information.  Civ. Dkt. 2045.  On the same day that Judge Kaplan denied Donziger's motions—
June 25—Donziger was deposed by Chevron as directed by Judge Kaplan's May 17, 2018
discovery order.  During that deposition, in response to a question about the volume of
documents he was withholding, Donziger stated:  "Well, it is a few hundred pages, but if Judge
Kaplan were to order me to produce everything that you are asking for, it obviously would be a
lot more than that." Civ. Dkt. 2114-1 at Tr. 47:16-22.  On this same issue, Donziger stated:  "I do
know that some of the documents, many of the documents are being withheld on First
Amendment grounds." *Id*. at 49:16-18.  When asked about whether he intended to produce a
privilege log for documents he withheld as privileged, Donziger stated:

> I think with regard to my documents, I could provide a log, but I
> think a lot of them are being withheld not on privilege grounds but
> on First Amendment grounds.  But, you know, I described what I'm
> withholding to some degree today and I'm ready to produce more if
> I need to.  I don't want to because, again, I think it intrudes on my
> constitutional right.  So I will produce more documents if I have to.

*Id*. at 232:11-21.  Donziger acknowledged that he had not provided a privilege log for documents
he was withholding on the basis of privilege.  *Id*. at 48:17:22.

On June 28, 2018, Donziger filed a notice of appeal of June Kaplan's June 25,
2018 order (Civ. Dkt. 2037) and accompanying June 27, 2018 opinion (Civ. Dkt. 2045).  Civ.
Dkt. 2049.  The notice of appeal was filed deficiently.  Donziger subsequently filed another
notice of appeal on July 26, 2018 from Judge Kaplan's June 27, 2018 opinion (Civ. Dkt. 2045)
and from a July 23, 2018 order (Civ. Dkt. 2056).  Civ. Dkt. 2060; *see* 2d Cir. Dkt. 18-2191.  But
Donziger strategically chose not to seek a stay in the Circuit of either the May 17 or June 1

discovery orders, or the post-judgment proceedings at issue in the June 25 ruling while his appeal was pending.

        2.     *The July 23, 2018 Order Directing Full Compliance with the Paragraph 5 Compliance Discovery Requests*

        On July 23, 2018, Judge Kaplan directed Donziger to comply with the Paragraph 5 Compliance Discovery by August 15, 2018 and: (1) produce to Chevron all documents described in the requests 18, 21, 22 and 29 of Chevron's April 16, 2018 document production request; and (2) serve Chevron with full and complete answers to paragraphs 21 through 25 of Chevron's information subpoena. *See* Civ. Dkt. 2056.  On July 26, 2018, Donziger noticed an appeal from Judge Kaplan's July 23, 2018 discovery order, along with the June 27, 2018 opinion (Civ. Dkts. 2045, 2056).  Civ. Dkt. 2060; *see* 2d Cir. No. 18-2191.  On August 13, 2018, Donziger sought a stay from the District Court of *all* discovery pending resolution of his appeal to the Circuit, arguing among other things that "the Court's refusal to offer protective and/or injunctive relief necessary to protect the associational rights of myself and others under the First Amendment is unconstitutional," "the discovery would inflict harm that would be effectively unreviewable on appeal and imperil a substantial public interest," he has a "strong likelihood of success on the appeal," and "the possibility of success required is less still in light of [] severe irreparable injury threatened…"  Civ. Dkt. 2067 at 1-3.  Donziger argued that he had met all the requirements for a stay under Fed. R. Civ. Pro. 62(c).

        While Donziger's motion for a stay was pending, on August 16, 2018, Chevron moved to compel Donziger to respond to all post-judgment discovery requests as previously directed by the District Court on May 17 and July 23.  Civ. Dkt. 2073.  Chevron argued that Donziger was in "blatant violation of multiple discovery orders" and cited, among other things: in response to more than 30 requests, Donziger produced "a mere 22 pages worth of documents –

relying on previously overruled scope and First Amendment objections, unsubstantiated privilege claims, and a supposed lack of resources"; Donziger's refusal to "answer dozens of questions at his June 25 deposition"; Donziger's failure to disclose a bank account "from which hundreds of thousands of dollars were paid to him and to his co-conspirators"; Donziger's admission to having withheld "a few hundred pages" of responsive documents on the basis of previously rejected First Amendment objections; and Donziger's failure to conduct even the most basic document searches. Civ. Dkt. 2073 at 1-3.

To the extent Donziger was relying on unspecified privilege claims to avoid production, Chevron argued that Donziger's failure to produce a privilege log waived privilege. *Id.* Finally, Chevron requested that the District Court direct Donziger to present his electronic devices for imaging, with the images to be lodged with the District Court. *Id.* at 3. In response, on August 21, 2018, Donziger filed an "Opposition to Chevron's Latest Motion to Compel and Reiterated Motion to Stay," requesting that Chevron's motion to compel be denied or held in abeyance pending his appeal. Civ. Dkt. 2077. On the issue of privilege, Donziger did not dispute that he had not produced a privilege log.  He stated that he "noted privilege claims as appropriate," and that "[w]hile we have not yet reached a stage where specific claims of privilege are necessary. . .undersigned maintains and preserves all applicable claims of privilege and protection. . . " *Id.* at 3.  Donziger maintained that Chevron's request for forensic images of his devices was unreasonable and intrusive, and asserted that he had not and will not destroy or fail to maintain any records as required by the preservation order.  *Id.* at 4.

On September 25, 2018, Judge Kaplan denied Donziger's August 16 motion for a stay of all discovery pending appeal.  Civ. Dkt. 2088.  Judge Kaplan made clear that the post-judgment discovery at issue was aimed at: (a) "discovering assets to satisfy the outstanding

money judgment in Chevron's favor against Donziger;" (b) "determining the sources of his income so that it may be applied to satisfaction;" and (c) determining whether Donziger has complied with injunctive and other provisions of the judgment." *Id.* at 2.  On the issue of the Money Judgment Discovery, the District Court observed that Donziger had "neither posted a supersedeas bond nor applied for a stay of enforcement on any other basis" and "[t]he judgment creditor has every right to seek to collect on that judgment notwithstanding the pendency of the appeal and to conduct discovery for the purpose of doing so." *Id.*  As for the First Amendment constitutional claims, the District Court again rejected Donziger's arguments, found that his claims of "irreparable injury are unsubstantiated," and that "allowing [Donziger] to continue to prevent enforcement of the money judgment against him and to frustrate efforts to determine whether he is violating the injunction against him threaten Chevron with irreparable injury." *Id.* at 3. Following this ruling, Donziger sought no stay in the Second Circuit of the discovery production orders or the post-judgment proceedings.  The evidence at trial will be that Donziger continued to withhold documents on First Amendment grounds, despite having no stay of the orders.

