```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>STEVEN DONZIGER,<br><br>                    Defendant. | No. 19-CR-561 (LAP)<br><br>No. 11-CV-691 (LAK)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Steven Donziger's motion to dismiss Counts One, Two, and Three of the Court's July 31, 2019 Order to Show Cause. (Dkt. no. 225; see also dkt. no. 225-1; dkt. no. 241.) The Government opposes the motion. (See dkt. no. 238.) For the reasons below, the motion is DENIED.

## I. Background

The Court has already provided a high-level overview of the lengthy procedural history of this case in a previous order. (See dkt. no. 68 at 2-7.)[1] Consequently, the Court will summarize only the history relevant to the instant motion here.

This criminal contempt case is an outgrowth of Chevron Corp. v. Donziger, 11-CV-691 (S.D.N.Y.), over which Judge Lewis A. Kaplan presides. (Id. at 2.) In 2014, following a lengthy trial, Judge Kaplan issued a decision and judgment in Chevron's favor. See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362

---

[1] Unless otherwise specified, all docket cites in this order refer to dkt. no. 19-CR-561.

(S.D.N.Y. 2014).  Four years later--following the Court of Appeals' affirming that judgment and the Supreme Court's denying certiorari--Judge Kaplan issued a supplemental judgment for costs in the amount of $813,602.71 against Mr. Donziger and others.  (See dkt. no. 1962 in 11-CV-691 at 2.)

On March 5, 2019, as part of the post-judgment discovery proceedings, Judge Kaplan issued an order (the "Protocol Order") establishing a protocol to govern the collection, imaging, and examination of Mr. Donziger's electronic devices.  (See dkt. no. 2172 in 11-CV-691.)  That order required Mr. Donziger to, inter alia: (1) provide a list of all his electronic devices and accounts to an appointed forensic expert, (id. ¶ 4); and (2) surrender those devices to the forensic expert for imaging, (id. ¶ 5).  Mr. Donziger did not comply with either directive, informing the expert that he would not do so "until [his] due process rights [we]re respected."  (Dkt. no. 2173-1 in 11-CV-691 at 2.)

A few months later, Judge Kaplan issued another order (the "Passport Surrender Order") directing Mr. Donziger to surrender his passport(s) to the Clerk of the Court.  (See dkt. no. 2232 in 11-CV-691 at 2.)  That order was imposed as a coercive civil contempt sanction, in addition to a series of coercive fines, based on Mr. Donziger's noncompliance with the Protocol Order. (See id. at 1-2.)  Mr. Donziger filed an emergency motion to

stay the contempt sanctions pending an appeal, (see dkt. no. 2234 in 11-CV-691), which Judge Kaplan granted in part and denied in part on July 2, 2019, (see dkt. nos. 2252, 2254 in 11-CV-691).  In so ordering, Judge Kaplan again directed Mr. Donziger to surrender his passports and declined to stay the Protocol Order pending appeal.  (See dkt. no. 2254 in 11-CV-691 at 3.)  Mr. Donziger still did not comply and did not seek a stay or a writ of mandamus from the Court of Appeals.

On July 31, 2019, Judge Kaplan issued an order, pursuant to Federal Rule of Criminal Procedure 42, directing Mr. Donziger to show cause why he should not be held in criminal contempt, in violation of 18 U.S.C. § 401(3). (See dkt. no. 2276 in 11-CV-691.)  That order to show cause, which was made returnable before the undersigned, cited six charges for criminal contempt. (See id. ¶¶ 1-21.)

On February 27, 2020, Mr. Donziger sought pre-trial relief on several grounds, including, inter alia, dismissal of the criminal contempt charges.  (See dkt. no. 60 at 24-33.)  The Government opposed that motion.  (See dkt. no. 62 at 27-32.)  On May 7, 2020, the Court denied the motion, finding that (1) many of Mr. Donziger's fact-based contentions could only be resolved at trial and (2) his remaining legal arguments were not supported by the governing law.  (See dkt. no. 68 at 20-24.)

On December 16, 2020, Mr. Donziger again moved to dismiss the criminal contempt charges but this time sought dismissal of only Counts One, Two, and Three.  (See dkt. no. 225.)  Those counts allege Mr. Donziger's refusal to (1) provide a list of his electronic devices and accounts in violation of paragraph 4 of the Protocol Order, (dkt. no. 2276 in 11-CV-691 ¶¶ 1-3); (2) turn over those devices to the forensic expert for imaging in violation of paragraph 5 of the Protocol Order, (id. ¶¶ 4-6); and (3) surrender his passports as required by the Passport Surrender Order, (id. ¶¶ 7-9.).  Like Mr. Donziger's previous motion to dismiss, the Government opposes the instant motion.  (See dkt. no. 238.)

