UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

              Plaintiff,

   v.

STEVEN DONZIGER,

              Defendant.

19 Cr. 0561 (LAP)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
AND FOR DISCOVERY IN SUPPORT THEREOF**

Martin Garbus, Esq.
OFFIT | KURMAN
590 Madison Ave., 6th Floor
New York, NY 10022
Tel. 347.589.8513
mgarbus@offitkurman.com
*Counsel for defendant*

**PRELIMINARY STATEMENT**

The extraordinary and disturbing facts of this case—a case that includes the first private corporate prosecutor in U.S. history—are more than enough to sustain claims of vindictive and selective prosecution. The high standard required to maintain a selective prosecution claim is a result of separation-of-powers limits on judicial second-guessing of *executive branch* exercise of prosecutorial discretion, as well as a presumption of regularity founded on the disinterestedness of prosecutors—predicates that do not exist here. Indeed, the fact Mr. Donziger is being prosecuted by a law firm under the control of the judicial and not executive branch—and that has a financial interest in the outcome of the case—compels a need for heightened scrutiny and dismissal. The combined evidence of animus and conflicts of interest by the charging judge (Lewis A. Kaplan), the presiding judge that Judge Kaplan hand-picked (this court), and the private prosecutors from Chevron law firm Seward & Kissel (Rita Glavin, Sareet Armani, and Brian Maloney) is simply overwhelming. *See* Declaration of Martin Garbus, dated Apr. 12, 2021 ("Garbus Decl.").

The evidence of vindictiveness behind the decision to prosecute in this case is overwhelming and therefore compels dismissal. The evidence is more than sufficient to justify allowing Mr. Donziger additional discovery to more fully develop the record regarding the vindictiveness. We also move this court to assign this motion to another judge given the court's own conflicts of interest.

**LEGAL STANDARD**

Generally

Vindictive and selective prosecutions (discriminatory prosecutions) violate constitutional due process and equal protection and threaten the rule of law. *United States v. Torquato*, 602 F.2d 564, 569 (3rd Cir. 1979) ("It is the wisdom of our Constitution that personal abuses of

1

governmental power are proscribed."); *United States v. Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974) ("Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability."). A prosecutorial motive is vindictive when driven by personal animus, bad faith, or conflict of interest, *see, e.g.*, *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999), or "when the prosecution is brought in retaliation for the defendant's exercise of his legal rights," *United States v. White*, 972 F.2d 16, 19 (2d Cir. 1992). A motive is unconstitutionally selective when it is infected by "considerations such as race, religion, or control over the defendant's exercise of his constitutional rights." *Berrios*, *supra*. "It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of *actual* prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a *likelihood* of vindictiveness sufficient to justify a presumption." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997) (emphasis added).

It is true that "the presumption of prosecutorial vindictiveness generally does not arise in the pretrial setting." *Koh*, *supra*, at 639. However, given the extraordinary and unprecedented conflicts in this matter and the absence of executive branch control of the prosecutorial function, that principle **does not apply here**. The traditional framework is based squarely on separation-of-powers concerns and assumptions regarding the structural role of the prosecutor's office that not only don't make sense here but in fact ***point in the opposite direction***—suggesting a need for heightened scrutiny, not deference. The record of this case shows: (1) ample evidence of actual vindictiveness and unconstitutional selectivity sufficient to justify a presumption even in a pre-trial context; and (2) at minimum, evidence sufficient to authorize discovery necessary to uncover all relevant evidence of actual or likely vindictiveness/selectivity.

The appropriate standard in this context

The traditional framework imposing a high standard for dismissal and/or for a presumption of selectivity or vindictiveness arises from a foundation of judicial deference to the authority of federal prosecutors and, more fundamentally, the constitutional separation of powers. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (heavy burden "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review"); *Torquado*, *supra*, at 569 ("The concept of separation of powers underlies the courts concern that the prosecutorial function be relatively untrammeled."). These foundations were analyzed carefully by the Supreme Court in *United States v. Armstrong*:

> [Prosecution is] a "special province" of the Executive. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). The Attorney General and United States Attorneys retain "'broad discretion'" to enforce the Nation's criminal laws. *Wayte*, *supra*, at 607. (quoting *United States v. Goodwin*, 457 U.S. 368, 380, n. 11 (1982)). They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3; *see* 28 U.S.C. §§ 516, 547. ***As a result***, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

517 U.S. 456, 464 (1996) (emphasis added). Critically, ***none of these limits or concerns functionally apply in the context of this case given the absence of executive branch control of supervision of the private prosecutor***. It was Judge Kaplan, a judicial officer who was personally involved in and aggrieved by the defendant's conduct, who was wholly and exclusively responsible

