UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN DONZIGER, <br><br> Defendant. | 19 Cr. 0561 (LAP) |

**REPLY DECLARATION OF MARTIN GARBUS**

I, Martin Garbus, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney for Steven Donziger in this case.

2. As a preliminary matter, the de facto Chevron Prosecutors[1] in this case have not opposed the defense request for oral argument on the motion to dismiss. Given the press of time in light of the May 10 trial date, that oral argument should be scheduled for May 5 or 6, 2021. The case should be dismissed without the defense having to incur depletion of

---

[1] An article in yesterday's Wall Street Journal reminds us that this entire 28-year-old "Litigation Without End" is fundamentally just one small part of Chevron's long-term strategy to extricate itself from the world's largest environmental liability and distract the public from claims that it destroyed a huge swath of the Ecuadorian Amazon and contributed to the deaths of thousands of Ecuadorian citizens and Indigenous peoples. More specifically, as Chevron has admitted, its long-term strategy is to "demonize Donziger." As detailed herein, Chevron is the ultimate paymaster on this case and everyone knows it. *See* Sara Randazzo, *Litigation Without End: Chevron Battles On in 28-year-old Ecuador Lawsuit*, Wall St. J., May 2, 2021, at https://www.wsj.com/articles/litigation-without-end-chevron-battles-on-in-28-year-old-ecuador-lawsuit-11619975500.

resources preparing for trial. If it is not dismissed, critical discovery must be produced on a highly expedited basis. Production of documents and some depositions can be held over the weekend the trial starts. Other depositions can be conducted as the trial proceeds. All the players are here in New York. The records are here. Chevron, Gibson Dunn, Seward & Kissel: these entities know how to get things done fast when they need to. The defense is ready.

3. In its opposition, the Chevron private prosecution team deliberately and completely misconstrues the motion and ignores the central claims and arguments. The prosecution team has not submitted <u>any</u> factual affidavit in response. It merely cites to outdated rulings of the Court made on a lesser record that omitted key facts. It also ignores the key fact: the most central and necessary information is not before the Court because <u>it has been withheld</u>. The facts are hidden behind the Chevron prosecutors' refusal to disclose and the arguments are hidden behind an unsworn brief.

4. The Chevron private prosecution simply ignores—no mention—the legal foundation of the motion. The entire edifice of the vindictive and selective prosecution case law, from the substantive standard to the burden of production to the standard for discovery, hinges entirely on constitutional separation-of-powers grounds that require the judiciary to give tremendous deference to fundamentally discretionary charging and prosecutorial strategy decisions made by federal prosecutors—"the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., Art. II, § 3). The whole structure of this particular case is <u>upside down</u>. There are <u>no executive branch officials anywhere to be seen in this prosecution</u>. Rather this is a prosecution driven by

1

judicial and corporate decision-making which has expressly ignored the executive's considered judgment and already severely usurped the executive's responsibility that the laws be faithfully executed. As laid out in motion, the legal principles at the heart of the vindictive and selective prosecution require scrutiny, not deference. The prosecution team opposition says not one word about this fundamental point on the applicable law—a point that applies both to the request for dismissal and the request for discovery.

5.  The prosecution team opposition simply avoids other inconvenient topics as well. The fact that there appears to be no case in the United States dealing with Rule 42 that is anything like this. In its 28-page exhaustive brief, the prosecution team does not cite one single case that bears the remotest relation to this case.

6.  The private prosecutors from Seward & Kissel also try to downplay the significance of the fact that the Seward has received thus far close to $500,000 for this case. They have further reduced their fees, effectively contributing approximately $500,000 of their own fees to this prosecution. Our best estimate is that Chevron's billing time for the prosecution is also at least a million.

7.  The importance to Chevron is far more than the money involved in this particular case. The importance to Gibson Dunn is far more than the money involved in this particular case. The importance to Seward is far more than the money involved in this particular case. The criminal conviction of Mr. Donziger is a Great Prize for all, each for their own reasons. And as they Wall Street Journal article from yesterday reminds us, they have been at this for a very, very long time.[2] The immediate and future benefits to all is in the

---

[2]  *See* Randazzo *supra* note 1 ("In a conference room in lower Manhattan in 2010, Gibson Dunn pitched federal prosecutors on the idea of criminally prosecuting Mr. Donziger. [The prosecutors] declined.")

many, many millions of dollars, tens of millions of dollars. The true benefit to Chevron is even greater than that.

8. Rule 14 of the Southern District's Rules for the Division of Business Among District Judges is also implicated on the pending motion. The Code of Conduct, discussed in the case of Judge Sarah Scheidlin, is implicated.

