**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                               :

UNITED STATES OF AMERICA,       :
                               :
  -against-                    :
                            : Case No. 19 CR 561 (LAP)
STEVEN DONZIGER,          :          11 CV 691 (LAK)
                               :
  Defendant.                  :
                               :
                               :
---------------------------------------------------------x

**NON-PARTIES GIBSON, DUNN & CRUTCHER LLP AND CERTAIN PARTNERS'**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH**
**SUBPOENAS SERVED UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................... 1

II. BACKGROUND .......................................................................................................... 4

    A.    The RICO Judgment and Post-Judgment Proceedings in the Civil RICO
         Action.......................................................................................................... 4

    B.    The Criminal Contempt Charges and Donziger's Rule 17(c) Subpoenas ............. 7

III. ARGUMENT ............................................................................................................... 9

    A.    Donziger's Subpoenas Contravene the Established Limitations of Rule
         17(c) .......................................................................................................... 9

         1.    The Subpoenas Seek Information Irrelevant to This Criminal
             Action.................................................................................. 11

         2.    The Subpoenas Seek Inadmissible Evidence ........................................... 12

         3.    The Subpoenas Are Broad in Violation of Rule 17(c)............................ 15

    B.    Donziger Already Has or Can Obtain Relevant Evidence from Other
         Sources...................................................................................................... 17

IV. CONCLUSION ........................................................................................................... 18

i

# TABLE OF AUTHORITIES

**CASES**

*Chevron Corp. v. Donziger*,
    384 F. Supp. 3d 465 (S.D.N.Y. 2019)..................................................................1

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014)............................................................1, 4, 5

*Chevron Corp. v. Donziger*,
    990 F.3d 191 (2d Cir. 2021).........................................................................6, 7

*Chevron Corporation v. Donziger*,
    833 F.3d 74 (2d Cir. 2016).............................................................................5

*Dinler v. City of New York*,
    No. 04-CIV-7921 (RJS), 2009 WL 10738061 (S.D.N.Y. Sept. 3, 2009) ...............13

*Diversified Grp., Inc. v. Daugerdas*,
    304 F. Supp. 2d 507 (S.D.N.Y. 2003) ...............................................................13

*Donziger v. Chevron Corp.*,
    137 S. Ct. 2268 (2017)..................................................................................5

*Matter of Donziger*,
    186 A.D.3d 27 (2020) ..................................................................................11

*Ehrich v. Binghamton City Sch. Dist.*,
    210 F.R.D. 17 (N.D.N.Y. 2002)......................................................................13

*Fisher v. United States*,
    425 U.S. 391 (1976) ....................................................................................13

*Republic Gear Co. v. Borg-Warner Corp.*,
    381 F.2d 551 (2d Cir. 1967)...........................................................................13

*United States v. Barnes*,
    No. 04-CR-186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ............................*passim*

*United States v. Bergstein*,
    788 F. App'x 742 (2d Cir. 2019) .....................................................................10

*United States v. Binday*,
    908 F. Supp. 2d 485 (S.D.N.Y. 2012).................................................................12

*United States v. Boyle*,
    No. 08-CR-523 (CM), 2009 WL 484436 (S.D.N.Y. Feb. 24, 2009) ................14, 18

*United States v. Brown*,
   No. 95-CR-168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995)..............................10, 14

*United States v. Cherry*,
   876 F. Supp. 547 (S.D.N.Y. 1995) ...................................................................................12

*United States v. Jackson*,
   No. 02-CR-756 (LMM), 2006 WL 1993251 (S.D.N.Y. July 14, 2006) ...............................14

*United States v. Libby*,
   432 F. Supp. 2d 26 (D.D.C. 2006) ...................................................................................15

*United States v. Mendinueta-Ibarro*,
   956 F. Supp. 2d 511 (S.D.N.Y. 2013)...............................................................................15

*United States v. Nektalov*,
   No. 03-CR-828, 2004 WL 1574721 (S.D.N.Y. July 14, 2004) .......................................10, 11

*United States v. Nixon*,
   418 U.S. 683 (1974).......................................................................................................1, 10

*United States v. Skelos*,
   No. 15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018)......................9, 10, 13

*United States v. Vezina*,
   165 F.3d 176 (2d Cir. 1999)...........................................................................................2, 11

**STATUTES**

18 U.S.C. § 401(3) .................................................................................................................7

18 U.S.C. § 3500...................................................................................................................18

**RULES**

Federal Rule of Criminal Procedure 17(c).................................................................... *passim*

Local Criminal Rule 16.1.........................................................................................................9

