## GLAVIN PLLC
2585 Broadway #211
New York, New York 10025
646-693-5505

May 4, 2021

**VIA ECF**
Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Donziger</u>, 19 Cr. 561 (LAP); [11 Civ. 691 (LAK)]

Dear Judge Preska:

        I write in response to Defendant Steven Donziger's April 30, 2021 motion to: (1) reconsider this Court's May 7, 2020 order denying Donziger's motion to dismiss criminal contempt Counts Four and Five, alleging that the charges are substantively barred because Donziger "purged himself of the civil contempts with respect to these two counts—*before* he was threatened with coercive sanctions" and that "after Mr. Donziger complied with the civil contempt orders on these two counts, it was improper for Judge Kaplan to charge him with criminal contempt" (*see* Dkt. 274 at 2-3); and (2) dismiss the charges contained in the Order to Show Cause, alleging that the charges are procedurally barred in light of the Second Circuit's decision in *In re Irving*, 600 F.2d 1027, 1037 (2d Cir. 1979).

        For the reasons set forth below, Donziger's motion to reconsider, and his fourth motion to dismiss,[1] are without merit and should be denied.

### Background

A.    <u>The Civil Case and the March 4, 2014 RICO Judgment</u>

        In 2011, Chevron Corporation ("<u>Chevron</u>") instituted civil action 11 Civ. 691 in this district ("<u>Civil Case</u>") against Donziger and others, alleging those defendants had fraudulently and corruptly obtained an $8.6 billion judgment in Ecuador against Chevron.

---

[1] We note that Donziger filed this *fourth* motion to dismiss the criminal contempt charges while his *third* motion to dismiss the criminal contempt charges had not been fully briefed and remains pending. *See* Dkt. 258 (third motion to dismiss filed on April 12, 2021).

Hon. Loretta A. Preska
May 4, 2021
Page 2

Following a lengthy trial, on March 4, 2014, Judge Lewis A. Kaplan issued an opinion finding that Donziger and Ecuadorians with whom Donziger closely worked engaged in a pattern of fraudulent and corrupt acts over many years to obtain the Ecuadorian judgment. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 383 (S.D.N.Y. 2014). Judge Kaplan determined from the well-documented record:

> [Donziger] and the Ecuadorian lawyers he led corrupted the Lago Agrio case. They submitted fraudulent evidence. They coerced one judge, first to use a court-appointed, supposedly impartial, "global expert" to make an overall damages assessment and, then, to appoint to that important role a man whom Donziger hand-picked and paid to "totally play ball" with the LAPs. They then paid a Colorado consulting firm secretly to write all or most of the global expert's report, falsely presented the report as the work of the court-appointed and supposedly impartial expert, and told half-truths or worse to U.S. courts in attempts to prevent exposure of that and other wrongdoing. Ultimately, the LAP team wrote the Lago Agrio court's Judgment themselves and promised $500,000 to the Ecuadorian judge to rule in their favor and sign their judgment.

*Id.* at 384.

Because Donziger had obtained the Ecuadorian Judgment by fraud and corruption, Judge Kaplan issued a judgment (the "<u>RICO Judgment</u>") on March 4, 2014 enjoining Donziger from enforcing the Ecuadorian judgment in the United States or "undertaking any acts" to monetize or profit from it, such as by selling, pledging or transferring any interest in that judgment. Civ. Dkt. 1875. The RICO Judgment also established a constructive trust for the benefit of Chevron of any property that Donziger has received or may receive "that is traceable to the [Ecuadorian] judgment or the enforcement of the Judgment anywhere in the world including, without limitation, *all rights to any contingent fee under the Retainer Agreement and all stock in Amazonia*." *Id.* ¶ 1 (emphasis added). At the time of the RICO Judgment, Donziger had a January 5, 2011 Retainer Agreement granting his law firm a 6.3% interest in the Ecuadorian Judgment—which meant that if the Ecuadorian Judgment was collected in full, Donziger's law firm would receive more than $500 million.

The RICO Judgment specifically directed Donziger to "transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain" that is traceable to the Ecuadorian judgment, which expressly *included his rights to any contingent fee interest he had or may acquire with respect to the Ecuadorian judgment*. *Id.* Paragraph 1 of the RICO Judgment directed that:

> The Court hereby imposes a constructive trust for the benefit of Chevron on all property, whether personal or real, tangible or intangible, vested or contingent, that Donziger has received, or

Hon. Loretta A. Preska
May 4, 2021
Page 3

> hereafter may receive, directly or indirectly, or to which Donziger
> now has, or hereafter obtains, any right, title or interest, directly or
> indirectly, that is traceable to the Judgment or the enforcement of
> the Judgment anywhere in the world including, without limitation,
> all rights to any contingent fee under the Retainer Agreement and
> all stock in Amazonia. Donziger shall transfer and forthwith assign
> to Chevron all such property that he now has or hereafter may
> obtain.

