**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
UNITED STATES OF AMERICA, :
:
-against- :
:
: Case No. 19 CR 561 (LAP)
STEVEN DONZIGER, :        11 CV 691 (LAK)
:
Defendant. :
:
:
---------------------------------------------------------x

**NON-PARTIES GIBSON, DUNN & CRUTCHER LLP AND CERTAIN PARTNERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENAS SERVED UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................1

II. ARGUMENT..........................................................................................................................3

    A.    Donziger's Subpoenas Do Not Seek Relevant Documents or Information ........... 3

    B.    Donziger Has Not Demonstrated How His Broad and Unfocused Requests Seek Documents that Would Be Admissible at Trial ............................................ 5

    C.    Donziger Has Not Established Specificity............................................................. 7

III. CONCLUSION ........................................................................................................................9

## TABLE OF AUTHORITIES

**CASES**

*In re Chevron Corp.*,
  749 F. Supp. 2d 170 (S.D.N.Y. 2010) .................................................................................. 6

*United States v. Avenatti*,
  No. 19-CR-373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020) .................................. 3, 8

*United States v. Cole*,
  No. 19 CR 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) .......................... 3, 4, 5, 9

*United States v. Giampa*,
  No. 92-CR-437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ......................................... 3

*United States v. Mendinueta-Ibarro*,
  956 F. Supp. 2d 511 (S.D.N.Y. 2013) ................................................................................... 8

*United States v. Nixon*,
  418 U.S. 683 (1974) ................................................................................................ 3, 4, 5, 6, 7

*United States v. Treacy*,
  No. 08 CR. 0366 (RLC), 2008 WL 5082884 (S.D.N.Y. Dec. 1, 2008) ................................ 6

*United States v. Weissman*,
  No. 01 CR. 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ............................ 4, 5

**RULES**

Federal Rule of Civil Procedure 26(b)(5) ....................................................................................... 6

Federal Rule of Criminal Procedure Rule 17(c) ............................................................ 3, 5, 7, 8, 9

Local Rule 26.2 .............................................................................................................................. 6

## I. PRELIMINARY STATEMENT

On the eve of his criminal contempt trial, Defendant Steven Donziger served five subpoenas broadly seeking irrelevant, and inadmissible, materials from Gibson Dunn and four of its partners based on delusional conspiracy theories. Gibson Dunn and its partners represented Chevron Corporation ("Chevron") in the civil action from which this action arose. Faced with a motion to quash, Donziger doubles down on his improper use of Federal Rule of Criminal Procedure 17(c), overlooking well-established requirements for valid requests under that Rule. Donziger's subpoenas are facially deficient and should be quashed in their entirety.

In his opposition, Donziger makes no attempt to demonstrate the legal merit of his Rule 17(c) requests. Instead, Donziger advances baseless conspiracy theories and *ad hominem* attacks on Gibson Dunn, Judge Kaplan, the prosecutors, and this Court. His approach of lashing out in this unseemly way only reinforces the impression that Donziger is not engaging in a good faith effort to obtain evidence admissible at trial, but rather is simply attempting to deflect attention from his own misconduct—this time, by attacking the lawyers for the corporation he attempted to extort and defraud. This is right out of Donziger's playbook. As he once told his Ecuadorian co-counsel, Donziger believes that "[i]f you repeat a lie a thousand times it becomes the truth." 11 Civ. 0691, Dkt. 2045 at 29 n.69 (S.D.N.Y.). Indeed, this is not the first time Donziger has improperly sought discovery based on nothing more than wild claims of a far-reaching conspiracy. As this Court has now repeatedly recognized, "Mr. Donziger's speculation that the universe is conspiring against him is not a basis for compelling disclosure." Dkt. 297 at 24 (quoting Dkt. 68 at 24).[1]

---

[1] Contrary to Donziger's baseless conspiracy theories, neither Gibson Dunn partners nor Chevron initiated the criminal proceeding or are prosecuting this case. Rather, certain Gibson Dunn partners have been subpoenaed to testify as witnesses.

