UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>STEVEN DONZIGER,<br><br>                    Defendant. | No. 19-CR-561 (LAP)<br><br>No. 11-CV-691 (LAK)<br><br><u>MEMORANDUM & ORDER</u> |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is the motion to quash five Rule 17(c)
subpoenas served on non-parties Gibson, Dunn & Crutcher LLP
("GDC") as well as Anne M. Champion, Randy M. Mastro, Andrea E.
Neuman, and William E. Thomson ("the Partners" and, together
with GDC, "Movants").  (<u>See</u> dkt. no. 283; <u>see also</u> dkt. nos.
284, 298.)  Defendant Steven Donziger opposes the motion.  (<u>See</u>
dkt. no. 295.)  For the reasons explained below, the motion to
quash is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>, and the Subpoenas
are <u>MODIFIED</u> as set forth below.

I.   **Background**

    The Court has already recounted the lengthy procedural
history of this case in several previous orders.  (<u>See</u>, <u>e.g.</u>,
dkt. no. 68 at 2-7; dkt. no. 243 at 1-4; dkt. no. 297 at 2-11.)
Consequently, the Court will summarize only the facts relevant
to the instant motion here.

    On April 29, 2021--eleven days before trial in this matter
was scheduled to begin--Mr. Donziger served subpoenas on GDC and

four partners, all of whom served as counsel for Chevron in the
civil case from which these criminal contempt charges arose.
(See dkt. no. 282 ¶¶ 2-6.)  The subpoenas served on each of the
Partners ("the Partner Subpoenas") are identical, and the
subpoena served on GDC ("the GDC Subpoena" and, together with
the Partner Subpoenas, "the Subpoenas") is nearly
indistinguishable.[1]  Those subpoenas sweep very broadly, seeking
the following information across six generalized buckets:[2]

**Private Prosecutors**

    1.   A copy of all electronic documents or
communications involving (a) you or anyone from Gibson
Dunn and (b) the Private Prosecutors.  "Private
Prosecutors" include Rita Glavin, Brian P. Maloney,
Sareen K. Armani, or any employee or agent of the
Seward & Kissel law firm.

    2.   A log indicating date and approximate length
of all telephone or videoconferencing communications,
or in-person meetings, whether professional or
personal in nature, scheduled or unscheduled,
involving (a) you or anyone from Gibson Dunn and (b)
the Private Prosecutors.

    3.   All information in your possession, custody,
or control regarding or reflecting the existence of
telephone or videoconferencing communications or in-

---

[1]   (See generally dkt. no. 283-1 (GDC); dkt. no. 283-2
(Mastro); dkt. no. 283-3 (Neuman); dkt. no. 283-4 (Thompson);
dkt. no. 283-5 (Champion).)

[2] The relevant time period for the subpoenas was defined as
"April 15, 2019 to the present" unless the subpoenas "expressly
stated" otherwise.  (Dkt. no. 283-1, Ex. A, at 1 (¶ 3 of
definitions and instructions); dkt. no. 283-2, Ex. A, at 1
(same); dkt. no. 283-3, Ex. A, at 1 (same); dkt. no. 283-4, Ex.
A, at 1 (same); dkt. no. 283-5, Ex. A, at 1 (same).)

person meetings involving (a) you or <u>anyone from
Gibson Dunn</u> and (b) the Private Prosecutors.

**Hon. Loretta A. Preska**

4.    A copy of <u>all electronic documents or
communications</u> involving (a) you or <u>anyone from Gibson
Dunn</u> and (b) <u>Judge Loretta Preska or any agent or
family member of Judge Preska</u>, other than those
communications filed in the criminal case, no. 19-cr-
561.

5.    A log indicating date and approximate length
of <u>all telephone or videoconferencing communications,
or in-person meetings</u>, whether professional or
personal in nature, scheduled or unscheduled,
involving (a) you or <u>anyone from Gibson Dunn</u> and (b)
<u>Judge Loretta Preska or any agent or family member of
Judge Preska</u>.

6.    <u>All information</u> in your possession, custody,
or control regarding or reflecting the existence of
telephone or videoconferencing communications or in-
person meetings involving (a) you or <u>anyone from
Gibson Dunn</u> and (b) <u>Judge Loretta Preska or any agent
or family member of Judge Preska</u>.

**Hon. Lewis A. Kaplan**

7.    A copy of <u>all electronic documents or
communications</u> involving (a) you or <u>anyone from Gibson
Dunn</u> and (b) <u>Judge Lewis Kaplan or any agent or family
member of Judge Kaplan</u>, other than those
communications filed in the civil case, no. 11-cv-691.

8.    A log indicating date and approximate length
of <u>all telephone or videoconferencing communications,
or in-person meetings</u>, whether professional or
personal in nature, scheduled or unscheduled,
involving (a) you or <u>anyone from Gibson Dunn</u> and (b)
<u>Judge Lewis Kaplan or any agent or family member of
Judge Kaplan</u>.

