After his termination, the plaintiff was out of work for approximately one year and during that time he received $4,472.00 in unemployment compensation. In March 1986, he started as a tax auditor with the Alabama State Department of Taxation where he is employed at the present time. His starting salary was approximately $20,000, per annum, and it has progressed until today he is earning $33,000, per annum. His actual or approximate earnings were as follows:

| 3/86 to | 3/87 | $ 13,841.00 | |
| 3/87 to | 3/88 | 25,292.00 | |
| 3/88 to | 3/89 | 28,446.00 | |
| 3/89 to | 3/90 | 29,070.00 | |
| 3/90 to | 3/91 | 29,911.00 | |
| 3/91 to | 3/92 | 30,500.00 | (app.) |
| 3/92 to | 3/93 | 31,500.00 | (app.) |
| 3/93 to | 12/93 | 24,750.00 | (app.) |
| | Total | $213,310.00 | |

The total unemployment compensation and earnings received by the plaintiff is $217,782.00.

If the plaintiff had completed his training program and continued with the Air Force Audit Agency as an auditor, his salary would have progressed as follows:

| 4/14/85 to | 4/28/85 | $ 736.72 |
| 4/28/85 to | 4/27/86 | 21,804.00 |
| 4/27/86 to | 5/11/86 | 866.58 |
| 5/11/86 to | 1/1/87 | 16,741.79 |
| 1/1/87 to | 5/10/87 | 9,405.69 |
| 5/10/87 to | 5/24/87 | 1,079.92 |
| 5/24/87 to | 1/1/88 | 20,041.23 |
| 1/1/88 to | 5/22/88 | 12,776.15 |
| 5/22/88 to | 1/1/89 | 21,123.08 |
| 1/1/89 to | 5/21/89 | 13,743.46 |
| 5/21/89 to | 1/1/90 | 22,699.08 |
| 1/1/90 to | 5/20/90 | 14,697.31 |
| 5/20/90 to | 1/1/91 | 24,250.46 |
| 1/1/91 to | 1/1/92 | 41,023.00 |
| 1/1/92 to | 5/17/92 | 15,618.73 |
| 5/17/92 to | 1/1/93 | 27,102.15 |
| 1/1/93 to | 1/1/94 | 45,670.00 |
| | Total | $309,379.35 |

(Def's. Ex. F)

The back pay would be the difference between the amount of money he actually received from unemployment and salary, and the money he would have received had he not been unjustly terminated. Therefore, over the years, plaintiff lost the sum of $91,597.35, in back pay. In addition, the court will also award prejudgment interest to this date compounded yearly in the sum of $54,258.87. *See Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 281 (2d Cir. 1987); *see also Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir. 1993).[12] The total monetary damages to the plaintiff is in the sum of $145,856.22.

In addition, the plaintiff is entitled to be reinstated by the defendant to the position of auditor, GS–12, Step 5.

Therefore, it is

ORDERED that

1. Plaintiff is awarded the sum of $145,856.22, against the defendant;

2. Plaintiff be reinstated by the defendant to the position of auditor, Grade GS–12, Step 5, as of January 1, 1994; and

3. Plaintiff may file an application for attorney's fees and expenses within fourteen (14) days. The defendant may file its opposition to plaintiff's application, if any, within fourteen (14) days thereafter.

The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.



UNITED STATES of America, Plaintiff,

v.

Bruce CUTLER, Defendant.

No. 91–CR–1189 (TCP).

United States District Court,
E.D. New York.

Jan. 7, 1994.

By order to show cause, defense counsel for alleged organized crime boss was charged

---

**12.** Prejudgment interest has been determined by annual rates of 11% in 1985, 9.5% in 1986, 9.25% in 1987, 10.5% in 1988, 11.5% in 1989, 11% in 1990, 11% in 1991, 8% in 1992, and 7% in 1993. These rates are based on the federal short-term rate pursuant to the Internal Revenue Code, 26 U.S.C. § 6621, guidelines for underpayment of taxes.

with criminal contempt for knowingly and willfully violating court's order directing counsel to comply with local rule which prohibited counsel from making certain extrajudicial statements. Following bench trial, the District Court, Platt, Chief Judge, held that: (1) trial judge's statement about enforcement of orders prohibiting counsel from making extrajudicial statements constituted specific and definite "order" for purposes of holding counsel in contempt; (2) judge's "admonition" about observing rule against making extrajudicial statements was not "order" for contempt purposes; (3) rule prohibiting counsel from making extrajudicial statements which fit within enumerated categories was absolute; (4) counsel's statements violated rule; (5) counsel's statements were reasonably likely to interfere with fair trial; and (6) counsel was guilty of contempt because counsel acted willfully and knowingly in disobeying court's orders.

Ordered accordingly.

