MANDATE

20-1710-cr
*United States v. Donziger*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of April, two thousand twenty-one.

PRESENT:
>BARRINGTON D. PARKER,
>GERARD E. LYNCH,
>JOSEPH F. BIANCO,
>>*Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 18 2021

---

United States of America,

>*Appellee,*

>v.                                                     20-1710-cr

Steven Robert Donziger, 11-cv-691,

>*Defendant-Appellant.*

---

FOR APPELLEE:            RITA M. GLAVIN, Special Prosecutor (Sareen K. Armani, Brian P. Maloney, Special Prosecutors, *on the brief*), Seward & Kissel LLP, *for* the United States of America, New York, NY.

FOR DEFENDANT-APPELLANT:      SCOTT WILSON BADENOCH, JR., Palo Alto, CA (Lauren C. Regan, Civil Liberties Defense Center, Eugene, OR, *on the brief*).

MANDATE ISSUED ON 05/18/2021

Appeal from two orders of the United States District Court for the Southern District of New York (Preska, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED**.

Defendant-Appellant Steven Donziger appeals from the May 29, 2020 and June 3, 2020 orders of the United States District Court for the Southern District of New York (Preska, *J.*), denying his requests to eliminate or modify the conditions of his pretrial release.[1] Donziger is awaiting trial on an Order to Show Cause containing six separate grounds for criminal contempt, in violation of 18 U.S.C. § 401(2) and (3), for allegedly refusing to comply with post-judgment orders and violating a March 4, 2014 RICO injunction issued by the district court in a separate civil case.[2] The trial is scheduled to commence on May 10, 2021.

Donziger was arraigned before the district court and ordered released on the following conditions: (1) strict pretrial supervision with electronic monitoring and home confinement, including certain conditions sufficient to allow him to complete family obligations and attend legal meetings; (2) a secured $800,000 bond with two co-signors; (3) the surrender of all of his travel documents; (4) a prohibition against new applications for travel documents; and (5) restricted travel to the Southern and Eastern Districts of New York.

---

[1] Donziger first asked the district court for reconsideration regarding his pretrial release conditions in November 2019. The district court denied the request. This Court affirmed the district court's decision in February 2020. *See United States v. Donziger*, No. 19-4155 (2d Cir. Feb. 18, 2020) (unpublished order).

[2] This Court recently held that the district court in the civil case erred in finding Donziger in contempt for selling interests in the Ecuadorian Judgment because the injunction at issue was insufficiently clear and unambiguous, and thus reversed the district court as to that civil contempt finding. *See Chevron Corp. v. Donziger*, -- F.3d --, 2021 WL 821456 (2d Cir. Mar. 4, 2021). That holding pertains to only one of the civil contempt findings, and we express no view on how, if at all, that holding affects any of the six criminal counts in the Order to Show Cause.

On appeal, Donziger argues that the district court clearly erred in finding that he poses a risk of flight and that his pretrial release conditions were the least restrictive conditions necessary to ensure his attendance at trial.[3] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We review a district court's finding that a defendant poses a flight risk for clear error. *See United States v. Boustani*, 932 F.3d 79, 81 (2d Cir. 2019); *United States v. Gonzales Claudio*, 806 F.2d 334, 338 (2d Cir. 1986). "[S]uch determinations are essentially factual and require little, if any, legal interpretation." *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). In addition, a district court's "ultimate finding" as to "[w]hether there are conditions or a combination of conditions which reasonably will assure the appearance of the defendant at trial is a mixed question of law and fact," which we review for clear error unless "the [district] court has made an error of law." *United States v. Shakur*, 817 F.2d 189, 196–97 (2d Cir. 1987). We reverse only if we possess a "definite and firm conviction that a mistake has been committed." *Boustani*, 932 F.3d at 81 (quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007)); *see also United States v. Mattis*, 963 F.3d 285, 293 (2d Cir. 2020) ("It is not proper, therefore, to inquire as to whether or not we may have decided the bail motion differently were we deciding it in the first instance, as our review is limited to whether the district court committed error in reaching its determination.").

