L5HVDONF

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                        19 CR 561 (LAP)
                                               11 CV 691 (LAK)
5    STEVEN DONZIGER,

6                    Defendant.                BENCH TRIAL

7    ------------------------------x

8                                              New York, N.Y.
                                               May 17, 2021
9                                              9:38 a.m.

10
     Before:
11
                         HON. LORETTA A. PRESKA,
12
                                               District Judge
13

14                          APPEARANCES

15   RITA M. GLAVIN
     SAREEN K. ARMANI
16   BRIAN P. MALONEY
          Special Assistant United States Attorneys
17
     LAW OFFICE OF RONALD L. KUBY
18        Attorneys for Defendant
     BY:  RONALD L. KUBY
19        RHIDAYA S. TRIVEDI
          -AND-
20   OFFIT KURMAN PA
     BY:  MARTIN GARBUS
21

22   ALSO PRESENT:  GRACE GILL, Paralegal

23

24

25

L5HVDONF

1          (In open court; trial resumed)

2          THE COURT:  I have Mr. Garbus on my agenda, but we can

3     do him whenever you want.

4          What is on your agenda, Mr. Kuby?

5          MR. KUBY:  Well, I would like Mr. Garbus to proceed

6     first, if we can do him whenever he wants.

7          On my agenda I have some discussions brief -- some

8     brief discussions about the state of the record.  And I believe

9     Ms. Glavin and I are going to discuss those together, with the

10    permission of the Court, or she's going to say things and I'm

11    going to agree, something like that.

12         THE COURT:  I always like that.

13         MR. KUBY:  Right?

14         I do want to address the issue briefly of how we deal

15    with Mr. Brodsky's letter regarding Mr. Thomson's -- what I

16    will call in quotes "false testimony," as in the opposite of

17    true, like the bar exam true/false kind of thing.

18         And at that point I'm thinking that the prosecution

19    rests.  Then it is Mr. Donziger's intention to not exercise his

20    right to testify.  He has a brief statement he'd like to make

21    about that and, you know, allocute him or not after listening

22    to him for less than a minute, as the Court chooses.

23         Thereupon, the defense intends to rest.

24         There are some outstanding motions that will either be

25    withdrawn or asked for a ruling upon.  And if all goes well and

L5HVDONF

1    we don't exhaust your supply of goodwill, we should be done by

2    about 10:30-ish, unless the Court has other plans.  I know that

3    you and I spent Saturday night seeing who could stay up the

4    latest.  You won.

5              THE COURT:  Ha.

6              MR. KUBY:  Ha.  And I think we're done.

7              THE COURT:  All right.  Cool.

8              Would you folks like to talk about the state of the

9    record first?  And I will say for the record that, of course, I

10   received Mr. Brodsky's letter dated May 14 and have it.  And

11   also for the record, I received Mr. Brodsky's sealed filing

12   dated May 11, relating to hours billed and fees billed by

13   Gibson Crutcher to Chevron for certain time periods in 2019

14   through 2021.  Obviously I have taken that into account and

15   will take it into account, along with Mr. Brodsky's May 14

16   letter, in determining any bias on the part of the Gibson Dunn

17   witnesses.

18             MR. KUBY:  I take it, Judge, you're disinclined to

19   remove your seal from those records?

20             THE COURT:  Yes, sir, on the ground that the amounts

21   billed for hours billed relating to Chevron is confidential law

22   firm information.

23             So state of the record, please, ladies and gentlemen.

24             MR. KUBY:  Brian gets to speak.  Yes.

25             THE COURT:  Good morning, Mr. Maloney.

L5HVDONF

1          MR. MALONEY:  Good morning, your Honor.

2          So we've reviewed the transcript, and we identified a

3    handful of exhibits in which the transcript does not indicate

4    that they were received into evidence.  And so we conferred

5    with Mr. Kuby over the weekend, and we would move to admit the

6    following exhibits into evidence:

7          Government Exhibit 1, Government Exhibit 1A,

8    Government Exhibit 201, Government Exhibit 601, Government

9    Exhibit 2105, Government Exhibit 6, Government Exhibit 7,

10   Government Exhibit 126, Government Exhibit 301, Government

11   Exhibit 1986-1, Government Exhibit 2104-1, and Government

12   Exhibit 2108.

13         In addition, we conferred with Mr. Kuby about

14   Government Exhibit 118, which was a document production made by

15   the defendant, and a confidentiality concern was raised as to

16   certain amounts in accounts on that document.  So we've

17   prepared a redacted version of that exhibit and we would

18   propose to admit the redacted version into evidence.

19         THE COURT:  Thank you.

20         Any objection?

21         MR. KUBY:  None, Judge.

22         THE COURT:  All are admitted.

23         (Government's Exhibits 1, 1A, 6, 7, 118, 126, 201,

24   301, 601, 1986-1, 2104-1, 2105, and 2108 received in evidence)

25         MR. MALONEY:  One final clarification.

L5HVDONF

1              THE COURT:  Excuse me.  I'm sorry.  Off the record.

2              (Off record)

3              THE COURT:  I'm sorry, I thought Mr. Kuby had a

4    remark.

5              MR. KUBY:  No, no.  I've got some, but not with

6    respect to this.

7              MR. MALONEY:  Last clarification, your Honor.  On the

8    May 12th transcript, Defense Exhibit DD, which was admitted for

9    a limited purpose, was incorrectly identified as Government

10   Exhibit 2081.  And we just note that clarification, that that

11   document is Defense Exhibit DD.

12             THE COURT:  DD is Government Exhibit what?

13             MR. MALONEY:  Government Exhibit 2081 identified on

14   the May 12th transcript is actually Defense Exhibit DD.  So

15   that document should be identified as Defense Exhibit DD on the

16   record.  That was received only for the fact that it was said

17   and not for the truth.

18             THE COURT:  Thank you.

19             Is that okay with you, Mr. Kuby?

20             MR. KUBY:  Yes, that's all fine, Judge.

21             THE COURT:  Thank you.

22             (Defendant's Exhibit DD received in evidence)

23             MS. GLAVIN:  Your Honor, there was one other defense

24   exhibit, I-51.  This was the chart that was prepared, the table

25   of meetings in person and videoconferences between the four

L5HVDONF

 1    Gibson Dunn subpoenaed witnesses and the special prosecutors.

 2    We redacted that pursuant to the agreement between special

 3    prosecutors and the defense.  The title at the top refers to

 4    "Log of In-person Meetings and Videoconferences Between Gibson,

 5    Dunn & Crutcher -- "

 6          THE COURT:  Slowly.

 7          MS. GLAVIN:  Sorry.  "Between Gibson, Dunn & Crutcher

 8    and the Special Prosecutors."  The title really should be "Log

 9    of In-person Meetings and Videoconferences Between Gibson, Dunn

10    & Crutcher Partners Subpoenaed by the Defense and the Special

11    Prosecutors in *United States v. Donziger*."

12          THE COURT:  Thank you.

13          MR. KUBY:  I'm sorry, there's a comma issue, I think.

14    Gibson Dunn partners who testified at trial that were

15    subpoenaed.

16          MS. GLAVIN:  Oh, yes.

17          MR. KUBY:  It was subpoenaed.  It makes it sound like

18    we subpoenaed witnesses, which we so didn't do.  So with that

19    clarification of the clarification, I think we're clear.

20          THE COURT:  Okay.  Wonderful.

21          Okay.  Is that it for the state of the record?

22          MR. KUBY:  No.  We have the issue of Mr. Thomson's --

23    and having said "false" once, I will simply say incorrect

24    statement as to who was paying which bill.  And I completely

25    accept Mr. Brodsky's unsworn statement that it was inadvertent.

L5HVDONF

1    I think as we've all --

2              THE COURT:  I think there was a sworn affidavit that

3    went with that, right?

4              MR. KUBY:  Right, right, right, right.  I'm getting

5    there.  I'm just on the letter now.

6              I fully accept his explanation that it was completely

7    inadvertent on Mr. Thomson's part.  Obviously been so much

8    money passed back and forth between Chevron and GDC, it's hard

9    to tell who picked up which bill ultimately.  I get that.  But

10   now what we have in inadmissible form --

11             THE COURT:  Excuse me.

12             Mr. Garbus.

13             MR. GARBUS:  Yes.

14             THE COURT:  While age was good for both of us in

15   getting us vaccinated, it does not give you a pass on wearing

16   your mask.  This is at least the 48,000th time I've said of

17   that.

18             MR. GARBUS:  I don't think so.

19             THE COURT:  All right.

20             MR. GARBUS:  About the seventh time.

21             THE COURT:  Mr. Kuby.

22             MR. KUBY:  What we now have in inadmissible form that

23   is not subject to cross-examination is extrinsic evidence that

24   Mr. Thomson's statement was incorrect, which is also

25   technically inadmissible.  And I suppose we could just ignore

L5HVDONF

1    it, but that would leave Mr. Thomson's incorrect testimony on

2    the record.

3          So this is what I would propose:  I think by now this

4    Court either understands that Chevron has used GDC as a buffer,

5    insulating it from its efforts to pursue Mr. Donziger

6    criminally, or this Court not understand that.  This Court

7    either finds as relevant or this Court does not.

8          I don't think Mr. Brodsky's submission and the Mowen

9    affidavit will have any effect on the Court's decision; and I

10   see no useful purpose in dragging either Ms. Mowen up from

11   Dallas or poor Mr. Thomson back from L.A., burning more fossil

12   fuels, for absolutely no purpose.

13         So I would be prepared to stipulate for the record

14   that when Mr. Thomson answered the series of questions as to

15   who was paying for his flights, the answer is Gibson Dunn

16   Crutcher, not Chevron.  And that way Mr. Thomson's incorrect

17   testimony doesn't linger on the record to haunt him in his

18   career and the record is clear.

19         MS. GLAVIN:  Fine with the special prosecutors, your

20   Honor.

21         THE COURT:  Very well, sir.

22         MR. KUBY:  Thank you, Judge.

23         THE COURT:  All righty.

24         Are we ready to go to Mr.  -- I had understood the

25   prosecution to have rested Friday with the caveat that they

L5HVDONF

1  might look at some exhibits, which, of course, we finished.

2          So I think the prosecution has rested.

3          MS. GLAVIN:  Yes, your Honor.

4          THE COURT:  Okay.  Are we ready to go to Mr. Donziger?

5          MR. KUBY:  I'm ready to go to Mr. Garbus, but if

6  you're ready to go to Mr. Donziger --

7          THE COURT:  Why don't we do the trial stuff first.

8          MR. KUBY:  Okay.

9          THE COURT:  All right.

10         Mr. Donziger, would you maybe go in the booth so that

11 you can be heard.

12         Now, Mr. Donziger, you understand that you have the

13 constitutional right to testify on your own behalf at this

14 criminal trial; correct, sir?

15         THE DEFENDANT:  I do, Judge.

16         THE COURT:  And you also understand that your decision

17 whether or not to testify is yours, and yours alone?  While

18 counsel has an obligation to advise you about the benefits and

19 the hazards of testifying or not testifying, the decision to do

20 so is yours, and yours alone.  Do you understand that, sir?

21         THE DEFENDANT:  Yes, I do.

22         I just want to clarify --

23         THE COURT:  And do you also understand that should you

24 choose not to testify, no adverse inference may be drawn

25 against you on account of that decision?

L5HVDONF

| | |
|---|---|
| 1 | THE DEFENDANT:  I do understand that. |
| 2 | I just want to -- |
| 3 | THE COURT:  And sir, in light of those facts, am I |
| 4 | correct that it is your intention to waive your right to |
| 5 | testify on your own behalf? |
| 6 | THE DEFENDANT:  Yes. |
| 7 | THE COURT:  All right.  I think we're finished. |
| 8 | THE DEFENDANT:  No, I think I'd like to read a |
| 9 | statement. |
| 10 | THE COURT:  No, you don't get to read a statement, |
| 11 | sir.  You either take the stand or you sit down. |
| 12 | MR. KUBY:  Judge, I would request that Mr. Donziger be |
| 13 | offered, if not the right, at least the courtesy of explaining |
| 14 | his decision to not testify to the Court. |
| 15 | THE COURT:  Nope.  This is not a press conference. |
| 16 | You either testify or you don't. |
| 17 | MR. KUBY:  It's not -- Judge, sometimes statements are |
| 18 | dual use.  The press may be interested in them -- |
| 19 | THE COURT:  Well, then Mr. Donziger is more than |
| 20 | invited to go outside and have a press conference, but not |
| 21 | here. |
| 22 | MR. KUBY:  Okay.  But just because the press is |
| 23 | interested in something, it doesn't mean it's irrelevant in |
| 24 | this courtroom, at least from my perception.  So I would ask he |
| 25 | be given 30 seconds, 30 seconds -- |

L5HVDONF

1          THE COURT:  No.

2          MR. KUBY:  -- to say what he wants to say.

3          THE COURT:  The issues on trial here were as to the

4    issuance of an order to Mr. Donziger, Mr. Donziger's

5    disobedience or disregard of the order, and Mr. Donziger's

6    knowledge or willfulness in disobeying the order.  None of that

7    is subject to unsworn testimony.

8          MR. KUBY:  This is not unsworn testimony.

9          THE COURT:  Yeah, it is.  He's not being sworn in.

10          MR. KUBY:  This is not testimony, hence it's --

11          THE COURT:  It's an unsworn statement.  It will not be

12    permitted.  Mr. Donziger is more than invited to the witness

13    stand.  If he doesn't go to the witness stand and give sworn

14    testimony, then he may not speak.

15          MR. KUBY:  I understand the Court's ruling.

16    Mr. Donziger, of course, will abide by it.

17          Again, I do think that given everything, 30 seconds of

18    listening to Mr. Donziger should be permitted in this Court.  I

19    respect the fact the Court has said no now, I think, three

20    times.  So I'm not going to push for a fourth.

21          THE COURT:  Thank you, sir.

22          Are we up to Mr. Garbus?

23          MR. KUBY:  Unless I'm misunderstanding -- unless I'm

24    misunderstanding trial proceedings, which I may well be doing,

25    because it's been a while since I've had a trial -- ooh, that

L5HVDONF

1    rhymes -- the defense rests.

2              THE COURT:  Thank you, sir.

3              And I take it there is no rebuttal case.

4              MS. GLAVIN:  No, your Honor.

5              THE COURT:  Thank you.

6              Mr. Garbus, with respect to your motion, sir, can I

7    just say, you had asserted in your original motion that:  "On

8    Friday, May 7, 2021, the U.S. Department of Justice notified

9    Mr. Donziger that it was declining his request from over a

10   month earlier to exercise supervision over this prosecution in

11   the name of and by the authority of the United States."

12             You maintained that:  "In the extraordinary context of

13   this case, this lack of supervision appears to present a severe

14   constitutional defect that renders the actions of the private

15   prosecutors unconstitutional and void."

16             In response, sir, I asked you on several occasions to

17   file on the public docket the document that you received from

18   the Department of Justice.  And you finally did that by filing

19   your declaration, along with an appendix containing the

20   communication from the Department of Justice.  You "urged the

21   Court to address the pending motion to dismiss as a matter of

22   priority."

23             I've reviewed those findings and, as you know, asked

24   you to put the letter on.

25             First, the communication that you reference is not a

L5HVDONF

1    formal memorandum or even a letter from the Department of

2    Justice; it's an email message that appears to be from Mr. John

3    P. Carlin, whom the Court understands to be the current acting

4    deputy attorney general.  But the message wasn't sent to you;

5    it was sent to a Mr. William Taylor, who then forwarded it to

6    Mr. Donziger.  So in my view, this is a double hearsay problem.

7           So I'd like to hear from you about all of the above,

8    sir.

9           MR. GARBUS:  Thank you very much.

10          This is not an Article 29 motion, we should be clear,

11    it's a motion --

12          THE COURT:  Sir, into the microphone, please, so you

13    can be heard.

14          MR. GARBUS:  We should just be clear, this is not an

15    Article 29 motion, this is an argument with respect to the open

16    issue.

17          After we left court, we did three things fundamentally

18    at your request to try and get further information about this

19    prosecution and about the things that are referred to in the

20    Carlin letter.  I clarified the next day -- after you quoted

21    exactly what was in that letter, you've omitted my

22    clarification.

23          Let me just tell you what we have done in respect to

24    your request.  We have contacted Mr. Berman's office.  We have

25    written to DOJ in Washington --

L5HVDONF

1          THE COURT:  Counsel, counsel, it doesn't matter what

2    you have done.  What matters is what was the result.  And the

3    reason I deferred consideration of your motion is that we did

4    not have any direct admissible evidence of a policy or a

5    decision by the DOJ.  So far as I can see, we are still in that

6    situation, because all we have is this double hearsay email.

7          MR. GARBUS:  May I continue?

8          THE COURT:  No.  Answer my question.  It doesn't

9    matter --

10         (Indiscernible crosstalk)

11         THE COURT:  Sir, are you interrupting me now?

12         MR. GARBUS:  Go ahead, Judge.

13         THE COURT:  It doesn't matter what steps you have

14   taken; it matters what the result is and what formal

15   communication you have from the DOJ.

16         Please tell me what that is.

17         MR. GARBUS:  That letter is the entire communication.

18         THE COURT:  The email, sir?  The email, sir?

19         MR. GARBUS:  Yes.

20         THE COURT:  All right.

21         How can I admit that, how can I consider that, given

22   that it's double hearsay?

23         MR. GARBUS:  We have tried since then to get testimony

24   from the Department of Justice.  We have tried to get testimony

25   from the U.S. Attorney's Office to deal with that very letter.

L5HVDONF

1      And that was the function of this motion.

2             What we had done since we got that letter is all we

3      could do.  We made a number of constitutional arguments.  You

4      indicated repeatedly that we did not have the facts to support

5      those arguments.  We then made every attempt we could, and we

6      will exchange and hand up today documentation from the U.S.

7      Attorney's Office.  I called Mr. Berman --

8             THE COURT:  Counsel, may I just interrupt?

9             Your representation in your motion was that the U.S.

10     Department of Justice was declining Mr. Donziger's request to

11     exercise supervision over this prosecution.  So I'm not sure

12     how the United States Attorney in this district is going to

13     give you any information that is cognizable or the former

14     United States Attorney in this district.  The question is what

15     do you have from DOJ Main Justice?

16            MR. GARBUS:  I have from DOJ whatever I've told you we

17     have.  We recognized that we needed more, and we went to the

18     U.S. Attorney in this district --

19            THE COURT:  Okay.  Hand up what you have, sir.  It

20     would have been useful had I had it to review in advance, but

21     since I didn't, let's take a look.

22            MR. GARBUS:  Judge, you set this for argument now, and

23     this is the appropriate time to hand it up.

24            THE COURT:  Okay.  As long as you don't want me to

25     have read it beforehand, sure.

L5HVDONF

1          MR. GARBUS:  I did not do that because I did not want

2     you to read it beforehand.

3          THE COURT:  It might be better, Mr. Garbus, if you

4     would adjust your tone of voice a little bit.

5          MR. GARBUS:  It might be better if you treated me

6     very, very differently.

7          THE COURT:  Thank you for that, sir.

8          MR. GARBUS:  You will see from the letter --

9          THE COURT:  I haven't read it yet.  I'm sorry, this is

10    a --

11         MR. GARBUS:  Can I make some preliminary remarks about

12    the letter?

13         THE COURT:  -- three-page single spaced letter dated

14    May 12.  I note that today is May 17.  And that's from Zachary

15    Bannon, Assistant United States Attorney in the Southern

16    District of New York.

17         You've also handed up a little over a one-page letter

18    also dated May 12 to Mr. Bannon from you.

19         Do you want me to read them or not?

20         MR. GARBUS:  No, I'd rather argue first and discuss it

21    with you before we get into it so I can explain it and there is

22    no claim that anything has been misexplained to you.

23         May I speak?

24         THE COURT:  Let me read it first.

25         (Pause)

L5HVDONF

1          MR. GARBUS:  I would just like to say one thing, even

2     as you're reading the letter.  Ms. Glavin said in court she had

3     no supervision, that --

4          THE COURT:  Counsel, let me read the letter please.

5          (Pause)

6          THE COURT:  All right.  To the extent I can discern

7     after a quick read, it appears that your letter, Mr. Garbus,

8     was essentially a request for discovery on various topics from

9     the United States Attorney's office.

10         And it appears, in addition, that Mr. Bannon's

11    response was mostly a denial of the request, but, in addition,

12    a notification that to the extent the request looked for

13    information bearing on the credibility or bias of witnesses who

14    might testify, the request was premature, and because

15    impeachment evidence becomes relevant only after a witness

16    takes the stand.

17         So with respect to that request number two, Mr. Bannon

18    requested that Mr. Donziger resubmit any *Touhy* request seeking

19    impeachment information about potential witnesses at the time

20    the witnesses testify.

21         So that's all we have.  This is all about discovery.

22         MR. GARBUS:  No, it's not.  What it is, is about

23    Mr. Bannon's interpretation of your rulings, which preclude him

24    from giving me information.  So that if you --

25         THE COURT:  Counsel, can I just ask you something?

L5HVDONF

1            MR. GARBUS:  Yes.

2            THE COURT:  I don't understand how requests for

3    discovery from the government rise to the level of constituting

4    some kind of constitutional impediment here.  I understood your

5    original motion to be arguing that to the extent the Department

6    of Justice said that it was not planing and would not exercise

7    any supervisory authority over the prosecution in this case,

8    that it might present a problem.  Turns out that's not what it

9    said.

10           To the extent that there is something somewhere that

11   says that, tell me now.  A request for discovery is no

12   substitute for that.

13           MR. GARBUS:  We made that request for discovery.  And

14   if you look at Mr. Bannon's letter, you will see at page 3 how

15   he interprets your ruling.

16           May I present an argument at least somewhat coherently

17   so that many of these things can be explained and you will take

18   whatever exception you want to it?  It's impossible to do it in

19   this incoherent way.

20           THE COURT:  What's that sign behind you?  Would you

21   mind turning it over?  Is that your notes or what is that?

22           MR. GARBUS:  I was going to show it to you.

23           THE COURT:  I can see it.  Why don't you argue.

24           And that's exactly my point, sir.  To the extent that

25   the DOJ has said that this prosecutor is wholly unsupervised,

L5HVDONF

1  that they will take no action and they say they have no action,

2  that's one thing.  But that's not what any of these documents

3  says.

4      MR. GARBUS:  The way to find out the further

5  information is to get information from the U.S. Attorney's

6  Office and DOJ, and we have tried to do that.

7      THE COURT:  But we don't have it.

8      MR. GARBUS:  Pardon me?

9      THE COURT:  But we don't have it, so that's where we

10  are.

11      MR. GARBUS:  We made a motion for discovery early on.

12      THE COURT:  It was already denied more than once.

13      MR. GARBUS:  And it was denied on May 6.  And then

14  Mr. Bannon refers to that decision as a reason for denying us

15  information.  So it is your decision basically that informs

16  DOJ -- pardon me, that informs Bannon as to what information he

17  can and cannot give us.  What he could give us free of any

18  statements from you is unknown.  And we seek to get the

19  discovery to show you that everything we said in our oral

20  argument to start this, namely --

21      THE COURT:  The requests for discovery which you rely

22  on and which Mr. Bannon references were denied because the

23  defense had not made an adequate showing of its entitlement to

24  this discovery.

25      MR. GARBUS:  Yes.  And we had --

L5HVDONF

1          THE COURT:  I adhere to that ruling.

2          MR. GARBUS:  Yes.  And once you made that

3    determination, that we did not have the sufficient facts

4    because they are locked up in the government, we can't get

5    them, we then went to the government to every extent that we

6    could.  We went to DOJ.  I called Mr. Berman, asked him to

7    testify.  Mr. Bannon then comes in, as is appropriate, and we

8    then exchange in correspondence.

9          There is no reason why Mr. Berman is not in court

10   testifying other than the government refusing to allow us to

11   get information about not just the question of the sole

12   discretion, but also what is a disinterested prosecutor, what

13   are the tests?  What test was made of Seward & Kissel to

14   determine that they were disinterested?

15         THE COURT:  Mr. Garbus, you have the -- the defense

16   has asked for this discovery more than once.  I have denied it

17   more than once as not being a proper request.  To the extent

18   that you are asking for reconsideration now, reconsideration is

19   denied because you have not proffered any fact or law which the

20   Court overlooked.

21         There is no point in going on about the discovery,

22   sir.  Your moving papers have given the Court absolutely no

23   basis on which to conclude that the special prosecutors are not

24   subject to any control or supervision whatsoever by the

25   Executive Branch.

L5HVDONF

1          Accordingly, the motion is denied.

2          MR. GARBUS:  I find your lack of curiosity as to what

3     motivates this prosecution --

4          THE COURT:  Counsel, the Court's curiosity is not a

5     test here.  The motion is denied.

6          Okay.  Mr. Kuby, is there anything else we have to do,

7     sir?  I think we need to talk about a briefing schedule,

8     counsel.  Have you folks had the opportunity to confer?

9          MR. KUBY:  We have.

10          THE COURT:  What's your plan?

11          MR. KUBY:  We would suggest 30 days simultaneous

12     briefing.  But we recognize that the Court has made -- well, I

13     recognize the Court has its own sense of what this trial is

14     about.  That sense will govern, and the Court may not need to

15     give us 30 days.  We don't know.  But in an earlier, younger,

16     more innocent time, that's what Ms. Glavin and I agreed to.

17          THE COURT:  Would you talk to each other and let me

18     know if you can do it in two weeks.  And it's only because I

19     don't -- I want to have it fresh in my mind.

20          MR. KUBY:  Yes.  Could I just speak to the human who's

21     actually going to write it?

22          THE COURT:  Of course.

23          MR. KUBY:  Thank you.

24          (Counsel conferred)

25          MR. KUBY:  Yes, two weeks is fine, Judge.

L5HVDONF

1                    THE COURT:  Thank you, counsel.

2                    MS. TRIVEDI:  Yes, your Honor, it's fine.

3                    THE COURT:  Is there anything else, friends?

4                    MR. KUBY:  Only this, Judge:  The time the Court takes

5      to render a verdict is very much the Court's time to take.  I

6      don't know if you want to set a date now.

7                    THE COURT:  I'm not going to be able to set a date

8      now.  I assure you, every effort will be made to do this as

9      quickly as possible.

10                   MR. KUBY:  I will defer to that, Judge.

11                   I just want to put my schedule on the record.

12                   I promised my incredibly long suffering wife of 35

13     years, you can only imagine what it's been for her, vacation

14     from June 30th through July 20th.  And I will be out of the

15     country.  We have another vacation planned, which is in New

16     Jersey on the Jersey Shore, so I can return from that from the

17     31st of July, which is both Mr. Donziger's contempt anniversary

18     and my birthday, through Labor Day.  But if the Court sets an

19     August date, I'm happy to -- well, "happy" is the wrong word --

20                   THE COURT:  All right.

21                   We'll worry about that, but thank you for letting me

22     know.

23                   MR. KUBY:  Okay.  Thank you, Judge.

24                   THE COURT:  Is there anything else?

25                   MR. KUBY:  Yes, I think there are still two

L5HVDONF

1   outstanding motions.

2          THE COURT:  Yes, sir.

3          MR. KUBY:  And I could be wrong.

4          One is a motion for Mr. Donziger to have hybrid

5   representation.  Given everything, I will withdraw that motion

6   as moot.

7          THE COURT:  Yes, sir.

8          MR. KUBY:  And there's still an outstanding motion

9   with respect to Ms. Glavin's emails with Judge --

10  communications in any form, insert all the definitions here,

11  exchanges with Judge Kaplan with respect to the *Donziger* case,

12  and a request for yours as well.  That has not been ruled upon.

13  I had requested that they be assembled, placed under seal, and

14  transmitted to the Second Circuit at the appropriate time.

15         THE COURT:  Ms. Glavin, do you want to be heard on

16  that?

17         MS. GLAVIN:  No more than I already have been heard on

18  the issue.

19         THE COURT:  I adhere to my prior rulings that that

20  material is not properly the subject of discovery and,

21  accordingly, deny this request.

22         MR. KUBY:  I'm not quarreling with the judge's ruling.

23  We are not seeking --

24         THE COURT:  I understand.  I understand.

25         For the reasons cited --

L5HVDONF

1          MR. KUBY:  I see.

2          THE COURT:  -- in the prior requests for that

3    discovery, the new motion to have it assembled and sealed is

4    also denied.

5          MR. KUBY:  Thank you, Judge.

6          THE COURT:  Anything else, sir?

7          MR. KUBY:  I think not.

8          THE COURT:  All righty.

9          Anything else from the prosecution?

10          MS. GLAVIN:  No, your Honor.

11          THE COURT:  Thank you, counsel.  Nice to see you all.

12          MR. KUBY:  Nice to see you too, Judge.

13          THE COURT:  Yes, sir.

14          Reserve.

15          (Trial concluded)

16

17

18

19

20

21

22

23

24

25

L5HVDONF

```
1                          GOVERNMENT EXHIBITS

2      Exhibit No.                                    Received

3       1, 1A, 6, 7, 118, 126, 201, 301, 601, . . . . 842

4              1986-1, 2104-1, 2105, and 2108

5                          DEFENDANT EXHIBITS

6      Exhibit No.                                    Received

7       DD    . . . . . . . . . . . . . . . . . . . 843

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```