UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

        Plaintiff,

  v.

STEVEN DONZIGER,

        Defendant.

19-cr-561 (LAP)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**AS TO COUNTS IV, V, AND VI**

## COUNT IV

1. In Count IV, Judge Kaplan charges that

   > At all times from March 4, 2014 to and including September 3, 2018, Donziger, in disobedience of paragraph 1 of the RICO judgment, knowingly and willfully failed and refused to transfer or assign to Chevron property that he then had, directly or indirectly, traceable to the Ecuador Judgment, to wit, contractual rights to a contingent fee under the Retainer Agreement as that term is defined in the RICO Judgment, and knowingly and wilfully caused Donziger & Associates to fail and refuse to transfer said property.

2. The evidence at trial established that prior to August 15, 2018, the scope and terms Mr. Donziger's obligation to transfer or assign the contractual rights were the subject of *bona fide*, good faith dispute, negotiation, and litigation. Chevron did not specifically request a transfer of the contingency fee rights, or provide a form for said transfer, until May 2018.

3. Mr. Donziger at that point raised objections, specifically as to the breadth of the transfer sought by Chevron. The *bona fide* nature of the dispute as to scope and ripeness is reflected both in the fact that Chevron at that point moved to compel the transfer, not to hold Mr. Donziger in contempt for non-transfer.

4. More importantly, Mr. Donziger <u>prevailed</u> on the "scope" issue as reflected in Judge Kaplan's Order dated August 15, 2018. 691 Dkt. 2072 at 8. Chevron had sought an assignment "that would transfer not only Donziger's existing, identified, and contractual rights to a contingent fee, but also unspecified property said to be traceable to the Ecuadorian Judgment or its collection." *Id.* Consistent with Mr. Donziger's objections made in briefing and in meet-and-confer with Chevron, Judge Kaplan "decline[d] to require the execution of an instrument so broad," instead observing that "[t]o the extent such property can be identified and specifically described, Donziger will be compelled, if necessary, to comply with the [transfer] obligation." *Id.* at 8-9.

5. On August 15, 2018, Judge Kaplan for the first time specifically directed Mr. Donziger to execute a transfer document, transferring all interests he possessed in the contingency fee in the Ecuador Judgment, to Chevron. 691 Dkt. 2072. Judge Kaplan, for the first time, issued a form to effectuate this transfer that the Court determined was the proper form of execution, given the limitations it had imposed. *Id.* at Ex. 1.

6. On August 21, 2018, Judge Kaplan extended the time for Mr. Donziger's compliance up to and including August 28, 2018. 691 Dkt. 2079.

7. On August 22, 2018, Mr. Donziger executed the assignment form and emailed the same to attorneys for Chevron. 691 Dkt. 2072 (as drafted by the Court); Dkt. 2081 (executed by Mr. Donziger and filed by Chevron).

8. The assignment form bore Mr. Donziger's signature, was apparently sent from Mr. Donziger's email, contained a letter on Mr. Donziger's letterhead, and reframed prior arguments made by Mr. Donziger. At no point did Chevron's counsel question the validity or authenticity of the signature.

9. Thus, the assignment was a valid assignment and was made on August 22, 2018, within seven days of Mr. Donziger being ordered to execute said form, and well before the September 3, 2018 date set forth in the Order to Show Cause.

10. On September 4, 2018, the day after Labor Day, Mr. Donziger executed the transfer form a second time, this time before a notary public, making the effective date of that execution September 3, 2018 for purposes of calculating time.

11. <u>In addition and in the alternative</u>, the private prosecutors failed to prove beyond a reasonable doubt that the RICO Injunction was sufficiently clear and unambiguous as to leave no doubt in Mr. Donziger's mind that he was required to take unilateral action to design and execute

a form of assignment or transfer of the contractual rights to the contingency fee. Judge Kaplan expressly rejected an effort by Chevron that would have allowed Chevron to claim entitlement to any assertedly "traceable" property without more concrete actions by Chevron to "identif[y] and specifically describe" the property. *Supra*. Until Chevron so acted, and Judge Kaplan endorsed and so-ordered the claim of properly "traceable" property in the August 15, 2018 Order, it was not clear that to Mr. Donziger that he had any obligation to take any concrete steps with respect to the property.

12. <u>In addition and in the further alternative</u>, Mr. Donziger's alleged non-compliance with the transfer obligation as charged in Count IV was rectified by August 22, 2018, and again with a notary by September 4, 2018. Exercise of the criminal contempt power at this point in time would not be consistent with "the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Vuitton*. The Court should exercise its discretion to decline to impose criminal contempt.

## COUNT V

13. In Count V, Judge Kaplan charges that:

> At all times from on or about November 1, 2017 to on or about May 27, 2019, Donziger, in disobedience of paragraph 1 of the RICO Judgment, knowingly and willfully failed and refused to transfer or assign to Chevron property that he then had, to wit, the ADF Property Right [defined in paragraph 16 as a retainer agreement between Mr. Donziger and the ADF (the sole beneficiary of the Ecuador Judgment, granting Mr. Donziger a contingency fee of 6.3% of any funds recovered].

14. The evidence shows that the assignment executed by Mr. Donziger on August 22, 2018 (and notarized on September 4, 2018), *supra*, applies broadly, even after Judge Kaplan's limitation, *supra*, to encompass and thereby transfer any contingency interest granted or secured by the November 1 Agreement. Specifically, the August 22 transfer assigned "all right, title, and

interest" possessed by Mr. Donziger and his law firms to "any contingent fee" under a prior January 5, 2011 Retainer Agreement (also with the Frente), "***together with its successors and assigns and all successors to and predecessors of the [2011] Retainer Agreement***."

15. Focusing on the language of the August 22, 2018, executed assignment form establishes:

   a. The assignment form was made by "Steven Donziger, the Law Offices of Steven R. Donziger, Donziger & Associates, PLLC, and Donziger Associates, PLLC."

   b. The assignment covered any funds due any and all of the "Donziger entities" from the ADF/FDA from the 2011 contingency fee agreement.

   c. The assignment covered "its successors and assigns and all successors to and predecessors of the Retainer Agreement…."

16. There is no doubt that the 2017 Retainer Agreement is a "successor agreement." It involved the same subject matter (a 6.3% property interest in the form of a contingency fee in the Ecuador Judgment). All Donziger entities, whether individual or as a law firm, surrendered all their property rights on August 22, 2018, and agreed this assignment applies to earlier and later agreements. And the ADF/FDA was similarly included in both retainer agreements.

17. Accordingly, Mr. Donziger is not guilty of Count V.

18. <u>In addition and in the alternative</u>, as to all relevant times prior to August 22, 2018, the private prosecutors failed to prove beyond a reasonable doubt that the RICO Injunction was sufficiently clear and unambiguous as to leave no doubt in Mr. Donziger's mind that he was required to take unilateral action to execute a transfer of rights to the November 1 Agreement.

19. <u>In addition and in the further alternative</u>, the need for and propriety of a transfer of rights to the November 1 Agreement was also the subject of <u>bona fide</u> litigation. Mr. Donziger repeatedly took the position that there was no "new" or distinct interest granted by the November 1

5

Agreement, a position supported by language in the agreement which conditions the "grant" of an interest to future circumstances when it might be "useful or necessary." Tr. at 225. Mr. Donziger thus argued that any potential interest under the Agreement was not yet "existing," *supra* ¶ 3, 691 Dkt. 2072 at 8, and that after the August 22, 2018 transfer there was nothing left to transfer. Also Mr. Donziger's contentions and Chevron's opposing contentions were fully briefed, Mr. Donziger received no ruling from Judge Kaplan on the issue until the Contempt Opinion on May 23, 2019. The Contempt Opinion gave Mr. Donziger until May 28, 2019 to execute a transfer of any interest in the November 1 Agreement. Civ. Dkt. 2209. Mr. Donziger so executed a transfer document on May 28, 2019, and Judge Kaplan acknowledged that the civil contempt thereto was cured or purged a of that date. The private prosecutors failed to prove beyond a reasonable doubt that the RICO Injunction was sufficiently clear and unambiguous as to leave no doubt in Mr. Donziger's mind that he was required to execute an assignment of rights to the November 1 Agreement prior to receiving a response from the court on his position with respect to the existence of any such rights.

20. As such, Mr. Donziger's alleged non-compliance with the transfer obligation as charged in Count V was rectified by May 28, 2019. Exercise of the criminal contempt power at this point in time would not be consistent with "the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Vuitton, supra*. The Court should exercise its discretion to decline to impose criminal contempt.

## COUNT VI

21. In Count VI, Judge Kaplan charges Mr. Donziger with violating the RICO Injunction "on or about December 3, 2016 . . . . by selling, assigning, pledging, transferring, or encumbering a portion of his own personal interest in the Ecuador Judgment in exchange for personal services." OTSC at 9-10. The private prosecutors sought to prove this charge through the testimony of Mr.

Zelman concerning his arrangement to provide Mr. Donziger with his career counseling services at a reduced rate in exchange for a promise that he would receive a future amount linked to the contingency that Mr. Donziger recover some of his own fee contingent on a recovery in the Ecuadorian environmental case. At trial, however, Mr. Zelman was clear that focus of his services was professional in nature, not personal. *See* Tr. at 610 (the intent of the services agreement "was always to further Mr. Donziger's ability to function" in his work on the Ecuador case).

22. Accordingly, the prosecution failed to prove beyond a reasonable doubt that Mr. Zelman provided Mr. Donziger with "personal services" — an element of the crime as charged. Mr. Donziger is not guilty of the crime as charged in the OTSC.

23. In addition and in the alternative, the private prosecutors failed to prove that Mr. Donziger's agreement with Mr. Zelman was a willful disobedience of an order sufficiently clear and unambiguous as to leave no doubt in Mr. Donziger's mind that alleged conduct was enjoined. The relevant ambiguity of the RICO Injunction and the concomitant lack of willfulness on Mr. Donziger's part were examined by the Second Circuit in its Opinion dated March 4, 2021 ("Civil Appeal Opinion"), although the relevant analysis did not ultimate form part of the appellate court's holding.[1] Addressing the ambiguities created by Judge Kaplan's 2014 Stay Order as to paragraph 1 of the RICO Injunction (the constructive trust), the Second Circuit made clear that "a reasonable person could interpret" Judge Kaplan's language of paragraph 1 of the RICO Injunction in the Stay Order "to mean that Donziger's [receipt of non-contingency fee monies] could continue as long as

---

[1] At trial, the Court erroneously and repeatedly prevented the defense from exploring the implications of the Second Circuit analysis on cross-examination. Had the Court not erroneously blocked in the inquiry, the evidence would have shown that Chevron and the Gibson Dunn attorneys closely involved in the post-judgment proceedings were aware that Judge Kaplan's 2014 Stay Order limited the anti-monetization paragraph of the RICO Injunction to RICO defendants' treatment of funds received on a "collection" and thus did not come into play at all at the time Mr. Donziger and Mr. Zelman reached their agreement.

no *collection* occurred," slip op. at 37 (emphasis original), and "that Donziger's interpretation of 'traceable'" as *traceable to a collection* was "consistent with the Stay Order." *Id.* at 45. Addressing paragraph 5 of the RICO Injunction (the anti-monetization provision and the provision Mr. Donziger is alleged to have violated in Count VI), the Second Circuit highlighted language from the 2014 Stay Order explaining that "[t]he point of paragraph 5 . . . was to prevent Donziger and the LAP Representatives from avoiding the effect of the constructive trust imposed on assets in their hands that otherwise would have been direct proceeds of the [Ecuadorian] Judgment." *Id.* at 39. That is, despite the apparent language of the RICO Injunction itself, Judge Kaplan used the 2014 Stay Order to limit paragraph 5 to serving as a stop-gap to the constructive trust—*not* a separate injunction of independent reach beyond the constructive trust.[2] Because the appeal only involved a challenge to findings on Chevron's original March 2018 contempt claims, which addressed Mr. Donziger's conduct in helping his clients finance *their* judgment interests, the Second Circuit never squarely addressed the issue of whether the 2014 Stay Order also rendered the purported injunction against Mr. Donziger's monetization of his own interest (outside of a collection context) insufficiently clear and unambiguous for purposes of criminal contempt.

24. The Second Circuit did limit its reversal to "the district court's contempt finding as to

---

[2]   The Second Circuit went on to note that

> [Judge Kaplan] explained that the "practical effect" of paragraph five was to keep Donziger from "benefitting personally" by monetizing his interest [] in the Ecuadorian Judgment, *id.*, something that was not likely to occur given the small chance that any collection on the judgment would occur during the period when the appeal of the RICO Judgment was pending, which was the period for which the stay was sought.

That is, Judge Kaplan himself said that the "practical effect" of the paragraph 5 was *triggered only by a "collection on the judgment,"* not by monetization prior to collection, even monetization of Mr. Donziger's restrained interest.

8

Donziger's sale of interests in the Ecuadorian Judgment other than of interests in his contingent share of that judgment," *id.* at 53, potentially suggesting that it would have sustained a civil contempt as to a sale of Mr. Donziger's own interests, had that issue been presented in the appeal. This is not a holding of the opinion, however, and the Second Circuit offered no explanation as to how any such holding could be fully reconciled with Judge Kaplan's own words in the 2014 Stay Order. Even if this was the Second Circuit's holding, however, it would be of only limited relevance here. The Second Circuit was considering civil contempt findings, which have no willfulness or intent element *at all*. A sustained civil contempt finding does not carry the prosecution to its burden.

25. Both the willfulness and clear order elements of criminal contempt contain subjective dimensions: did *Mr. Donziger* understand that the RICO Injunction prohibited the Zelman agreement and did he knowingly and willfully proceed nonetheless? The private prosecutors presented no evidence to suggest this. Rather, the open tone and casual approach of the email exchange setting out the terms of the agreement suggest the opposite, that neither party had even the slightest inkling in 2016 that the transaction raised any problems. The entire weight of Mr. Zelman's testimony also supports the notion that neither Mr. Zelman nor Mr. Donziger "had an idea that the agreementt that [they] entered into somehow would create a problem of this nature." Tr. at 591. Accordingly, the private prosecutors have failed to prove beyond a reasonable doubt that the RICO Injunction, in light of the 2013 Stay Order, was so clear and unambiguous as to leave no doubt in Mr. Donziger's mind that he was prohibited from undertaking the Zelman agreement and that Mr. Donziger willfully violated that understanding of the RICO Injunction anyway.

26. <u>In further addition and in the alternative</u>, the agreement between Mr. Zelman and Mr.

9

Donziger was not prohibited by the RICO injunction. Mr. Zelman testified that he understood the interest being granted was a contingent, future interest — contingent on hypothetical future events or possibilities that were remote and/or unlikely beyond his ability or inclination to contemplate them. Tr. at 615 ("Q. This was a contingent agreement, correct? A. Exactly. Q. Based on a series of future events that you did or did not understand, correct? A. Precisely. Q. Did you have any understanding of the risk, Mr. Zelman, the probability that Mr. Donziger's fees would be collected? A. . . . [V]ery, very low.").

27. The precise contingency upon which Mr. Donziger's recovery of his fees — derivative of which Mr. Zelman's recovery would take place, pursuant to their agreement — hinged was the setting aside of the RICO judgment by way of Rule 60 motion for relief from a Judgment or Order. *See generally,* F.R.C.P 60 (providing, in relevant part, that nothing in the rule limits a Court's power to set aside a judgment for "fraud on the court."). Such a motion can be filed, and granted, at any time subsequent to entry of a judgment.

28. Post-RICO-judgment litigation has generated evidence of fraud on the court, namely: (a) the RICO Opinion and Injunction were based in foundational ways on the "bribe" testimony of Alberto Guerra; (b) the testimony was outright false; (c) the testimony was not only false but "manufactured," and subsequently insulated from attack, by high-paid lawyers, private investigators, and forensic experts who knew of, or recklessly disregarded clear evidence as to the falsity of the testimony. Alberto Guerra had admitted to knowingly lying under oath during the RICO trial about key aspects of his testimony and an analysis of the hard drives of the computers of the presiding judge in the Ecuadorian environmental trial categorically debunked the core of Guerra's testimony. These powerful facts could easily warrant relief even under the highly restrictive standards that courts have typically applied regarding Rule 60(b)(6).

29. Because vacatur of the RICO Injunction pursuant to such a Rule 60 theory would reestablish Mr. Donziger's contractual rights to his fee in the Ecuador Judgment, Mr. Donziger at all times possessed a Rule 60-contingent future interest in his fee that was, by its nature, beyond the ability of the court to enjoin, or at least would have required further and specific due process before being taken by exercise of official authority. The fact that an interest is contingent on the future occurrence of a condition precedent does not remove the "constraints of due process." *See United States v. Monsanto*, 924 F.2d 1186 (2d Cir 1991); *see also United States v. Watts*, 786 F.3d 152, 172 (2d Cir. 2015) (*Monsanto* hearing required for any seizure of contingent "potentially forfeitable" property) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 622 (1989).[3] The reality is that the market for such highly contingent interests is typically non-existent. But given the unusual circumstances here, including both the nature of the relationship between Mr. Donziger and Mr. Zelman and the existence of powerful but as yet unrealized challenges to the RICO Opinion and Injunction, the record plausibly reflects that this was indeed the interest on offer, *see, e.g.*, Tr. at 625 ("Q. And was it your understanding that the RICO judgment might be set aside one day? A. Yes."), and the government's failure to prove that it was not is fatal to its ability to prevail on this count.

30. Lastly, Mr. Zelman's interest in any share of Mr. Donziger's fee was relinquished on April 21st, 2019. The private prosecutors failed to prove that Mr. Donziger's receipt of services from Mr. Zelman caused any harm or obstructed, disrupted or interfered with the administration of

---

[3] Put another way, Judge Kaplan did not have the authority to enjoin Mr. Donziger, by way of RICO judgment, from selling contingent future interests that would vest in a world where the RICO judgment had been set aside. Mr. Donziger had the right to pledge fees that he could only recover in the circumstances where a Rule 60 motion had been granted; the RICO judgment does not, and cannot, reach such pledges simply because they have found a willing investor like Mr. Zelman.

justice in any way. Exercise of the criminal contempt power at this point in time would not be consistent with "the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Vuitton*, supra.

## CONCLUSION

WHEREFORE it is respectfully requested that this Court make the aforementioned findings of fact and conclusions of law and acquit Mr. Donziger of Counts IV, V, and VI as charged in the July 31, 2019 Order to Show Cause.

DATED: June 8, 2021                                   Respectfully submitted,

_____/s_____
RONALD L. KUBY
RHIDAYA TRIVEDI
Law Office of Ronald L. Kuby
119 West 23rd Street Suite 900
New York, NY 10011
(212)-529-0223
rhiyatrivedi@gmail.com

*Counsel for Mr. Donziger*