

Martin Garbus, Esq.<br>
590 Madison Ave., 6th Floor<br>
New York, NY 10022<br>
(347) 589-8513<br>
mgarbus@offitkurman.com

June 22, 2021

**VIA ECF**

Honorable Loretta Preska
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

RE: *Chevron v. Donziger*, Case No. 19 Cr. 561 (LAP)

Dear Judge Preska:

    I write urgently to demand dismissal of this case. It is clear that this criminal contempt prosecution of human rights attorney Steven Donziger by private prosecutor Rita Glavin and the Seward & Kissel firm, with the active assistance of long-time Chevron law firm Gibson Dunn & Crutcher, is illegal and a nullity per core constitutional principles. The manifest unconstitutionality of this prosecution was made all the more clear by a discussion of the relevant principles in a Supreme Court decision released yesterday. *See* United States v. Arthrex, Inc., No. 19-1434, Slip Op. attached hereto as Ex. A. As described below, it is now undeniable that the appointment of Ms. Glavin was unconstitutional, and that this constitutional defect will not be addressed by the Department of Justice. This prosecution cannot go forward.

    The basic procedural facts of this case are deeply troubling. Ms. Glavin for months hid the fact that she worked for an oil industry law firm while pushing for the detention and imprisonment of Mr. Donziger, a human rights lawyer who had won a historic pollution judgment against Chevron, an undisclosed client of her law firm.[1] Ms. Glavin has also vigorously advocated for the Court to continue to imprison Mr. Donziger in his home—an imprisonment now in its 23rd month even though the underlying misdemeanor charges carry a maximum jail term of six months. At trial, it was revealed that Ms. Glavin has spent an estimated $1 million in taxpayer dollars on this misdemeanor case, all the while working in a hand-in-glove fashion with Chevron's lead outside law firm in its civil cases against Mr. Donziger.[2]

---

[1] Mr. Donziger reserves all rights with respect to civil claims against the private prosecutors and their law firms for damages resulting from their conduct depriving him of his constitutional rights.

[2] That firm, Gibson Dunn, that has developed its own substantial financial interest in the continued "demonization" of Mr. Donziger. *See, e.g.*, Dkt. 294, 294-1.

The unconstitutionality of Ms. Glavin's appointment and lack of supervision, raised in a pre-trial motion and again at trial, lies at the foundation of all these problems. Ms. Glavin was appointed as—and has taken steps to position herself as—a free-floating "inferior officer" exercising federal executive power without any of the constraints of supervision by the President or a "superior officer" nominated by the President and confirmed by the Senate. As discussed in *Arthrex* and earlier case law, this supervision and the resulting political accountability are core "structural safeguards" guaranteed by the Appointments Clause and designed to prevent this precise type of illegal prosecution from happening.

In *Arthrex*, the Supreme Court continued to strictly apply its Appointments Clause jurisprudence and demand that constant attention be paid to the implications of the fundamental principle that "[t]he President is 'responsible for the actions of the Executive Branch' and 'cannot delegate [that] ultimate responsibility or the active obligation to supervise that goes with it.'" Slip Op. at 6 (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U. S. 477, 496–497 (2010)). Any "inferior officer" that effectively wields Executive Branch power must be "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." (citing *Edmond v. United States*, 520 U.S. 651, 662-63 (1997)). "*Edmond* recognized the Appointments Clause as a "significant structural safeguard[ ]" that "preserve[s] political accountability" through direction and supervision of subordinates—in other words, through a chain of command." Slip op. at 13 (quoting *Edmond*, 520 U. S., at 659, 663).

Although the Court divided 5-4 about whether the degree to which principal officer supervision of the administrative patent judges whose ruling was at issue in *Arthrex* was constitutionally sufficient, the Court was unanimous that direction and supervision are constitutionally required. *See id.*, op. of Gorsuch, J., concurring in part and dissenting in part, at 2 ("the framers took pains to ensure those subordinates would always remain responsible to the President and thus, ultimately, to the people. Because it is the President's duty to take care that the laws be faithfully executed, Art. II, §3, the framers sought to ensure he possessed "the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong. 463 (Madison) (emphasis added)."); *id.* at 3 ("By definition, an 'inferior officer' . . . has a superior.'"); *id.*, Thomas, J., dissenting ("The inferior officer's work must be "directed and supervised at some level by others who were appointed by Presidential nomination with advice and consent of the Senate.") (quoting *Edmond*, 520 U.S. at 663).

The same constitutional principles necessarily limit appointments under Fed. R. Crim. P. 42(a)(2) to at least the same extent as the statutory appointments at issue in *Arthrex*. It follows that the appointment of the private prosecutor here exceeded the district court's constitutional authority, and the prosecutor's actions pursuant to that appointment cannot stand.

To the extent that Ms. Glavin's appointment could have been constitutionally mitigated by active supervision of the Department of Justice, Ms. Glavin never sought to cure the constitutional infirmity discussed herein and it appears from all the facts that both the Department of Justice and the U.S. Attorney for the Southern District of New York have refused, as a practical matter and

Hon. Loretta A. Preska
June 22, 2021
Page 3 of 4

potentially for reasons of principle, to join Ms. Glavin's prosecutorial crusade.[3] Seeking "independence"—or the latitude she needed to pursue a former client's interests in the name of the U.S. government—Ms. Glavin has left herself in a position outside of any "chain of command," creating a constitutional defect that at this stage of the case is incurable.

The defense has raised this issue previously, only to have it casually swept away by the Court on purported evidentiary insufficiency. But *Arthrex* makes clear this response is untenable. The constitutional foundation of the prosecution is both a structural issue and a predicate to the Court's exercise of subject-matter jurisdiction, and is thus squarely and constantly a matter of the Court's own responsibility.

The defense has sufficiently raised the substance of the issue, especially in light of the Court's active resistance. Seeking clarity of the extent of Ms. Glavin's supervision by appropriate Executive Branch authorities, the defense sent a detailed legal memo to the Department of Justice, detailing the Appointments Clause concerns and the necessity of DOJ supervision. On May 10, 2021, I apprised the Court of both of the issue and the fact that the DOJ had declined to exercise supervision, despite the known constitutional problems. *See* Dkts. 302, 302-1, 303. The Court's response was merely a *sua sponte* evidentiary challenge to the communication from the DOJ itself, complaining that it was "not a formal memorandum," asking "how can I consider that, given that it's double hearsay?" Tr. at 850-52. Yet Ms. Glavin never questioned the authenticity of the communication or raised a hearsay objection to the motion.

I also explained to the Court that the defense had sought information relevant to Ms. Glavin's status and supervision from the U.S. Attorney for the Southern District of New York (U.S. Attorney), but that the request had been denied, under the *Touhy* framework, expressly on account of the Court's repeated denials of defense discovery requests targeting information about Ms. Glavin's appointment and operations. Tr. at 856-58.

At trial, I repeatedly insisted that the defense had done its part in raising a *prima facie* case of a severe Appointments Clause problem and requested at minimum permission for further discovery necessary to fully establish the issue. The Court refused:

> MR. GARBUS: The way to find out the further information is to get information from the U.S. Attorney's Office and DOJ, and we have tried to do that. . . .
>
> THE COURT: But we don't have it, so that's where we are.
>
> MR. GARBUS: We made a motion for discovery early on.

---

[3] To the extent Ms. Glavin would seek refuge in idea that Judge Kaplan could act as her constitutional benefactor for purposes of this issue, Ms. Glavin has resolutely disavowed that Judge Kaplan plays any role with respest to her efforts.

Hon. Loretta A. Preska
June 22, 2021
Page 4 of 4

> THE COURT: It was already denied more than once. . . . I adhere to that ruling.

Tr. at 857-58. On the basis of this claimed lack of evidence—a product of the Court's *sua sponte* objection and repeated denials of discovery—the Court tried to excuse itself, and the private prosecutor, of any responsibility for the issue. That is not how the Constitution works. If Ms. Glavin's appointment or ongoing lack of supervision is unconstitutional, every facet of her participation in this case and the foundation of the case itself is void. A proper constitutional foundation is a question of this Court's subject-matter jurisdiction, as to which the Court has an independent duty to ensure itself at every stage of the case. The Court has utterly failed to comply with this obligation.

No one regrets more than Mr. Donziger, who is in his 23rd month of an extraordinary home confinement on a misdemeanor, that this critical issue remains unresolved at this late date in the process. But the reality cannot be denied: this entire case rests upon a fundamental constitutional infirmity that voids Ms. Glavin's appointment and all her actions to date. Nor is the infirmity merely academic: Ms. Glavin appears to have strategically used her lack of constitutional tether and freedom from political accountability to pursue a private oil company's private agenda, producing procedural results that, as the defense has repeatedly noted, are unprecedented in the history of the federal courts and the history of our country.

This critical issue can no longer be ignored by the Court. The case must be dismissed, or at minimum counsel for Mr. Donziger must be granted the time and authority to pursue the necessary facts in discovery.

Respectfully,

/s

Martin Garbus, Esq.
OFFIT | KURMAN
590 Madison Ave., 6th Floor
New York, NY 10022
Tel. 347.589.8513
mgarbus@offitkurman.com
*Counsel for defendant*