# GLAVIN PLLC
2585 Broadway #211
New York, New York 10025
646-693-5505

July 9, 2021

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Steven Donziger*, 19 Cr. 561 (LAP); [11 Civ. 691 (LAK)]

Dear Judge Preska:

    I write in response to defendant Steven Donziger's June 22, 2021 motion to dismiss, based on the Supreme Court's June 21, 2021 decision in *United States v. Arthrex, Inc.*, No. 19-1434, 2021 WL 2519433 (U.S. June 21, 2021).  Dkt. 330.  The motion should be denied.

## I.    Relevant Background

### A.    The District Court's Initiation of Criminal Contempt Charges

    On July 31, 2019, the Honorable Lewis A. Kaplan issued an order directing Defendant Steven Donziger to show cause why he should not be held in criminal contempt of court, in violation of 18 U.S.C. § 401(3), citing six separate counts.  *See* Dkt. 1.  Section 401(3) states in relevant part: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—. . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  18 U.S.C. § 401(3).

    The criminal contempt charges were initiated on notice by an Order to Show Cause only after Donziger had, for more than a year, disobeyed court orders that were not stayed or modified, and for which Donziger strategically sought no stay or mandamus relief from the Second Circuit.  *See, e.g.*, Dkt. 62 at 17-18; *see also* Dkt. 327 (Proposed Findings of Fact) ¶ 153 ("Donziger strategically and deliberately chose not to seek appellate relief that was available to him, and instead chose to disobey court orders.").  Having exhausted all other options, Judge Kaplan referred the prosecution of Donziger for criminal contempt of court to the United States Attorneys' Office for the Southern District of New York.  2d Cir. No. 20-464, Dkt. 28 (J. Kaplan Response to Petition for a

Hon. Loretta A. Preska
July 9, 2021
Page 2

Writ of Mandamus) at 17-18 ("Having exhausted all other options, the district court tendered the prosecution of Donziger for criminal contempt of court to the U.S. Attorney.").

After the U.S. Attorney's Office for the S.D.N.Y. "respectfully decline[d] on the ground that the matter would require resources that we do not readily have available," Civ. Dkt. 2277, Judge Kaplan followed Fed. R. Crim. P. 42(a), and appointed the undersigned counsel to prosecute the criminal contempt charges on behalf of the United States:

> The district court followed Rule 42(a) to the letter. It tendered the prosecution to the U.S. Attorney. It gave the notice required by Rule 42(a)(1) by issuing an order to show cause. When the government 'respectfully decline[d] [prosecution] on the ground that the matter would require resources that we do not readily have available,' the court appointed outside attorneys to prosecute the case, as Rule 42(a)(2) *required*. The suggestions that the district court usurped the functions of the prosecutor or the grand jury or erred in appointing outside counsel to prosecute once the U.S. Attorney declined are frivolous.

2d Cir. No. 20-464, Dkt. 28 at 44 (J. Kaplan Response to Petition for a Writ of Mandamus) (emphasis in original); Civ. Dkt. 2277 (Order of Appointment).

## B.     The Defense Motion

In its motion, the defense contends, again, that the appointment of the special prosecutors by Judge Kaplan pursuant to Federal Rule of Criminal Procedure 42(a) was unconstitutional.  Dkt. 330 at 1-2; *see also* Dkt. 259 at 10 (contending that the use of Rule 42 in this case was unconstitutional).  The defense argues that the special prosecutors' appointment by the district court under Rule 42(a), made the special prosecutors "free-floating 'inferior officer[s]' exercising federal executive power without any of the constraints of supervision by the President or a 'superior officer' nominated by the President and confirmed by the Senate." *See* Dkt. 330 at 2.  The defense argues that "inferior officers" must be "directed and supervised at some level by others who were appointed by Presidential nomination with the advise and consent of the Senate."  *Id.*  The defense contends that appointments under Fed. R. Crim. P. 42(a)(2) are limited "to at least the same extent as the statutory appointments at issue in *Arthrex*," and argues that the appointment of the special prosecutors and the actions of the special prosecutors pursuant to that appointment "cannot stand."  *Id*.  The defense also renews its request for discovery.  *Id.* at 3.[1]

---

[1] The defense motion (Dkt. 330 at 1) also mischaracterizes "[t]he basic procedural facts of this case" by (1) rehashing arguments as to the disinterestedness of the special prosecutors, although those arguments have already been fully briefed and rejected by the district court, *see, e.g.,* Dkt. 68 at 12-20; Dkt. 297 at 13-21; and (2) again raising the pretrial conditions of Donziger's release, notwithstanding that the Second Circuit Court of Appeals twice affirmed this Court's denial of motions by Donziger prior to trial in respect of those release conditions.  *See* 2d Cir. No. 19-4155, Dkt. 53 (Feb. 18, 2020); 2d Cir. No. 20-1710, Dkt. 98 (Apr. 23, 2021).  Contrary to the

Hon. Loretta A. Preska
July 9, 2021
Page 3

It should be noted that the defense previously raised a variation of these arguments in connection with its April 2021 motion to dismiss for vindictive or selective prosecution (*see* Dkt. 259). Notwithstanding that the prosecution in this matter was initiated by the U.S. District Court, and not the Executive Branch, the defense does not engage with the Court's May 6, 2021 ruling discussing the separate process for the judiciary's initiation of criminal contempt charges:

> While the Court recognizes that the prosecutorial function is traditionally housed within the Executive Branch, federal law spells out a separate process for criminal contempt charges. The charging judge must first 'request that the contempt be prosecuted by an attorney for the government,' but '[i]f the government declines the request' then 'the court <u>must</u> appoint another attorney to prosecute the contempt.' Fed. R. Crim. P. 42(a)(2) (emphasis added). The Supreme Court has stressed the importance of that provision, noting that '[t]he ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, <u>without which courts would be mere boards of arbitration whose judgments and decrees would be only advisory</u>.' <u>Young</u>, 481 U.S. at 796 (quotation marks omitted) (emphasis added).

Dkt. 297 at 14 (emphasis in original).

## II.    Argument

### A.    Applicable Law

Courts possess the inherent authority to initiate contempt proceedings, and to appoint a private attorney to prosecute contempt charges. *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 793 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority *which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt*.") (emphasis added); *id.* at 795 ("the initiation of contempt proceedings to punish disobedience to court orders is a part of the judicial function."); *id.* at 796 ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United

---

defense's repeated claims, the special prosecutors do not work for Chevron and our motives in this case are not "to pursue a private oil company's private agenda." Dkt. 330 at 4. This prosecution, initiated by the district court pursuant to Rule 42, is about Mr. Donziger's repeated and deliberate disobedience of court orders over years, as reflected in the Order to Show Cause, our many prior filings, our opening statement at trial (Trial Tr. at 42-56) and in our Proposed Findings of Fact (Dkt. 327).

Hon. Loretta A. Preska
July 9, 2021
Page 4

States' would be a mere mockery.") (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)).

   The independent power of the judiciary to punish contempts of its authority did not originate with *Young* but, as the Supreme Court has set out in numerous precedents, is well settled. *See Int'l Union v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts. . .have embraced an inherent contempt authority. . .as a power 'necessary to the exercise of all others'") (citations omitted) (quoting *United States v. Hudson*, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1812)). In *Ex Parte Robinson*, for example, the Supreme Court explained:

> The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. *The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power.*

86 U.S. (19 Wall.) 505, 510 (1873) (emphasis added).[2]  As the Supreme Court stated in *Young*, this power of necessity encompasses the authority to appoint an attorney to prosecute a contempt action where necessary to do so.  481 U.S. at 796 ("The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be 'mere boards of arbitration whose judgments and decrees would be only advisory.'").

   The prosecution of contempt charges arising from the actions or conduct of parties within the court's jurisdiction vindicates the authority of the judiciary to regulate persons who appear before them in judicial proceedings.  *See id.* at 800 ("In punishing contempt, the

---

[2] Much more recently, the Ninth Circuit used its inherent authority to appoint a private attorney to defend the position of the United States on appeal following conviction, after the Executive Branch refused to defend a prosecution for criminal contempt of court in that case. *See United States v. Arpaio*, 906 F.3d 800, 802 (9th Cir. 2018) (Fletcher, J., concurring in the denial of rehearing *en banc*) ("Rule 42 is rooted in an inherent judicial power that exists independently of the Rule. Ordinary criminal prosecutions are, of course, exercises of the executive power. Prosecutions for criminal contempt of court are different. Such prosecutions are vindications of the judicial power, and the use of private attorneys as special prosecutors is part of the judicial function.").  The power to appoint an attorney where the Executive Branch declines to act is in order to protect the judicial power under Article III of the Constitution. *See id.* at 803 ("Rule 42(a)(2). . . .is an implementation of a court's pre-existing inherent authority to appoint a special prosecutor when the government declines to prosecute."); *cf. United States v. Gracia*, 755 F.2d 984, 988 (2d Cir. 1985) ("[C]ourts have a 'constitutional obligation' to protect themselves from conduct that impairs their ability to carry out Article III functions.") (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)).

Hon. Loretta A. Preska
July 9, 2021
Page 5

Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings."); *id.* at 800-01 ("While contempt proceedings are sufficiently criminal in nature to warrant the imposition of many procedural protections, their fundamental purpose is to preserve respect for the judicial system itself. As a result, courts have long had, and must continue to have, the authority to appoint private attorneys to initiate such proceedings when the need arises"). This exercise of judicial authority is restrained by the principle that only "the least possible power adequate to the end proposed" should be used in contempt cases. *See id.* at 801. This principle is implemented by the procedure specified by *Young* and implemented in Rule 42(a)(2), that "a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied. Such a procedure ensures that the court will exercise its inherent power of self-protection only as a last resort." *Id.* at 801.

B.    **Discussion**

The initiation of criminal contempt charges, and the appointment of the special prosecutors by the District Court in this matter, reflect a vindication and use of the judicial power of the United States. It therefore follows that the decision in *Arthrex*, which dealt with the question of whether the authority of Administrative Patent Judges to issue decisions *on behalf of the Executive Branch* is consistent with the Appointments Clause of the Constitution,[3] has no applicability to this matter. *See, e.g.*, *Arthrex*, Slip. Op. at 8 ("Congress provided that APJs would be appointed as inferior officers, by the Secretary of Commerce as head of a department. The question presented is whether the nature of their responsibilities is consistent with their method of appointment.").

Here, by contrast, Judge Kaplan initiated the contempt charges and followed the procedure contemplated by *Young* and codified by Rule 42. Dkt. 1; Civ. Dkt. 2277. When the prosecution of Donziger was referred to the Executive Branch, the U.S. Attorneys' Office "respectfully decline[d] on the ground that the matter would require resources that we do not readily have available," Civ. Dkt. 2277. Accordingly, the district court followed the procedure required by Rule 42(a)(2) and appointed the special prosecutors. Civ. Dkt. 2277; Fed. R. Crim. P. 42(a)(2) ("[i]f the government declines the request. . . the court *must* appoint another attorney to prosecute the contempt.") (emphasis added). Nothing in *Arthrex* affects or limits the judiciary's inherent power to appoint a special prosecutor in connection with its initiation of criminal contempt charges, under circumstances where – as here – the U.S. Attorney's Office declined prosecution "on the ground that the matter would require resources that we do not readily have available." Civ. Dkt. 2277. *Arthrex* has nothing to do with the exercise of the judiciary's inherent power as long recognized by Supreme Court precedent.

---

[3] The Appointments Clause provides: "[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." Art. II, § 2, cl. 2.

Hon. Loretta A. Preska
July 9, 2021
Page 6


As for the defense's renewed request for discovery, the application should be denied for the reasons this Court has already articulated in denying prior similar requests. *See* Dkt. 68 at 24-25; Dkt. 150 at 1-2; Dkt. 296 at 1; Dkt. 297 at 22-24.


Sincerely,


  *s/Rita M. Glavin*
  Rita M. Glavin

*Special Prosecutor on behalf
of the United States*