UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES,

                Plaintiff,

    v.

STEVEN DONZIGER,

                Defendant.

19 Cr. 0561 (LAP)

---

**MOTION FOR A NEW TRIAL
IN THE INTERESTS OF JUSTICE**

Defendant Steven Donziger respectfully moves for a new trial in the interests of justice pursuant to Fed. R. Crim. P. 33 on the ground that the Special Prosecutor was not subject to the constitutionally required supervision and direction of a principal officer of the Executive Branch at the time the case came before the Court for trial.

Although the Court emphatically agreed with Mr. Donziger's position that a special prosecutor appointed pursuant to Fed. R. Crim. P. 42 must qualify as an inferior officer within the Executive Branch (Dkt. 346 at 142-46) and must therefore be subject to the oversight of a principal officer, it denied his motion to dismiss on two grounds not advanced by the Special Prosecutor in her opposition. *See* Dkt. 338.[1]

---

[1] In referring to the special prosecutor as a "free-floating 'inferior officer,'" Dkt. 346 at 140 n.503, Mr. Donziger was not conceding that the Special Prosecutor's appointment by the Court pursuant to Fed. R. Crim P. 42 was a valid exercise of *Congress*'s power to authorize the appointment of inferior officers by a court, because the Federal Rules are not statutes enacted by Congress. 28 U.S.C. § 2074 (submission of rules to Congress); *Young v. United States ex rel. Vuitton et fils, SA*, 481 U.S. 787, 816 n.1 (1987) (Scalia, J., concurring in the judgment); *but see* Dkt. 346 at 142 ("In Rule 42, Congress authorized only a method of appointment for inferior

### I.     Mr. Donziger Made a Timely Challenge.

First, the Court faulted the timing of the motion. The Court cited *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018), for the proposition that a challenge to the constitutional status of an official wielding governmental power must be "timely." Dkt. 346 at 138 & n.496. But Mr. Donziger's challenge before the commencement of trial *was* timely, as *Lucia* itself confirms. Unlike Mr. Donziger, Lucia first challenged the Administrative Law Judge's authority only after the trial was over, in his appeal to the SEC. 138 S. Ct. at 2050. The Supreme Court held that was "just such a timely challenge." *Id.* at 2055. If Lucia's challenge was timely, so was Mr. Donziger's. Moreover, *Lucia* cites *Ryder v. United States*, 515 U.S. 177 (1995), which applied the de facto officer doctrine to a challenge to the appointments of two civilian judges who reviewed the military conviction of a member of the Coast Guard. In that case, Ryder first challenged the appointments in a petition for rehearing *after* the panel affirmed his conviction. *Id.* at 179. The Supreme Court distinguished earlier opinions upholding actions by invalidly appointed officials as de facto officers because "petitioner challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review," although after it had initially heard the case and rendered a decision. *Id.* at 182. The Court rejected de facto officer status and reversed. The holding of *Ryder* is that the defendant's challenge in that case was timely for purposes of granting relief on his constitutional challenge, just as it was in *Lucia*, and just as it is here. *See id.* at 187.

Fed. R. Crim. P. 12 did not require Mr. Donziger to challenge the Special Prosecutor's lack of authority as an unsupervised officer by the February 27, 2020 deadline for pretrial motions. *See* Dkt. 346 at 138-39. As the Court recognized elsewhere in its opinion, *id.* at 142 (recognizing that

---

officers."). The point, in context, was that the only basis for *any* judicial appointee to wield executive authority is as an "inferior officer" who is subject to principal officer supervision (which the Special Prosecutor in this case is not).

Rule 42 is only a method of appointment) and 145 (distinguishing the judiciary's power to "initiate criminal contempt proceedings" from "prosecut[ing] them"), the Special Prosecutor's lack of supervision by a principal officer is distinct from the lawfulness of her initial appointment by the Court under Fed. R. Crim. P. 42 and the Court's filing of charges under that Rule. It was not "a defect in instituting the prosecution,"[2] but rather a defect in conducting the prosecution.

Mr. Donziger's initial May 10 motion to dismiss came close on the heels of Justice Department's May 7 refusal of his request that it exercise its constitutional responsibility to oversee the Special Prosecutor. As the Special Prosecutor, who was copied on the letter, knew, Counsel for Mr. Donziger, William W. Taylor, III, wrote to John P. Carlin, then Acting Deputy Attorney General (and, as such, the senior official at the Department of Justice overseeing criminal cases), on April 2, 2021. The letter requested that the Department exercise its constitutionally-required oversight by reviewing the criminal contempt prosecution, including if necessary directing the special prosecutor to seek an adjournment of the trial until the review could be completed.

Mr. Taylor sent a second letter to Mr. Carlin, still the Acting Deputy Attorney General, on April 19, 2021, again copying the Special Prosecutor. Mr. Carlin did not respond to the letters until May 7, 2021, the Friday before the scheduled beginning of trial, when he sent the email to Mr. Taylor refusing his request. Dkt. 303-1.

---

[2] The Court cites *Shotwell Mfg. Corp. v. United States*, 371 U.S. 341 (1963), for the proposition that Rule 12 extends beyond its terms. But that case applied longstanding decisions that "an objection to the petit jury array is not timely if it is first raised after verdict" (in fact, four years after trial). *Id*. at 362. Obviously, if Mr. Donziger had been tried by a jury, he could not have challenged the array by the February 27, 2020 motions deadline (or its equivalent under a pretrial scheduling order).

**II.     The Justice Department Declined a Request to Supervise.**

The second reason given by the Court but not advanced by the special prosecutor for denying relief was that the Court deemed Mr. Carlin's email insufficient to establish the absence of supervision of the Special Prosecutor by a principal officer.  But the Special Prosecutor, who was (as noted above) *copied* on Mr. Taylor's letter to Acting Deputy Attorney General Carlin, did not dispute that it meant that the Department was declining to supervise and direct her.  Mr. Taylor's letters asked the Department to review the prosecution in light of pre-*Arthrex* Supreme Court authority requiring supervision and direction by a principal officer; Mr. Carlin's response declined that request.

The Special Prosecutor understood that she was not under the direction and supervision of any principal officer in the Executive Branch.  Indeed, in response to Mr. Donziger's follow-up letter motion based on the Supreme Court's intervening decision in United *States v. Arthrex*, *Inc.*, 141 S. Ct. 1970 (2021), the Special Prosecutor argued that *Arthrex* "has no applicability to this matter" because it was concerned with "decisions *on behalf of the Executive Branch*." Dkt. 338 at 5 (emphasis by the special prosecutor).  Highlighting her judicial appointment, the Special Prosecutor argued that "*Arthrex* has nothing to do with the exercise of the judiciary's inherent power as long recognized by Supreme Court precedent." *Id.*  In other words, rather than contending that she *was* subject to supervision in compliance with the standards articulated in *Arthrex*, the Special Prosecutor's position was that she was not exercising executive power at all— a legal position the Court has now (correctly) rejected.  The Special Prosecutor would not have argued that *Arthrex* was inapplicable if the constitutional requirement of principal officer supervision and direction it elaborated was, in fact, satisfied.

4

Mr. Carlin's e-mail declined Mr. Taylor's request to carry out the Department's constitutionally-required oversight, as the Special Prosecutor knew.  While it was somewhat informal, it was not hearsay.  It was a performative declaration (a "verbal act") of the Department's position (at least before *Arthrex*) that it viewed "federal-court initiated contempt proceedings" as beyond its supervisory authority.[3]  With full appreciation for its context, the Special Prosecutor did not dispute that meaning, and the Court rebuffed Mr. Donziger's requests for discovery.

Mr. Donziger did all he could to show that the Special Prosecutor was not, as required, "directed and supervised" by a principal officer. Dkt. 346 at 141-42.  The problem is not just that the Department of Justice is not "actively supervis[ing]" all or particular decisions by the Special Prosecutor, Dkt. 346 at 148, but that the Department, like the Special Prosecutor herself, viewed supervision requirements as categorically inapplicable to prosecution of a judicially initiated criminal contempt by a special prosecutor; that is no different from a statutory limitation on oversight as in *Arthrex*. The Court has correctly rejected that position. Dkt. 346 at 142-47.  There is no dispute between the parties about the relevant facts; even if there were, the requested discovery (which the Court refused) could have resolved it.

\* \* \*

The interests of justice require vacatur of the Court's verdict because Mr. Donziger made what the Supreme Court considers to be a timely challenge to the constitutional authority of the Special Prosecutor to try the case on behalf and in the name of the United States — a challenge that only became stronger after and in light of the Supreme Court's intervening decision in *Arthrex*. The Special Prosecutor's "'considerable discretion in matters' that are 'critical to the conduct of a

---

[3]  *See In re Oakland Physicians Med. Ctr., LLC*, 836 Fed. Appx. 342, 350 (6th Cir, 2020) (illustrating performative utterance concerning the position of government official).

5

prosecution . . . *outside* the supervision of the court,'" Dkt. 346 145 & n.522 (listing illustrations of such discretionary authority) invalidates the trial in its entirety.

## Conclusion

The Court should vacate its Findings of Fact & Conclusions of Law and its Verdict in the interests of justice because of an incurable constitutional defect in the conduct of the prosecution.

DATED: August 3, 2021                   Respectfully submitted,


   /s/
Martin Garbus, Esq.
OFFIT | KURMAN
590 Madison Ave., 6th Floor
New York, NY 10022
Tel. 347.589.8513
mgarbus@offitkurman.com

   /s/
Ronald L. Kuby, Esq.
LAW OFFICE OF RONALD. L KUBY
119 West 23rd Street, Suite 900
New York, NY 10011
212-529-0223
ronaldlkuby@gmail.com

*Counsel for Defendant*