UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES,<br><br>       Plaintiff,<br><br>  v.<br><br>STEVEN DONZIGER,<br><br>       Defendant. | 19 Cr. 0561 (LAP) |

**REPLY IN SUPPORT OF
<u>MOTION FOR A NEW TRIAL IN THE INTERESTS OF JUSTICE</u>**

  The Special Prosecutor's lack of supervision and direction taints every decision she made and every piece of evidence in the trial. A trial conducted by a prosecutor in the name of the United States but without constitutional authority is a nullity. There was no need for Mr. Donziger's motion to profess his innocence of charges that would not even have been pursued by a prosecutor pursuing impartial justice and were proved at trial primarily through the testimony of Chevron's lawyers.

  In its post-trial Findings of Fact and Conclusions of Law, the Court agreed that notwithstanding her judicial appointment, the Special Prosecutor was wielding *executive* power. She was therefore subject to the requirement, explicated most recently in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), that officials in the executive branch who are not themselves principal officers must be under the direct supervision of a principal officer. Dkt. 346 at 142-49.

  In contrast to the Special Prosecutor's earlier submission that the requirement of principal officer supervision and direction was inapplicable to her as a judicial appointee pursuant to Fed.

R. Crim. P. 42, (Dkt. 338 at 5), the Special Prosecutor now grasps for the straw held out in the Court's Findings of Fact and Conclusions of Law: that as a matter of law she must be subject to removal and oversight by the Attorney General, even if no one realized that prior to trial. *See* Dkt. 355 at 3 (quoting Dkt. 346 at 148 ("Rule 42 does not, in any way, limit the Attorney General's discretion to review the Special Prosecutor's decisions or remove them from their posts.")). But that straw crumbles in the Special Prosecutor's clutches; it is obvious from the Special Prosecutor's prior inconsistent view that neither the Special Prosecutor nor the Justice Department recognized that it *had* such direct supervisory authority—and hence the corresponding responsibility to address the issues raised in Mr. Taylor's April 2 letter.

Mr. Taylor's letter to the Acting Deputy Attorney General set out to debunk the common understanding that a prosecutor appointed under Rule 42 is not subject to Justice Department oversight. The letter did not ask the Department to take any specific action; it asked the Attorney General and other principal officers (only the Attorney General had been confirmed at the time) to take responsibility for what was being done in the name and by the authority of the United States— such accountability being a core function of the Appointments Clause. Mr. Taylor's second letter pointed to the participation of FBI agents as additional confirmation that the Special Prosecutor was wielding executive power, and therefore subject to the requested oversight. Mr. Carlin's May 7 email must be understood in the context of the request for supervision and direction it denied.

The Special Prosecutor's opposition to the new trial motion only confirmed the meaning of the Carlin email. The Special Prosecutor has made no representations about whether she had any communications with the Justice Department in response to Mr. Taylor's letters, but if the Department had told the Special Prosecutor that she was under the supervision and directions of

principal officers of the Department, surely the Special Prosecutor would not have told this Court that *Arthrex* was *inapplicable*; she would have demonstrated why it was *satisfied*.

The Special Prosecutor's claim that *Arthrex* was not applicable is a dispositive admission that she did not regard herself as subject to supervision and direction prior to trial—a confession of error in light of this Court's ruling.  A prosecutor who does not perceive a chain of command is not accountable to it.   Even if the Justice Department (like the Special Prosecutor) were now to agree with Mr. Donziger and this Court about the constitutional rule, that will have no bearing on the many discretionary decisions the Special Prosecutor made before and during trial without answering to any chain of command in the executive branch.  *See Arthrex*, 141 S. Ct. at 1982 (explaining why the actual decisions of the administrative patent judges must be subject to supervision when they are made).

The Special Prosecutor's argument that the Court can overlook the constitutional defect because Mr. Donziger did not raise it in a Rule 12(b)(3) motion fails to acknowledge the distinction between her *appointment* and the absence of any constitutional accountability in the *execution* of her role as a purported officer of the United States. See Dkt. 355 at 3 (asserting, without citation, that the Rule 33 motion is challenging "the appointment of Special Prosecutors."). Mr. Donziger, through his counsel Mr. Taylor, pleaded with the appropriate official of the Department of Justice to review this unusual prosecution. Immediately after receiving notice of the Department's refusal, Mr. Donziger moved to dismiss because of the absence of supervision and direction before trial. Of course, the Special Prosecutor can hardly complain that her *appointment* was not challenged. Mr. Donziger also (and repeatedly) objected to the Special Prosecutor's appointment, and the absence of any check on the Special Prosecutor by a principal officer untainted by association with Chevron is certainly relevant to whether the Special Prosecutor's ties to Chevron and her heavy

reliance on time donated by Chevron's counsel to prepare the case require dismissal as a matter of supervisory power or due process.

The Special Prosecutor snipes at the relevance of *Lucia* to the timeliness of the motion to dismiss, but it was this Court that relied on *Lucia* as requiring a timely challenge to an inadequately supervised officer. Dkt. 346 at 138 n.496. Mr. Donziger's motion simply demonstrated that his pretrial challenge was timely under *Lucia* and *Ryder*, which the Special Prosecutor does not dispute.

As the Court recognized, judicial appointment is distinct from principal officer supervision and direction. "Although that appointment would be made by the federal judiciary, no one would reasonably suggest that the interim U.S. Attorney would operate free from control or influence by the Attorney General." Dkt. 346 at 144. The record shows that the Special Prosecutor in this case *did* operate free from the Attorney General's control or influence, so that even if her initial appointment were valid (it was not), the trial is a nullity.

I.  **THE SPECIAL PROSECUTOR'S LACK OF CONSTITUTIONAL AUTHORITY CAN BE RAISED IN A MOTION FOR NEW TRIAL**

The Special Prosecutor is right that Mr. Donziger's Rule 33 motion does not explicitly "profess his innocence" of the contempt charges. Dkt. 355 at 2. But there was no reason for the motion to do so. This Court has rightly accepted Mr. Donziger's argument that even a special prosecutor appointed by a judge is acting on behalf of and accountable to the public. There can be no judicial prosecutors or private prosecutors acting on behalf of a vengeful private party. Every prosecutor appearing on behalf and in the name of the United States has the same duty to pursue impartial justice, not payback. The Special Prosecutor's lack of accountability taints every discretionary decision and every piece of evidence introduced at trial.

The Special Prosecutor implies (Dkt. 355 at 2) that Rule 33 relief is available only for claims of factual innocence, not—as here—for claims that the trial itself was a legal nullity. But Rule 33 says no such thing. *See United States v. Cronic,* 466 U.S. 648, 666 n.42 (1984) (ineffective assistance of counsel may be raised by Rule 33 motion). Although the scenario in this case is rare, if not one of a kind, surely the "interests of justice" include ensuring prosecution only by constitutionally-authorized prosecutor.[1] It is in the interests of justice to vacate the Court's Findings of Fact and Conclusions of Law and its verdict now, rather than require the Court of Appeals to do so.

## II. THERE IS NO GENUINE DISPUTE THAT THE SPECIAL PROSECUTOR WAS NOT SUPERVISED AND DIRECTED BY A PRINCIPAL OFFICER

The Justice Department's refusal to review the prosecution of a judicially initiated criminal contempt left the trial in the hands of a Special Prosecutor who was accountable to no one, unless to the judge who had appointed her.

Executive "power acquires its legitimacy and accountability to the public through 'a clear and effective chain of command 'down from the President, on whom all the people vote." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021). There was no "clear and effective" chain of

---

[1] For example, in *United States v. Luger*, 837 F.3d 870, 877 (8th Cir, 2016), the court held that a motion for new trial based on newly discovered evidence of a prosecutor's conflict of interest was cognizable under Rule 33. The court "agree[d] with Luger that a defendant is entitled to a trial that both appears fair and actually is fair. *United States v. Singer*, 710 F.2d 431, 437 (8th Cir.1983) (en banc). We also agree that the involvement of a conflicted prosecutor in a criminal proceeding is a fundamental constitutional error. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810, (1987)." The court upheld the denial of the motion,"[b]ecause Purdon was adequately screened from Luger's case, the fairness concerns associated with the involvement of a conflicted prosecutor did not actually arise." *Id.* at 878. Other fundamental defects can also be the basis for a Rule 33 motion. *United States v Herrera*, 481 F.3d 1266, 1270-73 (10th Cir. 2007) (defendant's competency to stand trial); *United States v. McCarthy*, 55 F.3d 51, 55 (2d Cir. 1995) (same); *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980) (juror's ex parte contacts with judge); *Holmes v. United States*, 284 F.2d 716, 719 (4th Cir. 1960) (improper influence on jury).

command between the President and the Special Prosecutor (through the Attorney General) because the Special Prosecutor and the Department shared the view that judicially appointed prosecutors were free agents. The Special Prosecutor's current wisdom that she is, in fact, subject to removal and oversight by the Justice Department comes too late, even assuming it is shared by the Department, for the same reason "reassigning an APJ to a different task going forward gives the Director no means of countermanding the final decision already on the books." *Id.* at 1982.[2] The Special Prosecutor's decisions in this case up to and through the trial were made outside the executive branch chain of command, and those decisions can only be undone by vacating the Court's Findings of Fact and Conclusions of Law and its verdict and starting over with a prosecutor who will exercise discretion in accordance with the public interest and the interests of justice.

Although Mr. Taylor copied the Special Prosecutor on the letters to the Acting Deputy Attorney General, the Special Prosecutor does not offer any evidence that—contrary to the position she took in her response to the motion to dismiss—the Special Prosecutor *was* subject to any chain of command running to the President through the Department of Justice. The Special Prosecutor points to the fact that (by some as yet undisclosed means) she obtained assistance from FBI agents from the New York field office. That *does* prove that the Special Prosecutor was exercising executive, not judicial power, and that she needed supervision and direction by a principal officer. (The FBI is not part of the judicial branch.) It *does not* prove that a chain of command above her within the executive branch to a principal officer existed. The Special Prosecutor says nothing

---

[2] The Court errs in looking in Rule 42 to see if it "limits" oversight. Dkt. 346 at 148. But unlike the statutory scheme at issue in *Arthrex*, Rule 42 does not address principal officer oversight at all. The limit on oversight stems from a common misunderstanding of the status of judicially-appointed prosecutors in light of what this Court rightly described as Supreme Court *dicta* inconsistent with a body of subsequent precedent, including *Arthrex*. *See* Dkt. 346 at 144.

about *how* the FBI agents came to be assigned to help her, or claim that she reported to any principal officer while pursuing this prosecution. In pointing to Mr. Taylor's letter, but not to any facts within her own possession about how the FBI agents were assigned, the Special Prosecutor is confirming that the participation of FBI agents is not tied to principal officer supervision and direction of the Special Prosecutor.[3]

The Court should not be fooled; the involvement of FBI agents in the prosecution is strange (in light of the United States Attorney's declination of the prosecution, ostensibly on resource grounds) and perhaps worthy of investigation by Congress and the Department of Justice Inspector General, but it is not evidence that a principal officer was supervising the Special Prosecutor. Without more—and the Special Prosecutor has *chosen* to provide nothing more—the FBI agent involvement is relevant only to confirm that the Special Prosecutor's original claim to this Court that *Arthrex* was inapplicable to her as a judicial appointee was legally erroneous. Indeed, that the Special Prosecutor relies so heavily on the FBI's involvement while offering no evidence of any *other* involvement by the Justice Department only underscores the constitutional problem.

## III.     THE MOTION TO DISMISS WAS TIMELY

The Special Prosecutor contends that the motion for new trial should be denied because Mr. Donziger's previous motion to dismiss on the ground that the Special Prosecutor was acting without constitutionally-required supervision and direction by a principal officer should have been

---

[3]   Mr. Donziger asked the Court to order the Special Prosecutor to provide information about the manner in which the FBI agents were deployed. Dkt. 356, 357. The Court denied that request. Dkt. 359. Because neither the Special Prosecutor herself nor any information provided in discovery connects the participation of FBI agents in the case to any supervision or direction of the Special Prosecutor by any principal officer, the Special Prosecutor's admission that FBI agents participated is evidence only that supervision and direction by a principal officer was necessary, not that it occurred. *See also* May 10, 2021 Transcript at 11 (referring to the presence of FBI agents at witness interviews).

filed by the pretrial motions deadline of February 27, 2020.  Dkt. 355 at 3 (citing Dkt. 59).  But dismissal should have been ordered, not because the Special Prosecutor was unlawfully appointed (although she was), but because she was unchecked by supervision and direction in carrying out that appointment.  Cf.  *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1988 (2021) (plurality) ("the source of the constitutional violation is the restraint on the review authority of the Director, rather than the appointment of APJs by the Secretary"); *id.* at 2003 (Thomas, J. dissenting) ("The majority's new Appointments Clause doctrine, though, has nothing to do with the validity of an officer's appointment. Instead, it polices the dispersion of executive power among officers.").  The motion to dismiss was not a challenge to the Special Prosecutor's appointment that could be time-barred as a "defect in instituting the prosecution" subject to Fed. R. Crim. P. 12(b)(3).[4]  Perhaps that is why the Special Prosecutor did *not* argue that the motion was untimely in her opposition to Mr. Donziger's renewed motion to dismiss following *Arthrex*.  *See* Dkt.  338.

The motion for new trial responded directly to this Court's reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), in its Findings of Fact and Conclusions of Law.  Dkt.  346 at 138 & n.496.  The motion did not rely on *Lucia*, so much as it explained why Mr. Donziger's challenge to the Special Prosecutor's authority was timely under the standard the Court itself had deemed applicable.[5]  It is irrelevant to the timeliness question that the Special Prosecutor is prosecuting this case rather than adjudicating it.  Mr. Donziger promptly moved to dismiss after the Department

---

[4]   The defendant's challenge to the delegation of authority to the Attorney General and by the Attorney General to the DEA to list controlled substances in *United States v. O'Brien*, 926 F.3d 57, 83-84 (2d Cir. 2019), was directed to the institution of the prosecution because it asserted a failure of the indictment to state an offense. Fed. R. Crim. P. 12(b)(3)(v).

[5]   In *Arthrex* itself, "Arthrex raised for the first time an argument premised on the Appointments Clause of the Constitution in its appeal" to the Federal Circuit after the completion of proceedings before the Administrative Patent Judge.  141 S. Ct. at 1978.  The government did not contend that the challenge was untimely in its merits brief.

8

of Justice communicated its refusal of his request to review "the federal-court initiated contempt proceedings."

## CONCLUSION

The motion for new trial should be granted.

DATED: August 19, 2021                           Respectfully submitted,

    /s/
Martin Garbus, Esq.
OFFIT | KURMAN
590 Madison Ave., 6th Floor
New York, NY 10022
Tel. 347.589.8513
mgarbus@offitkurman.com

    /s/
Ronald L. Kuby, Esq.
LAW OFFICE OF RONALD. L KUBY
119 West 23rd Street, Suite 900
New York, NY 10011
212-529-0223
ronaldlkuby@gmail.com

*Counsel for Defendant*