```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| UNITED STATES OF AMERICA,<br><br>-against-<br><br>STEVEN DONZIGER,<br>                                    Defendant. | No. 19-CR-561 (LAP)<br><br>No. 11-CV-691 (LAK)<br><br>MEMORANDUM & ORDER |
|---|---|

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Steven Donziger's motion for a new trial.  (See dkt. no. 351.)  The Special Prosecutors opposed the motion, (see dkt. no. 355), and Mr. Donziger replied, (see dkt. no. 361).  For the reasons set forth below, the motion is DENIED.

### I.  Background

    Less than a month ago, in its Findings of Fact and Conclusions of Law, the Court catalogued the decades-long history of this case and its underlying civil counterparts.[1]  Consequently, the Court will summarize only the history relevant to the instant motion here.

    On July 31, 2019, Judge Lewis A. Kaplan--who presides over Chevron Corp. v. Donziger, 11-CV-691 (S.D.N.Y.)--issued an order, pursuant to Federal Rule of Criminal Procedure 42, directing Mr. Donziger to show cause why he should not be held

---

[1] (See dkt. no. 346 at 4-120.)  Unless otherwise specified, all docket cites in this order refer to dkt. no. 19-CR-561.

in criminal contempt.  (See dkt. no. 1.)  That order to show cause, which was made returnable before the undersigned, cited six charges related to Mr. Donziger's violating several of Judge Kaplan's orders in 11-CV-691.  (See id. ¶¶ 1-21.)  Over the next year and several months, the Special Prosecutors and Mr. Donziger engaged in extensive motion practice, some of which was undertaken pursuant to the Court's deadline of February 27, 2020 for filing pretrial motions.  (See dkt. no. 59 at 1 (setting deadline).)  At no point during that time did Mr. Donziger raise a challenge based on the Appointments Clause.

On April 2, 2021, William W. Taylor III sent a letter to John. P. Carlin, the then-Acting Deputy Attorney General.  (See dkt. no. 302-1.)  In that letter, Mr. Taylor did not indicate that he represented Mr. Donziger or that he was writing on behalf of Mr. Donziger or his defense team.[2]  In his letter, Mr. Taylor averred that "[t]he constitutionally-required oversight of the special prosecutor in Mr. Donziger's case must come from the Department of Justice."  (Id. at 21.)  Mr. Taylor concluded his letter with a specific request:  That Mr. Carlin "order a review of [Mr. Donziger's] prosecution and, if necessary direct the special prosecutor to seek an indefinite adjournment of the

---

[2] Mr. Taylor also never filed a notice of appearance in this case or in the underlying civil case before Judge Kaplan.

2

scheduled May 10, 2021 trial until the review can be completed." (Id. at 21-22.)

On April 19, 2021, Mr. Taylor sent a supplemental letter to Mr. Carlin.  (See dkt. no. 355-1.)  In that letter, Mr. Taylor acknowledged that the Special Prosecutors "ha[d] been deploying Department of Justice personnel, specifically Federal Bureau of Investigation agents, to investigate the criminal contempt charges and support the prosecution team."  (Id. at 1.)  Mr. Taylor closed by reiterating his view that the Special Prosecutors were "essentially independent from Department of Justice supervision or oversight."  (Id.)

On May 7, 2021, Mr. Carlin responded to Mr. Taylor's letters via email.  (See dkt. no. 303-1.)  Mr. Carlin sent the following message:

> Bill,
>
> The Department has received your letters in the Donziger matter.  Having reviewed the letters, the Department declines to intervene in the federal-court initiated contempt proceedings.
>
> Hope you are well,
>
> John

(Id. at 1 (emphasis added).)  That's it.  That response was then forwarded to Mr. Donziger, who forwarded it once more to his counsel in this case.  (See id.)

On the first day of trial on May 10, 2021, Mr. Donziger's counsel moved, on the record, to dismiss the contempt charges,

3

asserting that the defense had "learned through a letter from the Department of Justice" that it "was declining to exercise any supervision over the prosecutor in this case." (Dkt. no. 311 at 37:16-19.) In response, the Court instructed counsel that it would "accept your papers when you're ready," directed counsel to confer regarding a briefing schedule, and indicated that it would rule on the motion "when the briefs [we]re in." (Id. at 37:22-25.)

Later that day, Mr. Donziger's counsel filed a three-page letter motion to dismiss, which appended Mr. Taylor's first letter.[3] Mr. Donziger's counsel did not, however, append or otherwise include the letter that he claimed to have received from the Department of Justice. On the record the next day, the Court informed Mr. Donziger and his counsel that it could not rule on the motion until the defense filed the letter that it claimed to have received. (See dkt. no. 313 at 193:3-16.) Two days later, Mr. Donziger's counsel filed a declaration appending Mr. Carlin's email. (See dkt. nos. 303 & 303-1.)

On the record on May 17, 2021, the Court informed Mr. Donziger's counsel of what it saw as a "double hearsay" problem related to the email, (see, e.g., dkt. no. 319 at 850:25-851:6,

---

[3] (See dkt. nos. 302 & 302-1.) Mr. Donziger did not append Mr. Taylor's supplemental letter. That letter was only brought to the Court's attention by the Special Prosecutors in their opposition to the instant motion. (See dkt. no. 355-1.)

4

852:1-6), and also noted that the email simply did not say that the Special Prosecutors were not subject to Department of Justice supervision, (see, e.g., id. at 856:2-9, 856:24-857:3). Mr. Donziger's counsel responded by pointing to steps the defense had taken to acquire more information or to obtain discovery. (See id. at 851:17-20, 852:23-853:7, 855:22-24, 856:13-15, 857:4-6.)

The Court informed Mr. Donziger's counsel that a request for discovery was not a substitute for actual evidence that the Special Prosecutors were not subject to supervision. (See id. at 856:10-12, 857:7-12.) Then, after adhering to its prior rulings that Mr. Donziger was not entitled to the vast discovery he sought, (see id. at 857:21-858:1, 858:15-20), the Court denied the motion to dismiss, finding that Mr. Donziger's "moving papers ha[d] given the Court absolutely no basis on which to conclude that the special prosecutors are not subject to any control or supervision whatsoever by the Executive Branch." (Id. at 858:22-25.)

On June 22, 2021, Mr. Donziger filed a post-trial letter motion to dismiss the contempt charges on Appointments Clause grounds, relying heavily on United States v. Arthrex, Inc., 141 S. Ct. 1970 (2021). (See dkt. no. 330.) On July 26, 2021, as part of its Findings of Fact and Conclusions of Law, the Court denied that motion because, inter alia: (1) the motion was

5

untimely, (see dkt. no. 346 at 138-39); (2) the Attorney General possessed the discretion to supervise the Special Prosecutors, (see id. at 141-48); and (3) it was immaterial for Appointments Clause purposes whether the Attorney General had, in fact, exercised that discretion, (see id. at 148-49).  That same day, the Court found Mr. Donziger guilty on each of the six counts of criminal contempt with which he was charged.  (See id. at 240.)

On August 3, 2021, Mr. Donziger filed this timely motion for a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33").  (See dkt. no. 351.)  The motion quarrels with the Court's analysis denying Mr. Donziger's post-trial motion to dismiss, largely raising the same arguments he made in his moving papers.  (See id. at 2-6.)

## II.  Discussion

### a. Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  In bench trials, it is unnecessary to order an entirely new trial:  Instead, "the court may take additional testimony and enter a new judgment."  Id. Rule 33 "by its terms gives the trial court broad discretion to set aside a . . . verdict and order a new trial to avert a perceived miscarriage of justice."  United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (cleaned up).

Nevertheless, the Court of Appeals instructs that "motions for a new trial are disfavored," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and should be "granted only in extraordinary circumstances," United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (quotation marks omitted).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Ferguson, 246 F.3d at 134.  "In other words, there must be a real concern that an innocent person may have been convicted." United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2006) (cleaned up).  "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33 . . . ." McCourty, 562 F.3d at 475.

### b. "De Facto" Reconsideration

Mr. Donziger "moves for a new trial . . . on the ground that the Special Prosecutor was not subject to the constitutionally required supervision and direction of a principal officer of the Executive Branch at the time the case came before the Court for trial."  (Dkt. no. 351 at 1.)  Essentially, Mr. Donziger advances the exact argument he offered in his post-trial letter motion to dismiss based on the Appointments Clause and Arthrex.  (See dkt. no. 330.)  Mr. Donziger asserts that the Court incorrectly denied that motion because (1) his motion was timely, (see dkt. no. 351 at 2-3), and (2) the Department of Justice declined his request to

7

supervise the Special Prosecutors, (see id. at 4-5).  Mr. Donziger chides the Court for denying "his motion to dismiss on two grounds not advanced by the Special Prosecutor[s] in [their] opposition."[4]

Crucially, however, Mr. Donziger does not base his motion on new evidence or on the Court's weighing of the evidence. Instead, Mr. Donziger asserts that "[t]he Court should vacate its Findings of Fact & Conclusions of Law and its Verdict in the interests of justice because of an incurable constitutional defect in the conduct of the prosecution."  (Id. at 6 (emphasis added).)  Given that this case was tried by the Court, granting Mr. Donziger's motion would result in the Court's simply "tak[ing] additional testimony and enter[ing] a new judgment" if necessary.  FED. R. CRIM. P. 33(a).  Yet, Mr. Donziger points to no additional evidence--absolutely none--that he proposes to offer.  To the contrary, Mr. Donziger contends that "[t]here is no dispute between the parties about the relevant facts."  (Dkt. no. 351 at 5.)  That is telling.

---

[4] (Dkt. no. 351 at 1.)  As an initial matter, it has long been well-settled that "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).  The Court's interpretation of Rule 42 is not in any way constrained by the interpretations advanced by either the Special Prosecutors or Mr. Donziger.  Mr. Donziger provides no authority to the contrary.

8

The upshot?  Mr. Donziger "appears to merely use Rule 33 as a vehicle to relitigate" the Court's denial of his post-trial, Appointments Clause-premised motion to dismiss.[5]  Put differently, Mr. Donziger essentially seeks reconsideration of the Court's ruling on that motion, even though the standard for granting a reconsideration motion is rightfully "strict."[6]  In light of that, the Court will not allow Mr. Donziger to use Rule 33 to obtain de facto reconsideration of a ruling on a post-trial motion with which he is dissatisfied.[7]  That alone is fatal to his motion, especially because this case presents no "concern that an innocent person may have been convicted."  Snype, 441

---

[5] United States v. Flom, 256 F. Supp. 3d 253, 271 (E.D.N.Y. 2017), aff'd, 763 F. App'x 27 (2d Cir. 2019); see also United States v. Trudeau, No. 3:10-CR-00234 (JCH), 2015 WL 7257825, at *3 (D. Conn. Nov. 17, 2015) ("Legal theories are not evidence within the meaning of Rule 33." ).

[6] Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. . . ."  Id.  Because Mr. Donziger identifies no such facts or legal authority in his moving papers, reconsideration plainly is not warranted here.

[7] Courts routinely deny Rule 33 motions when they are premised on a court's resolution of a pre-trial motion, such as a motion to suppress.  See Flom, 256 F. Supp. 3d at 272 (collecting cases); see also United States v. O'Brien, No. 13-CR-586 (RRM), 2017 WL 2371159, at *12 (E.D.N.Y. May 31, 2017) ("[T]o the extent O'Brien attempts to relitigate issues decided at the suppression hearing, he may not do so through a Rule 33 motion.").  Although those cases are not factually identical to Mr. Donziger's case, the Court sees no principled reason why the result should be different here.

9

F.3d at 140. Accordingly, Mr. Donziger's motion for a new trial will be denied.

### c. The Merits

Although a point-by-point refutation of Mr. Donziger's contentions is unnecessary based on the ruling above, the Court will still address Mr. Donziger's arguments on the merits. Mr. Donziger makes two principal points: (1) his Appointments Clause motion was timely, (see dkt. no. 351 at 2-3); and (2) Mr. Carlin's email shows that the Special Prosecutors were not subject to supervision by the Department of Justice, (see id. at 4-5). The Court will take each in turn.

#### 1. Timeliness

First, Mr. Donziger asserts that his Appointments Clause "challenge before the commencement of trial was timely." (Id. at 2 (emphasis omitted).) For support, Mr. Donziger relies principally on Lucia v. SEC, 138 S. Ct. 2044 (2018), and Ryder v. United States, 515 U.S. 177 (1995), both cases where the Appointments Clause challenges were raised after an initial adjudication. Mr. Donziger also suggests that "Fed. R. Crim. P. 12 did not require [him] to challenge the Special Prosecutor's lack of authority as an unsupervised officer by the February 27, 2020 deadline for pretrial motions" because his challenge alleges "not a defect in instituting the prosecution, but rather

a defect in conducting the prosecution." (Id. at 2-3 (quotation marks and footnote omitted).)

The Court disagrees. Mr. Donziger's reliance on Lucia and Ryder is misplaced. Both Lucia and Ryder involved (1) proceedings where the Federal Rules of Criminal Procedure did not apply, and (2) challenges to the officer adjudicating the dispute.[8] Neither characteristic is present here: Mr. Donziger is challenging the appointment of the officer prosecuting his case, and the Federal Rules of Criminal Procedure indisputably govern. Federal Rule of Criminal Procedure 12 requires certain "defenses, objections, and requests" to "be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits," FED. R. CRIM. P. 12(b)(3), and failure to do so renders such a motion "untimely," id. 12(c)(3). As the seminal treatise on the

---

[8] See Lucia, 138 S. Ct. at 2049 (challenging appointment of SEC's administrative law judges, who were authorized to hear and decide in-house SEC enforcement proceedings); Ryder, 515 U.S. at 179 (challenging appointment of civilian members of Coast Guard Court of Military Review, which was authorized to adjudicate certain appeals of court-martials). By their terms, the Federal Rule of Criminal Procedure apply only to "criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States." FED. R. CRIM. P. 1(a)(1).

11

federal courts recognizes, the motions enumerated in Rule 12(b)(3)(A) and (B) are illustrative, not exhaustive.[9]

In its Findings of Fact and Conclusions of Law, the Court found Mr. Donziger's motion to allege "a defect in instituting the prosecution," FED. R. CRIM. P. 12(b)(3)(A), which meant that Mr. Donziger waived or forfeited his Appointments Clause challenge by failing to raise it before the Court-approved February 27, 2020 deadline for filing pretrial motions, (see dkt. no. 346 at 139).  Mr. Donziger disagrees, countering that the Appointments Clause challenge did not involve "a defect in instituting the prosecution" because "the Special Prosecutor[s'] lack of supervision by a principal officer is distinct from the lawfulness of [their] initial appointment by the Court."  (Dkt. no. 351 at 3.)

While the Court agrees with Mr. Donziger's premise, his conclusion does not follow.  Implicit in Mr. Donziger's position is the assumption that the information necessary to make out an Appointments Clause claim based on lack of supervision was

---

[9] See 1A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 193 (5th ed.) ("Other types of motions that allege a defect in the initiation of the prosecution are also covered by the rule, even if they are not enumerated in subsection (b)(3), and must be filed pretrial on pain of a sanction for untimeliness."); id. ("Again, the enumerated motions that allege a defect in the indictment or information are not exhaustive, and other claims of a defect in the charging documents can also fall within Rule 12(b)(3) and must be filed prior to trial.").

12

unavailable at the time of the Special Prosecutors' appointment. Not so.  As Arthrex, 141 S. Ct. at 1988, makes clear, "[w]hat matters" for Appointments Clause purposes "is that [a superior officer] have the discretion to review decisions" by the inferior officer.  In other words, a legal rule must somehow limit the superior officer's discretion to supervise in order to present an Appointments Clause malady.  The legal framework underlying the Special Prosecutors' appointment is the same today as it was on the day they were appointed.  That is, if there were any legal rules limiting the Attorney General's control over the Special Prosecutors, those should have been apparent from this case's genesis.[10]  In that sense, although appointment and supervision may be distinct concepts under the Appointments Clause, Mr. Donziger's challenge based on unconstitutional supervision still amounts to "a defect in instituting the prosecution."  FED. R. CRIM. P. 12(b)(3)(A).  Accordingly, Mr. Donziger waived or forfeited that challenge by failing timely to raise it.[11]

---

[10] The real issue for Mr. Donziger is that he has not identified any legal rule that limits the Attorney General's supervisory authority over the Special Prosecutors.  More on that shortly.

[11] See United States v. O'Brien, 926 F.3d 57, 83 (2d Cir. 2019) ("If a motion falling within Rule 12(b)(3) is not made before trial (or before such pretrial deadline as may be set by the court for such motions), it is 'untimely.'").

At base, Mr. Donziger actively litigated this case for nearly two years--filing numerous motions and expending considerable court resources in the process--without raising <u>any</u> Appointments Clause challenge.  He only raised the issue on the record on the first day of trial, three days after Mr. Carlin responded to Mr. Taylor's letters, which themselves were sent some twenty months after the Special Prosecutors were appointed.  To say that Mr. Donziger waited until the last possible minute would be a monumental understatement.  Even if Mr. Donziger's claim was meritorious--which, for the reasons below, it is not--his waiting until the waning moments of the eleventh hour to raise it would not entitle him to a judicial rescue before the clock strikes midnight.

## 2. **Supervision**

Next, Mr. Donziger takes issue with the Court's deeming "Mr. Carlin's email insufficient to establish the absence of supervision of the Special Prosecutor[s] by a principal officer."  (Dkt. no. 351 at 4.)  In Mr. Donziger's view, "Mr. Carlin's email declined Mr. Taylor's request to carry out the Department's constitutionally-required oversight, as the Special Prosecutor[s] knew."[12]  That email, Mr. Donziger suggests, shows

---

[12] (Dkt. no. 351 at 5.)  Mr. Donziger also points out that the Special Prosecutors, in their opposition to Mr. Donziger's <u>Arthrex</u>-based motion, "did not dispute that [Mr. Carlin's email]
(continued on following page)

14

that "[t]he problem is not just that the Department of Justice is not actively supervising all or particular decisions by the Special Prosecutor[s], but that the Department . . . viewed supervision requirements as categorically inapplicable to prosecution of a judicially initiated criminal contempt by a special prosecutor." (Id. at 5 (cleaned up).)  That argument fails for two reasons.

First, Mr. Carlin's email says nothing of the sort.  Again, that email simply states that "the Department declines to intervene in the federal-court initiated contempt proceedings." (Dkt. no. 303-1 at 1.)  Nothing more, nothing less.  That response was given in response to a specific request from Mr. Taylor:  That the Department "order a review of [Mr. Donziger's] prosecution and, if necessary direct the special prosecutor to seek an indefinite adjournment of the scheduled May 10, 2021 trial until the review can be completed."  (Dkt. no. 302-1 at

---

(continued from previous page)
meant that the Department was declining to supervise and direct [them]."  (Id. at 4.)  The Special Prosecutors did attempt to distinguish Arthrex on its facts in their opposition to Mr. Donziger's Appointments Clause motion.  (See dkt. no. 338 at 5.) But, again, the Court was not bound to accept the Special Prosecutors' interpretation of the applicable caselaw any more than it was required to credit Mr. Donziger's.  And, contrary to Mr. Donziger's claim, in no way whatsoever is the Special Prosecutors' attempt to distinguish Arthrex "a dispositive admission" that they were not "subject to supervision and direction prior to trial."  (Dkt. no. 361 at 3.)

15

21-22.)  The Court finds nothing constitutionally problematic with the Department's declining that invitation.[13]

And second, contrary to what Mr. Donziger asserts, a statutory limitation on oversight--<u>i.e.</u>, <u>a legal rule</u> formally limiting the power of the Executive Branch--is worlds apart from what Mr. Donziger has attempted to glean from between the lines of a two-sentence email.  As the Court has already recognized, "Rule 42 does not, in any way, limit the Attorney General's discretion to review the Special Prosecutors' decisions or remove them from their posts."[14]  That is as true now as it was when the Special Prosecutors were appointed.  In other words, from the outset of this case, the Special Prosecutors were subject to the Attorney General's control.  As a matter of law,

---

[13] It is worth noting, again, that Mr. Taylor did not, in either of his letters, (1) identify himself as Mr. Donziger's counsel or (2) indicate that he was writing on Mr. Donziger's or his defense counsel's behalf.  Nor had Mr. Taylor filed a notice of appearance in either this case or 11-CV-691.  Given those facts, it would hardly be surprising if the Department thought that it was simply responding to letters from an attorney interested in the case rather than a representative for Mr. Donziger.

[14] (Dkt. no. 346 at 148.)  Mr. Donziger asserts that "[t]he Court errs in looking in Rule 42 to see if it 'limits' oversight."  (Dkt. no. 361 at 6 n.2)  Mr. Donziger is correct that "Rule 42 does not address principal officer oversight at all."  (<u>Id.</u>)  But that's exactly the point.  <u>No legal rule</u> alters the Executive Branch baseline:  The President and the Attorney General have the constitutional authority to oversee line prosecutors like the Special Prosecutors.  (<u>See</u> dkt. no. 346 at 147-48.)

16

they were not "free agents" as Mr. Donziger claims.  There is nothing further to wring out of Mr. Carlin's message, which, of course, does nothing to alter the governing legal framework.

What, then, is Mr. Donziger left with?  At the absolute best, Mr. Carlin's email can suggest only that the Department has not, in fact, exercised close supervisory authority over the Special Prosecutors.[15]  As the Court has already made clear, however, that is wholly immaterial:

> Mr. Donziger's assertion that this prosecution is constitutionally infirm because the DOJ has not, in fact, actively supervised the Special Prosecutors is meritless.  As the Supreme Court made clear mere weeks ago, a superior officer "need not review every decision of" an inferior officer.  That is entirely sensible.  To require supervision by a principal officer of all decisions by line prosecutors would grind the DOJ to a screeching halt.  Instead, "what matters is that [a superior officer] <u>have the discretion</u> to review decisions" by the inferior officer.  In the Appointments Clause context, the standard is "cannot," not "did not."  As set forth above, Rule 42 does not, in any way, limit the Attorney General's discretion to review the Special Prosecutors' decisions or remove them from their posts.  The fact that the DOJ or USAO may not have supervised the Special Prosecutors to Mr. Donziger's satisfaction--or the possibility that DOJ's supervision is simply not visible to Mr. Donziger--is of no moment.

(Dkt. no. 346 at 147-48 (footnotes omitted).)  Mr. Donziger offers no legal authority to the contrary.

---

[15] Even that seems extremely unlikely given the fact that the Special Prosecutors worked with Department of Justice personnel in investigating this case and preparing for trial.

17

### III. Conclusion

In sum, as the Court already concluded in its Findings of Fact and Conclusions of Law, Mr. Donziger's Appointments Clause challenge is meritless. The Court will not vacate Mr. Donziger's conviction or order a new trial on that basis. Accordingly, Mr. Donziger's motion for a new trial [dkt. no. 351] is <u>DENIED</u>. The Clerk of the Court shall close the open motion. Mr. Donziger is reminded that any sentencing submissions on his behalf shall be filed no later than September 13, 2021.

**<u>SO ORDERED.</u>**

Dated:   August 23, 2021
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge