![Landesa logo]

1424 Fourth Ave., Suite 300     T: 206.528.5880
Seattle, WA 98101 USA           F: 206.528.5881

September 1, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007
Via ECF.

　　　　Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am a former attorney with Judge Kaplan's old firm, Paul, Weiss, and currently the
CEO of the international NGO, Landesa. I have worked as both a corporate and
human rights attorney for almost three decades. At Paul, Weiss, I represented
Citibank, AIG and others doing M&A work in Latin America, set up large investment
funds and worked closely with Ted Sorensen for a number of governments. As a
human rights attorney, I spent many years in Latin America, most of them
accompanying indigenous communities facing threats from oil and mining companies.

I met Steven Donziger 30 years ago at Harvard Law School. We both went to law
school to work as public interest lawyers, and in 1991, we traveled with a small team
of law and public health students/professors to Iraq in a unique effort to uncover the
real impacts of the Gulf War on civilians. Steven and I visited recently bombed areas
to interview grieving families and community leaders. I got to know Steven well on
that trip and was struck by his sense of outrage at the harm visited on these people and
his intense commitment to do something about it. He worked long hours on that cause,
with no financial or other interest, other than surfacing an injustice.

Two years later, Steven and I had another chance to work together. In 1993, we
traveled to the Ecuadorian Amazon to investigate the legacy of Texaco's decades of
unfettered dumping of contaminated wastes. Again, I witnessed Steven in action,
dropping everything to make the trip, and traveling to distant corners to get the real
story from victims themselves. I worked for eight years alongside Steven and the
communities affected by Texaco's crimes, having co-founded a human rights
organization based in NY and Ecuador and living in Ecuador from 1997-2001.

During that time, I had many opportunities to witness up close the way that Steven worked, the long odds that he was struggling against, and the flagrant legal and political abuses by corporate actors like Texaco. When we arrived in 1993, Texaco had recently left the country having never faced any legal sanction or lawsuit for the billions of gallons of toxic waste it dumped into a pristine environment and the thousands of lives harmed by its operations. No one seriously thought that a company as powerful as Texaco, with the full support of both US and Ecuadorian governments, could be successfully held to account. Steven took that challenge on, spending years traipsing through the Amazon to document the damage and build trust with local communities, engaging hundreds of court proceedings from New York to Quito to Lago Agrio, grappling with the full array of political, financial, and personal challenges that Texaco and later Chevron, with their billion-dollar war chest, threw at him, and now suffering legal sanctions. From the beginning, Steven was told it was a fool's errand – poor communities are no match for the likes of Chevron-Texaco; sadly, the cynics will now feel vindicated given all it has wrought for Steven.

I know Steven well and I can say a few things with great assurance: for his entire legal career, his commitment to doing the right thing has been unwavering, he has never been motivated by financial gain, he loves his family and friends in the US and has never presented any flight risk. After all the years of good and under-paid work that he has done, I am amazed and outraged that he has wound up serving two years in virtual lockdown and now faces the prospect of six more months in jail, while the leaders of Texaco and Chevron and the hundreds of lawyers and professionals they have deployed to cover up unquestionable crimes against Amazon communities, enjoy complete impunity. The imbalance is astonishing and sentencing Steve to additional jail time would only exacerbate this remarkable travesty of justice. I implore you to do the right thing and release him for time served.

Thank you for your consideration.

Sincerely,

Chris Jochnick



Adlai J.J. Small<br>
Direct Dial: 973.232.0892<br>
asmall@spiroharrison.com

September 7, 2021

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    ***United States v. Donziger*, No. 19-cr-561 (LAP), 11-civ-691 (LAK)**

Dear Judge Preska:

I am an attorney in private practice at a small firm in Short Hills, New Jersey.  After clerking for Associate Justice Jaynee LaVecchia of the New Jersey Supreme Court, I have spent the last 20 years practicing in New York and New Jersey at firms such as Latham & Watkins, Cadwalader, Wickersham & Taft and Patton Boggs (now Squire Patton Boggs).  I primarily practice civil litigation (plaintiff and defense side).  I have served as an adjunct professor at Seton Hall University of Law and am the volunteer legal director for the New Jersey Parents' Caucus, which is a non-profit that focuses on juvenile justice reforms and advocacy.

I have known Steven for about ten years since my prior law firm began working on the Ecuador litigation in 2010.  Before joining the case, the firm did extensive research about the pollution in Ecuador and came to understand that the case was real.  No one has or can dispute the fact that there is still massive pollution leftover from Texaco's (now Chevron) oil drilling operations.  I worked very closely with Steven for about three years until Chevron forced us out of the case.  Throughout my time working with Steven, I was impressed and inspired by the way he was able to handle the work of managing the bemouth of issues that he had to deal with as the general of this massive multi-front litigation.   At times I would speak to Steven several times a day about a myriad of issues both legal and logistical.    Although it was nearly impossible to keep up with the constant barrage of maneuvers from Chevron and its army of well-funded attorneys, Steven always kept his head and acted with the upmost integrity and honesty.  Miraculously, Steven has been working on this case for nearly his entire legal career.   That

www.spiroharrison.com

NEW YORK        SHORT HILLS        RED BANK

May 3, 2021
Page 2 of 2

alone is incredible and certainly speaks to Steven's commitment to the people of Ecuador.  At this point it is beyond clear that Steven is not doing this for the money.

Although I have always been impressed by Steven's work ethic, honesty and leadership, the thing I admire most about Steven is his heart.   I have had a working relationship with Steven, but we have also become close friends.   He has visited my home with his family and met my children.  Steven is a truly kind, sensitive and warm person.

I have been to Ecuador on a few occasions with Steven.  I have seen the true devastation and pollution.  I have also seen Steven's admirable commitment to this case.  I have watched stand up to a Company richer than many countries (who have a stated goal to "destroy" Steven) and somehow not lose hope.  I have seen him sit at home for over two years at great personal costs to him and his family.   There is no need for further bloodletting,   I respectfully request that this Court sentence Steven to time-served.

Thank you for your consideration

Respectfully yours,

s/ Adlai J.J. Small
Adlai J.J. Small



September 8, 2021

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Preska,

I write to you as the Executive Director of Democracy for the Arab World Now, the organization founded by Saudi journalist Jamal Khashoggi prior to his murder. I served previously as Executive Director of Human Rights Watch's Middle East and North Africa Division and have serve as a lawyer with 30 years of work as a human rights activist and foreign policy expert. I serve on the boards of the Artistic Freedom Initiative, the Freedom Initiative, ALQST for Human Rights, the International Centre of Justice for Palestinians, and Sinai Human Rights Foundation. I am a member of the Council on Foreign Relations and appear regularly in international and regional media. I have also worked at international law firm Cleary, Gottlieb, Steen & Hamilton and global investment bank Goldman Sachs & Co.

I have known Steven Donziger for over 30 years, since we met as classmates at Harvard Law School. Over the course of this time, I have known Steven to be an honorable, committed, fearless, and passionate human rights activist whose sole mission has been to help victims of human rights abuses around the world secure a measure of justice using the tools of law and advocacy. I have learned a great deal from Steven over these years and look up to him as a champion and leader in the global human rights movement.

Steven and I first worked together in the wake of the first Gulf War in Iraq in 1991, investigating the impact of the US-led war on Iraqi civilians while we were still law students. Steven played a leading role in devising our strategy and advocacy to carry out this investigative mission in Iraq. The media coverage of our findings and subsequent investigations on the war's cost to Iraqi civilians led to significant reforms in US war strategy of bombing electrical facilities and other infrastructure vital to human survival, as well as the UN imposed sanctions on Iraq. This mission was dangerous and controversial; all of us put our lives on the line to draw attention to the disastrous consequences of this war. Steven's bravery and leadership in our work was emblematic of his bravery and leadership over many decades of human rights activism that have since followed.

Steven also played a key role in the investigations of Texaco/Chevron's operations in Ecuador, which have caused so much harm to the environment and health of people there. I was involved in that work in light of my role as General Counsel to the Center for Economic and Social Rights, which initiated the research with Steven's partnership. What moves me most about Steven's work on behalf of the indigenous population of Ecuador is his tireless commitment to justice for his clients, notwithstanding the tremendous personal sacrifices he has made in staying involved in this case; his sensitivity to his highest ethical commitment to their cause, is, for me, the highest calling of any lawyer. What impresses me most is Steven's brilliant legal and strategic mind, bringing attention to the harms suffered by the people in Ecuador, who would otherwise have been ignored and forgotten. Steven's singular motivation has always been a desire to see justice done for his clients.

I pray that this court at minimum will grant Steven his freedom by sentencing him to the time he has already served. Steven has suffered enough.

Best regards,

*Sarah Leah Whitson*

Sarah Leah Whitson