

**Icahn
School of
Medicine at
Mount
Sinai**

Graduate Program in Public Health

One Gustave L. Levy Place
Box 1403
New York, NY 10029-6574

Tel: (212) 824-7292
Fax: (212) 824-2327

September 15, 2021

Dear Judge Preska,

My name is Dr. Nils Hennig, and I am writing this letter in support of Steven Donziger.

I am the Director of the Graduate Program in Public Health at the Icahn School of Medicine at Mount Sinai, Associate Professor of Pediatrics, Environmental Medicine and Public Health, and Health System Design and Global Health. I have worked for the past 20 years as physician, medical director, research coordinator, advisor, and medical consultant for Medicines Sans Frontieres (Doctors Without Borders), Medicins du Monde (Doctors of the World), the Fogarty International Center of the National Institute of Health, and other international organizations in humanitarian emergencies, fact finding missions, development, and research. I am an attending at the Pediatric HIV/AIDS Clinic at the Mount Sinai Hospital.

I have known Steven Donziger for over 15 years.   I got introduced to Steven while doing humanitarian work and research in South America in 2006. Steven is one of the most trustworthy, upstanding and responsible persons I know.

At Mount Sinai I teach an Introduction to Global Health course, introducing role models in global public health work, personalities who combine a dedication to ethics and academic rigor with a commitment to easing the suffering of neglected populations and people. Steven's annual lecture and discussion with the students is a highlight of the course. Over the years the students have commented on his "*outstanding honesty and integrity*", his "*commitment to improve the human condition*", and stated how they have been "*touched by his genuineness, his indomitable spirit, and his heart*". Other comments included: "*he is truly kind and generous*" and "*he never evaded any tough questions or sugarcoated his difficult situation*". These students' comments do not surprise me in the least.  This is the Steven Donziger that I know and respect.  I count myself very lucky to have a colleague and friend like him.  He is a compassionate man of character and honesty.

Thank you for your kind attention, and please let me know if you need anything further from me.

Sincerely,

Nils Hennig, MD, PhD, MPH
Director, Graduate Program in Public Health
Associate Professor, Pediatric Infectious Diseases, Environmental Medicine and Public Health, Health System Design and Global Health
Icahn School of Medicine at Mount Sinai, One Gustave L. Levy Place, Box 1403, New York, NY 10029



**Rob Moodie**
*Professor of Public Health*
*Deputy Head of School*

THE UNIVERSITY OF
MELBOURNE

September 15, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007
Via ECF.

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska

Please allow me to introduce myself. I am a medical doctor and Professor and Deputy Head of School at the Melbourne School of Population and Global Health and Professor of Public Health at the Kamuzu University of Health Sciences in Malawi. I worked for many years in aboriginal health care in Central Australia, refugee health care in the Sudan and HIV/AIDS programs for the World Health Organization and for the United Nations. In this latter work I was the inaugural Director of Country Programs for the joint UN Program on AIDS (UNAIDS) where our job was to get this new program up and running in more than 50 countries almost overnight. I have been really impressed with the global impact of President George W Bush's PEPFAR program for AIDS treatments. It has also played a major role in Malawi where I have been working for the last six years (until Covid).

HIV/AIDS has shone a spotlight on the relationship between health and human rights, so I have had the privilege of working with lawyers and ethicists to find pathways to reducing stigma and discrimination, which in turn led to much longer and healthier lives for people with HIV/AIDS.

I completed my public health training at Harvard University and met Steven Donziger as part of the Harvard Study Group. It was a team of doctors and lawyers who travelled to Iraq immediately after the First Gulf War in 1991 to ascertain the impact of the sanctions and the war on the health of the innocent victims – mothers and children. Our work was published in the New England Journal of Medicine and was adopted by the United Nations and led to the implementation of the Oil for Food program to help Iraqi mothers and children.

Steven was a key thinker and leader in the Harvard Study Group, as he was instrumental in us being able to develop an interdisciplinary medical, legal and ethical framework to our research and was invaluable in helping to develop clear evidence-based messaging about the plight of Iraqi mothers and their children. What was obvious from the get-go was his compassion. The way Steven worked for many, many months without acknowledgement or remuneration demonstrated how much he really cared about people he'd never met before, who were far away from his day-to-day life, but people who were really suffering.

I have watched Steven's work since then and have greatly admired his commitment to the women, children and families in Ecuador.  My admiration was further strengthened when our son, then a law student, visited the program in Ecuador in 2011. He reported how much time and effort Steven was putting in, how much he had to fight - again for a group of people far away from his own existence – for people who were suffering. And as a doctor I realise how little we can actually do in cases like the dumping of deadly waste in Ecuador and elsewhere to prevent the disastrous levels of premature disease, disability and death that ensue. It has to be lawyers like Steve, who have deep levels of empathy and compassion who can step up to help societies manage and prevent these conflicts.

Steven has a very strong value system, an unbending sense about what is right and just – which he has obviously paid for by virtue of his house arrest over the last two years. It would be a travesty if he were to pay for his very human passion and compassion yet again.

I greatly urge you release Steven for time served.

Thank you very much for considering my entreaty.


Yours Sincerely

*Rob Moodie*

Rob Moodie AM
Deputy Head and Professor of Public Health
Melbourne School of Population and Global Health



# COLLEGE OF LETTERS AND SCIENCE

**Department of Anthropology**

Honorable Loretta A. Preska
United States District Court Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska,

Please accept my letter of utmost support of Steven Donziger. I am a professor in the Department of Anthropology at the University of California, Davis, where I have been a faculty member over the past twenty-four years. Over the past thirty years, my research has examined the impact of oil extraction on Indigenous peoples in Ecuador and beyond. Since 1990, I have conducted field-based research in the Amazon region of Ecuador that examines the devastating effect of oil operations on Indigenous and non-Indigenous peoples and their lands. Through this research, I first met Steven in the early 1990s and we have stayed in touch ever since.

My research in Ecuador has culminated in two books and numerous academic articles. My first project, published in *Crude Chronicles* (Duke University Press 2004), examines the fierce resistance to imminent oil extraction in Indigenous territory in the central Amazonian region. This Indigenous opposition was spurred by the ecological and social turmoil that Texaco's oil operations to the north had created. My second research project, to be published in *The Small Matter of Suing Chevron* (Duke University Press 2022), examines the legal saga triggered by Texaco's reckless operations in the northern Amazonian region. This research follows the lawsuit against Chevron in Ecuador, Chevron's countersuit in the United States, and Chevron's international arbitration filed in the Netherlands. Untangling this web of legal proceedings, demanded a range of research methods on my part—the review of reams of court documents (claims, submissions, opinions, court transcripts, and judgments, etc.), extensive interviews with lawyers and legal experts, a deep dive into the chemistry of hydrocarbons and toxicity, long interviews with scientists and remediation experts, and decades of engaging with the Amazonian plaintiffs and experiencing first-hand the harm that oil contamination has inflicted on their lives.[1]

---

[1] Simply to disclose, I have also co-coordinated a major United Nations project analyzing the relation between the extractive industry and Indigenous rights in eight countries around the world (*The Politics of Resource Extraction* [PalgraveMacmillan 2012]).

Tel: 530-752-8585
One Shields Avenue, Davis, CA 95616
lettersandscience.ucdavis.edu;   https://anthropology.ucdavis.edu/people/smsawyer

I first met Steven in 1993 while conducting my first research project approximately 200 miles south of Texaco's former oil concession. At the time, Steven was part of the US legal team that had filed a lawsuit in your court against Texaco, Inc. for its systematic dumping of industrial wastes into Amazonian water and soil systems (*Aguinda et al. v. Texaco Inc.*, 93 Civ. 7527 (VLB) DI 1). I met Steven briefly at a meeting in the Ecuadorian National Congress between the US legal team, members of congress, and a group of Ecuadorian Indigenous rights advocates with whom I was collaborating. At that time, it was apparent that Steven was deeply disturbed by the destruction that Texaco's legacy of contamination had wrought on the people of the northern Ecuadorian Amazon.

It was not until 2003, however, when the US lawsuit against Texaco was refiled in Ecuador against the Chevron Corporation (*Aguinda v. ChevronTexaco Corp., 002-2003-P-CSJNL* [2011-63-1]) that I came to truly know Steven. In November 2003, I was one of a handful of individuals who traveled to Ecuador to observe the first months of the litigation against Chevron. As part of the legal team, Steven helped direct the litigation process. He worked with the Ecuadorian lawyers to develop arguments; he prepared individuals who provided court testimony; and he coordinated communications with the national and international press. Particularly striking was Steven's facility to effectively communicate in diverse registers with diverse audiences. From the beginning, Steven empathically connected with hundreds of Indigenous and non-Indigenous plaintiffs. Similarly, Steven's clear mastery of the legal record garnered through discovery in the US court was fundamental to formulating legal arguments under Ecuadorian law. Not only did Steven advise the original Ecuadorian legal team, but he also developed trusting relations with a human rights advocate who in time would come to head the team as its composition changed. Lastly, Steven had a remarkable skill for addressing journalists of all stripes and for generating news coverage of this extraordinary lawsuit. Through his deep commitment, Steven honed these unique qualities and capacities over the subsequent twenty years.

As the Ecuadorian legal process extended for seven-plus years, Steven was the only lawyer from the US team who followed the litigation through the end. Although my time in Ecuador never again coincided with Steven's, I can attest to how his dedication and commitment inspired numerous people involved in the litigation. To begin, the warmth and trust Steven developed over the years with the plaintiffs' groups was singular. Indigenous and non-Indigenous plaintiffs alike fondly related stories to me of Steven visiting their homes, listening to their experiences of despair, and lifting them with his smile, humor, and bear-hug embrace. Just as importantly, the intense comraderies Steven nurtured with the recomposed Ecuadorian legal team was extraordinary. Lawyers on that team have recounted to me stories of Steven's sharp strategizing intellect and quirky self-deprecating humor—the combination of which proved essential for building team cohesion and for withstanding the onslaught of Chevron's onerous legal filings and tactical intimidations. In

addition, a number of highly respected scientific experts have remarked to me on Steven's diligence in learning the science of contamination and his insistence on its precision in the Ecuador legal proceedings.

Because my own research on the lawsuit against Chevron engage legal and scientific debates over toxicity, epidemiology, and contract law, I extensively analyzed court documents. Although public, the legal case file for the Chevron litigation was not easily accessible outside Ecuador. Consequently, I recurrently contacted Steven over the years to ask his opinion on particular court processes or to ask if he could track down specific documents for me. Without exceptions, Steven generously and openly engaged my concerns and located obscure documents. Furthermore, he did so open-heartedly and with interest. As Steven well knows, my research is not a piece of advocacy on behalf of the plaintiffs. And yet not once did Steven hold back or become defensive around any of my queries. This speaks volumes to Steven's own integrity and deep sense of purpose in seeking to uphold the rights of desperately marginalized Indigenous peoples and poor farmers contending with contaminated lives. The profound dedication that Steven's journey has demanded in serving as advocate for racially, economically, and politically disenfranchised plaintiffs over nearly thirty years is beyond admirable. Furthermore, it has been anything but self-serving. It has come at a great cost to him and his family.

Despite our work being fundamentally different, Steven and I have become friends over the years. We do not see each other often. However, we do try to meet every time I am in New York or he is in San Francisco. I have visited him at his home with my daughter who is just a bit older than Steven's son. Whether immersed in work or family, Steven's abiding qualities hold true: his warmth, attentiveness, intelligence, humor, and big-heartedness. It is clear that Steven is a loving husband and father. He is blessed, in turn, to have such a beautiful family and their unshakable support through these years of legal assault.

In closing, I unswervingly affirm my deep respect for Steven, for his honorable principles, his work ethic, his selfless dedication, and his compassionate advocacy for the rights of those living in the midst of oil contamination. That Steven has served over two years in home detention is deeply distressing. And that he now faces a possible further jail sentence is unjust. I appeal to your sense of fairness, your Honor, to determine that Steven Donziger has already served all necessary time.

Thank you for your attention and kind consideration.
Sincerely,

Suzana Sawyer, Professor, Department of Anthropology

# Rex Weyler

September 7, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007
Via ECF.

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am an author, journalist, and educator (1973-present), an American citizen living and working in Canada. As a journalist, I have broadcast and written work with the CBC, New York Times, National Geographic, Vancouver Sun, The Liberal (UK), The Independent (UK), and other international media. I have published books on health, on the Indigenous history of the western hemisphere, early middle-eastern history, ecological history, and other topics, and have received international writing awards. I am a co-founder of Greenpeace International, the founder of a Canadian educational institute, and I teach at elementary and high-school levels in my community in British Columbia, Canada. My wife and I are members of the British Columbia Foster Parents Association and have worked with child trauma victims and young people with learning disabilities, legal problems, and other challenges.

As a journalist, in 2015, I began investigating the Texaco/Chevron oil pollution case in Ecuador. Through this investigation, I met and first interviewed Steven Donziger in 2016 in Canada. In 2017 I joined a Canadian delegation of Indigenous leaders, who went to Ecuador to investigate the case. There I met with Steven Donziger again, as he worked in his role as attorney for the Frente de Defensa de la Amazonía (FDA, "Amazon Defense Coalition"),  plaintiffs in the damages case against Chevron Corporation. I have since interviewed Mr. Donziger in New York, and have met his wife Laura and his son Matthew.

In Ecuador I met the Indigenous and farming communities affected by the Texaco/Chevron oil pollution, and I observed the respect, admiration, and trust that those people have for Mr. Donziger. Plaintiffs and their Ecuadorian lawyers informed me that Mr. Donziger had worked relentlessly and generously on their behalf for 24 years, since 1993. He has now worked on their behalf for 32 years.

I met families who have suffered the loss of family from cancers and birth defects linked to the Texaco/Chevron pollution, and who, to date, have received no compensation or help from Chevron, in spite of winning their lawsuit against the company in Ecuador, a jurisdiction that Chevron chose, and whose judicial system and decisions Chevron promised to honour.

I met representatives of the plaintiffs, the FDA, The Woman's Federation of Sucumbios Province, and the The Federation of Farmers of Orellana Province, all of whom held Mr. Donziger in the highest regard for his integrity, legal expertise, and tireless work ethic.

[R. Weyler to Hon. L. A. Preska, 2021 .. page 2)

My wife and I have hosted Mr. Donziger in our home, where I was able to conduct extensive interviews with him. I have read the Ecuadorian court transcripts, including the reports of 54 scientific site inspections of Chevron wells and oil production facilities, which found oil contamination in violation of applicable laws and legal norms at every single site inspected. I have read the Supreme Court of Ecuador Decision: NATIONAL COURT OF JUSTICE, Opinion by Dr. Wilson Andino Reinoso; reviewed by National Judges, in summary verbal proceeding No. 174-2012, November 12, 2013.

I have read the medical impact reports from Dr. Miguel San Sebastián; Anna Karin Hurtig; Inter-American Commission on Human Rights, Organization of American States; and other independent reports, all of which link severe medical impacts on Ecuador's communities to the Texaco/Chevron oil contamination.

I have come to know and respect Mr. Donziger as a dedicated lawyer and advocate for his clients, as a man of integrity and of the highest ethical standards. His handling of this case has been conscientious, equitable, and honourable.

Having investigated this case thoroughly, over the last five years, I believe that the Court should sentence Mr. Donziger to the time already served under house arrest, now two years.

The alleged offense -- failing to surrender his phone and computer record of contact with his clients -- appears as an act permitted under US law, as necessary for the protection of his clients' rights to a safe attorney-client relationship.

The only known serious accusations against Mr. Donziger were made by a man (A. Guerra), paid by Chevron, coached by Chevron, who has admitted lying, and whose story has been proven false by forensic evidence, based on a review of the Ecuadorian court's computers.

As a journalist and a U.S. citizen, I am horrified by Chevron's apparent deceit before and influence in the U.S. justice system, in an apparent attempt to avoid paying a legal, impartial, and well evinced court judgment in Ecuador, reviewed and confirmed by the highest court in Ecuador.

Chevron's persecution of Mr. Donziger appears shameful, U.S. courts should distance themselves from this campaign to "demonize" (Chevron's word) Mr. Donziger, and I urge you to make the honourable decision and limit Mr. Donziger's sentence to the time he has already served.

Thank you for your consideration.

Rex Weyler

Box 446, 822 Austin Drive, Mansons Landing, BC, V0P 1K0, Canada
rexweyler1@gmail.com     250-935-0005