# CUTI HECKER WANG LLP

305 BROADWAY, SUITE 607
NEW YORK, NEW YORK 10007

JOHN R. CUTI
212.620.2601 TEL
212.620.2611 FAX

JCUTI@CHWLLP.COM

September 17, 2021

**By ECF**

Honorable Loretta A. Preska
United States District Judge
United States District Court
  Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *U.S. v. Steven Donziger*, 19 Cr. 561 (LAP)

Dear Judge Preska:

I write to urge that you impose a non-jail sentence on Steven Donziger on the misdemeanor charges for which you found him guilty.

I have known Steve since May 1990, when we met at my law school graduation (he was there to celebrate with a mutual friend). After Steve graduated from Harvard Law School in 1991, he moved to Washington, D.C. and began his legal career at the Public Defender Service, one of the country's preeminent public defender offices. I was also a public defender in the early 1990s, and Steve and I stayed in touch through mutual friends who were my colleagues at the Neighborhood Defender Service of Harlem.

In the mid-1990s, Steve moved to New York City. He had just edited *The Real War on Crime*, a book about criminal justice issues that many in my professional circle were discussing. Steve and I connected again, bonding over our love of the law, politics, cities, wine, golf, college sports, and restaurants. When I was previously married, Steve spent several weeks a summer staying and visiting with my ex-wife and me in East Hampton and Maine. We saw each other often. He was always gracious, responsible, and a joy to be with.

Steve is one of my dearest friends. He was at my father's funeral in Huntington; I was at his mother's memorial service at Riverside Memorial Chapel. He and his wife Laura were at my wedding; my wife and I were at theirs. The four of us traditionally have celebrated New Year's Eve together, either in their apartment or ours. His son is almost exactly one year older than mine. One of the highlights of my son's young years was tackling "Big Steve" when playing football on the beach. I celebrated my 50th birthday with a trip with only Steve, my brother, and another friend. My brother could tell you a dozen Big Steve golf stories. Steve and I call each other brother. I know he will always be a loyal and true friend to me and my family.

Steve is as committed and passionate an advocate for the oppressed, abused, and disadvantaged as any lawyer I know. I have never represented Steve, and I do not profess to know the underlying facts. But I submit that whatever violations of civil discovery orders he may have committed were undertaken in an earnest belief that he was protecting his clients' interests. I can accept that Steve was too aggressive and short-sighted, or even self-absorbed — putting his own sense of righteousness above Judge Kaplan's dictates. Yet, the friend I have known for decades – an accomplished lawyer who spent his entire career devoting himself to fighting for justice and promoting the rule of law – would not venally violate the law.

Steve and Laura were staying with us at our beach home a week or so before he was charged and detained. We have seen him a few times at his apartment since then, and I have seen him in the courthouse. The home confinement he has endured has of course isolated Steve, and strictly limited his liberty. It also has shattered any sense of a normal life for Laura, their son, and their family.

Steve can no doubt survive a few months in jail. But I respectfully submit that jailing him is not necessary to achieve the central purposes for which the law justifies punishment—retribution and deterrence. Those goals already have been achieved by the imposition of home confinement for such an extended period. What lawyer wouldn't think twice before intentionally violating a discovery order when she knows the consequence might be more than two years of wearing an ankle bracelet, confined to her apartment, prohibited from going to family holiday celebrations? As regards retribution, I submit that Steve already has been amply punished. He has been disbarred. He has been publicly humiliated. He has had to explain to his son for more than two years why he cannot do the things a father does with a teenage son. He will never get those years back.

I always have known my dear friend Steve to be honest, direct, and principled. Still, he soon will stand before the Court, having been found guilty of criminal contempt, for you to render judgment. Because I believe that he and Laura and their son have suffered enough, I hope Your Honor will spare him a jail sentence.

Respectfully,

John R. Cuti



# Water Protector Legal Collective

PO Box 37065, Albuquerque, NM 87176 | (701) 566-9108 | waterprotectorlegal.org

September 15, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007

**Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)**

Dear Judge Preska,

On behalf of the Water Protector Legal Collective ("WPLC"), an Indigenous-led legal nonprofit organization dedicated to providing support and advocacy for Indigenous peoples, the Earth, and climate justice movements, we write today in support of Mr. Steven Donziger in advance of his sentencing hearing in the above matter.

Around the world, frontline attorneys and human rights defenders working to support Indigenous and rural communities most impacted by environmental degradation and extractive industry, often face great personal risk and persecution for that work. In 2020, 331 human rights defenders were killed and 69% of those killed were working on Land, Indigenous Rights, and Environmental rights. In each of those places, the law has also been weaponized against them while corporations' actions continue to lie in impunity.

In this case, as a result of his work on behalf of 30,000 Indigenous peoples and rural *campesinos* seeking accountability from oil giant Chevron for the toxic pollution in the Ecuadorian Amazon, Steven Donziger has faced enormous personal and professional cost, nothing short of his freedom—having served over two years of pretrial home detention—his livelihood, and his ability to continue to serve the communities at the heart of the underlying case. On the other hand, Chevron, with a net worth of over $196 billion dollars and ranked 27 in Fortune 500 companies, has not paid a dime of the $19 billion judgment that was reduced to $9.5 billion by the Ecuadorian Supreme Court.

Mr. Donziger has shown unwavering heart and commitment to the communities he has worked with for decades in the face of seemingly insurmountable odds. By his sentencing, Mr. Donziger

will have served over 780 days of home detention for a misdemeanor charge that carries a maximum sentence of six months and the longest sentence imposed in New York is 90 days home detention. The great personal costs Mr. Donziger has faced include deprivation of years of tranquility and family experiences alongside his wife and son, loss of income, and the loss of his ability to continue his important work on behalf of those most impacted by Chevron.

The decision that lies before you is not just about Mr. Donziger—the sentencing of Mr. Donziger will have a very real effect on Indigenous peoples and frontline attorneys working in environmental justice, human rights, and corporate accountability by setting an important precedent. Already, the prosecution of Mr. Donziger for criminal contempt charges stemming from civil contempt charges issued by Judge Kaplan, the assignment of a private prosecutor, and years of retaliatory litigation by Chevron, has created a chilling effect for those that would seek accountability from such corporations. Your sentencing decision of Mr. Donziger will thus be important to Indigenous peoples and frontline defenders around the world. As such, we respectfully ask you to consider the extraordinary effects of your decision, and consider Mr. Donizger's years under home detention as sufficient time served.

Sincerely,

Natali Segovia, Esq.
Legal Director & Staff Attorney
Water Protector Legal Collective

*Mni Wiconi*. Water is Life.

# COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

INSTITUTE FOR THE STUDY OF HUMAN RIGHTS

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007
Via ECF.                                                September 12, 2021

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am a fellow jurist. Before joining Columbia University in 2011, I was a United Nations official for 31 years, 22 in the office of human rights and an additional 8 as Chief of the Secretariat of the UN Permanent Forum on Indigenous Issues, the highest international body in this field. I have been involved in indigenous peoples' rights in various capacities since 1981, and continue to do this work now both as a professor and scholar and as Director of the Indigenous Peoples' Rights Program at Columbia's Institute for the Study of Human Rights. During the past decades, I have interfaced and dialogued with governments, intergovernmental agencies, indigenous peoples, non-governmental organizations and the broader civil society, including corporations from around the world, pursuing the implementation of laws and policies that would bring us closer to more equal and just societies.

It is out of a sense of deep moral duty and respect for the high calling of the judiciary that I am compelled to write to you today regarding Steven Donziger's situation.    I do not know Mr Donziger personally, but his good name and the case he has defended in the Ecuadoran Amazon have been known to me--as they have to many others--for some years. In addition, indigenous leaders and legal scholars have spoken to me about Mr Donziger.

The case of Texaco/Chevron in the Ecuadoran Amazon has become famous and continues to be followed closely in the professional, legal, and human rights world I have worked in. In 2018 I organized at Columbia University's Seminar on Indigenous Studies a session to analyze the case in detail, with the participation of other interested jurists and academics. A few months ago I was approached by a prominent indigenous leader and lawyer in Canada, a former member of the UN Permanent Forum on Indigenous Issues, whom I have known for decades, who expressed extreme concern about the case of Mr Donziger and asked about ways in which the United Nations system might get involved. The matter is widely perceived as a gross injustice to a fellow jurist and human rights defender, a person of principle essentially facing reprisals for daring to take on a powerful corporation in defense of poor peasants and indigenous communities. At the time I was consulted, I considered the various international human rights procedures available for the case, according to international law standards under which the USA is bound. Those mechanisms include the UN Human Rights Council's Working Group on

91 Claremont Ave, 7th Floor   Mail Code 3365   New York NY 10027   Tel 212-854-2479   ishr@columbia.edu

# COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

### INSTITUTE FOR THE STUDY OF HUMAN RIGHTS

Arbitrary Detention, the Special Rapporteur on the Situation of Human Rights Defenders and the Working Group on Human Rights and Transnational Corporations and Other Business Enterprises. In other words, there are various international responses that the intergovernmental system has established to protect the human rights of individuals suffering harm in their countries, especially due to powerful corporations which, as so often, seek to criminalize their human rights work. That is flagrantly the case here.

Perhaps this is the most crucial point I would like to bring to your attention.  The human rights community in the United States and around the world is aware of, and deeply concerned by, the common practice by which wealthy and politically influential corporations tend to vilify and criminalize individuals struggling to defend environmental and land rights in areas where these corporations feel their interests are threatened. As authoritative reports attest, many of these individuals have been murdered. The organization Global Witness, for example, has documented that about two thirds of those murdered annually are indigenous and environmental rights defenders. One recent example is Berta Caceres, a Lenca indigenous woman, co-founder and coordinator of the Council of Popular and Indigenous Organizations of Honduras, an environmental and indigenous rights advocate; she was assassinated in 2016. If you desire further information, the story can be googled.

I have myself facilitated the protection of courageous advocates from various countries whose lives have been threatened for similar reasons. It is now too well understood that unfortunately, people who raise their voices to defend poor indigenous and peasant communities against the activities of big corporations threatening their lives, lands and the environment are themselves risking a lot, even when, like Mr Donziger, they are attorneys. Such people deserve highest respect as human beings and professionals, because they pursue these matters out of principle, most of the time doing volunteer work and taking tremendous risks for their personal well being and that of their families. In the eyes of the human rights community, there is no doubt that this is the framework in which Mr Donziger's case deserves to be considered.

To emphasize the point I just made, the problem of attacks and criminalization of indigenous rights defenders is now central in international human rights work and has been described as a global crisis. In 2018 it was the subject of a seminal study presented to the UN General Assembly by the Special Rapporteur on the Rights of Indigenous Peoples (UN Doc. A/HRC/39/17). The study pointed out that some of the strategies employed are threats and intimidation, social smearing campaigns, character assassination, travel bans and insidious harassment in the form of criminal charges which are often nebulous, grossly inflated or fictitious. . It is regrettable for our societies that various corporations, with their virtually unlimited financial resources and legal teams, choose to overwhelm public systems and processes of the judiciary in order to disempower those who defend the poorest of the poor, the most marginalized and disempowered, as indigenous and peasant communities often are.

Those of us who believe in the rule of law, like the human rights community, can only deplore situations, like Mr Donziger's, in which the law is flagrantly being abused, and therefore discredited. Mr Donziger was already risking his personal safety when he made himself a target in a region where there is so much violence. It seems a terrible irony that instead of receiving moral accolades for his courage, he has become a martyr of a legal process that has unfairly affected his freedom of movement, his right to a fair trial, due process and other civil rights, in

91 Claremont Ave, 7th Floor   Mail Code 3365   New York  NY  10027   Tel 212-854-2479   ishr@columbia.edu

# COLUMBIA UNIVERSITY
### IN THE CITY OF NEW YORK

##### INSTITUTE FOR THE STUDY OF HUMAN RIGHTS

contravention to the International Covenant on Civil and Political Rights that the United States has ratified. The USA has already suffered shame internationally by its part in this case. To let the injustice continue would be to bring further disrepute on American legal institutions. If a stop is not made here and now, the verdict of history will be severe.

While the eyes of all of us in the human rights community are turned to the date of October 1st, the sentencing date for Mr Donziger, I am taking the liberty to appeal to you, Your Honor, to consider the context and totality of circumstances that have been crushing a fellow human being and to release him for time served.

Sincerely,

Sincerely,

Elsa Stamatopoulou

*Columbia University*
*Director,*
Indigenous Peoples' Rights Program,
Institute for the Study of Human Rights
*Adjunct Professor,*
Center for the Study of Ethnicity and Race
& Department of Anthropology

91 Claremont Ave, 7th Floor   Mail Code 3365   New York NY 10027   Tel 212-854-2479   ishr@columbia.edu



**INTERNATIONAL**
**RIGHTS**
**ADVOCATES**

*Together We Can Defeat Giants*

September 10, 2021

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

Re: *United States v. Donziger,* No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am writing on behalf of Steven Donziger to request that you sentence him to time served. I have been a lawyer for 39 years and have specialized in human rights litigation for the last 30 years. I have represented people all over the world who have been victims of human rights violations at the hands of multinational companies that act lawlessly when they operate in countries that do not observe the rule of law or are susceptible to corruption. For example, I represent former child slaves who were trafficked from Mali and forced to harvest cocoa in Cote D'Ivoire for Nestle, Cargill, Mars, Hershey, and other major international chocolate producers. There is a small group of lawyers in the United States who have devoted their careers, if not their lives, to trying to help powerless people, usually living in remote areas of the third world, fight back when large multinationals invade their communities and wreak havoc on the people and the environment and then refuse to accept responsibility. I proudly count Steven as a part of our community and I proudly count him as a friend.

Knowing how hard it is to investigate a case in a remote area among people whose lives have been devasted by foreign invaders, and knowing how hard it is to travel constantly, miss your family, raise money to take on the largest law firms in the world, and essentially work on a pro bono basis, I have nothing but admiration for Steven and what he has managed to accomplish. There is absolutely no dispute that the indigenous communities Steven represents in Ecuador have been devasted by the oil exploration done on their lands by Texaco, now Chevron. Steven first filed the case against Chevron in 1993, and has devoted his career and his life to work tirelessly on behalf of his clients. I have personally visited the oil-polluted areas of Ecuador on several occasions, and I have seen the devastation to what was once pristine rain forest, and the sickness the pollution brought

to the simple farmers who live there. In addition to serving as the lead lawyer in the complex litigation against Chevron, Steven brought this reality to the world and raised awareness globally of what happened to the indigenous people of Ecuador. I know many people who first learned of oil pollution issues and became interested in environmental issues because of Steven's work. I feel confident that Steven has made it harder for any oil company today or in the future to repeat the tragedy of Ecuador.

I feel certain that the final word of what really happened and who did what between Steven and Chevron in Ecuador has yet to be written, but there is no question of the good that Steven has done in the world. Please take this into account in your sentencing.

Terrence P. Collingsworth
Executive Director
621 Maryland Ave NE
Washington D.C. 20002  U.S.A
tc@iradvocates.org
1-202-543-5811 (office direct)

LOUIS F DEMATTEIS
PHOTOGRAPHER
1250 MISSOURI ST. #204
SAN FRANCISCO, CA 94107
(415) 730-8482


September 18, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York`

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska,

I first met Steven Donziger in Nicaragua in 1985 when he was 24 years old. At that time, he was working as a print journalist for United Press International and I was a freelance photojournalist working for Time and Newsweek Magazines and other publications. Later that year I was hired as a staff photographer by Reuters News Pictures and became their Nicaragua Bureau Chief. I was fortunate to work on many occasions with Steven as we covered the political and economic situation in Nicaragua as well as the devastating Contra war going on there at that time. Our work took us into the war zones where we literally put our lives on the line covering this important story. As a photojournalist, I have always worked to find and report the truth of any given situation. I found in Steven Donziger a colleague who shared my belief that our job as journalists is to find and report the truth.

Working with someone in a war zone creates a particular type of bond which is like no other. Colleagues working together in these conditions rely on one another for guidance and protection. I can say that when working with Steven under these conditions, I literally trusted him with my life and would do so again today. I believe that is one of the greatest compliments one human being can give to another.

I left Nicaragua to return to the U.S. in 1990 and have continued to have a friendly relationship with Steven since that time. I know his wonderful wife Laura and his loving son Matthew. I know Steven to be a loving husband and father. I believe him to be a man of the highest standing. I know that his two years of house arrest have been extremely difficult for him, but perhaps even more difficult for Laura and especially Matthew. I ask that you please consider the price Steven has already paid with his two years of house arrest, and that you do not sentence him to jail time but rather let him off now with time served.

Thank you very much for reading my letter and for giving careful consideration of my request that Steven not be sentenced to jail.


Sincerely,

*Louis F. Dematteis*

Louis F. Dematteis
Former Nicaragua and San Francisco Photo Bureau Chief
Reuters News Pictures