

**UNIVERSITY OF CALGARY**

**FACULTY OF LAW**

2500 University Drive NW
Calgary, AB, Canada T2N 1N4
law.ucalgary.ca

September 21, 2021

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street New York, NY 10007

Dear Judge Preska,

## Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

This is a joint letter to you from Calgary, Alberta Canada on behalf of myself and on behalf of my husband, Former National Chief of Canada, Phil Fontaine requesting that you exercise your discretion to sentence Steven Donziger to time under house arrest rather than a jail sentence.

Phil Fontaine is the past National Chief of First Nations in Canada, a position he held for 9 years making him the longest serving National Chief in Canadian history. He is the recipient of 18 honorary doctorates from both Canadian and American universities, a member of the Order of Canada and the Order of Manitoba, the highest distinctions their respective governments can confer on a citizen for their contributions to the country and to their province. In addition to his role as National Chief, he also served as Grand Chief for the province of Manitoba for four years and Chief in his own community for three terms. As a leader of his people, he achieved many successes in the areas of employment equity, alleviation of First Nation poverty, reconciliation and the resolution of longstanding land claims. He was instrumental in leading a team of negotiators to resolve Canada's largest and most damaging human rights violation, the residential school tragedy of which I will describe in more detail below.

I am an emeritus Professor of Law at the University of Calgary. I have been an academic lawyer for over 40 years and well a practicing lawyer for the past 20 years. I have the designation of Queen's Counsel, the designation law societies in Canada bestow on their members who are recognized as exemplifying the highest standards of the legal profession. I am also a Fellow of the Royal Society of Canada. The fellowship is the highest honor available to academics in the British Commonwealth. In addition, I have received the Governor General's Medal for advancing equality in Canada and both the Canadian Bar and the Alberta Bar Associations have given me Distinguished Service Awards. I have served as a Fulbright Fellow at Harvard University and a Visiting Professor of Law at the University of Chicago. I currently serve as the Canadian Co-Chair of the Raoul Wallenberg Center for Human Rights.

In addition to my teaching and law practice, I have spent many years working with judges, helping them identify and avoid unconscious biases in their judicial decision-making. I have done this work in Canada, Australia, Vietnam, New Zealand, India, Israel, South Africa and in the United States. One of my most rewarding achievements in the recent past was working with the National Chief as the Chief Negotiator for the First Nations of Canada in their achievement of the historic Indian Residential School Settlement Agreement, the largest settlement in Canadian history. The agreement was worth over 6 billion dollars and it addressed 150 years of systemic cultural genocide perpetrated on the indigenous peoples of Canada. The settlement was holistic, grounded in indigenous principles and included a Truth and Reconciliation Commission, a research center and archive, healing and education funds, public apologies from the Government of Canada and the Vatican as well

as personal injury damages for over 38,000 individuals who were physically, sexually and psychologically harmed in the schools and damages for loss of language and culture for approximately 100,000 individuals. I was given an indigenous name and ceremonial blankets and made an honorary member of two indigenous tribes as a result of these successes.

I mention my experiences with our indigenous clients because it this work that brought us in contact with Steven Donziger. We have had many conversations and meetings over the past several years with Steven about indigenous peoples, their struggles with colonialism, degradation of their land, loss of their cultures and languages and the inequitable sharing of resource revenue and lack of consultation or consent with respect to development on their lands. Both of us have travelled to Ecuador with Steven and members of his team to see the devastation caused by the oil spills to the land and water in the areas where the Texaco and Chevron explorations and extractions took place. We realized that the problems endured by the indigenous peoples of Ecuador are very similar to those of indigenous Canadians. More often than not, the courts are their last chance of survival.

We have also attended conferences, meetings and classrooms where the case has been extensively discussed and debated. While differences of opinion exist with particular aspects of the legal decisions, it is universally agreed that the use of extraordinary tactics to specifically target Steven Donziger for severe punishment for his involvement in the case is wrong. This is because such action will deter other lawyers from representing clients in similar circumstances. So the danger extends far beyond Mr. Donziger's personal freedom. Powerful interests with unlimited resources must not be allowed to undermine the rule of law, limit access to justice, and destroy the environment through intimidating members of the legal profession. I co-chaired a conference in Banff, Alberta Canada in 2018 called "Indigenous Solutions to Environmental Challenges" where Steven's case was discussed. The conference was attended by leading scholars, high level politicians, Indigenous leaders, lawyers, students from all over North America and Europe. They expressed dismay and fear for the entire environmental movement if Steven continues to be persecuted by Chevron's perverse use of the legal system to achieve their goal of avoiding liability.

We believe that Steven is very strong, committed and determined representative of the Ecuadorian people and that he has acted on their behalf in good faith. We feel that we can vouch for Steven's sincerity, honesty, dedication, and commitment to finding a solution to resolve the case in an honorable way. We believe that imprisoning him rather than allowing the sentence to be time served under house arrest will bring the justice system of New York into disrepute and will do irreparable harm to the ability of the legal system and lawyers to conduct successful environmental litigation. Finally, we believe that even if you determine that Steven's decision to withhold his phone and computer was wrong, the time he has spent under house arrest has more than adequately served the principle of punishment "to an extent and in a way that is just is all the circumstances."

Respectfully submitted,

Phil Fontaine                                             Kathleen Mahoney

September 12, 2021

Hon. Loretta Preska

United States District Judge

Southern District of New York

500 Pearl Street

New York, NY 10007

Via ECF.

              Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

This past May I graduated from Boston College Law School where I spent the entirety of my third year working as a legal intern on Steven Donziger's contempt case and other issues related to the Ecuador litigation against Chevron. Prior to that, I graduated from Salem State University later worked for 2 years as an English teacher in at both Triton Regional High School and Greater Lawrence Technical School. I took on the responsibility of working with Steven after I read about the case and sent Steven an email asking to talk about my possible involvement. To my surprise, Steven not only answered my email but offered to have a phone call with me. On that call, he explained the basics of the situation including Chevron's attacks on him, Judge Kaplan's RICO findings, the affirmance of the judgement in Ecuador by the Supreme Courts of Canada and Ecuador, and the facts around his disbarment even though a neutral hearing officer had recommended his keep his law license. Steven then invited me to join a group of law interns from law schools around the country who already were working on the case and who would be supervised by his trial lawyers. I readily accepted the invitation.

I was immediately struck by Steven's personal interest in the development of the young law school talent working on his case. In one of the most trying times of his life, Steven scheduled regular meetings with students and worked with his pro bono lawyers (including Rick Friedman, Ron Kuby, Scott Badenoch and Marty Garbus) to put them on significant projects. For example, I was immediately tasked to help Steven prepare for oral argument in September of last year of his appeal of Judge Kaplan's orders in the post-trial proceedings in Chevron's civil RICO case (an appeal Steven won in part). I would stress this was a choice by Steven to try to aid the careers of young students to whom he had far more to offer than they could offer him. Steven allowed me as an unproven law student to work closely with him, listening carefully to my suggestions, but also taking substantial time out of his busy schedule to teach me about advocacy in the context of representing marginalized communities who historically had little access to justice. This was an important skill set not taught in my law school and it was an incredible experience to learn about it directly from someone who obviously had practiced in this area for decades.

I want to emphasize that during the innumerable hours I spent with Mr. Donziger, both with the other clerks and one on one, he never expressed disrespect to the courts or to the legal system. To the contrary, and almost oddly given the enormous legal obstacles inherent in human rights work and the attacks to which he has been subjected by Chevron's lawyers, he clearly believed in the rule of law and seemed to enjoy availing himself of the law even as he perceived it treated him or his clients in Ecuador unfairly. I also want to be clear that Steven never suggested that the way in which he dealt with all these matters always was the best way or that we should emulate him. To the contrary, he always asked us to listen to his recounting of his various experiences and and to learn while making our independent and critically-grounded judgements. He invited criticism and engaged us repeatedly on the many nuances of the complicated questions involved.

After a few months of working together, I asked Steven to try to help me find post-graduate employment. He connected me with many prominent attorneys and set up regular calls to counsel me throughout this process. For some context, both my parents passed away when I was young and as a result I've always lacked a certain kind of familial support system that many young people take for granted. Steven noticed this and took it upon himself to help fill this role, offering advice which transcended the legal work. This included guidance on how to move to and navigate Manhattan (where I now work in the law firm of Mr. Garbus), financial advice for a young professional, and more. This personal advice occurred in the context of a year in which Steven and his family obviously faced tremendous hardship. In my opinion, this is a testament to his character, professionalism, and generosity of spirit.

Over the past year, after near daily conversations with Steven, I can say I am inspired by his fortitude and commitment to justice. Steven has helped instill in me an immense hope that the legal institutions of the United States generally offer an avenue through which good can be done for people who have been harmed. Law school often does a tremendous amount of work at ripping away the idealism of young would-be lawyers. Through my work with Steven on this case, and through my friendship with Steven, I have re-discovered idealism and what is possible. I also have re-discovered the value of community-based advocacy and a deep appreciation for the role a lawyer can play in helping Indigenous peoples and other marginalized groups gain access to justice.

As someone who also believes deeply in the promise of our institutions, it's critical for me and I believe other young lawyers and students, to see Steven Donziger released after two years of house arrest. Steven is a respected leader of our profession who possesses significant symbolic value for those of us who wish to do human rights work in a world which desperately needs it. A jail sentence for Steven would undoubtedly have a chilling effect on myself and my peers who want to help underrepresented groups achieve access to our courts and to justice. While this is not the time to comment on the actual contempt findings or the merits of Steven's appeal, given Steven's extraordinary commitment to environmental justice and his generosity of spirit with young law students, I would urge the court to exercise leniency during sentencing and release Steven.

Thank you kindly for your consideration.

Sincerely,

Matthew Burton

September 15, 2021

The Honorable Loretta A. Preska
U.S. District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Dear Judge Preska:

I, a student volunteer with Steven Donziger's legal defense team, write to urge leniency in his sentencing.

Many law students and young attorneys look up to Mr. Donziger as a champion of marginalized peoples and as a model of tenaciousness in the face of adversity. I write to you in a more personal capacity. During the year that I volunteered with Mr. Donziger's legal defense team, he became much more than a supervisor or a client to me. Despite being confined to his apartment for nearly 800 days--over two years!--Mr. Donziger does not dwell on his personal circumstances. He has taken a keen interest in my professional development and in my personal wellbeing, often pursuing lengthy phone conversations about my thoughts on the case and my vision for my career. He asks about my family and the books that I am reading. An instinctive teacher, Mr. Donziger has volunteered hours of his time giving talks at law schools. He prioritizes understanding students' interests, passions, and values.

Others in Mr. Donziger's position would be preoccupied with the threat of imprisonment or jaded by the ongoing private prosecution. Instead, Mr. Donziger exudes warmth and compassion. He is an indispensable leader in the public interest legal community. I hope that you will keep these traits in mind when sentencing my mentor and friend.

Sincerely,

Catherine Rocchi, Stanford Law School Class of 2022

# Rex Weyler

September 7, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007
Via ECF.

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am an author, journalist, and educator (1973-present), an American citizen living and working in Canada. As a journalist, I have broadcast and written work with the CBC, New York Times, National Geographic, Vancouver Sun, The Liberal (UK), The Independent (UK), and other international media. I have published books on health, on the Indigenous history of the western hemisphere, early middle-eastern history, ecological history, and other topics, and have received international writing awards. I am a co-founder of Greenpeace International, the founder of a Canadian educational institute, and I teach at elementary and high-school levels in my community in British Columbia, Canada. My wife and I are members of the British Columbia Foster Parents Association and have worked with child trauma victims and young people with learning disabilities, legal problems, and other challenges.

As a journalist, in 2015, I began investigating the Texaco/Chevron oil pollution case in Ecuador. Through this investigation, I met and first interviewed Steven Donziger in 2016 in Canada. In 2017 I joined a Canadian delegation of Indigenous leaders, who went to Ecuador to investigate the case. There I met with Steven Donziger again, as he worked in his role as attorney for the Frente de Defensa de la Amazonía (FDA, "Amazon Defense Coalition"), plaintiffs in the damages case against Chevron Corporation. I have since interviewed Mr. Donziger in New York, and have met his wife Laura and his son Matthew.

In Ecuador I met the Indigenous and farming communities affected by the Texaco/Chevron oil pollution, and I observed the respect, admiration, and trust that those people have for Mr. Donziger. Plaintiffs and their Ecuadorian lawyers informed me that Mr. Donziger had worked relentlessly and generously on their behalf for 24 years, since 1993. He has now worked on their behalf for 32 years.

I met families who have suffered the loss of family from cancers and birth defects linked to the Texaco/Chevron pollution, and who, to date, have received no compensation or help from Chevron, in spite of winning their lawsuit against the company in Ecuador, a jurisdiction that Chevron chose, and whose judicial system and decisions Chevron promised to honour.

I met representatives of the plaintiffs, the FDA, The Woman's Federation of Sucumbios Province, and the The Federation of Farmers of Orellana Province, all of whom held Mr. Donziger in the highest regard for his integrity, legal expertise, and tireless work ethic.

[R. Weyler to Hon. L. A. Preska, 2021 .. page 2)

My wife and I have hosted Mr. Donziger in our home, where I was able to conduct extensive interviews with him. I have read the Ecuadorian court transcripts, including the reports of 54 scientific site inspections of Chevron wells and oil production facilities, which found oil contamination in violation of applicable laws and legal norms at every single site inspected. I have read the Supreme Court of Ecuador Decision: NATIONAL COURT OF JUSTICE, Opinion by Dr. Wilson Andino Reinoso; reviewed by National Judges, in summary verbal proceeding No. 174-2012, November 12, 2013.

I have read the medical impact reports from Dr. Miguel San Sebastián; Anna Karin Hurtig; Inter-American Commission on Human Rights, Organization of American States; and other independent reports, all of which link severe medical impacts on Ecuador's communities to the Texaco/Chevron oil contamination.

I have come to know and respect Mr. Donziger as a dedicated lawyer and advocate for his clients, as a man of integrity and of the highest ethical standards. His handling of this case has been conscientious, equitable, and honourable.

Having investigated this case thoroughly, over the last five years, I believe that the Court should sentence Mr. Donziger to the time already served under house arrest, now two years.

The alleged offense -- failing to surrender his phone and computer record of contact with his clients -- appears as an act permitted under US law, as necessary for the protection of his clients' rights to a safe attorney-client relationship.

The only known serious accusations against Mr. Donziger were made by a man (A. Guerra), paid by Chevron, coached by Chevron, who has admitted lying, and whose story has been proven false by forensic evidence, based on a review of the Ecuadorian court's computers.

As a journalist and a U.S. citizen, I am horrified by Chevron's apparent deceit before and influence in the U.S. justice system, in an apparent attempt to avoid paying a legal, impartial, and well evinced court judgment in Ecuador, reviewed and confirmed by the highest court in Ecuador.

Chevron's persecution of Mr. Donziger appears shameful, U.S. courts should distance themselves from this campaign to "demonize" (Chevron's word) Mr. Donziger, and I urge you to make the honourable decision and limit Mr. Donziger's sentence to the time he has already served.

Thank you for your consideration.

Rex Weyler

Box 446, 822 Austin Drive, Mansons Landing, BC, V0P 1K0, Canada
rexweyler1@gmail.com    250-935-0005



**AMAZON WATCH**

September 20, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N. Y. 10007

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am a lifetime advocate for human rights, Indigenous rights, and environmental justice. Since 1995 I have worked for many human rights organizations including Amnesty International, Human Rights Watch, and Amazon Watch. For several years I directed a program to directly support Indigenous survivors of genocide in Guatemala and violent repression in Chiapas, Mexico. I am dedicated to the non-violent pursuit of social justice and respect for the environment and this work has defined my career and my life.

I met Steven Donziger in 2007 when I began my work with Amazon Watch as its Associate Director. Since that time I have had the pleasure of working closely with Steven as an ally for justice and the advancement of Indigenous rights. His contribution and dedication to those causes is without question one of the most important in the history of the environmental justice movement.

Chevron, while operating as Texaco, admitted to the deliberate dumping of at least 16 billion gallons of toxic oil waste in the Amazon rainforest, creating the worst oil-related environmental disaster in history. This has been confirmed by scientific evidence presented to the Ecuadorian courts by both parties, including over 64,000 chemical samples. It set a terrible precedent which has led to decades of pollution and suffering for the people of the entire region that continues to this day. The effort to make Chevron accept responsibility, clean up its admitted waste, and alleviate the suffering of the affected communities is one of, if not the most important environmental justice issue of our time. More than any other individual, Steven Donziger is responsible for the fact that the pursuit of justice in this case has survived to this point and continues on. It is because of Steven's steadfast determination and pursuit of justice for the people of Ecuador that hope for resolution to this horrific crime still exists.

520 Third Street, Suite 108
OAKLAND, CA 94607
Tel: 510.281.9020  Fax: 510.218.9021

amazon@amazonwatch.org
amazonwatch.org

1101 15th Street NW, 11th Floor
WASHINGTON, DC 20005
Tel: 202.785.8700

I am as aware of the details of the pursuit for justice in Ecuador as almost anyone else on the planet, and have witnessed, firsthand, Steven Donziger's devotion to the rights of his clients and the people of Ecuador. I have never seen, for even an instant, any motivation from him other than justice for this cause. In my extensive contacts with him I have always noticed that Steven Donziger has the utmost respect for justice and the law. In fact, that very respect has defined his career and personal devotion to this case. Very few people I know would maintain their dedication and determination to this case in the face of the pressure and attacks that Steven Donziger has endured. He has my utmost admiration.

Anyone who suggests that Steven's work is motivated by anything other than the honest pursuit of justice for the people of Ecuador and respect for the environment does not know Steven, nor understand the importance of or details of his case. Steven is a true friend and ally to me, to the environmental justice movement, and to the people of Ecuador. His credibility, integrity, and absolute dedication to justice are beyond reproach. I share this having worked closely with him in the pursuit of justice for over 14 years.

I urge you to release Steven Donziger from home detention and not to sentence him to any jail time for contempt of court. Not a single individual has been held for even a day in connection to the horrific and undisputed crime in the Amazon and yet for his dogged pursuit of justice it is only Steven Donziger himself who has paid the price by sacrificing his own freedom and loss of his professional livelihood. This is a grave injustice that your honor can help to address by releasing Steven immediately.

Thank you for your consideration.

Sincerely,

Paul Paz y Miño
Associate Director
Amazon Watch