

29-76 Northern Blvd
Long Island City, NY 11101
tel. 212.691.7554
fax. 212.633.6845
www.fortunesociety.org

BOARD OF DIRECTORS

Dennis Kozlowski
Chairperson

Alphonzo Elder
Vice Chairperson

Mark Lebow
Secretary

John H. Eley
Treasurer

Shu'aib Abdur-Raheem
Yvette Brissett-Andre
Monique Carter
Richard Eisner
Danny Franklin
Anne L. Gray
Pamela Greenspan Ercole
Samuel Hamilton
E. Patricia Haversham-Brown
Stephane Howze
Rev. Phillip A. Jackson
Jean Jeremie
David A. Kochman
Caroline Marshall
Coss Marte
Fernando Martinez
Anthony M. Mastellone
Jennifer Millstone
Nalika Nanayakkara
Roland Nicholson Jr.
Gabriel S. Oberfield
Alan Patricof
Carlos Polanco
Betty P. Rauch
Eric A. Seiff
Dyjuan Tatro
Ray Tebout

JoAnne Page
President / CEO

David Rothenberg
Founder

September 27, 2021

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Steven Donziger

Dear Judge Preska:

Please accept this letter in support of Stephen Donziger at the time of his sentencing. I am writing to you now to express my professional and personal support for a noncustodial sentence for Mr. Donziger, based upon my knowing him professionally and as a friend for approximately three decades.

It is rare for me to advocate on a specific case in Federal court and I want to explain to you why I am doing so in this instance. It might be helpful to share some of my background to provide a context for this letter.

I am currently President and Chief Executive Officer of the Fortune Society, a nonprofit organization that is a nationally respected leader in providing a broad array of alternative to incarceration (ATI) and reentry services to otherwise incarceration bound and formerly incarcerated individuals. I have been in this position for 32 years and, over more than three decades, have grown the Fortune Society from an organization with approximately 20 staff and a budget of roughly $700,000 a year to an organization with over 300 staff and a budget of approximately $40 million. Under my leadership, we have developed cutting-edge wraparound services including mental health and substance abuse treatment services, a broad array of alternatives to incarceration services, and a continuum of homeless housing services that are looked at as a national model. I oversee services for approximately 9000 formerly incarcerated and justice system impacted people a year and am looked at as an expert in the criminal justice field.

I have been doing this work for almost five decades – I started at 18 as a volunteer in Green Haven Correctional Facility, spent some time as a criminal defense attorney after my graduation from Yale Law school in 1980, developed the felony ATI programs at what was then the Court Employment Project and is now CASES, and have been CEO at Fortune Society since 1989. It is from this background and from working with literally hundreds of thousands of people involved in the justice system that I write to you to provide a perspective on Steven Donziger that I hope will be helpful in aid of sentencing.

In my experience, Steven has been a man of integrity and a passion for justice that has shaped his work as an attorney and as a human being. Steven and I met in 1994 when he was the Executive Director of the National Criminal Justice Commission. At the invitation of Herb Hoelter, head of the National Center for Institutions and Alternatives (NCIA) which sponsored the Commission, I joined as one of the commissioners. In that role, I worked closely with Steven and developed a tremendous respect for his competence and the depth of his commitment to social justice. The Commission included members with significant gravitas including a former Attorney General of the United States, the Executive Director of the NAACP Legal Defense Fund, Harvard Law Dean James Vorenberg, businesspersons, and leaders such as Edwin Moses. Steven worked with this array of leaders with respect and with skill that resulted in the publication of an important work on criminal justice: The Real War on Crime.

As the work of the Commission proceeded, I was impressed enough by Steven's knowledge and integrity that I recommended him for membership on Fortune's Board of Directors. He joined our board in 1995 or 1996 and remained on the board until 2009. During those years, Fortune benefited by Steven's knowledge and guidance and willingness to dig in and do work for our organization. His knowledge of criminal justice and skill as a lawyer served us well as we navigated through a number of challenges and opportunities, one of the biggest of which was our decision to take the leap of beginning to offer housing because of the urgent need that we were seeing among our homeless clients with criminal justice history. The result of that decision has made us one of the nation's leaders in providing reentry housing, including providing the technical assistance to successfully replicate our housing in upstate New York at the request of the former New York State Deputy Secretary of Public Safety with multiyear funding by the New York State Division of Criminal Justice Services.

Over the years that he served on our Board of Directors, Steven was supportive, behaved as a consummate professional, and freely gave us the benefit of his good judgement and sense of values. His voice was respected on our board because of his long history of his commitment to justice and human rights and his knowledge of the law.

As we continue to work together, Steven and I became friends as well as colleagues. In the mid-1990s, we ended up traveling together to South Africa for a criminal justice conference. Steven was respected on criminal justice matters around the world and was invited to speak at the conference alongside me about issues facing the U.S. criminal justice system. As he had demonstrated with his leadership of the Commission, Steven spoke from a deep knowledge of the nuance of these complex issues.

In addition to attending the conference, Steven and I took advantage of being in South Africa to spend some time traveling and meeting with leaders and ordinary members of that country during a time of extraordinary change. I found Steven thoughtful and probing in his conversations and someone who carried himself with integrity and a strong sense of values.

I have not been directly involved in Steven's work around environmental and human justice issues in Ecuador, although I have been aware of that work. I consider his work in that field consistent with the context of a lifetime commitment to human rights that has characterized him over the almost 30 years that we have known each other. During these years, I have seen him as a values driven person who is deeply committed to using his skills to better the lives of people who are suffering injustice and to work to right injustice when he sees it.

Steven has served a long period of home confinement during which he and his family have incurred strong personal and financial costs. My hope is that the period of home confinement might serve as sufficient sanction at time of sentencing.

Given his lifetime choice to work for social justice upon graduation from Harvard Law School, when so many more lucrative options were available to him, and the good that he has done during so many decades, it is my belief that incarceration is not warranted. Should Your Honor consider the time that he spent in home confinement to be insufficient sanction, it is my hope that you would consider a sentence of community service instead of incarceration.

The Fortune Society gladly offers to be a site for him to fulfill a sentence of community service, if such is entered. An example of an assignment in which he could serve and contribute would be to work in our vocational and educational unit, assisting formerly incarcerated jobseekers in preparing for and finding employment, as well as helping in building their educational skills. Steven is a talented, hard-working and compassionate individual and we would welcome the chance to have him assist our clients in building constructive lives in the community.

Thank you for your consideration of this letter. If any further information would be helpful, please do not hesitate to contact me at the telephone number or email below.

Sincerely,

*JoAnne Page*

JoAnne Page, Esq.
President & CEO
The Fortune Society, Inc.



## WADDELL PHILLIPS

September 9, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:  **United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)**

Dear Judge Preska:

I am the senior partner of Waddell Phillips Professional Corporation, a litigation law firm, located in the City of Toronto, ON, Canada. I have been practicing law for 32 years, and have held many leadership positions with the Ontario Bar, including being President of the Toronto Lawyers' Association (2019/20), Chair of The Advocates' Society's Class Action practice group (2017/18), a member of the Ontario Bar Association's Bench and Bar Committee re Class Actions (2019 – 2020), Chair of the Ontario Bar Association's Class Action Executive (2014/15), a Member of the Canadian Bar Association's National Class Actions Task Force on Multijurisdictional Proceedings (2016 - 2018), and on the Board of the Advocates Society (2003/06), where I was chair of the subcommittee on advocacy and practice in 2005/06. I am currently the Chief Justice's nominee to the Civil Rules Committee. I am proud to have received multiple peer-based accolades and recognition as a leading practitioner in my areas of practice.

I first came to know Steven Donziger in 2016, while he was in Canada helping his clients in their effort to enforce their judgment against Chevron and its Canadian subsidiary. In all my dealings with Mr. Donziger and in my observations of him, I found him to be a highly honourable lawyer, doing his utmost to help achieve justice for the Indigenous peoples of the Amazon who have been the victims of the most horrendous environmental contamination. He was respectful of the Canadian court processes, and its officials.

From my dealings with Mr. Donziger, I have come to have the greatest respect and admiration for the important work he has undertaken for his clients. They achieved substantial success in Canada in obtaining a decision from the highest court – the Supreme Court of Canada - that the Ontario court had jurisdiction to hear an application to have the Ecuadorian judgment enforced in Canada. The issue of its enforceability here has not yet been judicially determined.

I arranged to have Mr. Donziger attend as a special guest speaker at the Ontario Bar Association's annual colloquium on class actions. Mr. Donziger made a compelling speech about the suffering that his Ecuadorian clients have endured because of the pollution of their lands. This presentation was widely appreciated by the attendees. His

Margaret L. Waddell
marg@waddellphillips.ca | 416-477-6979
36 Toronto St. | Suite 1120 | Toronto ON, M5C 2C5 | waddellphillips.ca



discussion was persuasive, thoughtful, and entirely respectful of the judicial processes that his clients have undertaken and to which they have been subject.

At all times in my dealings with Mr. Donziger, he has acted with the utmost professionalism and in a wholly ethical manner, putting the interests of his clients first. Indeed, he was at our offices in Toronto at the time he learned that a warrant for his arrest had been issued, and he promptly returned to New York to face the charges upon which you have now adjudicated.

I have watched with substantial and growing concern the treatment that Mr. Donziger has received since his return to the United States to face the contempt charges. It is, in my opinion, extraordinary that he has been held under house arrest for more than two years, when the maximum penalty to which he could be subject is, as I understand it, no more than six months. Mr. Donziger has endured a tremendous restriction of his freedoms - far and beyond the maximum penalty for the offense that you have found he committed.

In Canada, our constitution confirms that every person has the right to life, liberty and security of the person, and the right not to be deprived thereof, except in accordance with the principles of fundamental justice. I understand that the US Constitution holds much the same. In my opinion, the loss of his freedom for two years of house arrest is contrary to the principles of fundamental justice, is potentially unconstitutional, and most certainly meets or exceeds the sentencing goals of denunciation, deterrence and reparation for harms incurred.

I therefore would like to take this opportunity to strongly encourage Your Honour to sentence Mr. Donziger to no more than the time he has already served under house arrest. Respectfully, Mr. Donziger has paid his debt to society far and beyond the penalty that applies to his misdemeanour offence.

Thank you for your consideration of my submissions in support of Mr. Donziger.

Yours truly,

Waddell Phillips Professional Corporation

*Waddell*

Margaret L. Waddell
MLW/dt

Margaret L. Waddell
marg@waddellphillips.ca | 416-477-6979
36 Toronto St. | Suite 1120 | Toronto ON, M5C 2C5 | waddellphillips.ca



## WADDELL PHILLIPS

September 27, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:  **United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)**

Judge Preska:

I am a Canadian litigation lawyer and have practiced for over 30 years in virtually every jurisdiction in Canada. I am called to the bar in the provinces of Alberta and Ontario, and the territory of Nunavut. The focus of my practice has been on human rights litigation, including representation of individuals and First Nations bands in various claims. I have been counsel on numerous landmark cases in aboriginal law, criminal law, and class actions during the course of my practice. I have also taught at the Faculty of Law in the University of Calgary as an adjunct assistant professor and the Faculty of Law in the University of Saskatchewan as a sessional lecturer. I am a partner in the law firm Waddell Phillips Professional Corporation with offices in Toronto and Calgary.

I am writing this letter to you as a supplemental submission to the letter previously provided to you by my partner, Margaret Waddell, whose statements and opinions I wholeheartedly endorse.

In addition to echoing Ms. Waddell's submissions, I want to add my voice in support of Steven Donziger in the matter proceeding before you. I have been working with Steven since we met in 2015 in his struggle to obtain justice for the indigenous and poor in Ecuador who have suffered from Chevron's destruction of the Amazon and their traditional and agricultural lands. As part of my involvement, I have reviewed in detail the history of the litigation in Ecuador and the collateral attack on that country's judicial system that was undertaken in the your courts in the Southern District of New York.

In addition to my detailed review, I attended with Steven, accompanied by former National Chief Phil Fontaine of the Assembly of First Nations of Canada to meet with the Ecuadoran people who brought the claim against Chevron. The affection of his clients and the Ecuadoran people for Steven was palpable and throughout our time there, and indeed throughout all of my time working with him, I have been proud to have been involved with him and his efforts to hold Chevron accountable.

John Kingman Phillips
john@waddellphillips.ca

Reply to: 36 Toronto St | Suite 1120 | Toronto ON, M5C 2C5 | ph 647-220-7420 | fx 416-477-1657
630 – 6th Avenue S.W. | Suite 425 | Calgary AB, T2P 0S8 | ph 403-617-9868 | fx 403-775-4457
waddellphillips.ca



Steven's commitment to his clients and the poor and indigenous of Ecuador was admirable and he represented to me the height of professional advocacy for his clients. He is a rare example of a lawyer who was prepared to represent the interests of the disadvantaged at great personal cost to both him and his family. His good faith and legal skill, combined with his tenacity in the face of the aggression of Chevron and his readiness to call out the outrageous conduct of Chevron both for its destruction of the environment and its unwarranted and shameful conduct of the collateral litigation in the New York courts, should be held up as a model of what any lawyer should aspire to become and imitate.

It is with utter disappointment and shock that I have watched the proceedings against Steven unfold in your court. The proceedings against him and the various orders that have been made have shut down one of the best environmental and social justice lawyers that I have ever known – destroying his and his family's lives and his reputation. Your court has allowed itself to have been used as a blunt tool by Chevron to strategically silence Steven and, in so doing, has sent an intimidating message to other environmental and social justice advocates that your courts can be weaponized by a resourced and connected litigant to avoid accountability by machinating litigation against the lawyers personally.

Steven has suffered enough. Your court's reputation has suffered enough. I request that you take the opportunity to refrain from sanctioning Steven and, as importantly, to call out the actions of Chevron and its lawyers that have lead to the tragedy taking place in the proceeding before your court. It is my sincere hope that you do so, both for Steven's sake and for the sake of mitigating the intimidating message that Chevron's abuse of your court has sent.

Thank you for your consideration of my submissions in support of Mr. Donziger.

Yours truly,
Waddell Phillips Professional Corporation

John Kingman Phillips
JKP/vt

John Kingman Phillips
john@waddellphillips.ca  |  647-220-7420
36 Toronto St  |  Suite 1120  |  Toronto ON, M5C 2C5  |  waddellphillips.ca

# Graham Erion, Esq.

1705-7 King St E, Toronto, ON, Canada M5C 3C5
gerion@carbonfree.com; 416-930-0547

September 9, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007
Via ECF.

      Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

I am a corporate attorney called to the bars of Ontario, Canada (2008) and New York (2011) and have worked at a number of leading international firms, including Torys LLP, Norton Rose Fulbright, and DLA Piper. I currently am VP, M&A and Structured Finance at CarbonFree Technology Inc. in Toronto. I have an LL.M. from Colombia University, where I was awarded the Kent Scholarship as one of the top graduating students. I have also had the privilege of twice working alongside Steven Donziger on the Ecuador litigation against Chevron. I also know Steven and his family personally and have visited with them on multiple occasions both in New York and Toronto, where I live. I write this letter in support of Steven and to urge you to sentence him to time-served for the reasons stated below.

I first met Steven in 2008 fresh out of articling at the law firm Torys LLP after I read about the Ecuador case and contacted him. At the time, I was keen to volunteer on the case which was still being tried in Ecuadorian courts. Steven agreed to take me on as a law intern in Ecuador despite the fact I knew only a handful of words in Spanish. I worked in this capacity for several months in Quito and Lago Agrio, the small town in the Amazon where the trial took place and that had been the headquarters of Chevron's Ecuadorian operations. I immersed myself with the Ecuadorian legal team that Steven had organized and I was regularly amazed by their tenacity and fearlessness in going up against Chevron's large team of highly skilled lawyers. I soon learned the source of these qualities once I travelled to Lago Agrio and met some of the indigenous peoples and *campesinos* who were living in the area where Chevron had discharged by its own admission literally billions of gallons of oil waste into streams, rivers, and waste pits. The affected people themselves displayed incredible resilience and bravery in the face of the environmental degradation that had decimated

their lands and created an obvious public health crisis. While I admit to being overwhelmed by the Olympic pool-sized toxic sludge ponds abandoned by Chevron that they showed me, what left the most painful impression was how nearly every person I met, upon learning I was part of the legal team, would immediately lift up a shirt or pant leg and show some sort of rash or scar they had from living in this Chernobyl-like disaster. Worse still, many carried pictures of loved ones lost to rare cancers and related illnesses that they said had not existed until the Texaco oil company began operating in the region. In fact, I learned the Indigenous peoples did not even have a word for "cancer" in their native languages until oil operations commenced.

It was a heartbreaking experience all around, but I think it goes a long way in explaining why Steven Donziger has for so many years taken up the cause of trying to right this wrong through the law. In seeing Steven among his clients, he displayed an incredible empathy and was keenly aware of their pain and suffering. To his indelible credit, Steven displayed a masterful ability to explain the intricacies of complex litigation to them in ways that had farmers and Indigenous peoples with no formal education learning about judicial site visits, expert reports on damage quantifications, and even the science around parts per million of toxins and their relationship to some of the cancers and other health issues that were rampaging through these communities. In short, Steven displayed the strongest professional commitment to clients I have seen in the entirety of my legal career. He was committed to their active participation in the case and in all decision making; it was not just about getting a result but empowering these communities to understand their legal claims and their right to avail themselves of the court system to seek remedies for the harm they were suffering. It was not just about winning — it was also about access to justice for people who until the case against Chevron had been all but shut out of their own country's court system. He treated community members with utmost patience and respect. They, in turn, showed nothing but the highest trust and appreciation to Steven for his dedication and efforts and for his constant "town hall" question and answer sessions in the most remote parts of the jungle. Coming out of a large corporate firm, Steven redefined for me the possibilities of the lawyer-client relationship from one of billing hourly to one of deep service to real people in need. One thing very clear to me throughout my experience with Steven in Ecuador and after is that he was not and never has been motivated by personal financial gain.

It was my admiration for Steven that had me knocking on his door again in early 2012 after pressure from Chevron forced me out of the law firm Norton Rose Fulbright (which via a merger with another Canadian law firm suddenly had Chevron as a client). Lucky for me, at the time the Ecuadorian communities that I had met years earlier when interning in Ecuador had won the trial and were looking to enforce their judgment in Canada after Chevron refused to pay the judgement. I once again joined

the legal team under Steven's leadership to help move the case forward under the direction of Alan Lenczner, a legendary Canadian litigator. I helped raise funds that were used by our team to prevail in successive appeals in Ecuador and to commence enforcement proceedings in Canada. This work resulted in several landmark court decisions, including one by Canada's Supreme Court in 2015 that entitled the affected communities to enforce their judgement in my home country. By this time, Steven had already been targeted by Chevron's relentless counter-attack designed to destroy anyone and everyone who had anything to do with the Ecuadorian judgment that the company had thrice lost in Ecuador at the appellate level. Despite incredible pressure and personal stakes that virtually no lawyer in history has faced (at one point Steven was personally sued by Chevron for roughly $60 billion or the largest civil litigation claim against an individual in history), I never saw Steven him waver or lose his equanimity. I can say unequivocally that Steven is a man of great integrity and professionalism demonstrated in the very case where he has been under withering attack from dozens of law firms for the last decade or more.

Steven is not a man who has deserved one iota of the scorn Chevron's PR and legal departments have heaped on him. He is and will continue to be an inspiration to me and hundreds if not thousands of human rights advocates around the world who support him. His legacy on the Ecuador case has been sealed by multiple appellate court decisions validating the underlying judgement, including unanimous decisions by the highest courts of Ecuador and Canada. Nothing this court can or will do at this stage of this long litigation will change that. This court cannot destroy his legacy for his legacy was made working quietly over 30 years in the Ecuadorian jungle alongside thousands of his Indigenous and rural clients whose suffering due to Chevron's malfeasance he elevated to the world's attention. So yes, the court can sentence him to jail for refusing to turn over his clients' files and appealing a civil court ruling that no respectable lawyer would ever abide by. But to do so will only banish you to history's dustbin alongside dishonourable judges who have imprisoned the likes of Martin Luther King Jr., Nelson Mandela, and, more recently, Wang Quanzhang and Yu Wensheng.

Therefore, I implore you to take the higher road and finally give this man a small smidgeon of justice in the form of a release for time served. He already has lost two crucial years of his life while under your house arrest for a pending misdemeanor — the only such person in the U.S. federal system deprived of his liberty for an offense where the maximum sentence ever imposed on a lawyer is 90 days of home detention. Steven's son, whom I have met on several occasions, just entered high school after losing more than two years of being able to fully be with his father. The burdens on Steven, his wife Laura, and son Matthew are immeasurable. To now imprison Steven on top of his two-plus years of house arrest for a misdemeanor would be inappropriate

and an insult to the thousands of suffering people in the Amazon still waiting for their own justice.

Thank you for your consideration.

Sincerely,

Graham Erion, Esq.



## Attorney-at-Law & Arbitrator
## Carlin Meyer

September 19, 2021

Dear Judge Preska:

I write to urge that you sentence defendant Steven Donziger to no more than time already served under house arrest. No other defendant in America, let alone a lawyer trying to represent his client, has ever been so criminally punished for a petty offense. Adding jail time would serve no useful purpose, and would be a travesty.

As a former law professor who has served on the NYS Legislative Ethics Commission and is currently part-time counsel to the Assembly Ethics and Guidance Committee, I have considerable experience with wrongdoers and enforcing rules designed to prevent legal and ethical violations. Mr. Donziger's punishment has already exceeded anything I have seen in my work. It will be viewed by history as a case of "overkill", at the very least, the more so if he is sentenced to jail time.

Mr. Donziger has already lost his law license, been ordered to pay millions to his opponent in litigation, and served two years under house arrest, all based on evidence that is dubious at best -- largely the testimony of a witness who has repeatedly changed his story. It would be exceedingly unfortunate if he were subjected to yet more punishment.

Thank you for your consideration.

Carlin Meyer
Professor Emeritus, New York Law School
Carlin.meyer@nyls.edu
518-678-9002

245 W. 107th Street - Suite 11B
New York, New York 10025-3060
Carlin.Meyer@nyls.edu
646-643-1225