## LAW OFFICE OF RONALD L. KUBY
ATTORNEYS AT LAW
119 WEST 23RD STREET, SUITE 900
NEW YORK, NEW YORK 10011

TELEPHONE: (212) 529-0223
FAX: (212) 529-0644
WWW.KUBYLAW.COM

RONALD L. KUBY
RHIYA TRIVEDI

OF COUNSEL
GEORGE WACHTEL
LEAH BUSBY

STAFF
SUSAN BAILEY

PROCESS SERVER
LUIS R. AYALA 1952-2012

October 1, 2021

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
Via ECF

Re: United States v. Donziger, No. 19-cr-561 (LAP), 11-civ-691 (LAK)

Dear Judge Preska:

Please accept this letter in lieu of a more formal Motion for Release Pending Appeal, pursuant to 18 U.S.C. § 3143(b).

### Legal Standard

"[B]efore a district court may grant bail pending appeal, it must find: (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citations omitted).

This Court has referred to the standard as "a three-pronged test" in *United States v. Stevenson*, No. 13 CR. 161 (LAP), 2014 WL 12675179, at *1

(S.D.N.Y. Sept. 8, 2014) (Preska, J.), recognizing that an appeal that raises a substantial question is not taken for purposes of delay.

## Grounds for Release Pending Appeal

### 1. Mr. Donziger is Not Likely to Flee or Pose a Danger If Released Pending Appeal.

The Court has already implicitly determined that Mr. Donziger has shown that he is not likely to flee or pose a danger if released on his current conditions by maintaining his conditions of release pending sentencing. *Compare* 18 U.S.C. § 3143(a)(1) (requiring finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)" for release pending sentencing), *with id.* § 3143(b)(1)(A) (same requirement for release pending appeal). Indeed, the special prosecutor's decision to pursue this case as a petty offense confirms that that there is no risk of flight or danger to the community.

Release pending appeal is also imperative in this petty criminal contempt case because without it there can be no meaningful appellate safeguard against misuse of the contempt power. Appellate review before imposition of the sentence is especially vital in this case because there has been no independent executive branch review of the prosecution and no independent judgment by a jury.

### 2. The Appeal Presents Substantial Questions of Law and Is Not Taken for Purposes of Delay.

A "'substantial question' is "a 'close' question or one that very well could be decided the other way." *United States v. Shulaya*, No. 17 CR. 350 (LAP), 2021 WL 242382, at *3 (S.D.N.Y. Jan. 25, 2021) (Preska, J.) (quoting *Randell*, 761 F.2d at 125). The Court need not declare itself to have committed legal error or predict that Mr. Donziger's conviction is likely to be reversed. 761 F.2d at 124–25; *see United States v. Thaler*, No. S1 04CR1204(CLB), 2006 WL 1343664, at *1 (S.D.N.Y. May 17, 2006) ("[A] substantial question does not mean that the trial court has to second-guess itself or predict the outcome of the appeal."); *United States v. Rittweger*, No. 02 CR 122(JGK), 2005 WL 3200901, at *4 (S.D.N.Y. Nov. 30, 2005) (finding a substantial question concerning joinder although explicitly adhering to the view that the joinder ruling was correct); *United States v. Tunick*, No. S3 98 CR 1238 (SAS), 2001 WL 282698, at *3 (S.D.N.Y. Mar.

22, 2001) ("[A] court need not conclude that it is 'likely to be reversed' before granting bail pending appeal.").

If a question to be presented on appeal is substantial, meaning the answer could potentially go either way, the "likely to result in reversal" factor discussed below refers to the importance of resolving the question in the defendant's favor to the judgment—not to predicting the probability that the Second Circuit will reverse. *Randell*, 761 F.2d at 124-25. If resolving the substantial question in the defendant's favor would lead to reversal—which is certainly true of the questions Mr. Donziger's appeal will raise—release is warranted.

    a. **There is a substantial question whether the court-appointed special prosecutor has constitutional authority to prosecute a criminal case in the name of the United States as an inferior officer with no chain of command to a principal officer.**

The prosecution of Mr. Donziger is void because the special prosecutor had no constitutional authority to prosecute him in the name of the United States. This Court has already agreed that the special prosecutor is exercising executive authority subject to the constitutional requirement of supervision and direction by a principal officer. Dkt. 346 at 141-47. When Mr. Donziger raised the issue, the special prosecutor contended that the requirement of supervision and direction did not apply to her as a judicial appointee, not that she *was* subject to the supervision and direction of a principal officer as required by *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). That is dispositive; if an executive officer is unaware that she is even *in* a chain of command reporting to a principal officer, then that officer is not accountable to the President as the Constitution requires.

The Court gave two reasons for denying Mr. Donziger's motions to dismiss and for a new trial notwithstanding its agreement on the applicability of *Arthrex*, neither of which had been advanced by the special prosecutor. *First*, the Court concluded that Mr. Donziger's motion to dismiss was untimely and should have been filed by the February 27, 2020 deadline the Court set for pretrial motions under Rule 12. Dkt. 346 at 138-39. *Second*, the Court concluded that there was no violation of the supervision and direction requirement because on its face Rule 42 does not *prohibit or limit* executive branch supervision, even if the special prosecutor did not perceive any chain of command within the executive branch and, indeed, believed she was independent of the executive branch as a judicial appointee. Dkt. 346 at 147. Neither of those conclusions is correct; as relevant

3

here, though, it is enough that there are clearly substantial questions as to their correctness.

The Court cited *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018), for the proposition that a challenge must be timely. Dkt. 346 at 138 & n.496. However, the special prosecutor did not claim Mr. Donziger's motion was untimely, meaning that the procedural forfeiture argument is itself forfeited. *See United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994) (government waived waiver argument by failing to timely present it on appeal). And even if that were not the case, Mr. Donziger's motion was timely under *Lucia*, as well as *Ryder* and *Arthrex*. *See* Dkt. 361 at 8 n.5 (discussing *Arthtrex*); Dkt. 351 at 2 (discussing *Lucia* and *Ryder*).

Forfeiture of forfeiture aside, Mr. Donziger's motion also was not barred by Fed. R. Crim. P. 12(b)(3). Although he has done so in other motions, Mr. Donziger's motions to dismiss based on the absence of principal officer direction and supervision did not "challeng[e] the appointment" of the special prosecutor. *See* Dkt. 362 at 11. This Court recognized that a court may appoint a prosecutor subject to principal officer supervision and direction, such as an interim United States Attorney pursuant to 28 U.S.C. § 546(d). Dkt. 346 at 144. The question raised by Mr. Donziger's motion is whether, unlike an interim United States Attorney appointed pursuant to that statutory authority and assuming the validity of her appointment, the special prosecutor "operate[d] free from control or influence by the Attorney General." Dkt. 346 at 144. That is a challenge to the way the prosecution was conducted without oversight, not to a "defect in instituting the prosecution" of the prosecution within the scope of Fed. R. Crim. P. 12(b)(3). *Cf. Arthrex*, 141 S. Ct. at 1988 (plurality opinion) ("[T]he source of the constitutional violation is the restraint on the review authority of the Director, rather than the appointment of APJs by the Secretary."); *id.* at 1989-1990 (Gorsuch, J., concurring in part and dissenting in part) (describing the constitutional violation as absence of supervision); *id.* at 2003 (Thomas, J. dissenting) ("The majority's new Appointments Clause doctrine, though, has nothing to do with the validity of an officer's appointment. Instead, it polices the dispersion of executive power among officers.").[1]

---

[1] The Supreme Court referred to the judiciary's need for independent authority to "initiate contempt prosecutions," which is done under Rule 42 by issuing an order to show cause and appointing a prosecutor. *Young v. United States ex rel. Vuitton et fils, SA*, 481 U.S. 787, 797 (1987); *id.* at 796 ("Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated"). Mr. Donziger's motion assumed that the order to show cause alleging criminal contempt charges and the order appointing a special prosecutor were valid, but conferred

The flaw in the Court's timeliness ruling is also connected to its substantive error in characterizing the constitutional error. In its order denying Mr. Donziger's new trial motion, the Court stated that "if there were any legal rules limiting the Attorney General's control over the Special Prosecutors, those should have been apparent from this case's genesis." Dkt. 362 at 13. In its analysis of the merits, the Court considered it dispositive that Fed. R. Crim. P. 42 "does not, in any way, limit the Attorney General's discretion to review the Special Prosecutor's decisions or remove them from their posts." Dkt. 362 at 16 (quoting Dkt. 346 at 148). While that is true enough as a description of Rule 42 on its face, that has no bearing on whether the special prosecutor was subject to the supervision and direction of a principal officer in light of the common but erroneous understanding at the time of trial that judicially appointed special prosecutors are independent actors operating without executive oversight. That was the special prosecutor's own understanding as expressed in her response to the motion to dismiss. Dkt. 338 at 5. The special prosecutor has never claimed she was subject to a chain of command within the executive branch for the simple and ineluctable reason that she wasn't. And it is the understanding expressed by the Justice Department in the May 7, 2021 Carlin e-mail. Dkt. 303-1. The legal rule that inhibited supervision and direction of the special prosecutor was not expressed in the text of Rule 42, but rather, grounded in a misunderstanding of the Supreme Court's language in *Young* and *Providence Journal* "that seemingly equates the appointment of a special prosecutor with judicial prosecution." Dkt. 346 at 144. The Justice Department rebuffed Mr. Donziger's request that it exercise its constitutional authority to supervise and direct the special prosecutor.

In refusing even to review Mr. Donziger's case, the Department was disclaiming the authority this Court later correctly ruled that the Department must have as a constitutional matter, especially after and pursuant to *Arthrex*. While Mr. Carlin's eve-of-trial email is terse, it "decline[d] to intervene in the *federal-court initiated* contempt proceedings," (Dkt. 303-1; emphasis added), meaning that, like the special prosecutor, the Department was wrongly equating "the appointment of a special prosecutor with judicial prosecution"—not that it was declining as a matter of discretion to exercise "close supervisory authority" over the special prosecutor. *See* Dkt. 362 at 17.   While Mr. Donziger's agrees with the Court's

---

executive branch authority subject to a requirement of principal officer supervision and direction. *Young* itself expressly distinguished the decision to initiate a contempt prosecution from the myriad discretionary decisions made by a prosecutor "outside the supervision of the court." *Id.* at 807.

5

conclusion that the special prosecutor should, as a matter of constitutional law have been "subject to the Attorney General's control," (Dkt. 362 at 16), the special prosecutor and the Department of Justice shared a different understanding of the legal rules at the time that the special prosecutor tried the case, making the special prosecutor a constitutional "free agent" just as much as if the text of Rule 42 had purported to limit executive oversight.

The participation of FBI agents from the New York field office in witness interviews is not evidence of principal officer supervision and direction. The special prosecutor did not proffer anything in her response to the new trial motion connecting the involvement of FBI agents to a chain of command leading to a principal officer; indeed, she offered no explanation at all of how the involvement of FBI agents came about (Dkt. 355), and this Court refused to allow any discovery concerning that question, deeming the facts immaterial. Dkt. 359. The participation of FBI agents proves that principal officer supervision and direction was constitutionally required, not that it existed.

The line of Supreme Court authority mandating supervision and direction by a principal officer accountable to the president for all executive branch functions culminating in the post-trial decision in *Arthrex* means that there is a substantial question about the validity of Mr. Donziger's conviction to resolve on appeal.

### b. There is a substantial question whether the special prosecutor is a validly appointed inferior officer.

In addition to the substantial question as to whether the special prosecutor was supervised by a principal executive officer as required by *Arthrex*, there is also a substantial question as to whether her appointment was constitutionally valid in the first place. That question only further underscores the appropriateness of release pending appeal.

The Supreme Court has not considered the propriety of judicially appointed special prosecutors since *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). In the intervening 34 years, however, its jurisprudence concerning the appointment and removal of executive officers has undergone a renaissance. Among other things, the Court has clarified (1) who counts as an "Officer[] of the United States," *see Lucia v. SEC*, 138 S. Ct. 2044 (2018); (2) what criteria separates principal from inferior officers, *see Arthrex*, 141 S. Ct. 1970; (3) what constraints Congress may lawfully place on the removal of inferior officers, *see Collins v. Yellen*, 141 S. Ct. 1970 (2021); *Seila Law LLC v. Consumer*

*Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Free Enter. Fund* v. *Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); and (4) when Congress may constitutionally provide for interbranch appointments, *see Morrison* v. *Olson*, 487 U.S. 654 (1988).

Under those decisions, there can be little question but that the special prosecutor is an "Officer[] of the United States." As was true in *Morrison* with respect to the independent counsel, "[i]t is clear that [the special prosecutor] is an 'officer' of the United States, not an 'employee.'" 487 U.S. at 671 n.12; *see also Buckley* v. *Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam) (holding that officers, unlike employees, are those "not subject to the control or direction of any other executive, judicial, or legislative authority"). *Lucia* only reinforces this point, reiterating that, among other things, officers are those who "exercis[e] significant authority pursuant to the laws of the United States." 140 S. Ct. at 2051 (internal quotation marks omitted), and who possess "significant discretion" to carry out "important functions." *Id.* at 2053. Prosecutors — who not only wield the executive power of the United States, but do so in a coercive manner that can result in criminal convictions and incarceration — clearly meet those criteria. Indeed, for these purposes, the special prosecutor is on all fours with the independent counsel in *Morrison* — in which the Court didn't even think it a close question.

And if the special prosecutor is an officer of the United States, then her appointment *must* comport with the requirements of the Appointments Clause. U.S. Const. art. II, § 2, cl. 2. Under that provision, the default is for officers to be appointed by the President, with the advice and consent of the Senate. And "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* The Appointments Clause thus expressly contemplates interbranch appointments of inferior executive officers, so long as Congress provides for such appointments "by Law." *See, e.g.*, 28 U.S.C. § 546(d) (authorizing district courts to appoint U.S. Attorneys when the position is otherwise vacant). But it is exhaustive in that respect; as the Supreme Court reiterated just last year, "[t]he Appointments Clause prescribes the *exclusive* means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." *Lucia*, 140 S. Ct. at 2051 (emphasis added); *see also United States* v. *Germaine*, 99 U.S. 508, 509 (1879) ("The Constitution for purposes of appointment . . . divides all its officers into two classes.").
In *Young*, the Supreme Court expressly rejected the argument that Rule 42(b) of the Federal Rules of Criminal Procedure is the source of a district court's authority to appoint a special prosecutor to try criminal contempt. *See* 481 U.S. at 794 ("The

Rule's reference to the appointment of a private attorney to submit a show cause order assumes a *pre-existing practice* of private prosecution of contempts, but does not itself purport to serve as authorization for that practice."); *see also id.* at 815 n.1 (Scalia, J., concurring in the judgment) (explaining that Rule 42(b) would not satisfy the Appointments Clause even if it *was* the source of authority for such an appointment—because it is not a statute). Instead, *Young* traced the courts' appointment authority to their *inherent* powers, not to any statute. *Id.* at 795 & n.7 (majority opinion) (citing *Michaelson v. United States ex rel. Chi., St. Paul, Minneapolis & Omaha R.R. Co.*, 266 U.S. 42, 65–66 (1924)).

If Congress has *not* provided for the interbranch appointment of special prosecutors "by Law," and if such prosecutors are "Officers of the United States" under *Lucia*, then their appointment is unconstitutional after and in light of *Lucia*. At the very least, the constitutionality of interbranch appointments of special prosecutors raises a substantial question that further militates in favor of release pending appeal.[2]

Mr. Donziger raised the question of judicial power to appoint a prosecutor under Rule 42 in his February 27, 2020 pretrial motion to dismiss. Dkt. 60 at 6 (advancing Justice Scalia's *Young* concurrence, 481 U.S. at 815-25). Moreover, as the Supreme Court has repeatedly recognized, Appointments Clause challenges to those involved in a defendant's criminal prosecution are "timely" so long as they are made while the case remains pending in the forum in which the Appointments Clause issue arose. In *Ryder v. United States*, 515 U.S. 177 (1995), for instance, the Court held as timely an Appointments Clause challenge to the composition of a Coast Guard Court of Criminal Appeals panel that the defendant first raised in a petition for rehearing — *after* the court had already affirmed his conviction. *See id.* at 179, 182. Thus, as with his challenge to whether the special prosecutor was subject to the "supervision" that *Arthrex* requires, Mr. Donziger's appeal will also raise a substantial question as to the validity of the special prosecutor's appointment on its face — both of which support his motion for release pending appeal.

---

[2]. Even if the special prosecutor is not an "Officer[] of the United States," she still exercises executive power, not judicial power. Thus, even if her appointment does not violate the Appointments Clause, it violates the separation of powers for the reasons Justice Scalia articulated in *Young*. *See* 481 U.S. at 815–25 (Scalia, J., concurring in the judgment).

8

### c. There is a substantial question whether, under all of the circumstances, the Second Circuit should exercise its supervisory power to prevent misuse of of criminal contempt authority.

The corollary to the proposition that criminal contempt prosecutions fall within an inherent judicial power is that appellate courts have plenary supervisory authority over criminal contempt prosecutions. As the Supreme Court noted in *Young*, "supervisory authority has played a prominent role in ensuring that contempt proceedings are conducted in a manner consistent with basic notions of fairness." 481 U.S. at 808. "The exercise of supervisory authority is especially appropriate in the determination of the procedures to be employed by courts to enforce their orders, a subject that directly concerns the functioning of the Judiciary." *Id.* at 809. The Supreme Court invoked its otherwise rarely deployed supervisory power in *Young* to "hold that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order" and that the appointment of such a prosecutor was a structural error warranting reversal. *Id.* at 809-14. Nothing in *Young* suggests that the supervisory power is limited to the *per se* rule announced in the case, or that appellate court should not intervene to rein in misuse of the criminal contempt power in this case.

The larger principle advanced in *Young* is that appellate courts must exercise their supervisory power to prevent the use of the criminal contempt power in ways that seem unfair and would weaken respect for the judiciary. In this case, for example, the district court chose to prosecute failures to comply with discovery orders for the purpose of triggering an appealable civil contempt judgment (on an issue on which Mr. Donziger prevailed on appeal) and violations that had already been mooted or purged. A robust supervisory power is especially vital in a case like this, where there are no other structural constraints on the prosecution. The district court's charging decisions appear against the background of an extraordinarily contentious history between Mr. Donziger and Chevron, and between Mr. Donziger and the district judge who issued the order to show cause. That district judge hand-picked the trial judge and did not recuse himself from continuing to play an undisclosed role in the case; the district judge also hand-picked a prosecutor whose law firm previously represented Chevron and it remains unknown whether the prosecutor withheld that information from the appointing judge or whether the judge made the appointment despite that knowledge; the prosecutor was not subject to a chain of command by a principal officer in the executive branch; the prosecutor communicated extensively with Chevron's lawyers in preparing for trial and relied on two of them to narrate and interpret the

record. Under these circumstances, the responsibility to make sure the contempt power has been exercised in a manner that strengthens rather than weakens the reputation of the judiciary falls to the Second Circuit.

As the Supreme Court noted in *Young*, "[a] prosecution contains a myriad of occasions for the exercise of discretion, each of which goes to *shape* the record in a case, but few of which are *part* of the record." 481 U.S. at 813. Because of that vast subterranean discretion, "[p]ublic confidence in the disinterested conduct of that official is essential." *Id.*

Mr. Donziger's appeal will present a substantial question whether his conviction must be overturned (even if the special prosecutor were validly appointed and had validly prosecuted the case without principal officer oversight) because the essential "public confidence" in the fairness of this prosecution is impossible.

### 3. If The Questions Are Resolved on Appeal in Mr. Donziger's Favor, the Decision Will Result in Reversal (and Dismissal) of All of the Contempt Charges.

If the Court of Appeals agrees with Mr. Donziger on any one of the questions he will present on appeal, his convictions must be reversed.

The Supreme Court in *Young* acknowledged the impossibility of applying a harmless error standard to the "the conduct of an entire prosecution" involving a "myriad of occasions for the exercise of discretion, each of which goes to *shape* the record in a case, but few of which are *part* of the record." 481 U.S. at 812-13. Each of Mr. Donziger's appellate issues implicates the entire prosecution and the full range of decisions the special prosecutor made.

Reversal is also required because of the nature of Mr. Donziger's constitutional challenges. Actions by a purported federal officer who lacks the constitutional authority to hold office are nullities. *Ryder v. United States*, 515 U.S. 177, 188 (1995) (improperly appointed military judge); *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (improperly appointed administrative judge); *NLRB v. SW General, Inc.*, 137 S. Ct. 929, 944 (2017) (affirming D.C. Circuit's judgment invalidating complaint authorized by improperly appointed general counsel). That was the basis for the D.C. Circuit's judgment in *Noel Canning v. NLRB*, 705 F.3d 490, 514 (D.C. Cir. 2013) (Because the recess appointment of a member was invalid, "The Board had no quorum, and its order is void."). The Supreme Court

affirmed the judgment invalidating the NLRB's order. 573 U.S. 513, 557 (2014). That was also why the new Director of the CFPB had to re-issue the investigative demand issued during the tenure of her predecessor for it to be valid in *CFPB v. Seila Law LLC*, No. 17-56324, 2021 WL 2035701 (9th Cir. May 14, 2021).

## Conclusion

Mr. Donziger's should be released pending appeal.

Respectfully submitted,

Ronald L. Kuby

Martin Garbus

Cc: Rita Glavin