3.   *The October 18, 2018 Order Again Directing Compliance with Discovery, Directing Imaging and Examination of Donziger's Devices, and Finding Privilege Waiver*

On October 18, 2018, Judge Kaplan granted Chevron's August 16 motion to compel. Civ. Dkt. 2108. Judge Kaplan specifically noted that the July 23, 2018 order directing Donziger to respond to certain discovery requests by August 15, 2018 remains in effect and has not been stayed, and that Donziger must comply with that order "in each and every respect on pain of contempt." *Id.*  Judge Kaplan observed that, given "Donziger's stonewalling of post-judgment discovery and the other circumstances" described in the motion to compel, it was

"appropriate that Donziger's electronic devices be imaged and examined for any responsive documents that Donziger has not thus far produced under appropriate safeguards of the interests of all parties." *Id.* at 2. Judge Kaplan directed the parties to confer and come up with an agreement by October 26, 2018—if possible—regarding a third party who would take custody of Donziger's devices for imaging. *Id.*

With respect to Chevron's argument that Donziger had waived privilege for failure to produce a privilege log, Judge Kaplan agreed.  Judge Kaplan ruled that Donziger's failure to provide a privilege log in compliance with Fed. R. Civ. P. 26(b)(5) and S.D.N.Y. Civ. R. 26.2 resulted in a waiver or forfeiture of any privilege claim to responsive documents and information that otherwise might have applied,[3] and further directed Donziger to "comply fully with the outstanding discovery requests forthwith without withholding any responsive documents or information on privilege grounds." *Id.* at 2. Donziger did not seek a stay of this order or any appellate relief.

On October 25, 2018, in a letter docketed as a "Letter Motion to Expedite," Donziger informed Judge Kaplan that he would not comply with the October 18 order because it would allow Chevron to gain access to "[his] confidential, privileged and protected documents, without any legitimate basis," and invited Judge Kaplan to hold him in contempt. Civ. Dkt. 2118. Donziger once again raised his First Amendment objection to the post-judgment discovery, which the Court had already rejected in its June 27, 2018 opinion and again in the September 25,

---

[3]     In finding the privilege waiver, Judge Kaplan specifically noted: (1) Donziger had previously ignored those rules in the Chevron litigation and it resulted in a privilege waiver, *see e.g.*, *In re Chevron Corp.,* 749 F. Supp. 2d 170 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.,* 409 Fed. App'x 393 (2d Cir. 2010); and (2) Donziger still failed to comply with those rules after being on put on notice in Chevron's August 16 motion to compel that Chevron was asserting that Donziger's failure to provide a log should result in a waiver. *Id.*

2018 stay denial. *Id.* at 3 n.1.  Donziger characterized "Chevron's massive and growing discovery campaign" as "illegitimate." *Id.*  Donziger claimed—without any mention of the pending Money Judgment Discovery requests that he had not fully complied with—that Chevron's post-judgment discovery "has zero basis to proceed if there is no colorable contempt case against [him]." *Id.* at 2-3. Donziger asked Judge Kaplan to rule on Chevron's pending March 19, 2018 contempt motion related to Donziger's litigation finance efforts concerning Elliott Management so that Donziger could seek appellate review in the event Judge Kaplan found him in contempt of the RICO judgment for his activities. *Id.* at 3.  In a subsequent November 8, 2018 filing, Donziger informed Judge Kaplan that "I intend to openly and ethically refuse to comply with any production order and to take an immediate appeal of any resulting contempt finding the Court issues against me," if the Court does not rule on Chevron's original March 19 contempt motion regarding Donziger's litigation finance efforts and "continues to refuse to allow me to assert any privilege whatsoever." Civ. Dkt. 2131 at 2.

> In a November 26, 2018 memo-endorsed order, Judge Kaplan stated:
>
>> Donziger's letter motion overlooks or ignores so much that already is of record in prior decisions by this Court and elsewhere that no purpose would be served by a point-by-point refutation, the preparation of which could serve only to delay that which he seeks to have expedited. It suffices to say that the contempt motions now before the Court will be decided in due course, bearing in mind that this is not the only case on the Court's docket.

Civ. Dkt. 2133.

On January 8, 2019, the parties appeared before the District Court to address the issue of a protocol for the imaging and examination of Donziger's devices for responsive documents.  During that conference, Donziger again argued that he had a "foundational objection" to the protocol and asked the District Court to "hold off" on the protocol.  Civ. Dkt.

2149 at 10-11.  Donziger claimed, once again, that there was "no legitimate basis for discovery" because "there's no legitimate basis for which to find me in contempt." *Id*. at 12.  Judge Kaplan stated: "The foundational objection I have ruled against.  They have a right to conduct appropriate discovery as far as I'm concerned. I know you have an appeal pending in the Second Circuit.  I know their brief is due sometime in March.  That's the way goes. You don't have a stay." *Id.* at 13-14.

    4.    *The March 5, 2019 Forensic Protocol Order*

On March 5, 2019, Judge Kaplan issued a Forensic Inspection Protocol Order ("Protocol") to govern the collection, imaging and examination of Donziger's electronically stored information for information responsive to the outstanding post-judgment discovery requests. Civ. Dkt. 2172. The Protocol, at paragraph four, directed Donziger to provide by March 8, 2019 to a court-appointed Neutral Forensic Expert and to Chevron's Forensic Expert a sworn list of all devices Donziger "has used to access or store information or for communication since March 4, 2012," as well as any electronic communication accounts or document management or messaging services he had used since that same date. Civ. Dkt. 2172 ¶ 4. The Protocol, at paragraph five, directed Donziger to surrender to the Neutral Forensic Expert on March 18, 2019 at 12:00 p.m. all of his devices so that the Neutral Forensic Expert could image them. *Id.* ¶ 5. Donziger did not seek a stay of this order nor any other appellate relief such as a petition for writ of mandamus.

Donziger did not comply with the directives of paragraphs four and five of the Protocol. Donziger made clear in a March 11, 2019 email to the Neutral Forensic Expert that he had no intention of complying with the Protocol: "I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review. . . So I hope you have not

cleared your schedule to work on this matter, because, as Chevron knows, I will not be

producing documents until my due process rights are respected." Civ. Dkt. 2173-1.

     5.    *Contempt Findings, Coercive Fines, and June 11, 2019 Passport Order*

     Chevron moved to hold Donziger in contempt for, among other things, failing to

comply with the Protocol. *See* Civ. Dkts. 1968, 2089, 2112, 2175. On May 23, 2019, Judge

Kaplan found Donziger in civil contempt for, among other things: (1) Donziger's failure to

comply with paragraph four of the Protocol, i.e., Donziger's failure to provide a sworn list of his

electronic devices and all accounts; (2) Donziger's violation of paragraph one of the RICO

Judgment by his failure to transfer to Chevron his contractual right to a contingent fee traceable

to the Ecuadorian judgment; (3) his violation of paragraph five of the RICO Judgment by

assigning a portion of his putative contingent fee interest in the Ecuadorian judgment in

exchange for personal services; and (4) Donziger's violation of paragraph one of the RICO

Judgment provision by virtue of his profiting in the amount of $666, 476.34 from the sale of

interests in the Ecuadorian judgment. Civ. Dkt. 2209 at 69-70. On May 27, 2019, Donziger filed

a notice of appeal of the May 23 decision holding him in contempt. Civ. Dkt. 2211. On May 29,

2019, Judge Kaplan found Donziger in civil contempt for his failure to comply with paragraph

five of the Protocol, i.e., Donziger's failure to surrender his devices to the Neutral Forensic

Expert on May 18, 2019 at directed. Civ. Dkt. 2219 (as corrected on June 4, 2019, Civ. Dkt.

2222). Donziger did not notice an appeal of this May 29, 2019 contempt finding.

     With respect to Donziger's failure to comply with paragraphs four and five of the

Protocol, Judge Kaplan imposed escalating coercive fines. *See* Civ. Dkts. 2209, 2222. At a June

10, 2019 status conference to address the issue of Donziger's compliance with the Protocol,

Donziger stated that all his assets were frozen and he lacked the means to pay any of the fines.

*See* Civ. Dkt. 2352 at 14-15. While conceding that he had not complied with paragraph five of the Protocol, Donziger indicated he took steps in bring himself into compliance with paragraph four. *Id.* at 4-5, 6-8.  However, Donziger declined to take the witness stand to substantiate his claims of compliance. *See id*. at 5-7.  Because Chevron raised the issue of Judge Kaplan issuing an order directing Donziger to surrender his passport as an additional measure to coerce compliance, Donziger stated that "I will voluntarily surrender my passport until I can deal with it at the Second Circuit. But I just don't believe that would be an appropriate move." *Id.* at 16. Judge Kaplan then again made Donziger aware of his obligation to comply with court orders absent a stay: "You have the ability to get yourself out of whatever box you're in by complying with my orders.  And the United States Supreme Court says, absent a stay, you have an obligation to do that, and if you do not discharge that obligation, you do it at your own risk.  And that's been clear to you for a very long time.  And you disregard order after order." *Id.* at 16-17. When Donziger again raised his First Amendment argument, Judge Kaplan informed him:

> I've hear that record played many times before.  Now, let's end it. I'm not going to listen to it anymore.  You've been fully heard on it. You have briefed it.  I have issued an opinion on it.  You appealed from that opinion.  You filed a brief in the Second Circuit.  It hasn't been calendared for argument.  You never sought a stay of it.  There it is.  You're welcome to go on to the Second Circuit and see what happens.  But you take your chances in doing so.

*Id.* at 18-19.  At the end of the conference Judge Kaplan stated:

> Look, Mr. Donziger, just so it's entirely clear, these coercive fines that I have imposed I have made clear will evaporate if, as, and when you are in full compliance.  They will be gone.  I'm not sure I had to do that, but I have made that commitment.  But every day that goes by – and indeed your statements here suggest to me that they're a waste of time and that if these orders are to be enforced it's going to take more than I've done up to now.  Now, you would be well advised, so far as paragraph 4 is concerned, to work out your problems with Chevron and take care of at least part of it, which you don't seem to be as upset about as the rest.  And you did manage to

> finally comply with an order that's been outstanding for five years
> in respect of the assignment.  We may come to a very hard place on
> paragraph 5 for you.  But that's where we are.  And I'm being totally
> straight with you.

*Id.* at 20.

On June 11, 2019, Judge Kaplan issued an Order directing Donziger to surrender his passport to the Clerk of the Court by June 12, 2019 at 4 p.m., as an additional coercive step to cause Donziger to fully comply with the Protocol. Civ. Dkt. 2232. On June 12, 2019, Donziger filed with the District Court an "Emergency Motion to Stay Fines and Sanctions Pending Appeal or in the Alternative for an Administrative Stay." Civ. Dkt. 2234. In that motion, among other things, Donziger stated "I am not able to comply with the Court's deadline of 4 p.m. today in the Passport Order on account of this pending motion for emergency relief and the severe and irreparable harm as articulated in this motion."  *Id.* at 15 n.6   Donziger complained that the passport order "is thoroughly unfounded" and complained that the order targeted "a fundamental aspect of personal liberty protected by the Due Process clause of the Constitution." Civ. Dkt. 2234 at 10-11.   Donziger requested that the District Court

> stay all fines and coercive orders to allow for resolution of the
> instant motion and grant the motion to stay all of its coercive fines
> and sanctions pending my current appeal and any forthcoming
> appeal of Dkts. 2219 [May 29 order finding Donziger in contempt
> of paragraph five of the Protocol] and/or 2232 [June 11 passport
> order].  In the alternative, if the Court is unwilling to issue the full
> stay, undersigned requests that the Court administratively stay all
> fines and coercive orders until the Second Circuit is able to resolve
> a forthcoming emergency motion to stay under Rule 8 of the Federal
> Rules of Appellate Procedure.

*Id.* at 15.

On June 25, 2019, Donziger filed a brief in further support of his motion for an emergency stay pending appeal.  With respect to his admitted continuing noncompliance with

paragraph five of the Protocol (surrender of his devices for imaging), Donziger proposed "an alternative that I believe would respect the wishes of the Court and protect any claimed Chevron interest, while also addressing the threat of irreparable harm I face during the pending appeal." Dkt. 2250 at 1.  Specifically, "[t]o protect against the irreparable harm of disclosure of information for which I am claiming protection in my pending appeal," Donziger proposed "to submit my devices to a neutral forensic expert for imaging so long as the expert is directed not to allow any access to the images by anyone until the appeal is decided."  *Id.* at 3-4.  Donziger stated: "I have committed to complying with this Court's orders even in violation of my constitutional rights and the rights of others if I am unable to obtain relief on appeal—and today I proposed a fixed mechanism of imaging my devices and holding those image[s] pending appeal to further illustrate that commitment." *Id.* at 6.

On June 28, 2019, Judge Kaplan suspended further accumulation of the coercive fines for Donziger's failure to comply with the Protocol. *See* Civ. Dkt. 2252. On July 2, 2019, Judge Kaplan granted Donziger's emergency motion for a stay pending appeal of the specific provisions of the Protocol that required or permitted disclosure to Chevron of information obtained from Donziger. Civ. Dkt. 2254.  However, Judge Kaplan specifically conditioned that stay on Donziger filing his appellate brief to support his appeal from the May 23 contempt findings no later than July 31, 2019 and any reply brief no later than 14 days after the filing of Chevron's brief. *Id.* at 3.  Judge Kaplan denied the stay with respect to paragraph four and paragraph five of the Protocol, and expressly directed Donziger to comply with those Protocol provisions and to "surrender his passport(s) to the Clerk as previously directed." *Id.* at 4.  In other words, Judge Kaplan took Donziger up on his June 25 offer to surrender his devices to a neutral forensic expert for imaging—as directed by paragraph five of the Protocol—and ordered

that no information from the devices would be disclosed to Chevron *so long as Donziger filed his appellate brief no later than July 31, 2019 and his reply brief two weeks after Chevron's appellate brief.*

Donziger did not meet the condition specified by the District Court on July 2, 2019.  Not only did Donziger not file his appellate brief by July 31, he never even asked the District Court for additional time to fulfill that condition if he deemed such additional time necessary to file his appellate brief.  Moreover, Donziger did not produce his devices to the Neutral Forensic Expert for imaging and Donziger did not surrender his passport to the Clerk of the Court as directed.  Donziger also did not seek a stay from the Second Circuit at any point during the post-judgment proceedings.  To this day, Donziger remains in noncompliance with the May 17, July 23 and October 18 discovery orders, as well as paragraph five of the Protocol order, and none of those orders have been stayed or modified.

On September 6, 2019, Donziger filed his Second Circuit brief appealing the May 23, 2019 civil contempt findings.  *See* 2d Cir. No. 19-1584, Dkt. 48.  Notably, Donziger's brief did not contest Judge Kaplan's civil contempt findings regarding his disobedience of paragraphs four and five of the Protocol, which forms the basis of Counts One through Three.  *Id.* at 8 ("Statement of the Issues").  Nor did Donziger contest the civil contempt finding for disobeying paragraph five of the RICO Judgment by assigning a portion of his personal interest in the fraudulently procured Ecuadorian Judgment to a performance coach in exchange for personal services, which forms the basis of Count Six. *Id.*

**B.    The Criminal Contempt Charges and First Pretrial Motion to Dismiss the Charges**

On July 31, 2019, Judge Kaplan issued an order directing Defendant Steven Donziger to show cause why he should not be held in criminal contempt of court, in violation of

18 U.S.C. § 401(3), citing six separate counts of criminal contempt. Dkt. 1. The Order to Show Cause was made returnable before this Court.  *Id.*  Counts One through Three charge Donziger with criminal contempt as follows:  (1) from March 8, 2019 through May 28, 2019, Donziger's willful failure to provide a list of his electronic devices, messaging accounts and document management accounts as directed by paragraph four of the Protocol; (2) from March 18, 2019 through at least May 28, 2019, Donziger's willful failure to surrender his electronic devices for imaging as directed by paragraph five of the Protocol; and (3) from June 12, 2019 through at least July 31, 2019, Donziger's willful failure to surrender his passports as directed by the District Court's June 11, 2019 order.  Dkt. 1.

At a January 6, 2020 conference, the parties agreed on a schedule for pretrial motions.  *See* Dkt. 52 (Jan. 6, 2020 Tr.) at 19-20.  Following defense requests to adjust the pretrial motion schedule (*see* Dkts. 55, 58), the defendant moved on February 27, 2020 for, among other things, dismissal of the criminal contempt charges.  Dkt. 60.  With respect to Counts One through Three, Donziger argued that: Judge Kaplan "[i]mproperly [i]nvoked the [p]ower of [c]riminal [c]ontempt;" Donziger's conduct was "not a contumacious flouting of the Court's authority, but rather constituted persistent, ethically-grounded and strenuous advocacy;" and Donziger's conduct was "not 'willful' and does not constitute reckless disregard of Judge Kaplan's orders" because the facts are somehow "in contrast to the usual circumstances in which criminal punishments have been imposed and upheld by Courts in this Circuit, where the contemnors failed to testify before a grand jury or refused to comply with a subpoena. . ."  *See* Dkt. 60 at 24-26.

With respect to Donziger's admitted failure to comply with paragraphs four and five of the Protocol, Donziger argued that he "resisted [the Protocol] in good faith, the basis for

which is the subject of a pending appeal in the Court of Appeals." *Id.* at 33.   Donziger asserted

that he should not be subject to criminal contempt because he told Judge Kaplan that "he would

voluntarily accept civil contempt as to some of his positions in order to ensure his right to appeal

to the Court of Appeals."  *Id.* at 27.  The defense also pointed to caselaw for the position that to

guard against "intemperate use" of the contempt power, only "[t]he least possible power

adequate to the end proposed" should be used in contempt cases.  *See id.* at 5 (citing *Young v.*

*United States ex rel. Vuitton*, 481 U.S. 787, 801 (1987) (quotations omitted).

On May 7, 2020, the Court denied the Defendant's motion to dismiss the criminal

contempt charges.  Dkt. 68 at 1.  The Court ruled:

> Many of Mr. Donziger's arguments can only be resolved at trial on
> a more fully developed factual record. In particular, Mr. Donziger
> argues that (1) he lacked the intent needed to support a contempt
> conviction, (2) at least one of the orders he allegedly violated was
> ambiguous, and (3) he would have suffered irreparable harm if he
> complied with orders requiring disclosure of constitutionally
> protected or privileged information.  (See Def. Mot. at 25-26, 28,
> 30.) These arguments all involve fact questions the Court cannot
> resolve at this juncture and are thus not grounds for dismissal. See
> e.g., United States v. Cutler, 815 F. Supp. 599, 610 (E.D.N.Y. 1993)
> ("[W]hether these . . .statements really were the result of defendant's
> willful violation of a clear and definite order is a question of fact
> that must await a trial on the merits.").

Dkt. 68 at 20-21.  As for the defendant's argument that his conduct with respect to Counts One

through Three was not "contumacious flouting of the Court's authority" but "constituted

persistent, ethically-grounded and strenuous advocacy," Dkt. 60 at 24, the Court determined:

> Mr. Donziger is mistaken in suggesting that McConnell condones
> "ethically-grounded" defiance of court orders. . . Criminal contempt
> jurisprudence has no safe harbor for conscientious objectors. Indeed,
> the law is clear that "a party may not challenge a court's order by
> violating it" -- instead, "he must move to vacate or modify the order,
> or seek relief [in the Court of Appeals]." United States v. Cutler, 58
> F.3d 825, 832 (2d Cir. 1995).  Accordingly, McConnell does not
> provide any grounds for dismissing the charges against Mr.
> Donziger.

Dkt. 68 at 23-24.  As for the defense contention that contempt charges were "intemperate" or

otherwise excessive or unwarranted, the Court found as follows:

> From the facts set forth in the parties' papers, however, it appears
> that Mr. Donziger left Judge Kaplan with no real option other than
> criminal charges. Mr. Donziger is alleged to have repeatedly defied
> court orders, openly invited civil contempt, and refused to budge
> even when faced with coercive sanctions. That course of conduct
> gives "no basis for thinking that more orders, warnings, or threats
> would have produced improvement." In re Holloway, 995 F.2d
> 1080, 1087 (D.C. Cir. 1993); see also In re Levine, 27 F.3d 594, 595
> (D.C. Cir. 1994) ("When the presiding judge makes serious and
> repeated efforts to require a lawyer to abide by the judge's orders, it
> is difficult to discern 'what lesser remedy [the judge] could have
> reasonably employed.'" (quoting Holloway, 995 F.2d at 1087)). The
> Court therefore disagrees that contempt charges were excessive or
> unwarranted under the circumstances alleged.

Id. at 22-23.

## C.     The Instant Defense Motion to Dismiss

On December 16, 2020, the defendant filed the instant motion to dismiss Counts

One, Two and Three of the July 31, 2019 Order to Show Cause.  Dkt. 225.  Donziger contends

that each of these criminal contempt charges arise from his "failure to comply with Chevron's

April 16, 2018 Production and Information Requests," and that a "party who is willing to risk

civil contempt to seek appellate review of a production order—an order compelling affirmative,

irreversible disclosure—cannot be held in criminal contempt pending that appellate review."

Dkt. 225-1 at 3.

In support of this novel legal argument, he argues: (a) "[p]roduction orders

compel affirmative, irreversible acts" and are somehow "unique under law" (id. at 3-5); (b)

"[t]hose who risk contempt to seek appellate relief risk only civil contempt for the purposes of

appeal and while the appeal is pending" (id. at 5-9); (c) the filing of criminal contempt charges

while Donziger had filed an appeal from the May 23, 2019 civil contempt order was

impermissible because Donziger had previously "sought appeal at every opportunity", had

"feared the consequences of disclosure" and had "expressed willingness to risk contempt" (*id.* at

9-11); and (d) Counts One, Two and Three should be dismissed due to alleged "pretextual

justifications" for Money Judgment discovery and because Donziger contended that the RICO

Judgment did not prohibit "litigation financing based on others' interests in the Ecuador

Judgment." (*id.* at 11-14).  The defendant also contends—just as he did in his February 26, 2020

motion to dismiss—that the District Court "fail[ed] to exercise appropriate, and compulsory

restraint" with respect to the filing of criminal charges of contempt for Counts One through

Three (*id.* at 14).

## ARGUMENT

## I.   DONZIGER'S RENEWED MOTION TO DISMISS SHOULD BE DENIED

### A.   A Party's Continuing Refusal to Obey a District Court Order That Has Not Been Stayed, Modified or Vacated, Subjects That Party to Criminal Contempt Regardless of Whether Appellate Review of the Order is Pending

As a preliminary matter, the defendant's argument that "a party who is willing to

risk civil contempt to seek appellate review of a production order cannot be held in criminal

contempt pending appellate review" is directly contradicted by U.S. Supreme Court and Second

Circuit caselaw.  That is why Donziger's self-created purported "rule of law," as Donziger

himself concedes, "has never been stated" by any court.  Dkt. 225-1 at 2.

To the contrary, the Supreme Court has stated:

> We begin with the basic proposition that all orders and judgments
> of courts must be complied with promptly.  If a person to whom a
> court directs an order believes that order is incorrect the remedy is
> to appeal, but, absent a stay he must comply promptly with the order
> pending appeal.  Persons who make private determinations of the
> law and refuse to obey an order generally risk criminal contempt
> even if the order is ultimately ruled incorrect.

*Maness v. Meyers*, 419 U.S. 449, 458 (1975).  Indeed, "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947). "The remedy of the party witness wishing to appeal is to refuse to answer and subject himself to criminal contempt; that of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.,* 591 F.2d 174, 177 (2d Cir. 1979) (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 813-14 (2d Cir. 1976)).

"Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures." *United Mine Workers*, 330 U.S. at 298-99.  When a party to an action refuses to comply with a production order, "the choice of sanctions--civil or criminal--is vested in the discretion of the District Court."  *Dinler v. City of N.Y. (In re City of N.Y.)*, 607 F.3d 923, 934 (2d Cir. 2010).  Courts "may impose criminal contempt sanctions, or civil contempt sanctions, or both" in response to a party's willful refusal to obey a court order "and the contemnor has the power to end his contumacy," and "the determination of the appropriate response is committed largely to the court's discretion."  *In re Weiss*, 703 F.2d 653, 664 (2d Cir. 1983).  This is true because criminal contempt serves to vindicate the authority of the court and to punish "retrospectively for a 'completed act of disobedience.'" *See Int'l Union v. Bagwell*, 512 U.S. 821, 828-29 (1994) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442-43 (1911)); *Shillitani v. United States*, 384 U.S. 364, 368-70 (1966). Civil contempt, on the other hand, is remedial rather than punitive, intended to coerce future compliance with a court order. *Id.* A civil

contempt contemnor thus "carries the key[] of his prison in his own pocket," while a criminal contempt contemnor has, in effect, thrown away that key. *Id.*

"[A] party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in [the Second Circuit]. If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid or exceeded the district court's jurisdiction." *Cutler*, 58 F.3d at 832. Further, "it is equally well established that an order that is set aside on appeal may give rise to a charge of criminal contempt." *United States v. Crawford (In re Criminal Contempt Proceedings Against Crawford)*, 329 F.3d 131, 138-39 (2d Cir. 2003) (citing *United Mine Workers*, 330 U.S. at 294-95). "Consequently, the fact that an order might have been subject to reversal is not a defense to a criminal contempt charge." *Id.* (citing *Maness*, 419 U.S. at 458-59).

1.     *Production Orders Are Not "Unique" Under the Law*

To get around the well-settled law regarding the risk of criminal contempt for a party's disobedience of court orders that have not been stayed, modified or vacated, Donziger argues that production orders are somehow "unique under law" and are subject to an exception for purposes of criminal contempt because they compel "affirmative, irreversible acts," citing to *Alexander v. United States*, 201 U.S. 117 (1904); *Cobbledick v. United States*, 309 U.S. 323 (1940); *United States v. Ryan*, 402 U.S. 530 (1971); and *Maness v. Meyers*, 419 U.S. 449 (1975). Dkt. 225-1 at 3-5; *id.* at 5 ("*Alexander-Cobbledick-Ryan-Maness* stand for the proposition that production orders are unique — they compel affirmative, irreversible acts.").  The defense is wrong.

*Alexander* held only that a discovery order directing witnesses "to answer the questions put to them and to produce the books, papers and documents requested" is not a "final

decision," and that appellate jurisdiction should only attach if a contempt order issues.  201 U.S. at 121.  *Alexander* does not limit a court's ability to address non-compliance with civil contempt sanctions.  Rather, the Supreme Court explained that an appealable order would only obtain if:

> . . . the witnesses refuse to comply with [the order] and the court then exercises its authority *either* to punish them or to coerce them into compliance that will give rise to another case *or cases* to which the witnesses will be parties on the one hand and the Government, as a sovereign vindicating the dignity and authority of one of its courts, will be a party on the other hand.

*Id.* at 122 (citation omitted) (emphasis added).  This language does not restrict a court's response to disobedience of a discovery production order to "civil contempt, and civil contempt only" as asserted by the defense.  Nor does *Cobbledick* distinguish between civil and criminal contempt in extending the principle in *Alexander* to a witness directed to appear and produce documents before a grand jury, noting that appellate jurisdiction would only lie "until the witness chooses to disobey and is committed for contempt."  *Cobbledick*, 309 U.S. at 328.

There is nothing "unique" about orders to provide information that somehow permits a litigant who willfully disobeys those court orders to avoid a criminal contempt sanction.  *See, e.g.*, *Nilva v. United States*, 352 U.S. 385, 395-96 (1957) (affirming criminal contempt conviction for petitioner's willful disobedience of subpoena requiring production of corporate records); *United States v. Remini*, 967 F.2d 754, 755-56 (2d Cir. 1992) (affirming criminal contempt conviction where witness persisted in refusing to answer questions proffered to him following the district court's rejection of his motion to quash trial subpoena).

In *Remini*, for example, the Second Circuit affirmed a criminal contempt conviction for a defendant's refusal to testify at a trial.  967 F.2d at 757-59.  Specifically, the Circuit affirmed the District Court's refusal to permit the defendant to present evidence that would show that he "believed in good faith that he was complying with the contempt statute and

had intended to demonstrate that on appeal" because the District Court properly concluded that

the evidence was "irrelevant because whether [defendant] intended to violate the statute is

immaterial, if he intended knowingly and consciously to violate" the District Court's order. *Id* at

756. The Second Circuit likewise noted that "counsel argued [during the summation at the

criminal contempt trial] that [the defendant] had appealed to the court of appeals from [the

Court's] order to [defendant] to answer questions, although *[the District Court] had already*

*ruled that whether a notice of appeal had been filed was irrelevant.  An objection followed and*

*the court properly sustained it*." *Id.* at 759 (emphasis added).  The objection was properly

sustained because a notice of appeal from the underlying order to testify neither stays a court's

order that remains in full force and effect nor insulates a defendant from criminal contempt

charges.

        The defense contends that because "production orders" present an "unringable

bell," a party may refuse to comply with any such production order in order to obtain a contempt

adjudication, and that pending the appeal of such an order, courts may impose sanctions of "civil

contempt, and civil contempt only."  Dkt. 225-1 at 5; *see id.* at 7.  This is not the law.  As noted

above, "[t]he same acts may justify a court in resorting to coercive and to punitive measures."

*United Mine Workers*, 330 U.S. at 298-99; *see supra* Section I.A.  (citing *Dinler*, 607 F.3d at

934; *In re Weiss*, 703 F.2d at 664).

        The defense also cites to *In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975) in

arguing that disobeying a production order to obtain appellate review cannot support criminal

contempt sanctions because otherwise the *Alexander-Cobbledick-Ryan-Maness* cases would be

"endorsing a criminal course of conduct" that rises to the level of obstruction of and an imminent

threat to the administration of justice.  *See* Dkt. 225-1 at 7-8.  But *Williams* is plainly inapposite,

as that case concerns a conviction of summary contempt under 18 U.S.C. § 401(1), which expressly requires contemptuous misbehavior in the presence of the court "or so near thereto as to obstruct the administration of justice."  18 U.S.C. § 401(1); *see also United States v. Marshall*, 371 F.3d 42, 46 (2d Cir. 2004) ("the requisites for summary punishment of contempt [under 18 U.S.C. § 401(1)] are (1) contemptuous misbehavior, (2) committed in the actual presence of the court, (3) which obstructs the administration of justice.") (citation omitted).  This case charges criminal contempt under 18 U.S.C. §401(3)—not § 401(1).

What the defendant chooses to ignore is that the *Alexander* line of cases he cites puts to a prospective contemnor the choice of risking civil *and/or* criminal contempt sanctions prior to obtaining appellate review—in the court's discretion—against the consequences of failing to comply with a court's order.  Willful failure to comply with a court's order exposes a person to criminal contempt: "A court of the United States shall have power to punish by fine or imprisonment*,* or both, at its discretion, such contempt of its authority, and none other as—. . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3); *see United States v. Cutler*, 58 F.3d 825, 837 (criminal contempt requires a specific intent to consciously disobey or disregard a reasonably specific order of the court).  That is why Donziger's self-created purported "rule of law"—i.e., that a party who chooses to violate a court order and "risk contempt to seek appellate relief risk[s] only civil contempt for the purposes of appeal and while the appeal is pending"—has "never been stated." Dkt. 225-1 at 5; *see also* Dkt. 117 at 10-11 (Special Prosecutor's brief in further support of motion *in limine* arguing that Donziger's contentions about the "disobedience and contempt path" does not preclude criminal contempt charges).

29

**B.      Donziger Did Not "Seek Appeal at Every Opportunity"**

Even if Donziger's self-created purported "rule of law"—i.e., that he cannot be held in criminal contempt during the pendency of his appeal from the civil contempt ruling—had any merit, Donziger is wrong on the underlying facts that he claims give that purported "rule of law" viability in this case.  Donziger contends that (1) "at every moment from which appellate relief could theoretically be sought, Mr. Donziger sought it" and (2) his appeal from the May 23, 2019 civil contempt findings "challenged the Forensic Protocol" underlying Counts One and Two.  Dkt. 225-1 at 11.  The evidence at trial will demonstrate that these factual contentions are not true.

First, the evidence at trial will be that Donziger did not seek appellate relief from the various orders at issue "at every moment from which appellate relief could theoretically be sought."  For example, while Donziger has had an appeal pending from Judge Kaplan's denial of his motion seeking a protective order of discovery and his motion to dismiss Chevron's March 19, 2018 contempt motion, the evidence at trial will be that Donziger strategically chose not to seek a stay of the discovery and post-judgment proceedings in the Second Circuit during the pendency of that appeal.

Specifically, after Judge Kaplan denied Donziger's August 13, 2018 motion for a stay of *all* discovery pending his appeal—i.e., both the Money Judgment Discovery and Paragraph 5 Compliance Discovery—Donziger never took the issue up with the Circuit.  Judge Kaplan made this fact clear to Donziger during a January 8, 2019 status conference and again at a June 10, 2019 status conference.  Civ. Dkt. 2149 at 13-14 ("I know you have an appeal pending in the Second Circuit. I know their brief is due sometime in March. That's the way it goes. You don't have a stay."); Civ. Dkt. at 2352 at 16-17 ("You have the ability to get yourself out of

whatever box you're in by complying with my orders.  And the Supreme Court says, absent a

stay, you have an obligation to do that, and if you do not discharge that obligation, you do it at

your own risk.").  Donziger sought no stay of discovery with the Circuit even after Judge Kaplan

found on October 18, 2018 that Donziger's failure to produce a privilege log waived any

privilege claim he might have to responsive documents over which he might otherwise have

claimed privilege.  Thus, Donziger did not seek appellate relief "at every moment from which

appellate relief could theoretically be sought."[4]

---

[4]     Moreover, to the extent Donziger makes the argument that the March 5, 2019 Protocol
would somehow be moot if he wins his pending appeal challenging Judge Kaplan's May 23,
2019 contempt ruling based on his litigation finance efforts that formed the basis of Chevron's
March 19, 2018 contempt motion and the Paragraph 5 Compliance Discovery orders, he is
wrong.  There was another independent basis for post-judgment discovery—enforcement of the
Money Judgment.  Discovery relating to the Money Judgment—full compliance of which
Judge Kaplan directed in May 17, 2018—is in no way impacted by Donziger's appeal from
Judge Kaplan's May 23, 2019 contempt decision, and Donziger sought no stay from the
Second Circuit of that discovery.  Donziger remains in violation of the production orders
regarding Money Judgment Discovery, and the Protocol was meant to address Donziger's
continuing refusal to produce information responsive to *both* the Money Judgment Discovery
and Paragraph 5 Compliance Discovery.

        Faced with the undeniable fact that the defendant's intentional disobedience of the May
17, 2018 order directing full compliance with the Money Judgment Discovery requests is fatal
to his claim that the only discovery at issue in the post-judgment proceedings was about
Donziger's efforts to sell interests in the Ecuadorian judgment to finance litigation efforts,
Donziger argues that Judge Kaplan's order directing compliance with Money Judgment
Discovery was "pretextual."  Dkt. 225-1 at 11-14.  According to the defendant, discovery "was
never . . . about enforcing Chevron's outstanding $813,602.71 Judgment."  *Id.* at 12.  Not only
is this false, but his claim about the order being "pretextual" is irrelevant in the contempt
context.  Judge Kaplan issued a clear and unambiguous order directing discovery on the Money
Judgment Discovery requests.  Donziger violated it and continues to violate it to this day.  That
is all that is necessary for a civil or criminal contempt sanction, or both.

Second, the evidence at trial will be that Donziger never pursued the available appellate option of a mandamus petition after Judge Kaplan directed Donziger to turn over: (a) what Donziger claimed was First Amendment-protected information; and (b) what Donziger claimed was confidential and privileged information after Judge Kaplan found that Donziger had waived or forfeited any privilege claim to responsive information that otherwise might have applied because of Donziger's failure to produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5) and S.D.N.Y. Civ. R. 26.2.  Donziger had the ability to seek a writ of mandamus and a stay while any such mandamus petition was pending to challenge orders Donziger believed required surrender of privileged or constitutionally-protected information and would cause irreparable harm. *See Pac. Union Conference of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1307  (1977) ("While discovery orders are not themselves appealable, in extraordinary circumstances interlocutory review of them may be had by way of mandamus."); *Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 36 (2d Cir. 2014) (granting writ of mandamus to resolve important questions concerning personal jurisdiction as applied to religious and charitable organizations under circumstances where the district court had issued an expansive discovery order that "implicate[d] significant confidentiality interests" for those organizations); *Dinler*, 607 F.3d at 934 (concluding that petition for writ of mandamus was appropriate where party subject to order of disclosure could not defy court order under circumstances where that party "does not know whether the District Court would punish its disobedience with an appealable criminal sanction or an 'onerously coercive civil contempt sanction with no means of review until the perhaps far distant day of final judgment'"); *United States v. Victoria-21*, 3 F.3d 571, 575 (2d Cir. 1993) (discovery orders compelling production of privileged documents are appropriate for mandamus review).  Despite

Donziger's claims that Judge Kaplan's May 17, 2018, July 23, 2018, October 18, 2018 discovery orders and the March 5, 2019 Protocol would have required him to disclose constitutionally protected or privileged information that would have caused him irreparable injury if disclosed, Donziger chose not to seek a mandamus (or even a stay) from the Circuit.

Third, when Judge Kaplan found Donziger in civil contempt on May 23, 2019 and May 29, 2019 on numerous separate grounds—including his failure to comply with paragraph four and paragraph five of the Protocol, *the evidence at trial will be that Donziger did not challenge on appeal the contempt findings regarding his disobedience of paragraphs four and five of the Protocol.*  Thus, even assuming *arguendo* that Donziger is correct that he cannot be charged with criminal contempt during the pendency of a civil contempt appeal because Donziger made clear he was willing to risk contempt to obtain appellate review of the order at issue, Donziger's argument necessarily fails because he never challenged the contempt findings regarding paragraph four and five of the March 5, 2019 Protocol order in his appeal. Specifically, in his September 9, 2019 appellate brief from the civil contempt findings, Donziger did not challenge the civil contempt findings for: (a) his failure to provide a list of his devices and accounts to the Neutral Forensic Expert as required by paragraph four of the Protocol; and (b) his failure to provide his devices to the Neutral Forensic Expert for imaging as required by paragraph five of the Protocol.  *See* 2d Cir. No. 19-1584, Dkt. 48. It is well established that "arguments not made in an appellant's opening brief are waived."  *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).  Donziger's after-the-fact argument that his appeal from the May 23, 2019 contempt ruling "challenged the Forensic

Protocol, in as much as it challenged the entire discovery process" cannot erase what he wrote in his appellate brief about what the issues were on appeal.[5]

Fourth, the evidence at trial will be that when Judge Kaplan took Donziger up on his June 25, 20218 "proposal" to have his devices imaged by a neutral forensic expert if the expert is directed not to allow any access to images while his appeal is decided, Donziger decided not to agree to his own proposal. *See* Civ. Dkt. 2250 at 1, 3-4.  Specifically, on July 2, 2019, Judge Kaplan agreed to stay the portion of the Protocol that provided for disclosure of information to Chevron so long as Donziger filed his appellate brief from the contempt findings by July 31 and his reply brief no later than 14 days after Chevron's brief.  Civ. Dkt. 2254 at 3. Donziger ignored that opportunity to avoid disclosure of the purportedly privileged and confidential information from his devices while his appeal was pending—never even asking Judge Kaplan to amend the condition and allow him more time to file his appellate brief.  Thus, Donziger's argument that criminal contempt charges are not warranted for his violation of paragraph five of the Protocol rings hollow.

Fifth, with respect to Count Three (disobedience of the June 11, 2019 passport order), the evidence at trial will be that despite Donziger's claim that he planned to seek an emergency stay in the Circuit of the coercive fines and sanctions while his appeal from the contempt findings was pending, Donziger never did so.  *See* Civ. Dkt. 2234 at 15 (seeking a stay from the district court of all coercive fines and sanctions "until the Second Circuit is able to

---

[5]     Donziger's appellate brief stated that there were only two issues on appeal from the May 23, 2019 contempt findings:  (1) whether Judge Kaplan's civil contempt finding for Donziger's participation in litigation financing efforts and payment of his fees out of that finding was based on an unclear and unambiguous order and thus an abuse of discretion; and (2) whether Judge Kaplan's "subsequent modification and expansion of the injunctive relief" granted in the March 4, 2014 RICO Judgment was an "abuse of discretion and a violation of the mandate rule of the law of the case doctrine."  2d Cir. No. 19-1584, Dkt. 48 at 8.

resolve a forthcoming emergency motion to stay under Rule 8 of the Federal Rules of Appellate

Procedure").  Indeed, Donziger never challenged on appeal the June 11, 2019 passport order that

he willfully disobeyed.  Donziger's argument for dismissal of Count Three therefore fails.

## **CONCLUSION**

Because the defendant is wrong on the law and what the factual record will be at

trial, the defendant's motion to dismiss Counts One, Two and Three should be denied.


Dated: January 4, 2021
New York, New York

Respectfully submitted,

*s/*      *Rita M. Glavin*
  Rita M. Glavin
  Brian P. Maloney
  Sareen K. Armani
*Special Prosecutors on behalf of the*
*United States*

  Seward & Kissel LLP
  One Battery Park Plaza
  New York, New York 10004
  Tel: (212) 574-1448
  Fax: (212) 480-8421
  glavin@sewkis.com
  maloney@sewkis.com
  armani@sewkis.com