## II. Discussion

When addressing a motion to dismiss criminal contempt charges, the Court must take factual allegations in the charging instrument as true.  See, e.g., United States v. Hogan, Nos. 07 Cr. Misc. 1 (LAP) & 88 Civ. 04486 (LAP), 2009 WL 3817006, at *3 (S.D.N.Y. Nov. 12, 2009).  Disputes regarding the facts underlying the contempt charges are properly resolved at trial, not on a motion to dismiss.  See, e.g., United States v. Cutler, 815 F. Supp. 599, 610 (E.D.N.Y. 1993).

18 U.S.C. § 401(3) empowers a federal court "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or

resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Notably, that statute does not offer any qualifications on the type of order for which criminal contempt may be charged or impose any temporal limitations on when the charges may be levied.

The Supreme Court has long recognized, however, that the "judicial contempt power is a potent weapon" that should be exercised with care. Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967). In that vein, the Court has provided for many limitations on courts' contempt powers.[2] Despite those limitations, the High Court has established a clear baseline rule regarding litigants' obligations to obey court orders:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

Maness v. Meyers, 419 U.S. 449, 458 (1975) (emphasis added). When confronted with disobedience of its order, "the choice of sanctions--civil or criminal--is vested in the discretion of the

---

[2] For example, the Supreme Court has held that "criminal contempt sanctions are entitled to full criminal process." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 833 (1994).

5

District Court," Dinler v. City of New York (In re City of New York), 607 F.3d 923, 934 (2d Cir. 2010), and the same "conduct can amount to both civil and criminal contempt," United States v. United Mine Workers of Am., 330 U.S. 258, 299 (1947).

To get out from under that baseline rule, Mr. Donziger invokes what he describes as a well-trodden exception for production orders: "A party who is willing to risk civil contempt to seek appellate review of a production order cannot be held in criminal contempt pending appellate review." (Dkt. no. 225-1 at 2-3.) Central to Mr. Donziger's argument is his contention that production orders differ from other court orders--such as injunctions or orders for testimony--for the purpose of contempt because "they compel affirmative, irreversible acts." (Id. at 5.) For support, Mr. Donziger relies on four Supreme Court cases which he maintains implicitly establish that principle: (1) Alexander v. United States, 201 U.S. 117 (1904); (2) Cobbledick v. United States, 309 U.S. 323 (1940); (3) United States v. Ryan, 402 U.S. 530 (1971); and (4) Maness. (See id. at 3-5.). But Mr. Donziger misreads those cases; they do not establish the rule for which he advocates.

In Alexander, 201 U.S. at 121-22, the Court held that it lacked jurisdiction because the judicial order--which required witnesses to appear before a special examiner to answer questions and produce documents--was not "final" and thus was

6

not appealable.  Likewise, in Cobbledick, 309 U.S. at 324, 327–29, the Court held, relying on Alexander, that an order denying a motion to quash a subpoena duces tecum also was not appealable.  In both cases, the Court suggested that the witness could obtain review of the order by refusing to comply, subject to possible contempt proceedings.[3]  Importantly, though, the Court did not limit the type of contempt to which the witnesses could be subjected.  To the contrary, Alexander appears to contemplate that a contemnor could face criminal sanctions.[4]

Nor does Ryan limit a court's power to charge criminal contempt.  Exactly like Cobbledick, Ryan, 402 U.S. at 530–32, held that a district court's order denying a motion to quash a subpoena requiring production of documents to a grand jury was not appealable.  Moreover, like Alexander and Cobbledick, Ryan suggested that a litigant could obtain review of that subpoena by "refus[ing] to comply" and then litigating whether the

---

[3] See Alexander, 201 U.S. at 121 ("Let the court go further, and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case."); Cobbledick, 309 U.S. at 328 ("Whatever right he may have requires no further protection . . . than that afforded by the district court until the witness chooses to disobey and is committed for contempt.").

[4] See Alexander, 201 U.S. at 121 (indicating that the court could "punish the witness for contempt of its order" (emphasis added)); see also Bagwell, 512 U.S. at 828 (observing that the Court had historically described the purpose of criminal contempt as "punitive").

subpoena was "unduly burdensome or otherwise unlawful . . . in the event that contempt or similar proceedings [we]re brought against him." Id. at 532. But, again like Alexander and Cobbledick, Ryan did not limit the type of contempt that could be charged. Instead, in expressly distinguishing Walker v. City of Birmingham, 388 U.S. 307 (1967), the Court merely observed that the collateral bar rule[5] would not preclude the subpoenaed party from litigating the lawfulness of the subpoena in related contempt proceedings. See Ryan, 402 U.S. at 532–33 & n.4.

Finally, Maness, 419 U.S. at 470, held that an attorney could not "suffer any penalty" of contempt for advising his client "in good faith" not to surrender subpoenaed documents on Fifth Amendment self-incrimination grounds. In reaching that conclusion, the Court, citing Alexander, Cobbledick, and Ryan, recognized that the attorney could obtain pre-compliance review of the subpoena by refusing to comply and subjecting himself to contempt. See id. at 460-61. But again, like Alexander, Cobbledick, and Ryan before it, Maness did not purport to limit

---

[5] The collateral bar rule recognizes "that a defendant generally is barred from collaterally attacking the constitutionality of a court order as a defense to his criminal contempt prosecution." United States v. Terry, 17 F.3d 575, 579 (2d Cir. 1994) (citing Walker, 388 U.S. at 314–15). Rather, "[t]he appropriate method for challenging the validity of a court order is to petition to have the order vacated or amended." Id. Notably, though, Walker, 388 U.S. at 309, involved a challenge to a "temporary injunction."

the type of contempt that a court may charge for failure to obey its order.  In fact, although the Supreme Court did not explicitly state as much, the contempt charged in Maness appears to be of the criminal variety.⁶  Importantly, as stated above, the Supreme Court ultimately reversed that contempt conviction on the merits.  Id. at 470.

As a critical component of his argument, Mr. Donziger assumes that he "cannot be relieved of a conviction for criminal contempt even when the validity of the underlying order is rejected on appeal."  (Dkt. no. 225-1 at 6.)  That is somewhat surprising, given that he argued in his opposition to the Government's motion in limine that the collateral bar rule would not preclude review of the lawfulness of at least some of the judicial orders underlying the contempt charges in this case.  (See dkt. no. 110 at 10-14.)  In any event, the Court has "defer[red] ruling on the collateral bar issue until trial, when the Court will have the benefit of a fuller factual record."  (Dkt. no. 191 at 2.)  No further discussion of the matter is necessary here.

---

⁶ See Maness, 419 U.S. at 455, 457 (noting that the trial court "fixed punishment . . . at 10 days' confinement and a $200 fine" and that "the penalty" was later changed "to a $500 fine with no confinement" (emphasis added)); see also Bagwell, 512 U.S. at 828-29 (stating that "a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a completed act of disobedience" and observing a similar rule for "flat, unconditional fine[s]" (quotation marks omitted)).

9

In sum, the cases on which Mr. Donziger relies do sanction an avenue whereby a litigant may obtain review of certain court orders, such as a subpoena duces tucem, by refusing to comply and risking contempt.  But they do not limit a court's discretion as to what flavor of contempt to impose.[7]  The caselaw from the Court of Appeals supports that principle.[8]  Accordingly, Mr. Donziger is not entitled to a dismissal.

---

[7] The other cases Mr. Donziger cites provide him no more help.  (See dkt. no. 225-1 at 5-6.)  Although in some of those cases the district court imposed civil contempt rather than criminal, those cases do not limit a district court's discretion to impose criminal contempt.  See, e.g., United States v. Beckerman, 1999 WL 97237, at *1 (2d Cir. Feb. 24, 1999) (summary order) (not discussing the type of contempt a court can charge for failure to violate its order); Chevron Corp. v. Berlinger, 629 F.3d 297, 306 (2d Cir. 2011) (same).

[8] See, e.g., Del Carmen Montan v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor), 490 F.3d 99, 104 (2d Cir. 2007) ("[T]he remedy of the party witness wishing to appeal is to refuse to answer and subject himself to criminal contempt." (quoting Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 591 F.2d 174, 177 (2d Cir. 1979) (Friendly, J.)); Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 574 (2d Cir. 2005) ("[I]n a criminal or civil proceeding, a witness wishing to contest a subpoena must usually disobey the subpoena, be held in civil or criminal contempt, and then appeal the contempt order.").

Mr. Donziger's attempts to discount those authorities, (see dkt. no. 225-1 at 7 n.3), are unavailing.  Instead, those authorities recognize that, in the mine run of cases involving production orders, merely going into civil contempt is not enough to obtain appellate review.  Indeed, when a contemnor is a party to the case--as Mr. Donziger was in the civil case before Judge Kaplan--he can generally "only appeal a civil contempt sanction after a final judgment."  Dinler, 607 F.3d at 934.  In contrast, only an "order of criminal contempt" is immediately appealable.  Id.

10

### III. Conclusion

For the foregoing reasons, Mr. Donziger's motion to dismiss Counts One, Two, and Three of the Court's July 31, 2019 Order to Show Cause [dkt. no. 225] is DENIED.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:    January 10, 2021
         New York, New York

*Loretta A. Preska*
_____
LORETTA A. PRESKA
Senior United States District Judge