3

for the controversial, irregular, and unprecedented decision to seek criminal liability in response to the post-judgment civil discovery disputes in the underlying civil case. "The President's delegates" in this case exercised their discretion in *declining* to prosecute the very same charges that Judge Kaplan, who had drafted them and was the alleged "victim" thereto, nonetheless decided to press ahead with. That decision came in the context of more than a decade of public attacks, strategic maneuvers, and other animosity by Judge Kaplan against Mr. Donziger. The prosecution born of that ill-founded decision is now advanced by a private lawyers with deep conflicts of interest arising from both their professional and personal connections, who acknowledges no responsibility to or control by the Department of Justice, and who have refused to provide any meaningful detail on the extent to which Judge Kaplan continues to wield his influence over what remains essentially his personal vendetta. *See, e.g.*, Garbus Decl. ¶ 3. Protection of the scope of the executive's constitutional responsibility, per *Armstrong*, more aptly requires *scrutiny* of any judicial interference, especially any that may be motivated by personal animus or conflict of interest. Certainly the "presumption of regularity," justified by executive prerogative and the presumed regular operation and disinterestedness of the U.S. Attorney's Office, has no bearing here. Again, the manifest *irregularity* of the foundation of this case justifies scrutiny, not deference.

Standard for entitlement to discovery

Discriminatory prosecution claims are based on ill motive and thus inherently "difficult to prove." *White*, *supra*, at 19. A defendant is entitled to discovery in aid of his claim where he can show (a) "at least 'some evidence'" and (b) that the discovery would be probative of the claim. *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (quoting *Berrios*, *supra*, at 1211). *See also United States v. Sanders*, 17 F. Supp. 2d 141, 144 (E.D.N.Y. 1998) ("This standard applies whether

termed as providing a 'colorable basis,' 'substantial threshold showing,' 'substantial and concrete basis, 'or 'reasonable likelihood.'") (quoting *Armstrong,* 517 U.S. at 468); *United States v. Lanoue*, 137 F.3d 656, 665 (1st Cir. 1998) (if a defendant can "point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue"). As with the standard for outright dismissal, this discovery standard is based on the separation-of-powers concerns and the presumption of regularity. In the unique context of this case, the required showing for discovery should be far more liberal than in a usual case where the U.S. Attorney made its own prosecution decision and is acting pursuant to the normal rules of its office.

## ARGUMENT

**I. There is abundant actual evidence, and/or evidence sufficient to justify a presumption, of personal animus, retaliation, vindictiveness, and unconstitutional selectivity infecting the decision to prosecute and ongoing prosecution of this case, requiring immediate dismissal.**

*A. Judge Kaplan's 10+ years of animus against Mr. Donziger*

The record of Judge Kaplan's animosity toward Mr. Donziger stretches back over a decade and is evident at every turn in the underlying civil litigation and behind the founding prosecutorial decision in this case. It has also been noted by objective independent journalists as well as prominent trial lawyers who have decades of experience in the federal courts, such as renowned litigator and former U.S. Marine and Supreme Court clerk John Keker, who called the Kaplan proceeding a "Dickensian farce" driven by Judge Kaplan's "implacable hostility" toward Mr. Donziger. The intense animus of Judge Kaplan toward Mr. Donziger was obvious well before any actual evidence was properly received in any proceeding. It appears to arise from Judge Kaplan's decision to make Mr. Donziger the poster child for attacks on the very idea of "American lawyers" representing foreign clients with human rights claims against American corporations for their misconduct abroad. At a preliminary hearing on a motion to quash a discovery request against Mr.

5

Donziger, Judge Kaplan shared his biases in favor of Chevron bluntly from the bench prior to hearing any evidence in the case:

> I eventually read the stuff you people [Mr. Donziger's lawyers] have all submitted. And the truth of the matter is that . . . Texaco made the deal to pullout 18 years ago . . . and it was like all other settlements, presumably; nobody admits anything, but whatever, and here's the deal. We're out, we're going to do this, you're going to do that and it's all over. And then you come along with Mr. Donziger . . . .
>
> I understand all that. Believe me I do. The imagination of American lawyers is just without parallel in the world. It is our one absolutely overwhelming comparative advantage against the rest of the world, apart from medicine. You know, we used to do a lot of other things. Now we cure people and we kill them with interrogatories. It's a sad pass. But that's where we are. And Mr. Donziger [pursuing an environmental judgment against Chevron] is trying to become the next big thing in fixing the balance of payments deficit. I got it from the beginning.

Hearing Tr., Sept. 23, 2010, at 78; *id.* at 35 ("I know the game here."). Throughout the ensuing *decade* of vicious civil litigation targeting Mr. Donziger, Judge Kaplan did not bother to even "disguise his disdain" for Mr. Donziger and repeatedly "suggested from the bench that the suit against Chevron was nothing more than a cynical con,"[1] even though ultimately the judgment was validated by at least six appellate courts in Ecuador and Canada, including the Supreme Courts of both countries. As one distinguished member of the bar noted in a letter to the New York Law Journal when news of this criminal case first came out, "the acrimony between the judge and [Mr. Donziger] has been front-page news for many years."[2] The animus appears to be based on a

---

[1] Paul Barrett, *Chevron Looks to Its Home Court for a Comeback Win*, Bloomberg Businessweek, July 14, 2011, at https://www.bloomberg.com/news/articles/2011-07-14/chevron-looks-to-its-home-court-for-a-comeback-win.

[2] Daniel L. Greenberg, *Judge Appointing an Attorney To Pursue Steven Donziger Is Disconcerting*, The New York Law Journal (Letter to the Editor), Aug. 21, 2019, at https://www.law.com/newyorklawjournal/2019/08/21/judge-appointing-an-attorney-to-pursue-steven-donziger-is-disconcerting/?slreturn=20200127164735.

6

combination of personal ill-will, perhaps based on Judge Kaplan's career in private practice, and a strategic decision to target and retaliate against Mr. Donziger's exercise of his constitutional free speech and petitioning rights as reflected in his decision to dedicate his legal career (initiated at Harvard Law, also Judge Kaplan's alma mater) to seeking damages from a U.S. multinational company on behalf of impoverished Ecuadorians.[3]

Whatever the source of his animus toward Mr. Donziger, Judge Kaplan should not have been the one to make any prosecutorial decision concerning Mr. Donziger given his record of bias in the case. After the U.S. Attorney refused to prosecute Judge Kaplan's criminal contempt charges, Judge Kaplan should have dropped the idea or at the very minimum recused himself and handed *the prosecutorial decision*—not just the operation of the prosecution—to a truly disinterested authority. Instead, as reflected elsewhere in the record of this case, Judge Kaplan made the decision himself; refused to recuse himself; hand-picked this court to preside over the criminal case, instead of relying on the usual random selection procedure as was done in the *Cutler* case; and hand-picked private prosecutors with financial ties to Chevron and the oil and gas industry who also appear to have personal ties to the presiding judge, having served on a law school alumni committee together. Judge Kaplan also appointed the private prosecutor without disclosing the fact her law firm had an attorney-client relationship with Chevron, the company that had been targeting Mr. Donziger for years after he helped his Ecuadorian clients win a large pollution judgment against the company.

---

[3] *See, e.g.*, Myron Levin, "Tobacco Case Judge Had Industry Ties," L.A. Times, Sept. 9, 2002, at https://www.latimes.com/archives/la-xpm-2002-sep-09-fi-smoke9-story.html ("Documents show that as part of Kaplan's work for Brown & Williamson, he participated in meetings of the Committee of Counsel, the inner sanctum of top tobacco lawyers that mapped the companies' joint legal and political strategies.").

The record is full of actual evidence of vindictive motive and selective prosecution targeting exercise of Mr. Donziger's status based on his constitutional rights. *Cf. United States v. McDonald*, 553 F. Supp. 1003, 1008 (S.D. Tex. 1983) ("'it is clear beyond question that [a prosecutor] may not consider the [defendant's] status of being the President of a union because the right to join a union, and thus to represent other members as a leader of the union, is protected by statute and by the First Amendment"). At minimum, "the circumstances reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008), especially under the appropriate legal standard applicable in the unique context of this case, *supra*. Accordingly, this case must be dismissed.

> B. *Judge Kaplan's targeting of Mr. Donziger decision to voluntarily undertake civil contempt as a means to achieve appellate review*

As established repeatedly in the record of this case, Mr. Donziger legitimately undertook a course of action to accept a civil contempt citation as a means to obtain direct appellate review of a patently improper and unlawful civil discovery campaign from Chevron that threatened his and others 'fundamental rights and the attorney-client privilege. Mr. Donziger's core contentions as to the unlawfulness of that discovery process **have now been affirmed by the Second Circuit**, precisely as a result of the "contempt jurisdiction" procedure that is articulated in the case law and that Mr. Donziger conscientiously and transparently followed. The forward-looking, relief-seeking course of action Mr. Donziger undertook has been repeatedly affirmed as a legitimate means of securing appellate review of production orders in numerous Supreme Court and Second Circuit cases, and thus was a right Mr. Donziger had as a civil litigant.

Judge Kaplan refused to accept this fact. Simply awaiting standard appellate review would derail the entire strategic discovery campaign that he and Chevron organized against Mr. Donziger—as it ultimately did, when Mr. Donziger pressed forward with his civil appeal despite

the criminal process against him, arguing the case *pro se* and winning the core point that proves the unlawfulness of the majority of the post-judgment proceedings. Thus it is clear, or at least highly likely, that Judge Kaplan invoked and pursued criminal process against Mr. Donziger, over the refused participation of the U.S. Attorney's Office, as a strategic and bad-faith means to intimidate and oppress Mr. Donziger into giving up his legal appellate rights—and to punish him for lawfully resisting the unlawful discovery orders in the first place. Critically, this appears to be the first time in the history of this district that a litigant undertaking the contempt jurisdiction procedure has been criminally targeted for doing so. *See Berrios*, *supra*, at 1211 (selective prosecution "where others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge"). This actual evidence of vindictiveness is plain in the post-judgment record in the civil case, and/or demonstrates a likelihood of vindictiveness sufficient to justify a presumption under the appropriate legal standard applicable in the unique context of this case, *supra*, and requires that this fundamentally vindictive prosecution be dismissed.

### C. *The private prosecutor's ongoing prosecution merely channels Judge Kaplan's vindictiveness and is independently vindictive for conflict-of-interest reasons*

As established elsewhere in the record of this case, Judge Kaplan expressly refused to recuse himself from this criminal case, presumably to allow him to claim some basis to continue to influence or control the prosecution from behind the scenes. But for the same reasons, the vindictive and unconstitutional motives behind Judge Kaplan's charging decision continue to animate and infect the prosecution to the present day. Moreover, the private prosecutors that Judge Kaplan appointed themselves have deep conflicts of interest that also render the prosecution of the case fundamentally vindictive. *See, e.g.*, Garbus Decl. ¶ 3. Seward has an attorney-client relationship to Chevron and a deep loyalty to the oil & gas sector, to the extent that it appears it is

9

using this criminal case to deliver a "payback" for an entire industry that was deeply threatened by the litigation model that Mr. Donziger openly espoused and dedicated his career to.[4] *Id.* Rule 42 of the Federal Rules of Criminal Procedure is violated by the appointment of an interested prosecutor. To the extent Rule 42 is interpreted to permit this prosecution and this set of prosecutors, it is unconstitutional. The actual conduct of the prosecutors after their appointment further proves both the unconstitutional application of Rule 42 and selective and vindictive prosecution. *Id.* On account of the private prosecutors' ongoing facilitation of Judge Kaplan's vindictiveness and their own vindictiveness, this case must be dismissed.

## II. Mr. Donziger is entitled to discovery to further establish his vindictive and selective prosecution claims

As noted above, a defendant is entitled to discovery on a vindictive or selective prosecution claim merely on a showing of "some evidence" and probative value. *Supra* at 5. As further noted, even this standard should be dramatically relaxed and even reversed, to encourage discovery in aid of the scrutiny necessary in this unique context to guard against judicial intrusion contrary to the separation of powers and in light of any applicable presumption of regularity. *Id.* Finally, as argued throughout Section I, there is abundant evidence of actual and/or likely vindictive and unconstitutionally selective motive behind the decision to prosecute and the ongoing prosecution by Judge Kaplan and the Chevron-connected lawyers at Seward. If the court refuses to dismiss this case, the court must order targeted discovery to allow Mr. Donziger to prove his claims.

---

[4] That model involved using traditional litigation financing methods to empower poor communities in developing countries to sue multinational companies in their own court systems. *See, e.g.*, Steven Donziger, *Rainforest Chernobyl: Litigating Indigenous Rights and The Environment in Latin America*, 11 No. 2 HUM. RTS. BRIEF 1 (2004) (describing the Ecuador case as "a leading example of how courts have the potential to re-allocate some of the costs of globalization—in this case, environmental destruction—from the most vulnerable rainforest dwellers to the most powerful energy companies on the planet").

Following an order authorizing discovery, the defense and the private prosecutors will attempt to negotiate an appropriate scope of discovery. Mr. Donziger will seek to pursue a narrowly targeted set of discovery material. Mr. Donziger has been on home confinement for over 600 days; he and his family are suffering severe personal, financial, and emotional consequences, and Mr. Donziger has no desire to extend the present trial date. The discovery is critical, however, to allow Mr. Donziger to sustain his claims. Appropriate contours for the discovery in light of the claims—and the unique standard applicable in this case—can quickly be negotiated with the private prosecutors and/or resolved into an order by the court, with the discovery becoming available in advance of trial.

## CONCLUSION

For the foregoing reasons and in the interests of justice, the court must dismiss this case or authorize discovery and direct the parties to negotiate and execute a discovery plan targeted to produce appropriate requested discovery materials before trial.

DATED: April 12, 2021                             Respectfully submitted,

                                                   /s
                                                  Martin Garbus, Esq.
                                                  OFFIT | KURMAN
                                                  590 Madison Ave., 6th Floor
                                                  New York, NY 10022
                                                  Tel. 347.589.8513
                                                  mgarbus@offitkurman.com
                                                  *Counsel for defendant*