9. All these issues will argued, if and/or when Mr. Donziger is convicted by this Court, before the Second Circuit and potentially the United States Supreme Court. It will be avoided only if this Court chooses to dismiss the case, as the Hon. Matthew Bryne did in similar circumstances, faced with a situation of improper contacts between the court and the prosecution (the Daniel Ellsberg case).

10. From our request for oral argument to our request for discovery to our request for dismissal, the defense is fundamentally seeking a more open and transparent court proceeding. We seek the equivalent of a body camera for the courthouse. The public must see the reality of this too often clandestine proceeding.

11. Discovery and sworn testimony of individuals under oath will tell the Court, lawyers, and the American and foreign public the true story of this litigation. No one has heard this story. This motion at hand and the demand for discovery to show the court what it either cannot see or does not want to see. There is a strong desire to avoid seeing a reality that every practicing lawyer and every judge knows. Exposing that reality is essential to the defense.

12. Discovery will show a fundamental truth: This is a Chevron prosecution. Every penny paid to prosecute this case has a Chevron component. At this point the legal fees incurred by this prosecution could easily exceed $2,000,000. Every penny is Chevron related.

13. The government does not have the money to prosecute the case. The government said so. It refused to prosecute on that basis.

14. So, a partnership was created. Chevron does have the money. Seward has some money. Seward has contributed at least a half a million dollars to this prosecution in the form of written-off legal fees.

15. But do not worry—none of the contributors to this case will be left with nothing. Every payor gets something. The Court has been reluctant to consider the facts in the context of common sense and the basic rules of how the business of law operates. The Court must open its eyes.

16. Who gets what, and for how much? Under the partnership, the government only has to pay Seward's highly reduced bill. Geoff Berman said "no" to paying full price.

17. Seward is not the Red Cross. The firm is not making a half-million dollar donation out of the kindness of its corporate heart. The real complexities behind the deal—the kickback to Seward—are so deeply interwoven into Seward's business model that we will never get the full truth. Seward will never produce enough to show us the full truth.

18. Judge Kaplan put together the Chevron private prosecution team. He had full knowledge: he knew the facts, he knows the players, he knows who has what resources. He knew the main resources for this prosecution would need to come from the same deep pocket that has funded attacks on Steven Donziger for over a decade: Chevron Corporation. Chevron reportedly paid over a billion dollars in fees to prosecute the RICO case. A few more million here to try to put Mr. Donziger in jail is nothing for Chevron.

19. The value in attacking Mr. Donziger goes well beyond Chevron's considerable vengefulness. Gibson Dunn, for example, has built a whole practice area often referred to

as "the kill step": going after human rights lawyers and advocates for victims with manufactured allegations of fraud and wrongdoing. This is a valuable service for thousands of wealthy businesses across industry sectors and around the globe. It is a lucrative business for Gibson Dunn and has been for many years.

20. Now Seward is being invited into the "kill step" game. A golden-ticket invitation from the practice group leader. Seward is looking at tens or hundreds of millions of dollars in fees, stretching far, far into the future. This is the business of law. This is why this case is happening.

21. This case is also a golden ticket for individual members of the Chevron private prosecution team, who still bear the stain of prior transgressions. These transgressions are disqualifying for many types of law practice. But they are qualifying for other types of law practice. This case is an invitation to turn a stain into a badge, a dragging weight into an engine of profit.

22. Judge Kaplan knows all this. He is playing matchmaker. He was an elite sophisticated lawyer in private practice, coordinating counter-attack defense strategies like this for tobacco companies and other clients for decades. He knows exactly why Seward is stepping up to the plate with its half-million dollar donation. He knows exactly the lengths that Gibson Dunn will go to ensure that the Donziger Case remains a bright feather in their cap. He knows exactly why Chevron will keep paying and paying and paying. He knows these incentives intimately. And he knows that they don't work for the U.S. Attorney's Office. So there needs to be a partnership.

23. The Court surely knows all this history. The Court knows well how private practices are generated. How the business of law works.

24. Money—and the siren call of future money—calls the shots. It will go so far as to purchase witness testimony when it needs to. This requires serious money and Judge Kaplan knows that Chevron is a reliable source of serious money.

25. Chevron's past payments to Seward are relevant, but the tiniest part of the story. They are just a taste, a tease. Seward's motivation comes from reading print-outs of Gibson Dunn's legal fees in past years. Tens upon tens of millions. And knowing that this is only the tip of the iceberg. Fees off the Donziger case have created the most richly elaborate feeding frenzy in modern New York history. Seward has been invited to feast.

26. This is the heart of it. The $30,000 in past fees is a distraction. Even Seward's deep links across the oil & gas industry only show the top layer. It is describing an elephant by describing one foot. Describing a giraffe by describing a patch of yellow.

27. I began my law career with a two-man law firm. When I left it was fifty lawyers. We knew the business of law.

28. I met one man. Peter Mayer. We became good friends. Years later he became head of Penguin Books. I represented Penguin and other publishers. I had a friend actor in the Bronx. We represented him. His name was Al Pacino. We built a substantial film industry practice. I had a friend in the Army who wanted to be a writer. His name was Philip Roth. We built a substantial writers practice.

29. I took plenty of cases because I knew—or I had a hunch—about what it might lead to. Seward knows this far better than I do. Seward knows how to put itself in a position to attract clients, and follow-up with publicists and specialized practice groups. They know why they must support and participate in the Federalist Society and other groups.

30. Randy Mastro went to work Rudy Guiliani when he was mayor. When Mastro got out he went to private practice. When Guiliani got out he went to private practice—in fact he formed his own firm. Together Mastro and Giuliani are now a force to be reckoned with in the oil and gas practice.

31. Judge Kaplan knows this. Every judge in New York knows this. They know the business of law. Without attributing dishonesty to personally embroiled jurists, we must look to the reality of this case.

32. Prosecutors deal with a set of moral and financial issues and pressures that are unique in society. Their incentives are very different than the business of law and it is important that they are different. Prosecutors must be prepared to <u>not</u> do things.

33. Several of District Attorney Frank Hogan's deputies refused to work on the Lenny Bruce prosecution. They almost lost their jobs but they didn't. One of the deputies, Nicholas Scoppetta, was later appointed Commissioner of Investigation for the City of New York.

34. Geoff Berman refused to prosecute this case. He looked at the costs and benefits. He made a decision in the public interest. We can trust that the decision was in the public interest because of the whole foundation of his office. We cannot radically reinvent that foundation and pretend the prosecutorial function works just the same.

35. Berman was fired by Bill Barr and Donald Trump because he refused to protect Trump's friends and to prosecute Trump's enemies. The press named Rudy Giuliani as one of the people Berman was seeking to prosecute. Berman may well have been fired for who he refused to prosecute as well as who he sought to prosecute. We need to know more.

36. Because of yesterday's Wall Street Journal story, we suddenly know for certain that Chevron and Gibson Dunn have been hounding the U.S. Attorney to prosecute Mr.

Donziger for at least a decade. *See* Randazzo *supra* note 2. One meeting does not mean only one meeting. Often quite the opposite. Were there similar meetings with Berman surrounding the 2019 entreaty by Judge Kaplan? The defense must be allowed to understand the scope of what appears to be patient, persistent effort by a powerful oil company and white shoe law firm to stir up a criminal prosecution Mr. Donziger.

37. This case is dangerous. The unchecked and unexamined use of Rule 42 in this case is dangerous. The selective and vindictive prosecution in this case is dangerous. A vengeful corporation funding a private criminal prosecution. People are starting to see this and are scared. They should be. The is the privatization of criminal prosecution for strategic benefit of the wealthy. There is no other case like this. We do not want to set a precedent here.

38. It is also significant the corporation being allowed to work out its private frustrations through our public criminal justice institutions has been found guilty by the high court of a sister sovereign nation for destroying the environment and tens of thousands of lives in that nation. This devastating fact is just lost in the shuffle of the "get Donziger" game here in New York.

39. The results are already coming in. Nearly two years of house arrest for the defendant. An absurdly high bond. Widespread demonization attempts. And the fees are starting to come in too, although we don't know how much has been paid—and how much has been donated.

40. The defense needs discovery to prove up and fully illustrate the deeper reality of this case. The needed discovery will show billed time, <u>unbilled</u> time, marketing strategies, internal business discussions, and more. So much more. We are entitled to this discovery.

41. On the one hand, this case seems receptive to a well-known British term: "a stinking mess." But this is also seminal case in American law. It is headed to the Second Circuit and to the United States Supreme Court. Issues include Rule 42, vindictive prosecution, the limits of civil and criminal contempt, and far more.

42. The trial must not proceed without first examining the defense claim that this is a fundamentally Chevron-driven prosecution, a vindictive and selective prosecution, and an abuse of Rule 42. The defense needs discovery and it needs oral argument.

DATED: May 3, 2021                              Respectfully submitted,

                                                          /s
                                               Martin Garbus, Esq.
                                               OFFIT | KURMAN
                                               590 Madison Ave., 6th Floor
                                               New York, NY 10022
                                               Tel. 347.589.8513
                                               mgarbus@offitkurman.com
                                               *Counsel for defendant*