# I.  PRELIMINARY STATEMENT[1]

Defendant Steven Donziger, an adjudicated racketeer who led a decades-long scheme to extort Chevron Corporation ("Chevron") using a multi-billion-dollar Ecuadorian judgment that he procured through fraud and bribery, is about to face trial on criminal contempt charges arising from his multiple violations of the RICO Judgment entered against him and his refusal to obey post-judgment discovery orders.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014); *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465 (S.D.N.Y. 2019).  Instead of grappling with the merits of these charges,  Donziger now has issued sweeping subpoenas targeting Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and the partners of the Firm who obtained this RICO Judgment against him in the first place.  He apparently intends to make a circus of this trial, and is abusing the Federal Rule of Criminal Procedure 17(c) subpoena process by seemingly trying to settle old scores with those he views as responsible for his downfall.  This Court should not countenance such gamesmanship.  Donziger's subpoenas require the production of irrelevant, inadmissible, and privileged documents and information in blunderbuss fashion.  Donziger's requests are not even targeted to obtain relevant, admissible, and non-privileged documents.  They constitute nothing more than a prohibited "fishing expedition."  *United States v. Nixon*, 418 U.S. 683, 700 (1974).  This Court should therefore quash Donziger's Rule 17(c) subpoenas as unreasonable and impermissible.

Donziger's subpoenas are breathtaking in both their scope and irrelevance.  Six of the fifteen document requests are broad demands for documents and information relating to communications with Your Honor and Judge Kaplan.  Those six requests are apparently predicated

---

[1]  The parties have agreed to the following briefing schedule: Donziger will file his Opposition on or before May 5, 2021; Gibson, Dunn & Crutcher LLP and Certain Partners will file any reply in support of their motion on or before May 6, 2021.

on Donziger's unfounded "speculation that the universe is conspiring against him." Dkt. 68 at 24. Specifically, the subpoenas command the creation of a log of all "meetings, whether professional or personal in nature" and the production of "all electronic documents or communications" between "any employee or agent of Gibson Dunn" and (i) Your Honor or any agent or family member of Your Honor, (ii) Judge Kaplan or any agent or family member of Judge Kaplan, or (iii) any employee or agent of the prosecutors or the Seward & Kissel law firm. Gibson Dunn Subpoena ¶¶ 1–9.[2]  The subpoenas further seek, for example, a "summary indicating hours and dollar amount[s] . . . of all bills submitted by Gibson Dunn to Chevron Corporation for work on any . . . matter" over a period of over two years, as well as "[a]ll bills and underlying timesheets . . . for work on any legal or non-legal matter relating in any way to Steven Donziger or the country of Ecuador." *Id.* ¶¶ 12–13.  They also call for the production of "all" marketing materials and published articles authored by any "employee or agent of Gibson Dunn" that mention Chevron, Ecuador, or Donziger. *Id.* ¶ 14.

These overbroad and sweeping requests seek documents and information that have no relevance to any of the issues before the Court.  To convict Donziger of criminal contempt of a court order, the prosecution must prove "(1) the issuance of the order, (2) the defendant's disobedience or disregard of the order, and (3) the defendant's knowledge and willfulness in disobeying the order." *United States v. Vezina*, 165 F.3d 176, 178 (2d Cir. 1999).  The documents and information that Donziger seeks from Gibson Dunn and its partners will not inform any of these elements or even assist in any way, shape, or form in proving any cognizable legal defense, much less exonerate Donziger.  Whether Donziger engaged in knowing and willful disobedience

---

[2]  The five subpoenas are attached to the Brodsky Declaration as Exhibits A through E.  Given that they are largely identical, for simplicity, citations and quotations from the subpoenas will be to the Gibson Dunn Subpoena (which is attached as Exhibit A).

and disregard of Judge Kaplan's rulings does not turn in any respect on documents exclusively in Gibson Dunn's possession, much less the sort of documents Donziger seeks.  Gibson Dunn's work for Chevron will likewise shed no light whatsoever on what actually matters in this action:  whether Donziger committed criminal contempt by intentionally violating Judge Kaplan's rulings.

There is more:  the vast majority of the documents and information Donziger seeks would not be admissible in this criminal action.  Rule 17(c) does not provide criminal defendants access to attorney-client privileged communications or protected attorney work product.  Yet the bulk of the documents Donziger seeks—including bills and timesheets, internal Gibson Dunn communications for purposes of advising a client and working on client matters, Gibson Dunn's confidential communications with its client for purposes of providing legal advice, and communications with investigators and other agents—are privileged attorney-client communications and/or protected attorney work product and thus would not be admissible at trial.

Donziger's requests also lack the specificity required of valid Rule 17(c) subpoenas.  Document requests under Rule 17(c) must be tailored and identify the documents sought.  In clear violation of these established requirements, Donziger's requests are broad, vague, and unfocused, span a substantial time period beyond the criminal charges (some seeking documents for a nearly five-year time period, *see* Gibson Dunn Subpoena ¶¶ 10–11), and lack any relevant connection to this criminal proceeding in any way, shape, or form.

Donziger's inexplicable eleventh-hour misuse of Rule 17(c) should not be tolerated.  For all of the reasons explained here, the Court should quash Donziger's Rule 17(c) subpoenas to Gibson Dunn, Anne M. Champion, Randy M. Mastro, Andrea E. Neuman, and William E. Thomson.

## II. BACKGROUND

### A. The RICO Judgment and Post-Judgment Proceedings in the Civil RICO Action

In March 2014, Judge Kaplan found that Donziger injured Chevron through a pattern of racketeering and fraud that culminated in a fraudulent multi-billion dollar judgment being entered against Chevron in Lago Agrio, Ecuador. Those findings came after a seven-week trial in which the principal facts that established Donziger's scheme to defraud and extort Chevron "were not seriously disputed." *Donziger*, 974 F. Supp. 2d at 446. Judge Kaplan, for example, found that "[Donziger] and the Ecuadorian lawyers he led corrupted the Lago Agrio case." *Id.* at 384. And Donziger's bad acts included, among other things, (1) "submit[ting] fraudulent evidence," (2) "coerc[ing] one judge, first to use a court-appointed, supposedly impartial, 'global expert' to make an overall damage assessment and, then, to appoint to that important role a man whom Donziger hand-picked and paid to 'totally play ball' with" the Lago Agrio Plaintiffs ("LAPs"), (3) "pa[ying] a Colorado consulting firm secretly to write all or most of the global expert's report, falsely present[ing] the report as the work of the court-appointed and supposedly impartial expert," and (4) telling "half-truths or worse to U.S. courts in attempts to prevent exposure of that and other wrongdoing." *Id.* Judge Kaplan also found that Donziger's team "wrote the Lago Agrio court's Judgment themselves and promised $500,000 to the Ecuadorian judge to rule in their favor and sign their judgment." *Id.* (Gibson Dunn and its partners Anne M. Champion, Randy M. Mastro, Andrea E. Neuman, and William E. Thomson represent Chevron in the civil RICO action.)

In light of Donziger's extensive corruption of the Ecuadorian proceedings, Judge Kaplan concluded that "[i]f ever there were a case warranting equitable relief with respect to a judgment procured by fraud, this is it." *Id.* To prevent Donziger from profiting from this scheme, Judge Kaplan ordered equitable relief against Donziger and his two Ecuadorian clients who appeared in the action, that precluded them from enforcing the fraudulent Ecuadorian judgment in the United

4

States and monetizing or profiting from funds traceable to it, and required them to turn over to Chevron any money traceable to the judgment procured by fraud.  *Id.* at 638–42.

The Second Circuit unanimously affirmed the RICO Judgment.  In a 127-page opinion, the Second Circuit recognized that "the record . . . reveal[ed] a parade of corrupt actions by the LAPs' legal team, including coercion, fraud, and bribery, culminating in the promise to [Ecuadorian] Judge Zambrano of $500,000 from a judgment in favor of the LAPs."  *Chevron Corporation v. Donziger*, 833 F.3d 74, 126 (2d Cir. 2016).  The Second Circuit emphasized that, on appeal, Donziger did not challenge any of the district court's factual findings, and held there is "no basis for dismissal or reversal."  *Id.* at 151.  The Supreme Court denied Donziger's petition for a writ of certiorari.  *Donziger v. Chevron Corp.*, 137 S. Ct. 2268 (2017).

Beginning in March 2018, Chevron served post-judgment discovery to locate assets to satisfy a costs judgment that Donziger had refused to pay, including the location of the tens of millions of dollars that Donziger has raised over the years and to this day remain unaccounted for, as well as to determine whether Donziger had complied with the RICO Judgment's prohibition against profiting from his misconduct.  No. 11 Civ. 691 (S.D.N.Y.), Dkt. 1966.  Donziger's response was to obstruct Chevron's efforts at every turn.  In an attempt to force Donziger's compliance with its discovery requests, Chevron filed, and Judge Kaplan granted, multiple motions to compel.  *Donziger*, 384 F. Supp. 3d at 470–88.  Donziger, however, remained steadfast in his refusal to comply with Judge Kaplan's post-judgment orders.

Based on Donziger's obstruction of its discovery efforts, and repeated violations of the RICO Judgment (including his failure to transfer his contingent fee interest in the Ecuadorian judgment to Chevron and his exchange of part of his interest for thousands of dollars in personal services), Chevron filed various motions seeking to hold Donziger in contempt of the RICO

Judgment and Judge Kaplan's post-judgment orders. *Id.* at 474–76. On May 23, 2019, in a 71-page opinion, Judge Kaplan granted Chevron's motions, finding Donziger in contempt of multiple paragraphs of the RICO Judgment, a post-judgment forensic protocol, and a restraining notice Chevron served under N.Y. CPLR § 5222. *Id.* at 506–07. Judge Kaplan imposed both compensatory and coercive sanctions against Donziger, including a coercive fine to "begin at $2,000 for May 28, 2019 and [to] double for each subsequent day during which Donziger fails fully to purge himself of [his] contempt" of the forensic protocol. *Id.*[3] After the coercive fines did not cause Donziger to change his refusal to comply with judicial orders, Judge Kaplan directed Donziger to surrender his passports pending compliance with the outstanding orders. No. 11 Civ. 691 (S.D.N.Y.), Dkt. 2232 at 2. Donziger refused to comply; in fact, "Donziger initially agreed to turn over the passport(s) if the Court so required but then reneged and refused to comply with the Court's order." No. 11 Civ. 691 (S.D.N.Y.), Dkt. 2254 at 1.

Donziger appealed the civil contempt ruling, and the Second Circuit affirmed in substantial part. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 197 (2d Cir. 2021) ("We also affirm the district court's finding that Donziger violated the Injunction in several respects and its judgment of civil contempt relating to those violations."). The Second Circuit made clear that its opinion should not "be taken as somehow vindicating Donziger" and made clear that its ruling has "no effect on, and does not in any way call into question, the district court's thorough and fully persuasive fact findings and legal conclusions, which we have already affirmed in full, establishing Donziger's violations of law and ethics that added up to a pattern of racketeering in violation of the RICO statute." *Id.* at 212. It also emphasized that Donziger "can no longer sell any interests

---

[3] The fines were subsequently capped at $100,000 per day, and later suspended due to Donziger's non-compliance. No. 11 Civ. 691 (S.D.N.Y.), Dkts. 2222, 2252.

in the Ecuadorian Judgment for any reason, and use the proceeds for his benefit, whether for business or personal expenses or as part of a monthly retainer or arrears, or profit from such sales in any way whatsoever, without violating the Injunction and risking a contempt finding." *Id.* at 213.

**B.     The Criminal Contempt Charges and Donziger's Rule 17(c) Subpoenas**

After more than a year of Donziger's willful refusals to comply with multiple court orders, including his flouting of the daily fines and other measures imposed to compel compliance with the civil contempt orders, Judge Kaplan issued an order to show cause why Donziger should not be held in criminal contempt for his noncompliance with his orders.  Dkt. 1.  The order to show cause charged Donziger with six counts of criminal contempt under 18 U.S.C. § 401(3):

> **Count I** charges Donziger with failing to comply with Paragraph 4 of a forensic inspection protocol which required Donziger to list his electronic devices and accounts for all or part of March 8, 2019 until May 28, 2019.
>
> **Count II** charges Donziger with failing to comply with Paragraph 5 of the same forensic inspection protocol, which required him to surrender his electronic devices and accounts for imaging, for all or part of March 18, 2019 until Mary 28, 2019.
>
> **Count III** charges Donziger with failing to comply with the court's June 11, 2019 order requiring him to surrender his passport to the clerk.
>
> **Count IV** charges Donziger with failing to comply with Paragraph 1 of the RICO judgment, which imposed a constructive trust in favor of Chevron on all property traceable to the Ecuadorian judgment, and also charges Donziger with aiding and abetting violations of Paragraph 1 of the RICO Judgment by refusing to transfer or assign to Chevron property that he had, directly or indirectly, traceable to the Ecuadorian judgment.
>
> **Count V** charges Donziger with failing to assign his interest in the Ecuadorian judgment granted by his retainer with the FDA, in violation of Paragraph 1 of the RICO Judgment.
>
> **Count VI** charges Donziger with violating Paragraph 5 of the RICO Judgment by monetizing his interest in the Ecuadorian judgment through exchanging a portion of his interest for personal services.

*See* Dkt. 1 ¶¶ 1–21.

Although this criminal action has been pending for nearly two years with Donziger and his counsel seeking postponements of multiple trial dates, Donziger waited until April 29, 2021—just 11 days before his trial is set to commence—to serve five largely identical Rule 17(c) subpoenas on Gibson Dunn and four of its partners.   These subpoenas contain sweeping requests for production of documents and information, including for:

- "[A]ll electronic documents or communications involving . . . any employee or agent of Gibson Dunn" and (i) "Judge Loretta Preska or any agent or family member of Judge Preska," (ii) "Judge Lewis Kaplan or any agent or family member of Judge Kaplan," or (iii) "Rita Glavin, Brian P. Maloney, Sareen K. Armani, or any employee or agent of the Seward & Kissel law firm."  Gibson Dunn Subpoena ¶¶ 1, 4, 7.

- "All information regarding or reflecting the existence of telephone or videoconferencing communications or in-person meetings involving . . . any employee or agent of Gibson Dunn" and (i) "Judge Loretta Preska or any agent or family member of Judge Preska," (ii) "Judge Lewis Kaplan or any agent or family member of Judge Kaplan," or (iii) "Rita Glavin, Brian P. Maloney, Sareen K. Armani, or any employee or agent of the Seward & Kissel law firm."  *Id.* ¶¶ 3, 6, 9.

- The creation of a "log indicating date and approximate length of all telephone or videoconferencing communications, or in-person meetings, whether professional or personal in nature, scheduled or unscheduled, involving . . . any employee or agent of Gibson Dunn" and (i) "Judge Loretta Preska or any agent or family member of Judge Preska," (ii) "Judge Lewis Kaplan or any agent or family member of Judge Kaplan," or (iii) "Rita Glavin, Brian P. Maloney, Sareen K. Armani, or any employee or agent of the Seward & Kissel law firm."  *Id.* ¶¶ 2, 5, 8.

- "All bills and underlying timesheets (a) submitted or (b) prepared for submission but later revised or not submitted by Gibson Dunn to Chevron Corporation for work on any legal or non-legal matter relating in any way to Steven Donziger or the country of Ecuador during the relevant time period."  *Id.* ¶ 12.

- "A summary indicating hours and dollar amount[s] on a quarterly basis through the relevant time period of all bills submitted by Gibson Dunn to Chevron Corporation for work on any other matter."  *Id.* ¶ 13.

- "[A]ll Marketing and Solicitation Materials that mention Chevron Corporation, Ecuador, or Steven Donziger."  *Id.* ¶ 14.

- "[A]ll Professional, Academic, and Media Materials in the firm's possession, custody, or control that (a) is authored by an employee or agent of Gibson Dunn and (b) mentions Chevron Corporation, Ecuador, or Steven Donziger."  *Id.* ¶ 15.

- "[A]ll documents or electronic communications involving any employee or agent of Gibson Dunn, including specifically any private investigators or 'corporate solutions' service providers, reflecting the objective to get Steven Donziger disbarred" or "to get Steven Donziger charged with criminal contempt or any other criminal offense." *Id.* ¶¶ 10– 11.

- "[A]ny communications with any current or former judicial officer or staff, any prosecutorial authority and/or any current or former prosecutor, including specifically Joon Kim, Geoffrey Berman, Audrey Strauss, Cyrus Vance, Jr., and Rudy Giuliani, or their deputies or assistants, any law enforcement officers, any private investigator, or any relevant third-party" that "reflect[] the objective to get Steven Donziger charged with criminal contempt or any other criminal offense." *Id.* ¶ 11.

On May 2, 2021, and in accordance with Local Criminal Rule 16.1, Gibson Dunn conferred by telephone with Donziger's counsel. Brodsky Decl. ¶ 7. Gibson Dunn explained the impropriety of the requests in the subpoenas and offered to provide (a) all written communications between Gibson Dunn and Rita Glavin, Brian P. Maloney, Sareen K. Armani relating to this case from April 15, 2019 to the present, and (b) a log of meetings between Anne M. Champion, Randy M. Mastro, Andrea E. Neuman, and/or William E. Thomson and Rita Glavin, Brian P. Maloney, and/or Sareen K. Armani from April 15, 2019 to the present, so long as they withdrew all of the remaining requests which were too broad,speculative, chock-full of baseless conspiracy theories, and in large part subject to privileges. *Id.* Donziger's counsel declined the offer. *Id.*

### III. ARGUMENT

#### A. Donziger's Subpoenas Contravene the Established Limitations of Rule 17(c)

Rule 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). Rule 17(c) "should be used only as 'a mechanism for obtaining specific admissible evidence.'" *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (quoting *United States v. Barnes*, No. 04-CR-186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008)). Rule 17(c)(2) protects against misuse by providing that "[o]n [a] motion made promptly,

the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

To survive a motion to quash, subpoenas served under Rule 17(c) must clear "three hurdles" that the Supreme Court outlined in *United States v. Nixon*, 418 U.S. 683 (1974): "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700; *see also, e.g.*, *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) ("We have . . . applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant . . . as have district courts in this Circuit."); *Skelos*, 2018 WL 2254538, at *1 (noting "courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties"). *Nixon* held that Rule 17(c) was designed to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* at 698–99. The Rule is not to be used to engage in a "fishing expedition." *Id.* at 700; *see also, e.g.*, *Avenatti*, 2020 WL 86768, at *6 (denying request to issue "Rule 17(c) subpoena" that "constitute[d] the proverbial 'fishing expedition' prohibited under the case law").

Donziger's subpoenas come nowhere close to establishing relevancy, admissibility, and specificity. Donziger "has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible." *Barnes*, 2008 WL 9359654, at *3 (quoting *United States v. Brown*, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995)). Donziger cannot make that showing because the subpoenas seek information that has no relevance to whether he committed criminal contempt. Worse still, Donziger's subpoenas call for inadmissible evidence—including privileged communications. And the sheer "timing and breadth" of Donziger's subpoenas makes them "unreasonable and oppressive." *United States v. Nektalov*, No. 03-CR-828, 2004 WL 1574721, at *3 (S.D.N.Y. July 14, 2004) (quashing expansive subpoena issued just days before trial was unreasonable and oppressive). Inexplicably waiting until eleven

days before trial, Donziger demands production of documents and information covering an enormous scope of material.  The shocking "breadth" of Donziger's much-belated request has all "the traits of a fishing expedition[] about which the Supreme Court cautioned" in *Nixon*.  *Id.*

### 1.      The Subpoenas Seek Information Irrelevant to This Criminal Action

In assessing Rule 17(c) discovery requests made by criminal defendants, courts focus on the nexus between the information sought and the facts pertinent to the elements of the offenses at issue or any cognizable defense.  *See, e.g.*, *Avenatti*, 2020 WL 86768, at *6 (quashing Rule 17(c) requests because they did not go to a "central issue at trial" and did not "satisfy the initial requirement of relevance").  To convict Donziger of criminal contempt of a court order, the prosecution must prove "(1) the issuance of the order, (2) the defendant's disobedience or disregard of the order, and (3) the defendant's knowledge and willfulness in disobeying the order." *Vezina*, 165 F.3d at 178.  The documents and information Donziger requests will not inform any of these elements or assist in proving any cognizable legal defense.

Donziger's subpoenas seek documents and information that has no relevance to the issues in this criminal action:  whether a court order was issued, whether Donziger disobeyed that court order, or whether Donziger did so with the required knowledge and state of mind.  For example, Gibson Dunn's documents or communications regarding whether Donziger should be disbarred (*see* Exhibits A–E ¶¶ 10), will shed no light at all on whether Donziger knowingly violated any court orders.[4]  The same is true of Gibson Dunn's timesheets and bills for work it has done for Chevron, its marketing materials, and everything else Donziger has requested.  None of the expansive topics in Donziger's subpoenas has anything at all to do with whether he committed

---

[4] Donziger's disciplinary proceedings were instituted by the Attorney Grievance Committee for the First Judicial Department, and concluded with Donziger being disbarred as a result of his professional misconduct.  *See Matter of Donziger*, 186 A.D.3d 27, 30 (2020).

criminal contempt.  They are the definition of irrelevant requests.    Donziger's subpoenas stand in stark contrast to those that courts have upheld as seeking relevant information within the scope of Rule 17(c).  For example, in *United States v. Rajaratnam*, 753 F.Supp.2d 317 (S.D.N.Y. 2011), the district court permitted requests which sought evidence relevant to the insider trading charges against Rajaratnam from a cooperating witness who pled guilty to conspiring with Rajaratnam to trade based on inside information:   communications among the subpoenaed party, certain individuals, and the defendant relating to the charged insider trading conspiracy against the defendant; communications reflecting the subpoenaed party's payment of bribes to insiders in exchange for breaching duties; and communications reflecting the subpoenaed party received payment from Rajaratnam in connection with the insider trading schemes.

To the extent Donziger is attempting to use Rule 17(c) to obtain documents and information solely for impeachment purposes without any other plausible connection to the elements of the charges and/or a legally cognizable defense, that is contrary to established authority.  *See, e.g.*, *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) (noting that a Rule 17(c) subpoena "does not satisfy the *Nixon* three-pronged test if it seeks material that could be used at trial only to impeach a witness").

### 2.     The Subpoenas Seek Inadmissible Evidence

Rule 17(c) may only be used to obtain evidence that is admissible.  In this respect, "Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence." *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995).  Yet because of the sweeping nature of Donziger's requests—which seek "all" documents or communications on multiple different subjects—he cannot establish that he seeks only admissible

evidence.  As Donziger does "not know the universe of documents [he is] requesting, [he] cannot meet [his] burden of showing that these documents would be admissible at trial."  *Skelos*, 2018 WL 2254538, at \*3.  Moreover, the bulk of the documents and information that Donziger seeks would likely "contain privileged material which would render them inadmissible."  *Barnes*, 2008 WL 9359654, at \*4.

Donziger, for example, requests the production of draft and final bills and timesheets relating to Gibson Dunn's work for Chevron.  *See* Gibson Dunn Subpoena ¶¶ 12–13.  These documents contain matters subject to the attorney-client privilege and/or attorney work product protection (including litigation strategy and the nature of the services provided).  Yet Donziger has made no attempt to limit his requests to exclude such privileged and protected information, even though "attorney billing statements are subject to the attorney-client privilege to the extent that they reveal more than client identity and fee information."  *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 19–20 (N.D.N.Y. 2002); *see also, e.g.*, *Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) (explaining that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided . . . fall within the privilege") (citation omitted).[5]  Donziger's requests for documents relating the supposed "objective" of having Donziger being disbarred or prosecuted would sweep in documents protected by the attorney-client

---

[5] Gibson Dunn and its partners are duty-bound to invoke privilege on behalf of their client Chevron.  *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) ("Not only may an attorney invoke the privilege in his client's behalf when the client is not a party to the proceeding in which disclosure is sought, but he should do so, for he is duty-bound to raise the claim in any proceeding in order to protect communications made in confidence.") (internal citations and quotation marks omitted); *see also Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney.") (citation omitted); *Dinler v. City of New York*, No. 04-CIV-7921 (RJS), 2009 WL 10738061, at \*4 (S.D.N.Y. Sept. 3, 2009).

privilege or as attorney work product.  *See Gibson Dunn Subpoena* ¶¶ 10–11.  In fact, Donziger requests documents reflecting "any discussion of plans, ideas, methods, tactics, strategies, [or] approaches," *id.*—in other words, strategic communications and documents that are at the heart of the attorney-client relationship and that reflect work product.

All of these materials would therefore be inadmissible in this action even if they were somehow relevant, and thus beyond the scope of Rule 17(c).

The subpoenas also seek communications between Gibson Dunn, including any of its agents and employees, and multiple other persons and entities (ranging from publications to prospective clients, to former prosecutors, to Your Honor, Judge Kaplan, and the prosecutors in this case, *see* Gibson Dunn Subpoena ¶¶ 1–15), that would also constitute inadmissible hearsay. These communications would be, by definition, out-of-court statements and it is not apparent how Donziger could overcome any hearsay exception.  Thus, as with the other materials Donziger seeks, even in the event they were relevant (which they are not), these inadmissible documents would be beyond the scope of Rule 17(c).  *See, e.g.*, *Barnes*, 2008 WL 9359654, at *4 (quashing subpoena seeking documents with out-of-court statements as defendants did not explain why they were admissible at trial); *United States v. Boyle*, No. 08-CR-523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (quashing requests for "witness statements" and "audio recordings" as those materials would "be inadmissible at defendant's trial on hearsay grounds"); *United States v. Jackson*, No. 02-CR-756 (LMM), 2006 WL 1993251, at *2 (S.D.N.Y. July 14, 2006) ("The defendant has not shown how the subpoenaed telephone records, of their nature hearsay, could be admissible, as required by *Nixon*."); *United States v. Brown*, 95-CR-168, 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (quashing subpoena for memoranda of interviews because they would "be hearsay, and inadmissible as evidence at trial") (citation omitted).

3.      **The Subpoenas Are Broad in Violation of Rule 17(c)**

"In order to avoid speculation that the moving party is using Rule 17(c) to circumvent normal discovery requirements, the party's Rule 17(c) subpoena *must be able to reasonably specify the information contained or believed to be contained in the documents* sought rather than merely hope that something useful will turn up." *Avenatti*, 2020 WL 86768, at *4 (emphasis added) (quoting *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512–13 (S.D.N.Y. 2013)). Instead of adhering to this specificity requirement, Donziger's demands seek "all" materials on certain, irrelevant subjects, over extended periods of time.  This contravenes the limits of Rule 17(c).

"Blanket requests" like those Donziger makes here "violate the specificity requirement set forth in *Nixon*, . . . which bars 'fishing expeditions to see what may turn up.'"  *Id.* (quoting *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006)).  In fact, "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*."  *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (quashing Rule 17(c) subpoena to New York City Police Department seeking "any and all writings and records" related to the Department's contact with a witness).  Donziger's subpoenas are a textbook example of a fishing expedition.

Donziger, for example, seeks all documents and communications on any topic—as well as a log of all meetings, professional or personal—between any employee or agent of Gibson Dunn and (i) any employee or agent of Seward & Kissel or the prosecutors, (ii) Judge Preska or any agent or family member of Judge Preska, or (iii) Judge Kaplan or any agent or family member of Judge Kaplan.  Gibson Dunn Subpoena ¶¶ 1–9.  The breadth of these requests is staggering, given

15

that Gibson Dunn is a law firm with over 1,400 attorneys and approximately 1,000 staff members across 20 offices worldwide.  Brodsky Decl. ¶ 8.  For example, if a Gibson Dunn secretary happened to be in a book club with a file clerk at Seward & Kissel, the subpoenas would require Gibson Dunn to log every time the group met.  Likewise, if a Gibson Dunn real estate attorney in another city or country occasionally played tennis with a distant cousin of Your Honor (assuming Your Honor has cousins), the subpoenas would cover such irrelevant gatherings.  Moreover, as written, Gibson Dunn would have to produce all filings for any matter any of its attorneys had before Your Honor or Judge Kaplan (aside from the civil RICO action and this action).  These examples show that Donziger has made no effort to limit these requests to specific documents and information that exists as Rule 17(c) demands—to the contrary, they were drafted as broadly as they possibly could be drafted.

Donziger also demands the production of "all" documents "reflecting the objective to get Steven Donziger disbarred" and "reflecting the objective to get Steven Donziger charged with criminal contempt or any other criminal offense" without specifying that such documents even exist.  Gibson Dunn Subpoena ¶¶ 10–11.  And Donziger includes with these requests a laundry list of possible persons that Gibson Dunn may have communicated with, ranging from former prosecutors like Cyrus Vance and Rudy Giuliani, to "any law enforcement officer," to "any private investigator," and to "any relevant third-party."  *Id.*  The temporal reach of these requests is also broad, with relevant time periods stretching back to September 2016, *id.* ¶ 10, and October 2017, *id.* ¶ 11.  Once again, these are the opposite of requests for specific documents—they are blanket requests that Rule 17(c) forbids.

The same is true of Donziger's requests for bills relating to "any" work for Chevron, as well as "all" Gibson Dunn marketing materials and articles related to Chevron or Ecuador.  Gibson

16

Dunn Subpoena ¶¶ 13–15.  In fact, Donziger's requests regarding marketing materials and articles are accompanied by a veritable laundry list of documents he seeks.  *Id.* ¶¶ 14–15.  As with his other requests, these requests have all the hallmarks of civil discovery requests that are beyond the scope of Rule 17(c).  *See, e.g.*, *Avenatti*, 2020 WL 86768, at *4; *Barnes*, 2008 WL 9359654, at *4.

Donziger's overbroad and speculative requests—along with the timing eleven days before trial—suggest that these subpoenas were designed to harass Gibson Dunn and its partners, and are not a serious attempt to obtain permissible Rule 17(c) discovery.  They are nothing more than an improper fishing expedition, and are the definition of "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

**B.    Donziger Already Has or Can Obtain Relevant Evidence from Other Sources**

Rule 16 governs the scope of discovery in criminal actions.  *See* Fed. R. Crim. P. 16.  "[I]f [an] the item is not discoverable under Rule 16, a party cannot make it discoverable simply by subpoenaing it under Rule 17." *Barnes*, 2008 WL 9359654, at *2.  Donziger already has access to the evidence relevant to the pending criminal charges.  The court dockets reflect the orders that were entered by Judge Kaplan, and Donziger's own emails and statements to the Court demonstrate his willful disregard of those orders.

To the extent some materials were not produced by the prosecutors, this Court has determined that production was not required under applicable laws.  For example, Donziger again seeks information based on mere "suspicions[] that Gibson Dunn could be feeding misleading information about him to the Government and that disclosure is needed so he can satisfy himself that nothing sinister is afoot."  Dkt. 68 at 24; *see* Gibson Dunn Subpoena ¶¶ 1–3.  But the Court already rejected Donziger's request for these communications as improper under Rule 16:

> Mr. Donziger's speculation that the universe is conspiring against him is not a basis for compelling disclosure.  Like all other criminal defendants, he is only entitled to

disclosure of statements expressly authorized by Rule 16 or otherwise discoverable
as exculpatory under *Brady*, or impeaching under 18 U.S.C. § 3500.

Dkt. 68 at 24 (internal quotation marks omitted).  Donziger should not be permitted to use Rule
17(c) to bypass that ruling.

Moreover, some of "the documents that defendant seeks in his subpoena are obtainable
from another source . . . with little or no diligence required."  *Boyle*, 2009 WL 484436, at *3.
Certain materials Donziger seeks—such as copies of Gibson Dunn's marketing materials or
articles, *see* Gibson Dunn Subpoena ¶¶ 14–15—are public and can be accessed by Donziger or his
counsel with little or no diligence required.

## IV.  CONCLUSION

The Court should quash Donziger's Rule 17(c) subpoenas to Gibson Dunn, Anne M.
Champion, Randy M. Mastro, Andrea E. Neuman, and William E. Thomson.


Dated:  May 3, 2021                              Respectfully submitted,

                                                 Reed Brodsky
                                                 **GIBSON, DUNN & CRUTCHER LLP**
                                                 200 Park Avenue
                                                 New York, NY  10166
                                                 Telephone: 212.351.4000
                                                 Facsimile: 212.351.4035
                                                 E-mail: rbrodsky@gibsondunn.com

                                                 *Attorney for Gibson, Dunn & Crutcher LLP,*
                                                 *Anne M. Champion, Randy M. Mastro,*
                                                 *Andrea E. Neuman, and William E. Thomson*