*Id.*[2]

> In addition, paragraph 3 of the RICO Judgment directed that:

> Donziger shall execute in favor of Chevron a stock power
> transferring all of his right, title and interest in his shares of
> Amazonia, and Donziger and the LAP Representatives, and each
> of them, shall execute such other and further documents as
> Chevron reasonably may request or as the Court hereafter may
> order to effectuate the foregoing provisions of this Judgment.

*Id.* Amazonia was a Gibraltar entity through which proceeds from the Ecuadorian Judgment
would be paid out, and Donziger held shares in that entity which corresponded to the amount of
his contingency interest granted by the 2011 Retainer Agreement. *See* Civ. Dkt. 1874 at 281
n.1110, 489 n.1821.

On March 18, 2014, Donziger sought a stay of the RICO Judgment arguing,
among other things, that to transfer forthwith and assign all of his property rights and interests
traceable to the Ecuadorian Judgment, including his shares of Amazonia, would constitute
irreparable harm. Civ. Dkt. 1888 at 15-20   On April 25, 2014, Judge Kaplan granted in part and
denied in part Donziger's motion for a stay pending appeal as follows:

> The motion for a stay pending appeal [DI 1888] is granted to the
> extent that paragraph 3 of the Judgment, solely pending the
> determination of the appeal in this case, is modified to read as
> follows:

---

[2]     As defined in the RICO Judgment, "Amazonia" referred to Amazonia Recovery Limited,
an entity registered in Gibraltar, together with its successors and assigns. Civ. Dkt. 1875 ¶ 7.2.

The "Retainer Agreement," as defined in the RICO Judgment, referred to a January 5,
2011 agreement between and among (a) each of the individual plaintiffs in the Lago Agrio Case,
together with their respective successors and assigns, (b) the ADF, (c) the Assembly, and (d)
Donziger & Associates, PLLC, together with its successors and assigns and all successors to and
predecessors of the Retainer Agreement (the "2011 Retainer Agreement"). *Id*. ¶ 7.9.

Hon. Loretta A. Preska
May 4, 2021
Page 4

> "Donziger shall execute in favor of the Clerk of this Court
> a stock power transferring to the Clerk all of his right, title and
> interest in his shares of Amazonia. The Clerk shall hold the
> Amazonia shares thus transferred, and all proceeds thereof,
> pending the determination of the appeal in this case, for the benefit
> of Donziger and Chevron, as their interests then may appear. Upon
> request by Donziger, given on notice to Chevron at least ten days
> in advance of the date for the proposed vote, the Clerk shall vote,
> or direct the owner of record thereof such to vote, such shares as
> directed by Donziger unless otherwise ordered by the Court.
> Donziger and the LAP Representatives, and each of them, shall
> execute such other and further documents as Chevron reasonably
> may request or as the Court hereafter may order to effectuate the
> foregoing provisions of this Judgment."

> It is denied in all other respects.

Civ. Dkt. 1901 at 32.  On receipt of this order, Donziger did not subsequently transfer his shares
in Amazonia to the Clerk of the Court during the pendency of the appeal, despite Chevron's
August 7, 2014 request that he do so.  Civ. Dkt. 1986-1.[3]  Donziger also did not transfer to
Chevron his rights to a contingent fee under the 2011 Retainer Agreement.

In August 2016, the Second Circuit affirmed Judge Kaplan's decision, specifically
noting the "absence of challenges to the district court's factual findings." *Chevron v. Donziger*,
833 F.3d 74, 81 (2d Cir. 2016).  Donziger's subsequent petition to the Supreme Court for a writ
of certiorari on March 27, 2017 was denied on June 19, 2017.  *Donziger v. Chevron Corp.*, 137
S. Ct. 2268 (2017).

After Donziger exhausted his appeals, in a June 19, 2017 letter, Chevron informed
Judge Kaplan that "Donziger appears never to have complied with the Court's order" requiring
Donziger to transfer his Amazonia shares to the Clerk of the Court pending his appeal, and
requested that Judge Kaplan direct Donziger to comply with the RICO Judgment and execute a
stock power transferring the shares to Chevron.  Civ. Dkt. 1922.  On July 17, 2017, Judge
Kaplan denied Chevron's request for an order directing Donziger to comply with the RICO
Judgment without prejudice to proceeding by formal motion, finding that aspect of Chevron's
application "may not be made by letter motion."  Civ. Dkt. 1923 at 2.

---

[3] In an August 21, 2014 response to Chevron's August 7, 2014 request, Donziger stated that "I
have not and will not sell or otherwise transfer any of my shares in Amazonia" and "a simple
transfer to the clerk's office of my Amazonia shares would in practice mean the complete
divestiture—and potentially irretrievable loss—of more than two decades of labor on the part of
me and some of my colleagues, before the Second Circuit even has a chance to decide our
appeal. . ." Civ. Dkt. 1986-1.

Hon. Loretta A. Preska
May 4, 2021
Page 5

      B.      <u>Transfer of the Amazonia Shares and Rights to Contingent Fee under the 2011
Retainer Agreement</u>

On March 19, 2018, Chevron moved to hold Donziger in contempt for failure to
transfer his shares in Amazonia as ordered.  Civ. Dkts. 1966, 1968.  At a May 8, 2018 hearing
before Judge Kaplan, Donziger did not deny that he had not transferred his interest in the
Amazonia shares to Chevron as directed four years earlier, but asserted he was "happy" to sign
his Amazonia shares over to Chevron (Civ. Dkt. 2003-1) (May 8, 2018 Tr. at 29:15-20).

Following the May 8 hearing, Chevron presented Donziger with (1) a general
assignment form to transfer all of his property interests traceable to the Ecuadorian Judgment and
(2) a specific assignment form to transfer his interest in the Amazonia shares. Civ. Dkt. 2003 at
1-2. Donziger did not execute the general assignment form. *Id.* at 2.  As for the Amazonia
shares, Donziger signed the transfer form, albeit with an "addendum of understandings" that
sought to negate Donziger's transfer of the shares to Chevron. Civ. Dkt. 2003-3; *see also* Civ.
Dkt. 2048 ¶ 5.  Donziger's addendum stated that transfer of the Amazonia shares was in violation
of Amazonia's Articles of Association, which provide that any transfer "in violation of these
Articles shall be null and void." Civ. Dkt. 2003-3 (Addendum of Understandings); *see also* PX
657 (Articles of Association of Amazonia Recovery Limited) at ¶ 37.  By letter dated May 11,
2018, Chevron informed Judge Kaplan that Donziger had failed to assign his property interests in
the RICO Judgment to Chevron and sought contempt sanctions and discovery regarding
Donziger's noncompliance. Civ. Dkt. 2003 at 2-3.

On May 16, 2018, Judge Kaplan found that Donziger was previously in civil
contempt for failing to execute, as directed by paragraph 3 of the RICO Judgment, a stock power
transferring to Chevron his interest in the Amazonia shares from the date that the RICO
Judgment was entered March 4, 2014 until May 9, 2018, the date that Donziger signed a stock
power.  *See* Civ. Dkt. 2006 at 9 (finding "Donziger made no effort to comply" and that "his
defiance has been brazen and deliberate"), 13 (noting Donziger's "complete and absolute failure"
to comply prior to May 9, 2018).  Noting that the addendum that Donziger appended to the stock
power sought to negate the transfer of shares, Judge Kaplan found that while the RICO Judgment
required the execution of a stock power agreement, the Judgment did not prescribe a particular
form for the stock power. *Id.* at 13.  Judge Kaplan therefore found Donziger in civil contempt up
to the date he signed the transfer form. *Id.*  Judge Kaplan left open the possibility that Chevron
could present an unqualified share transfer form to Donziger and, if he refused to sign, Chevron
could seek an order of the court requiring compliance.  Notably, the District Court also put
Donziger on notice that it would consider a properly filed contempt motion directed at paragraph
1 of the RICO Judgment if Donziger failed to transfer and assign all right, title, and interest in
property traceable to the Ecuadorian Judgment "including, without limitation, all rights to any
contingent fee" under the 2011 Retainer Agreement. Civ. Dkt. 2006 at 14-15 (citation omitted).

On June 25, 2018, at Donziger's deposition, Chevron again presented Donziger
with a "Transfer and Assignment of Judgment Interests" to assign any and all of Donziger's
interests in the Ecuadorian judgment to Chevron, including any right to a contingent fee under
the 2011 Retainer Agreement.  Donziger refused to execute that document at or after his

Hon. Loretta A. Preska
May 4, 2021
Page 6

deposition. Civ. Dkt. 2048 ¶¶ 4-7; see also Civ. Dkt. 2048-3 (form of Assignment); Civ. Dkt. 2048-4 (Donziger Tr. at 231:3-20) (". . .This is a whole other thing I need to look at, consider, and think about, so no, I'm not willing to execute this document today. . .").

On June 27, 2018, Chevron moved to compel Donziger to execute: (1) an unqualified transfer of his Amazonia shares; and (2) a transfer and assignment of any and all of his interests in the Ecuadorian Judgment, including rights to a contingent fee under the 2011 Retainer Agreement. Civ. Dkts. 2046, 2047, 2048.  By Order dated August 15, 2018, Judge Kaplan directed Donziger to execute and acknowledge before a notary public, and deliver to Chevron's counsel by August 21, 2018: (1) a transfer document for the Amazonia shares in the form annexed as an exhibit to a declaration by Chevron's counsel; and (2) a transfer and assignment in a form annexed to the Order as Exhibit 1, which would assign Donziger's right to any contingent fee under the 2011 Retainer Agreement to Chevron. *See* Civ. Dkt. 2072 at 9. Judge Kaplan specifically noted in his March 4, 2014 decision that the "right to a contingent fee and the fee itself are property," which are "subject to execution and attachment," and are "immediately assignable." *Id.* at 7.

On August 20, 2018, Donziger sought an extension of time through September 7, 2018 to "return from [foreign] travel and properly address the ethical issues raised by the ordered transfer," noting that he was seeking counsel "on the issue of transferring my contingency interest" because his "clients have forbidden me" to make the transfer.  Civ. Dkt. 2075.  By Order dated August 21, 2018, Judge Kaplan granted in part and denied in part Donziger's extension motion. Civ. Dkt. 2079.  The August 21 Order directed:

> Donziger shall execute two sets of originals of the required forms on or before August 22, 2018. He shall send one set, which need not have notarized acknowledgments, to Chevron's lead counsel no later than August 22, 2018 by overnight courier. In order to facilitate obtaining notarized acknowledgments at a U.S. Embassy or consulate, the Court will extend his time within which to do that and to deliver fully executed documents to Chevron. Donziger shall acknowledge his signatures on the two documents constituting the second set of originals before a consular official at a U.S. Embassy or consulate no later than August 28, 2018. No later than August 29, 2018, he shall place that fully executed, acknowledged, and notarized set of originals in the hands of an overnight courier for the speediest available delivery to Chevon's lead counsel.

Civ. Dkt. 2079 at 5-6. Donziger did not comply as directed.

On September 17, 2018, Chevron moved to hold Donziger in contempt and to impose coercive sanctions for his failure to comply with the District Court's August 15 and August 21 orders, focusing on Donziger's failure to transfer his Amazonia shares.  Civ. Dkts. 2083, 2084. While Donziger belatedly provided to Chevron on September 4, 2018 an executed

Hon. Loretta A. Preska
May 4, 2021
Page 7

and notarized transfer and assignment form of his interest in a contingent fee under the 2011 Retainer Agreement (as required by paragraph one of the RICO judgment and again by the August 15, 2018 Order), Donziger did not provide to Chevron an executed and notarized transfer and assignment form of his Amazonia shares as directed by the August 15 and 21 orders—despite inquiries from Chevron's counsel for that document.  *See* Civ. Dkt. 2085 at ¶ 2-4.  Only after Chevron's September 17, 2018 motion for contempt and coercive sanctions did Donziger, on October 5, 2018, provide to Chevron an executed and notarized transfer and assignment form of his Amazonia shares as directed.  Civ. Dkts. 2104, 2105.

     C.     <u>The 2017 ADF Contingent Fee Agreement</u>

At his June 25, 2018 deposition, Donziger admitted that he had signed a <u>new</u> agreement with his client the Amazon Defense Front ("ADF") and other parties subsequent to the 2011 Retainer Agreement, that he said superseded the 2011 Retainer Agreement.  *See* Civ. Dkt. 2050-2 at 29:2-20, 59:12-60:3.  Donziger only produced this new agreement (the "2017 ADF Agreement") after it was revealed at his deposition and following a June 28, 2018 evidentiary hearing, and despite that it had been responsive to a pending document request from Chevron that Judge Kaplan had directed Donziger to comply with by June 15, 2018.  *See* Civ. Dkt. 2165 at 2 n.3; *see also* Civ. Dkts. 1989-1; 2009.

The 2017 ADF Agreement, which Donziger personally entered into on or about November 1, 2017, provided, in pertinent part:

> In consideration of Mr. DONZIGER's leadership, investment, professional and fundraising services. . . both in the past and in the future, the FDA hereby acknowledges, confirms, and undertakes to support Mr. DONZIGER's existing contractual **INTEREST** or, alternatively, to the extent it is necessary or useful, hereby grants Mr. DONZIGER an **INTEREST** in his own right equal to Mr. DONZIGER's existing contractual **INTEREST**.  Such INTEREST, in any case, shall be understood to entitle Mr. DONZIGER to **6.3%** of any **FUNDS RECOVERED**, which are defined as any funds recovered in connection with the *AGUINDA* [i.e., Ecuadorian] CASE or the *AGUINDA* JUDGMENT, whether by court order or private out-of-court settlement, in Canada or in any other country…

Civ. Dkt. 2050-1 at 3 (emphasis in original).

Following this revelation, and briefing by the parties, on August 7, 2018, Judge Kaplan informed the parties that Chevron had raised a "new and independent ground for holding Donziger in contempt," i.e., Donziger's execution of and failure to assign to Chevron his interest in the 2017 ADF Agreement, but that it was not properly presented to the Court because it was not charged as part of a notice of motion or order to show cause as per S.D.N.Y. Civ. R. 83.6.  Civ. Dkt. 2064 at 2.  Judge Kaplan noted that Chevron could file a new motion charging

Hon. Loretta A. Preska
May 4, 2021
Page 8

contempt of paragraph 1 of the RICO Judgment for Donziger's failure to assign the interest granted to him by the 2017 ADF Agreement. *See id.*

On October 1, 2018, Chevron moved to hold Donziger in contempt for violating the RICO Judgment by failing to transfer and assign the 6.3% contingency interest granted to him in the 2017 ADF Agreement, which Chevron argued was a property interest—just like the 2011 Retainer Agreement—subject to execution and attachment and immediately assignable. *See* Civ. Dkt. 2113 at 2. In an October 31, 2018 declaration in opposition to Chevron's contempt motion, Donziger stated:

> The contingency interest stated in the updated power of attorney signed by [ADF] leadership in November 2017 was not intended to grant a new interest, but to recognize my existing interest in any *Aguinda* recovery. The Court has now coerced me into signing what I understand to be the entirety of my contingency interest over to Chevron. I am not taking the position that the November 2017 contract is protected or separable from the Court's other orders with respect to my contingency interest. If Chevron feels like it needs some additional documentation with respect to the November 2017 power, it should just ask me rather than rush to file for contempt.

Civ. Dkt. 2122-1 ¶ 21.

On February 21, 2019, the District Court issued an order entitled "ORDER RE ASSIGNMENT OF CONTINGENT FEE" and directed the parties to file an executed instrument of assignment of the 2017 ADF Agreement on or before February 28, 2019, "failing which each party shall file a letter. . .explaining why no such instrument has been filed." Civ. Dkt. 2165 at 3. The District Court stated:

> It was and remains Donziger's obligation to comply with paragraph 1 of the RICO Judgment, which of course requires him to assign to Chevron all of his right, title and interest to any contingent fee under the ADF agreement. After all, the [2017 ADF Agreement] by its terms granted him an "interest" equal to 6.3 percent of monies of which, if any are collected, the ADF claims to be the exclusive beneficiary.

*Id.* at 2. No such executed assignment was filed by February 28. In a February 28, 2019 filing, Chevron asserted that Donziger refused to comply with the District Court's directive to execute an assignment of his contingency interest under the 2017 ADF Retainer Agreement. Civ. Dkt. 2168. Chevron requested that the District Court direct Donziger to execute an attached assignment form. *Id.* On March 1, 2019, Donziger continued to resist and took the position that "yet another forced assignment of my contingency interest[] is unwarranted and in fact not possible." Civ. Dkt. 2169 at 1. Notwithstanding Judge Kaplan's repeated orders to the contrary,

Hon. Loretta A. Preska
May 4, 2021
Page 9

Donziger asserted that "[t]here is no need for an additional assignment, as I already have executed two such assignments under protest based on coercive orders of this court." *Id.* at 2.

On May 23, 2019, Judge Kaplan found Donziger in willful civil contempt for, among other things, his "failure to assign and transfer to Chevron all rights to any contingent fee that he now has or hereafter may obtain including without limitation all such rights under the 2017 Retainer." Civ. Dkt. 2209 at 69. Judge Kaplan imposed coercive sanctions that would begin at $2,000 for May 28, 2019, doubling "for each subsequent day during which Donziger fails fully to purge himself of this contempt." *Id.* Following the civil contempt finding and imposition of coercive sanctions, Donziger assigned his interest in the 2017 ADF Agreement on May 28, 2019. *See* Civ. Dkt. 2216 ¶ 4; *id.* at Ex. 1.

D.    The Criminal Contempt Charges

On July 31, 2019, the Honorable Lewis A. Kaplan issued an order directing Defendant Steven Donziger to show cause why he should not be held in criminal contempt of court, in violation of 18 U.S.C. § 401(3), citing six separate counts:

- Counts One through Three are based on Donziger's conduct in violating orders during post-judgment discovery: (1) from March 8, 2019 through May 28, 2019, failing to provide a list of his electronic devices, messaging accounts and document management accounts as directed by paragraph four of a March 5, 2019 "Forensic Inspection Protocol" Order ("Protocol") to govern the collection, imaging and examination of Donziger's electronically stored information; (2) from March 18, 2019 through at least May 28, 2019, failing to surrender his electronic devices for imaging as directed by paragraph five of the Protocol; and (3) from June 12, 2019 through at least July 31, 2019, failing to surrender his passports to the Clerk of the Court as directed by a June 11, 2019 order.

- Counts Four and Five are based on Donziger's disobedience of paragraph one of the RICO Judgment: (4) from March 4, 2014 through September 3, 2018, Donziger's failure and refusal to assign to Chevron his right under a 2011 Retainer Agreement to a 6.3% contingent fee interest in the Ecuadorian judgment; and (5) from November 1, 2017 through May 27, 2019, Donziger's failure and refusal to assign to Chevron his right under a 2017 Retainer Agreement to a 6.3% contingent fee interest in Ecuadorian judgment.

- Count Six is based on Donziger's disobedience of paragraph five of the RICO Judgment by, on December 23, 2016, pledging a portion of his contingent fee interest in the Ecuadorian judgment in exchange for personal services.

*See* Dkt. 1.

All six counts charge *completed* acts of criminal contempt. With respect to Counts Four and Five in particular, those counts allege completed acts of criminal contempt for

Hon. Loretta A. Preska
May 4, 2021
Page 10

the periods in which Donziger disobeyed paragraph one of the RICO Judgment by: (1) willfully failing to assign his right to a contingency fee interest in the Ecuadorian Judgment under the 2011 Retainer Agreement from March 4, 2014 through September 3, 2018 (the day before Donziger executed a transfer and assignment form relating to his rights under the 2011 Retainer Agreement (*see* Civ. Dkts. 1875, 2085-1)); and (2) willfully failing to assign his right to a contingency fee granted to him personally under the 2017 ADF Agreement from November 1, 2017 through May 27, 2019 (the day before Donziger executed a transfer and assignment form relating to his rights under the 2017 ADF Agreement (*see* Civ. Dkts. 2050-1 at 3, 2216 at ¶ 4 and Ex. 1)).

     E.     <u>The February 27, 2020 Motion to Dismiss the Criminal Contempt Charges</u>

     On February 27, 2020, Donziger submitted his first motion to dismiss charges contained in the Order to Show Cause. Dkt. 60. Donziger argued that the charges should be dismissed because only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." *See id.* at 7, 24. In particular, with respect to Counts Four and Five, Donziger alleged that his conduct should not be the subject of criminal contempt sanctions because it was "benign" (*id.* at 24) or that they "either were too trivial to warrant extreme resort to criminal process and/or were purged before Judge Kaplan filed his charges (*see id.*); and that "by the time of Judge Kaplan's criminal charges, over a year had passed since Mr. Donziger, expressly on pain of civil contempt, executed and submitted the very transfer of rights for which Count 4 and 5 allege criminal contempt" (*id.* at 32-33).

     By Order dated May 7, 2020, the Court rejected these arguments. With respect to Donziger's argument that taking corrective action (*e.g.*, with respect to Counts Four and Five) prior to the issuance of criminal charges means that criminal charges are unwarranted, this Court found:

> This argument fails because it misunderstands the crucial distinction between civil contempt, which serves to coerce compliance with an outstanding order, and criminal contempt, which punishes the contemnor for a "completed act of disobedience." *See International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994) (citation and internal quotation marks omitted). In the same way that a car theft defendant cannot extricate himself from exposure by eventually returning the stolen vehicles, a contempt defendant is not entitled to dismissal because he eventually complied with the previously disobeyed orders. Mr. Donziger's purging theory therefore fails.

Dkt. 68 at 21. Likewise, with respect to the argument that some of his alleged contempts were "benign" or "too trivial", this Court found:

> This argument is meritless. Mr. Donziger cites no authority for the proposition that only the most egregious contempts warrant

Hon. Loretta A. Preska
May 4, 2021
Page 11

> criminal charges, and the Court is aware of none. To the contrary, the case law acknowledges that criminal contempt includes "a broad range of conduct, from trivial to severe." *United States v. Carpenter*, 91 F.3d 1282, 1284 (9th Cir. 1996). That the defendant pegs the contempt at the lower end of that spectrum is not a basis for dismissing his charges.

*Id.* at 22.  Finally, with respect to the question whether Judge Kaplan's conduct complied with the "principle that only the least possible power adequate to the end proposed should be used in contempt cases," as set forth in *Vuitton*, this Court found:

> From the facts set forth in the parties' papers, however, it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges. Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions. That course of conduct gives "no basis for thinking that more orders, warnings, or threats would have produced improvement." *In re Holloway*, 995 F.2d 1080, 1087 (D.C. Cir. 1993); *see also In re Levine*, 27 F.3d 594, 595 (D.C. Cir. 1994) ("When the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern 'what lesser remedy [the judge] could have reasonably employed.'" (quoting *Holloway*, 995 F.2d at 1087)). The Court therefore disagrees that contempt charges were excessive or unwarranted under the circumstances alleged.

*Id.* at 22-23.

## Argument

### A.   Applicable Law

Civil and criminal contempt sanctions are directed at achieving different purposes.  As the Second Circuit has stated:

> The purpose of civil contempt is remedial and coercive; it thus makes sense to say, at least in some contexts, that if a defendant is doing all it can to comply with a court order, there may be little, if any, coercive purpose that civil contempt sanctions could achieve. Criminal contempt, however, serves the much different purpose of vindicating the court's authority.  *See United States v. United Mine Workers*, 330 U.S. 258, 303, 91 L. Ed. 884, 67 S. Ct. 677 (1947). *It serves to punish individuals or corporations for past violations of a court order*.  Because of this different purpose, the focus of criminal contempt is on the willfulness of the violation.

Hon. Loretta A. Preska
May 4, 2021
Page 12

*United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 661 (2d Cir. 1989) (emphasis added); *see also In re Irving*, 600 F.2d 1027, 1031 (2d Cir. 1979) ("In responding to a single contemptuous act, a court may well impose both criminal and civil sanctions wishing to vindicate its authority and to compel compliance.").

It is well-settled that a district court has the power to impose both civil and criminal contempt sanctions arising from the same contemptuous act.  *See In re Weiss*, 703 F.2d 653, 664 (2d Cir. 1983) ("[t]he nature of the court's response does not alter the character of the conduct, and the determination of the appropriate response is committed largely to the court's discretion."); *see also, e.g.*, *SEC v. American Board of Trade, Inc.*, 830 F.2d 431, 439 (2d. Cir. 1987) ("When a district court's order has been violated, the court may impose either civil contempt remedies or criminal contempt sanctions, or both."), *cert. denied*, 485 U.S. 938 (1988); *United States v. Cefalu*, 85 F.3d 964 (2d Cir. 1996), *United States v. Versaglio*, 85 F.3d 943 (2d Cir. 1996), *United States v. Paccione*, 964 F.2d 1269 (2d Cir. 1992) (all imposing both criminal and civil contempt sanctions for the same underlying contumacious conduct); *Booth v. Wilson*, No. 96 Civ. 920 (RO), 1997 U.S. Dist. LEXIS 15301, at *8 (S.D.N.Y. Oct. 2, 1997) (collecting cases); *EEOC v. Local 638 & Local 28 of Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877, 1983 U.S. Dist. LEXIS 18410, at *3 (S.D.N.Y. Mar. 21, 1983) ("The court has the power to assess both civil and criminal sanctions for the same contemptuous act.").

Courts have the discretion to impose civil contempt sanctions in order to secure future compliance, but may also employ the contempt power in order to address past violations:

> Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, *Shillitani v. United States*, 384 U.S. 364, 368-70, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966), the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both, *Backo v. Local 281, United Brotherhood of Carpenters & Joiners of America*, 438 F.2d 176 (2d Cir. 1970), *cert. denied*, 404 U.S. 858, 30 L. Ed. 2d 99, 92 S. Ct. 110 (1971).  When an injunction has been violated, civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority.

*Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir. 1983).

Notably, the Second Circuit in *Universal City* (an opinion issued four years after the *Irving* case primarily relied upon by the defendant in this fourth motion to dismiss) determined that the principle that "criminal contempt sanctions may not be imposed until there has been a determination that civil contempt remedies are ineffective" only "applies when a court

Hon. Loretta A. Preska
May 4, 2021
Page 13

is *endeavoring to secure future compliance with a court order. . .*[and] *not when a court is taking cognizance of past violations.*" 705 F.2d at 96 n.1 (citing *Shillitani*, 384 U.S. at 371 n.9) (emphasis added). When faced with willful violations of its orders, courts have the discretion to choose to respond with civil or criminal contempt sanctions, or both, to serve the purpose those particular types of contempt are intended to secure.

      B.    <u>Discussion</u>

          Donziger's motion to reconsider the denial of his February 27, 2020 motion to dismiss Counts Four and Five, asserted ten days prior to trial (Dkt. 274), does not demonstrate an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" and may be denied upon that basis. *See supra* at 11-12; *United States v. Alvarez-Estevez*, No. 13 Cr. 380 (JFK), 2014 U.S. Dist. LEXIS 197238, at *1 (S.D.N.Y. Nov. 6, 2014). Nonetheless, the motion may also be denied on its merits.

          The defendant takes issue with Judge Kaplan's initiation of criminal contempt charges by arguing that Judge Kaplan engaged in an "excessive exercise of the criminal contempt power" after Donziger had purged his contempts (Dkt. 274 at 1) and argues that, upon achieving "substantial compliance" with a court's orders, there is no longer any purpose to pursuing criminal contempt charges. *See id.* at 2. But Donziger overlooks the different purposes served by civil and criminal contempt sanctions, and the fact that this Court already addressed and rejected Donziger's "purging theory," that was asserted in almost identical fashion more than a year ago in this case. Dkt. 68 at 21; *Twentieth Century Fox*, 882 F.2d at 661 ("The purpose of civil contempt is remedial and coercive. . .Criminal contempt, however, serves the much different purpose of vindicating the court's authority."); *see supra* at 11-12.

          The defense also disputes the Court's finding that "[f]rom the facts set forth in the parties' papers. . .it appears Mr. Donziger left Judge Kaplan with no real option other than criminal charges." (Dkt. 68 at 22), arguing that Donziger had, very belatedly, purged his contempts with respect to Count Four and Five and therefore those violations of the RICO Judgment should not be addressed with criminal contempt charges. Dkt. 274 at 3. In essence, the defense contends that—after years of brazen contemptuous non-compliance with an outstanding court order—Donziger's induced compliance following lengthy motion practice and civil contempt somehow insulates him against criminal contempt charges. Donziger is wrong. Criminal contempt serves to punish "retrospectively for a 'completed act of disobedience.'" *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994); *see also id.* at 845 (stating that punishment for criminal contempt is "punitive" and "imposed to vindicate the authority of the court. . . The criminal contemnor's disobedience is past, a 'completed act'. . . a deed no sanction can undo.") (internal citations omitted) (Ginsburg, J., concurring). "In responding to a single contemptuous act, a court may well impose both criminal and civil sanctions wishing to vindicate its authority and to compel compliance." *In re Irving*, 600 F.2d at 1031.

          As for Donziger's motion to dismiss all six charges in the Order to Show Cause based on the Circuit's language in *In re Irving*, that argument is also meritless. Donziger claims *In re Irving* imposes a limitation on a court's ability to respond to contumacious acts and conduct

Hon. Loretta A. Preska
May 4, 2021
Page 14

with criminal contempt charges: i.e., that criminal contempt charges can only be used when the court "determines, with good reason, that the civil remedy would be inappropriate or useless" and that this judicial determination must be made prior to the imposition of any criminal contempt charges. *See* Dkt. 274 at 3; *see id.* at 1 (contending that the charges should be dismissed "on the ground that Judge Kaplan failed to make basic determinations that are a condition precedent to using the criminal contempt power."). Donziger is wrong. *See, e.g.*, *Weiss*, 703 F.2d at 660 ("It is fundamental that the court has the power to deal with such disobedience in ways designed either to punish or to compel compliance."); *id.* at 664 ("If conduct is tantamount to a willful refusal to obey an order of the court, and the contemnor has the power to end his contumacy, a court may impose criminal contempt sanctions, or civil contempt sanctions, or both. The nature of the court's response does not alter the character of the conduct, and the determination of the appropriate response is committed largely to the court's discretion."); *see also supra* at 12-13 (collecting cases).

The language that the defense relies upon from *In re Irving*—"[a] judge should resort to criminal contempt only after he determines that holding the contemnor in civil contempt would be inappropriate or fruitless"—cites to *Shillitani v. United States*, 384 U.S. at 364 and n.9. But the circumstances in *Shillitani* are inapposite insofar as that case concerned a district court's response to a recalcitrant grand jury witness who was imprisoned for his refusal to testify. *Shillitani* found that a court in those circumstances must conform to the doctrine that a court must exercise "the least possible power adequate to the end proposed" when deciding between civil contempt sanctions and coercive imprisonment in order to seek to compel witness testimony. *See* 384 U.S. at 371 ("[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order."); *id.* at 371 n.9 ("[t]his doctrine further requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate."); *see also Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 801, (1987) ("While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that "only 'the least possible power adequate to the end proposed' should be used in contempt cases. We have suggested, for instance, that, *when confronted with a witness who refuses to testify*, a trial judge should first consider the feasibility of prompting testimony through the imposition of civil contempt, utilizing criminal sanctions only if the civil remedy is deemed inadequate.") (internal citations omitted, emphasis added). Those circumstances do not apply here.

Moreover, in *Universal City*, the Second Circuit made clear that the holding in *Shillitani* is limited:

> The contemnors mistakenly rely on *Shillitani v. United States* . . . to assert that criminal contempt sanctions may not be imposed until there has been a determination that civil contempt remedies are ineffective. That rule applies when a court is endeavoring to secure further compliance with a court order . . . not when a court is taking cognizance of past violations.

Hon. Loretta A. Preska
May 4, 2021
Page 15


*Universal City*, 705 F.2d at 96 n.1.  Because the six criminal contempt counts charged in the Order to Show Cause are targeted at *past* violations of court orders and to vindicate the authority of the court, as opposed to seeking to secure future compliance with a court order, those six counts are entirely proper.


## Conclusion

For the foregoing reasons, the defendant's motion should be denied in its entirety.


Respectfully submitted,

_____/s/_____
Rita M. Glavin

*Special Prosecutor on behalf*
*of the United States*