Donziger has not carried his burden of showing how his sweeping requests seek specific materials that are at all relevant to, much less admissible in, this criminal contempt trial. Donziger's primary argument is that the materials he seeks are necessary for impeachment purposes, so that he can attack the credibility of certain Gibson Dunn partners if they were to testify at trial. But the alleged impeachment evidence Donziger seeks is based on nothing but innuendo and conjecture. And Donziger fails to demonstrate how the materials he seeks will demonstrate bias or a lack of credibility on the narrow issues relevant to the charges of criminal contempt.

Moreover, almost none of the documents and information he seeks would be admissible in this criminal action. Rather than make the requisite showing, Donziger tries to shift the burden to Gibson Dunn—a non-party to this criminal proceeding—with his assertion that Gibson Dunn should produce all responsive materials and then argue later why they should not be admitted at trial—for example, because they constitute hearsay or are privileged. But he ignores well-established precedent placing the burden in the first instance on the party requesting documents under Rule 17(c) to demonstrate that the evidence being sought is admissible. Rule 17(c) is not a general discovery device, but general discovery is exactly what Donziger's subpoenas seek. And his sweeping requests utterly lack the specificity that Rule 17(c) demands.

While offering up conspiracy theories, Donziger misses the point. The only person responsible for his current plight is himself—not Gibson Dunn, not Chevron, not the prosecutors, not Judge Kaplan, and not Your Honor. Donziger chose to resort to fraud and bribery to procure a fraudulent Ecuadorian judgment, and then defied the judgment and orders of Judge Kaplan. Donziger's intentional misconduct—not anything Gibson Dunn has done—led to his disbarment

and the criminal contempt charges in this action.[2]  No amount of discovery will change that fundamental fact.  The Court should therefore quash these improper subpoenas.

## II.  ARGUMENT

Donziger does not dispute that his Rule 17(c) subpoenas must satisfy the "three hurdles" of relevancy, admissibility, and specificity outlined in *United States v. Nixon*, 418 U.S. 683, 700 (1974), but he fails to demonstrate that he clears these hurdles.

### A.  Donziger's Subpoenas Do Not Seek Relevant Documents or Information

Donziger essentially admits that the information he seeks has no relevance to the criminal contempt charges at issue here, as he focuses on his claim that the subpoenas seek documents and information for impeachment purposes.  *See* Dkt. 294 at 4 (arguing the subpoenas are "critically necessary to understanding the bias and personal financial motivation" of Gibson Dunn partners).  Donziger argues that his subpoenas are valid for this purpose under *United States v. Cole*, No. 19 CR 869 (ER), 2021 WL 912425, at *3–4 (S.D.N.Y. Mar. 10, 2021), which he suggests holds that a Rule 17(c) subpoena made returnable on the first day of trial can seek impeachment evidence.  But the cases *Cole* cited say the exact opposite.  For example, *Cole* cites *United States v. Avenatti*, No. 19-CR-373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020), which explained that "the well-established rule that impeachment materials are generally not subject to pretrial production applies with equal force to a request that such documents be produced on the first day of trial." *Id.* at *5 (quoting *United States v. Giampa*, No. 92-CR-437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992)).  Moreover, Donziger overlooks that the court in *Cole* granted a motion to quash

---

[2]  The New York Court of Appeals today declined to review Donziger's disbarment.  *See* Decision, *In the Matter of Steven R. Donziger*, Mo. Mo. 2020-676 (N.Y. May 6, 2021), available at https://www.nycourts.gov/ctapps/Decisions/2021/May21/DecisionList050621.pdf.

3

subpoenas because they were, like Donziger's subpoenas here, "a classic 'fishing expedition.'" *Cole*, 2021 WL 912425, at *4 (quoting *Nixon*, 418 U.S. at 700); *see also* Part III, *infra*.

Even assuming all four Gibson Dunn partners Donziger subpoenaed will testify at trial, the alleged impeachment relevance of the evidence sought in the subpoenas is based on speculative conspiracy theories. Further, despite repeatedly asserting that the subpoenaed materials are relevant to issues of "bias" or "credibility," Donziger has not articulated how the materials he seeks will demonstrate bias or any lack of credibility on the narrow issues relevant to the charges of criminal contempt. Thus, even if it the Court were to agree that theoretically "impeachment material can be useful and evidentiary," Donziger has "made no . . . showing in this case" that the documents and information he seeks represent such material. *United States v. Weissman*, No. 01 CR. 529 (BSJ), 2002 WL 31875410, at *2 (S.D.N.Y. Dec. 26, 2002).

Donziger asserts that the "information sought . . . is highly relevant for reasons beyond impeachment" (Dkt. 294 at 5–6), but that claim is meritless. For example, Donziger argues that the requests seek information relevant to his "good faith basis to pursue . . . direct appellate review" before complying with court orders. *Id.* at 5. But nothing in Gibson Dunn's possession will shed any light on whether *Donziger* was acting in good faith (even assuming that a "good faith" effort to obtain appellate review is a basis for deliberately and knowingly defying a lawful court order).[3]

---

[3] Donziger's claim that he was seeking to pursue an appeal "before turning over reams of confidential and attorney-client privileged information for review by" Gibson Dunn (Dkt. 294 at 5) is belied by the record. Donziger was not ordered to turn material over to Gibson Dunn or Chevron, but instead to a neutral forensic expert, who was ordered not to turn any information over to Gibson Dunn or Chevron absent further order of the court. *See* No. 11 Civ. 0691, Dkt. 2172 (S.D.N.Y.) ("The Neutral Forensic Expert shall take possession, custody, and control of the Devices. . . . At no time shall Chevron's Forensic Expert have access to the original Devices or to live Media accounts absent further court order."); *see also* No. 11 Civ. 0691, Dkt. 2254 (S.D.N.Y.) ("Donziger has been stalling perfectly legitimate post-judgment discovery. . . . the Court laboriously developed the process reflected in the Forensic Inspection Protocol, which is highly

Donziger also says that the subpoenas seek documents and information relating to "the exercise of discretion by Judge Kaplan and the private prosecutors" in pursuing the charges against him. *Id.* at 5–6. But that has nothing to do with the criminal contempt charges or any legitimate defense to those charges. Moreover, Gibson Dunn's motions on behalf of Chevron to have Donziger held in civil contempt are all a matter of public record. Donziger has not provided any factual basis for his bizarre assertions that Gibson Dunn was somehow involved in initiating this criminal contempt action, or that there was some unspecified impropriety with respect to Judge Kaplan's decision to initiate this criminal contempt action. Donziger's "unsupported allegations are exactly the kind that are insufficient to merit discovery." Dkt. 297 at 24. As with his other recent attempts to seek this discovery, Donziger "point[s] to absolutely nothing—only innuendo and conjecture—that would entitle him to the vast swath of discovery that he seeks." *Id.* "Because Mr. Donziger has not offered evidence tending to show the elements of either vindictive or selective prosecution, he is not entitled to that discovery." *Id.*

**B.  Donziger Has Not Demonstrated How His Broad and Unfocused Requests Seek Documents that Would Be Admissible at Trial**

Donziger has the burden to demonstrate the admissibility of materials sought through a Rule 17(c) subpoena. *See, e.g.*, *Cole*, 2021 WL 912425, at *3 (holding that it is the "burden" of the party requesting the subpoena to demonstrate admissibility under *Nixon*) (citing *Nixon*, 418 U.S. at 699–700). Donziger's attempt to shift that burden to Gibson Dunn lacks merit.

First, Donziger argues that Gibson Dunn's hearsay objections "are speculative," and can be raised at trial. But *Nixon* does not contemplate an in-trial evidentiary hearing on evidence sought in a Rule 17(c) subpoena. Instead, *Nixon* establishes that the party seeking a subpoena

---

protective of Donziger."). And the Second Circuit resolved Donziger's appeal two months ago, but Donziger still has not complied with Judge Kaplan's discovery orders.

5

must make a "sufficient preliminary showing that each of the subpoenaed [materials] contains evidence admissible with respect to the offenses charged in the indictment." 418 U.S. at 700. Donziger does not attempt to show how each of the documents sought by his subpoenas would be admissible at trial, nor could he, given the subpoenas' overbreadth and lack of specificity. Donziger's argument that "there is no shortage of non-hearsay uses" for the subpoenaed materials and his rote recitation of hearsay exceptions (*see* Dkt. 294 at 6), does not connect any of these uses or exceptions to particular documents or even categories of documents requested in the subpoenas and falls far short of making a "sufficient preliminary showing" of admissibility. *See, e.g.*, *United States v. Treacy*, No. 08 CR. 0366 (RLC), 2008 WL 5082884, at *2 (S.D.N.Y. Dec. 1, 2008) (quashing subpoenas where "[f]ar from showing the subpoenaed documents are admissible, [the defendant] only argues that the documents are 'likely to be admissible'").

Second, Donziger argues that his requests for privileged information or attorney work product from Gibson Dunn are permissible because (i) he is being charged for criminal contempt (in part) for not disclosing allegedly privileged information and (ii) Gibson Dunn has purportedly waived privilege in this *criminal* matter by not comply with rules governing *civil* proceedings. *See* Dkt. 294 at 6–7. At the outset, as Judge Kaplan's detailed orders make clear, Donziger did nothing to assert or preserve privilege in the underlying civil case, thereby waiving it. *See* 11 Civ. 0691, Dkt. 2108 at 2 (S.D.N.Y.). Judge Kaplan found that Donziger disregarded his duty under Federal Rule of Civil Procedure 26(b)(5) and S.D.N.Y. Local Rule 26.2 to substantiate his claims of privilege, and it was not the first time Donziger had made sweeping assertions of privilege without complying with the applicable civil rules. *Id.* (citing *In re Chevron Corp.*, 749 F. Supp. 2d 170 (S.D.N.Y. 2010)). Here, Gibson Dunn was under no obligation to produce a privilege log, or to

comply with any of the foregoing *civil* discovery rules in the context of this *criminal* case, to which it and its partners are not parties.

Donziger has not made a "sufficient preliminary showing" that each of the subpoenaed materials are admissible. *Nixon*, 418 U.S. at 700. Donziger fails to show that the materials he seeks are not privileged or protected by the attorney work product doctrine. In fact, on their face, Donziger's subpoenas seek privileged documents and attorney work product. Donziger asserts that Gibson Dunn and its partners "must, first, produce all responsive documents not specifically subject to a claim of privilege" and then redact and produce other privileged materials and bring them to court. Dkt. 294 at 8. But this would effectively shift Donziger's burden to Gibson Dunn which is improper. To obtain materials through Rule 17(c) subpoenas, Donziger must seek admissible evidence, which excludes materials protected by privileges.[4] He failed to do so, and his subpoenas should be quashed.

**C.     Donziger Has Not Established Specificity**

Donziger attempts to characterize his requests as "carefully-worded," and seeking limited information. Dkt. 294 at 8. His actual requests are neither. For example, while he now purports to only seek "GDC contacts with the Court and the private prosecutors *regarding this case*" (*id.*), the actual subpoenas contain no such limitation. Instead, they seek communications between *any* Gibson Dunn employee or "agent" and either Your Honor, Judge Kaplan, or the prosecutors (as well as their relatives and "agents"), regarding *any* subject-matter, "whether professional or

---

[4] Donziger also overlooks the essentially impossible burden Gibson Dunn would be forced to undertake to review and assess the potential privilege issues of more than two years of bills and timesheets in a matter of days, much less to create a privilege log with redacted and unredacted physical copies of all such documents in a matter of days for a trial where Gibson Dunn and the individual witnesses are not parties. Donziger could have sought this information many months ago, and his last minute effort to spring these burdensome and irrelevant requests on Gibson Dunn days before trial should not be permitted.

7

personal in nature." Gibson Dunn Subpoena ¶¶ 1–3. These are the opposite of "carefully-worded," "narrowly-tailored," or "extraordinarily limited requests." Dkt. 294 at 3, 8, 9.

The reality is that the subpoenas at issue are written as broadly as possible. They seek all documents and communications, without subject-matter limitation, between any Gibson Dunn employee or "agent," and Your Honor, Judge Kaplan, the Special Prosecutors, and/or any family member or "agent" of the same. Gibson Dunn Subpoena ¶¶ 1–9. They seek all documents pertaining to Donziger's disbarment, and "objective[s]" that Donziger speculates Gibson Dunn may have had. Gibson Dunn Subpoena ¶¶ 10–11. And they seek "all Marketing and Solicitation Materials," and "all Professional, Academic, and Media Materials" created by or for Gibson Dunn that mention Chevron, Donziger, *or* Ecuador. Gibson Dunn Subpoena ¶¶ 14–15.

Donziger also seeks "all" documents, communications, records, and information, surrounding everything from contact with Your Honor and Judge Kaplan, to marketing materials, to work involving other law firms, investigators, judicial officers, law enforcement officers, and various third parties. *See* Gibson Dunn Subpoena ¶¶ 1, 3–13, 14–15. His failure to identify "specific admissible evidence" betrays that he is "engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013). He cannot demand production of broad swathes of documents, in the "hope that something useful will turn up." *Avenatti*, 2020 WL 508682, at *4 (citation and alteration omitted). Donziger is trying to use Rule 17(c) "to circumvent normal discovery requirements," *id.*, and because he has not "reasonably specifi[ed] the information contained or believed to be contained in the documents sought," *id.*, beyond "innuendo and conjecture," Dkt. 297 at 24, his requests are not sufficiently specific under even the most liberal reading of *Nixon*.

In fact, Donziger's requests are far less focused than the requests that were quashed in Donziger's primary authority, *United States v. Cole*. *See* 2021 WL 912425, at *5. The requests in *Cole* sought "all documents" and "personnel records" related to a single specific employee and a limited subject matter. *See Cole*, No. 19-cr-869 (ER), Dkt. 56-1 (S.D.N.Y.). Despite these limitations, the court found that two of the three requests "represent[ed] a classic 'fishing expedition.'" *Cole*, 2021 WL 912425, at *4. Moreover, unlike in *Cole*, where the subpoenas were issued approximately three months before the original trial date, the subpoenas here were issued only 11 days in advance of Donziger's *third* trial date. The subpoenas here are thus more unreasonable and oppressive than those quashed in *Cole*.

Donziger argues that the lack of specificity in his subpoenas should be excused because Gibson Dunn could have raised concerns regarding the broad wording in the requests during a meet and confer. Dkt. 294 at 9. This argument ignores Donziger's burden to serve specific and tailored requests under Rule 17(c). It also ignores that the undersigned did, in fact, raise the subpoenas' overbreadth and lack of specificity during a meet and confer discussion. *See* Dkt. 282 ¶ 7.

## III. CONCLUSION

For these reasons, and those set forth in the Non-Parties' opening Memorandum of Law, the Court should quash the Rule 17(c) subpoenas served on Gibson Dunn, Anne M. Champion, Randy M. Mastro, Andrea E. Neuman, and William E. Thomson.

Dated:  May 6, 2021

Respectfully submitted,

*/s/ Reed Brodsky*
Reed Brodsky
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
E-mail: rbrodsky@gibsondunn.com

*Attorney for Gibson, Dunn & Crutcher LLP,*
*Anne M. Champion, Randy M. Mastro,*
*Andrea E. Neuman, and William E. Thomson*