9.    <u>All information</u> in your possession, custody,
or control regarding or reflecting the existence of
telephone or videoconferencing communications or in-
person meetings involving (a) you or <u>anyone from</u>

<u>Gibson Dunn</u> and (b) <u>Judge Lewis Kaplan or any agent or family member of Judge Kaplan</u>.

**Corporate Prosecution**

10.   A copy of <u>all documents or electronic communications</u> involving you and/or <u>anyone from Gibson Dunn and/or Gibson Dunn's agents</u>, including specifically any private investigators or "corporate solutions" service providers, reflecting the objective to get Mr. Donziger disbarred, including specifically ( a) <u>any discussion</u> of plans, ideas, methods, tactics, strategies, approaches aimed at furthering said objective; and (b) <u>any communications</u> with <u>any</u> current or former judicial officer or staff, <u>any</u> prosecutorial or disciplinary authority and/or <u>any</u> current or former prosecutor, <u>any</u> law enforcement officer, <u>any</u> private investigator, or <u>any</u> relevant third-party in furtherance of said objective, including specifically <u>any</u> communications involving Richard Supple and/or the law firms Hinshaw & Culbertson LLP and/or Clyde & Co., and <u>any</u> communications involving Michael I. Krauss, concerning Steven Donziger.  The relevant time period for this request is September 3, 2016 to the present.

11.   A copy of <u>all documents or electronic communications</u> involving you and/or <u>anyone from Gibson Dunn and/or Gibson Dunn's agents</u>, including specifically <u>any</u> private investigators or "corporate solutions" service providers, reflecting the objective to get Steven Donziger charged with criminal contempt or any other criminal offense, including specifically (a) <u>any discussion</u> of plans, ideas, methods, tactics, strategies, approaches aimed at furthering said objective; and (b) <u>any communications</u> with <u>any</u> current or former judicial officer or staff, <u>any</u> prosecutorial authority and/or <u>any</u> current or former prosecutor, including specifically Joon Kim, Geoffrey Berman, Audrey Strauss, Cyrus Vance, Jr., and Rudy Giuliani, or their deputies or assistants, <u>any</u> law enforcement officer, <u>any</u> private investigator, or <u>any</u> relevant third-party in furtherance of said objective.  The relevant time period for this request is October 31, 2017, to the present.

**Billing**

12. <u>All</u> bills and underlying timesheets (a) submitted or (b) prepared for submission but later revised or not submitted by you or Gibson Dunn to Chevron Corporation for work on <u>any legal or non-legal matter relating in any way</u> to Steven Donziger or the country of Ecuador during the relevant time period.

**Gibson Dunn Marketing and Solicitation**

13. A copy of <u>all Marketing and Solicitation Materials</u> in your possession, custody, or control that mention Chevron Corporation, Ecuador, or Steven Donziger. "Marketing and Solicitation Materials" include but are not limited to presentations, pamphlets, pitchbooks; summaries or overviews of success or experience at the firm, practice area, or individual-lawyer level; biographic descriptions (bios); letters and pitch materials prepared for potential clients, interest groups, industry associations, private clubs, or other formal or informal regular meetings; letters and pitch materials prepared for any ranking, awards, or certification process, include those managed by The American Lawyer, The New York Law Journal, Law360, Chambers & Partners, The Legal 500, Best Lawyers in America, BTI Consulting Group, The Latin Lawyers, or similar; recommendations or testimonials from clients or other third-parties or entities; and <u>any other materials</u> intended for eventual use in marketing, promotion, or the solicitation or generation of new clients and new business, whether prepared by Gibson Dunn or by <u>any third-party person or entity</u>, and regardless of whether the material was actually used for any marketing purpose.

14. A copy of <u>all Professional, Academic, and Media Materials</u> in your possession, custody, or control that (a) is authored by you or an employee or agent of Gibson Dunn and (b) mentions Chevron Corporation, Ecuador, or Steven Donziger. "Professional, Academic, and Media Materials" include but are not limited to articles intended for law reviews, law journals, newsletters, or professional or practice-area publications; entries for law reports, digests, surveys, treatises, databases, encyclopedias, and similar; Continuing Legal Education materials or

similar seminar materials; client alerts; op-eds or
any articles intended for general publication in
magazines; as well as <u>any of the foregoing types of
materials</u> in which you or an employee or agent of
Gibson Dunn are quoted.

(Dkt. no. 283-2, Ex. A, ¶¶ 1-14 (emphasis added); <u>accord</u> dkt.
no. 283-1, Ex. A, ¶¶ 1-12, 14-15; dkt. no. 283-3, Ex. A, ¶¶ 1-
14; dkt. no. 283-4, Ex. A, ¶¶ 1-14; dkt. no. 283-5, Ex. A, ¶¶ 1-
14.)   In addition to these requests, the GDC Subpoena also
demanded "[a] summary indicating hours and dollar amount on a
quarterly basis throughout the relevant time period of <u>all</u> bills
submitted by Gibson Dunn to Chevron Corporation for work on <u>any
other matter</u>" besides those involving Mr. Donziger or Ecuador.
(Dkt. no. 283-1, Ex. A, ¶ 13 (emphasis added).)

On May 2, 2021, counsel for Movants conferred with Mr.
Donziger's counsel regarding the Subpoenas.   (<u>See</u> dkt. no. 282
¶ 7.)   Movants' counsel offered to provide two sets of requested
documents: (1) "communications between Gibson Dunn and Rita
Glavin, Brian P. Maloney, Sareen K. Armani relating to this case
from April 15, 2019 to the present," and (2) "a log of meetings
between Anne M. Champion, Randy M. Mastro, Andrea E. Neuman,
and/or William E. Thomson, and Rita Glavin, Brian P. Maloney,
and/or Sareen K. Armani from April 15, 2019 to the present."
(<u>Id.</u>)   In return, Movants asked Mr. Donziger to withdraw the
Subpoenas' remaining requests.   (<u>Id.</u>)   Mr. Donziger refused that

offer.  (Id.)  Consequently, Movants moved to quash the
Subpoenas.  (See dkt. no. 283.)

## II.  **Legal Standards**

Under the Federal Rule of Criminal Procedure, "[a] subpoena
may order the witness to produce any books, papers, documents,
data, or other objects the subpoena designates."  FED. R. CRIM. P.
17(c)(1).  "Notably," however, "Rule 17 is not a method of
discovery that supplements Rule 16."  United States v. Cole, No.
19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021)
(brackets omitted).  Accordingly, a Rule 17(c) subpoena "should
be used only as a mechanism for obtaining specific admissible
evidence."  United States v. Skelos, No. 15-CR-317 (KMW), 2018
WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (quotation marks
omitted), aff'd, 988 F.3d 645 (2d Cir. 2021).  Rule 17(c)
subpoenas may "not be used as a fishing expedition to see what
may turn up."  United States v. Avenatti, No. (S1) 19 Cr. 373
(PGG), 2020 WL 508682, at *4 (S.D.N.Y. Jan. 31, 2020) (quotation
marks omitted).

Rule 17(c) authorizes two types of subpoena: (1) "'pre-
trial subpoenas' to obtain admissible evidence" and (2)
"subpoenas that are returnable at trial ('trial subpoenas') to
obtain impeachment material."  United States v. Percoco, No. 16-
CR-776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018).
The test announced in United States v. Nixon, 418 U.S. 683

(1974), governs both varieties.  See Avenatti, 2020 WL 508682, at *3.  That standard requires a subpoena to "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Nixon, 418 U.S. at 700.

Rule 17 provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  FED. R. CRIM. P. 17(c)(2).  To defeat a motion to quash, "the proponent of the subpoena must make a preponderance showing that the materials requested satisfy the standard under Rule 17," Cole, 2021 WL 912425, at *3, that is, the "materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence," Percoco, 2018 WL 9539131, at *1.

"[I]n this Circuit, the documents sought must at that time meet the tests of relevancy and admissibility."  United States v. Seabrook, No. 16-CR-467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) (cleaned up).  Impeachment evidence--such as "[e]vidence showing a witness's motive to cooperate, showing bias, or containing prior inconsistent statements"--"does not become relevant until the witness testifies."  Skelos, 2018 WL 2254538, at *2.  Accordingly, subpoenas for impeachment material are returnable only after a witness takes the stand, not prior to trial or even on the first day of trial.  See Avenatti, 2020 WL 508682, at *4–5.

8

## III. **Discussion**

The Court will address a threshold matter regarding the Subpoenas' return dates before turning to whether the Subpoenas satisfy Nixon's strictures.

### a. **Relevance & Subpoena Return Timing**

Each of the Subpoenas is returnable on the first day of trial. (See dkt. no. 283-1 at 1; dkt. no. 283-2 at 1; dkt. no. 283-3 at 1; dkt. no. 283-4 at 1; dkt. no. 283-5 at 1.) Whether production at that time is proper, however, will depend on whether the evidence sought is relevant to the substantive charges that Mr. Donziger faces or whether that evidence is relevant only to impeachment. See Avenatti, 2020 WL 508682, at *4-5.

Mr. Donziger maintains that the Subpoenas seek information that is relevant to the substantive criminal contempt charges. (See dkt. no. 295 at 4-6.) Specifically, Mr. Donziger asserts that the subpoenaed information is relevant to (1) "Mr. Donziger's good faith basis" to pursue an appeal "before turning over reams of confidential and attorney-client privileged information for review by GDC,"[3] and (2) Judge Kaplan's exercise

---

[3] The Court notes that the order at issue did not require Mr. Donziger to produce any electronic devices or media to GDC or Chevron but only to a court-appointed neutral forensic expert. (See dkt. no. 1 ¶¶ 4-6 (Count II); see also dkt. no. 2172 in 11-CV-691, ¶ 5 ("The Neutral Forensic Expert shall take
(continued on following page)

of discretion in charging Mr. Donziger with criminal contempt, which Mr. Donziger maintains was improper because it was "infected with Gibson Dunn's (and Chevron's) private interests and vindictive motives." (Id. at 5-6.)  The Court disagrees on both fronts.

"To secure a conviction for criminal contempt of a court order, the [prosecutors] must prove (1) the issuance of the order, (2) the defendant's disobedience or disregard of the order, and (3) the defendant's knowledge and willfulness in disobeying the order." United States v. Vezina, 165 F.3d 176, 178 (2d Cir. 1999).  Mr. Donziger has made almost no effort to connect the subpoenaed material to any of these elements.  Even assuming that Mr. Donziger's claim of good faith could somehow be relevant to his knowledge or willfulness, Mr. Donziger still does not explain how any documents in Movants' possession could possibly bear on Mr. Donziger's state of mind.  As for the invocation of GDC's supposed vindictive motives, GDC's motions seeking to hold Mr. Donziger in civil contempt are accessible without a subpoena on the public docket in the underlying civil case. (See, e.g., dkt. nos. 893, 1465, 2175, 2178 in 11-CV-

---

(continued from previous page)
possession of Donziger's Devices and have access to his Media for the purposes of making a mirror image of those Devices and Media. . . .  At no time shall Chevron's Forensic Expert have access to the original Devices or to live Media accounts absent further court order.").)

691.)  To the extent that Mr. Donziger is suggesting that GDC is
somehow influencing this criminal prosecution from behind the
scenes, the Court has previously denied--mere days ago--Mr.
Donziger's requests for discovery regarding vindictive and
selective prosecution.  (See dkt. no. 297 at 22-24.)
Accordingly, that issue is not in the case, and the Court will
not permit Mr. Donziger to use a Rule 17(c) subpoena to evade
that ruling.   "[T]he larger strategic campaign to 'demonize'
Mr. Donziger over the course of the last decade" request, (dkt.
no. 295 at 4), falls under the Court's previous "vindictive
prosecution" ruling and is thus likewise precluded.  The more
generalized personal financial motivation of any testifying
Partner, however, is a permissible basis for impeachment, as set
forth below in Section III.b.4 (i.e., "Billing").

     Mr. Donziger also argues that "the information sought" in
the subpoenas "is critically necessary to understanding the bias
and personal financial motivation" of the Partners "concerning
this prosecution."  (Id. at 4.)  While issues of financial bias
and thus credibility are certainly relevant to a witness's
testimony, they are relevant only after the witness takes the
stand.  See Skelos, 2018 WL 2254538, at *2.  Accordingly, Mr.
Donziger is plainly not entitled to categorical compliance with
the Subpoenas on the first day of trial.  See Avenatti, 2020 WL
508682, at *4-5.  The subpoenas must be modified to be

11

returnable at such time as a Partner testifies, and then only if
one or more of them does so.[4]

### b. **The Nixon Factors**

As identified above, the Subpoenas seek six general
categories of information.[5]  The Court will consider whether each
category meets Nixon's elements, bearing in mind that (1)
Nixon's test is conjunctive, see United States v. Tagliaferro,
No. 19-CR-472 (PAC), 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16,
2021), and (2) it is Mr. Donziger, not Movants, who must
establish Nixon's requirements, see Cole, 2021 WL 912425, at *3.

### 1. "**Hon. Loretta A. Preska" & "Hon. Lewis A. Kaplan"**

Paragraphs 4 through 9 of the Subpoenas request "cop[ies]
of all electronic documents or communications"--as well as
information regarding all phone calls, videoconferences, and in-
person meetings--between "anyone from Gibson Dunn" and (1) Judge
Preska, (2) Judge Kaplan, or (3) any of their "agent[s]" or
"family member[s]."  (Dkt. no. 283-1, Ex. A, ¶¶ 4-9; dkt. no.
283-2, Ex. A, ¶¶ 4-9; dkt. no. 283-3, Ex. A, ¶¶ 4-9; dkt. no.
283-4, Ex. A, ¶¶ 4-9; dkt. no. 283-5, Ex. A, ¶¶ 4-9.)  From even

---

[4] That said, the Court is dubious as to the necessity of
testimony by any GDC Partner for either party, given the
elements of the offense.  See Vezina, 165 F.3d at 178.

[5] The Court will refer to the categories using the same
terminology that Mr. Donziger uses in the Subpoenas.

a cursory review, it is easy to see that these requests are rife
with relevancy and specificity problems.  Mr. Donziger
disagrees, averring that these requests are "carefully-worded,"
"narrowly-tailored," and, in fact, "extraordinarily limited" in
light of "the full decade of active litigation between GDC and
the defendant."  (Dkt. no. 295 at 3, 8-9.)  The Subpoenas' plain
language belies those characterizations.

       Mr. Donziger suggests that Paragraphs 4 through 9 seek only
"information on . . . GDC contacts with the Court . . .
regarding this case."  (Id. at 8.)  Not so.  The Subpoenas do
not limit their requests to matters related to cases 19-CR-561
or 11-CV-691; documents and communications regarding any subject
matter, whether personal or professional, are theoretically
responsive.  Additionally, the Subpoenas plainly seek documents
and communications involving anyone at GDC, regardless of
whether he or she will testify in this action or if he or she
was in any way involved with this case or the underlying civil
litigation.  Finally, the Subpoenas sweep in not only documents
and communications with the undersigned and Judge Kaplan but
also with the Court's agents or even family members.  In
absolutely no sense are those requests "narrowly-tailored" or
"extraordinarily limited."  The Court concedes that they are
carefully worded, at least in the sense that they appear to have
been meticulously drafted using language designed to cast the

broadest net possible.[6]  These requests are a paradigmatic
example of the type of "fishing expedition" proscribed by Nixon
and, therefore, must be quashed.

In addition to these obvious maladies, the Court observes
that Paragraphs 4 through 9 also suffer from an admissibility
problem.  The documents and communications Mr. Donziger seeks

---

[6] The egregious overbreadth of the Subpoenas is well
demonstrated by the following example.  Paragraph 4 of the
Subpoenas requires Movants to produce "all electronic documents
or communications" between "anyone from Gibson Dunn" and "any
. . . family member of Judge Preska."  (Dkt. no. 283-1, Ex. A,
¶ 4; dkt. no. 283-2, Ex. A, ¶ 4; dkt. no. 283-3, Ex. A, ¶ 4;
dkt. no. 283-4, Ex. A, ¶ 4; dkt. no. 283-5, Ex. A, ¶ 4.)  The
undersigned's husband is and has for decades been a commercial
litigator at a BigLaw firm with an extensive practice.  From
2014 to 2015, he represented a defendant in an extensive,
expensive, hard-fought, and highly contentious case in this
court wherein a GDC team, led coincidentally by attorney Randy
Mastro, represented the plaintiff.  Over those two years, the
parties generated hundreds of docket entries, took multiple
depositions, exchanged literally thousands of letters and
emails, and generated boxes and boxes of paper.  The
undersigned's husband and Mr. Mastro faced off against each
other (literally and metaphorically) in multiple telephone
calls, court conferences (in person and by telephone), during
depositions, throughout the settlement process, etc.  Their
contacts were frequently daily, always adversarial, sometimes
heated and contentious, and ultimately resolved with the able
and invaluable assistance of a stellar Magistrate Judge of this
court.  Although that case ended in 2015, (see dkt no. 381 in
14-CV-1383), and the Subpoenas' relevant time period is between
April 15, 2019 and the present, were that case within the time
period defined in the Subpoenas, the express language of the
Subpoenas would require GDC to produce what are likely to be
thousands of boxes of documents--the parties exchanged
voluminous document productions and extensively litigated a
privilege log containing literally thousands of entries--not a
single one of which would have even the remotest conceivable
connection to the matter before the Court today.

appear to be classic hearsay, even though "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." Skelos, 2018 WL 2254538, at *2 (quotation marks omitted). Mr. Donziger counters that "[t]he fact that it is not apparent to Gibson Dunn at present how Donziger could overcome any hearsay exception is not a basis for quashing the subpoenas." (Dkt. no. 295 at 6 (cleaned up).) But that gets the burden of proof precisely backwards: It is Mr. Donziger's burden to prove that the evidence he seeks is admissible, not Movants' burden to prove that it is not. See Cole, 2021 WL 912425, at *3; Percoco, 2018 WL 9539131, at *1. Yet, Mr. Donziger makes no meaningful effort to explain how the documents and communications sought by Paragraphs 4 through 9 are admissible. Instead, he merely states that "[t]here is no shortage of non-hearsay uses . . . and hearsay exceptions that might apply" before listing some. (Dkt. no. 295 at 6.) That is plainly insufficient.

### 2. "Corporate Prosecution"

Paragraphs 10 and 11 of the Subpoenas call for production of "all documents or electronic communications" related to efforts by "anyone from" GDC or its agents to have Mr. Donziger disbarred or criminally prosecuted. (Dkt. no. 283-1, Ex. A, ¶¶ 10-11; dkt. no. 283-2, Ex. A, ¶¶ 10-11; dkt. no. 283-3, Ex.

15

A, ¶¶ 10-11; dkt. no. 283-4, Ex. A, ¶¶ 10-11; dkt. no. 283-5,
Ex. A, ¶¶ 10-11.)  Those requests are "targeted" at
communications or documents, going as far back as 2017, between
anyone associated with GDC and "any relevant third-part[ies],"
including, but not limited to, current and former investigators,
"'corporate solutions' service providers," judges, and
prosecutors.  (See id.)

    These requests fare no better than the last for two
reasons.  First, to the extent that these requests fall within
the "vindictive prosecution" topic, the Court has previously
rejected that as a viable part of this case.  Second, the
requests are not specific within the meaning of Rule 17(c)
practice.  To satisfy Nixon's specificity requirement, "a Rule
17(c) subpoena must be able to reasonably specify the
information contained or believed to be contained in the
documents sought."  Cole, 2021 WL 912425, at *4 (quotation marks
omitted).  "Subpoenas seeking 'any and all' materials, without
mention of 'specific admissible evidence,' justify the inference
that the defense is engaging in the type of 'fishing expedition'
prohibited by Nixon."  United States v. Avenatti, No. (S1) 19
CR. 373 (PGG, 2020 WL 86768, at *4 (S.D.N.Y. Jan. 6, 2020).
That is exactly what the Court confronts here.  Mr. Donziger has
made no showing that the documents or communications he seeks
even exist, let alone explained what they might reasonably be

expected to contain.  Mr. Donziger's identification of a few
individuals or entities in which he has a particular interest
does not change the calculus.  And compounding that problem,
because Mr. Donziger does "not know the universe of documents"
that he is requesting, he "cannot meet [his] burden of showing
that" the documents and communications he seeks--which also
would be out-of-court statements (i.e., hearsay)--"would be
admissible at trial."  Skelos, 2018 WL 2254538, at *3.

In short, Mr. Donziger cannot mobilize Rule 17(c) to obtain
discovery based only on the "hope that something useful will
turn up."  Cole, 2021 WL 912425, at *4 (brackets omitted).
Paragraph 10 and 11's requests must also be quashed.

### 3. "Gibson Dunn Marketing and Solicitation"

Paragraphs 13 and 14[7] of the Subpoenas seek copies of "all
Marketing and Solicitation Materials" and "all Professional,
Academic, and Media Materials" that make any mention of Chevron,
Mr. Donziger, or Ecuador.  (Dkt. no. 283-1, Ex. A, ¶¶ 14-15;
dkt. no. 283-2, Ex. A, ¶¶ 13-14; dkt. no. 283-3, Ex. A, ¶¶ 13-
14; dkt. no. 283-4, Ex. A, ¶¶ 13-14; dkt. no. 283-5, Ex. A,
¶¶ 13-14.)  Like the two previous families of requests, the
requests set forth in Paragraphs 13 and 14 are also wildly
overbroad.  They are essentially drafted such that almost any

---

[7] This corresponds to paragraphs 14 and 15 of the GDC
Subpoena.  (See dkt. no. 283-1, Ex. A, ¶¶ 14-15.)

piece of paper in GDC's possession or control will be responsive
if it merely mentions (1) Mr. Donziger's name, (2) the country
of Ecuador (even for matters unrelated to Mr. Donziger), or (3)
Chevron (even for matters unrelated to this case or the
underlying civil litigation).  Rule 17(c) is to "be used only as
a mechanism for obtaining specific admissible evidence."
Skelos, 2018 WL 2254538, at *2 (quotation marks omitted).
"Blanket requests of this sort violate the specificity
requirement set forth in Nixon."  Avenatti, 2020 WL 86768, at
*6.

     Moreover, the Court is not satisfied that Mr. Donziger has
made a preponderance showing that that the materials he requests
are "not otherwise procurable by the exercise of due diligence."
Percoco, 2018 WL 9539131, at *1.  Movants asserted in their
opening brief that "copies of Gibson Dunn's marketing materials
or articles . . . are public and can be accessed by Donziger or
his counsel with little or no diligence required."  (Dkt. no.
284 at 18.)  Mr. Donziger did not even acknowledge that
argument, much less respond to it.  Nor does it appear that he
could have responded, especially because he cites several
relevant documents that he obtained without resorting to a
subpoena, including some that he admits were obtained from GDC's

website.[8]  That fact cuts strongly against Mr. Donziger's need for a Rule 17(c) subpoena to access these materials.

Accordingly, Paragraphs 13 and 14 of the Partner Subpoenas (Paragraphs 14 and 15 of the GDC Subpoena) must be quashed.

### 4. "Billing"

Paragraph 12 of the Subpoenas seeks "all bills and underlying timesheets," whether submitted or not, by GDC to Chevron for any work, legal or otherwise, related in any way to Mr. Donziger or Ecuador.  (See dkt. no. 283-1, Ex. A, ¶ 12; dkt. no. 283-2, Ex. A, ¶ 12; dkt. no. 283-3, Ex. A, ¶ 12; dkt. no. 283-4, Ex. A, ¶ 12; dkt. no. 283-5, Ex. A, ¶ 12.)  Movants assert that this request is improper because: (1) the billing records and timesheets are irrelevant, (see dkt. no. 284 at 11-12); (2) Mr. Donziger's request is not specific enough because he asks for bills relating to "any" work for Chevron, (see id. at 16); and (3) the billing records and timesheets contain privileged information, (see id. at 13).

The Court disagrees with Movants as to relevance.  Although the requested evidence may not bear on the substantive charges, it could, as Mr. Donziger points out, provide impeachment fodder that will allow Mr. Donziger to probe the Partners' potential

---

[8]  (See dkt. no. 295 at 1 n.1 (citing two articles found on GDC's website); see also dkt. no. 295-1 (appending a presentation prepared by one of the Partners for a public conference).)

biases, including any financial motivations the Partners might have for testifying against him.  (See dkt. no. 295 at 4.)  If any of the Partners takes the stand, billing records will be relevant.[9]

The Court also rejects Movants' argument related to specificity.  Mr. Donziger's use of "the words 'any' and 'all' do[es] not automatically render a document request so broad that it must be quashed." Cole, 2021 WL 912425, at *4.  Although Paragraph 12's requests seek a potentially significant amount of information, the requests are much narrower in scope than Mr. Donziger's other requests that the Court has quashed above. Nixon's "specificity requirement is intended to provide the subpoenaed party . . . with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." Avenatti, 2020 WL 508682, at *4 (quotation marks omitted).  The Court is satisfied that Paragraph 12 meets that standard.

Movants' claims of privilege provide much more of a hiccup for Mr. Donziger.  Exactly what portions of a billing document or timesheet are protected by privilege is a fact-specific question:

---

[9] The Court is highly skeptical that unsubmitted or draft bills are relevant impeachment evidence.  It is not necessary to resolve that issue, however, given the Court's conclusion below regarding privilege.

> Under federal common law, attorney fee arrangements, including the general purpose of the work performed, are not generally protected from disclosure by the attorney-client privilege.  However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, fall within the privilege.

Diversified Grp., Inc. v. Daugerdas, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) (cleaned up).  Without the benefit of reviewing GDC's bills and timesheets to Chevron, it is all but impossible for the Court to say definitively what portions of those documents, if any, are privileged.[10]

With that said, it is Mr. Donziger's burden to show that the documents he has subpoenaed are admissible, not Movants' burden to show that they are inadmissible.  See Cole, 2021 WL 912425, at *3; Percoco, 2018 WL 9539131, at *1.  At least for the billing statements and timesheets he requests, Mr. Donziger has not met that burden.  Documents containing privileged material generally are inadmissible.  See, e.g., United States v. Barnes, No. S9 04 Cr. 186 SCR, 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008).  Mr. Donziger's contention that Movants have waived any privilege regarding the bills and timesheets by

---

[10] In any event, Mr. Donziger has made no showing that detailed time sheets are in any way relevant to financial bias.

not preparing a privilege log misses the mark.[11]  The Court is also mindful that Mr. Donziger served the Subpoenas on Movants in the eleventh hour--only eleven days before trial--leaving Movants with very little time to complete a privilege review of more than two years' worth of legal bills and timesheets. Paragraph 12's requests will therefore be quashed.

The Court does recognize, however, that "attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered." DiBella v. Hopkins, 403 F.3d 102, 120 (2d Cir. 2005). Accordingly, the fee and time record information sought in Paragraph 13 of the GDC Subpoena--which asks only for hours and dollar amounts billed to Chevron on a quarterly basis--is not privileged.  (See dkt. no. 283-1, Ex. A, ¶ 13.)  To ensure that Mr. Donziger can obtain the full scope of GDC's billings to Chevron for the time period he seeks, the Court will modify Paragraph 13 of the GDC Subpoena to require production of hours and dollar amounts billed to Chevron on a quarterly basis on all matters, including matters involving Mr. Donziger.

---

[11] That theory is premised on Local Civil Rule 26.2, which applies to privilege logs.  But Mr. Donziger points to no authority suggesting that a civil discovery rule somehow applies in a criminal case like this one, which is unsurprising given that criminal discovery is "far narrower than that which occurs in civil cases."  Fox v. Mann, 71 F.3d 66, 67 (2d Cir. 1995).

### 5. "Private Prosecutors"

Finally, Paragraphs 1 to 3 of the Subpoenas seek copies of "all electronic documents or communications" between "anyone from Gibson Dunn" and the "Private Prosecutors" as well as a log of all telephone calls, videoconferences, and in-person meetings between those same parties and all information reflecting the existence of those meetings. (Dkt. no. 283-2, Ex. A, ¶¶ 1-3; dkt. no. 283-3, Ex. A, ¶¶ 1-3; dkt. no. 283-4, Ex. A, ¶¶ 1-3; dkt. no. 283-5, Ex. A, ¶¶ 1-3; accord dkt. no. 283-1, Ex. A, ¶¶ 1-3.) Movants assert that these requests must be quashed because: (1) they seek information irrelevant to the charges against Mr. Donziger, (see dkt. no. 284 at 11-12); (2) the documents and communications constitute inadmissible hearsay, (see id. at 14); and (3) they are overbroad and therefore do not seek specific evidence, (see id. at 15-16).

The Court disagrees with Movants' first two contentions. The Court is satisfied that Paragraphs 1 to 3 could provide relevant impeachment material, most notably in the form of possible inconsistent statements or evidence of the Partners' biases or motivations to cooperate with the Special Prosecutors. See, e.g., Skelos, 2018 WL 2254538, at *2. As for admissibility, the Court observes that, to the extent the communications and documents contain prior inconsistent statements, they "can be the proper subject of a Rule 17(c)

subpoena" because they may "be admissible under Federal Rule of
Evidence 613."  Id.  Moreover, the Court notes that the requests
related to telephone calls, videoconferences, and in-person
meetings do not appear, at least at this stage, to implicate the
rule against hearsay.  Rather, the language of those requests
appears to focus only on the fact that the meetings occurred,
not any information that was exchanged.

    The Court also rejects Movants' specificity theory, save
for one small exception.  The Court agrees with Movants that the
Paragraphs 1 to 3 are currently drafted in broad terms such that
they could easily sweep in a variety of responsive documents and
communications that have no bearing whatsoever on this case.
(See dkt. no. 284 at 16 (providing some examples).)  However,
because the parties are on the eve of trial and because the
Court has already found these requests to satisfy the relevance
and admissibility prongs, the Court concludes that modification
of the Subpoenas rather than quashing is appropriate.  To
address the overbreadth, the Court will modify Paragraph 1's
definition of "Private Prosecutors" to require production of
responsive communications only involving employees or agents of
Seward and Kissel who are involved with this case.

IV.  **Conclusion**

    In short, the lion's share of the Subpoenas' requests are
paradigmatic "fishing expeditions," and for some Mr. Donziger

has brought especially heavy tackle.  But because <u>Nixon</u>, 418 U.S. at 700, makes clear that Rule 17(c) cannot be put to that purpose, the Court will not allow Mr. Donziger to use the Subpoenas to end-run around the rules governing discovery in criminal cases.[12]

For the foregoing reasons, the motion to quash the Subpoenas [dkt. no. 283] is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Based on the analysis above, the following paragraphs of the Subpoenas are <u>QUASHED</u> in their entirety:

- Paragraphs 4-14 of the Partner Subpoenas.[13]

- Paragraphs 4-12 and 14-15 of the GDC Subpoena.[14]

Paragraph 1 of the Subpoenas is <u>MODIFIED</u> to read as follows (alteration in bold):

- A copy of all electronic documents or communications involving (a) you or anyone from Gibson Dunn and (b) the Private Prosecutors.  "Private Prosecutors" include Rita Glavin, Brian P. Maloney, Sareen K.

---

[12] As the Court has already recognized, Mr. Donziger "is 'only entitled to disclosure of statements expressly authorized by Rule 16 [of the Federal Rules of Criminal Procedure] or otherwise discoverable as exculpatory under <u>Brady</u>, or impeaching under 18 U.S.C. § 3500.'" (Dkt. no. 68 at 24 (quoting <u>United States v. Souza</u>, No. 06 Cr. 806 (SLT), 2008 WL 753736, at *2 (E.D.N.Y. Mar. 19, 2008)).)  That's it.

[13] (<u>See</u> dkt. no. 283-2, Ex. A, ¶¶ 4-14; dkt. no. 283-3, Ex. A, ¶¶ 4-14; dkt. no. 283-4, Ex. A, ¶¶ 4-14; dkt. no. 283-5, Ex. A, ¶¶ 4-14.)

[14] (<u>See</u> dkt. no. 283-1, Ex. A, ¶¶ 4-12, 14-15.)

Armani, or any employee or agent of the Seward & Kissel law firm **involved with this case**.[15]

Paragraph 13 of the GDC Subpoena is <u>MODIFIED</u> to read as follows (alteration in bold):

- A summary indicating hours and dollar amounts on a quarterly basis throughout the relevant time period of all bills submitted by Gibson Dunn to Chevron Corporation for work on **any matter, including any work relating to Steven Donziger or Ecuador.**[16]

Finally, each of the Subpoenas is <u>MODIFIED</u> to be returnable at such time as a Partner testifies at trial; if none of the Partners testifies, the subpoenaed information need not be produced.  <u>See</u> <u>Avenatti</u>, 2020 WL 508682, at *4–5.

In all other respects, the motion to quash is <u>DENIED</u>.  The Clerk of the Court shall close the open motion.

**<u>SO ORDERED.</u>**

Dated:      May 9, 2021
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

---

[15] (<u>See</u> dkt. no. 283-1, Ex. A, ¶ 1; dkt. no. 283-2, Ex. A, ¶ 1; dkt. no. 283-3, Ex. A, ¶ 1; dkt. no. 283-4, Ex. A, ¶ 1; dkt. no. 283-5, Ex. A, ¶ 1.)

[16] (<u>See</u> dkt. no. 283-1, Ex. A, ¶ 13.)