**1. Contempt ⬤60(3)**

In order to sustain conviction for criminal contempt, government must establish, beyond reasonable doubt, that court gave defendant certain orders, that defendant disobeyed or disregarded those orders, and that defendant acted willfully and knowingly in disobeying court's orders.

**2. Contempt ⬤20**

Trial judge's statements regarding enforcement of orders prohibiting counsel in criminal trial from making extrajudicial statements in violation of local rule, and holding persons who violated orders accountable, constituted definite and specific "order" for criminal contempt purposes. U.S.Dist.Ct. Rules E.D.N.Y., Criminal Rule 7.

See publication Words and Phrases for other judicial constructions and definitions.

**3. Contempt ⬤20**

Trial judge's "admonition" to counsel in criminal trial to observe local rule against making extrajudicial statements about case did not constitute "order" for criminal contempt purposes. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

**4. Attorney and Client ⬤32(15)**

Local rule which governed extrajudicial statements made by attorneys in criminal matters absolutely prohibited statements about matters in six enumerated categories; reference in rule to statements creating "reasonable likelihood" of prejudice to fair trial did not refer to statements which fell within explicit categories. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

**5. Attorney and Client ⬤32(15)**
   **Contempt ⬤20**

Extrajudicial statements by defense counsel for alleged organized crime boss regarding defendant's admirable character, zealousness of prosecution, incredible witnesses who would be called, and lack of valid evidence violated local rule prohibiting counsel in criminal matters from making extrajudicial statements about certain topics relevant to such matters; thus, statements violated court's order to observe rule and could serve as basis for criminal contempt charge. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

**6. Contempt ⬤20**

Defense counsel's failure to challenge court orders which prohibited counsel from making extrajudicial statements about prosecution of alleged organized crime boss through appropriate judicial process, and counsel's minimal attempt to clarify judge's order before defying it, constituted contemptuous behavior.

**7. Attorney and Client ⬤32(15)**

Extrajudicial statements by defense counsel for alleged organized crime boss gave rise to "reasonable likelihood" that public dissemination of such statements would occur and would interfere with fair trial, in violation of local rule against such statements and court's order; counsel knew prosecution was receiving extensive publicity, made admissions that counsel sought to influence "prospective veniremen," and understood potential effect of publicity on jury. U.S.Dist. Ct.Rules E.D.N.Y., Criminal Rule 7.

**8. Attorney and Client ⬤32(15)**

Defense counsel for alleged crime boss acted willfully and knowingly in disobeying

trial court's order which prohibited counsel from violating local rule which governed making of extrajudicial statements regarding prosecution: counsel knew of extensive publicity prosecution was receiving and potential effect on jurors; trial judge warned counsel to observe rule, ordered counsel to stop making statements, and told counsel how to respond to media; and counsel's statements were not made in response to media reports of information from government. U.S.Dist. Ct.Rules E.D.N.Y., Criminal Rule 7.

———

Zachary W. Carter, U.S. Atty. by John J. Gallagher, Sp. Pros., Brooklyn, NY, for U.S.

Goldman & Hafetz by Frederick P. Hafetz, Susan Necheles, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

By Order to Show Cause dated April 27, 1992, with a statement of charges and exhibits annexed, defendant was charged with criminal contempt of this Court in violation of 18 U.S.C. § 401(3) for having knowingly and wilfully violated and disregarded this Court's orders (Glasser, J.) of December 21, 1990, January 9, 1991 and July 22, 1991 directing counsel to comply with Local Criminal Rule 7 of the Eastern District of New York.

Disciplinary proceedings, particularly contempt proceedings involving attorneys, are one of the more unpleasant tasks confronting Judges with plenary powers. This case is no exception. On the one hand, the Judge presiding on the case must take every measure at his or her command to protect the authority of the Court and the integrity of the entire judicial process and it must also make sure that conduct and statements by attorneys and their clients conform with their orders, directions and instructions and not degrade the profession or disserve justice. On the other hand, the Court must be mindful of an attorney's duty to prosecute or defend vigorously a client's case, rights, position and status to the full extent of his or her ability within the parameters of reasonable behavior. In this case, the tension between these opposing considerations is heightened by the notoriety of the defendant and his client and the publicity surrounding the case in which the acts complained of occurred. In reaching its decision herein and on the prior motion to dismiss, this Court has been ever conscious and mindful of these factors and to the best of its ability has given them every possible weight and consideration.

## BACKGROUND

Defendant in this action, Bruce Cutler, Esq., represented John Gotti in the criminal matter of *United States v. John Gotti*, 90–CR–1051 (ILG). From the date of the indictment on, there was voluminous press on that case, and in the various pre-trial conferences on the dates above, Judge Glasser of this Court expressed his concern that the case be tried in the courtroom and not in the press and directed the parties to refrain from commenting to the press in a way which was violative of Local Criminal Rule 7 of the Eastern District of New York.[1] Despite this,

---

1. Local Criminal Rule 7: "Free Press–Fair Trial Directives," states in pertinent part:

    (a) It is the duty of the lawyer or law firm not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which a lawyer or a law firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice, [sic] With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminat-

ed by means of public communication that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers or otherwise to aid in the investigation.

    From time of arrest, issuance of an arrest warrant or the filing of a complaint, information or indictment, in any criminal matter until the commencement of trial or disposition without trial, a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public commu-

ed States citizens covered claims under § 12(2) of the 1933 Act); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (arbitration agreement between United States citizens covered claims under § 10(b) of the 1934 Act).

On the basis of these decisions this court will enforce the arbitration agreement as to the claims framed in terms of the securities laws.

If plaintiffs have rights under the securities laws, a matter which this court does not address, and if the arbitration award fails adequately to protect those rights, plaintiffs may challenge enforcement of the award. Under the Convention, a court may refuse to enforce an award that "would be contrary to the public policy of that country." Convention, Art. V(2)(b). *See Mitsubishi*, 473 U.S. at 637 n. 19, 105 S.Ct. at 3359 n. 19 (should arbitration award fail to address claimant's federal statutory rights, award would be "against public policy").

## III.

Defendants' motion for summary judgment is granted, and the complaint is dismissed in favor of arbitration.

So ordered.



**UNITED STATES of America,**

v.

**Bruce CUTLER, Defendant.**

**No. 91 CR 1189.**

United States District Court,
E.D. New York.

March 8, 1993.

Counsel for defendant, an alleged organized crime boss, moved to dismiss criminal contempt charges in their entirety or, in alternative, to dismiss certain specified charges in order to show cause charging defense counsel with criminal contempt of court. The District Court, Platt, Chief Judge, held that: (1) given limited facts before court, factual issues presented could only be given their due consideration at trial justifying denial of motion to dismiss, and (2) local rule instructing an attorney to avoid extrajudicial statements reasonably likely to prejudice fair trial and setting forth in detail six kinds of out-of-court commentary that violates standard was not inherently vague, did not violate attorney's free speech rights, and was not discriminatory in favor of prosecutorial speech.

Motion denied.

See also, 796 F.Supp. 710.

**1. Contempt ⟐20**

Wilful disobedience of court order is necessary prerequisite to imposition of criminal contempt, and thus, ambiguous and equivocal order would necessarily preclude such finding; order must be sufficiently clear that it leaves no doubt about what is required to be done.

**2. Contempt ⟐20**

Clarity of order is question of fact which must be judged according to reasonable standard and context in which it was entered and audience to which it addressed prior to imposition of criminal contempt.

**3. Contempt ⟐20**

There is no particular word or phrase that serves as talisman in converting benign or cautionary directive into order for purposes of criminal contempt; court must consider relevant facts at time directive was issued.

**4. Contempt ⟐20**

At the very least court's statements to defense counsel and prosecutor in conference during criminal trial constituted warnings to comply with Local Rule 7 governing communications with media, and, as such, statements possessed significant evidentiary value with respect to defense counsel's wilfulness

in violating subsequent order of court specifically requiring defense counsel and prosecutor to comply with local rule regarding communications with media. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

### 5. Attorney and Client ⊕32(15)

Attorneys admitted to practice in New York federal district court have sworn obligation to have read, be familiar with, and faithfully adhere to rules of court, including Local Rule 7 of criminal rules governing communications with media; attorneys also have ethical obligation to adhere to American Bar Association Model Rule of Professional Conduct 3.6 and chapter 8 of American Bar Association Standards for Criminal Justice, both of which impose somewhat less restrictive substantial likelihood of material prejudice standard with respect to extrajudicial statements. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7; ABA Rules of Prof.Conduct, Rule 3.6.

### 6. Contempt ⊕54(4)

Defense counsel's motion to dismiss contempt charges with regard to trial judge's two warnings in conference to defense counsel and prosecutor not to try case in newspaper had to be denied given limited facts before court as to whether judge's statements justified imposition of criminal contempt against defense counsel, and factual issues presented could only be given their due consideration at trial.

### 7. Contempt ⊕54(4)

Whether defense counsel's extrajudicial statements to press during criminal trial were result of defense counsel's wilful violation of clear and definite order of trial court to not communicate with press was question of fact that had to await trial on merits and could not be decided on motion to dismiss. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

### 8. Judgment ⊕660½, 664

Under collateral bar doctrine, judicial order must be obeyed until vacated or overruled unless order is transparently invalid or court issuing order lacked subject matter jurisdiction.

### 9. Contempt ⊕20

Attorney seeking to avoid contempt citation for wilful violation of judicial order to not try case in newspaper would be required either to seek permission of court to make statements to media or bring action declaring substance of order to be unconstitutional.

### 10. Contempt ⊕10

Local rule instructing attorney to avoid extrajudicial statements reasonably likely to prejudice fair trial and setting forth in detail six kinds of out-of-court commentary that violate standard was not inherently vague so as to preclude criminal contempt charge based on violation of rule. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

### 11. Contempt ⊕20

Contempt power is potent one and may only be exercised in those instances where defendant has wilfully violated clear and definite order.

### 12. Contempt ⊕10

Local rule instructing attorney to avoid extrajudicial statements reasonably likely to prejudice fair trial and setting forth in detail six kinds of out-of-court commentary that violates standard was narrowly drawn in simple terms commonly understood by those schooled in law so as to preclude finding of inherent vagueness. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rules 7, 7(a), (a)(1–6).

### 13. Constitutional Law ⊕90.1(3)
### Contempt ⊕10

Local rule instructing attorney to avoid extrajudicial statements reasonably likely to prejudice fair trial and setting forth in detail six kinds of out-of-court commentary that violates standard was not overly broad in violation of First Amendment; "reasonable likelihood" standard struck constitutionally permissible balance between attorney's First Amendment rights and Sixth Amendment imperative for fair trial and impartial jury. U.S.C.A. Const.Amends. 1, 6; U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rules 7, 7(a), (a)(1–6).

### 14. Attorney and Client ⊕32(15)

Since clear and present danger is not necessary prerequisite to regulating extraju-

dicial attorney speech, district court may hold that any sufficiently precise standard may be enforced in contempt proceeding if court enters lawful order of reasonable specificity, order was violated, and violation was wilful. U.S.C.A. Const.Amends. 1, 6.

**15. Attorney and Client ⊃32(15)**
    **Constitutional Law ⊃90.1(3)**

Local rule instructing attorney to avoid those extrajudicial statements reasonably likely to prejudice fair trial and setting forth in detail six kinds of out-of-court commentary that violates standard did not discriminate in favor of prosecution in criminal trials so as to violate First Amendment. U.S.C.A. Const. Amend. 1; U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

**16. Contempt ⊃54(4)**

Motion to dismiss certain specified charges in order to show cause as to why defense counsel should not be held in contempt for violating court order requiring attorneys to adhere to local rule governing statements to press on grounds that extrajudicial statements by defense counsel at issue either concerned matters not proscribed by local rule or were in reply to charges of misconduct against him or merely repeated arguments previously made in court would be denied; motion raised important factual issues that could only be adequately assessed after considering all evidence presented at trial. U.S.Dist.Ct.Rules E.D.N.Y., Criminal Rule 7.

———

Mary Jo White, U.S. Atty. by John J. Gallagher, Kelly D. Talcott, Special Prosecutors, Brooklyn, NY, for U.S.

Goldman & Hafetz by Frederick P. Hafetz, Susan Necheles, Kaplan & Katzberg by Robert F. Katzberg, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant Bruce Cutler moves to dismiss the criminal contempt charges in their entirety or, in the alternative, to dismiss certain specified charges in the Order to Show Cause

charging defendant with criminal contempt of Court in violation of 18 U.S.C. § 401(3). For the reasons set forth below, these motions are denied.

## BACKGROUND

This proceeding arises out of a series of extrajudicial statements made by Bruce Cutler during Cutler's representation of John Gotti in the criminal matter *United States v. Gotti.* The case was the subject of virtually unprecedented media coverage, with both Mr. Cutler and the Government vying for the microphone. The Government urges that, although much of the evidence in the *Gotti* case was sealed at defense counsel's request, Cutler waged an intensive media campaign to shape the public's perception of John Gotti and the evidence against him. The campaign was intended to create an "aroma" or pervasive theme that John Gotti was the victim of overzealous and corrupt Government prosecutors. It was statements made by Cutler in the course of this media campaign that the Government charges ran afoul of Local Rule 7 and, consequently, Judge Glasser's three statements regarding the local rule which the Government claims to be orders.

### A. *December 21, 1990, "Admonition" to Comply with Rule 7*

On December 16, 1990, defense counsel Gerald Schargel requested that Judge Glasser close the detention hearing for Gotti and his co-defendants, Salvatore Gravano, Frank Locascio and Thomas Gambino, in order to prevent the prospective pool of jurors from becoming contaminated by the deluge of pretrial publicity. (Appendix to Mem. of the U.S. in Opp. to Def.'s Mot. to Dismiss Criminal Contempt Charges [hereinafter "Gov't.'s Appendix"], Ex. 1.) The Government opposed closure on the ground that a fair trial could be assured by *voir dire* or other available means. (Gov't.'s Appendix, Ex. 2.) The media agreed, noting that the publicity surrounding the case was already "so widespread" that closure would have little effect. (Gov't.'s Appendix, Ex. 3.)

On December 21, 1990, the Government, defense counsel, and the media appeared before Judge Glasser to argue the motion to