Here, the district court considered the requisite statutory factors under 18 U.S.C. § 3142(g), and its conclusion that its release conditions were the least restrictive necessary to reasonably

---

[3] Donziger also raises certain due process arguments that were not argued before the district court and were raised for the first time on appeal. Because we generally do "not consider an issue not passed upon below," we decline to address those arguments here. *See Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) (internal quotation marks omitted).

ensure Donziger's appearance at trial in light of a risk of flight is entitled to significant deference. *See Boustani*, 932 F.3d at 81; *Sabhnani*, 493 F.3d at 75.  In particular, at the May 18, 2020 hearing on Donziger's motion to modify the conditions of his release, the district court referenced its prior findings, which this Court found sufficient to affirm the district court's November 2019 denial of a previous request to modify his release conditions, *see United States v. Donziger*, No. 19-4155 (2d Cir. Feb. 18, 2020) (unpublished order), that Donziger has a history of violating court orders, has extensive ties to Ecuador, and faces jail time.  Those findings focused on the "weight of the evidence" and Donziger's "history and characteristics," including his "past conduct."  18 U.S.C. § 3142(g)(2)–(3).

Donziger stresses that, because it has been made clear since the prior appeal that he faces a maximum of only six months' imprisonment, that lower maximum penalty "should trigger a total re-evaluation of the risk-of-flight analysis."  Appellant's Br. at 14.  More specifically, during the May 18, 2020 proceeding, the district court stated that Donziger's total maximum penalty, if convicted of all the charges, would be limited to six months' imprisonment, and thus that he would be tried in a bench trial.  Donziger's argument that it is not plausible that he would expose himself to felony bail jumping charges carrying ten times the maximum sentence as he now faces, and effectively become a lifelong exile from the United States, in order to avoid a maximum of six months' incarceration gives us some pause.  However, at that same proceeding, the district court explicitly considered this new maximum penalty in connection with Donziger's renewed application for modification of his bail conditions.  The district court denied Donziger's request and reiterated that Donziger was still facing imprisonment even under the lower potential sentence. The district court further explained that this lower sentencing exposure must be considered in light of its other previous findings regarding risk of flight, including "the defendant's history of

4

violating court orders" and "his strong ties and extensive travel to Ecuador." App'x at 13. We conclude that there is no basis to disturb the district court's determination, which is entitled to significant deference, that the bail conditions (including home detention and electronic monitoring) were still necessary to reasonably assure his appearance notwithstanding the lower maximum penalty.[4]

Finally, although Donziger contends that the district court made little effort to determine whether the current bail requirements were the least restrictive conditions necessary to assure his attendance at trial, the record contradicts that assertion. As an initial matter, under the flexible conditions of his home confinement, Donziger is "expressly permitted to leave his apartment for family obligations, employment, education, religious services, medical treatment, attorney visits, court appearances, and 'other activities approved in advance' by [pretrial services]." App'x at 24. The government asserts (and Donziger has not disputed) that Donziger has been allowed outside his home over 100 times since his home confinement commenced for, among other things, walking his son to and from school, engaging in various family obligations, and attending certain events. In rejecting Donziger's request for additional loosening of the home confinement conditions (including blanket permission to depart his residence for several hours per day), the district court noted, *inter alia*, that Donziger had previously breached the terms and conditions of his home confinement when "[w]ithout informing" pretrial services, he failed to attend an event at Madison Square Garden for which he had received advance permission and went to "someplace in Brooklyn

---

[4] We note that the district court has set a firm trial date for May 10, 2021, a date that is rapidly approaching. By that time, Donziger will have spent approximately twenty-one months in home confinement, a period more than three times as long as the maximum jail sentence he faces if convicted on charges that the special prosecutors and the district court have decided can be treated as a petty offense. The length of his confinement has been attributable, in substantial part, to pandemic-related delays of his trial, and to his own requests for adjournments. Nevertheless, any further delay of his trial (other than a delay requested by Donziger himself) may well warrant a re-evaluation of whether continued home confinement will exceed the bounds of reasonableness.

instead." App'x at 29. Thus, these issues regarding the least restrictive conditions necessary to secure Donziger's appearance were explicitly considered, and the decisions regarding those issues were within the district court's considerable discretion.

In sum, under the particular (and unique) circumstances of this case, we find no clear error in the district court's determination that Donziger posed a risk of flight and that his pretrial release conditions were the least restrictive conditions necessary to reasonably ensure his attendance at trial, which is scheduled to commence in less than sixty days.

*     *     *

We have considered all of Donziger's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit